# MILMAN LABUDA LAW GROUP PLLC

**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**

_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

February 27, 2024

**VIA ECF**
Honorable Orelia E. Merchant, U.S.D.J.
Honorable Steven L. Tiscione, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    **AutoExpo Ent. Inc., et al. v. Omid Elyahou et al.**
              **Case No.: 2:23-cv-09249 (OEM) (ST)**

Dear Judge Merchant and Magistrate Judge Tiscione:

We represent Plaintiffs AutoExpo Ent. Inc. ("AutoExpo"), Peace Properties LLC, Network Reinsurance Company Inc., Auto Exchange Center, LLC and Chrome Insurance Agency LLC (collectively, "Plaintiffs") in the above-action. We submit this letter in opposition to the February 20, 2024 letter from defendant Omid Elyahou ("Elyahou"), requesting a pre-motion conference seeking leave to file a "Motion to Remand" to Nassau County Supreme Court, or in the alternative a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). As set forth below, the Court should reject Elyahou's application as both motions would be meritless.

As an initial matter, contrary to Elyahou's characterization, this is not a "classic business divorce." Rather, this case concerns Elyahou's egregious absconding of funds, double-dipping, diversion of business, and worse still, taking AutoExpo's proprietary systems, which it developed at great cost, as well as employees, to compete directly against Auto Expo – all while Elyahou was the "operating partner" and remains an owner. Elyahou's "spin" is to suggest that this is a mere business breakup; it is not.[1] In any event, the personal relationship between Elyahou and Shahkoohi is irrelevant for the purposes of Elyahou's pre-motion conference letter.

    **I.**    **The Court Cannot Remand This Case, As It Was Never Removed**

It is abundantly clear that the instant action was not removed from state court.

On October 26, 2023, AutoExpo commenced an action against Elyahou (and another defendant, SimpSocial LLC, "SimpSocial") in Supreme Court, Nassau County (Index No.: 617486/2023,

---

[1] AutoExpo's majority shareholder, Michael Shahkoohi ("Shahkoohi") was married to Elyahou's sister, but their divorce settlement was more than a decade ago in July 2013. It is "ancient history." Shahkoohi and Elyahou continued in business for many years thereafter. The events as outlined in the Complaint (Dkt. 1), beginning in 2019, show that Shahkoohi began to question financials that Elyahou controlled, and when Elyahou refused to answer, he began to uncover his egregious misdeeds in breach of trust.

February 27, 2024
Page 2

hereinafter the "AutoExpo State Action")² by Summons with Notice. After Elyahou and SimpSocial appeared and made a demand for the Complaint in that action, the parties stipulated to extend the time for AutoExpo to file a complaint until December 18, 2023. By that time, Plaintiffs had uncovered additional facts. So, on December 18, 2023, Plaintiffs commenced the instant action in federal court with federal claims and additional parties. On the same day, in the AutoExpo State Action, AutoExpo also filed a motion pursuant to CPLR § 3217(b) to dismiss that action without prejudice in favor of the instant case or alternatively, pursuant to CPLR §§ 2004, 2005 and 3012(d) extending the time in which AutoExpo may serve a complaint. The motion was fully briefed and awaiting a decision.

As Elyahou concedes, only a defendant may remove a lawsuit to federal court. Plaintiff AutoExpo never filed any motion in state court called a motion for removal. Plaintiffs in the instant action never filed a notice of removal – nor could they. See 28 U.S.C. § 1446(a) ("A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal"). As Plaintiffs did not remove any case to this Court, no remand may be granted.

**II.     Plaintiffs Have Sufficiently Pled a Cause of Action for a Violation of the DTSA**

Alternatively, Elyahou seeks leave to file a motion to dismiss, claiming that the Complaint failed to state a Defend Trade Secrets Act ("DTSA") claim. He argues that the Complaint fails to: (1) sufficiently identify a trade secret; (2) plead that requisite "reasonable measures" were implemented to maintain secrecy; and (3) allege sufficient facts as to Defendants' misappropriation. These arguments are meritless.

