# MILMAN LABUDA LAW GROUP PLLC

**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

March 6, 2024

**VIA ECF**
Honorable Orelia E. Merchant, U.S.D.J.
Honorable Steven L. Tiscione, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    **AutoExpo Ent. Inc., et al. v. Omid Elyahou et al.**
              **Case No.: 2:23-cv-09249 (OEM) (ST)**

Dear Judge Merchant and Magistrate Judge Tiscione:

We represent Plaintiffs AutoExpo Ent. Inc. ("AutoExpo"), Peace Properties LLC ("Peace Properties"), Network Reinsurance Company Inc. ("Network Reinsurance"), Auto Exchange Center, LLC ("AEC") and Chrome Insurance Agency LLC ("Chrome Insurance") (collectively, "Plaintiffs") in the above-action. We submit this letter in opposition to the February 28, 2024 letter from Defendants, Avi Eitan, Fifty Seven Consulting Corp. d/b/a Certified Auto Group a/k/a Certified Performance Motors and Fazeeda Kassim (collectively "Defendants"), requesting a pre-motion conference seeking leave to file a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) for Plaintiffs' First and Second Causes of Action. As set forth below, the Court should reject Defendants' application, as such a motion would be meritless.

Defendants seek leave to file a motion to dismiss, claiming that the Complaint failed to state a Defend Trade Secrets Act ("DTSA") claim. Defendants argue that the Complaint: (1) fails to allege that the owner of the trade secret took reasonable measures to maintain the secrecy of the trade secret because Plaintiffs alleged, in a singular paragraph, that "Plaintiffs" made reasonable efforts to maintain the secrecy of the trade secret, while identifying AutoExpo as the owner of the trade secret; and (2) alleges a trade secret that is too broad and too vague in order to sufficiently allege a trade secret.[1] These arguments are meritless.

Pursuant to the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the

---

[1] Plaintiffs do not address in the instant letter any other element of the DTSA, as Defendants did not argue in their letter requesting a pre-motion conference that any other element of the DTSA was not sufficiently pled. Plaintiffs refer the Court to their February 27, 2024 opposition to Defendant Elyahou's February 20, 2024 letter for a pre-motion conference for Plaintiffs' explanation on why the other elements of the DTSA were met. See ECF Doc. No. 17.

disclosure or use of the information." See 18 U.S.C. § 1839(3).  Relevant to Plaintiffs' instant claims, the term "owner" under the DTSA is defined as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." See 18 U.S.C. § 1839(4). These elements are met in the Complaint.

First, the Complaint sufficiently alleges that AutoExpo is the owner of the trade secret. (¶¶ 11, 260, 264, 271, 273, 275). The Complaint further alleges AutoExpo, Peace Properties, Network Reinsurance, AEC and Chrome Insurance are under a common ownership, wherein Michael Shahkoohi ("Shahkoohi") and Defendant Omid Elyahou ("Elyahou") are owners of each entity. (¶¶ 15-26, 54). Moreover, the Complaint alleges that pursuant to the 2008 Agreement, wherein Elyahou was to be made AutoExpo's "Operating Partner", Elyahou also agreed that he would be permitted to enter into any other partnership or any other business (directly or indirectly) other than AutoExpo **& its subsidiaries**." (¶¶ 59-60) (emphasis added). Thus, the Complaint alleges that the other Plaintiffs are subsidiaries of AutoExpo, and therefore, the subsidiaries would owe AutoExpo a duty to manage the subsidiaries in the best interest of AutoExpo and Elyahou and Shahkoohi would owe a duty to the subsidiaries as directors of AutoExpo. See Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 218 (S.D.N.Y. Apr. 12, 2004) (internal citations omitted); see also In re Sabine Oil & Gas Corp. In re Sabine Oil & Gas Corp., 547 B.R. 503 (Bankr. S.D.N.Y. 2016).

Furthermore, the Complaint alleges that Plaintiffs took appropriate measures to keep this information secret by limiting access to this information to <u>only employees who owed AutoExpo a fiduciary duty</u>, such as Elyahou himself, who was and is an owner, and at all relevant times was the "Operating Partner." (¶¶ 54, 261, 280). Elyahou held a position of trust. (¶¶ 54, 56, 193). Moreover, it was Elyahou, himself, who was charged with the responsibility to set up the appropriate measures of protection to maintain secrecy, if any measures were lacking. (¶¶ 63, 67-69). Thus, among other things, Elyahou was required to maintain the information in a secured computer system protected by firewalls and other safeguards. (¶ 261). Ordinary employees did not have access to the information entrusted to Elyahou. (Id.). Thus, Plaintiffs' allegation that "Plaintiffs have made and make reasonable efforts to maintain the secrecy" of its trade secrets is sufficient to withstand a motion to dismiss. See Fabkom, Inc. v. R.W. Smith & Assocs., 95-cv-4552 (MBM), 1996 U.S. Dist. LEXIS 13686, *20 (S.D.N.Y. Sept. 19, 1996) ("Distribution to clients of a computer program through a licensing agreement requiring confidentiality does not destroy secrecy of a trade secret, but rather reinforces it.")

Second, the Complaint specifically identifies the trade secrets, which included a unique, proprietary inventory system that was specifically customized for AutoExpo at a cost of between $50,000 and $170,000; its customer lists with contact information of its customers, which AutoExpo used to generate leads and sell to customers; and its business model, including information related to its revenues and profit margins. (¶¶ 163-169, 171-172, 242, 251-256, 260-264, and 271). The Complaint states facts as to how this information derives economic value as it is not generally known to the public, and AutoExpo's monetary investment to develop. (¶¶ 79, 163-167, 253-255, 260-262). As such, the allegations plead a trade secret. See Plaza Motors of Brooklyn, Inc. v. Bogdasarov, No. 21-cv-6545 (KAM), 2021 WL 5630910 (E.D.N.Y. Dec. 01, 2021) (internal citations omitted) ("[a] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected . . . against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable."); IME

March 6, 2024
Page 3

Watchdog, Inc. v. Gelardi, No. 22CV1032PKCJRC, 2022 WL 1525486, at *8 (E.D.N.Y. May 13, 2022), reconsideration denied, No. 22CV1032PKCJRC, 2022 WL 2316137 (E.D.N.Y. June 28, 2022) (Holding that a business's customer lists and sales reports, which recorded how much customers paid, to be trade secrets.)

Accordingly, all elements for a DTSA claim are pleaded. A dismissal motion would be meritless.

We thank the Court for its attention to this matter.

                                            Respectfully submitted,

                                            *Michael C. Mulè*

                                            Michael C. Mulè

cc: Counsel of Record