# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

**Author: Michael C. Mulè – Partner**
**Direct E-Mail Address:** michaelmule@mllaborlaw.com
**Direct Dial: (516) 303-1442**

April 25, 2024

**VIA ECF**
Hon. Steven Tiscione
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

> **Re:**   **AutoExpo Ent. Inc., et al. v. Omid Elyahou et al.**
>           **Case No.: 2:23-cv-09249 (OEM) (ST)**

Dear Magistrate Judge Tiscione:

We represent Plaintiffs AutoExpo Ent. Inc. ("AutoExpo"), Peace Properties LLC ("Peace Properties"), Network Reinsurance Company Inc. ("Network Reinsurance"), Auto Exchange Center, LLC ("AEC") and Chrome Insurance Agency LLC ("Chrome Insurance") (collectively, "Plaintiffs") in the above-action.  We write to request a scheduling conference.

By way of background, this action primarily concerns an automobile dealership, AutoExpo. All defendants were served with the Summons and Complaint on February 7, 2024. Defendant Omid Elyahou ("Elyahou") is a 20% owner of AutoExpo, and was the brother-in-law of AutoExpo's 80% owner, Michael Shahkoohi ("Shahkoohi").[1] Shahkoohi has three decades of experience in the automobile dealership industry and trained Elyahou, beginning in 1999 when Elyahou was only 18 years old. In 2006, Shahkoohi elevated Elyahou to "Operating Partner" and granted him a 20% share in AutoExpo.

Shahkoohi has learned that, for years, prior to his agreement in March 2023 to step aside from operations of AutoExpo, Elyahou was bilking AutoExpo in numerous and egregious ways, which included absconding of funds, double-dipping (*e.g.*, being compensating for marketing and then charging AutoExpo through defendant SimpSocial LLC, a company he solely owned), diverting business to Defendant Fifty Seven Consulting Corp. d/b/a Certified Auto Group a/k/a Certified Performance Motors ("Certified"), AutoExpo's competitor, and worse still, taking and copying AutoExpo's proprietary inventory systems, which it developed at great cost, as well as employees, to compete directly against Auto Expo. Elyahou will claim that this case is a mere business breakup; it is not. It is a fleecing of AutoExpo by defendants. The damages are believed to exceed $7 million.

AutoExpo sued under multiple theories, but its basis for federal court jurisdiction is based on the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836 ("DTSA"). In a patent attempt to delay this case, Defendants sought leave to file a pre-answer motion to dismiss this case on the theory that there is no viable federal claim, and will apparently argue that the Court should decline to exercise supplemental jurisdiction  over

---

[1] He is also a minority owner of several of the other plaintiff entities.

April 25, 2024
Page 2

state-laws claims. On April 12, 2024, the Court by the Hon. Orelia E. Merchant granted defendants permission to serve a motion to dismiss on May 13, 2024.

On Thursday, April 18, 2024, we had a Fed. R. Civ. P. 26(f) conference with opposing counsel. We discussed Plaintiff's proposed discovery plan and later that day sent an email to opposing counsel attaching our draft discovery plan worksheet containing the dates we proposed (Ex. "A"). In accordance with this Court's draft discovery plan worksheet, we proposed two phases of discovery with a targeted initial phase for purposes of moving this case forward and being able to have meaningful settlement discussions.

Counsel for defendants Certified, Avi Eitan and Fazeeda Kassim (collectively, the "Certified Defendants") responded to our email and draft discovery worksheet, taking the position that, although Your Honor has been assigned as the Magistrate Judge on this case, you do not have "jurisdiction over discovery." (Ex. "B") They also assert that discovery should be stayed, and if we do not consent, that they will pursue staying discovery.  Counsel for Elyahou and SimpSocial LLC also responded, maintaining the same position as the Certified Defendants.  (Ex. "C")

**A Scheduling Conference Should Be Held And A Scheduling Order Issued**

Under Fed. R. Civ. P. 16(b), the Court must issue a scheduling order after receiving the parties Rule 26(f) report. Also, a scheduling order must be issued within 90 days after any defendant has been served, *i.e.*, here, by May 7, 2024. So, we are coming up to the 90-day deadline as set forth under the Rules.

