UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
                                    .
Siteone Landscape Supply,           .   Docket #CV-23-2084(GRB)(ST)
LLC,                                .
                                    .
          Plaintiff,                .
                                    .   United States Courthouse
                 V.                 .   Central Islip, New York
                                    .   February 27, 2024
Nicholas Giordano, et al.,          .   3:46 p.m.
                                    .
          Defendants.               .
. . . . . . . . . . . . . . . . . . .
```

TRANSCRIPT OF PRE-MOTION CONFERENCE
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For The Plaintiff:          Kevin P. Mulry, Esq.
                            Farrell Fritz, PC
                            400 RXR Plaza
                            Uniondale, NY 11556

                            Evan Gibbs, Esq.
                            Troutman Pepper Hamilton
                            Sanders, LLP
                            Ste. 3000
                            600 Peachtree Street, NE
                            Atlanta, GA 30208

                            Daniel Gorman, Esq.
                            Troutman Pepper Hamilton
                            Sanders, LLP
                            875 Third Ave.
                            New York, NY 10022

For The Defendants:         Michael C. Mule, Esq.
                            Milman Labuda Law Group, PLLC
(Dominick Caroleo, The      3000 Marcus Ave.-Ste. 3w8
 Garden Dept. Corp., 3670   Lake Success, NY 11556
 Route 112, LLC,
 9 4th St., LLC)

2

Robert Milman, Esq.
Milman Labuda Law Group, PLLC
3000 Marcus Ave.-Ste. 3w8
Lake Success, NY 11556

Julie E. Cohen, Esq.
(Nicholas Giordano,Victor        Skadden Arps Slate Keagher
 Caroleo, Narrow Way Realty,     & Flom, LLP
 Ltd., Narrow Way 2, LLC,        One Manhattan West
 Group 5 Associates, Ltd.,       New York, NY 10001
 Scapes Supply, LLC and
 Neway Management, LLC)

Saul D. Zabell, Esq.
Zabell & Collotta, PC
One Corporate Dr.-Ste. 103
Bohemia, NY 11716

Audio Operator:

Transcribing Firm:               Writer's Cramp, Inc.
                                 1027 Betty Lane
                                 Ewing, NJ 08628
                                 609-588-8043

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

3

## Index

|  | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| **Witnesses For The Plaintiff:** | | | | | |
| **Witnesses For The Defendant:** | | | | | |

| **EXHIBITS:** | **Marked** | **Received** |
|---|---|---|

**SUMMATION BY:**

**THE COURT: Finding**          32

1      (Proceeding in progress)

2          THE CLERK:  -- 3-2084, <u>Siteone Landscape Supply, LLC</u>

3   <u>vs. Giordano, et al</u>.  Counsel, please state your appearance

4   for the record.  Plaintiff goes first.

5          MR. MULRY:  For the Plaintiff, Kevin Mulry from

6   Farrell Fritz.  Good morning, Your Honor.  Good afternoon,

7   Your Honor.

8          THE COURT:  Morning.  Good afternoon.

9          MR. MULE:  Good afternoon, Your Honor.  Michael

10  Mule, Milman Labuda Law Group, along with my partner, Rob

11  Milman, on behalf of Defendants, Dominick Caroleo, The Garden

12  Department, Corp., 3670 Route 112, LLC, and 9 4th Street, LLC.

13         MS. COHEN:  Good afternoon, Your Honor.  Julie Cohen

14  from Skadden Arps, on behalf of Defendants Nicholas Giordano,

15  Vic Caroleo, Narrow Way Realty, Ltd., Narrow Way 2, LLC, Group

16  5 Associates, Ltd., Scapes Supply, LLC, and New Way

17  Management, LLC.

18         MR. ZABELL:  Good afternoon, Judge.  Saul Zabell.  I

19  represent the same individuals Ms. Cohen just identified.

20         MR. GIBBS:  Good afternoon (indiscern.).

21         THE COURT:  (indiscern.)

22         MR. GIBBS:  Evan Gibbs.

23         THE COURT:  Okay. Go ahead.

24         MR. GIBBS:  I'm sorry, Your Honor.

25         THE COURT:  (indiscern.)

1          MR. GIBBS:  I had trouble getting my phone off of
2     mute, but this is Evan Gibbs, appearing on behalf of
3     Plaintiff, Siteone, and I'm here with my colleague, Dan
4     Gorman, as well.
5          THE COURT:  Okay.  Anybody else?  Sounds like we've
6     got everyone.  All right.  This is Judge Brown.  There's a
7     Pre-Motion Conference we're on for here, and as you know from
8     my rules and the orders establishing this conference, I don't
9     stop anyone from making a Motion.  You can make any Motion you
10    like, however, I do reserve the right -- If I think we can
11    resolve this here, to deem the Motion made and resolve it.  So
12    feel free to argue anything you want.  With that said, I'll
13    hand it off.  Who would like to take the lead for the
14    Defendants making (indiscern.) the Motion?
15         MR. MULE:  Your Honor, it's Michael Mule.  I'd like
16    to begin on behalf of my clients, if I may?
17         THE COURT:  Okay.
18         MR. MULE:  Okay?
19         THE COURT:  Sure.
20         MR. MULE:  All right.  Great.  Your Honor, I
21    represent the Defendants Dominick Caroleo, The Garden
22    Department Corp, 3670 Route 112, and 9 4th Street, LLC.  The
23    facts in this case, despite the long Complaint, are really
24    rather simple.  Siteone's a multi-national, publicly traded
25    landscape supply company.  They acquired one Defendant in this

1    action.  That's The Garden Department.  In January of 2020,

2    Garden Department had three locations in Long Island they sold

3    for $30 million.  Dom is the sole owner of that corporation,

4    and was at the time, and The Garden Department and Dom

5    individually were required to sign non-competes.

6         They went to work for Siteone thereafter.  Vic and Nick

7    Giordano, Co-Defendants, also went to work for Siteone after

8    the acquisition, but they have no non-competes, no agreements

9    individually not to compete with Siteone.  Siteone went from a

10   $3.8 billion mortgage cap when they acquired Garden

11   Department, to today's 7.45 billion.  They doubled.  In

12   October of 2022, Siteone terminated Don, they terminated Vic.

13   Nick got upset and gets terminated.  Nick and Vic have no

14   restrictions.  They go into business with each other.  Vic has

15   been in the business landscape supply since 1976.  He never

16   stopped.  Been in this for almost 50 years.  Don took over

17   Garden Department in 2005, but Vic always remained in the

18   business.  Nick has been in the business for approximately 20

19   years.  He ran the stores.

