UNITED STATES DISTRICT COURT　　　　　　　　　　　Hon. Orelia E. Merchant
EASTERN DISTRICT OF NEW YORK　　　　　　　　　　M. J. Steven L. Tiscione
----------------------------------------------------------------------X
AUTOEXPO ENT INC., PEACE PROPERTIES LLC,
NETWORK REINSURANCE COMPANY INC., AUTO　　　Case No.: 2:23 cv 9249
EXCHANGE CENTER, LLC, and CHROME
INSURANCE AGENCY LLC,

　　　　　　　　　　　　　*Plaintiffs*

　　against

OMID ELYAHOU, SIMPSOCIAL LLC, FIFTY
SEVEN CONSULTING CORP. d/b/a CERTIFIED
AUTO GROUP a/k/a CERTIFIED PERFORMANCE
MOTORS AVI EITAN, and FAZEEDA KASSIM,

　　　　　　　　　　　　　*Defendants.*
----------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW OF DEFENDANTS
# OMID ELYAHOU AND SIMPSOCIAL LLC
# IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

MATIN EMOUNA, ESQ.
EMOUNA & MIKHAIL, PC
*Attorneys for Omid Elyahou, and Simpsocial*
100 Garden City Plaza, Suite 520
Garden City, New York 11501
Tel (516) 877-9111
memouna@emiklaw.com

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ...........................................................................................1

**FACTUAL AND PROCEDURAL BACKGROUND** .......................................................1

**POINT I**
**PLAINTIFF'S DTSA CLAIM AGAINST OMID ELYAHOU, AND SIMPSOCIAL LLC SHOULD BE DISMISSED.** ................................................................................................ 1

**POINT II**
**THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE THAT THE MATERIAL AT ISSUE QUALIFIES AS TRADE SECRETS** ........................6

**CONCLUSION** .............................................................................................................8

i

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page No.**

*24 Seven, LLC v. Martinez*,
No. 19-cv-07320 (VSB), 2021 WL 276654, at *7 (S.D.N.Y. Jan. 26, 2021) .................................. 4

*Ad Lightning Inc. v. Clean.io, Inc.*,
2020 WL 4570047, at *2 (S.D.N.Y. Aug. 7, 2020) ........................................................................ 3

*Elsevier Inc. v. Doctor Evidence, LLC*,
2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) ...................................................................... 2,3

*ExpertConnect, L.L.C. v. Fowler*,
2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019) ....................................................................... 2

*Garvey v. Face of Beauty LLC*,
2022 WL 5246665, at *8 (S.D.N.Y. Oct. 6, 2019) ......................................................................... 2

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*,
920 F.2d 171, 174 (2d Cir. 1990) ................................................................................................... 3

*Intrepid Financial Partners, LLC v Fernandez*, No. 20-CV-9779, 2020 WL 7774478 at *3
(S.D.N.Y. Dec. 30, 2020) ............................................................................................................... 3

*Lawrence v. NYC Medical Practice, P.C.*,
2019 WL 4194576, at *4 (S.D.N.Y. Sept. 3, 2019) ........................................................................ 2

*N. Atl. Instruments, Inc. v. Haber*,
188 F.3d 38, 46 (2d Cir. 1999) ....................................................................................................... 4

*Poller v. BioScrip, Inc.*,
974 F. Supp. 2d 204, 216 (S.D.N.Y. 2013) .................................................................................... 4

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
No. 21-952, Dkt. No 106-1 (2nd Cir. Mar. 9, 2022) ...................................................................... 4

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
No. 19-cv-793EKRML at 4 (E.D.N.Y. Feb. 12, 2021), aff'd, No. 21-952 (2nd Cir. Mar. 9, 2022) ..5

*Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 425 (S.D.N.Y. 2021) ....................................... 7

Defend Trade Secrets Act of 2016 ("DTSA") ............................................................. 2,3,4,5.6.7,8
18 U.S.C.A. § 1839(3). ............................................................................................................... 2,3
18 U.S.C.A. §1839(3)(A). .......................................................................................................... 4,8

## **EXHIBITS**

Please note that in the moving Memorandum of Law, dated May 12 2024, **Exhibit A** (complaint) and **Exhibit B** (Transcript of the oral argument on April 12, 2024) were attached. In order not create any confusion, we are continuing the Exhihits from C as set forth:

**EXHIBIT C**   Department of Justice Press Release.

**EXHIBIT D**   Kamran Shahkoohi EDNY Criminal Docket

**EXHIBIT E**   Ramin aka Robert Baratian EDNY Criminal Docket

## PRELIMINARY STATEMENT

Defendants Omid Elyahou, and Simpsocial LLC respectfully submit this reply memorandum of law in support of the instant motion to dismiss the Complaint, that has been filed by Plaintiffs Autoexpo Ent. Inc., Peace Properties LLC, Network Reinsurance Company Inc., Auto Exchange Center, LLC, and Chrome Insurance Agency LLC (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

In opposition to Defendants' Motion Plaintiffs submits a memorandum of law replete which conjecture, and conclusory statements masquerading as factual and legal argument. What is noticeably missing is anything — either specific facts or relevant legal argument — to rebut respective Defendants' detailed Memorandum of Law. The Plaintiffs have simply recast the format of the Complaint into a memorandum of law.

