UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

AUTOEXPO ENT. INC., PEACE PROPERTIES LLC,
NETWORK REINSURANCE COMPANY INC., AUTO
EXCHANGE CENTER, LLC, and CHROME
INSURANCE AGENCY LLC,

                           Plaintiffs,

      -against-

OMID ELYAHOU, SIMPSOCIAL LLC, FIFTY
SEVEN CONSULTING CORP. d/b/a CERTIFIED
AUTO GROUP a/k/a CERTIFIED PERFORMANCE
MOTORS, AVI EITAN, and FAZEEDA KASSIM,

                           Defendants.

-------------------------------------------------------------------X

Case No.: 2:23-cv-9249 (OEM) (ST)

---

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS BY
DEFENDANTS OMID ELYAHOU, SIMPSOCIAL LLC, AVI EITAN, FIFTY SEVEN
CONSULTING CORP. D/B/A CERTIFIED AUTO GROUP A/K/A CERTIFIED
PERFORMANCE MOTORS AND FAZEEDA KASSIM**

---

                           **MILMAN LABUDA LAW GROUP PLLC**

                           *Attorneys for Plaintiffs*
                           3000 Marcus Avenue
                           Lake Success, New York 11042-1073
                           (516) 328-8899 (office)
                           (516) 303-1442 (direct dial)
                           (516) 328-0082 (facsimile)

Of counsel:   Michael C. Mulè, Esq.
                 Netanel Newberger, Esq.
                 Kyle Monaghan, Esq.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT...........................................................................1

FACTS ..............................................................................................................1

STANDARD OF REVIEW ................................................................................6

ARGUMENT ....................................................................................................7

DEFENDANTS' MOTION TO DISMISS MUST BE DENIED ........................7

I.  THE COMPLAINT STATES A VIABLE CLAIM UNDER THE DTSA...................7

      A.The Complaint Sufficiently Alleges That AutoExpo Possessed
      A Trade Secret ........................................................................................9

      B. The Complaint Sufficiently Alleges That AutoExpo Took Reasonable
      Measures To Protect The Trade Secret ...............................................14

      C. Plaintiffs Sufficiently Alleged Misappropriation of Plaintiffs' Trade
      Secrets....................................................................................................18

      D. Plaintiffs Did Not Engage In "Improper Group Pleading" .............19

II. PLAINTIFFS SUFFICIENTLY STATE A CLAIM FOR UNFAIR
COMPETITION .............................................................................................20

III. PLAINTIFFS SUFFICIENTLY STATE A CLAIM FOR CONVERSION .............21

IV. THE COURT MUST REJECT ELYAHOU DEFENDANTS' ARGUMENT
CONCERNING THE COMPLAINT'S ALLEGATIONS MADE "UPON
INFORMATION AND BELIEF"......................................................................23

V. THIS COURT SHOULD EXERCISE ITS DISCRETION IN FAVOR OF
EXERCISING SUPPLEMENTAL JURISDICTION.............................................23

VI. LEAVE TO REPLEAD MUST BE GRANTED IN THE EVENT OF
DISMISSAL ...................................................................................................24

CONCLUSION................................................................................................25

## **TABLE OF AUTHORITIES**

### **Cases**

Atl. Instruments, Inc. v. Haber, 188 F.3d 38 (2d Cir. 1999).......................................... 10

Bricklayers Ins. & Welfare Fund v. Innis Constr., 2021 U.S. Dist. LEXIS 193357,
(E.D.N.Y. 2021)........................................................................................................... 22

Art & Cook, Inc. v. Haber, 416 F. Supp.3d 191 (E.D.N.Y. Oct. 3, 2017).................... 17

Ashcroft v. Iqbal, 556 U.S. 662 (2009).......................................................................... 7

Ashland Mgmt. v. Janien, 82 N.Y.2d 395 N.E.2d 1007 4 N.Y.S.2d 912 (1993) .......... 9

AUA Private Equity Partners, LLC v. Solo, 2018 U.S. Dist. LEXIS 58356 (S.D.N.Y.
April 5, 2018)............................................................................................................... 19

Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407 (S.D.N.Y. 2014)............................... 23

Bell Atl. Corp. v. Twombly, 550 U.S. 554 (2007) ........................................................... 7

Benzinger v. NYSARC, Inc. New York City Chapter, 385 F. Supp. 3d 224 (S.D.N.Y. 2019) ... 24

Big Vision Private, Ltd. v. E.I. DuPont de Nemours & Co., 610 Fed. Appx. 69 (2d Cir. 2015) . 21

Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495 (S.D.N.Y. 2017)............................... 9

Buday v. N.Y. Yankees P'ship, 486 Fed. Appx. 894 (2d Cir. 2012) ............................... 6

Catalyst Advisors, L.P. v Catalyst Advisors Invs. Global Inc., 602 F. Supp. 3d 663, 672
(S.D.N.Y. 2022) ........................................................................................................... 9

Catalyst Advisors, LP v. Catalyst Advisors Invs. Glob. Inc., 2024 U.S. Dist. LEXIS 24552, *62
(S.D.N.Y. Feb. 9, 2024)............................................................................................... 9

Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018)......................... 24

Cement & Concrete Workers Dist. Council Welfare Fund v. Baroco Contr. Corp.,
2021 U.S. Dist. LEXIS 51509 (E.D.N.Y. 2021)......................................................... 22

Charles Ramsey Co. v. Fabtech-NY LLC, 2020 U.S. Dist. LEXIS 9348 (N.D.N.Y. 2020) .. 14, 18

Chevron U.S.A., Inc. v. Roxen Serv., Inc., 813 F.2d 26 (2d Cir. 1987)......................... 9

Citigroup[Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30
(2d Cir. 2010)............................................................................................................... 13

Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43 (2006) ....................... 22

Core SWX, LLC v. Vitec Grp. US Holdings, Inc., 2022 U.S. Dist. LEXIS 125198 at *20
(E.D.N.Y. July 14, 2022) ............................................................................................. 13

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991).......................... 25

Cruz v. TD Bank, N.A., 742 F.3d 520 (2d Cir. 2013) ................................................... 25

DFO Glob. Performance Com. Ltd. (Nevada) v. Nirmel, No. 20-CV-6093 (JPO),
2021 U.S. Dist. LEXIS 148009, 2021 WL 3475596 (S.D.N.Y. August 6, 2021) ....... 18

Elliot-Leach v. New York City Dep't of Educ., 201 F. Supp. 3d 238 (E.D.N.Y. 2016)............. 25

Elsevier Inc. v. Doctor Evidence, LLC, 2018 U.S. Dist. LEXIS 10730 at *17 (S.D.N.Y.
Jan. 23, 2018) .............................................................................................................. 13

Free Country Ltd v. Drennen, 235 F. Supp. 3d 559 (S.D.N.Y. 2016). ................................. 10, 20

Garvey v. Face of Beauty, LLC, 2022 U.S. Dist. LEXIS 171182 at *23 (S.D.N.Y.
Sep. 21, 2022) ............................................................................................................. 13

Harris v. Leon, 2023 U.S. Dist. LEXIS 26806 (S.D.N.Y. Feb. 16, 2023).................... 24

Hayden v. Paterson, 594 F.3d 150 (2d Cir. 2010) ........................................................... 7

Holmes v. Allstate Corp., 2012 U.S. Dist. LEXIS 24883 (S.D.N.Y. Jan. 27, 2012).................. 20

IME Watchdog, Inc. v. Gelardi, 2022 U.S. Dist. LEXIS 86997 (E.D.N.Y. May 13, 2022) ........ 10

Intrepid Fin. Partners, LLC v. Fernandez, 2020 U.S. Dist. LEXIS 244742 at *13 (S.D.N.Y. Dec. 30, 2020) .......................................................................................................................... 13

