# Exhibit "B"

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

-----------------------------X Docket#
AUTOEXPO ENT. INC. et al,      : 23-cv-09249-OEM-ST
                               :
              Plaintiffs,      :
                               :
      - versus -               : U.S. Courthouse
                               : Central Islip, New York
OMID ELYAHOU et al.,           :
                               : May 9, 2024
              Defendants       : 2:00 p.m.
-----------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE STEVEN L. TISCIONE
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S:**
**(VIA VIDEO/AUDIO)**


**For the Plaintiffs**:      **Michael C. Mule, Esq.**
                            Milman Labuda Law Group PLLC
                            3000 Marcus Avenue, Suite 3w8
                            Lake Success, NY 11556


**For Defendants**:          **Matthew T. Feinman, Esq.**
                            Law Office of Steven Cohn, P.C.
                            One Old Country Road, Suite 420
                            Carle Place, NY 11514

                            **Matin Emouna, Esq.**
                            Emouna & Mikhail PC
                            100 Garden City Plaza, Ste. 520
                            Garden City, NY 11530


**Transcription Service**:   **Transcriptions Plus II, Inc.**
                            61 Beatrice Avenue
                            West Islip, New York 11795
                            RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE COURT:  *AutoExpo, Inc. et al. v. Elyahou*

2  *et al*, 23-cv-9249.

3          Can I have counsel state your appearances for

4  the record?

5          MR. MULE:  Sure.  For the plaintiff, Michael

6  Mule from Milman Labuda Law Group PLLC.

7          THE COURT:  Good afternoon.

8          MR. FEINMAN:  For defendants Avi Eitan, Fifty

9  Seven Consulting, and Fazeeda Kassim, Matthew Feinman

10  from the Law Office of Steven Cohn.

11          THE COURT:  All right.

12          MR. EMOUNA:  Good afternoon, your Honor.  On

13  behalf of Omid Elyahou and SimpSocial, Matin Emouna.

14          THE COURT:  All right.

15          MR. EMOUNA:  I'm with Mr. Feinman in his office

16  because I was actually in EDNY just a short while ago and

17  I did not have time to drive back to my office, so I ran

18  to his office.

19          THE COURT:  Okay.  Well, good afternoon to all

20  of you.

21          So the motion to dismiss -- plaintiff is not

22  amending the complaint, right?  So we're sticking with

23  this one.  There's going to be a motion to dismiss on the

24  current complaint?

25          MR. MULE:  The motion to dismiss is on the

3

Proceedings

1   current complaint.

2          THE COURT:  Okay.

3          MR. MULE:  We did advise Judge Merchant that we

4   were looking into other claims regarding ERISA claims and

5   we are still investigating that.  It is a possibility

6   that that may come down the pike at some point.

7          THE COURT:  Okay.  But as it stands right now,

8   this is the only federal claim so if it's dismissed,

9   assuming the Court doesn't keep jurisdiction over it, the

10  case would be dismissed and could be re-filed in state

11  court.  Or I guess you already filed is it the same case

12  in state court or a similar case?

13         MR. MULE:  It's similar.  It's not exactly the

14  same.  I believe there's some parties that are missing in

15  the prior one.

16         THE COURT:  Understood.  All right.  So what

17  kind of discovery are you seeking at this point?

18         MR. MULE:  Well, we were looking to do a

19  discovery initially aimed at trying to get to some

20  settlement posture.  You know, this case is basically a

21  claim of multimillion dollar theft, conversion of trade

22  secrets, competing with AutoExpo while being employed by

23  AutoExpo, using its inventory system to do so and start

24  up the other business.  So we wanted to go into

25  information about the accounts which included, you know,

4

Proceedings

1   where the money was going and the relationship of Mr.

2   Elyahou to certify the payments made and bank accounts

3   with respect to SimpSocial because there was marketing

4   and he had an obligation under AutoExpo's agreement to do

5   that marketing but then was billing under SimpSocial, so

6   that's a double dipping claim.

