```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2
     ------------------------------x
 3                                        23-CV-2349(OEM)
     AUTOEXPO ENT. INC., et al,
 4                                        United States Courthouse
               Plaintiff,                 Brooklyn, New York
 5
               -versus-                   April 12, 2024
 6                                        11:00 a.m.
     OMID ELYAHOU, et al.,
 7
               Defendants.
 8
     ------------------------------x
 9
          TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
10             BEFORE THE HONORABLE ORELIA E. MERCHANT
                         DISTRICT JUDGE
11

12   APPEARANCES

13
     For the Plaintiff:        MILMAN LABUDA LAW GROUP, PLLC
14                             BY:  MICHAEL MULE, ESQ.

15
     For the Defendant:        EMOUNA & MIKHAIL PC
16                             BY:  MATIN EMOUNA, ESQ.

17                             LAW OFFICE OF STEVEN COHN PC
                               BY:  MATTHEW FEINMAN, ESQ.
18

19
     Court Reporter:           Rivka Teich, CSR, RPR, RMR, FCRR
20                             Phone:  718-613-2268
                               Email:  RivkaTeich@gmail.com
21
     Proceedings recorded by mechanical stenography.  Transcript
22   produced by computer-aided transcription.

23

24

25
```

PRE-MOTION CONFERENCE

1          (In open court.)

2          THE COURTROOM DEPUTY:  All rise.  Civil cause for

3    premotion conference in the matter of AutoExpo Incorporated,

4    et al versus Elyahou, et al, docket number 23-CV-9249.

5          Counsel state your appearance starting with the

6    plaintiff.

7          MR. MULE:  Good morning.  Michael Mule for the

8    plaintiffs from the law firm Milman Labuda Law Group PLLC.

9    Good morning.

10         THE COURT:  Good morning.

11         MR. EMOUNA:  Good morning, your Honor.  On behalf of

12   Omid Elyahou and SimpSocial LLC, Matin Emouna.

13         THE COURT:  Good morning.

14         MR. FEINMAN:  Good morning, your Honor.  Matthew

15   Feinman on behalf of defendants Fifty Seven Consulting and

16   Fazeeda Kassim.

17         THE COURT:  Good morning.

18         We're here this morning on a premotion conference

19   with regard to defendants' purported request for leave to file

20   a motion to remand or -- I'm sorry -- leave for remand and/or

21   motion to dismiss.

22         I know this is the first time the parties have been

23   before me so I just, I want to go over what I understand the

24   procedural history and posture to be at this particular

25   juncture to make sure I'm not missing anything here.  I see

PRE-MOTION CONFERENCE

1    that this action was commenced on December 18, 2023, by the

2    filing of a complaint and that is a complaint that was filed

3    by plaintiffs.

4              MR. MULE:  Yes, your Honor.

5              THE COURT:  Okay.  And on February 27 -- 20, 2024,

6    defendant Omid filed a motion for a premotion conference

7    requesting leave as to a motion for remand and/or motion to

8    dismiss for failure to state a claim.

9              MR. EMOUNA:  That is correct, yes, your Honor.

10             THE COURT:  On February 27 there was on opposition

11   letter that was filed to that motion for premotion conference,

12   and on February 28, 2024, the Court granted the motion for

13   premotion conference and set this conference for today --

14   actually on yesterday, and it was adjourned by request of the

15   parties to today.  On the same date it seems that defendants

16   is it, Eitan?

17             MR. FEINMAN:  Yes, your Honor.

18             THE COURT:  Eitan, 57 Consulting Group and Kassim

19   also filed a motion for premotion conference solely with

20   regard to the anticipated motion to dismiss; is that correct?

21             MR. FEINMAN:  Yes, that's correct.

22             THE COURT:  Then it appears that on March 6, that

23   plaintiffs filed opposition papers or position with respect to

24   that request.

25             I read the complaint that was filed in this case,

PRE-MOTION CONFERENCE

1  and each of the parties' letters with regard to the motions or

2  anticipated motions at issue.  I'd like to hear from the

3  parties briefly; in particular, to summarize what they

4  perceive to be the most relevant facts here as well as the

5  positions of both counsel, both on the remand and also the

6  motion to dismiss.

7          I'd like to start with plaintiffs' counsel.

8          MR. MULE:  Thank you, your Honor.

9          This case involves trade secrets.  Basically what we

10 have here is a relationship that went back three decades.

11         My client, AutoExpo, its principle Michael Shahkoohi

12 and also another principle, Omid Elyahou, have known each

13 other since Mr. Elyahou was about 15 or so.  My client

14 introduced him to the car dealership business, he basically,

15 he group up with him, the defendant.  In 1999, Mr. Elyahou,

16 who was 18 years old, was started to be given responsibilities

17 at the dealership.  And by 2006 he was doing well, he was

18 elevated to a position of partner, they call it partner,

19 operating partner or manager.  So he became an owner of

20 AutoExpo.

21         And as an owner of AutoExpo and as the what, they

22 call, the operating partner, he was the one in charge.  He was

23 given the responsibility, he was basically -- this was his

24 baby to run.  So our client gave him this responsibility.  And

25 the idea was, this was family, let's get him started in the

PRE-MOTION CONFERENCE

1    business, and we can all make money together.

