UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

AUTOEXPO ENT. INC., PEACE PROPERTIES LLC,
NETWORK REINSURANCE COMPANY INC., AUTO
EXCHANGE CENTER, LLC, and CHROME
INSURANCE AGENCY LLC,

                                 Plaintiffs,

       -against-

OMID ELYAHOU, SIMPSOCIAL LLC, UNITED
CITIZENS WARRANTY LLC, FIFTY SEVEN
CONSULTING CORP. d/b/a CERTIFIED AUTO
GROUP a/k/a CERTIFIED PERFORMANCE MOTORS,
AVI EITAN, and FAZEEDA KASSIM,

                               Defendants.

----------------------------------------------------------------------X

**Case No.: 2:23-cv-9249 (OEM) (ST)**

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANTS OMID ELYAHOU, SIMPSOCIAL LLC, AND UNITED CITIZENS WARRANTY LLC

---

**MILMAN LABUDA LAW GROUP PLLC**

*Attorneys for Plaintiffs*
3000 Marcus Avenue
Lake Success, New York 11042-1073
(516) 328-8899 (office)
(516) 303-1442 (direct dial)
(516) 328-0082 (facsimile)

Of counsel:    Michael C. Mulè, Esq.
                 Kyle Monaghan, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF FACTS ....................................................................................5

ARGUMENT .....................................................................................................10

POINT I
THE ELYAHOU DEFENDANTS' MOTION TO DISMISS THE ERISA CLAIMS
MUST BE DENIED BECAUSE AUTOEXPO HAS STANDING TO PURSUE ITS
ERISA CLAIMS, AND THIS COURT HAS SUBJECT MATTER JURISDICTION.... 10

   A.   AutoExpo Has Standing To Seek Injunctive And Equitable Relief Under ERISA §
502(a)(3) ..........................................................................................................11

   B.   AutoExpo Also Has Standing To Seek Damages On Behalf Of The Plan Under
ERISA § 502(a)(2) ............................................................................................17

POINT II
ELYAHOU'S SUGGESTION THAT A VIABLE BREACH OF FIDUCIARY DUTY
CLAIM AGAINST HIM IS NOT STATED IS SPECIOUS ............................................. 20

CONCLUSION.......................................................................................................23

## **TABLE OF AUTHORITIES**

### **Cases**

*Agway, Inc. Employees' 401(k) Thrift Inv. Plan v Magnuson*, No. 5:03-CV-1060, 2006 U.S. Dist. LEXIS 74670, at *42 (N.D.N.Y. July 13, 2006) ............................. 20

*Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, (9th Cir. 1988) ......................................................................................................... 14

*Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25275, at *16-17 (S.D.N.Y. Mar. 29, 2007) ............................................................................. 12

*Brovarski v. Local 1205, Intl. Bhd. of Teamsters Union, Pension Plan*, No. 97-CV-489, 1998 U.S. Dist. LEXIS 23039 (E.D.N.Y. Feb. 23, 1998) ...................................... 22

*Carver v. Bank of NY Mellon*, No. 15-CV-10180, 2017 U.S. Dist. LEXIS 49199, at *10 (S.D.N.Y. Mar. 31, 2017) ................................................................................... 13,14

*Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 128 F Supp 3d 501, (D. Conn. 2015) ...................................................................................................... 12

*Daus v Janover, LLC*, No. 2:19-cv-06341, 2022 U.S. Dist. LEXIS 30659, at *3-4 (E.D.N.Y. Feb. 22, 2022) .................................................................................. 21

*Donovan v. Bierwirth*, 680 F.2d 263 (2nd Cir. 1982) ..................................................... 20

*Faber v. Metro. Life Ins. Co.*, 648 F. 3d 98, (2d Cir. 2011) ............................................ 18

*Finkel v. Romanowicz*, 577 F.3d 79, 82 n.4 (2d Cir. 2009) ............................................ 20

*Flanigan v. General Elec. Co.*, 242 F.3d 78 (2nd Cir. 2001) .......................................... 21

*Gallagher v. Makowski*, No. 13-1103, 2014 U.S. Dist. LEXIS 41909 (D.N.J. Mar. 28, 2014) ............................................................................................ 16

*Gerosa v. Savasta & Co.*, 329 F.3d 317 (2d Cir. 2003) .................................................. 15

*Halo v Yale Health Plan*, 819 F.3d 42, (2d Cir. 2016) .................................................... 17

*Iron Workers Local No. 60 Annuity Pension Fund v. Solvay Iron Works, Inc.*, No. 5:15-cv-54, 2018 U.S. Dist. LEXIS 79735, at *33 (N.D.N.Y. May 11, 2018) ............... 18

*John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86 (1993) ...................... 18

*Johnson & Towers, Inc. v. Opinion Corporate Synergies Group, LLC*, No. 14-5528, 2015 U.S. Dist. LEXIS 81619, at *14-15 (D.N.J. June 23, 2015) ............................. 19

*Katzenberg v. Lazzari*, No. 1-04-cv-5100, 2010 U.S. Dist. LEXIS 23806 (E.D.N.Y. Feb. 24, 2010) ........................................................................................ 20

*Katzenberg*, 2010 US Dist LEXIS 23806, at *16 ............................................................. 22

*Kendall* and *Tavares v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) ..................................... 13

*Kendall v. Employees Retirement Plan of Avon Products*, 561 F.3d 112 (2d Cir. 2009) ............. 10

*L.I. Head Start Child Dev. Servs. v Economic Opportunity Council of Suffolk, Inc.*, 710 F.3d 57 (2d Cir. 2013) ..................................................................................... 18

*L.I. Head Start Child Development Services, Inc.*, 710 F.3d at 65 ..................................... 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ....................................................................................... 12

*Luna*, 406 F.3d 1192, 1199 (10th Cir. 2005) .................................................................. 18

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020) ..................................................... 1

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ................................................. 10

*Massaro v. Palladino*, 19 F. 4th 197, (2d Cir. 2021) ................................................... 11,19

*Morgan Stanley v. Skowron*, 989 F Supp 2d 356 (S.D.N.Y. 2013) ..................................... 9

*Perez v, Bridgeport Health Care Ctr.*, No. 3:16-cv-01519, 2017 U.S. Dist. LEXIS 226973, at *11-13 (D. Conn. Sep. 26, 2017) ........................................................................... 22

*Rahm v. Halpin (In re Halpin)*, 566 F.3d 286 (2d Cir. 2009) ...................................................... 18

*Roytlender v D. Malek Realty, LLC*, No. 21-CV-00052, 2024
  U.S. Dist. LEXIS 133591, at *31 (E.D.N.Y. July 29, 2024). .................................................. 9

*Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006).12, 14

*Sierra Club v. Morton*, 405 U.S. 727, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972) ......................... 12

*Silverman v. Miranda*, 2010 U.S. Dist. LEXIS 147924, at *12-13 (S.D.N.Y. Apr. 16, 2010) 13,14

*Solis v. Weiss*, No. CV 12-0218, 2013 U.S. Dist. LEXIS 128396, at *
  3-4 (E.D.N.Y. Aug. 19, 2013)............................................................................................... 22

*Solvay*, 2018 U.S. Dist. LEXIS 79735, at *18.......................................................................... 20,21

*Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016)................................................................ 13

*Sullivan v. M.A.C. Design Corp.*, No. 14-cv-1846, 2015 U.S. Dist. LEXIS 124465,
  at *6, 2015 WL 5518456, at *2 (E.D.N.Y. Sept. 17, 2015)...................................................... 20

*Trustees of the Bldg. Trades Educ. Ben. Fund v Unified Elec.*, No. 23-CV-188
  (ARR) (ST), 2024 U.S. Dist. LEXIS 46524, at *19 (E.D.N.Y. Mar. 14, 2024)..................... 19

*Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376 (2d Cir. 2000)......................................... 12

*Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). .................................. 14

**Statutes**

§ 1105(a)(2) ...................................................................................................................................... 5

§ 1105(a)(3). ..................................................................................................................................... 5

§502(a)(2) ............................................................................................................................ 11, 17, 18

§502(a)(2) ....................................................................................................................................... 11

§502(a)(3 ............................................................................................................................................