The DTSA requires a plaintiff to establish "an unconsented disclosure or use of a trade secret by one who: (i) used improper means to acquire the secret, or (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." See Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., 2016 U.S. Dist. LEXIS 130918, *19 (S.D.N.Y. Sept. 23, 2016); see also 18 U.S.C. § 1839(5). The term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." See 18 U.S.C. § 1839(3). A defendant misappropriates a trade secret under the DTSA (1) when it acquires a trade secret by improper means, or (2) discloses or uses the trade secret without consent. See Medidata Solutions, Inc. v. Veeva Sys., 2018 U.S. Dist. LEXIS 199763, *11 (S.D.N.Y. Nov. 26, 2018). These elements are met in the Complaint.

The Complaint specifically identifies the trade secrets, which included a unique, proprietary inventory system that was specifically customized for AutoExpo at a cost of between $50,000 and $170,000; its customer lists with contact information of its customers, which AutoExpo used to

---

² Elyahou also references another case in Supreme Court, Nassau County (Index No.: 617795/2023), which is a special proceeding that was fully briefed and awaiting decision and is completely irrelevant to this action. Also, unless otherwise stated, all paragraph references contained herein refer to the Complaint filed on December 18, 2023 (Dkt.1).

February 27, 2024
Page 3

generate leads and sell to customers; and its business model, including information related to its revenues and profit margins. (¶¶ 163-169, 171-172, 242, 251-256, 260-264, and 271). The Complaint states facts as to how this information derives economic value as it is not generally known to the public, and AutoExpo's monetary investment to develop. (¶¶ 79, 163-167, 253-255, 260-262). As such, the allegations plead a trade secret. See Plaza Motors of Brooklyn, Inc. v. Bogdasarov, No. 21-cv-6545 (KAM), 2021 WL 5630910 (E.D.N.Y. Dec. 01, 2021) (internal citations omitted) ("[a] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected . . . against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable."); IME Watchdog, Inc. v. Gelardi, No. 22CV1032PKCJRC, 2022 WL 1525486, at *8 (E.D.N.Y. May 13, 2022), reconsideration denied, No. 22CV1032PKCJRC, 2022 WL 2316137 (E.D.N.Y. June 28, 2022) (Holding that a business's customer lists and sales reports, which recorded how much customers paid, to be trade secrets.)

Plaintiffs took appropriate measures to keep this information secret by limiting access to this information to only employees who owed AutoExpo a fiduciary duty, such as Elyahou himself, who was and is an owner, and at all relevant times was the "Operating Partner." (¶¶ 54, 261, 280). Elyahou held a position of trust. (¶¶ 54, 56, 193). Moreover, it was Elyahou, himself, who was charged with the responsibility to set up the appropriate measures of protection to maintain secrecy, if any measures were lacking. (¶¶ 63, 67-69-). Thus, among other things, Elyahou was required to maintain the information in a secured computer system protected by firewalls and other safeguards. (¶261). Ordinary employees did not have access to the information entrusted to Elyahou. (Id.).

Finally, the Complaint alleges specific facts that Defendants misappropriated these trade secrets by their calculated, conniving, and systematic actions fall squarely within the scope of the DTSA. See, e.g., ¶¶ 125-43 (showing AutoExpo being outbid and trucker confusion as to AutoExpo and Certified); ¶¶ 144- 52 (AutoExpo staff quitting, Certified outperforming Auto Expo, employees' referrals to Certified); ¶¶ 240-77 (facts establishing that Elyahou, Certified and Eitan basically took AutoExpo's trade secrets to set up and operate Certified, behind AutoExpo's back, at AutoExpo's expense, and causing AutoExpo to lose money). Thus, Elyahou, Certified and Eitan did not have to spend any of their own money developing a custom inventory system or customer base, they simply took AutoExpo's. See A UA Private Equity Partners, LLC v. Solo, No. 17-8035, 2018 WL 1684339, *7 (S.D.N.Y. April 5, 2018) (holding that complaint plausibly alleges violation of the DTSA as defendant was alleged to have uploaded plaintiffs trade secrets from her work laptop to her personal cloud-based storage without plaintiffs permission); RKL Inc., d/b/o Roll-Krafi v. Grimes, 177 F. Supp. 2d 859, 875-77 (N.D. Ill. 2001) (finding sufficient evidence of acquisition of theft when employee downloaded or copied trade secrets from work computer to home computer). Accordingly, all elements for a DTSA claim are pleaded. A dismissal motion would be meritless.

We thank the Court for its attention to this matter.

Respectfully submitted,

*Michael C. Mulè*

Michael C. Mulè

cc: Counsel of Record