Under the Federal Rules, "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Hong Leong Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013). Defendants would have the burden of establishing that they would be prejudiced in the absence of a stay, which they would not be able to do because the discovery sought by Plaintiffs will undoubtedly occur – if not here then in the Supreme Court of the State of New York, Nassau County – regardless of the outcome of defendants' motion to dismiss. *See, e.g.*, *Windserve Mar. v Workboats*, No. 20-CV-532, 2021 US Dist LEXIS 233265, at *3 (E.D.N.Y. Mar. 2, 2021) (holding that defendants cannot "establish unfair prejudice or undue burden in the absence of a stay, since the discovery sought by WindServe will undoubtedly occur — if not here then in [another] litigation … — regardless of the outcome of defendants' motion to dismiss") (citations omitted).

 On a motion for a stay, courts will consider, among other factors, the "strength of the motion …." *See, e.g., Kirschner v. J.P. Morgan Chase Bank, N.A.*, No. 17 Civ. 6334 (PGG) (SLC), 2020 U.S. Dist. LEXIS 8977, 2020 WL 230183, at *3 (S.D.N.Y. Jan. 15, 2020). Defendants' argument for dismissal is specious and its motion is purely tactical, so as to delay proceedings.

It is fundamental a cause of action will not be dismissed so long as the complaint pleads sufficient facts "to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). The DTSA claim is more than plausible.

The DTSA requires a plaintiff to establish "an unconsented disclosure or use of a trade secret by one who: (i) used improper means to acquire the secret, or (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *See Free Country Ltd v. Drennen*, 235 F.Supp.3d 559, 5 (S.D.N.Y. 2016); *see also* 18 U.S.C. §

April 25, 2024
Page 3

1839(5).[2] A defendant misappropriates a trade secret under the DTSA (1) when it acquires a trade secret by improper means, or (2) discloses or uses the trade secret without consent. *See Medidata Solutions, Inc. v. Veeva Sys.*, 2018 U.S. Dist. LEXIS 199763, *11 (S.D.N.Y. Nov. 26, 2018). The DTSA requires the owner of a trade secret to take "reasonable measures" to keep it secret (*see* 8 U.S.C. § 1839(3)), such as by limiting access (*see, e.g.*, *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 U.S. App. LEXIS 6070, at *5-6, 2022 WL 701161 (2d Cir. Mar. 9, 2022)). These elements are met in the Complaint.

The Complaint specifically identifies the trade secrets, which included a unique, proprietary inventory system that was specifically customized for AutoExpo at a cost of between $50,000 and $170,000; its customer lists with contact information of its customers, which AutoExpo used to generate leads and sell to customers; and its business model, including information related to its revenues and profit margins. (Dkt. 1, ¶¶ 163-169, 171-172, 242, 251-256, 260-264, and 271). The Complaint states facts as to how this information derives economic value as it is not generally known to the public, and AutoExpo's monetary investment to develop. (¶¶ 79, 163-167, 253-255, 260-262). The Complaint alleges that AutoExpo is the owner of the trade secret. (¶¶ 11, 260, 264, 271, 273, 275). AutoExpo took appropriate measures to keep this information secret by limiting access to this information to only employees who owed AutoExpo a fiduciary duty, such as Elyahou himself, who was and is an owner, and at all relevant times was the "Operating Partner." (¶¶ 54, 261, 280). Elyahou held a position of trust. (¶¶ 54, 56, 193). Moreover, it was Elyahou, himself, who was charged with the responsibility to set up the appropriate measures of protection to maintain secrecy, if any measures were lacking. (¶¶ 63, 67-69). Thus, among other things, Elyahou was required to maintain the information in a secured computer system protected by firewalls and other safeguards. (¶ 261). Ordinary employees did not have access to the information entrusted to Elyahou. *Id.*

Here, Plaintiffs will vociferously oppose Defendants' motion to dismiss which Plaintiffs submit is meritless. But, even if Defendants were able to establish that there were no federal question jurisdiction, and if it declined to exercise supplemental jurisdiction (*see Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018)), there can be no prejudice to Defendants if discovery proceeds because the discovery will undoubtedly occur – whether in this court or in state court. Accordingly, the only conceivable reason why Defendants would seek a stay of discovery is because they want to delay discovery.

In any event, at present, no stay is in effect. Therefore, in accordance with the Rules, we respectfully request that a scheduling conference be held and a scheduling order issued. We thank the Court for its attention to this matter.

Respectfully submitted,
MILMAN LABUDA LAW GROUP PLLC
*Michael C. Mulè*
Michael C. Mulè, Esq.

cc:     All Counsel (via ECF)

---

[2] The term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *See* 18 U.S.C. § 1839(3).