20        These folks all are well-versed in the landscape supply

21   business, have a ton of experience.  There's no special sauce

22   in this business.  You basically, you buy the supply, the

23   landscape supplies, you sell it for a fair price, you provide

24   good service, there's no secret identity of customers.  It's a

25   very simple business model.  We submit that the argument by

1   Siteone makes no sense.  They basically have sued Don based on

2   conduct of Vic and Nick in opening a competing business, when

3   they're entitled to do so, and they sued Vic and Nick based on

4   non-competes that are in place with Don, and Don's {sic} doing

5   nothing.  So they try to overcome this disconnect with

6   conclusory group pleading, and that brings me to the three

7   points I'd like to point out and focus the Court's attention

8   on.

9        Number one is, as an initial matter, the corporate -- as

10  to the corporate Defendants, my clients, 3670 Route 112, 9 4th

11  Street, LLC, and Garden Department, there are, like, no

12  allegations in this Complaint.  They allege in paragraphs 10,

13  12 and 13 essentially that those are New York, LLCs, or

14  corporations as the case may be, that Don is the sole owner,

15  and they allege that either -- that the LLC is a party to a

16  Lease, or that Garden Department is a party to the Asset

17  Purchase Agreement.  That's the extent of the facts as to the

18  corporate entities.  There's simply no cause of action as far

19  as any facts alleged against those entities.  And then there

20  are two other things I want to focus the Court's attention on.

21       Number two is, there's a high level problem with the

22  entirety of Siteone's pleading, and that problem is its

23  conclusory group pleading.  Their claims are infected.  The

24  whole Complaint -- approximately one-third of the allegations

25  are Defendants this, Defendants that.  It's a gross

1   oversimplification, does not give any notice to the parties,

2   it's totally impermissible, and so that's a fatal flaw in

3   their Complaint.  And then the last point I'd like to focus

4   the Court's attention on is that Siteone has hinged its

5   federal court jurisdiction here on two claims.  Defend Trade

6   Secrets Act, and the Computer Fraud Abuse Act.  And besides

7   the group pleadings problem, the conclusory pleadings problem

8   that infects all the claims, they simply do not state those

9   claims, and once those claims are gone, this Court could

10  dismiss the whole case, and although they -- it may emphasize

11  supplemental jurisdiction, it's well settled law that federal

12  claims, when eliminated in the early stages of a litigation,

13  the Court should generally decline to exercise pending

14  jurisdiction over remaining state law claims, and that's Klein

15  & Co. Futures vs. Board of Trade, 464 F.3d 255 at 262 (2d Cir.

16  2006).

17      We'll present as much or as little as the Court would

18  like, but I want to get to the two core issues, which are the

19  impermissible group pleading, and the fact that they just

20  failed to state these two federal claims, and that should

21  allow dismissal of the entire Complaint, and they just don't

22  fit any claim in any event.  So as to the supplemental flaw,

23  I'll start with what this Court found in its January

24  (indiscern.) 2024 Order at Docket 104.  The Court referenced

25  the Plaintiff's opening with (indiscern.) papers, where they

1   stated, "This is a simple case.  Siteone purchased Garden

2   Department for 30 plus million, and ask only that Defendants

3   act with good faith, and honor the deal they made, including

4   not competing with Siteone."  The Court found that {quote},

5   "This opening salvo is emblematic of the problems with

6   Plaintiff's approach to this Motion.  Siteone continually

7   oversimplifies the case, aggregating Defendants into a single

8   unit, even though Plaintiff entered into discreet agreements

9   imposing particular obligations upon various Defendants."

10        For example, while the agreements involve a web of

11   transactions, back when Counsel pleaded (indiscern.) to

12   characterize the acquisition as a comprehensive, indivisible

13   deal, and the Court cites Docket 94(1), describing Defendants

14   allege unfair competition with, {quote}, "The business

15   (indiscern.) from that," lumping all the Defendants together.

16   We submit that the Court's statements in that order applies to

17   Siteone's amended Complaint as well.  The overall (indiscern.)

18   with their amended Complaint is that it's just a group

19   pleading.  You look at Paragraph 1.  It says, "Defendants have

20   engaged in a course of conduct that is shocking to the

21   conscience."  Pure conclusion grouped together.  Paragraph 2,

22   "Defendants acting in concert stole Siteone computers."

23   Again, conclusions.  No factual predicate.  Just lump everyone

24   together.  The amended Complaint contains statements that are

25   directly contradicted by the documentary evidence that Siteone

1    itself annexes.  So for example, Paragraph 58 of the amended

2    Complaint says {quote}, "It has now been determine that the

3    property Don Caroleo purchased is located at 38 Yaphank Middle

4    Island Road," {close quotes} yet they attached the Deed at

5    Docket 1-9, showing Narrow Way 2, LLC as the owner, not Don

6    Caroleo.  Paragraph 9 of the amended Complaint alleges that

7    Vic, not Don Caroleo, is a member of Narrow Way 2, LLC.

8        All told, there are 90 allegations approximately, out of

9    256, where they just lump the original Defendants together

10   without differentiation and without factual predicate.  As

11   against the Don Defendants, who I'll call but my clients

12   collectively, they make general undifferentiated references to

13   Defendants, and I'll just list the number of Paragraphs.  1,

14   2, 3, 4, 5, 70, 80 --

15            THE COURT:  Counsel.  Counsel.

16            MR. MULE:  -- (indiscern.) --

17            THE COURT:  Counsel, that's not helpful.  There's a

18   lot of them.  I got it.

19            MR. MULE:  Okay.

20            THE COURT:  Go ahead.

21            MR. MULE:  There's a lot.  All right.  So just to

22   continue.  So, you know, Judge, conclusions obviously are not

23   entitled to the assumption of truth, and that's High Falls

24   Brewing, LLC vs. Boston Beer Company.  That's 852 F. Supp. 2d

25   306, 321.  Conclusions do not constitute plausible allegations

1  as a matter of law, and that's <u>Sumar vs. Brooklyn Hospital</u>

2  <u>Center</u>, 2023 U.S. Dist. LEXIS 222004 (E.D. December 13, 2023).