## FACTUAL AND PROCEDURAL BACKGROUND

Factual and Procedural background of the matter is presumed based on oral arguments made on April 12, 2024 in addition to Omid Elyahou, and Simpsocial LLC Memorandum of Law and co-defendants' Avi Eitan, Fifty-Seven Consulting Corp. d/b/a Certified Auto Group a/k/a Certified Performance Motors, and Fazeeda Kassim, Memorandum of Law, both dated May 13, 2024. In the interest of brevity, those legal arguments are not repeated herein. The contents of said Memorandum of Law is therefore respectfully incorporated herein and made a part hereof.

No matter how the Plaintiffs are trying to cast this Complaint, dimply this action is a classic business divorce action between two former relatives who operate a used car business.  By way of background, Elyahou is a twenty percent (20 %) and his former brother-in-law, Michael Shahkoohi, ("Shahkoohi"), is an eighty percent (80 %) shareholder of AutoExpo Ent, Inc. ("AutoExpo" or the "Company") that operates as a used car business, in addition to being the

owner, manager, member and officer of the following dealerships: (1) Masterz (2) Automotive Intl (3) Auto Gallery Imports (4) Elegant Motors (5) Pristine Auto Group (6) Pristine Mitsubishi (7) Global Motor Cars dba Masters Motor Cars (8) Wisdom Financial Corp. and (9) Auto Exchange Center LLC.

## POINT I

**1. Plaintiff's DTSA Claim Against Omid Elyahou, and Simpsocial LLC Should Be Dismissed.**

Plaintiff's DTSA claim should be dismissed because the facts in the Complaint are insufficient to support allegations that (1) Plaintiff failed to identify a trade secret with particularity, or that (2) either Defendants misappropriated any supposed trade secret.

First, Plaintiffs' trade secret claims should be dismissed because the Complaint's conclusory allegations fail to properly identify any specific trade secret. As stated in the moving papers, "district courts in this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *ExpertConnect, L.L.C. v. Fowler,* 2019 WL 3004161, at *4 (S.D.N.Y. July 10, 2019) (*citing Elsevier Inc. v. Doctor Evidence, LLC,* 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018)). This Court recently held "the pleading standard set forth in *Twombly* and *Iqbal* requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it to support an inference that the information qualifies as a trade secret." *Garvey v. Face of Beauty LLC*, 2022 WL 5246665, at *8 (S.D.N.Y. Oct. 6, 2022) (*quoting Lawrence v. NYC Medical Practice, P.C.*, 2019 WL 4194576, at *4 (S.D.N.Y. Sept. 3, 2019) (collecting cases). The Court in *Garvey*, dismissed a counterclaim with similar "conclusory" trade secret allegations including "advertising and promotional strategies" and "*a customer and supplier list*." *Id.* at *7 (emphasis added).

The DTSA specifically defines a "trade secret" as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C.A. § 1839(3)(B). In order to qualify as a trade secret, the owner must have "taken reasonable measures to keep such information secret." *Id.* § 1839(3)(A). "To the extent a plaintiff seeks trade secret protection for a compilation of otherwise publicly available information, the plaintiff must demonstrate a 'unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.'" *Intrepid Financial Partners, LLC v Fernandez*, No. 20-CV-9779, 2020 WL 7774478 at *3 (S.D.N.Y. Dec. 30, 2020) (quoting *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.,* 920 F.2d 171, 174 (2d Cir. 1990) (internal quotation marks and citation omitted).

Plaintiffs to date have failed to state the nature of their inventory system. The dealership's inventory system is DealerTrack by Cox Automotive,[1] which is the leading provider of integrated dealership technologies, used by thousands of dealerships across the country.

"[A] party alleging that it owns a trade secret must put forth specific allegations as to the information owned,' such that the opposing party is given fair notice of the claim." *Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at *2 (S.D.N.Y. Aug. 7, 2020 citing *Elsevier Inc.*, 2018 WL 557906, at *4). Plaintiffs has failed to provide any specific allegations as to its alleged trade secrets in this litigation.