Jasco Tools, Inc. v. Dana Corp. ("In re Dana Corp."), 574 F.3d 129 (2d Cir. 2009) .................. 10

Katz Dochrermann & Epstein, Inc. v. Home Box Office, 1999 U.S. Dist. LEXIS 3971 (S.D.N.Y. Mar. 31, 1999) ........................................................................................................................... 21

Lefkowitz v. Bank of N.Y., 676 F. Supp. 2d 229 (S.D.N.Y. 2009) ............................................. 22

LoPresti v. Mass. Mut. Life Ins. Co., 30 A.D.3d 474 (2d Dep't 2006) ........................................ 21

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160 (2d Cir. 2015) .......... 25

McKenzie-Morris v. V.P. Records Retail Outlet, Inc., 1:22-CIV.-1138 (GHW), 2022 WL 18027555 (S.D.N.Y. Dec. 30, 2022) ....................................................................................... 25

McKenzie-Morris v. V.P. Records Retail Outlet, Inc., 2022 U.S. Dist. LEXIS 233796 (S.D.N.Y. Dec. 30, 2022) .......................................................................................................... 25

Medidata Sols., Inc. v. Veeva Sys., 2018 U.S. Dist. LEXIS 199763 (S.D.N.Y. Nov. 26, 2018) ................................................................................................................. 8, 14, 18

My Mavens, LLC v. Grubhub, 2023 U.S. Dist. LEXIS 142204 (S.D.N.Y. Aug. 14, 2023) ........ 17

North Atl. Instruments, Inc. v. Haber, 188 F.3d 38 (2d Cir. 1999) ............................................. 20

Plaza Motors of Brooklyn, Inc. v. Bogdasarov, 2021 U.S. Dist. LEXIS 230156 (E.D.N.Y. Dec. 01, 2021) .......................................................................................................... 10

Plusgrade LP v. Endava Inc., 2023 U.S. Dist. LEXIS 39114 (S.D.N.Y. March 8, 2023) ........... 20

Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674 (2d Cir. 1990) ................................. 6

RKL Inc., d/b/o Roll-Krafi v. Grimes, 177 F. Supp. 2d 859 (N.D. Ill. 2001) .............................. 19

Rodney v. United Masters, 2023 U.S. Dist. LEXIS 33499 (E.D.N.Y. Feb. 10, 2023) ................. 17

Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209 (S.D.N.Y. Apr. 12, 2004) .......... 17

Sabine Oil & Gas Corp. In re Sabine Oil & Gas Corp., 547 B.R. 503 (Bankr. S.D.N.Y. 2016) ........................................................................................................................ 17

Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc., 156 F. Supp. 3d 348 (E.D.N.Y. 2016) ......................................................................................................................... 19

Sapir v. Rosen, 2021 U.S. Dist. LEXIS 189350 (E.D.N.Y. Sep. 30, 2021) ................................ 17

Superb Motors Inc. v. Deo, 2023 U.S. Dist. LEXIS 198355 (E.D.N.Y. Sept. 29, 2023) .............. 9

Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., 2016 U.S. Dist. LEXIS 130918 (S.D.N.Y. 2016) ............................................................................................. 8, 14, 15

Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175 (2d Cir. 2011 ........................................ 20

Town & Country Linen Corp. v. Ingenious Designs LLC, 556 F. Supp. 3d 222 (S.D.N.Y. 2021) ............................................................................................................................ 9

Transaero, Inc. v. Chappell, 2014 U.S. Dist. LEXIS 62635 (E.D.N.Y. 2014) ............................ 20

TRB Acquisitions LLC v. Yedid, 2021 U.S. Dist. LEXIS 16513 at *6 (S.D.N.Y. Jan. 28, 2021) ............................................................................................................................. 13

Turret Labs USA, Inc. v. CargoSprint, LLC, 2022 U.S. App. LEXIS 6070 (2d Cir. 2022) ................................................................................................................... 8,15,17

UrthTech LLC v. GOJO Indus., 2023 U.S. Dist. LEXIS 125555 at *32 (S.D.N.Y. July 20, 2023) ............................................................................................................................ 17

Vacold LLC v. Cerami, 2002 U.S. Dist. LEXIS 1895 (S.D.N.Y. Feb. 7, 2002) .......................... 25

Wu v. Pearson Educ., Inc., 2010 U.S. Dist. LEXIS 103488 (S.D.N.Y. Sep. 29, 2010) .............. 23

Xavian Ins. Co. v. Marsh & McLennan Cos., No. 18 Civ. 8273 (DLC), 2019 U.S. Dist. LEXIS 65067, 2019 WL 1620754 (S.D.N.Y. Apr. 16, 2019) ................................................................ 15

Zabit v. Brandometry, LLC, 540 F. Supp. 3d 412 (S.D.N.Y. 2021) ....................................... 9, 17

## **Statutes**

18 U.S.C. § 1836.................................................................................................... 1
18 U.S.C. § 1839(3)........................................................................................... 8, 14
18 U.S.C. § 1839(5)............................................................................................... 8
28 U.S.C. § 1367(c)......................................................................................... 23, 24
Fed. R. Civ. P. 15(a)............................................................................................ 25
Rule 12(b)(1)......................................................................................................... 6

## **Rules**

CPLR § 3217(b).................................................................................................... 2
CPLR §§ 2004, 2005............................................................................................. 2
Fed. R. Civ. P. Rule 12(b)(1)............................................................................... 12
Rule 12(b)(1).................................................................................................. 6, 12
Rule 12(b)(6)................................................................................................... 6, 7

## PRELIMINARY STATEMENT

Short on substance, defendants Avi Eitan, Fifty Seven Consulting Corp. d/b/a Certified Auto Group a/k/a Certified Performance Motors and Fazeeda Kassim ("Kassim") (collectively, "Certified Defendants") and defendants Omid Elyahou ("Elyahou") and Simpsocial LLC ("SimpSocial") (collectively, "Elyahou Defendants") (Certified Defendants and Elyahou Defendants collectively, "Defendants"), separately move to dismiss Plaintiffs' First Cause of Action (Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.* ("DTSA")), Second Cause of Action (Injunctive Relief under the DTSA), Third Cause of Action (Misappropriation), Fourth Cause of Action (Unfair Competition) and Sixth Cause of Action (Conversion), despite the well-pled allegations concerning the trade secrets and Plaintiffs' measures to keep this information secret.

For the reasons set forth below, Plaintiffs have sufficiently stated each of their claims.

Accordingly, the motions to dismiss by the Certified Defendants and the Elyahou Defendants (collectively, the "Defendants") must be denied in their entirety.

## FACTS

On October 26, 2023, AutoExpo commenced an action against Elyahou and SimpSocial in Supreme Court, Nassau County (Index No.: 617486/2023, hereinafter the "AutoExpo State Action")[1] by Summons with Notice.  After Elyahou and SimpSocial appeared and made a demand for the Complaint in that action, the parties stipulated to extend the time for AutoExpo to file a complaint until December 18, 2023.  By that time, Plaintiffs had uncovered additional facts.

---

[1] Elyahou Defendants also reference another case in Supreme Court, Nassau County (Index No.: 617795/2023), which is a special proceeding that was fully briefed and awaiting decision and is completely irrelevant to this action. Also, unless otherwise stated, all paragraph references contained herein refer to the Complaint filed on December 18, 2023 (Dkt.1).

On December 18, 2023, Plaintiffs commenced the instant action in federal court with federal claims and additional parties. On the same day, in the AutoExpo State Action, AutoExpo also filed a motion pursuant to CPLR § 3217(b) to dismiss that action without prejudice in favor of the instant case or alternatively, pursuant to CPLR §§ 2004, 2005 and 3012(d) extending the time in which AutoExpo may serve a complaint. The motion was fully briefed and awaiting a decision.