7          Discovery with respect to the inventory system

8   of Certified, and who they consulted for their inventory

9   system, the employees and independent contractors

10  performing sales and those functions were certified.

11  Basic email accounts, telephone numbers, that's the

12  general gist of dealer agreements with banks and basic

13  corporate placards.  That was pretty much the gist of

14  what we were looking for in the initial phase.

15         THE COURT:  Okay.  Assuming that defendants are

16  successful on the motion, won't this just, or the bulk of

17  it and up just going back to the state court and you have

18  to do all of this stuff anyway?

19         MR. MULE:  That's our position, your Honor.

20         THE COURT:  Because you're only moving to

21  dismiss the federal claim.  You're not moving to dismiss

22  the pending state claims, right?

23         MR. FEINMAN:  Your Honor, if I may for

24  defendants?

25         THE COURT:  Yes.

Proceedings

5

1          MR. FEINMAN:  So the sole basis for federal

2   jurisdiction here is the Trade Secrets Act claims.  For

3   the same reason that those claims fail, the common law

4   trade secret claims fail.

5          So what Mr. Mule is describing is physically he

6   wants all of the documents of an ostensible competitor

7   and really without a basis to do that.  The sole basis to

8   do that is the alleged trade secret claims.  And I think

9   there is a threshold issue here.  It was addressed in the

10  letters.  And it's certainly defendant's position that

11  Judge Merchant made it very clear after what was an

12  extensive pre-motion to dismiss conference -- and if your

13  Honor would like, I could get into Judge Merchant

14  repeatedly giving them opportunities to amend and I can

15  give small quotes.

16          But at the end, at the end of the conference,

17  and this is at the transcript which Mr. Emouna sent in

18  yesterday.  I'm not sure why Mr. Mule attached the

19  transcript from another case.  I'm a bit confused by

20  that.  But the actual transcript from this case, Judge

21  Merchant at the end said, "The case remains with me as

22  district court judge unless you all consent to being

23  before Magistrate Judge Tiscione for all purposes.

24  Otherwise, with regards to discovery matters, Magistrate

25  Judge Tiscione will be handling those matters related to

Transcriptions Plus II, Inc.

6

Proceedings

1  discovery.  That would be on the other side of your

2  motions though."

3          So we had an extensive pre-motion conference.

4  And I'm happy to read portions because I think the

5  parties have very different understandings of what

6  happened.  And Judge Merchant, at the conclusion, clearly

7  said discovery would be at the conclusion on the other

8  side of your motions though.

9          Coming out of that, they then went ahead and

10  filed for a request for a conference looking to put

11  through discovery under purported settlement discussion

12  while after Judge Merchant asked them do you want to

13  amend they said well, we may have some other claims.  And

14  then they go ahead after we went through all of that and

15  now they're seeking discovery.

16          So it's our position that really we don't have

17  to -- that Judge Merchant made it very clear, and that's

18  why after going through all of the pre-motion conference

19  arguments we think that there's a threshold issue here as

20  far as whether this has already been decided.

21          MR. MULE:  May I comment on that, your Honor?

22          THE COURT:  Sure.

23          MR. MULE:  I mean this comment that Mr. Feinman

24  is referring to, you know, I don't see it, number one.

25  And it's not -- there was no determination about, you

7

Proceedings

1   know, discovery.  The judge was solely talking about the

2   complaint and the motion.  There was nothing about

3   multiple opportunities to amend.  They were some

4   questions about --

5          THE COURT:  It's in the transcript.  I've read

6   it.  I've seen the comments.  But there is no argument

7   about this.  It was never raised.  I don't think the

8   Court was making any kind of a ruling.  I think she was

9   just, you know, assuming maybe that discovery would take

10  place after the motion because that's oftentimes what

11  happens.  But there was certainly no explicit argument on

12  this issue that she would have been making a ruling on

13  it.  I mean if there was, then you know, we wouldn't

14  really need to be here.