2           In 2008 they have another agreement executed by them

3    and the agreement, it says that the operating partner is in

4    charge of new ideas and investments -- this is paragraph 60 of

5    the complaint -- and he may not enter into any other

6    partnership or any other business directly or indirectly other

7    than AutoExpo or its subsidiaries.  Shortly after that

8    agreement was signed in 2009, AutoExpo invests its own money

9    approximately $50,000 to develop a proprietary, for itself,

10   inventory system.

11          Now a lot of people have heard of Dealer Track,

12   these are off-the-rack type products that exist now.  But at

13   the time, this was a specific system that was developed by

14   them, paid for by them.

15          I've seen this system.  It's pretty impressive.  The

16   system, can you pull up for each customer that ever came in

17   from 2008 approximately, their information, what vehicle they

18   bought, what type of vehicle they bought, their preferences,

19   make of the car.  You can drill down, get all the photos for a

20   particular vehicle.  Over 15,000 customers in this database.

21   They had self-created forms through sweat over the years that

22   they created and developed and put into this system.

23          What happened is that in March of 2020 Mr. Eitan,

24   who was a manager at AutoExpo, he resigns.  Shortly after that

25   resignation, our client starts making inquiries about how the

PRE-MOTION CONFERENCE

1   company is performing.  And they are looking into it.  And

2   getting information, which is in the complaint, that sales

3   after Mr. Eitan leaves he forms a new company called Certified

4   Performance, also a defendant here.  They learn that sales are

5   going -- that they were bidding on and ready to go, are going

6   to this other company.  And the only way it can go to that

7   other company is by someone on the inside.  So the complaint

8   had for access to this system, it was the owners,

9   Mr. Shahkoohi and Mr. Omid, they are the ones who had access.

10      There are different types of access.  A salesperson

11  may have access to like some vehicle information or something

12  like that.  But getting a full spread of how many cars have

13  been sold, how many are on the lot, drilling down particular

14  information as to customers, all that stuff, uh-huh, just the

15  owners have that type of information.

16      In this complaint we allege all the elements,

17  respectfully, for Defend Trade Secrets Act.

18      We have a limited access to the trade secret

19  material, the owners.  We have a reasonable basis and belief

20  that this information was taken because sales that we were

21  bidding on, they went to this other company.  And we have

22  information that Mr. Elyahou is affiliated with that company

23  with Mr. Eitan, a former manager at AutoExpo.

24      What is egregious here is that this is a vast amount

25  of basically stealing of corporate assets that occurred,

PRE-MOTION CONFERENCE

1    that's what this case is about.  And it's not only stealing of

2    corporate assets and money, it's taking their business.

3            So if you look at the complaint, the sections of

4    paragraphs 240 and following, give a significant amount of the

5    flavor of what occurred with respect to this Defend Trade

6    Secrets Act.  Particularly at 261 we have the allegations of

7    the reasonable measures, it was restricted to only employees

8    who have fiduciary duty, i.e. Mr. Elyahou and Mr. Shahkoohi,

9    the other owner, plaintiff, principle.  All the other

10   information was secured protected by passwords, usernames.

11   These are reasonable measures as a matter of law on a pleading

12   motion.

13           The case *Global Refining Group Inc. versus PMD*

14   *Analysis Inc.* 2023 U.S. District Lexus 157312 at 33 to 24,

15   that's a Southern District of New York August 15, 2023.  In

16   that case the Court specifically said:  Reasonable measures

17   necessary to satisfy 1839(3)(b), which is the section of the

18   Defend Trade Secrets Act may include the use of computer

19   software, passwords, as well as confidentiality agreements.

20   In that case the Court found that the plaintiff had adequately

21   pled that it developed this information at considerable

22   expense, just like was done here.  And that it was generally

23   not known or accessible to competitors or the public, this was

24   proprietary to this dealership.  And that reasonable measures,

25   i.e. limiting access of the data by contract and password.

PRE-MOTION CONFERENCE

1    That what was done here, your Honor.

2           As far as the Defend Trade Secrets motion, we feel

3    this is a delay tactic because they don't want to get into the

4    facts here.  The fact the here are damaging.

5           As far as the remand.  I just don't know what that

6    motion is.  We had started a complaint by summons with notice

7    in the Supreme Court.  And as the investigation continued, we

8    discovered that this was a much bigger claim and involved much

9    more theft of trade secrets and other types of theft than we

10   had originally thought.  And so we filed this action here.  We

11   asked for a stipulation, there is a motion to, and we agreed

12   to discontinue that case.  But we're here, your Honor, and

13   this is the plaintiffs' choice of form.  There is no remand

14   mechanism, as far as we know.  We didn't remove it to federal

15   court; we commenced this action.

16          THE COURT:  When you say there is a stipulation or a

17   consideration for a stipulation of discontinuance in a state

18   court action, can you speak to me specifically which action is

19   currently -- let me start, is there only one action related to

20   these matters filed in state court by you?

21          MR. MULE:  By us, there is one.  After we commenced

22   that action, I think maybe a week or so after, plaintiff

23   Elyahou who filed an action for inspection of books and

24   records in the state court.  Our action is under index number

25   617486 of 2023.  I don't have --

PRE-MOTION CONFERENCE

1          THE COURT:  When was that filed in 2023?

2          MR. MULE:  That was filed October 26.

3          THE COURT:  What is the current status of that?

4          MR. MULE:  The current status of that is, I believe

5    there is a motion, it was a motion to dismiss that action in

6    favor of this case.  We basically said --

7          THE COURT:  I don't know what in favor of this case

8    means.  Is there a motion to dismiss pending?