18 U.S.C. § 1836 .............................................................................................................................. 1

26 U.S.C. §3405(b)(1) ...................................................................................................................... 9

29 C.F.R. § 2510.3-101 .................................................................................................................. 18

29 C.F.R. § 2510.3-102(a)(1). ........................................................................................................ 18

29 C.F.R. §2510.3-101(h)(1)(iii ..................................................................................................... 19

29 U.S.C. § 1001 .............................................................................................................................. 1

29 U.S.C. §1002 ............................................................................................................................. 19

29 U.S.C. § 1002(21)(A)……………………………………………………………………….5

29 U.S.C. § 1002(42) ...................................................................................................................... 18

29 U.S.C. §§ 1102(b)(3) ............................................................................................................ 5, 11

29 U.S.C. § 1104(a)(1) ............................................................................................................ 5,11,18

29 U.S.C. § 1105(a)(1) ............................................................................................................ 5,11,18

29 U.S.C. § 1106 (b) ...................................................................................................... 5,11,12, 18

29 U.S.C. §1109............................................................................................................................ 11, 17

29 U.S.C. §§ 1109(a) .............................................................................................................. 5,11,20

29 U.S.C. §§ 1110 ...................................................................................................................... 5, 11

29 U.S.C. §§ 1132(e)(1), (f) and (g)(1).................................................................................... 5, 11

29 U.S.C. § 1132(a)(2).................................................................................................................. 11,17

29 U.S.C. § 1132(a)(3)............................................................................................. 11,12, 13, 14, 17


ERISA §§ 402(b)

ERISA §§405 .................................................................................................................................... 5

ERISA §§ 404(a) ......................................................................................................................... 5, 22

ERISA §§ 404(a)(1). ................................................................................................................... 5,19

ERISA §406 ................................................................................................. 12, 18, 21, 23
ERISA §409(a) ............................................................................................................... 17
ERISA §§502(a)(2) .......................................................................................................... 5
ERISA §502(a)(3) ............................................................................................... 5,12, 17,22
ERISA § (e)(1), (f), and (g)(1) ............................................................................. 5,12,17,22

## PRELIMINARY STATEMENT

Plaintiffs, AutoExpo Ent. Inc. ("AutoExpo"), Peace Properties LLC, Network Reinsurance Company Inc., Auto Exchange Center, LLC, and Chrome Insurance Agency LLC (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to the motion of Defendants Omid Elyahou ("Elyahou"), Simpsocial LLC ("SimpSocial"), and United Citizens Warranty LLC ("United Citizens," collectively, "Elyahou Defendants"), to dismiss the claims of AutoExpo, a fiduciary, brought on behalf of AutoExpo's 401(k) Defined Contribution plan (the "Plan") and its participants, under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et. seq. ("ERISA"), against Elyahou.[1] AutoExpo alleges that Elyahou, while acting as a Plan fiduciary (more specifically, the Plan Trustee),[2] improperly and without authority, transferred Plan assets ("Plan Assets") from the Plan to a third-party, so he could purchase a multi-million house for himself. AutoExpo seeks equitable and injunctive relief, as well as damages. AutoExpo asserts

---

[1] An ERISA claim is also asserted against co-defendant Fazeeda Kassim ("Kassim") for her role. Also, Defendants submitted respective motions to dismiss the original complaint (the "Complaint") on July 1, 2024 (the "Original Motion," Dkt. 38-39). As to the Elyahou Defendants, the main difference between the original Complaint (Dkt. 1) and the first amended complaint ("Amended Complaint," Dkt. 48) is the addition of the ERISA claims, although a related party, United Citizens, was added. Defendants' primary argument for dismissal under FRCP 12(b)(6) in the Original Motion was that the Complaint failed to state a viable claim under the Defend Trade Secrets Act of 2016 18 U.S.C. § 1836 et. seq. ("DTSA"). Plaintiffs opposed Defendants' respective motions. Based on the Court's direction, this motion supplements Defendants' original motion and is directed at the Amended Complaint's ERISA claims, and the motions will be determined together. Plaintiff submits that so long as either federal claim, *i.e.*, the DTSA claim or ERISA claim, is sustained, federal jurisdiction exists. This opposition does not repeat the facts as contained in the original opposition (Dkt. 38 and 39).

[2] In this motion, Elyahou does not, and cannot, contest that he was, and AutoExpo is, a fiduciary under the Plan, as alleged, the Plan's June 28, 2021 Defined Contribution Adoption Agreement ("Adoption Agreement"), which is references in the Amended Complaint, expressly identifies AutoExpo as both the "Plan Agent" and "Plan Administrator," and further states that the Plan Administrator (as well as the "Trustee, and any other person who has discretionary authority or control in the management of the Plan or the disposition of Trust assets") is a "Fiduciary." (The Adoption Agreement is annexed to the accompanying declaration of Kamran ("Michael") Shahkoohi ("Shahkoohi Decl.") as Ex. "1"; *see also*, Shahkoohi Decl., Ex "2," p. 10 (definition of "Fiduciary"), p. 94 (Art. IV, Section 3.4.1(a)(4) and (6), outlining responsibilities). *See Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any written instrument that is attached to it as an exhibit, or is incorporated in it by reference  And even if the plaintiff chooses not to attach an instrument to the complaint or to incorporate it by reference, if it is one upon which the plaintiff solely relies and which is integral to the complaint, the court may take the document into consideration in deciding the defendant's motion to dismiss") (Internal citations and quotations omitted).

a breach of fiduciary duty claim (its twentieth cause of action) and a claim for injunctive relief (its second cause of action), to undo and seek redress as to the self-interested transactions.

In their motion, the Elyahou Defendants argue that AutoExpo lacks standing and has not asserted a breach of fiduciary duty claim under ERISA. Their arguments are meritless. AutoExpo has standing because it has a concrete and particularized interest in ensuring that only proper distributions of Plan Assets are made, and, in addition, because Elyahou's actions directly diminished Plan Assets. Clearer instances of standing and breach of fiduciary duty could hardly be imagined.

By way of background, AutoExpo is an automobile dealership. Its majority owner, Michael Shahkoohi ("Shahkoohi"), has decades of experience in the business. Elyahou, more than 20 years Shahkoohi's junior, was Shahkoohi's former brother-in-law and mentee. AutoExpo, wearing its hat as a fiduciary in administering and managing the Plan for the benefit of participants, brings its ERISA claims, primarily, to undo two transactions in 2022 whereby Elyahou, with the assistance of co-defendant Kassim, without authority, abused his fiduciary position, as Plan Trustee, transferred $521,000 of the Plan's funds to a seller of real estate so that he could purchase residential real property (the "$521,000 Transfer"). If Elyahou were to argue, in reply, that there is no harm to the Plan because those funds were allocable to his own 401K account and were for his own benefit as a participant, he would be wrong on multiple grounds.

All amounts contributed to the Plan by participants and AutoExpo constitute Plan Assets even though held for the benefit of Plan participants and their beneficiaries. No employee possesses the unfettered right, authority or power to gain access to, or liquidate, funds in the Plan. Plan Assets are distributed lawfully only if distributed in accordance with ERISA and the Plan's requirements. They were not.