3  <u>Sumar</u> notes in that case there are allegations -- this was a

4  Title VII claim that the Plaintiff said it was employed by the

5  state, but it didn't assert any facts supporting the

6  employment relationship, so the Court dismissed it because

7  there was no factual predicate, and if you look at the

8  pleadings and the Complaint overall, that is exactly the fatal

9  flaw in the amended Complaint.

10  And this brings me to the second point, which is the

11  federal claims.  The standard for a Computer Fraud Abuse Act

12  claim, number one, it's a statute that's aimed at the typical

13  consequences of hacking, and that's <u>Van Buren vs. United</u>

14  <u>States</u>, 141 S. Ct. 1648 (2021).  Under 18 U.S.C. §1030(a)(4),

15  the Computer Fraud Abuse Act prohibits a Defendant from

16  knowingly and with intent to defraud accessing a protected

17  computer without authorization, and by exceeding whatever

18  authorization was granted, and furthering an intended fraud,

19  or obtaining something of value to access in the protected

20  computer.  The Court's employ a {quote}, "gates-up, gates-down

21  equerry," which means that if the computer system was open

22  such that Defendant permitted access, then the gate was open

23  and there's no claim.  If the gate was closed, such as in a

24  hacking situation, then the claim applies.

25  In addition, among other elements for such a claim, there

1   must be a loss related to a technological harm.  So in <u>Better</u>

2   <u>Holdco, Inc. vs. Beeline Loans</u>, 2020 U.S. Dist. LEXIS 138908,

3   (S.D. July 26, 2021), the Court dismissed to see Computer

4   Fraud Abuse Act claim, because the Plaintiff only alleged that

5   the Defendant downloaded and copied data, but did not

6   otherwise allege that it lost service or access to data, or

7   that its systems were otherwise (indiscern.).  A loss to one's

8   competitive advantage is not damage or loss covered by the

9   statute.  Here the Computer Fraud Abuse Act claim should be

10   dismissed because, again, they just put -- lump together

11   conclusory group pleading, Paragraphs 178 through 186.

12   There's no factual predicate for the Don -- Defendants Don

13   Caroleo, or the entity (indiscern.) which he has ownership.

14   They just lump them together with no factual predicate.

15       The formula on those allegations are Giordano and Don

16   Caroleo, and then it's just -- they just list these generic,

17   broad, conclusory allegations that they unauthorized use of

18   Siteone's protected computer system.  They cite essentially

19   the elements of a claim, but without facts.  In addition, they

20   fail to just -- they fail to state a claim.  I mean, they have

21   an allegation at Paragraph 179 that Don had an unauthorized

22   access to a live data stream.  Number one, they know that's a

23   false allegation, because it was a live website that was open

24   to the public, but besides that flaw, they allege in the

25   amended Complaint that Siteone's {quote}, "firewall was still

1    permitting access," and that's at Paragraphs 104 to 105.  So

2    this would be a gate-up scenario, and they cannot state a

3    Computer Fraud Abuse Act claim when the gate was up.

4         In addition, the amended Complaint alleges no loss

5    related to the technological harm, as in <u>Better co</u>.  I'm

6    sorry, <u>Better Holdco</u>.  It's the same situation.  In addition,

7    they show nothing of value.  In their -- the amended

8    Complaint, they rely on a declaration of David Shlaghack,

9    which is Document number 18, and that document really shows

10   the amount of today's sale of that particular locations, and

11   it has sales to date and the difference.  This is a public

12   company that discloses this type of information.  Nothing of

13   value whatsoever.  So that's the Computer Fraud Abuse Act

14   claim, and that would fail as a matter of law even with the --

15   overlooking the conclusory group pleading, which is a fatal

16   flaw.

17        The Defend Trade Secrets Act also fatally flawed.  As to

18   the Don Defendants, they -- this is really -- it's a

19   duplication of the breach of contract claims, but it's all

20   conclusory allegations.  They just don't state a claim.  In

21   addition, the Defend Trade Secrets Act, like New York, they

22   follow the Restatement six-factor test.  The fatal flaw in

23   Siteone's pleading is they fail to identify any trade secret.

24   And if you search the amended Complaint for a trade secret,

25   you won't find it.  You just get conclusory allegations that

1   Don had access to information relating to Siteone's highly

2   sensitive pricing and customer information.  A conclusion

3   that's at Paragraph 146.

4        In the case Garvey vs. Face of Beauty, LLC, 2022 U.S.

5   Dist. LEXIS 171182 at pages 23 to 24, (S.D. September 21,

6   2022) case, the Court dismissed a Defend Trade Secrets claim

7   because the pricing information, while the Court acknowledge

8   may be a trade secret under certain circumstances, a {quote},

9   "Bare bones pleading that is bereft of non-conclusory

10  allegations that could demonstrate its consumer list pricing,

11  or other business information, or trade secrets," {close

12  quotes} without such -- without specific information and

13  pleading that's beyond bare bones, they can't assert such a

14  claim.  Here Siteone's pleading has zero allegations that

15  information was secret.  They go so far as to have -- at

16  Paragraph 94 they say there was a physical file that Nick

17  allegedly took, but they say, "There's no list as to what was

18  stored in the file.  No way to inventory what was specifically

19  -- identify the documents it contained."  That's hardly a

20  trade secret when they don't even know what's there, at

21  Paragraph 94.

22       Paragraphs 97 through 102, these are also, you know, just

23  the same group pleading issues and conclusory statements.  97

24  says, "It's entirely possible that Giordano and Don were still

25  monitoring security cameras."  Entirely possible is not

1    plausible.  Does not meet the standard.  The allegation is,

2    "There's no way to identify what cameras are functioning or"

3    that's Paragraph 98, or 100,"To the extent that Don's {sic}

4    attempting to access footage."  That's a quote.  "To the

5    extent" is not an actual allegation either.  The Defend Trade

6    Secrets Act requires more than that.  On top of that, they

7    have to show that there are trade secrets, that there's

8    something that's not generally known, and as stated in Garvey,

9    which I cited before, they don't do that.  Similarly, in My

10   Mavens, LLC vs. Grubhub, Inc., that's 2023 U.S. Dist. LEXIS

11   142204 (S.D. August 2023), the Court dismissed where it found

12   that the amended Complaint didn't -- does not allege that

13   Defendants misappropriated source code, or any other internal

14   processes of the software that are not readily identifiable,

15   nor obvious and easily duplicated, and that's at page 50.