---

[1] According to its website https://us.dealertrack.com/content/dealertrack/en/about.html Dealertrack is the leading provider of integrated dealership technologies. From best-in-class Sales and F&I software that improves the customer experience to a Dealer Management System that boosts employee productivity, Dealertrack is committed to the growth and success of your business. Dealertrack products empower dealerships to make better choices about how to run their businesses and promote better customer vision, giving dealerships a cross-product view of each customer. With more freedom and better vision, our dealerships can provide a better buying, borrowing, and service experience within a changing automotive world.

Plaintiffs similarly fail to plead sufficient allegations to demonstrate that its customer lists, financial information, details about customers, proprietary inventory system, and financial information are trade secrets. Compl. ¶¶ 171, 252, 253, 260, 264, and 273. "The *sine qua non* of whether a customer list constitutes a trade secret lies in whether 'the customers are readily ascertainable outside the employer's business as prospective users or consumers of the employer's services or products,' or, by contrast, 'the customers are not known in the trade or are discoverable only by extraordinary efforts and the customers' patronage had been secured by years of effort and advertising effected by the expenditure of substantial time and money.'" *24 Seven, LLC v. Martinez,* No. 19-cv-07320 (VSB), 2021 WL 276654, at *7 (S.D.N.Y. Jan. 26, 2021) (brackets omitted) (quoting *Poller v. BioScrip, Inc.,* 974 F. Supp. 2d 204, 216 (S.D.N.Y. 2013)). "Where it 'would be difficult to duplicate a customer list because it reflected individual customer preferences, trade secret protection should apply.'" Id. (*quoting N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 46 (2d Cir. 1999)). In short, the Complaint lacks any nonconclusory allegations that could demonstrate that its business contacts are trade secrets.

The Second Circuit provides that a party asserting a trade secret misappropriation claim under the federal Defend Trade Secrets Act (DTSA), or New York law, must detail in a pleading "the "reasonable measures" employed to maintain the secrecy of the alleged trade secret. In *Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, Dkt. No 106-1 (2nd Cir. Mar. 9, 2022), the Second Circuit affirmed the District Court's grant of a motion to dismiss, concluding that plaintiff Turret Labs failed to adequately allege that reasonable measures were taken because, although there was an agreement giving the plaintiff's customer exclusive access to the alleged trade secret, this agreement (as well as all surrounding security policy documents) failed to contractually obligate the customer to maintain confidentiality of the alleged secret.

Among other statutory requirements, the DTSA requires that the purported trade secret owner establish that it "t[ook] reasonable measures to keep such information secret." 18 U.S.C. § 1839(3)(b). As noted by the District Judge, the DTSA "does not provide further guidance on what constitutes 'reasonable measures' to keep the information secret." *Turret Labs USA, Inc. v. CargoSprint, LLC,* No. 19-cv-793EKRML at 4 (E.D.N.Y. Feb. 12, 2021), aff'd, No. 21-952 (2nd Cir. Mar. 9, 2022). And, prior to the ruling by the Second Circuit in this case, the Second Circuit had not construed the meaning of the DTSA's "reasonable measures" requirement. *Id*. In granting CargoSprint's motion to dismiss, the District Court concluded that because the trade secret consisted of "the product's functionality – functionality that is made apparent to all users of the [software] program," the "reasonable measures" analysis focuses less on physical security and more on the questions of access, i.e., who is given access, under what circumstances, and under what confidentiality agreements. *Id.* Crucially, because every customer would "be privy to the functions that Turret calls a trade secret" the District Court observed that it was critical that Plaintiff allege that such customers were required to keep such functionality a secret. By failing to allege specific provisions of the exclusive licensing agreement imposing confidentiality obligations on the plaintiff's customer, or any other facts requiring customers of plaintiff's customer to agree to non-disclosure of the alleged secret, the District Court concluded that Turret Labs failed to allege "reasonable measures" sufficient to survive a motion to dismiss.

The Second Circuit affirmed this dismissal, noting that although "[t]he DTSA gives scant guidance on what constitutes 'reasonable measures' to keep information secret," the reasonableness analysis for the type of alleged secret at issue in the case "will often focus on who is given access, and on the importance of confidentiality and nondisclosure agreements to maintaining secrecy." No. 21-952, at 5. The Second Circuit found that Turret Labs' failure to

execute a contract with a nondisclosure obligation (or otherwise sufficiently allege the existence of such an obligation) was fatal to its trade secret misappropriation claim: "[W]ithout confidentiality or nondisclosure agreements in this context, it is not apparent from the [Second Amended Complaint] that any user could not simply replicate the software after using it.". Id. at 6 (emphasis in original). Because of the nature of the alleged trade secrets, the Court further determined that any of the specifically alleged security measures in place such as servers in restricted areas and software access restricted by usernames and passwords were largely irrelevant, because all customers of plaintiff's customer would have the ability to view (and replicate) the functionality because these customers were not bound by confidentiality agreements. *Id*. at 7.