AutoExpo is a domestic corporation with a principal place of business at 46 Northern Boulevard, Great Neck, New York. (¶ 15). Michael Shahkoohi ("Shahkoohi") is the majority shareholder of AutoExpo.  (¶ 16). Elyahou was Shahkooki's (much younger) brother-in-law, who Shakhoohi mentored and trained in the auto dealership business, starting when Elyahou was a teenager, in approximately 1999. (¶¶ 38-58). In addition to the family connection, "Shakhoohi and his business partners … felt that they, in essence, raised" Elyahou "from the time he was fifteen (15) years old," and therefore, "placed their trust in him fully." (¶ 57).

AutoExpo, Peace Properties, LLC ("Peace Properties"), Network Reinsurance Company Inc. ("Network Reinsurance"), Auto Exchange Center, LLC ("AEC") and Chrome Insurance Agency LLC ("Chrome Insurance") are under a common ownership, and Shahkoohi and Elyahou are owners of each entity. (¶¶ 15-26, 54).  SimpSocial is a limited liability company with its principal place of business in New York County, New York; Elyahou is the sole member of SimpSocial.  (¶¶ 28-29).

From Elyahou's start in the auto dealership in approximately 1999, Shakhoohi's trust in Elyahou, and in turn, Elyahou's position, responsibility and stake in AutoExpo and Peace Properties grew. In approximately May 2000, shortly after Elyahou had become a manager at AutoExpo's Northern Boulevard, Great Neck location, and at Elyahou's suggestion, Avi Eitan

("Eitan"), became a manager employed by AutoExpo. (¶¶ 47, 87-88, 97). In 2006, Elyahou was elevated to "Operating Partner," obviously a high position of trust, and in exchange for a capital contribution and his work on behalf of AutoExpo, he was granted a 20% ownership interest in AutoExpo. (¶¶ 54-56).

By handwritten agreement in September 2008, Elyahou's obligations with respect to AutoExpo and Peace Properties were further delineated. Pursuant to the September 2008 Agreement, Elyahou, as AutoExpo's "Operating Partner", explicitly agreed that he would "not enter into any other partnership or any other business (directly or indirectly) other than AutoExpo & its subsidiaries" (¶¶ 59-60), i.e., he agreed not to work for competitors of AutoExpo or its subsidiaries while an owner. He agreed to take "charge of new ideas & investments." (¶ 60). He agreed that Shakhoohi and Ramin "Robert" Baratian ("Robert") would be the "Senior Advisors to the company and every decision had to be approved by at least one of them." (¶ 64). Elyahou had an ability to "leave the partnership," but if he did, the redemption of his interest was limited to his share of the "cash value of merchandise & money in the bank of the company". (¶ 62).

Soon after Elyahou entered in the September 2008 Agreement, between 2009 and 2014, AutoExpo invested between $50,000 and $170,000 to have a unique, confidential and proprietary inventory system ("AutoExpo Inventory System" or "Inventory System") developed and customized for its use. (¶¶ 79, 166). The proprietary AutoExpo Inventory System included processes to streamline dealership operations, inventory management, cash flow management and reporting features that identify areas of improvement, and information related to its revenues and profit margins. (¶¶ 79, 125, 163-167, 242, 251-256, 260-262). AutoExpo also had a customer relationship management and leads generation system ("CRM Suite") (¶¶ 125, 142). Both the AutoExpo Inventory System and CRM Suite were used to generate leads and bids, and sell to

customers as well as customer lists with contact information of its customers. (¶¶ 5, 79, 125, 163-167, 242, 251-256, 260-262).

It was patently clear to Elyahou that AutoExpo's trade secrets, *e.g.*, its Inventory System and customer lists, were confidential. This is clear because Shakhoohi "introduced Elyahou to" this "unique inventory system …." (¶163). Shakhoohi "taught Elyahou" the process "of successfully operating an automobile dealership" using "inventory management" and other "reporting features" to streamline dealership operations. (¶164). "The information Shakhoohi imparted to Elyahou was … unique, <u>confidential</u>, and proprietary." (¶165). In short, the proprietary Inventory System "contained the blueprint for … success" in operating the AutoExpo. (¶167).

It was also patently clear to Elyahou that he was required to keep AutoExpo's trade secrets confidential. This is so because access to AutoExpo's confidential information and trade secrets was "restrict[ed] … only to employees who have a fiduciary duty to AutoExpo, *e.g.*, only the owners like Elyahou and Shakhoohi, who were not merely business fiduciaries but also family. (¶¶ 39-45, 261). No ordinary employee had access to the information entrusted to Elyahou. (<u>Id.</u>). In addition, the trade secret information was "required to [be] maintain[ed] in a secured computer system protected by firewalls and other appropriate safeguards, such as usernames and passwords." (¶¶ 260-262). In addition, in entering into the September 2008 Agreement, Elyahou agreed that, while he was an owner of AutoExpo, he would not work for any other automobile dealership "other than AutoExpo & its subsidiaries," <u>i.e.</u>, competitors (¶¶ 59-60). Elyahou was taught how to use the Inventory System and knew that AutoExpo derived independent economic value from that system and from its other trade secrets, such as customer lists, that were not generally known and readily ascertainable. (¶¶ 262-64).

In March 2020, after nearly 20 years at AutoExpo, Eitan suddenly resigned from AutoExpo. (¶ 97). Certified Performance was formed as a limited liability company with its principal place of business in Nassau County, New York; Eitan is the sole member of Certified Performance.  (¶¶ 31-32, 98).

Meanwhile, Elyahou sought to misappropriate, and stole, AutoExpo's customized, unique and proprietary inventory system for use at his competing group of dealerships at Certified.  (¶¶ 166-169, 171).   In breach of his fiduciary duties to AutoExpo and Shahkoohi, Elyahou had AutoExpo employees work for his own group of dealerships while both Elyahou and those AutoExpo employees were employed by AutoExpo and were paid to perform work only for AutoExpo.  (¶ 170). Elyahou's actions was also in direct contravention of his express agreement, in consideration for his 20% ownership stake, not to work for other automobile dealerships.

In addition, as a longtime former manager of AutoExpo, Eitan knew its business and knew full well that AutoExpo relied upon its proprietary Inventory System and CRM Suite, including customer lists and information, to generate leads and sell to customers. (¶¶ 240-42, 264). Certified, Eitan and Kassim, along with Elyahou, knew that the information contained in the AutoExpo Inventory System and its customer list were trade secrets. (¶¶ 240-42, 264). Certified and Eitan knew that Elyahou managed AutoExpo, and it can reasonably be inferred that they knew that its business model was significantly enhanced by its Inventory System, and that such Inventory System would be valuable in its own business. (Id.). Therefore, it is not surprising that Eitan and Certified joined in Elyahou's scheme to divert trade secrets and business from AutoExpo to Certified, knowing that they acquired that information by improper means.  (Id.)

Elyahou, Certified and Eitan misappropriated AutoExpo's trade secrets and confidential information; they knew it was secret; they knew it was valuable; they had no permission to utilize

Auto Expo's proprietary Inventory System, its customer list and information, financial information and details about customers; but regardless, Elyahou took that information, and Elyahou, Certified and Eitan used that information to steal AutoExpo's business model and business, including its customers and leads.  (¶¶ 273, 275).

For the reasons set forth below, the motions to dismiss by the Certified Defendants and the Elyahou Defendants must be denied in their entirety.

## STANDARD OF REVIEW

### A.      Rule 12(b)(1)

When deciding a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." See Buday v. N.Y. Yankees P'ship, 486 Fed. Appx. 894, 895 (2d Cir. 2012) (summary order).

To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court must resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings. See Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  In addition, when a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, a court should consider the Rule 12(b)(1) challenge first.  See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

### B.      Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; see also Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." See Iqbal, 556 U.S. at 679.  To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." See Iqbal, 556 U.S. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer *possibility* that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556) (emphasis added).