15         MR. EMOUNA:  Your Honor, if I may?  This is

16  Matin Emouna speaking on behalf of Elyahou and

17  SimpSocial.

18         Point well taken.  That's fine.  According to

19  the motion schedule that was set by Judge Merchant, our

20  motion is due May 15th which is this Monday.

21         THE COURT:  Yes.

22         MR. EMOUNA:  They have to file their responses

23  obviously immediately thereafter and so forth and so on,

24  your Honor.

25         I addressed the issue about the stay in my

8

Proceedings

1   letter to you, and I'm sure you read the docket.  This is

2   a classic business divorce between two former relatives

3   that are from Iranian background that they do a lot of

4   things haphazardly.

5          And with all due respect, Mr. Mule, any

6   attorney that comes in and they want to say oh let's play

7   by the books, you can't play by the books at some times

8   and not on other times.  You know, loosey-goosey is

9   loosey-goosey for everyone.  So I want to make that very

10  clear.

11         I want to continue that number one, there are

12  two pending actions in Nassau Supreme Court and two

13  motions, actually three motions that are pending that

14  have been fully briefed waiting to be I guess addressed

15  or waiting for a decision.

16         One of the first motions is the one that I

17  started.  My client, Omid Elyahou, is still a 20 percent

18  shareholder of AutoExpo and one of the other plaintiffs

19  that's in there.  They're not giving him.  They're

20  keeping him in the dark the entire time.

21         And I brought a motion according to BCL law and

22  said listen, you have to give me access to the books and

23  records.  For a lack of a better word, they're venue

24  shopping for giving me exactly what they did not give me

25  and I will ask for in state court.  And in state court

9

Proceedings

1   they have asked for this documentation from us and the
2   state court is waiting to decide this because they said
3   well, you're asking in bad faith.  I said I'm not asking
4   in bad faith.
5        But this whole issue about discovery, so right
6   now they're saying you know what, let's not even care
7   about what's going on in state court.  I want discovery
8   now.  And they keep on saying it's a narrow discovery.
9   It really is not a narrow discovery.  The only thing they
10  don't ask is for my client's grandmother's social
11  security number.  They're asking for everything.
12       So I beg to differ about the way they're
13  analyzing the case and honestly, it's a big waste of
14  time, Judge.  I mean I sincerely think they're wasting
15  everyone's time.  They want to do early discovery.  If
16  they want to do early discovery, let's talk about early
17  discovery that we should ask them to give because they
18  have four or five corporations as the plaintiff's
19  attorney and I need to know what is their relationship
20  with all these that they're claiming there's a trade
21  secret.  I have never seen a trade secret.
22       My experience is not as great as your Honor or
23  others.  I do a lot of white collar criminal work.  I do
24  plenty of the civil work.  But I've done plenty of
25  research.  Usually there's only one plaintiff.  It could

10

Proceedings

1  be (indiscernible) against somebody.  It's usually a big

2  company against somebody else.  They don't put five

3  corporations.  And funny how some of those corporations

4  are even real estate corporations.  How is a real estate

5  corporation related to an auto corporation?

6        Once again, this is the loosey-goosey part of

7  the Middle Eastern way of doing business.  And then they

8  come to court and they say well, no, I don't want this

9  way.

10       So this is the part that I'm extremely

11  frustrated with, Judge, and I'm expressing my frustration

12  with you.  So this is what I have to say.  I'll leave it

13  for Mr. Feinman if he has anything to add.

14       MR. MULE:  May I comment on that, your Honor?

15  It's Michael Mule.

16       THE COURT:  Go ahead.

17       MR. MULE:  All right.  I mean look, I just want

18  to point out that, you know, the reference to state court

19  proceedings is irrelevant here.  There is a dispute.  You

20  know, he made an action for review of corporate records

21  and we say well Mr. Elyahou has the corporate records.

22  That's one of the primary things.

23       But you know, if he wants discovery, let's do

24  it here.  We brought this action.  There are multiple

25  parties in this action.  The fact that there are multiple

11

Proceedings

1  plaintiffs has nothing to do with the merits of the trade

2  secret claim.  It's just that the relationship between

3  the parties involved multiple entities, so there are

4  multiple claims.  Some of them are federal and involved

5  in the trade secret, and that's AutoExpo.  And then

6  others are not.  They're common law claims under New York

7  State law.

8              THE COURT:  So just so I understand, the trade

9  secret claim is only being made by Auto?