9          MR. MULE:  A motion to dismiss is spending, yes,

10   your Honor.

11         THE COURT:  Has it been briefed by both sides?

12         MR. MULE:  It was briefed.

13         THE COURT:  So it's subjudice at this point.

14         MR. MULE:  Correct.

15         THE COURT:  As of what date?

16         MR. MULE:  The submission date was I believe

17   December 18 -- I'm not certain of the date, your Honor.  I

18   don't have that handy.  I can find out momentarily.

19         THE COURT:  I'll hear now from defense counsel.

20         MR. MULE:  Thank you, your Honor.

21         MR. FEINMAN:  Yes, your Honor.

22         THE COURT:  I want to specifically pick up where

23   counsel left off.  And just ask about the status of the state

24   court action that was just referenced.

25         MR. EMOUNA:  Your Honor, first of all my apologies

PRE-MOTION CONFERENCE

1    to the Court and counsel for speaking a little bit louder.

2              THE COURT:  You're perfect, your voice is perfect

3    for me.

4              MR. EMOUNA:  I just put in hearing aids.  I'm

5    screaming, I can't even hear myself.  Thank you for

6    accommodating me.

7              THE COURT:  Certainly.

8              MR. EMOUNA:  Yesterday was the day that we spent the

9    entire day with seven attorneys going to Newark, New Jersey.

10   I thank the Court for accommodating us.

11             I'm going to give you the background about the two

12   cases that are pending in Nassau County Supreme Court

13   commercial division before Judge Sharon Gianelli.

14             THE COURT:  So there are two cases.  Start with the

15   case numbers for those.

16             MR. EMOUNA:  I shall.  The first case, I'll go by

17   docket number, that was filed by plaintiff on October 26, 2023

18   index number 617486 of 2023.  The second matter was filed on

19   October 30, 2023, that's index number 617795 of 2023.

20             Now, I could elaborate on both of these cases.

21   Prior to the commencement of any of these actions, way before

22   the case even started, Mr. Elyahou approached me saying they

23   are not giving me access to the books and records for

24   AutoExpo, please, do something.  I had drafted a letter that I

25   was going to send to AutoExpo; and on or about October 25,

PRE-MOTION CONFERENCE

1    AutoExpo sent a letter to Omid Elyahou saying that they want

2    their books and records and if you don't give us the books and

3    records by October 30 we're going to commence an action.

4            The same letter I was going to write back to

5    counsel, I said, if you don't give me the books and records

6    I'll give you the same deadline of October 30, I'll commence

7    an action.

8            In the meantime, I tried calling counsel and

9    emailing counsel and he was busy.  And he did write back to me

10   that I'm in court, I'm in depositions, I don't remember the

11   exact thing.  We'll speak on Friday.

12           October 30, from what I remember, it was a Thursday,

13   Judge.  October 31, on Friday, we did speak with counsel.  But

14   counsel didn't even tell me that they had commenced an action.

15   I said, listen, according to VCL426 you have to give me the

16   books and records.  I need access.  He goes, I'll speak to my

17   client back to you.

18           Between me and you, I know they were kicking the can

19   down the road.

20           On that Monday, they start -- October -- on that

21   Monday, October 30, I did an order to show cause.  It says

22   special proceeding Nassau County Supreme Court Article 78

23   proceeding to inspect the books and records.  Unfortunately,

24   Nassau County was so delayed.  It took them one week to assign

25   a judge and read the order to show cause to have it returnable

PRE-MOTION CONFERENCE

1    on whatever date.  The order to show cause was signed a week

2    later.

3            I immediately sent counsel copies.  Counsel asked

4    for extra time to reply.  I never say no to other attorneys,

5    never say no.  I said, no problem, you want more time, you got

6    more time.

7            In the meantime he's like, we commenced an action,

8    my action started before your action.  I sent a demand for a

9    complaint because they have to give me a complaint within 30

10   days.  He sent me a stipulation extending his time to respond

11   to give me a complaint to December 18, which I said no

12   problem.

13           Now, on the order to show cause that was on the

14   617795 2023 docket, before Judge Gianelli, they filed a cross

15   motion against my client for saying that, first of all we have

16   another action that started before your action so your action

17   is not good enough, you should dismiss this case.

18           The second, they did a cross motion for books and

19   records, and that we're asking for these information in bad

20   faith because that's their only defense for not giving

21   documents, saying it's in bad faith.

22           So funny enough, on December 18, instead of filing a

23   complaint -- they make a motion to discontinue the action that

24   they decided to start in Nassau Supreme Court as a placecard

25   holder to move the case to federal court.  If that's not venue

PRE-MOTION CONFERENCE

1    shopping or playing a placecard or playing a game, I don't

2    know what really is, Judge.  December 18 is when they make

3    their motion.  They could have filed this case all along to

4    federal court if that was the case --

5            THE COURT:  So the motion that was filed on

6    December 18, 2023, in the state court action, 617486 --

7            MR. EMOUNA:  That was on --

8            THE COURT:  -- what was that motion?

9            MR. EMOUNA:  That motion that he filed on that day,

10   I wrote it in my letter.

11           THE COURT:  Is it the motion to discontinue?

12           MR. EMOUNA:  Because he said there was a

13   stipulation.  There was no stipulation.  So a motion that they

14   filed was pursuant to CPL3217B of the CPL law, dismissing the

15   action with prejudice in favor of the case filed in United

16   States District Court for the Eastern District of New York; or

17   in the alternative, pursuant to Sections 2004, 2005 and

18   Section 3012 subsection B of the CPL law, extended their time

19   in which plaintiff must served a complaint in the state board

20   action, or granting plaintiff such other further leave that

21   the honorable court deems just and proper.