If Elyahou intended the $521,000 Transfer to be a loan, it was directly at odds with the Plan's requirements which limit the outstanding balance of participant loans to $50,000. Likewise, if Elyahou intended the transfer to be a "hardship distribution," ERISA and the Plan impose restrictions on those, and those restrictions were not complied with. As explained below, Elyahou did not even qualify for such a distribution because he had terminated employment five months before the $521,000 Transfer. He also failed to provide written certification, as a participant, of a qualifying hardship which is a *sine qua non* for a hardship distribution.

Assuming those prerequisites are satisfied, next, the Plan Trustee or Plan Administrator must have the opportunity to determine, and must determine, whether the employee, in fact, qualifies for a hardship distribution under the statute's and Plan's enumerated conditions, including whether the employee has established "an immediate and heavy financial need," whether the employee could not reasonably have obtained the funds from another source, and whether the amount requested was necessary or excessive (Dkt. 48, ¶¶ 240, 257; Shahkoohi Decl., Ex. "1," K16, p.37)). Then, the fiduciary, *i.e.*, Plan Trustee, must file the required loan or withdrawal documents in conformity with tax laws and regulations.

As alleged in the Amended Complaint, not one of these required steps was taken by Elyahou – not surprisingly, because Elyahou was conflicted!

Of course, the lack of deliberation also sets a terrible precedent for the Plan because, if the $521,000 Transfer were left undisturbed, the Plan would be hard-pressed to deny a similar request by other Participants, as it has an obligation under the Plan to make reasonable determinations "in a uniform and non-discriminatory manner." (Dkt. 48, ¶¶ 240, 257; Shahkoohi Decl., Ex. "1," K16, p.37)).

The IRS, itself, recommends that the participant return the hardship distribution amount

3

plus earnings (https://www.irs.gov/retirement-plans/401k-plan-fix-it-guide). AutoExpo seeks equitable and injunctive relief from the Court in this action because Elyahou will not voluntarily agree to such corrective measures. Moreover, Elyahou's unilateral, improper withdrawal of $521,000 directly injured the Plan by diminishing its assets.

Contextually, the timing of Elyahou's transaction is telling. By November 2022, Elyahou knew that his two-decade run of fleecing AutoExpo was coming to a close. As Shahkoohi learned additional facts of Elyahou's misconduct,[3] he took progressive measures to eliminate Elyahou's responsibilities for the protection of AutoExpo, which included, directing (i) in January 2022, that Elyahou could not make any further charges on the company credit cards; (ii) in June 2022, that Elyahou not to take any draws against salary; and (iii) in December 2022, that Elyahou not to use any company money for any purpose. (Dkt. 48, ¶¶ 218-22). But, throughout 2022, Elyahou remained the Plan Trustee. Knowing the writing was on the wall, Elyahou, with Kassim, used his last vestiges of power – his control of the Plan – to take $521,000 from the Plan, improperly, and commit other wrongful acts to the detriment of the Plan and its participants.

Accordingly, pursuant to ERISA's civil enforcement provisions, Section 502(a)(2) and (3), AutoExpo brings this action to rescind the $521,000 Transfer and mandatorily enjoin Defendants to restore the funds transferred without authority, to rectify actions taken without proper authority, including the $521,000 Transfer and procedurally invalid plan amendments by Defendants under

---

[3] Contrary to Elyahou's suggestion, Plaintiffs' dispute with Elyahou is not a mere "business divorce." (Elyahou MOL, p. 1). This is far more serious. Shahkoohi, between, approximately, 2019 until early 2023, discovered that Elyahou (while an owner and employee of AutoExpo) had engaged in a multi-faceted, multi-million (estimated to be $10 million) fraud upon AutoExpo that included: (i) outright stealing of corporate assets by taking cash from repo companies instead of depositing those funds in the company account; (ii) absconding with AutoExpo's proprietary custom-made inventory system for the benefit of co-defendant Fifty Seven Consulting Corp. d/b/a Certified Auto Group a/k/a Certified Performance Motors ("Certified"), knowing his fiduciary obligation and that such inventory system was to be kept secret; (iii) double-dipping by having AutoExpo pay a separate entity he owned, SimpSocial, for work that AutoExpo had already compensated him; (iv) stealing and diverting corporate opportunities to Certified to directly compete with AutoExpo; (v) orchestrating mass "poaching" by Certified of AutoExpo's employees; and (vi) creating a warranty company, United Citizens, to directly compete with AutoExpo. (Dkt. 48, ¶¶ 40-223; 267-335).

ERISA §§ 402(b), 404(a)(1), 405,[4] 406(b), 409, 502(a)(2), (a)(3), (e)(1), (f), and (g)(1) (Dkt. 48, ¶ 37, 260, 367, 490-93, 495-99). *See* 29 U.S.C. §§ 1102(b)(3), 1104(a)(1), 1105, 1106(b), 1109, 1110, 1132(a)(2), (a)(3), (e)(1), (f) and (g)(1). AutoExpo, as a Plan fiduciary, plainly has standing to pursue these ERISA claims against Elyahou, who, as the Plan Trustee, grossly breached his own fiduciary duties in engaging in the self-interested transactions alleged. Also, these claims are well-pled and viable. Accordingly, the Elyahou Defendants' motion to dismiss must be denied.

## STATEMENT OF FACTS

AutoExpo asserts ERISA claims in the Amended Complaint as a fiduciary against Elyahou and Kassim, each of whom "was, and acted as, a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A)" (Dkt. 48, ¶¶ 487, 490). AutoExpo "established the Plan and regularly exercises discretionary authority over the Plan and Fund management," and was the Plan Administrator. (Dkt. 48, ¶490; Shahkoohi Decl., Ex. "1", p. 2 and Ex. "2," p. 10).

The Amended Complaint alleges, that, in addition to the willful theft and misappropriation of AutoExpo's trade secrets and other bad acts, Elyahou with the substantial assistance of Kassim, engaged in bad acts in violation of ERISA and his fiduciary duties to AutoExpo and the Plan's participants before relinquishing control of day-to-operations at AutoExpo. (Dkt. 48, ¶ 224). Elyahou was a fiduciary when he, as Plan Trustee, effectuated the self-interested acts as alleged in the Amended Complaint.

---

[4] AutoExpo may, in fact, have an obligation to bring this action. Section 405 provides for co-fiduciary liability under ERISA. That is, where a fiduciary has breached any ERISA provisions, a second fiduciary will be liable for that breach in three circumstances. First, the second fiduciary will be liable if she knowingly participated in or attempted to conceal an act of the first fiduciary and knew the fiduciary's act was a breach of his ERISA obligations. 29 U.S.C. § 1105(a)(1). Second, the second fiduciary will be liable if she enabled another to fiduciary to commit a breach by failing to act with reasonable prudence as required under Section 404(a). *Id.* § 1105(a)(2). Finally, the second fiduciary will be liable if she knows of the first fiduciary's breach and fails to make reasonable efforts to remedy the breach. *Id.* § 1105(a)(3). In its role as a fiduciary, AutoExpo has an obligation to bring this action in order to make reasonable efforts to remedy Elyahou's breaches.

Among the gross violations of ERISA and breaches of his fiduciary obligations, Elyahou, without authority, purported to have amendments made to the Plan, such as changing the hardship withdrawal rules. (Dkt. 48, ¶ 225). Then, he failed to follow the Plan's procedures, even the unauthorized procedures that he created, himself, without authority. *Id.* Rather, Elyahou engaged in self-interested transactions contrary to the interests of the Plan and its participants. (Dkt. 48, ¶ 225).