16        The Complaint here fall far short in making anything

17   (indiscern.) these conclusory allegations.  I will -- there

18   are generic references to shell companies.  I'll let Co-

19   Defendant Counsel address that, but Your Honor, if you

20   determine that the two federal claims fail, then the entire

21   action should be dismissed and the Court would need not go

22   further.  I would like to just, before I hand it over to Co-

23   Defendant Counsel, I want to point out the primary claims

24   against my client are breach of contract, and this Court spent

25   a lot of time analyzing one of the contracts.  There are two

1    contracts at issue.  One is the Asset Purchase Agreement, and

2    the other is the Coram Lease, which was not signed by anyone

3    in an individual capacity.  It was just signed in a

4    representative capacity.

5        This Court spent a lot of time on that Coram Lease with

6    respect to the Preliminary Injunctions Motion, and in its

7    January 4 decision, this Court found that the plain meaning of

8    beneficiary {quote}, "Cannot possibly support" {close quotes}

9    Siteone's interpretation of that term, which includes any

10   person or entity that may otherwise be receiving a benefit

11   from the landlord.  This Court explain {quote}, "Under this

12   formulation, a restrictive covenant would extend to the

13   landlord's landscaper, or snow remover service, or the utility

14   companies that provide service to the property if paid by the

15   landlord."  Since this Court's conclusion is based on the

16   plain meaning, there is no ambiguity that would require

17   discovery beyond the four corners of the parties' intents.

18   Therefore, to the extent Siteone relies on beneficiaries with

19   respect to the Lease, I submit their claim is dead on arrival

20   as a matter of law.

21       That brings us to the second contract claims, which are

22   the claims based on the Asset Purchase Agreement.  Now these

23   claims are just -- I got to go back to the impermissible group

24   pleading without repeating it, and conclusory, but there are a

25   couple of things I do want to point out.  Number one is, the

1    allegations here against Don are basically to this effect.

2    They say that some people allegedly said that Don is starting

3    a nursery with Giordano, or some Siteone employee said that

4    they were going to work {quote}, "for Don and Giordano".

5    Those are at Paragraphs 22, 52, 59, 64, 69 of the Complaint, a

6    couple of other sections.  I won't bore the Court with it, but

7    they rely on Mr. Salso, who says that he was approached by an

8    unidentified former Garden Department employee who advised

9    him.  In turn, he had spoken to Giordano, who advised him

10   {quote}, "We are opening a nursery business."  Now that

11   allegation itself does not even suggest who the we is, but

12   again, it's just a statement.  That's Paragraph 69 of the

13   amended Complaint.

14       They have allegations that two Siteone customers, also

15   not identified, with whom Salso works regularly, told him that

16   Don Caroleo and Giordano were starting a new nursery.  That's

17   Paragraph 75.  They have a allegation that three employees

18   {quote}, "left Siteone in conjunction with Giordano's

19   termination," and told Siteone employee Pesaro that they

20   {quote}, "were going to work for Don Caroleo and Giordano."

21   That's Paragraph 103.  Now it's somewhat elemental, but

22   someone saying that Don will be competing, that's an

23   allegation of a statement, but it's not an allegation of

24   competing.  It fails to allege competing.  It is fundamental

25   that (indiscern.) future plans are not statements of fact.  I

1   cite the case <u>Sabo vs. Delman</u>, 3 N.Y.2nd 155, 160 (N.Y. Court

2   of Appeals, 1957) case. The Amended Complaint refers to

3   statement of someone indicating that someone else made a

4   statement of what they plan to do in the future.  This does

5   not rise to the level of a statement of fact, it's not

6   plausible, and it does not satisfy basic pleading requirement.

7        In addition, it is well settled in this Circuit that if a

8   claim is based on unsubstantiated hearsay, the Court will

9   routinely dismiss (indiscern.)such claims.  So in the case

10  <u>Schwartz vs. HSBC</u>, 2017 U.S. Dist. LEXIS 94019, the Court did

11  just that, dismissing -- I'm sorry.  In the case <u>Cummings vs.</u>

12  <u>The City of New York</u>, 2020 U.S. Dist. LEXIS 31572 at 36 (S.D.

13  (indiscern.) 2020).  The Court there dismissed discrimination

14  claims based on the {quote}, "unsubstantiated musings of

15  Plaintiff's unidentified colleague." {close quotes}.  In <u>Quirk</u>

16  <u>vs. Katz</u>, 2022 U.S. Dist. LEXIS 165373 (S.D.N.Y. September 13,

17  2022), the Court dismissed claims that were based on someone's

18  testimony that a New York Post reporter told him that Chief

19  Judge Janet DiFiore made a claim that the Plaintiff was

20  racist.  The claim against Judge DiFiore was dismissed.  It

21  was based on this double hearsay -- unsubstantiated double

22  hearsay.  <u>Scott vs. Monk</u>, that's 2022 U.S. Dist. LEXIS 130700,

23  in that case the Plaintiff (indiscern.)claimed that "they

24  overheard" {close quotes} a telephone conversation that the

25  Plaintiff's coworker said that the Plaintiff (indiscern.), and

1    the Court said that does not raise a plausible inference of

2    discrimination.  The case <u>Gertskis vs. New York City</u>

3    <u>Department of Health and Mental Hygiene</u>, 2008 U.S. Dist. LEXIS

4    (S.C.N.Y. September 29, 2008) concluded unsubstantiated double

5    hearsay accusations are insufficient to raise a plausible

6    inference of discriminatory intent under §9(a) (indiscern.)

7    case.

8        Your Honor, we have here a slew -- this amended Complaint

9    is infected with improper conclusory allegations.  This case

10   should not go forward, and I will allow -- and I could

11   (indiscern.) further on the other claims, but the tort claims

12   are essentially the same as the -- they're similar claims.