## POINT II

**2. The Complaint Fails to Plausibly Allege that the Material at Issue Qualifies as Trade Secrets**

Throughout the Complaint and the Memorandum of Law in opposition, it is alleged that AutoExpo is the owner of the alleged trade secrets. (*See* Complaint ¶¶ 11, 216, 240, 250.) Yet Plaintiffs' allegations show that AutoExpo, the alleged owner of the Trade Secrets, did not take reasonable measure to keep secret its alleged trade secrets. Plaintiffs' allege that "Plaintiffs have made and make reasonable efforts to maintain the secrecy of this information, including limiting its disclosure to those who owe a fiduciary duty to the dealerships. . . ." (¶ 280).

Clearly, AutoExpo is a single dealership. The reference to dealerships presumably therefore references the multiple dealerships which plaintiff Shahkoohi alleges to operate. (¶¶ 37, 71, 254).

Shahkoohi, is the owner, manager, member and officer of the following dealerships: (1) Masterz (2) Automotive Intl (3) Auto Gallery Imports (4) Elegant Motors (5) Pristine Auto Group (6) Pristine Mitsubishi (7) Global Motor Cars dba Masters Motor Cars (8) Wisdom Financial Corp. and (9) Auto Exchange Center LLC. Thus, by Plaintiffs' own allegations, AutoExpo's Trade

- 6 -

Secrets were voluntarily disclosed to dealerships other than AutoExpo. This is fatal to Plaintiffs' claims under the Defend Trade Secrets Act. *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 425 (S.D.N.Y. 2021)(" Courts regularly deny trade secret protection if the owner voluntarily discloses the alledealshiged secret.") In fact, Plaintiffs' DTSA claim is pleaded in the name of Plaintiffs but it is only AutoExpo who could have standing under the Defend Trade Secrets Act. Thus, as to a showing that Plaintiffs' claim is unmeritorious: Plaintiffs' DTSA claim is deficient on its face.

In page 2 of their opposition Plaintiffs provide:

Elyahou was Shahkooki's (much younger) brother-in-law, who Shakhoohi mentored and trained in the auto dealership business, starting when Elyahou was a teenager, in approximately 1999. (¶¶ 38-58). In addition to the family connection, "Shakhoohi and his business partners … felt that they, in essence, raised" Elyahou "from the time he was fifteen (15) years old," and therefore, "placed their trust in him fully." (¶ 57).

Plaintiffs' cavalier attitude and sense of entitlement is understandable as convicted felons.[2]

In fact in 1999, when "they placed their trust" in Elyahou, it was most certainly not out of the

---

[2] Based on court papers filed in U.S. District Court Eastern District of New York, during various periods from November 1986 to February 1997, Kamran Shahkoohi, and Ramin Baratian pleaded guilty to rigging bids at real estate foreclosure auctions that took place at the Queens County, New York, Courthouse. The defendants rigged bids by agreeing not to bid against each other at public real estate foreclosure auction at the Queens County Courthouse. The bid rigging allowed the conspirators to buy auctioned houses at artificially low prices and deprived mortgage holders, lienholders, and homeowners of the full value of the auctioned properties. Please see attached **Exhibit C**, Department of Justice Press Release.

Kamran Shahkoohi pled guilty to bid rigging in violation of the Sherman Antitrust Act and tax evasion was sentenced to two (2) years' probation; four (4) months home confinement; 200 hours of community service; $20,000.00 fine; $150 special assessment. Please see attached **Exhibit D**.

Ramin aka Robert Baratian pled guilty to bid rigging in violation of the Sherman Antitrust Act and filing false tax returns was sentenced to a term of imprisonment for thirty (30) days. Supervised release for a term of one (1)year and $150 special assessment. Please see attached **Exhibit E**.

goodness of their heart, it was rather due to the fact that they were either incarcerated or under post-trial supervision.

Unfortunately to date, much like the old Iranian caste system, Shahkoohi still believes that his former brother-in-law Elyahou is still an indentured servant.

## CONCLUSION

For the foregoing reasons, Omid Elyahou, and Simpsocial LLC respectfully request that Plaintiffs' claims in the Complaint under the DTSA and for common law misappropriation of trade secrets should be dismissed pursuant to FRCP Rules 12(b)(6).  Upon dismissal of the DTSA claim, Defendants respectfully submit that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

Dated: July 1, 2024
       Garden City, New York

Respectfully Submitted,
EMOUNA & MIKHAIL, PC

*Matin Emouna*

MATIN EMOUNA, ESQ.
*Attorneys for Omid Elyahou, and Simpsocial LLC*
100 Garden City Plaza, Suite 520
Garden City, New York 11501
Tel (516) 877-9111
memouna@emiklaw.com

- 8 -