## ARGUMENT

## DEFENDANTS' MOTION TO DISMISS MUST BE DENIED

### I.    The Complaint States A Viable claim Under The DTSA

Both the Certified Defendants and the Elyahou Defendants argue that Plaintiffs have failed to identify particular trade secrets subject to the Defend Trade Secrets Act ("DTSA") and have failed to specifically allege that it took reasonable measures to keep that information secret. For the reasons set forth below, Plaintiffs have sufficiently stated a claim under the DTSA.

The DTSA requires a plaintiff to establish "an unconsented disclosure or use of a trade secret by one who: (i) used improper means to acquire the secret, or (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or

through a person who owed such a duty." See Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., 2016 U.S. Dist. LEXIS 130918, *19 (S.D.N.Y. Sept. 23, 2016); see also 18 U.S.C. § 1839(5). The term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." See 18 U.S.C. § 1839(3).

"To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." Medidata Sols., Inc. v. Veeva Sys., 2018 U.S. Dist. LEXIS 199763, *8 (S.D.N.Y. Nov. 26, 2018). The Second Circuit has emphasized that:

> Under Section 1836 of the DTSA, the owner of a "trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." § 1836(b)(1). For "financial, business, scientific, technical, economic, or engineering information" to constitute a "trade secret," two factors must be satisfied: (A) the owner must have "taken reasonable measures to keep such information secret"; and (B) the information must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . ." 18 U.S.C. § 1839(3), (3)(A)-(B).

Turret Labs USA, Inc. v. CargoSprint, LLC, 2022 U.S. App. LEXIS 6070, *2-3 (2d Cir. 2022).

In their motion papers, Defendants argue that Plaintiffs failed to sufficiently allege facts from which it may be plausibly inferred (i) that AutoExpo possessed a trade secret and (ii) that AutoExpo took sufficient reasonable measures to protect its trade secrets. These arguments fail as a matter of law.

A. The Complaint Sufficiently Alleges That AutoExpo Possessed A Trade Secret

As an initial matter, it is fundamental that "[t]he existence, *vel non*, of a trade secret usually is treated as a question of fact," and properly within the province of the jury. Chevron U.S.A., Inc. v. Roxen Serv., Inc., 813 F.2d 26, 29 (2d Cir. 1987); see also, e.g., Town & Country Linen Corp. v. Ingenious Designs LLC, 556 F. Supp. 3d 222, 274 (S.D.N.Y. 2021). As observed in Zabit v. Brandometry, LLC, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021): "The 'most important consideration' in determining whether information is a trade secret is 'whether the information was secret.'" Id. (quoting Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495, 514 (S.D.N.Y. 2017)); see also Ashland Mgmt. v. Janien, 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 604 N.Y.S.2d 912 (1993) ("[A] trade secret must first of all be secret"); Catalyst Advisors, L.P. v Catalyst Advisors Invs. Global Inc., 602 F. Supp. 3d 663, 672 (S.D.N.Y. 2022).[2]

This Court's opinion in Superb Motors Inc. v. Deo, 2023 U.S. Dist. LEXIS 198355, at *33 (E.D.N.Y. Sept. 29, 2023), modified in part on other grounds, 2024 U.S. Dist. LEXIS 9405 (E.D.N.Y. Jan. 18, 2024), is helpful. See id., 2023 U.S. Dist. LEXIS 198355, at *12–16, 38-39. In Superb Motors, this Court analyzed strikingly similar DTSA claims, also by an automobile dealership, in the context of an Order to Show Cause for a preliminary injunction, and on that prong of the preliminary injunction standard analyzing the merits of the DTSA claims, this Court found that the allegations raised substantial questions on the merits. Id. This Court observed in Superb Motors that "'[c]onfidential proprietary data relating to pricing, costs, systems, and

---

[2] "'[I]t is axiomatic that a plaintiff cannot recover for the misappropriation of a trade secret if he revealed that secret' to the world" (Catalyst Advisors, LP v. Catalyst Advisors Invs. Glob. Inc., 2024 U.S. Dist. LEXIS 24552, *62 (S.D.N.Y. Feb. 9, 2024)) (quoting Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495, 518 (S.D.N.Y. 2017). However, "absolute secrecy is not required …." Town & Country Linen Corp. v. Ingenious Designs LLC, 556 F Supp 3d 222, 258 (S.D.N.Y. 2021) Instead, a trade secret simply "must be veiled in sufficient secrecy that except by use of improper means, there would be difficulty in acquiring the information." Id. (internal quotation marks and citations omitted).[2] So, for example, an "owner of a trade secret may disclose it to others pledged to secrecy without effecting a forfeiture of trade secret protection. Id. at 262 (internal quotation marks and citations omitted).

methods are protected by trade secret law.'" Id., 2023 U.S. Dist. LEXIS 198355, at *38 (quoting Jasco Tools, Inc. v. Dana Corp. ("In re Dana Corp."), 574 F.3d 129, 152 (2d Cir. 2009) (applying New York law).

Also, it is fundamental that customer lists may be treated as a trade secret. See Plaza Motors of Brooklyn, Inc. v. Bogdasarov, 2021 U.S. Dist. LEXIS 230156 at **14-15 (E.D.N.Y. Dec. 01, 2021) (internal citations omitted) ("[a] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected…against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable."); IME Watchdog, Inc. v. Gelardi, 2022 U.S. Dist. LEXIS 86997 (E.D.N.Y. May 13, 2022), reconsideration denied, 2022 U.S. Dist. LEXIS 114267 (E.D.N.Y. June 28, 2022) (holding that a business's customer lists and sales reports, which recorded how much customers paid, to be trade secrets.) Moreover, as this Court specifically observed in Superb Motors, "a customer list 'developed by a business through substantial effort and kept in confidence may be treated as a trade secret …  provided the information it contains is not otherwise readily ascertainable.'" Id., 2023 U.S. Dist. LEXIS 198355, at *38 (quoting Free Country Ltd v. Drennen, 235 F. Supp. 3d 559, 566 (S.D.N.Y. 2016) (quoting N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 46 (2d Cir. 1999))).

Moreover, whether proprietary information or a customer list is protected as a trade secret is ordinarily a question of fact. See Catalyst Advisors, 602 F. Supp. 3d at 672 ("the question of whether proprietary information qualifies as a trade secret is ordinarily a question of fact not resolvable on a motion to dismiss"); see also, Superb Motors, 2023 U.S. Dist. LEXIS 198355, at *38 ("[t]he question of whether or not a customer list is a trade secret is generally a question of fact") (internal quotation marks and citations omitted). Accordingly, courts will not "dismiss

10

claims involving trade secrets" unless "it is clear that the information at issue is not actually secret or there is no discernible economic value from that information not being generally known." Catalyst Advisors, 602 F. Supp. 3d at 672 (citations omitted).

Based on these standards, the Complaint amply pleads that AutoExpo possessed a trade secret. The Complaint specifically identifies the trade secrets, which included AutoExpo's proprietary Inventory System that was *specifically customized* for AutoExpo at a cost of between $50,000 and $170,000, and which included processes to streamline dealership operations, inventory management, cash flow management and reporting features that identify areas of improvement, and information related to its revenues and profit margins. (¶¶ 79, 125, 163-167, 242, 251-256, 260-262). Significantly, that proprietary Inventory System was only developed between 2009 and 2014, after Elyahou became Operating Partner and after he entered in the September 2008 Agreement. (¶¶ 79, 166). Due to Elyahou's position of trust, his close family relationship and Elyahou's ownership interest and agreement in 2008 not to work for "other business[es] (directly or indirectly) other than AutoExpo & its subsidiaries" (supra), Shakhoohi "introduced Elyahou to" this "unique inventory system …." (¶163). Shakhoohi "taught Elyahou" the process "of successfully operating an automobile dealership" using "inventory management" and other "reporting features" to streamline dealership operations. (¶164). Elyahou knew that the "information Shakhoohi imparted to Elyahou was … unique, <u>confidential,</u> and proprietary" (¶165), conveying that it was a secret. In addition, AutoExpo used its customer relationship management and leads generation system, its CRM Suite, to generate leads and sell to customers; and that included its customer lists with contact information of its customers. <u>Id.</u>

Access to these trade secrets was restricted to those who had fiduciary responsibilities, the owners, Shakhoohi and Elyahou (¶¶ 39-45, 261), and Elyahou also had contractual obligations (¶

60).  In  addition,  access  was  protected  by  firewalls  and  other  safeguards  like  usernames  and

passwords.  (¶¶ 79, 125, 163-167, 242, 251-256, 260-262). So, no ordinary employee had access to

the information entrusted to Elyahou. (¶¶ 39-45, 261). All this, too, conveyed that the information

entrusted to Elyahou, its proprietary Inventory System, and its customer lists and information, were

secret.