10              MR. MULE:  It's AutoExpo.  That's it.

11              THE COURT:  AutoExpo.  Okay.  And the other

12  plaintiffs are asserting some of the state law claims?

13              MR. MULE:  Right.  And some of the agreements,

14  one of the main agreements is by all parties, so they're

15  necessary parties.

16              THE COURT:  Got you.

17              MR. MULE:  When I say all parties, I mean all

18  the plaintiffs on the one side and Mr. Elyahou on the

19  other.

20              THE COURT:  Okay.

21              MR. FEINMAN:  Your Honor, if I may, that goes

22  to the -- Mr. Mule is incorrect.  That's actually

23  incorrect.  That's not the complaint they brought.  This

24  has been brought to their attention.  They assert their

25  trade secret claims on behalf of all defendants.  They

12

Proceedings

1   have conceded that the other plaintiffs have nothing to

2   do with dealerships.

3           They go further.  It's not a one off typo, they

4   plead in other places that the basis of their reasonable

5   measures was by limiting disclosure to those who had a

6   fiduciary duty to the plaintiffs, plural.

7           They then in other places reference that

8   they've limited disclosure to those who owed fiduciary

9   duties to dealerships even though the plaintiff,

10  AutoExpo, is a single dealership.  And then they work in

11  the complaint the fact that the individual plaintiff

12  securely owns multiple dealerships who are not parties to

13  this action.  And they say they quote limited disclosure

14  to dealerships, plural.  So that could only be read as a

15  reference to dealerships who are not parties to this

16  action thereby disclosing any alleged trade secrets.

17          Their complaint is replete with these type of

18  pleading failures that are just fundamental to the

19  specificity that is required when pleading the

20  definitional requirements of a trade secret under the

21  Trade Secret Act.

22          So when they say correct, yes AutoExpo is the

23  only one who's bringing trade secret claims, that's

24  actually right at the heart of the matter.  AutoExpo they

25  plead is the sole owner of the trade secrets and then yet

13

Proceedings

1  somehow they include all these other plaintiffs and it's
2  certainly a fair reading that they're doing this to
3  broaden and protect themselves from who are these alleged
4  trade secrets disclosed to?  But in all events, their
5  trade secret claims as pled are on their face are
6  deficient for the group pleading.
7          THE COURT:  All right.  The briefing schedule
8  is fairly accelerated here so it doesn't seem like it's
9  going to take all that long to resolve the motion one way
10 or the other.
11         Is there any particular reason, other than just
12 generalized wanting to move the case along, why there is
13 an urgent need to take discovery now as opposed to
14 waiting a few months until the motion is decided?
15         MR. MULE:  Well the idea, your Honor, this case
16 was filed in December here, December 18th, six months.
17 We don't have a stitch of discovery.  They filed a pre-
18 motion letter in February.  It got before Judge Merchant,
19 you know, in April.  Here we are in May.
20         So the burden is on them to one, make a strong
21 showing that the claim is un-meritorious and two, that
22 the breadth of it and the risk of unfair prejudice to
23 them in the absence of the stay, which you know, this is
24 as you pointed out in the beginning, stuff that will have
25 to be done regardless.  And claims that the -- you know,

14

Proceedings

1  on the one hand they make a claim, it doesn't allege

2  trade secrets.  There are other claims that are state law

3  claims as well also that go to confidential information

4  and all this information as well.

5         So you know, even if they didn't have -- and we

6  believe this claim is viable.  They don't make a strong

7  showing.  We state a claim here.  They just haven't made

8  their burden.  And for six months to have gone by and

9  then waiting another three months, you know, our client

10 is legitimately concerned that we're going to be losing

11 information here or, you know, it's information that we

12 should be starting to have access to.