22           So Judge, October 30 they filed an action.  They

23   come forward in my opposition to my order to show cause in my

24   617995 --

25           THE COURT:  I understand the timing.  Right now I

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

14

PRE-MOTION CONFERENCE

1  really want to, I don't need really an argument on this one.

2  I just I'm trying to make sure I have the facts right in terms

3  of where these cases are and what is currently pending.

4          I'm trying discern what the current status is with

5  regard to the December 18, 2023, request.  Is there nothing

6  further that's happened?  That is just sitting dormant at this

7  particular juncture that particular case?

8          MR. EMOUNA:  It's not dormant, motions have been

9  filed.

10          THE COURT:  And the Court has not ruled, you haven't

11  heard a decision.  Did you respond to that?

12          MR. EMOUNA:  I responded and I opposed it.

13          THE COURT:  On what date?

14          MR. EMOUNA:  The date I responded was a week after,

15  it was before the New Year's, Judge.  They filed a reply.

16          THE COURT:  What date do you recall that you filed

17  your reply?

18          MR. EMOUNA:  If I remember correctly, January 4 or

19  5, Judge.

20          THE COURT:  Just because I'm trying to get a sense

21  of how long it's been pending.  And moments ago, I had

22  December 18 is that it was subjudiced since the 18th.  It

23  seems like it's not, it's more.

24          MR. MULE:  If I may, your Honor?

25          THE COURT:  Yes.

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

PRE-MOTION CONFERENCE

1          MR. MULE:  So I believe that their action on books

2    and records, there was a reply filed on December 18.  On our

3    initial action that we had sought the stipulation to just

4    discontinue it, we made the motion to discontinue that case.

5          THE COURT:  There is no stipulation.

6          MR. MULE:  There was no stipulation.

7          So we made a motion to discontinue that case.  And I

8    believe the reply on that was filed sometime in January.  I

9    don't have the exact date.

10         THE COURT:  Okay.  Just one point that I want to

11   just, as you get into this, these cases with the state court

12   actions.  You have asked for a conference to discuss your

13   anticipated motion for remand or and/or motion to dismiss.  I

14   want to speak specifically to the request for an anticipated

15   motion to remand.  I'd like to know the basis for your remand

16   motion.

17         I say specifically, I'm looking at procedures in

18   federal court with respect to removals, 28 U.S.C. 1447.  I

19   don't understand this case to have been removed from state

20   court to federal court.  If that's your understanding, I'd

21   like to know the authority and the basis for that

22   understanding.

23         MR. EMOUNA:  Well, I said in my paper, I said they

24   don't call --

25         THE COURT:  So you can't file a motion to remand a

PRE-MOTION CONFERENCE

1    case that hasn't been removed.  Is your premise is that the

2    case -- do you believe the case was removed or did he just

3    file an action in federal court?

4              MR. EMOUNA:  Well, if he started a proceeding action

5    in state court why is he starting an action in federal court?

6              THE COURT:  Look, I'm not the plaintiff.  I can't

7    speak to his or his counsel, I don't know why he did it.

8              But if it's that he filed a separate action in

9    federal court with claims that he filed an action in state

10   court, that just is what it is.  But it's not a case that was

11   removed from state court.

12             All of these terms have legal import.  And so I'm

13   trying to -- I want to hear from you whether or not you are

14   seeking to simply file a motion to dismiss for whatever basis

15   you believe there is no jurisdiction for this Court, or they

16   failed to state a claim, whatever your basis is for your

17   motion to dismiss; if that's what you're seeking, we can speak

18   about that and then set a briefing schedule for your motion to

19   dismiss.

20             But if you're seeking to file a motion for remand,

21   I'd like to first address that and hear what your basis would

22   be to remand a case that I don't understand to be removed from

23   state court to federal court, because I don't have any

24   jurisdiction to remand a case that wasn't removed.

25             MR. EMOUNA:  Very well put, Judge.  I thank you for

1  clarifying it.

2           My second paragraph in my letter --

3           THE COURT:  I want to hear from you, as we're

4  talking in this conference, about a motion that you anticipate

5  making.  Is it your intention for me to set a briefing

6  schedule for a motion to remand?  I find that might be futile

7  because -- and so I want to know before I do that and caution

8  you before you have plaintiffs' counsel respond to that and

9  incur fees or anything else there -- think about and

10 articulate for me what the basis would be for it.

11          MR. EMOUNA:  I would make a motion to say that this

12 Court -- it's not to make a motion to remand.

13          THE COURT:  So you're not making a motion to remand.

14          MR. EMOUNA:  I can't call it a motion for remand.

15          THE COURT:  You certainly cannot.  So long as we're

16 on agreement on that.

17          MR. EMOUNA:  On the face.

18          THE COURT:  Not with the facts that you presented

19 here, it doesn't seem that you have a basis for that.

20          MR. EMOUNA:  I could make a motion to dismiss saying

21 there is a proceeding --

22          THE COURT:  You certainly can.

23          MR. EMOUNA:  I would like to make a motion, I don't

24 know what it's called, I don't want to use the improper word,

25 a motion to say there is a prior action pending so the Court

PRE-MOTION CONFERENCE

1  should not have jurisdiction to hear this case because there

2  is a prior action pending.  I could make that motion, Judge.