Elyahou executed an amended Plan, *i.e.*, the Defined Contribution Adoption Agreement on or about June 28, 2021, purportedly in his capacity as "President" of AutoExpo and as "Trustee" of the Plan. (Dkt. 48, ¶¶ 226, 233). Then, on July 6, 2021, Elyahou signed a "Resolution of the Board of Directors of AutoExpo Ent. Inc," supposedly in his capacity as "Secretary" of AutoExpo, to adopt the amended Plan (Dkt. 48, ¶ 234). That resolution, however, was a complete and utter sham as a Board meeting never took place as represented by Elyahou, nor was there ever any resolution made by Board as represented by Elyahou therein (hereinafter, the "Bogus July 2021 Resolution"). (Dkt. 48, ¶ 234).

Nevertheless, as a result of Elyahou's fraudulent and improper actions, the Adoption Agreement purports to allow "hardship distributions." (Dkt. 48, ¶ 239). It appears that the purpose of Elyahou's efforts in making the improper Plan amendment was to facilitate Elyahou's ability to engage in a self-interested transaction to use the Plan Assets to purchase a new home for himself. (Dkt. 48, ¶ 241).

The Amended Complaint contains numerous allegations that Elyahou transferred Plan Assets without proper authority. For example, on or about April 1, 2022, Elyahou, with Kassim's assistance, withdrew 100% of his funds contained in the Plan's John Hancock account (the "April 2022 Withdrawal"). (Dkt. 48, ¶¶ 242-46, 263). The April 2022 Withdrawal, among other things,

fails to identify the reason for the withdrawal and directs John Hancock to send payment by wire to the Plan Trustee at AutoExpo's JP Morgan Chase ("Chase") 401(k) account. (Dkt. 48, ¶243). There is "no supporting documentation" and "[n]o reason" to support the April 2022 Withdrawal. (Dkt. 48, ¶¶ 244-45). Thus, that withdrawal constituted a use of the Plan Assets without authority.

Then, on November 15, 2022, after he and Kassim moved Plan's Assets from John Hancock to Chase, Elyahou improperly used his authority as the Plan's Trustee to obtain a Cashier's Check from Chase, made payable to "June Mehrberg Rothstein LLC," in the amount of $521,000.00, directly utilizing funds from "AutoExpo Ent Inc/Auto Expo 401(k) Plan," *i.e.*, the Plan Assets, to effectuate the $521,000 Transfer. (Dkt. 48, ¶¶ 247, 263). During AutoExpo's investigation, AutoExpo discovered that "June Mehrberg Rothstein LLC" was the Seller of the $2,450,000.00 home in Great Neck, New York that Elyahou purchased on November 16, 2022 (the "House Payment"). (Dkt. 48, ¶ 248). Every cent of the $521,000 Transfer was a Plan Asset. That sum represented a significant amount of the Plan's Assets that were unilaterally and improperly withdrawn. (Dkt. 48, ¶¶ 241-60, 497).

By the time Elyahou executed the $521,000 Transfer, he knew that his run as the primary manager in charge of day-to-day operations at AutoExpo was coming to an end. By "June 2022, Elyahou stopped coming to AutoExpo altogether and was not participating in any work." (Dkt. 48, ¶222). By November 2022, Elyahou knew that Shahkoohi, over the past three years, was starting to ask questions about his management, which included questions regarding sales and revenues (Dkt. 48, ¶¶ 96-99), delivery of vehicles to Certified (Dkt. 48, ¶¶ 148-53), the Plan and access to AutoExpo's books and records (Dkt. 48, ¶¶ 187-213), and AutoExpo mysteriously being outbid

by Certified (Dkt. 48, ¶¶ 156-75).[5] Meanwhile, it was also apparent to Elyahou that, as a result of his findings, Shahkoohi was taking progressive steps to diminish Elyahou's authority on behalf of AutoExpo. So, for example, in January 2022, Shahkoohi directed that Elyahou could not make any further charges on the company credit cards; in June 2022, Shahkoohi directed Elyahou not to take any draws against salary; and in December 2022, Shahkoohi directed Elyahou not to use any company money for any purpose. (Dkt. 48, ¶¶ 218-22).

In November 2022, however, Elyahou found a vestige of remaining power that he still could exploit – his authority as Plan Trustee … as Shahkoohi had not yet explicitly removed him from this role. Thus, knowing that his "foot was out the door," Elyahou with Kassim's knowledge and substantial assistance, effectuated the $521,000 Transfer, transferring Plan Assets to a third-party (the seller of the multi-million home that Elyahou purchased).

Moreover, if that transfer was meant to be a hardship distribution, it failed to comply with the Plan or the requirements of ERISA for numerous reasons. First, when Elyahou made the $521,000 Transfer, he had not worked at AutoExpo for five (5) months, and thus, was not even a "Participant" in the Plan who could qualify for a hardship distribution. (Dkt. 48, ¶222). This is because the Plan makes clear that such distributions are "limited to Participants who have not terminated employment." (Shahkoohi Decl., Ex. "2" at section 2.5.10., p. 134). Second, Elyahou failed to submit any written certification or supporting documentation, as a Participant, to AutoExpo that he had a qualifying hardship as required by the Plan and the law. (Dkt. 48, ¶ 244). Finally, Elyahou, as Plan Trustee, failed to have any "reasoned determination" made, as required, concerning the basis and propriety of the $521,000 Transfer. In addition, if Elyahou had qualified

---

[5] These concerned, respectively, Shahkoohi's confrontations with, and questions to, Elyahou in 2019, summer of 2020, end of 2021, and early 2023.

for a hardship withdrawal, additional inquiries would have been necessary, including, for instance, whether other funds were available to him, whether the amount requested, or a lesser amount, was justified (Dkt. 48, ¶244). [6]

In addition, as the Amended Complaint alleges, the third-party administrator at the time, John Hancock, explicitly stated on the withdrawal form utilized by Elyahou in April 2022: "The Plan Trustee will be responsible for implementing the participant's direction and performing the applicable withholding and reporting obligations" under 26 U.S.C. §3405(b)(1). (Dkt. 48, ¶¶ 246 and 256). It plausibly may be inferred that Elyahou first transferred the Plan Assets from John Hancock to Chase Bank to avoid oversight by John Hancock. In addition, it is apparent that Elyahou failed to comply with the reporting requirements that John Hancock expressly advised him were his responsibility as the "Plan Trustee" (Dkt. 48, ¶¶ 251-52 and 256).

All of the flagrant breaches by Elyahou of his fiduciary duties to the Plan, with the aid and assistance of Kassim, require AutoExpo to take corrective action to maintain the Plan's integrity for purposes of compliance, to restore Plan Assets, to prevent Elyahou's improper distribution from handcuffing the Plan's decision-making going forward (as AutoExpo is "obligated to make reasonable determinations 'in a uniform and non-discriminatory manner'" (Dkt. 48, ¶257 and ¶260)) and to maintain the Plan's viability.

Finally, Elyahou's conduct has required, and will continue to require, AutoExpo to expend significant resources to undo and rectify Elyahou's improper, self-dealing transactions related to

---

[6] If Elyahou had raised the propriety of this hardship distribution to AutoExpo, as the Plan Administrator, rather than to himself as he was self-interested, his request may have been rejected for additional reasons because, as explained below, by November 2022, it was evident that Elyahou had stolen funds from the Company and engaged in other gross misconduct (the only question was the scope of his misconduct). So, a request for a distribution, even if he had met the statutory and Plan requirements, reasonably could have been rejected on the grounds that Elyahou was a faithless servant and that all compensation – including deferred compensation – was subject to disgorgement from his first disloyal act. *See, e.g.*, *Morgan Stanley v. Skowron*, 989 F Supp 2d 356, 360 (S.D.N.Y. 2013); *Roytlender v D. Malek Realty, LLC*, No. 21-CV-00052, 2024 U.S. Dist. LEXIS 133591, at *31 (E.D.N.Y. July 29, 2024).

the Plan Assets. (Dkt. 48, ¶¶ 11, 241, 248, 260) (noting AutoExpo's investigation into the $521,000 Transfer, "requiring AutoExpo to take corrective action," "requir[ing] substantial corrective action, which AutoExpo must take in consultation with professionals … to undo the damage Elyahou has cause not just to AutoExpo, but to all of the Plan's participants").