13   The unfair competition is basically based on misappropriation

14   of proprietary information, or trade secrets, and they don't

15   assert any trade secrets, so you know, that claim fails.  The

16   other tort claims, the tortuous interference with business

17   relations, the case <u>Garvey</u>, 2022 U.S. Dist. LEXIS 171182 at

18   1718, the Court there said, "General allegations of

19   interference with customers without allegations of any

20   specific business relationship that was interfered with must

21   be dismissed," and that's exactly what we have here for the

22   tortuous interference with business relations.  No specific

23   relationship is identified.  It's just conclusions.  They just

24   say, yeah, you interfered with customers.  The tortuous

25   interference with contract, similar flaw in that there are no

1    allegations to identify any contract or any breach by a third

2    party.

3        The allegation they have a -- this, you know, group

4    speak, Paragraph 219, Giordano, Don Caroleo and Vic Caroleo

5    induced one another to breach their non-competes.  This is

6    another conclusion without facts to support it.  It's just a

7    statement.  You know, this is what affects the entirety of

8    their claims.  The last claims against my client are aiding

9    and abetting breach of fiduciary duty, civil conspiracy.  They

10   fail to establish the underlying claims, so those claims fail,

11   and they fail to plead anything which shows one activity by a

12   person acting in concert.  It's insufficient as a matter of

13   law under <u>Palmer vs. City of New York</u>.  That's 564 F. Supp. 3d

14   222 at 243.  Your Honor, I submit that we should have the

15   opportunity to brief this, or this case should be dismissed on

16   this argument.  There is just simply no claims that are

17   properly pled against our client, and they fail to plead them.

18   I yield to my Co-Defendant's Counsel.  I thank you for your

19   time.

20            THE COURT:  All right.  Let me hear from the Co-

21   Defendant Counsel.

22            MS. COHEN:  Good afternoon again, Your Honor.  Julie

23   Cohen from Skadden Arps on behalf of the Vic Defendants, and

24   we would first of all -- I will try not to repeat what Mr.

25   Mule just elegantly said to the Court regarding the Don

1   Defendants, but we obviously agree that there is -- that the

2   Complaint should be dismissed for all of the reasons that Mr.

3   Mule has articulated, and would of course be happy to brief

4   the issue for the Court should the Court want additional

5   briefing on this matter where, you know, there really is sort

6   of -- and I admit to be new to the game here.  I understand

7   the Court has been dealing with this lawsuit for quite some

8   time, and trying to pick apart the pieces of it where there

9   are 13 counts that have been alleged in very conclusory

10  fashion against nine different Defendants.  So everything that

11  Mr. Mule said about the impermissible group pleading, we agree

12  that basically the Plaintiff has failed to even pass the basic

13  Rule 8 standard that would be required to plead a claim, let

14  alone the fact that there are certain claims here that sound

15  in fraud, so let alone the Rule 9(b) pleading with

16  particularity that would be required for those particular

17  claims.

18      And I think really when you step back and you look at the

19  allegations of the Complaint, you've got contract claims that

20  have been pled against those who are not parties to the

21  contract.  You have claims where the basis of the claim is

22  that there has to be some sort of a trade secret that has been

23  alleged.  Some sort of secret sauce, a formulaic Coca-Cola,

24  and that has not been alleged at all.  Like, there's nothing

25  that has been alleged other than confidential -- potentially

1   confidential business information for a landscape supply

2   company, and there are individuals here that have been in the

3   business for a very long time that know this stuff.  You know,

4   Vic Caroleo's been in the business for what, 50 years.  He

5   understands the ins and the outs of the landscape supply

6   business.  You've got claims of interfering with business, and

7   interfering with customer contract without a single allegation

8   of what contracts or customers have actually been interfered

9   with, and again, you've got these claims for fraud and breach

10  of fiduciary duty without even an attempt to plead the

11  heightened requirements of Rule 9(b).

12       Specifically with respect to Vic Caroleo, if you look at

13  the allegations in the Complaint, he's not a party, and the

14  Court has already been through this, to any restrictive

15  covenant, and otherwise he has just thrown in the allegation

16  not having been alleged to do anything other than operate an

17  allegedly competing business, but there's nothing to prevent

18  him from operating a nursery, and with respect to Mr.

19  Giordano, he's not a party to any restrictive covenant.  He's

20  allowed to operate a business.  There are claims with respect

21  to Mr. Giordano that have been pled based on a purported

22  misappropriation of certain information, such as computers and

23  laptops, but again, there is no underlying trade secret that

24  has been properly alleged here, and on that basis the

25  Plaintiffs have failed to properly plead any of those claims.

1       We would also join in emphasizing the fact that should

2   this Court look at the two federal claims that have been pled,

3   and on which the subject matter jurisdiction is based in this

4   Court, and decide that those claims have not been properly

5   pled, then the rest of these claims should also be -- we would

6   suggest should also be dismissed and the Court should decline

7   to exercise supplemental jurisdiction over those attendant

8   state law claims, but I will note that those claims, even if

9   on the merits when you look at each and every one of the state

10  law claims, for the reasons that I have just summarized, they

11  really don't pass muster.

12      Specifically I want to focus on, because I think my Co-

13  Counsel has done a nice job of walking through the various

14  claims that apply to all of the parties, including the Vic

15  Defendants, with respect to the counts that have been pled --

16  alleged against Mr. Giordano, Count 5 for conversion, in order

17  to plead a claim for conversion, Plaintiff must show a

18  possessory right or interest in the property, and dominion

19  over the property, or interference with it, and that's Zamora

20  v. FIT, 834 F. App'x 622 (2d Cir. 2020). First of all, the

21  Plaintiff does not adequately allege that Mr. Giordano took

22  dominion over any property against Plaintiff's right.  The

23  Complaint contains only conclusory allegations that Giordano

24  took Siteone's computer, laptops, and wireless numbers and

25  security cameras, and it relies -- in order to make those

1  statements, all that the Complaint does is rely on the timing
2  of Mr. Giordano's termination.  If you look at Paragraph 94 to
3  103, it doesn't allege that Mr. Giordano was the only one with
4  access to those items.  It doesn't allege that anybody saw him
5  with those items.  It basically only alleges that Mr. Giordano
6  was fired, and thereafter someone -- some items went missing.