Moreover, the Complaint details how AutoExpo derives independent economic value from

its trade secrets that are not generally known and readily ascertainable. (¶¶ 79, 125, 163-167, 242,

251-256, 260-262).[3]

Despite  the  Complaint's  above-mentioned  extensive,  well-pled  allegations  concerning

AutoExpo's trade secrets (including that its inventory system was specifically customized for Auto

Expo), both the Certified Defendants and the Elyahou Defendants argue that the Complaint fails

to  plausibly  allege  that  the  above  information  qualifies  for  trade  secret  protection,  and  that

AutoExpo's trade secrets merely constitute generic business information.  They are wrong. See,

e.g., Catalyst Advisors, 602 F. Supp. 3d at 672; Zabit, 540 F. Supp. 3d at 423 (observing, "courts

in this District often allow trade secret claims that are broad so long as they provide sufficient

detail that the defendant can identify the trade secret(s) at issue.")

In analyzing the DTSA claim, this Court concluded in Superb Motors:

> The Court concludes there are substantial questions as to whether Deo copied
> Superb Motors' Tekion DMS customization and used it to benefit himself at Gold
> Coast or disclosed or disseminated the information to his Gold Coast employees in
> breach of his duties to Urrutia and Superb Motors. Superb has provided enough
> evidence to demonstrate that the claim is "fair ground[s]" for discovery and further

---

[3] Certified Defendants' reference to counsel's statements to the Court at the pre-motion conference about "off-the-rack" inventory systems does not establish that the AutoExpo Inventory System is not a trade secret and is not generally known. See Memorandum of Law in Support of Defendants Avi Eitan, Fifty Seven Consulting Corp. d/b/a Certified Auto Group a/k/a/ Certified Performance Motors and Fazeeda Kassim's Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(1) and (6), p. 13. Indeed, Certified Defendants conveniently overlook the Complaint's allegations concerning AutoExpo's inventory system processes (that was specifically customized for Auto Expo) to streamline dealership operations, inventory management, cash flow management and reporting features that identify areas of improvement, and information related to its revenues and profit margins.

litigation…Additionally, the evidence establishes that the CRM system associated with the Tekion DMS system contained customer lists and sales leads generated and compiled by Urrutia over his significant period of time in the auto business…. In sum, allowing further litigation and discovery will sift out the facts and identify whether this claim indeed has any merit and whether Deo has any defenses to raise. The Court's duty at this point is to ensure there is at least the minimum "fair ground[s]" to litigate the claim further, given the irreparable harm Superb faces. Citigroup[Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30,] 34 [(2d Cir. 2010)]. The Court finds so in this case.

Id. at *38-39.

None of the cases cited in support by the Certified Defendants and the Elyahou Defendants help them. Rather, those cases are easily distinguishable, as they concern complaints which provide only conclusory statements that the information is a trade secret or derives some independent value, and are thus pled with much less specificity than the instant Complaint.[4]

Here, based on the authorities above, the Complaint sufficiently alleges facts from which it plausibly can be inferred that AutoExpo possessed a trade secret which included, both, confidential proprietary data and customer lists and information. In this regard, the Complaint alleges facts concerning AutoExpo's ownership of precisely the type of confidential proprietary

---

[4] See Intrepid Fin. Partners, LLC v. Fernandez, 2020 U.S. Dist. LEXIS 244742 at *13 (S.D.N.Y. Dec. 30, 2020) ("Intrepid does not plead any specific facts demonstrating that Intrepid has…specialized knowledge of customers' operations or needs that is organized or used in a way that is unique to Intrepid"); Elsevier Inc. v. Doctor Evidence, LLC, 2018 U.S. Dist. LEXIS 10730 at *17 (S.D.N.Y. Jan. 23, 2018) (holding that the complaint "fails to include allegations supporting the various factors that define the 'contours' of a trade secret: the information's value, the extent to which it is known by those within and outside the business, the amount of effort or money spent to develop the information, and the ease with which the information could be acquired or developed by outsiders"); Core SWX, LLC v. Vitec Grp. US Holdings, Inc., 2022 U.S. Dist. LEXIS 125198 at *20 (E.D.N.Y. July 14, 2022) ("No specific document within the product design information or marketing information is mentioned, nor were these general categories tied to a specific aspect of either battery product"); Garvey v. Face of Beauty, LLC, 2022 U.S. Dist. LEXIS 171182 at *23 (S.D.N.Y. Sep. 21, 2022) (citations omitted) (the "bare-bones pleading is bereft of non-conclusory allegations that could demonstrate that its customer lists, pricing, and other general business information are trade secrets"; but see also that "while pricing information may constitute a trade secret under certain circumstances, this is generally where a company uses some type of proprietary formula that gives it a unique advantage, such as a complex pricing or trading algorithm in a financial business", which is consistent with the allegations in the instant Complaint concerning AutoExpo's Inventory System and CRM Suite); TRB Acquisitions LLC v. Yedid, 2021 U.S. Dist. LEXIS 16513 at *6 (S.D.N.Y. Jan. 28, 2021) (Plaintiff did not "offer any particulars of how its strategies and plans function or another basis for the Court to discern exactly what information" was allegedly misappropriated).

data, *i.e.*, the AutoExpo Inventory System, entitled to trade secret protection. <u>Supra</u>. In addition, the Complaint very clearly alleges that AutoExpo owned customer lists and information, and that those, too, were taken.[5] <u>Supra</u>. In any event, whether AutoExpo's Inventory System and customer lists, ultimately, are trade secrets are questions of fact that cannot be resolved on a pleadings motion. Accordingly, Defendants' motions to dismiss should be denied.[6]

   B.   <u>The Complaint Sufficiently Alleges That AutoExpo Took Reasonable Measures To Protect The Trade Secret</u>

   Next, in their moving papers, both the Certified Defendants and the Elyahou Defendants argue that the Complaint fails to allege that Plaintiffs took reasonable measures to maintain the secrecy of their trade secrets.  As set forth below, the Court must reject these arguments.