13        MR. EMOUNA:  Your Honor, respectfully I beg to

14 differ with the characterization of Mr. Mule.  Mr. Mule

15 started an action in Nassau County and he started that

16 action before I filed my I guess special proceeding on

17 the Article 78, the special proceeding.  He did it two or

18 three days before me.

19        And what he did is he had what's called a place

20 card holder.  He did a summons with notice.  That's all

21 he did.  Immediately, immediately as soon as I got this

22 summons with notice, I put a demand for a complaint.

23 He's the one that asked for extensions.  I'm the one that

24 gladly gave it to him.  I never not give attorneys

25 extensions, Judge.  I don't play that.  I put it in my

15

Proceedings

1  records.  I said it even on the oral argument before

2  Judge Merchant.  So that's the first part.

3          Then when it came time for him to file the

4  complaint on December 18th, what did they do?  They chose

5  to make a motion to say let's discontinue this action

6  here in favor of an action that I'm filing the same day

7  in federal court today.

8          Truth be told, Judge, let me call it as is here

9  because you know what, this is the problem with some

10  civil cases that I don't have the problem with in

11  criminal cases.  The criminal cases are extremely civil

12  and the civil cases are extremely criminal.  And I'll go

13  on the record on that.

14          The reason they put seven attorneys on the

15  record is all they're trying to do is inconvenience my

16  clients with the Trade Secrets Act to put the sword over

17  them that obviously that one day they make the attorney

18  fee judgment.

19          This is not a trade secrets, Judge.  There is

20  no trade secrets in the auto dealership.  No matter how

21  they want to phrase it, there is no trade secrets.  An

22  Excel sheet is not a Trade Secret Act.  And I don't know

23  what is a trade secret.  This is not Nivea or Avon or

24  Neutrogena that you have a special process that you put

25  Retin A under your eyes and something miracle happens.

16

Proceedings

1   These are used car dealerships.  Mr. Shahkoohhi owns

2   several used car dealerships.  And ironically, he doesn't

3   put the other used car dealerships that he states sharing

4   their trade secrets in this complaint.

5           So you know want, Judge?  We don't even belong

6   in federal court.  This case at best belongs -- it's a

7   business divorce between formerly family members that

8   are -- belongs in state court.

9           Respectfully, Mr. Shahkoohhi thinks he's in

10  feudal Iran that once somebody is your servant they're

11  your servant for life.  We're not in the feudal system

12  anymore, Judge.  We're in the United States.  No matter

13  what, even you play loosey-goosey with the Middle Eastern

14  way, my client is not his servant.

15          And one more thing since we're doing

16  housecleaning, I made specific reference and I said shame

17  on Mr. Shahkoohhi that he was a mediator in my client's

18  matrimonial action and he discloses some of the stuff in

19  the moving papers.  I addressed it between Judge

20  Merchant.  Thereafter I addressed it with Mr. Mule, Mr.

21  Mule and his office.  I have to give him full credit.

22  They have considered to remove I guess the allegations

23  that are scandalous at a certain point out of the

24  complaint.  For that I specifically think Mr. Mule and

25  his colleague because that does not have any business in

17

Proceedings

1  state court or federal court.

2         But to say that oh there's something imminent

3  happening, there's nothing imminent happening right now.

4  They're the ones that asked for extensions.  And when did

5  they serve our respective clients?  They modified it

6  December 18th.  Whenever they served our clients?  They

7  said do you accept service?  I said no, I don't accept

8  service, go serve my clients.  So they served the

9  clients.  From the time they served, neither myself nor

10 Mr. Feinman's clients, anyone ever in default.   We

11 didn't ask for any extensions.  We immediately filed our

12 motion.

13         If there was any delay with the court, that's

14 really of no consequence.  There's delay in every court.

15 State court obviously there's a much greater delay than

16 in federal court.  But to say that we tried to delay this

17 action, that has no merit in my case, Judge.

18         MR. MULE:  All right.  Can I respond to this?

19 There's a lot of statements here that --

20         THE COURT:  Sure.

21         MR. MULE:  Number one, the commentary about Mr.

22 Shahkoohhi and all this stuff I find, you know, just

23 irrelevant and out of place.