3          THE COURT:  Is that what you intend to do?

4          MR. EMOUNA:  That's one part of what I want to do,

5  yes.

6          THE COURT:  Okay.  Speak to me in full about what

7  you anticipate in terms of your motion with regard to the

8  plaintiffs' complaint in this case.

9          MR. FEINMAN:  Your Honor, may I make the substantive

10  argument?

11          THE COURT:  Certainly.

12          MR. FEINMAN:  Thank you, your Honor.

13          As Mr. Mule indicated during his argument, he said

14  he's seen the alleged trade secret.  And reading the

15  complaint, taking their own allegations, the problem, the

16  fundamental problem with their allegations is, even by them,

17  he's not the only one who has seen the alleged trade secret;

18  nor is the alleged owner, AutoExpo the, only one who has seen

19  the alleged trade secret.

20          The fundamental to the entire basis of his alleged

21  subject matter jurisdiction under the Defend Trade Secrets Act

22  is his requirement that he has to show that the owner of the

23  alleged trade secret took reasonable measures to protect.

24  It's fundamental.  If the alleged owner, AutoExpo, voluntarily

25  disclosed the alleged trade secret, there is no trade secret.

PRE-MOTION CONFERENCE

1   And a careful reading of plaintiffs' complaint leads to the

2   conclusion that AutoExpo, by plaintiffs' own allegations,

3   voluntarily disclosed the alleged trade secret.

4           Throughout the complaint, and if you track this,

5   there is multiple plaintiffs.  Throughout the complaint, they

6   allege standing under the Defend Trade Secret Act as belonging

7   to AutoExpo.  They say:  AutoExpo is the owner of the trade

8   secret.  They say that throughout the complaint, paragraph 11,

9   216, 240, 260.

10          Importantly, AutoExpo is a single car dealership.

11  It's not multiple car dealerships.  It's a single car

12  dealership.  None of the other plaintiffs are car dealerships.

13  Yet, in the complaint when it comes time to plead reasonable

14  measures, they allege multiple dealerships.  They allege that

15  plaintiffs have made reasonable efforts to maintain the

16  secrecy of this information, including limiting its disclosure

17  to those who owe a fiduciary duty to the dealerships,

18  dealerships plural, paragraph 280.

19          That's not a typo.  In plaintiffs' complaint, they

20  go through, and Mr. Mule provided a long history.

21  Mr. Shahkoohi, who is not a plaintiff, he alleges throughout

22  he's been in the automobile dealership for over three decades

23  and he operates several dealerships.  In addition, the trade

24  secret claims that they bring, they are pled by all

25  plaintiffs.  How can plaintiffs who are not car dealerships

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

PRE-MOTION CONFERENCE

1   also have standing to assert trade secret claims of the car

2   dealerships.

3           The plaintiff, AutoExpo's disclosure even to the

4   other plaintiffs here, defeats trade secret protection.

5           In addition, plaintiffs it seems they carefully

6   plead around this fact are seeming to allege that Mr. Shakewy

7   that AutoExpo had disclosed these alleged trade secrets to

8   Mr. Shakewy's other dealerships.  That out right defeats any

9   trade secret claim here.  If you go through and we look at how

10  all of these allegations of reasonable measures to maintain

11  trade secret protections are pled, they are pled, I would say,

12  artfully at best to get around this fact.  For example,

13  complaint paragraph 295, Mr. Mule cites some this language,

14  they say:  The trade secrets have not been disclosed to anyone

15  except those with a fiduciary duty who are obligated to keep

16  this information confidential.  Owe a duty to who?  Everybody

17  who has seen it?  The multiple plaintiffs, Mr. Shakewy's other

18  car dealerships?  That's more than an oversight in the

19  pleading.  It's pled like that throughout.

20          Paragraph 313:  Plaintiffs make reasonable efforts

21  to maintain the secrecy of this information including limiting

22  its disclosure to those who owe a fiduciary duty to them.

23  Again, AutoExpo is the dealership.  It's the only dealership.

24  And owing a fiduciary duty and even sharing this with other

25  plaintiffs defeats trade secrets protection.

PRE-MOTION CONFERENCE

1          That would be the basis of the motion to dismiss,

2     your Honor.  Because the entire basis of subject matter

3     jurisdiction here rests on the existence of this alleged trade

4     secret.  And according to plaintiffs' own careful allegations,

5     when you add them up, there is no trade secret at issue.

6          THE COURT:  Plaintiff?

7          MR. MULE:  Yes, your Honor.

8          If it says plaintiffs at certain spots where it

9     should say plaintiff, the only with auto proprietary inventory

10    system for auto dealerships is the auto dealership.  The other

11    entity, one is a real estate entity, one is an insurance

12    agency.  They have nothing to do with auto dealership.  We're

13    not making any -- we didn't mean to make any allegation that

14    those entities had a trade secret access.

15          In addition, one thing that we will get into in

16    discovery is that Mr. Shakewy, prior to them entering into

17    this agreement, had multiple dealerships.  Now, different

18    dealerships are going to have access to their own system.