As such, the second and twentieth causes of action against Elyahou in the Amended Complaint seek injunctive and equitable relief, and damages, so as to "restore" the Plan Assets that he improperly took from the Plan without authority. (Dkt. 48, ¶¶ 12, 367, 482-502 and 503-12).

For the reasons set forth below, Elyahou's motion to dismiss AutoExpo's ERISA claims must be denied in its entirety as AutoExpo has standing and asserts a viable ERISA claim against Elyahou and Kassim for equitable and injunctive relief to reverse their unfaithful actions (Dkt. 48, ¶¶ 367, 500-01).

## **ARGUMENT**

### **POINT I**
### **THE ELYAHOU DEFENDANTS' MOTION TO DISMISS THE ERISA CLAIMS MUST BE DENIED BECAUSE AUTOEXPO HAS STANDING TO PURSUE ITS ERISA CLAIMS, AND THIS COURT HAS SUBJECT MATTER JURISDICTION**

While the Elyahou Defendants' argument is not the height of clarity, they appear to argue that this Court lacks subject matter jurisdiction over AutoExpo's ERISA claim because, according to them, AutoExpo lacks standing. The Elyahou Defendants' argument is meritless.

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it …." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Moreover, standing in an ERISA action has both constitutional and statutory requirements. *Kendall v. Employees Retirement Plan of Avon Products*, 561 F.3d 112, 118 (2d Cir. 2009) ("A plan participant suing under ERISA must establish

both statutory standing and constitutional standing"). However, here, this Court has subject matter jurisdiction as AutoExpo clearly has standing.

First, as explained below, AutoExpo has a concrete and particularized interest in assuring that the Plan only makes valid hardship distributions of Plan Assets to ensure that the interests of the Plan and its participants are protected. Therefore, it properly asserts and pleads facts sufficient to state claims for injunctive and equitable relief to restore the Plan Assets that Elyahou transferred without authority pursuant to ERISA §§ 402(b), 404(a)(1), 405, 406(b), 409, 502(a)(3), (e)(1), (f), and (g)(1) [29 U.S.C. §§ 1102(b)(3), 1104(a)(1), 1105, 1106(b), 1109, 1110, 1132(a)(2), (a)(3), (e)(1), (f) and (g)(1)]. Even if Elyahou were to claim that he was entitled to withdraw those funds, for example, as a hardship withdrawal, AutoExpo remains entitled to relief restoring the funds because the $521,000 Transfer violated the requirements of ERISA and the Plan as detailed herein.

Second, contrary to Elyahou's apparent suggestion, a "civil action may be brought" under §502(a)(2), "by the Secretary, or by a … fiduciary for appropriate relief under section 409 [29 U.S.C. §1109]" and §502(a)(3), "by a … fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."[7] 29 U.S.C. § 1132(a)(2) and (3) (emphasis added). Thus, as a fiduciary of the Plan, AutoExpo has standing to bring the ERISA claims pursuant to §502(a)(2) and §502(a)(3).

## A. AutoExpo Has Standing To Seek Injunctive And Equitable Relief Under ERISA § 502(a)(3)

Pursuant to ERISA §502(a)(3), fiduciaries have statutory standing to bring a civil action

---

[7] The ERISA claims asserted have nothing to do with a "claim for benefits" under ERISA "§502(a)(1)(B)" as suggested by Elyahou (Elyahou MOL, pp. 9-10). The language in ERISA §502(a)(3) expressly authorizes a fiduciary to "enjoin any act or practice which violates any provision" of ERISA Subchapter I, including ERISA §§ 404(a)(1), 405, 406(b), and 409 as alleged in the Amended Complaint. *See Massaro v. Palladino*, 19 F. 4th 197, 215 (2d Cir. 2021).

standing "to enjoin any act or practice which violates any provision of this title or the terms of the plan," or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan" (*id.*), such as the "Prohibited Transactions" as set forth in ERISA §406 (29 U.S.C. § 1106). 29 U.S.C. § 1132(a)(3)*; see also Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356, 361, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006).

Constitutional, or Article III, standing concerns the federal courts' ability to decide only "cases" and "controversies." *See Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 381 (2d Cir. 2000)*; see also Sierra Club v. Morton*, 405 U.S. 727, 731-32, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972) ("Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue"). Constitutional standing requires that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and internal quotation marks omitted). The injury in fact must be fairly traceable to the defendant's conduct and likely to be redressed by the requested relief. *Id.* at 560-61.

In the context of one fiduciary pursuing injunctive or other equitable relief against another fiduciary to redress violations or enforce provisions of ERISA or terms of a plan, the fiduciary has constitutional standing when it has a particularized interest in the relief sought. *See, e.g.*, *Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP*, 128 F Supp 3d 501, 509-510 (D. Conn. 2015); *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25275, at *16-17 (S.D.N.Y. Mar. 29, 2007); *Silverman v. Miranda*, 2010 U.S. Dist. LEXIS 147924, at *12-13 (S.D.N.Y. Apr. 16, 2010); *Carver v. Bank of NY Mellon*, No. 15-CV-10180, 2017 U.S. Dist.

LEXIS 49199, at *10 (S.D.N.Y. Mar. 31, 2017);[8] *see also, e.g.*, *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) (where the Second Circuit observed in a Truth in Lending Act case, that "where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest to establish concrete injury without 'need [to] allege any additional harm beyond the one Congress has identified.'")

AutoExpo has standing to seek injunctive and equitable relief under ERISA. As alleged in the Amended Complaint, AutoExpo knows of no justification for the $521,000 Transfer (*supra*). Rather, Elyahou improperly used Plan Assets as if those assets were his own. Accordingly, the funds should be restored to the Plan. Statutorily, the relief sought by AutoExpo is explicitly authorized by §502(a)(3) [29 U.S.C. § 1132(a)(3)] of ERISA. Also, AutoExpo has constitutional standing because it has a particularized interest in making only valid distributions of the Plan Assets. Several of the above-cases are helpful.

In *Banyai*, as here, the Southern District observed that "plaintiffs' restitution claim against the Heritage Fund is brought exclusively on behalf of the plan, not for the individual and direct benefit of the plaintiffs. This fact alone … leads the Court to the conclusion that that plaintiffs' Article III standing remains intact." *Id.*, 2007 U.S. Dist. LEXIS 25275, at *16-17. *Banyai* continued: "For the same reason that suits brought against fiduciaries pursuant to section 502(a)(2) on behalf of an ERISA plan do not require plaintiffs to demonstrate individualized injuries for purposes of Article III standing, a suit brought pursuant to section 502(a)(3) - also on behalf of the

---

[8] The language in *Kendall* and *Tavares v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) cited by the Elyahou Defendants (Elyahou MOL, p. 11), specifically concerns standing of a "plan participant" (not a fiduciary) and requires a plan participant to show "individualized harm," and not just injury to the plan. The individualized harm requirement pertains to plan participants and is wholly inapplicable here, where the claim is brought by one fiduciary against another fiduciary.

plan - seeking 'other appropriate equitable relief' against a nonfiduciary to redress an ERISA violation does not require a showing of individualized injury." *Id.*; *see also, Carver*, 2017 U.S. Dist. LEXIS 49199, at \*10; *Silverman*, 2010 U.S. Dist. LEXIS 147924, at \*12-13 (observing, "[b]ecause Plaintiff UMMF is an employee benefit plan, and Plaintiff UMMF Trustees are fiduciaries of the plan, Plaintiffs have standing to sue for 'appropriate equitable relief' under ERISA § 502 (a)(3), 29 U.S.C. § 1132(a)(3)").[9]

In *Connecticut Gen. Life*, the insurance company, Cigna, as plan administrator to an employee health and welfare benefit plan, brought claims under §502(a)(3) of ERISA alleging that the defendants, who were out-of-network providers, "defrauded Cigna using fee-forgiving billing practices". 128 F Supp 3d at 504. In *Connecticut Gen. Life*, the defendants challenged Cigna's statutory and constitutional standing.[10]   As to constitutional standing, defendants argued that "Cigna itself has not suffered injury with respect to any past or future benefit payments made by the plans' funds as Cigna is merely the claims administrator for the plans." *Id.* at 508-09. The District Court soundly rejected defendants' argument.