7       Those conclusory allegations are not sufficient to
8  maintain a claim of conversion.  In addition, under New York
9  law, when possession of property was initially lawful, which
10  it was here, everybody was working for The Garden Department,
11  you -- Plaintiff needs to plead in order to state a claim for
12  conversion that the demand for the return of the property was
13  made, or that Defendant wrongfully transferred or disposed of
14  it before a demand was made, and there's nowhere in the
15  Complaint any allegation that there was a demand for the
16  return of any property, and therefore we would say that the
17  conversion claim has not been properly pled and should be
18  dismissed, on top of the fact that the claim is duplicative of
19  Plaintiff's claim for breach of contract.  We would then move
20  to fraud, which is Count 9 of the Complaint, that has been
21  pled against Mr. Giordano.
22       Again, claims of fraud are subject to a heightened
23  pleading standard under Rule 9(b).  Plaintiff has not even
24  come close to meeting the requirements of Rule 9(b).  They've
25  not alleged with any specificity, any material

1    misrepresentation.  I suppose the closest they get on that

2    point is the allegation that Giordano misrepresented the

3    status of the desktop computer, but they don't explain why

4    that statement was material, or why that statement was

5    fraudulent, and in any event, Plaintiff could not have

6    adequately relied on that statement, since it has been pled in

7    the Complaint that the person who heard it found the statement

8    odd and went to investigate, and that's at Paragraph 63.

9         With respect to the alleged motive that's pled on the

10   fraud claim, basically the motive is that Mr. Giordano wanted

11   to go make money.  Well, there's plenty of case law on the

12   point that financial gain is not sufficient to allege motive

13   on a fraud claim, Spinnato vs. Unity of Omaha Life Insurance,

14   322 F. Supp. 3d 377 at 401 in (E.D.N.Y. 2018), among other

15   cases, make that point.  And I think with respect to the

16   unjust enrichment claim, which oftentimes, and I think here as

17   well, is sort of a throwaway claim that Plaintiffs put in

18   their Complaint.  Just in case everything else doesn't work,

19   there's unjust enrichment, except that unjust enrichment here

20   really fails for the same reason that the conversion claim

21   failed in that Mr. Giordano, who this claim is alleged

22   against, is really not alleged to have actual possession of

23   anything for which he has been unjustly enriched.  And so on

24   that basis alone, the unjust enrichment claim should be

25   dismissed.  And I would also note that it should be dismissed

1   as duplicative of the breach of contract, unfair competition,
2   and fraud claims.

3        Count 11 is a Breach of Fiduciary Duty claim that has
4   been alleged against Mr. Giordano.  Again, we would argue that
5   the Breach of Fiduciary Duty claim is premised on fraud here,
6   and accordingly, the heightened pleading standard of Rule 9(b)
7   should apply.  To the extent that these allegations appear to
8   be based on the fact that Mr. Giordano's alleged to have a
9   competing business, or an allegedly competing business, as we
10  have already stated, he's allowed to compete.  Mr. Giordano
11  and Vic Caroleo are not subject to any restrictive covenants,
12  and to the extent that they have pointed to allegations in the
13  Complaint that, you know, he, during the time he was working
14  at The Garden Department, went to some other site, well,
15  there's no other allegation that he was on the clock while he
16  was doing whatever he was doing when the investigator followed
17  him, or that he was using that time while he was working in
18  order to start some sort of competing business.  Those
19  allegations just aren't there, and as the Court said in Mayo,
20  Lynch & Associate vs. Fine, (N.Y.A.D. 2d Department 1989),
21  it's fundamental that absent a restrictive covenant not to
22  compete, an employee is free to compete with his or her firm
23  or employer, unless trade secrets are involved or fraudulent
24  methods are employed, and neither of those things have been
25  pled here.  All of the alleged statements on which Siteone

1  bases its breach of fiduciary duty claims are conclusory and

2  speculative at best, and so they should be dismissed.  I think

3  with that, Your Honor, I would just reiterate the points that

4  my Co-Counsel made -- that Mr. Mule made, and suggest that if

5  my Co-Counsel wishes to chime in with anything, I will cede

6  the floor to him and otherwise would suggest to the Court that

7  we are willing to brief all of this for Your Honor, and

8  otherwise suggest that the Complaint should be dismissed in

9  its entirety.

10          THE COURT:  Okay, Counsel, when you say you'd like

11  to brief this, I mean, is there anything left to say? And I'm

12  not being snarky.  I mean, we covered a lot here, right?

13          MS. COHEN:  We have covered a lot, and I think, Your

14  Honor, you would be able to make  a decision based on the

15  arguments that we have made today.  We certainly have covered

16  I think in sum and substance the arguments that we would make,

17  you know, in a 25-page Motion to Dismiss, but again, I'm

18  cognizant that there is a lot to unpack here in 13 different

19  claims with nine different Defendants, and so if it would be

20  helpful we would be obviously willing to do that.

21          THE COURT:  Okay.  All right.  Well, let me hear

22  from Plaintiff's Counsel (indiscern.).

23          MR. ZABELL:  Actually, Judge, this is Saul Zabell.

24  I just need to apologize to the Court.  As much as I'd like to

25  say something, Miss Cohen, my colleague, has covered

1   everything, so I have nothing to add.

2           THE COURT:  That's -- it's lovely to hear from you.

3   Thank you.  That's great news.  Perfect.  So let's go to

4   Plaintiff then, yeah?

5           MR. MULRY:  Oh.  Good afternoon, Your Honor.  Kevin

6   Mulry from Farrell Fritz for the Plaintiffs.  And certainly we

7   would -- and certainly would like to brief the issues.  I

8   don't think I was able to write down all the case citations

9   quick enough so that I could respond to them on the call right

10  now.  The Court has spent a lot of time with this case, as has

11  --

12          THE COURT:  Sorry, Mr. Mulry.  Excuse me.

13          MR. MULRY:  Yes?

14          THE COURT:  This puzzles me.  Yes.  Your adversary

15  just said that they think they covered everything.  I

16  indicated I was not being snarky when I said we've covered a

17  great deal of material.  I would think it was in your client's

18  interest to move things forward, so if you want to do briefs,

19  I'll do that, but it's going (indiscern.) substantial.

20          MR. MULRY:  Well, Your Honor, let me give you my

21  presentation then.  The --

22          THE COURT:  I'd love to (indiscern.).

23          MR. MULRY:  -- The Court looked at in this case so

24  far was one very important issue, but also one very narrow

25  issue presented by the case, and that was the issue with

1  respect to the Coram Lease.  Now just looking at the Coram

2  Lease, there is a significant restrictive Lease issue --

3  restrictive covenant issue with respect to the Coram Leash

4  {sic}, and there's a lot of briefing, and both you and

5  Magistrate Judge Tiscione have given opinions on the meaning

6  of how should beneficiary be looked at in the context of the

7  Coram Lease.  Those issues were all addressed by the Court on

8  a Preliminary Injunction application, and we understand the

9  Court held that there was not a sufficient showing for a

10  Preliminary Injunction.  However, that claim should go

11  forward, and there are certainly issues of fact with respect

12  to the Coram Lease.  In Judge Tiscione's opinion, he

13  specifically recognize that it was unclear whether rental

14  payments -- where the rental payments went, whether Vic took a

15  salary for the CEO position, and whether dividends were paid

16  to shareholders and members of the multiple LLCs that have

17  involvement in the Coram Lease.  That there could be a veil

18  piercing argument that could be advanced.