   In order to sufficiently state a claim under the DTSA, a plaintiff must also establish that it took reasonable measures to protect the trade secret. 18 U.S.C. § 1839(3)(A); <u>Better Holdco, Inc. v Beeline Loans, Inc.</u>, 666 F Supp 3d 328, 385 (S.D.N.Y. 2023) ("for information to constitute a 'trade secret' under the DTSA, a plaintiff must have 'taken reasonable measures to keep such information secret'") (<u>quoting</u> 18 U.S.C. § 1839(3)(A)). Such measures include, *inter alia*, physical security measures such as password protection and two-factor authentication. <u>Medidata Sols.</u>, 2018 U.S. Dist. LEXIS 199763, *10 (S.D.N.Y. Nov. 26, 2018); <u>see also</u> <u>Charles Ramsey Co. v. Fabtech-NY LLC</u>, 2020 U.S. Dist. LEXIS 9348, *42-43 (N.D.N.Y. 2020); <u>Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.</u>, 2016 U.S. Dist. LEXIS 130918, *18 (S.D.N.Y. 2016).  However, as observed in <u>Catalyst Advisors</u>, the "Second Circuit has yet to construe the

---

[5] Indeed, in their motion papers, Certified Defendants do not even mention that AutoExpo's trade secrets also include its customer relationship management and leads generation system, <u>i.e.</u>, the CRM Suite, which AutoExpo used to generate leads and sell to customers, or its customer lists with contact information of its customers.
[6] Ultimately, this case, like <u>Superb Motors</u>, concerns whether Elyahou "copied" AutoExpo's proprietary Inventory System and took its customer list and information and whether the Certified Defendants aided and abetted in that wrong.

term 'reasonable measures' for purposes of the DTSA in a precedential opinion." Id., 2024 U.S. Dist. LEXIS 24552, at *62 (citing Xavian Ins. Co. v. Marsh & McLennan Cos., No. 18 Civ. 8273 (DLC), 2019 U.S. Dist. LEXIS 65067, 2019 WL 1620754, at *4 (S.D.N.Y. Apr. 16, 2019). Catalyst Advisors further observed: "'[G]iven that trade secrets may appear in a wide variety of forms and types, what measures are reasonable must depend in significant part on the nature of the trade secret at issue.'" Id. (quoting Turret Labs USA, Inc. v. CargoSprint, LLC, No. 21-952, 2022 U.S. App. LEXIS 6070, 2022 WL 701161, at *2 (2d Cir. Mar. 9, 2022) (Turret Labs' internal quotation marks omitted). Catalyst Advisors concluded: "Thus, the 'reasonableness' of any protective measure is a case-specific inquiry and a question of fact." Id. at *63; see also id. at *64 (noting that on summary judgment, a "plaintiff need only point to evidence of protective measures, and then it becomes the jury's task to evaluate whether they were reasonable").

Here, based on the above-standards, the Complaint alleges facts that Plaintiffs took appropriate measures to keep their trade secret information confidential, and in any event, it cannot be determined as a matter of law on a pleadings motion, that the measures taken by Plaintiffs were unreasonable. For example, the Complaint alleges reasonable measures taken by limiting access to this information to only employees who owed AutoExpo a fiduciary duty, such as Elyahou himself, who was and is an owner, a family member, and at all relevant times was the "Operating Partner." (¶¶ 54, 261, 280). See fn. 2; Superb Motors, 2023 U.S. Dist. LEXIS 198355, at *33 (holding that it is axiomatic that an owner of a company owes a fiduciary duty to the company). Elyahou, unquestionably, held a position of trust. (¶¶ 54, 56). Elyahou, who had a fiduciary duty to AutoExpo, was required to maintain AutoExpo's confidential information in a secured computer system protected by firewalls and other appropriate safeguards such as usernames and passwords. (¶ 261). Employees who, unlike Elyahou, did not have a fiduciary duty to AutoExpo did not have

access to the information entrusted to Elyahou. (Id.).  Beyond fiduciary duties and the close family relationship, Elyahou also had contractual obligations because he expressly agreed not to work for automobile dealerships "other than AutoExpo & its subsidiaries" (¶¶ 59-60), thus, effectively preventing him for working for competitors. Based on the obligations that Elyahou had and expressly agreed to, AutoExpo took reasonable measures to protect its trade secrets.

Moreover, the Complaint alleges facts as to how Plaintiffs' confidential information derives independent economic value as it is not generally known to the public, and AutoExpo's extensive monetary investment to develop its proprietary AutoExpo Inventory System. (¶¶ 79, 166, 253-255, 262).

Despite the above, well-pled allegations in the Complaint, both Elyahou Defendants and Certified Defendants argue that while the Complaint identified AutoExpo as the owner of the trade secret, Plaintiffs voluntarily disclosed their trade secrets.  Elyahou Defendants cites to a singular paragraph in the Complaint that "Plaintiffs" made reasonable efforts to maintain the secrecy of the trade secret (¶ 280).  Certified Defendants argue that "Plaintiffs" is alleged in some paragraphs of the Complaint with respect to the DTSA and common law trade secrets causes of action, and with respect to the secrecy measures for those who owed a fiduciary duty to "dealerships".  As set forth below, the Court must reject these arguments.

Here, the Complaint alleges that AutoExpo, Peace Properties, Network Reinsurance, AEC and Chrome Insurance are under a common ownership, wherein Shahkoohi and Elyahou are owners of each entity. (¶¶ 15-26, 54). Moreover, the Complaint alleges that pursuant to the September 2008 Agreement, Elyahou, as AutoExpo's "Operating Partner", agreed that he would not be permitted to enter into any other partnership or any other business (directly or indirectly) other than AutoExpo **& its subsidiaries**." (¶¶ 59-60) (emphasis added). Thus, the Complaint

sufficiently alleges that the other Plaintiffs are subsidiaries of AutoExpo, and therefore, the subsidiaries would owe AutoExpo a duty to manage the subsidiaries in the best interest of AutoExpo, and Elyahou and Shahkoohi would owe a duty to the subsidiaries as directors of AutoExpo. See Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 218 (S.D.N.Y. Apr. 12, 2004) (internal citations omitted); see also In re Sabine Oil & Gas Corp. In re Sabine Oil & Gas Corp., 547 B.R. 503 (Bankr. S.D.N.Y. 2016).

The cases cited by the Certified Defendants and the Elyahou Defendants for the proposition that Plaintiffs did not take reasonable measures to keep secret their alleged trade secrets, and/or that Plaintiffs voluntarily disclosed their alleged trade secrets, are easily distinguishable on the facts as none involved a defendant who was co-owner of the plaintiff business, who was family, who was the "operating partner," and/or who had an agreement not to work for other business (¶¶ 59-60) with competitors.[7]

---

[7] Zabit v. Brandometry, LLC, 540 F. Supp.3d 412, 425 (S.D.N.Y. May 18, 2021) (plaintiffs admitted that they licensed their "trade secret" to another entity and did not allege, or even argue, that the other entity was required to keep any information confidential under the terms of that license); UrthTech LLC v. GOJO Indus., 2023 U.S. Dist. LEXIS 125555 at *32 (S.D.N.Y. July 20, 2023) (the complaint "does not allege any protective measures taken within the company. For example, there is no allegation that [plaintiff] restricted access to the information to certain employees on a need-to-know basis or that it took steps to ensure its employees maintained the secrecy of the information"); Turret Labs USA, Inc. v. CargoSprint, LLC, 2022 U.S. App. LEXIS 6070 at **6-7 (2d Cir. March 9, 2022) (complaint alleged that plaintiff had a joint venture agreement and exclusive licensing agreement with an unrelated third party, and that defendant gained access to plaintiff's trade secrets by falsely presenting itself to the third party, but the complaint did not allege that third party or anyone else had an obligation to keep plaintiff's information confidential); Rodney v. United Masters, 2023 U.S. Dist. LEXIS 33499 at *13 (E.D.N.Y. Feb. 10, 2023) (plaintiff voluntarily disclosed during a phone call the information that plaintiff maintained was a trade secret, and plaintiff did not impose any measures to protect the confidentiality of the alleged trade secrets during the call); Art & Cook, Inc. v. Haber, 416 F. Supp.3d 191, 197 (E.D.N.Y. Oct. 3, 2017) (plaintiff asked defendant to sign an employee handbook and non-disclosure agreement, which defendant refused to do, and "Plaintiff nonetheless gave him access to what it contends is valuable and confidential information"); Sapir v. Rosen, 2021 U.S. Dist. LEXIS 189350 at **18-20 (E.D.N.Y. Sep. 30, 2021) (plaintiffs fails to rebut the conclusion that they disclosed many of the documents constituting the alleged trade secrets to others who did not have the obligation to protect the confidentiality of the information); My Mavens, LLC v. Grubhub, 2023 U.S. Dist. LEXIS 142204 at *50 (S.D.N.Y. Aug. 14, 2023) (citations omitted) (finding that the alleged trade secrets were merely concepts and new product ideas, and that "the Amended Complaint does not allege that Defendants misappropriated source code or any other 'internal processes of the software [that] are not readily identifiable, nor obvious and easily duplicated'").