24         The summons with notice, yes, we filed the

25 summons with notice.  We were investigating the claim and

Proceedings

1   we discovered facts that this is a real serious claim and

2   that's why it was brought in federal court.

3             You know, they seem to be talking on two sides

4   of their mouth, on the one hand saying that, you know,

5   that they're not delaying anything and then saying they

6   don't want to go through discovery.  And then on the

7   other hand they're saying, you know, he brought an action

8   for books and records and in state court and we dispute

9   it because he was the one in control.  We want to go and

10  get discovery and proceed with discovery and they don't.

11            So you know, they can't have it both ways.

12  It's either that we're in this and we're litigating it,

13  you know, or we're not.  But one way or the other whether

14  we're litigating it here or in state court, we're going

15  to have to go through this and I believe they're delaying

16  the inevitable.

17            MR. FEINMAN:  Judge, if I just may add one

18  point of distinction here?

19            THE COURT:  Sure.

20            MR. FEINMAN:  With the information that they're

21  seeking from my client Certified, that is, as they

22  described it, their competitor.  And the basis for what

23  they're seeking is what they would describe as

24  confidential information.  And the only basis that they

25  have for that is if their trade secret claims are viable.

19

Proceedings

1  So I just wanted -- our position is that the only hook on

2  which they would ever get this information would be if

3  they had a viable trade secret claim.

4        MR. MULE:  I respectfully disagree.  In the

5  letter to the Court we identify the categories.  They're

6  not all specific as to trade secrets.  They're to the

7  claims.  There is stuff, and it's not stuff that is trade

8  secrets.  You know, identifying who designed Certified's

9  inventory system, who was consulted, that's not a trade

10 secret.  That's information as to who designed it.  It

11 would be relevant to their claim that they didn't

12 actually (indiscernible) that inventory system.

13        So you know, I think the discovery, if there's

14 going to be discovery disputes as to scope and all that

15 stuff, you know, again, we might as well get into the

16 fray of defining that, what those issues are, and getting

17 it going or else the case is going to be further delayed

18 by those disputes as well.

19        THE COURT:  All right.  Any further arguments

20 from either side?

21        MR. FEINMAN:  Nothing from defendants, your

22 Honor.

23        MR. MULE:  Not for me, your Honor.

24        THE COURT:  All right.  I think given the

25 circumstances here, the potential lack of jurisdiction

20

Proceedings

1    for the Court, the fact that I think if we do go into

2    discovery at this point there's going to be a lot of

3    questions about what plaintiff may be entitled to given

4    the arguments that the trade secret claim is not viable,

5    and I'm not sure that we're going to save ourselves any

6    time by getting into the disputes now while there's still

7    a pending motion about the viability of that claim

8    because it's an accelerated or quick turnaround time for

9    the motion, I don't think there's any huge prejudice here

10   by delaying discovery for a little bit to accommodate the

11   motion practice and potentially saving ourselves a lot of

12   work if the motion ends up being successful.

13          So I'm going to stay discovery for a period of

14   90 days.  If the parties want to kind of give me a report

15   on where things stand at that point and whether or not it

16   makes sense to exchange even some information discovery

17   for settlement discussions, you know, we can revisit the

18   issue if it starts dragging out too long.  That way there

19   won't be too long of a delay but you know, if this is

20   going to get resolved quickly, better to hold off and not

21   get into some of these fights that I think would be

22   better served to wait and see a district court's take on

23   this first before we wade into some of the disputes.

24          So discovery is stayed for 90 days and then

25   I'll ask the parties to give me a report at that point on

21

Proceedings

1  where things stand with the motion and if it makes sense

2  to lift the stay.

3              MR. EMOUNA:  Thank you very much, your Honor.

4              THE COURT:  All right.

5                         (Matter concluded)

6                              -oOo-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **13th** day of **September**, 2024.

*Mary Greco*
Transcriptions Plus II, Inc.