19    Some fiduciaries, because they are including Mr. Elyahou, had

20    access to be able to see different things for different

21    dealerships because he was basically part of this whole group,

22    and same with Mr. Shakewy.  These are related entities.  That

23    does not defeat any claim in any event.  Each dealership had

24    its own access.  And the fiduciaries, Mr. Shakewy and

25    Mr. Elyahou, are the ones that had access.

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

PRE-MOTION CONFERENCE

1          Now, if there is a claim that there was a disclosure

2     of it, since Mr. Elyahou is the one who controlled and

3     operated the dealership, any disclosure would have been

4     improper and would have been done by Mr. Elyahou.

5          THE COURT:  I'll allow you to respond.

6          MR. FEINMAN:  Thank you, your Honor.

7          I believe Mr. Mule just demonstrated that there can

8     be no trade secret here, even if you take what he said.  He

9     said, Mr. Shakewy has multiple dealerships and those multiple

10    dealerships have access to whatever they are alleging to be

11    the trade secret here.  Those other car dealerships are not,

12    they are not plaintiffs to this action.  They are separate

13    entities.  That is a voluntary disclosure of the alleged trade

14    secret, even at this stage by their own allegations.

15         To take that pleading -- "plaintiffs" isn't an

16    oversight.  Their claims are pled on behalf of all plaintiffs.

17    This isn't one case of "S" of one plaintiff.  They plead it

18    throughout.  At minimum, it's not the complaint they brought.

19    They brought group pleading against all defendants by all

20    plaintiffs.

21         At this stage the complaint they brought, it's

22    flawed in every respect with respect to their ability to

23    properly state a trade secret.

24         THE COURT:  Counsel Mule, at this stage

25    understanding arguments that are going to be raised by the

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

23

PRE-MOTION CONFERENCE

1   defendants in this case, is there something that you feel

2   should be done differently with regard to your complaint

3   before me setting this for a motion to dismiss, or instead of

4   setting a schedule.  Again, I'm trying to be efficient and not

5   go through an exercise in futility.  As you sit here listening

6   to this and read this, you acknowledge or envision that there

7   are some claims that have been brought that you know are not

8   properly brought, it seems to go through the exercise of

9   motion practice on those claims at this point, what I would

10  say to be an exercise of futility for all involved, and not

11  the most efficient way to move to what may be the core claims

12  of this case that are viable.  I'd like to hear from you on

13  that.  Otherwise, I'm prepared to just set a briefing

14  schedule.

15          MR. MULE:  Your Honor, we have the cause of action

16  that is relevant, the first cause of action, the Defend Trade

17  Secret.

18          Although the very first paragraph and the third

19  paragraph says plaintiffs, at the end it's clearly referring

20  to AutoExpo, paragraph 291.  It says:  As proximate direct

21  result of defendants' misappropriation of AutoExpo's

22  confidential and trade secrets, AutoExpo has suffered and

23  continues to suffer.

24          THE COURT:  To be clear, I'm not here to rule today

25  on the sufficiency of your pleadings.  I'm merely putting to

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

PRE-MOTION CONFERENCE

1  you and giving you an opportunity to perhaps appeal to me to

2  do something else if you think you might want to do that.

3         What I don't -- in doing so, to be clear, if it is

4  that this is a futile exercise; that is, that you're resting

5  on your pleading as it stands, knowing if you know that there

6  are claims that are not sufficient, what I don't want to hear

7  on the other side of dismissed claims when someone else is

8  saying that you did know, we gave you notice, and we want fees

9  for something.  I don't know, I just anticipate that could

10  happen.  I don't want you to then say to me, but I had a bona

11  fide claim.  If you know, as you stand there, that there is

12  something wrong with the pleading the way it stands, this is

13  the opportunity to do something about it; otherwise, we go to

14  briefing and everything falls where it falls.

15         MR. MULE:  Right, okay.  If I may respond to that,

16  your Honor?

17         THE COURT:  Sure.

18         MR. MULE:  So at this point I believe the pleading

19  is satisfactory.

20         However, I do want to alert the Court, I did learn

21  two days ago that we may have additional federal claims which

22  I want to look into.  If it does make sense, and it's just a

23  matter of repleading, to go through this exercise, like I

24  said, I might have additional claims I just learned additional

25  facts two days ago, I have to research them.  But I anticipate

PRE-MOTION CONFERENCE

1    there may be claims under ERISA, so that's an additional

2    federal claim.  It might make some sense for us to amend

3    before there is any briefing schedule set.  I think that does

4    make some sense for me on a management point.

5            THE COURT:  You're amending only as to what you

6    claim to be potential ERISA claims or something else?

7            MR. MULE:  That's primarily it.  However, he says

8    that I put plaintiffs, or my associate who was working on it

9    at the time, put plaintiffs in certain the spots, I'll clarify

10   that that he's making a claim where it says plaintiffs, it

11   should say plaintiff AutoExpo.

12           THE COURT:  I'll hear from defense counsel.

13           MR. FEINMAN:  Yes, your Honor.

14           Certainly, giving Mr. Mule more time to see if he

15   has potentially other claims, we would certainly object to

16   this.  There is trade secret against my clients, and

17   plaintiffs is just one aspect.  I think we're, by Mr. Mule's

18   own arguments today, by his own allegations, it is to me

19   taking their allegations as true, it is plain that AutoExpo,

20   that these trade secrets, were voluntarily disclosed.  It

21   seems to me that Mr. Mule, he's bordered on testimony with

22   some facts outside the complaint, and said Mr. Shakewy has

23   several dealerships and those dealerships had access to it.