The District Court concluded "that Cigna has Article III standing to bring this case." *Id.*

---

[9] By way of example, disgorgement may be appropriate where a plan fiduciary has put a plan's assets at risk — not for the exclusive benefit of plan participants — but at least in part to serve the fiduciary's personal interest. *See Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1408 (9th Cir. 1988) (finding disgorgement remedy appropriate where "plan assets were invested and held and thereby put at risk not for the exclusive benefit of the Plan's participants and beneficiaries . . . but for the benefit of one of the fiduciaries").

[10] Elyahou, in contrast, only challenges AutoExpo's constitutional standing. (Elyahou MOL, pp. 10-11). As to statutory standing, *Connecticut Gen. Life* observed:

Congress has granted fiduciaries statutory standing to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3); *see also Sereboff v. Mid. Atl. Med. Servs.*, 547 U.S. 356, 361, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006). The Supreme Court has recognized that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

*Id.* at 509.

The Court reasoned: "Cigna has a concrete and particularized interest in paying only valid claims to ensure its members' financial interests are protected." *Id.* (emphasis added) (*citing Gerosa v. Savasta & Co., 329 F.3d 317, 320 (2d Cir. 2003)* ("ERISA places great responsibilities upon the fiduciaries of a plan to protect the interests of the plans' beneficiaries.")).

Here, as in *Connecticut Gen. Life*, Elyahou argues that "Plaintiffs have failed to articulate any concrete injury or losses whatsoever resulting from the alleged breach." (Elyahou MOL, p. 2). Contrary to Elyahou's argument, the Amended Complaint's numerous allegations that the $521,000 Transfer by Elyahou was made, without authority, satisfy constitutional standing. As held in *Connecticut Gen. Life*, AutoExpo has a concrete and particularized interest in ensuring that the Plan is making only valid distributions of Plan Assets.

As an independent basis for finding constitutional standing, *Connecticut Gen. Life* pointed to the resources that Cigna had to expend in investigating the alleged fraudulent billing practices as sufficient injury, observing:

> Moreover, the alleged billing practices personally affected Cigna. Cigna has expended its own time and resources in investigating the surgical centers' billing practices "through post-procedure patient surveys and patient interviews," and by corresponding with the surgical centers regarding their billing practices. *See Lujan [v. Defenders of Wildlife,*] 504 U.S. [555,] 560, n.1 [(1992)] ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."). The court concludes that Cigna has met the constitutional requirements of Article III standing.

*Id.* at 509-10. Likewise, as in *Connecticut Gen. Life*, AutoExpo has had to expend significant resources to undo and rectify Elyahou's improper, self-dealing transactions related to the Plan Assets (Dkt. 48, ¶¶ 11, 241, 248, 260), and AutoExpo will need to continue to expend time and resources to address those improper transfers. Therefore, AutoExpo clearly has Article III standing.

Finally, in *Gallagher v. Makowski*, No. 13-1103, 2014 U.S. Dist. LEXIS 41909 (D.N.J.

15

Mar. 28, 2014), the Court implicitly found standing as it expressly found, under analogous facts, that the plaintiff, a beneficiary, was entitled to enforce rights under the terms of the plan. The claims in *Gallagher* arose out of a divorce. Between the entry of a judgment of divorce and an amended judgment which ordered the defendant/husband Brooks' retirement plan to be divided equally with the plaintiff/wife Gallagher, Brooks submitted a form to his retirement plan's plan administrator for a special hardship withdrawal, giving as a reason "medical expenses … incurred by … any dependents of the participant". *Id.* at *4-5. The form asked for an explanation of "the financial condition which requires you to receive an immediate hardship withdrawal" from the plan, but that space "was left blank." *Id.* at *5. *Gallagher* denied the fund defendants' motion for summary judgment and granted Gallagher's cross-motion for summary judgment on liability because "the decision to allow Brooks' hardship withdrawal was not supported by substantial evidence 'because it was not based upon anything in the record, other than a checkmark box on the [withdrawal] application stating that the withdrawal was for medical expenses.'" *Id.* at *19. The Court found that "it was an abuse of discretion to allow the hardship withdrawal without first requiring Brooks to provide all of the information that the Plan itself requires in order to make a decision." *Id.* at *20. The Court noted that the "standard is whether the decision to allow the hardship withdrawal was supported by substantial evidence." *Id.* By failing to even require an explanation, the fund defendants failed to meet the substantial evidence standard.

So, too, here, if Elyahou were to claim that he had some justification for transferring Plan Assets to himself, as alleged in the Amended Complaint, he would have been required to provide an explanation before any distribution, properly, could be made. To AutoExpo's knowledge, nothing was submitted to the Plan Administrator. (*Supra*). No explanation was provided. *Id.* No reasoned determination was made. *Id.* He simply took Plan Assets. *Id.* As in *Gallagher*, AutoExpo

is entitled to enforce the terms of the Plan pursuant to ERISA §502(a)(3). Because the $521,000 Transfer was not authorized, AutoExpo is entitled to have those funds with earnings returned to the Plan. In fact, the IRS recommends precisely that remedy if, for instance, a hardship distribution was improperly made – that the participant "return [the] hardship distribution amount plus earnings" (https://www.irs.gov/retirement-plans/401k-plan-fix-it-guide).

Here, as in *Connecticut Gen. Life*, *Banyai*, *Carver*, *Silverman*, and *Gallagher*, AutoExpo as a fiduciary seeking injunctive and other appropriate equitable relief on behalf of the Plan has statutory and constitutional standing to pursue claims under ERISA §502(a)(3).

**B.    AutoExpo Also Has Standing To Seek Damages On Behalf Of The Plan Under ERISA § 502(a)(2)**

As a separate and independent basis for finding that AutoExpo has standing to assert the ERISA claims stated in the Amended Complaint (in addition to injunctive and other appropriate equitable relief under ERISA §502(a)(3)), AutoExpo is authorized to pursue all rights and remedies against Elyahou under section 502(a)(2).

"Congress enacted ERISA 'to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits.'" *Halo v Yale Health Plan*, 819 F.3d 42, 47-48 (2d Cir. 2016). A "civil action may be brought" under §502(a)(2), "by the Secretary, or by a … fiduciary for appropriate relief under section 409 [29 U.S.C. §1109]." 29 U.S.C. §1132(a)(2). ERISA §409(a) states in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate ….

As held in *L.I. Head Start Child Dev. Servs. v Economic Opportunity Council of Suffolk, Inc.*, 710

17

F.3d 57 (2d Cir. 2013), "ERISA §502(a)(2) confers standing on 'a … fiduciary' to seek relief under ERISA §409." *Id.* at 65. Fiduciary duties and prohibited transactions are set forth in ERISA sections 404, 405 (*see* fn. 5) and 406. [11] The Amended Complaint sets forth a viable cause of action against Elyahou for breach of his fiduciary duties under ERISA.