19      Magistrate Judge Tiscione also recognize that Siteone

20  continues to be harmed by the presence of unexpected

21  competition in the landscaping business, and were Siteone able

22  to show that any of the individual Defendants were personally

23  bound by the Lease terms, then the balance of equities and the

24  public interest would surely weigh in favor of enjoining

25  further competition.  Those issues are all going to be subject

1    to factual questions, and should go to Discovery.  There are

2    sufficient allegations in the Complaint, amended Complaint

3    with respect to those issues.  With respect to the other

4    claims, the federal claims as well as the state claims, I

5    would take a step back and let's look at what happened here,

6    because there are specific allegations as to the specific

7    individual Defendant here that certainly are sufficient for

8    the pleading, and will raise issues of fact that will have to

9    be understood through Discovery.  Don is terminated on October

10   19th.  The next day a computer technician is called into the

11   business and said, "Someone has been trying to get information

12   onto a flash drive from the bookkeeper's laptop computer."

13       That computer is now missing.  No one can locate that.

14   In January, Siteone employees -- and this is the subject of

15   both allegations in the amended Complaint, as well as

16   declarations from numerous fact witnesses through the

17   Preliminary Injunction briefing.  Siteone employees notice

18   that Giordano's computer was missing from his desk.  He said

19   he threw it in the dumpster.  It wasn't there.  Someone looked

20   for that.  There was an allegation in the briefing that a

21   Siteone IT supervisor told him he could get rid of the

22   computer.  It's completely implausible that a Siteone IT

23   supervisor would say, just throw out a business computer.  No

24   one just throws a computer in a dumpster, particularly a

25   computer with confidential business information.  Certainly in

1    that same month, Giordano told a former employee that he and

2    others were opening a nursery, and several current employees

3    of Siteone were seen working at the Middle Island location on

4    company time, where originally the nursery was going to be

5    opened.

6        Know on February 20th Mr. Giordano was terminated.  While

7    he was being terminated, he was wiping his company cell phone

8    by resetting it to factory settings.  That was a business cell

9    phone that he used for business with business information.

10   The very next day confidential business information was

11   missing from an office file cabinet.  That same week the Coram

12   security monitor and DVR recording system are missing.  These

13   all together -- and there are numerous facts that are in the

14   briefing that was before both the Magistrate Judge and Your

15   Honor, show that there is sufficient evidence for this case to

16   go forward, and that there will be issues of fact, and whether

17   the Court rules on the letters that have been submitted and

18   the whole record to deny a Motion to Dismiss, or if you're on

19   a once briefing the parties can all do that, but certainly

20   we're willing to do that.

21       With respect to trade secrets, the allegations in the

22   Complaint are that the information that is now missing under

23   very suspicious circumstances or was information that is

24   information that a competitor used for pricing and bidding

25   strategies, customers, what Siteone sells to those customers.

 1    There were references to the sales data.  Certainly Mr. Don
 2    Caroleo set up a app that had a website, and I think there's
 3    arguments that this was a public website.  This is not a
 4    website that's on The Garden Department website so that
 5    everybody can look in and see how much in sales did the store
 6    do today, and let's compare that historically to last year,
 7    and let's look month-to-month, and look year-to-year.  That,
 8    with respect to sales data, plus other information, did give a
 9    competitive advantage, and we say that the allegations of the
10    amended Complaint fully support the claims under the Trade
11    Secrets Act, and the Computer Fraud Abuse Act.  I'll stop
12    there.  If the Court has specific questions, I'm happy to
13    respond to those.
14            THE COURT:  All right.  Is that it, Mr. Mulry?  Are
15    you done?
16            MR. MULRY:  Yes, Your Honor.
17            THE COURT:  Excellent.  All right.  Well, I've heard
18    enough, and what I'll say is this.  I think Counsel did a fine
19    job today, an excruciatingly fine job.  I have every detail of
20    the argument on the record.  More importantly, as I've been
21    reminded, and of course I recall, I've seen extensive briefing
22    on this case in the context of the Preliminary Injunction
23    proceedings, and as such I believe I'm in any position to rule
24    on this without further delay to this case, which has already
25    been substantially delayed in a sense, and I don't think

1   that's anyone's fault, but it has just taken a while to get

2   our arms around these various issues, so I'm going to deem the

3   Motions made, and I'm going to decide them now.  Will not be

4   issuing a written decision.  The decision will be on the

5   record, but I will say that as part of this decision, I've

6   incorporated everything that was put forth in the parties'

7   letter briefs to the Court, which were quite good and

8   thorough, as well as the argument today, which were detailed

9   down to LEXIS citations, so we have quite an impressive

10  record.

11       With that said, of course which before the Court is a Rule

12  12 Motion to Dismiss the Complaint on the grounds that it

13  fails to state a cause of action.  I will not belabor the

14  record with the standard here, because you all know it quite

15  so very well.  The answer of course is that taking all drawn

16  inferences and (indiscern.) non-movement here the Plaintiff,

17  and question me, and assuming the allegations to be true for

18  these purposes, are there sufficient allegations to go forward

19  with claims that satisfy both Rule 8, as well as in certain

20  instances in this case there are elements of 9(b), but it's

21  mainly Rule 8.  Either way.  But Defendant claims that the

22  allegations are insufficient.  Of course the Court had issued

23  several decisions on this case, and in those Petitions the

24  Plaintiff did not prevail in getting Preliminary Injunctive

25  Relief.  Of course (indiscern.) is adjudged by a completely

1    different standard.  The standard there is that it's quite

2    extraordinary, because Preliminary Injunctions involve

3    extraordinary efforts and extraordinary exercise of power by

4    the Court.