Rather, based on the above standards, AutoExpo took reasonable measures to protect its trade secrets as a matter of law as reasonableness "is a case-specific inquiry and a question of fact." See, e.g., Catalyst Advisors, 2024 U.S. Dist. LEXIS 24552, at *63. Here, AutoExpo only disclosed its trade secrets to fiduciaries. Superb Motors, 2023 U.S. Dist. LEXIS 198355, at *33. It also utilized firewalls, and other safeguards such as user names and passwords. Medidata Sols., 2018 U.S. Dist. LEXIS 199763, *10 (S.D.N.Y. Nov. 26, 2018); Charles Ramsey, 2020 U.S. Dist. LEXIS 9348, at *42-43; Syntel Sterling, 2016 U.S. Dist. LEXIS 130918, at *18.

C. Plaintiffs Sufficiently Alleged Misappropriation of Plaintiffs' Trade Secrets

Defendants' challenge to the sufficiency of the Complaint's allegations that they misappropriated trade secrets is also meritless. Superb Motors involved similar facts. In that case, this Court observed: "[T]he evidence in totality raises substantial questions as to whether Deo has misappropriated or copied a trade secret without Superb Motors' authorization and against a fiduciary duty he owed Superb Motors as a forty-percent owner." Id., at *33 (citing DFO Glob. Performance Com. Ltd. (Nevada) v. Nirmel, No. 20-CV-6093 (JPO), 2021 U.S. Dist. LEXIS 148009, 2021 WL 3475596, at *8 (S.D.N.Y. August 6, 2021) ("It is axiomatic that corporate officers owe fiduciary duties to their corporation.")). The same is true here.

The instant Complaint sufficiently alleges specific facts that Elyahou, Certified and Eitan misappropriated AutoExpo's trade secrets by their calculated, conniving, and systematic actions, which fall squarely within the scope of the DTSA. See, e.g., ¶¶ 125-143 (showing AutoExpo being outbid and trucker confusion as to AutoExpo and Certified); ¶¶ 144-152 (AutoExpo staff quitting and moving to Certified, Certified outperforming Auto Expo, employees' referrals to Certified); ¶¶ 240-277 (facts establishing that Elyahou, Certified and Eitan took AutoExpo's trade secrets to set up and operate Certified, behind AutoExpo's back, at AutoExpo's expense, and causing

AutoExpo to lose money). Thus, Elyahou, Certified and Eitan did not have to expend time, effort and money in developing a custom inventory system or customer base; they simply took AutoExpo's. (¶ 268).  See AUA Private Equity Partners, LLC v. Solo, 2018 U.S. Dist. LEXIS 58356 (S.D.N.Y. April 5, 2018) (holding that complaint plausibly alleges violation of the DTSA as defendant was alleged to have uploaded plaintiff's trade secrets from her work laptop to her personal cloud-based storage without plaintiff's permission); RKL Inc., d/b/o Roll-Krafi v. Grimes, 177 F. Supp. 2d 859, 875-77 (N.D. Ill. 2001) (finding sufficient evidence of acquisition of theft when employee downloaded or copied trade secrets from work computer to home computer).

### D.  Plaintiffs Did Not Engage In "Improper Group Pleading"

Certified Defendants' argument – that Plaintiffs engaged in "improper group pleading", because the Complaint identifies AutoExpo as the owner of the alleged trade secrets, the DTSA claims are pled by all Plaintiffs – is meritless. Courts have typically held that group pleading only becomes an issue where a complaint pleads "defendants" collectively, as opposed to "plaintiffs" collectively.  See, e.g., Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc., 156 F. Supp. 3d 348, 359 (E.D.N.Y. 2016) (denying motion to dismiss based on group pleading multiple plaintiffs together, holding that "[a]lthough the [complaint] does employ group pleading, Plaintiffs' allegations reference specific communications and representations made by the individual Defendants, which can be investigated and probed in discovery…it would be improper to dismiss the entire case on standing grounds when, as here, there are sufficient facts listed in the [complaint] to put Defendants on notice of the wrongs they allegedly committed"); Holmes v. Allstate Corp., 2012 U.S. Dist. LEXIS 24883 (S.D.N.Y. Jan. 27, 2012) (holding that although plaintiffs group-pled their injuries, the complaint was dismissed due to its failure to differentiate

among defendants so as to allege each particular defendant's misconduct).  In fact, the sole case cited by Certified Defendants on the issue of group pleading, <u>Plusgrade LP v. Endava Inc.</u>, 2023 U.S. Dist. LEXIS 39114 (S.D.N.Y. March 8, 2023), concerned group pleading of *defendants*, not plaintiffs. In the instant matter, Certified Defendants only allege group pleading concerning Plaintiffs, and not any of the named defendants.  As such, Certified Defendants' group pleading argument must be rejected.

Accordingly, Plaintiffs have sufficiently stated a claim under the DTSA.[8]

## II.   <u>Plaintiffs Sufficiently State A Claim For Unfair Competition</u>

The Second Circuit has emphasized that "[a]n unfair competition claim under New York law is not . . . dependent upon a showing of confusion or deception as to the origin of a product or service." <u>Telecom Int'l Am., Ltd. v. AT&T Corp.</u>, 280 F.3d 175, 198 (2d Cir. 2011); <u>see</u> <u>also</u> <u>Transaero, Inc. v. Chappell</u>, 2014 U.S. Dist. LEXIS 62635, *39 (E.D.N.Y. 2014) ("where an unfair competition claim is not based on trademark infringement, but misappropriation of confidential or proprietary information, the plaintiff need not establish either actual confusion or a likelihood of confusion"). Rather, "[t]he essence of an unfair competition claim under New York law is that the

---

[8] As this Court observed in <u>Superb Motors</u>, "'the requirements for showing a misappropriation of a trade secret are similar under state and federal law.'" <u>Id.</u>, 2023 U.S. Dist. LEXIS 198355, at *29 fn. 14 (quoting <u>Free Country Ltd v. Drennen</u>, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016). Accordingly, for the reasons stated above, Plaintiffs have also sufficiently stated a common law claim under New York law for misappropriation of a trade secret, the Complaint's third cause of action. <u>See North Atl. Instruments, Inc. v. Haber</u>, 188 F.3d 38, 44 (2d Cir. 1999). As set forth in further detail, *supra*, Plaintiffs have sufficiently particularized the unique, proprietary inventory system—as well as the customer lists and customer leads—that the Elyahou Defendants and Certified Defendants misappropriated in breach of a confidential relationship with/duty to Plaintiffs. Next, the Complaint alleges that AutoExpo took measures to keep its trade secrets and confidential information secret. Further, the Complaint sufficiently pled that the Elyahou Defendants used the inventory system in breach of a confidential relationship with Plaintiffs; that Elyahou sought to misappropriate, and stole, AutoExpo's customized, unique and proprietary blueprint for use at his competing group of dealerships" (¶¶ 168-169); that "in a blatant breach of his fiduciary duties …, Elyahou had AutoExpo employees work for his own group of dealerships while they were employed by AutoExpo and were being paid to perform work only for AutoExpo" (¶ 170); that the Certified Defendants knew about AutoExpo's inventory system and joined in Elyahou's scheme (¶¶ 240-242). Finally, the Complaint alleges that Elyahou, Certified and Eitan misappropriated Auto Expo's trade secrets and confidential information without permission to solicit AutoExpo's customers and leads (¶¶ 273, 275).