24           So I believe Mr. Mule did not directly address the

25   issue when you asked him, do you want to truly maintain this

PRE-MOTION CONFERENCE

1    complaint as it's pled.  His response was:  I want to see if

2    we have additional claims.  So we would object to any sort of

3    giving Mr. Mule more time to see if he has more claims.

4            THE COURT:  I agree on that.  Because this

5    conference was set to discuss what was pending before the

6    Court.  And now you've introduced something really an hour

7    into this conference and you could have opened with:  In

8    addition to everything that I've said, I also have additional

9    claims that I'd like to add, actually, I'd like to have more

10   time.  And you could have asked then, notwithstanding whatever

11   arguments defense counsel might have made, appeal to the Court

12   to ask for time to amend the complaint and to say that this

13   might all be moot in someway.

14            What I don't want to do is waste defense counsels'

15   time and/or any of the parties time or efforts or any energy

16   on this.  And that is to allow the passage of time for you to

17   just investigate with no certainty.  As you came here, if you

18   didn't come here thinking you were going to amend the

19   complaint with regard to an ERISA claim, then now is not the

20   time to just brainstorm on it.  Right.  I would be inclined to

21   set a briefing schedule for the motion to dismiss and if you

22   decide that you have a ERISA claim that you want to bring, a

23   bona fide claim for some reason, make that application.  I'll

24   rule on it and see if it makes sense, because it shouldn't of

25   interrupt the briefing schedule that I have set.

PRE-MOTION CONFERENCE

1          I'll hear from the parties if there is something you

2    would like me to consider; otherwise, if not, that's where I

3    am right now.

4          MR. MULE:  If I may, your Honor.  I think

5    Mr. Feinman is misinterpreting what I said about Mr. Shakewy

6    having multiple -- yes, he has multiple dealerships, that is

7    in the pleading.  I just want to state that for the record, as

8    far as access, all of that stuff.  We'll get into that in this

9    case.

10         But we're ready to go forward with a briefing

11   schedule.

12         The only reason I mentioned ERISA is because I just

13   I didn't want the Court to think down the line if there is

14   some basis for that and I assert it that I didn't alert the

15   Court.

16         THE COURT:  I will have to assess at that time what

17   has been put to me at the time, where it is in the time.

18         What I do want to address though, and hear from you

19   on, is with regard to the state court action.  Is this the

20   exact same case?

21         MR. MULE:  It's not, because the state court action

22   does not include certain forms.  I don't believe it

23   includes -- it does not include the entities as plaintiffs

24   that are in this case.  It does not include, I think some the

25   defendants, and right now I don't know exactly which ones but

PRE-MOTION CONFERENCE

1   it's not the same parties that are in this action.

2           THE COURT:  I'll hear from defense counsel.

3           MR. EMOUNA:  Judge, just one more thing since we're

4   doing a little bit of housekeeping here.

5           There is something very troublesome in the

6   plaintiffs' complaint where they make scandalous allegations

7   against my client.  Where his client, Mr. Shakewy, was

8   mediator for my client and his ex-wife, about infidelity and

9   so forth.  This is a business divorce, Judge.  There is no

10  reason to get into the scandalous allegations.  Part of my

11  motion is the 12F to take the scandalous part of the motion

12  out.  It has no public interest.  It has nothing to do with

13  this case.  What happened in his private matter with his

14  ex-wife, where Mr. Shakewy was the mediator, and he's putting

15  the stuff that he learned throughout his mediation in the

16  moving papers, Judge.

17          THE COURT:  I'll let you respond.

18          MR. MULE:  Your Honor, I don't think there is

19  anything scandalous that is put in here, but we'll respond.

20          THE COURT:  Do you feel the claims are relevant to

21  the action; that is, the claims that you brought under --

22          MR. MULE:  Yes, your Honor.  We gave a background as

23  to -- there was a certain time period where the auto

24  dealership was not doing so well, and we gave a background of

25  well Mr. Elyahou who was going through some personal issues,

1   he was given some leeway during that time period because of

2   those personal issues and then he wanted to expand the

3   business at that point.

4          THE COURT:  That's not exactly what you said.  You

5   can agree on that.  That's not the way you pled it.  Right?

6   Which is fine.  I don't want to -- the allegations don't

7   exactly read the way you just stated.

8          MR. MULE:  I was giving a summary, your Honor.  If

9   you want I could read it or --

10          THE COURT:  I don't need it read into this

11   particular conference transcript.  But I will say that it's

12   not lost on me that there is more there.  It strikes me that

13   you when you say not scandalous, it does have some color to

14   it.

15          But if you feel it's necessary, I'll address it in

16   response to the motion.  I don't know what action you'll ask

17   as a result, other than the dismissal I'll see in your papers.

18          MR. EMOUNA:  Judge, on 12F it's very precise.  I'm

19   just ask certain parts to be taken out and stricken from the

20   record.  That's all it is.  That has no business being in the

21   action.

22          THE COURT:  Look, I'm trying to straight line this

23   to the extent that we can.  Is there any part of that -- does

24   he have to brief that or do you feel that those portions,

25   without going specifically to the complaint, paragraphs -- I

PRE-MOTION CONFERENCE

1    read the complaint, I do know what you're talking about.

2              I'm saying to you, without me having to go do this,

3    are there portions here, without having him to request that it

4    be stricken, that you agree should be stricken?

5              MR. MULE:  If he wants to discuss with me.  We

6    haven't discussed this.  This is not in the letter as far as I

7    could tell.  So this is the first I'm hearing a request of any

8    sort.  If he wants to talk to me about it, I'm happy to do so.