ERISA "contains no comprehensive definition of plan assets*." John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 89 (1993) (internal quotation marks omitted); *Rahm v. Halpin (In re Halpin)*, 566 F.3d 286, 289 (2d Cir. 2009) (same). Nevertheless, "the term 'plan assets' means plan assets as defined by such regulations as the Secretary may prescribe." *See* 29 U.S.C. § 1002(42). The Department of Labor has issued two such regulations. *See* 29 C.F.R. § 2510.3-101 (plan assets sometimes include the underlying assets of entities in which a plan has invested); 29 C.F.R. § 2510.3-102(a)(1) (plan assets include "amounts" contributed to the plan by participants and beneficiaries); s*ee also, e.g.*, *Faber v. Metro. Life Ins. Co.*, 648 F. 3d 98, 105 (2d Cir. 2011) (observing that the DOL, the agency charged with administering and enforcing Title I of ERISA, has repeatedly advised that plan assets should be identified based on 'ordinary notions of property rights'"); *In re Luna*, 406 F.3d 1192, 1199 (10th Cir. 2005) ("using ordinary notions of property rights to determine that the plan contributions were plan assets because the plan owned a contractual right to them); *Trustees of the Bldg. Trades Educ. Ben. Fund v Unified Elec.*, No. 23-CV-188 (ARR) (ST), 2024 U.S. Dist. LEXIS 46524, at *19 (E.D.N.Y. Mar. 14, 2024) (noting that

---

[11] Section 404 of ERISA requires ERISA fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries" of the relevant ERISA Plan. 29 U.S.C. § 1104(a)(1). ERISA §406 generally proscribes transactions between plans and parties in interest. Section 406(b) expressly prohibits a "[t]ransaction[] between plan and fiduciary" and §406 expressly prohibits a "fiduciary" from "deal[ing] with the assets of the plan in his own interest or for his own account." (29 U.S.C. § 1106). As observed in *Solvay Iron Works*, "Section 406(b) is to be broadly construed … and … liability … imposed even where there is no taint of scandal, no hint of self-dealing, no trace of bad faith." *Id.*, 2018 U.S. Dist. LEXIS 79735 at *32-33. And, the conduct, here, reeks of scandal, self-dealing and bad faith. "The transactions enumerated in § 406[b] are **per se violations** (emphasis added) of ERISA regardless of the motivations which initiated the transaction, the prudence of the transaction, or the absence of any harm resulting from the transaction." *Iron Workers Local No. 60 Annuity Pension Fund v. Solvay Iron Works, Inc.*, No. 5:15-cv-54, 2018 U.S. Dist. LEXIS 79735, at *33 (N.D.N.Y. May 11, 2018) (internal citations omitted).

employer contributions paid to the fund are plan assets).[12] Thus, amounts contributed to the Plan by AutoExpo and its employee-participants constituted Plan Assets.

The Amended Complaint contains numerous allegations that Elyahou, with the assistance of Kassim, engaged in a prohibited transaction by using Plan Assets to purchase his personal home without authority. (*See, e.g.*, Dkt. 48, ¶¶ 241-66). This was clearly in violation of § 406(b) and is actionable, requiring the funds to be restored. (https://www.irs.gov/retirement-plans/401k-plan-fix-it-guide), and entitles AutoExpo on behalf of the Plan to damages with respect to its claims under ERISA §§ 404(a)(1), 406(b), and 409. *See, e.g.*, *L.I. Head Start Child Development Services, Inc.*, 710 F.3d at 65 (observing in a case brought in a representative capacity, that while "[c]laims pursuant to § 409(a) may not be made for individual relief," they may be brought "on behalf of the plan"); *Massaro*, 19 F.4th at 215 (trustees may bring claims against other trustees to enforce section 402(b)(3)); *Johnson & Towers, Inc. v. Opinion Corporate Synergies Group, LLC*, No. 14-5528, 2015 U.S. Dist. LEXIS 81619, at *14-15 (D.N.J. June 23, 2015) (rejecting defendants' challenge to constitution standing based on the argument that the individual person whose medical bill was paid was the "only person" with standing because Plaintiffs' "claims are for losses to the Plan because of Defendants' alleged breach of fiduciary duty"). Accordingly, AutoExpo has standing because its Plan sustained a direct loss of Plan Assets as a result of Elyahou's conduct. *Lujan*, 504 U.S. at 560-61. As such, the Elyahou Defendants' motion to dismiss the Amended Complaint should be denied.

---

[12] While not necessary for the determination of this motion, as in *In re Luna*, the Plan clearly refers to "contributions made" in numerous locations. *See, e.g.*, Shahkoohi Decl., Ex. "2," at Art. II, Definitions (Average Deferral Percentage, Elective Deferrals, Excess Aggregate Contributions, Excess Contributions, Voluntary Employee Contributions); Art. II Contributions, Section 2.2.1, 2.2.2, 2.2.3, 2.2.4, Art. III, Section 2.3.2, 2.3.3. In addition, under ERISA, a "separate account" refers to "an account established or maintained by an insurance company under which income, gains and losses, whether or not realized, from assets allocated to such account, are, in accordance with the applicable contract, credited to or charged against such account …." 29 U.S.C. §1002. The assets of each separate account are treated as the assets of the plan. *See, e.g.*, 29 C.F.R. §2510.3-101(h)(1)(iii).

## POINT II
### ELYAHOU'S SUGGESTION THAT A VIABLE BREACH OF FIDUCIARY DUTY CLAIM AGAINST HIM IS NOT STATED IS SPECIOUS

To the extent that Plaintiffs can discern Elyahou's argument, which is unclear, he appears to argue that AutoExpo's allegations are insufficient to raise a plausible inference that Elyahou breached his fiduciary duties to the Plan. This argument is specious.

As an initial matter, "'ERISA expressly authorizes civil actions against plan fiduciaries in their personal capacity for breaches of their fiduciary duties with respect to plan asset management.'" *Solvay*, 2018 U.S. Dist. LEXIS 79735, at *18 (*quoting Sullivan v. M.A.C. Design Corp.*, No. 14-cv-1846, 2015 U.S. Dist. LEXIS 124465, at *6, 2015 WL 5518456, at *2 (E.D.N.Y. Sept. 17, 2015) (*citing* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Finkel v. Romanowicz*, 577 F.3d 79, 82 n.4 (2d Cir. 2009)).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that 1) the defendant was a fiduciary of an ERISA plan who, 2) acting within the scope of his or her capacity as a fiduciary, 3) engaged in conduct constituting a breach of his or her fiduciary duty." *Agway, Inc. Employees' 401(k) Thrift Inv. Plan v Magnuson*, No. 5:03-CV-1060, 2006 U.S. Dist. LEXIS 74670, at *42 (N.D.N.Y. July 13, 2006). Each of these elements is sufficiently alleged in the Amended Complaint.