5        This is a different situation.  The question is, does

6    this Complaint -- it's a 55-page Complaint here -- satisfy

7    Rule 8(b) notice in absolute (indiscern.) the Rule 8, and I

8    would say that in the instances where 9(b) an analysis is

9    required, it satisfies 9(b) as well.  Therefore, I'm deeming

10   the Motions made and denied.  So I'm denying the Motions to

11   Dismiss, and the case can move forward.  Now let's get to

12   that, because that to me is the most important thing.  I would

13   like to -- I will leave to Magistrate Tiscione done a fine job

14   in this case, the management of the Discovery, but I do think

15   that this has to be put on a rapid path in Discovery.  I think

16   we have to get this to completion rapidly, because it's an

17   important ongoing business concern.  So with that in mind, I'd

18   love to hear the parties' input as to what you think a

19   reasonable Discovery schedule would look like.  Let me start

20   with the Plaintiff.  Mr. Mulry, what do you think in terms of

21   how long should it take to go from this point where we're

22   denying Motion to Dismiss, to the point where we're ready for

23   the next step,(indiscern.) or the Summary Judgment, or trial,

24   or whatever?

25       MR. MULRY:  Well, Judge, one thing I'll preface that

1    with is the parties do have a call scheduled for tomorrow,

2    meet and confer with respect to Discovery and a Discovery

3    schedule.  I think --

4              THE COURT:  Okay.

5              MR. MULRY:  -- what -- and certainly we're happy to

6    talk about it with you today.  I think our intent was to

7    discuss the issue and present a proposed schedule to Judge

8    Tiscione, but --

9              THE COURT:  Okay.

10             MR. MULRY:  -- our view would be that Discovery

11   should certainly proceed as quickly as possible.  We think

12   certain things can be done in the short-term.  We would look

13   to likely try to get this complete, if we could, in something

14   like four months so that it could be presented to the Court.

15   I think there are some non-party Depositions that could be

16   taken early, because certainly the parties are going to want

17   to exchange paper Discovery, and there'll be some lead time

18   that will be needed for that.  But there are certainly some

19   non-parties who were involved in the events where there are

20   not going to be a lot of documents, and so that's something we

21   would propose.  With respect to the issue on beneficiaries,

22   certainly the issue of -- and again the, as I'm sure Your

23   Honor recalls, Siteone has been paying rental payments to the

24   owner of the Coram property, and the issue of where do those

25   rentals go, who is a beneficiary, where do the proceeds go,

1    that's something that's very relevant.  With respect to the

2    issue of who is a beneficiary, and another very -- an issue

3    that we think is something that should be discussed and

4    address sooner rather than later with respect to Discovery is

5    the forensic issues as to the computer access and the

6    computers that are missing, and those other issues related to

7    that as alleged in the Complaint.

8              THE COURT:  Okay. Who would like to speak for

9    Defendants on that question?

10             MS. COHEN:  Your Honor, it's Julie Cohen.  I'm from

11   Skadden Arps on behalf of the Vic Defendants.  (Indiscern.)

12   Like the Plaintiff suggested, we do have a meet and confer set

13   for tomorrow. We're happy to confer and try and come up with a

14   reasonable schedule between the parties, and submit something

15   to the Magistrate in terms of what we expect for a schedule

16   going forward.  I think we need some time to discuss amongst

17   ourselves.  I think that the schedule they have in mind is

18   much shorter than I was necessarily thinking, given all of the

19   parties here, and I think we may take issue with the request

20   for a {quote} {unquote} "any sort of {quote} {unquote}

21   forensic type Discovery" based on the allegations that have

22   been pled.  Certainly we'll just need to discuss the idea of

23   understanding the parties may want to take some non-party

24   Depositions and whatnot, so I think, you know, a reasonable

25   next step would be for the parties to confer -- have a meet

1   and confer on this, and potentially submit something to the

2   Magistrate for consideration, whether that be, you know, one

3   Proposed Order, or competing kind of Proposed Order.  Then we

4   can figure out how to make the case move forward in light of

5   Your Honor's decision.

6           THE COURT:  Okay.  Would Co-Defendant's Counsel like

7   to speak?

8           MR. MULE:  So I --

9           MR. ZABELL:  Yes, Your Honor.  Michael, go ahead.

10          MR. MULE:  Saul.

11          MR. ZABELL:  No.  No.  Go ahead, Mike.  It's fine.

12          MR. MULE:  Yeah.  I just join in what was said, and

13  I think that once we have our meet and confer we could more

14  intelligently come up with a plan.

15          THE COURT:  Okay.  Mr. Zabell?

16          MR. ZABELL:  (indiscern.) I don't have anything

17  further to add, Judge.  Thank you.

18          THE COURT:  It's a surprising day, Mr. Zabell.

19          MR. ZABELL:  I do my best to be surprising, Judge.

20          THE COURT:  Always, sir.  Always.  It's always a

21  pleasure.  All right.  So I will leave it at that.  The

22  parties are going to meet and confer tomorrow.  I couldn't ask

23  for it any sooner.  Well, you could do it today, but

24  tomorrow's good enough.  But I will say I do think the case

25  should move faster rather than slower, given the nature of the

1    concerns, I think, and we should get this resolved one way or

2    the other soon.  So I'll leave you with that.  Anything else

3    from anybody else before we call it a day?

4              MR. MULRY:  No, Your Honor, on behalf of Plaintiffs.

5              MS. COHEN:  No, Your Honor. On behalf of the Vic

6    Defendants, thank you.

7              MR. MULE:  No, Your Honor, on behalf of the Don

8    Defendants.  Thank you.

9              THE COURT:  All right.  In that case, thank you all

10   for your work. We are adjourned.

11             MR. ZABELL:  Thank you, Judge.

12        (Court adjourned)

13

14                        CERTIFICATION
15   I, Lewis Parham, certify that the foregoing is a correct
16   transcript from the electronic sound recording of the
17   proceedings in the above-entitled matter.
18
19
20   *Lewis Parham*                        3/29/24
21
22   _____      _____
23   Signature of Transcriber                Date