20

defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." Id. at 197, quoting Katz Dochrermann & Epstein, Inc. v. Home Box Office, 1999 U.S. Dist. LEXIS 3971 at *4 (S.D.N.Y. Mar. 31, 1999). An unfair competition "claim will fail where a plaintiff cannot demonstrate 'the bad faith misappropriation of a commercial advantage which belonged exclusively to him'" Big Vision Private, Ltd. v. E.I. DuPont de Nemours & Co., 610 Fed. Appx. 69, 70 (2d Cir. 2015), quoting LoPresti v. Mass. Mut. Life Ins. Co., 30 A.D.3d 474 (2d Dep't 2006).

Here, Plaintiffs have sufficiently alleged that the Elyahou Defendants and Certified Defendants misappropriated the fruits of AutoExpo's labors by misappropriating its trade secrets.

Plaintiffs have alleged that that Elyahou, Certified and Eitan misappropriated Auto Expo's trade secrets and confidential information; that they had no permission to utilize Auto Expo's customer list, customer information, proprietary inventory system, financial information and details about customers for any purpose except to benefit AutoExpo; and that they used Auto Expo's trade secrets and confidential information to solicit AutoExpo's customers and leads. (¶¶ 273, 275).

Therefore, Plaintiffs have sufficiently stated a common law claim for unfair competition.

## III.   Plaintiffs Sufficiently State A Claim For Conversion

"To state a claim of conversion, the plaintiff must allege that '(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused.' Moreover, if the property is money, 'it must be specifically identifiable and subject to an obligation to be returned or otherwise treated in a particular manner.'" Lefkowitz

v. Bank of N.Y., 676 F. Supp. 2d 229, 251 (S.D.N.Y. 2009). see also Bricklayers Ins. & Welfare Fund v. Innis Constr., 2021 U.S. Dist. LEXIS 193357, *13 (E.D.N.Y. 2021) (finding that the plaintiff adequately alleged the conversion of union dues where the defendant "'directed that . . . dues deductions be taken from the paychecks of local members'" "and that rather than 'segregate the dues and remit them to Local 1' [the defendant] commingled them with [his company's] assets"); Cement & Concrete Workers Dist. Council Welfare Fund v. Baroco Contr. Corp., 2021 U.S. Dist. LEXIS 51509, *22 (E.D.N.Y. 2021).

"Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 50 (2006).

Regarding the first element of conversion, the Complaint alleges that AutoExpo has a unique, proprietary inventory system that was specifically customized for AutoExpo, cost between $50,000 and $170,000.00 to set up and contained customized features to operate dealerships profitably that was the blueprint for Shahkoohi's success at his dealerships; AutoExpo's CRM Suite was used to generate leads and sell to customers; and AutoExpo possessed customer lists with contact information of its customers, all of which was confidential and proprietary and constituted a trade secret. (¶¶ 79, 125, 163-167, 242, 251-256, 260-262).

Regarding the second element of conversion, the Complaint alleges that Elyahou sought to misappropriate, and stole, AutoExpo's customized, unique and proprietary blueprint for use at his competing group of dealerships. (¶¶ 168-169). The Complaint also alleges: that Elyahou, Certified and Eitan misappropriated Auto Expo's trade secrets and confidential information; and that they had no permission to utilize Auto Expo's customer list, customer information, proprietary inventory system, financial information and details about customers for any purpose except to

benefit AutoExpo.  (¶ 273).

Therefore, Plaintiffs have sufficiently stated a claim for common law conversion.

**IV.**     **The Court Must Reject Elyahou Defendants' Argument Concerning The Complaint's Allegations Made "Upon Information And Belief"**

Elyahou Defendants argue that two (2) allegations in the Complaint that are stated "upon information and belief" fail to plausibly allege two (2) of the Plaintiffs.  However, this argument as a basis to dismiss the Complaint must be rejected.  See Barrett v. Forest Labs., Inc., 39 F. Supp. 3d 407, 432 (S.D.N.Y. 2014) ("Court need not decide the appropriateness of pleading 'upon information and belief' in every circumstance[] [because] deciding the plausibility of a complaint is, of course, a 'context-specific task'"); Wu v. Pearson Educ., Inc., 2010 U.S. Dist. LEXIS 103488 (S.D.N.Y. Sep. 29, 2010) ("plaintiffs may plead the allegations in complaints upon information and belief…[defendant] cites no case in which a court dismissed a complaint for overuse of qualifiers, and the Court is aware of no such case").

**V.**     **This Court Should Exercise Its Discretion In Favor Of Exercising Supplemental Jurisdiction**

For the reasons set forth above, Plaintiffs' federal DTSA claims are sufficiently pled so this Court need not reach a determination on whether it should exercise supplemental jurisdiction over Plaintiffs' state law claims in the absence of federal claims.

Even assuming *arguendo* that the Court dismisses the DTSA claims against any one defendant, it should exercise supplemental jurisdiction over the state law claims against all defendants, as they are inextricably intertwined with each other.

If a court "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c), "the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction." See Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d

Cir. 2018). "[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values [of] economy, convenience, fairness, and comity." Id. (internal quotation marks omitted). Courts continue to exercise supplemental jurisdiction over claims where the legal issues are relatively straightforward, and efficiency favors retaining jurisdiction. See Harris v. Leon, 2023 U.S. Dist. LEXIS 26806 at **23-24 (S.D.N.Y. Feb. 16, 2023).

Here, because there are multiple defendants and there exists a risk of inconsistent decisions should Plaintiffs' claims against some Defendants remain in federal court while others are litigated in state court, this Court should decide in favor of exercising supplemental jurisdiction over the state law claims against the Defendants.  See Benzinger v. NYSARC, Inc. New York City Chapter, 385 F. Supp. 3d 224, 237 (S.D.N.Y. 2019) ("in this case, two defendants remain even if the Court dismisses the claims against UPS. Rather than force the refiling of the case against UPS in a separate court, with the attendant risks of inconsistent judgments among the defendants, the Court retains jurisdiction over the state law claims in the interests of judicial economy and convenience, and now proceeds to consider those claims on the merits"). It is evident from the Complaint that the actions of the Defendants are indivisibly interrelated and that, in the event any federal claim is dismissed as against any individual defendant, the state law claims should be considered together with the federal claims in this Court.

As such, this Court should maintain supplemental jurisdiction over Plaintiffs' claims against Defendants.

**VI.    Leave To Replead Must Be Granted In The Event Of Dismissal**

In the event that dismissal is granted (which it should not be), Plaintiffs respectfully seek leave to amend, which shall be freely given when justice so requires.  See Fed. R. Civ. P. 15(a).

Indeed, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" See Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013); see also Vacold LLC v. Cerami, 2002 U.S. Dist. LEXIS 1895 at *19 (S.D.N.Y. Feb. 7, 2002) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); Elliot-Leach v. New York City Dep't of Educ., 201 F. Supp. 3d 238, 243 (E.D.N.Y. 2016), aff'd, 710 Fed. Appx. 449 (2d Cir. 2017).

Moreover, "[w]ithout the benefit of a ruling [from the Court], many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." See McKenzie-Morris v. V.P. Records Retail Outlet, Inc., 2022 U.S. Dist. LEXIS 233796, at *38 (S.D.N.Y. Dec. 30, 2022) (citing Loreley Fin. (Jersey) No. 3 Ltd., 797 F.3d at 190.

Accordingly, leave to replead should be granted to the extent any defendant succeeds on their motion to dismiss.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss, together with such other and further relief as this honorable Court deems just, equitable, and proper.

Dated:  Lake Success, New York
       June 17, 2024

                     Respectfully submitted,
                     **MILMAN LABUDA LAW GROUP PLLC**
                     *Attorneys for Plaintiffs*

                     By:    */s   Michael C. Mulè, Esq.*_____
                           Michael C. Mulè