9              THE COURT:  I would ask and encourage you; that is,

10   before making your motion, to reach out to plaintiff's counsel

11   and see if those paragraphs that you believe you're going to

12   be requesting that I strike, that you see if he might

13   voluntarily agree to.

14             MR. EMOUNA:  Thank you, Judge.

15             THE COURT:  Then you can all so indicate in your

16   papers.  And then I can address it in that way.

17             MR. EMOUNA:  Thank you, Judge.

18             THE COURT:  Let me think in terms of a briefing

19   schedule.  Did you have an idea in mind in terms of time?

20             MR. EMOUNA:  Judge, one more thing.  I'm not sure,

21   is this case going to stay with you or being shipped to EDNY

22   in Central Islip, because there is a trial going on in Central

23   Islip and I want to know.  That may move things around, that's

24   why.

25             THE COURT:  What may move things along?

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

PRE-MOTION CONFERENCE

1          MR. EMOUNA:  I'm saying, is this case going to

2    remain with you or going to be sent to Magistrate Judge

3    Tiscione?

4          THE COURT:  The case remains with me as the District

5    Court judge, unless you all consent to it being before

6    Magistrate Judge Tiscione for all purposes.  Otherwise, with

7    regard to discovery matters, Magistrate Judge Tiscione would

8    be handling those matters related to discovery.  That would be

9    on the other side of your motions, though.

10          MR. EMOUNA:  We can keep it here.  I have no

11    objection.  Except the traffic I don't like, but that's okay.

12          THE COURT:  It has been assigned to me.  I don't

13    right now anticipate that it's going to be reassigned to a

14    District Court judge that is sitting in Islip.

15          MR. EMOUNA:  Thank you.

16          THE COURT:  So the only thing I would say, I would

17    suggest that we should talk about -- I know that you have an

18    objection to an amended of the complaint in general.  By the

19    same token, without tying it to the filing of your papers

20    right now or me setting the schedule, I am inclined to give a

21    short tight amount of time for plaintiffs to file an amended

22    complaint or request to file one, if it is that they think

23    they have additional claims.  And set a time for it rather

24    than just allow it to be out there for a while.

25          My inclination would be to say plaintiff's counsel,

PRE-MOTION CONFERENCE

1    based on your representations that you might have something

2    that you just discovered two days ago, that I give you until

3    the end of the month to file an amended complaint, or request

4    to file an amended complaint.  And my rules provide that you

5    would then have to attach that complaint in that request.  And

6    parallel to that, set the briefing schedule and that would

7    allow you to tee-up whatever claims, if things still remain

8    there that we anticipate will.  And then a few more weeks

9    address any new claims that might be filed.  But I would just

10   like to hear from the parties on that.

11           MR. FEINMAN:  Your Honor, that would make perfect

12   sense from a judicial economy perspective.

13           My only issue is, respectfully, Mr. Mule has not

14   said:  You're right, there is pleading deficiencies; or,

15   you're right we were planning to file an amended complaint.

16           I'm not sure.  It seems like the idea of an amended

17   complaint was raised as a non-response, respectfully, to your

18   question.  So I just haven't heard Mr. Mule say:  We will be

19   filing an amended complaint.

20           If that's the case, we wouldn't object to it.  But I

21   don't see, even the claims that he's raised, unless I'm

22   missing something, even affecting my clients.  But if the

23   Court would like, we would consent to whatever you think

24   reasonable.

25           My main objection is I just haven't heard Mr. Mule

PRE-MOTION CONFERENCE

1  say:  We want to file an amended complaint.  I would think

2  either he commits to doing that or not.

3          THE COURT:  Okay.  Counsel Mule?

4          MR. MULE:  We're ready to proceed with whatever the

5  Court as far as a motion to dismiss briefing schedule on the

6  complaint as it stands.

7          THE COURT:  Let's go with that then.

8          Motion papers:  Defendants' motion papers should be

9  served by, I'll give you 30 days, or would you like shorter or

10 longer?

11         MR. FEINMAN:  May I check my calendar?

12         THE COURT:  Certainly.

13         MR. FEINMAN:  Any time the week of May 12 or beyond

14 will work.

15         THE COURT:  I would say Monday, May 13.

16         MR. FEINMAN:  Thank you.

17         THE COURT:  Plaintiff's opposition papers due by

18 June 10, 2024.  That is to be served.  And defendant's reply

19 and fully briefed motion to be served and filed by June 24,

20 2024.

21         I just would ask that the parties review my

22 individual practice rules as they relate to the service and

23 filing of motion papers.  And specifically to take note that

24 papers are served and not filed until the motion is fully

25 briefed; that is, serve your adversary and courtesy copies on

PRE-MOTION CONFERENCE

1   the Court, but not to file on the docket until you have a

2   fully briefed motion.

3           MR. FEINMAN:  Understood.

4           MR. EMOUNA:  Thank you.

5           THE COURT:  Is there anything further that I should

6   address at this time from the parties?

7           MR. MULE:  No, your Honor.

8           MR. EMOUNA:  Not from the defense, your Honor.

9           THE COURT:  Okay, with that we stand adjourned.

10   Thank you.

11           (Whereupon, the matter was concluded.)

12               *    *    *    *    *

13   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

14

15   */s/ Rivka Teich*
     Rivka Teich, CSR RPR RMR FCRR
16   Official Court Reporter
     Eastern District of New York

17

18

19

20

21

22

23

24

25