As stated in *Katzenberg v. Lazzari*, No. 1-04-cv-5100, 2010 U.S. Dist. LEXIS 23806 (E.D.N.Y. Feb. 24, 2010), "[a] trustee must act 1) solely in the interests of the participants and beneficiaries; 2) 'for the exclusive purpose of' providing benefits to them, and 3) act with the care of a 'prudent man.'" *Id.*, at *15-16 (*quoting Donovan v. Bierwirth*, 680 F.2d 263, 271 (2nd Cir. 1982)). "These duties based on the common law of trust, have been described as '*the highest known to the law*' …. An ERISA fiduciary must manage the plan with 'an eye single' to the interest of

the plan's participants and beneficiaries." *Id.* at *16 (*quoting* *Flanigan v. General Elec. Co.*, 242 F.3d 78, 86 (2nd Cir. 2001) and *Donovan*, *supra*).[13]

In this motion, Elyahou does not contest, and in fact, tacitly concedes his role as a fiduciary of the Plan. *See* Elyahou MOL, p. 13 (acknowledging that "[o]fficers of a corporation often are trustees of its benefit plan" and may "serve as a Plan fiduciary").[14] Nor does he contest that he was Plan Trustee and acted for the Plan Administrator when he made the $521,000 Transfer.[15] Finally, the Amended Complaint contains numerous allegations that said transfer was made without proper authority. (Dkt. 48, ¶¶ 11, 225-26, 240, 251, 262, 494).

Since the $521,000 Transfer was distributed from the Plan to a third-party at Elyahou's direction while he was acting as Plan fiduciary, without proper authority, this case is no different than other cases, cited above, where breach of fiduciary duty against fiduciaries and other claims for violating ERISA or the term of a benefit plan have been sustained. *See, e.g.*, *Katzenberg* (described further below); *Solvay*, 2018 U.S. Dist. LEXIS 79735, at *32-35 (finding *per se* violations of ERISA and breaches of fiduciary duties against fiduciary who diverted plan assets via a series of checks to his own account); *Perez v. Bridgeport Health Care Ctr.*, No. 3:16-cv-

---

[13] Elyahou cites to *Donovan* for the proposition that ERISA is not violated "simply because" an action taken by the fiduciary "incidentally benefits the corporation" of the fiduciaries themselves." (Elyahou MOL, p.13) (*citing Donovan*, 680 F.2d at 271). It is not clear why Elyahou states this proposition because AutoExpo's ERISA claims against Elyahou is not based on "incidental" benefits, it is based on gross misconduct – using the Plan Assets for himself without authority.

[14] In this motion, Elyahou does not, and cannot, contest his status as a fiduciary. *See, e.g.*, *Daus v Janover, LLC*, No. 2:19-cv-06341, 2022 U.S. Dist. LEXIS 30659, at *3-4 (E.D.N.Y. Feb. 22, 2022) ("The question of whether a person or entity is a fiduciary is fact-intensive and, therefore, typically not a question appropriate for resolution on a motion to dismiss") (citations omitted)). In any event, the Amended Complaint's allegations, which must be accepted as true, makes numerous allegations that Elyahou was the Trustee. (Dkt. 48, ¶ 37, 260, 367, 486-87, 490-93, 495-99). In addition, Elyahou does not challenge AutoExpo's role as a fiduciary. *Id.* at ¶490. Nor could he. (fn. 2).

[15] Indeed, Elyahou appears to concede that he engaged in prohibited transactions and suggest that practices of violating ERISA §406 are "common and permissible," particularly, Elyahou's Memorandum of Law states: "Twentieth cause of action additionally alleges … that Defendants violated ERISA §406, in their fiduciary roles. *See* FAC ¶501. These practices are common and permissible." (Elhayou MOL, p. 13).

01519, 2017 U.S. Dist. LEXIS 226973, at *11-13 (D. Conn. Sep. 26, 2017) (described below); *Solis v. Weiss*, No. CV 12-0218, 2013 U.S. Dist. LEXIS 128396, at *3-4 (E.D.N.Y. Aug. 19, 2013) (claims against plan trustee for improper transfers of $727,000 to himself); *Brovarski v. Local 1205, Intl. Bhd. of Teamsters Union, Pension Plan*, No. 97-CV-489, 1998 U.S. Dist. LEXIS 23039 (E.D.N.Y. Feb. 23, 1998) (Trustee counterclaims against former plan administrator for breach of fiduciary duty due to his receipt of substantial compensation from the Plan as well as full-time pay from the union).[16] A brief review of a couple of the above cases is instructive.

In *Katzenberg*, the Eastern District of New York considered claims just like those at issue here. *Katzenberg* involved claims by Katzenberg that he was entitled to pension benefits and counterclaims by the fiduciary (more particularly, the plan administrator/employer), Acme American, against Katzenberg, also a fiduciary (more particularly, the former plan trustee), for breach of fiduciary duty regarding, *inter alia*, Katzenberg's transfer of $24,000 of Plan assets "without proper authority" and later $35,000 in violation of ERISA §§ 404(a) and 409(a). After a trial, the Court found that "Katzenberg's conduct as Pension Plan trustee from 1998 to 2001 violated his fiduciary duties and subject him to liability." *Katzenberg*, 2010 US Dist LEXIS 23806, at *16. The Eastern District concluded "that the appropriate remedy for defendant in this case is for plaintiff Harvey Katzenberg to forfeit his pension and be deprived of any pension benefits … because of the fraud he committed against it." *Id.* at *17. The Court explained: "This forfeiture remedy best serves equity and achieves justice for defendants, who are relieved of the burden to correct the underfunding of the Pension Plan that Katzenberg alone caused." *Id.*

Likewise, in *Perez*, the district court considered breach of fiduciary duty claims against "defendant, one Chaim Stern, [who] served as trustee of the Plan and also acted on behalf of

---

[16] Of course, if this Court were to determine that additional allegations were necessary to establish standing for any of AutoExpo's ERISA claims, we would request leave to amend.

Bridgeport Health as the Plan administrator." *Id.*, 2017 U.S. Dist. LEXIS 226973, at *3. The Court went through the various "prohibited transactions" by fiduciaries contained in ERISA §406, as set forth above. The court concluded that the complaint alleged viable breach of fiduciary duty claims. *Perez* explained:

> The complaint describes multiple transactions that allegedly violated ERISA and provides specific details regarding the dates, transaction amounts, and participants of the transactions. For example, the complaint alleges that on February 22, 2011, the defendants transferred $200,000 of the Plan's assets to Em Kol Chai, an organization that on its certificate of incorporation listed Stern as the president and as a trustee.

*Id.* at *12 (footnote omitted). Accordingly, the district court in *Perez* denied the defendants' motion to dismiss. *See also*, *Solvay*; *Solis*; *Brovarski*.

Here, contrary to Elyahou's claim that AutoExpo's ERISA claims for his breach of fiduciary duties are "conclusory" (Elyahou MOL, p. 13), the Amended Complaint clearly alleges numerous facts supporting each and every element necessary for a viable breach of fiduciary claim, *i.e.*, that he was a fiduciary, that he unilaterally and without basis authorized the $521,000 Transfer while acting within the scope of his capacity as a fiduciary, and that such authorization was in direct breach of his fiduciary duties. (Dkt. 48, ¶¶ 224-66). Accordingly, Elyahou's motion to dismiss AutoExpo's breach of fiduciary duty claim under ERISA (twentieth cause of action) should be denied.[17]

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court deny the Elyahou Defendants' motion to dismiss, together with such other and further relief as this honorable Court

---

[17] Point IV of the Elyahou Defendants' Motion to Dismiss the First Amended Complaint seeks to foreclose AutoExpo from making any motion to amend its complaint in the future. This argument is premature as AutoExpo makes no such motion at this time. Nevertheless, should the Court find that the First Amended Complaint is not sufficiently pleaded, AutoExpo respectfully would seek leave to amend based on the facts of Elyahou's wrongdoing detailed herein and in the First Amended Complaint.

deems just, equitable, and proper.

Dated:  Lake Success, New York
        January 24, 2025

                                      Respectfully submitted,
                                        **MILMAN LABUDA LAW GROUP PLLC**
                                        *Attorneys for Plaintiffs*

                                    By:   */s   Michael C. Mulè, Esq.* _____
                                              Michael C. Mulè