# EXHIBIT "2"

---

**DATAIR
DEFINED CONTRIBUTION PRE-APPROVED
BASE PLAN DOCUMENT #20**

---

# DATAIR
# DEFINED CONTRIBUTION PRE-APPROVED
# BASE PLAN DOCUMENT #20

| | | |
|---|---|---|
| **PART I** | | 1 |
| | | |
| **ARTICLE I** | **INTRODUCTION** | 1 |
| 1.1.1 | Adoption and Title. | 1 |
| 1.1.2 | Effective Date. | 1 |
| 1.1.3 | Purpose. | 1 |
| | | |
| **ARTICLE II** | **DEFINITIONS** | 2 |
| | | |
| **PART II** | | 17 |
| | | |
| **ARTICLE I** | **PARTICIPATION** | 19 |
| 2.1.1 | Eligibility Requirements. | 19 |
| 2.1.2 | Commencement of Participation. | 19 |
| 2.1.3 | Participation Upon Reemployment. | 19 |
| 2.1.4 | Termination of Participation. | 19 |
| 2.1.5 | Plan Administrator's Determination. | 19 |
| 2.1.6 | One-time Election Not to Participate. | 20 |
| 2.1.7 | Change in Status. | 20 |
| 2.1.8 | Existing Participants. | 21 |
| 2.1.9 | Service Crediting Method. | 21 |
| | | |
| **ARTICLE II** | **CONTRIBUTIONS** | 22 |
| 2.2.1 | Employer Contributions. | 22 |
| 2.2.2 | Elective Deferrals Contributed by the Employer on Behalf of Electing Employees. | 23 |
| 2.2.3 | Automatic Compensation Reduction (ACR), Eligible Automatic Contribution Arrangements (EACA) and Qualified Automatic Contribution Arrangements QACA) | 133 |
| 2.2.4 | Employee Contributions. | 30 |
| 2.2.5 | Return of Contributions. | 31 |
| 2.2.6 | Required Diversification For Plans That Hold Publicly Traded Securities. | 31 |
| | | |
| **ARTICLE III** | **ALLOCATIONS** | 34 |
| 2.3.1 | Basic Allocation. | 34 |
| 2.3.2 | Profit Sharing, Money Purchase Pension Plans. | 34 |
| 2.3.3 | Cash or Deferred Profit Sharing Plans. | 36 |
| 2.3.4 | Minimum Top-Heavy Allocation. | 36 |
| 2.3.5 | Integration with Social Security - Profit Sharing Plans. | 37 |
| 2.3.6 | Integration with Social Security - Money Purchase Plans. | 37 |
| 2.3.7 | Fail-Safe Allocation. | 38 |
| 2.3.8 | Contributions on Behalf of Disabled Participants. | 39 |
| 2.3.9 | Treatment in the Case of Death or Disability Resulting from Active Military Service. | 39 |
| | | |
| **ARTICLE IV** | **VESTED BENEFITS** | 41 |
| 2.4.1 | Vesting. | 41 |
| 2.4.2 | Leave of Absence. | 42 |
| 2.4.3 | Reemployment. | 42 |
| 2.4.4 | Forfeitures. | 42 |

| **ARTICLE V** | **DISTRIBUTIONS** | 44 |
|---|---|---|
| 2.5.1 | Distributable Benefit. | 44 |
| 2.5.2 | Forms of Distribution. | 44 |
| 2.5.3 | Methods of Distribution. | 45 |
| 2.5.4 | Commencement of Distributions. | 46 |
| 2.5.5 | General Distributions Requirements. | 48 |
| 2.5.6 | Annuity and Consent Requirements. | 49 |
| 2.5.7 | Required Minimum Distributions. | 52 |
| 2.5.8 | Nature of Distributions. | 58 |
| 2.5.9 | Qualified Military Service. | 58 |
| 2.5.10 | Hardship Distributions of Elective Deferrals. | 59 |
| 2.5.11 | Distributions in the Event of Incapacity. | 60 |
| 2.5.12 | In Service Distributions. | 60 |

| **ARTICLE VI** | **CONTINGENT TOP HEAVY PROVISIONS** | 62 |
|---|---|---|
| 2.6.1 | Top-Heavy Requirements. | 62 |
| 2.6.2 | Top-Heavy Definitions. | 63 |

| **ARTICLE VII** | **SPECIAL CODA LIMITATIONS** | 66 |
|---|---|---|
| 2.7.1 | Limitation on Deferral Percentage for Highly Compensated Employees. | 66 |
| 2.7.2 | Limitation on Matching Contributions. | 67 |
| 2.7.3 | Multiple Plan Limitations For ADP and ACP Testing. | 68 |
| 2.7.4 | Different Testing Methods for Elective Deferrals and Matching Contributions. | 69 |
| 2.7.5 | Distribution of Excess Elective Deferrals. | 69 |
| 2.7.6 | Distribution of Excess Contributions. | 70 |
| 2.7.7 | Distribution of Excess Aggregate Contributions. | 71 |
| 2.7.8 | Limitation on Distributions. | 72 |
| 2.7.9 | Forfeiture of Matching Contributions. | 73 |

| **ARTICLE VIII** | **SIMPLE 401(k) LIMITATIONS** | 74 |
|---|---|---|
| 2.8.1 | Establishing a SIMPLE 401(k) Plan. | 74 |
| 2.8.2 | Definitions. | 74 |
| 2.8.3 | Salary Reduction Contributions. | 74 |
| 2.8.4 | Other Contributions. | 75 |
| 2.8.5 | Limitation on Other Contributions. | 75 |
| 2.8.6 | Section 415 Limitations. | 75 |
| 2.8.7 | Election and Notice Requirements. | 75 |
| 2.8.8 | Vesting Requirements. | 75 |
| 2.8.9 | Top-Heavy Rules. | 76 |
| 2.8.10 | Nondiscrimination Tests. | 76 |
| 2.8.11 | Revocation. | 76 |

| **ARTICLE IX** | **SAFE HARBOR CODA PROVISIONS** | 77 |
|---|---|---|
| 2.9.1 | Safe Harbor CODA Rules. | 77 |
| 2.9.2 | Definitions. | 79 |
| 2.9.3 | ADP Test Safe Harbor Contributions. | 80 |
| 2.9.4 | ACP Test Safe Harbor Matching Contributions. | 80 |

| **ARTICLE X** | **PARTICIPATING EMPLOYERS** | 81 |
|---|---|---|
| 2.10.1 | Adoption. | 81 |
| 2.10.2 | Plan Maintenance. | 81 |
| 2.10.3 | Operational Rules. | 81 |
| 2.10.4 | Duties. | 82 |

| | | |
|---|---|---|
| 2.10.5 | Withdrawal of an Employer. | 82 |

**PART III** 83

| | | |
|---|---|---|
| **ARTICLE I** | **ACCOUNTING** | 83 |
| 3.1.1 | Accounts. | 83 |
| 3.1.2 | Valuation Adjustments. | 84 |
| 3.1.3 | Allocation of Earnings, Gains, and Losses. | 85 |
| 3.1.4 | Interim Valuations. | 85 |
| 3.1.5 | Earnings on Forfeitures. | 85 |
| 3.1.6 | Plan Expenses. | 85 |

| | | |
|---|---|---|
| **ARTICLE II** | **LIMITATIONS** | 86 |
| 3.2.1 | Limitations on Annual Additions. | 86 |
| 3.2.2 | Determination of Annual Additions and Maximum Permissible Amount. | 86 |
| 3.2.3 | Excess Annual Additions. | 87 |
| 3.2.4 | Participation in Certain Other Plans. | 87 |
| 3.2.5 | Definitions. | 88 |
| 3.2.6 | Controlled Businesses. | 91 |

| | | |
|---|---|---|
| **ARTICLE III** | **FIDUCIARIES** | 92 |
| 3.3.1 | Standard of Conduct. | 92 |
| 3.3.2 | Individual Fiduciaries. | 92 |
| 3.3.3 | Disqualification from Service. | 92 |
| 3.3.4 | Bonding. | 92 |
| 3.3.5 | Prior Acts. | 92 |
| 3.3.6 | Insurance and Indemnity. | 92 |
| 3.3.7 | Expenses. | 92 |
| 3.3.8 | Agents, Accountants, and Legal Counsel. | 93 |
| 3.3.9 | Investment Manager. | 93 |
| 3.3.10 | Finality of Decisions or Acts. | 93 |
| 3.3.11 | 404(c) Election. | 93 |

| | | |
|---|---|---|
| **ARTICLE IV** | **PLAN ADMINISTRATOR** | 94 |
| 3.4.1 | Administration of Plan. | 94 |
| 3.4.2 | Disclosure Requirements. | 95 |
| 3.4.3 | Information Generally Available. | 95 |
| 3.4.4 | Statement of Account. | 95 |
| 3.4.5 | Explanation of Rollover Treatment. | 95 |
| 3.4.6 | Electromechanical Communications. | 95 |
| 3.4.7 | Elections on Behalf of an Incapacitated Person. | 95 |
| 3.4.8 | Operational Rules for Related Employer Groups. | 95 |
| 3.4.9 | Use of Electronic Medium. | 96 |

| | | |
|---|---|---|
| **ARTICLE V** | **PARTICIPANT LOANS** | 97 |
| 3.5.1 | Authorization. | 97 |
| 3.5.2 | Spousal Consent. | 97 |
| 3.5.3 | Limitations. | 97 |
| 3.5.4 | Availability. | 98 |
| 3.5.5 | Default. | 98 |
| 3.5.6 | Qualified Military Service. | 98 |

| | | |
|---|---|---|
| **ARTICLE VI** | **BENEFICIARIES** | 99 |
| 3.6.1 | Designation of Beneficiaries. | 99 |
| 3.6.2 | Absence or Death of Beneficiaries. | 99 |

| 3.6.3 | Surviving Spouse Election. | 99 |
| 3.6.4 | Right to Direct on Behalf of a Participant or Beneficiary. | 100 |
| **ARTICLE VII** | **CLAIMS** | 101 |
| 3.7.1 | Claim Procedure (Non-Disability). | 101 |
| 3.7.2 | Appeal (Non-Disability). | 101 |
| 3.7.3 | Claims Involving Disability. | 101 |
| 3.7.4 | Claims Appeal Involving Disability. | 103 |
| **ARTICLE VIII** | **AMENDMENT AND TERMINATION** | 104 |
| 3.8.1 | Right to Amend. | 104 |
| 3.8.2 | Manner of Amending. | 104 |
| 3.8.3 | Limitations On Amendments. | 104 |
| 3.8.4 | Plan Termination. | 105 |
| 3.8.5 | Withdrawal By Employer. | 106 |
| 3.8.6 | Powers Pending Final Distribution. | 106 |
| 3.8.7 | Delegation to Sponsor. | 107 |
| **ARTICLE IX** | **PORTABILITY** | 107 |
| 3.9.1 | Continuance by Successor. | 107 |
| 3.9.2 | Merger With Other Plan. | 107 |
| 3.9.3 | Transfers and Rollovers From Other Plans. | 107 |
| 3.9.4 | Transfer to Other Plans. | 108 |
| **ARTICLE X** | **INSURANCE** | 110 |
| 3.10.1 | Participants Insurable at Standard Rates. | 110 |
| 3.10.2 | Uninsurable Participants. | 110 |
| 3.10.3 | Participants Insurable at Above Standard Rates. | 110 |
| 3.10.4 | Purchase of Policies. | 111 |
| 3.10.5 | Applications for Policies. | 111 |
| 3.10.6 | Incidents of Ownership. | 111 |
| 3.10.7 | Payment of Premiums. | 111 |
| 3.10.8 | Discontinuance of Policies. | 111 |
| 3.10.9 | Protection of the Insurer. | 111 |
| 3.10.10 | No Responsibility for Act of Insurer. | 112 |
| **ARTICLE XI** | **MISCELLANEOUS** | 113 |
| 3.11.1 | Reversion to Employer. | 113 |
| 3.11.2 | Employer Actions. | 113 |
| 3.11.3 | Execution of Receipts and Releases. | 113 |
| 3.11.4 | Rights of Participants Limited. | 113 |
| 3.11.5 | Inalienability. | 113 |
| 3.11.6 | Qualified Domestic Relations Orders. | 114 |
| 3.11.7 | Missing Persons. | 115 |
| 3.11.8 | Notices. | 115 |
| 3.11.9 | Governing Law. | 116 |
| 3.11.10 | Severability of Provisions. | 116 |
| 3.11.11 | Gender and Number. | 116 |
| 3.11.12 | Binding Effect. | 116 |
| **ARTICLE XII** | **Deemed IRA** | 117 |
| 3.12.1 | Deemed Pre-tax IRA. | 117 |
| 3.12.2 | Deemed Roth IRA. | 120 |
| **Appendix A** | **Age-Weighted Tables** | 124 |

**Appendix B**          **INSURANCE ADDENDUM**                          132

Appendix C          EXPANDED HARDSHIP DISTRIBUTIONS AND          133
                    REQUIRED MINIMUM DISTRIBUTION ADDENDUM

# PART I

# ARTICLE I

## <u>INTRODUCTION</u>

**1.1.1  Adoption and Title.**  The Employer(s) whose signatures appear on the Adoption Agreement, hereby adopt a Plan to be known by the names set forth in the Adoption Agreement.

**1.1.2  Effective Date.**  The provisions of this Plan will be effective as of the Effective Date set forth in the Adoption Agreement.

**1.1.3  Purpose.**  This Plan is established for the purpose of providing retirement benefits to Eligible Employees in accordance with the Plan and the Adoption Agreement. In the event of any conflict between the terms of this plan and any conflicting provision contained in any associated trust, custodial account document or any other document that is incorporated by reference, the terms of this plan will govern.

# ARTICLE II

## DEFINITIONS

As used in this Plan and the Adoption Agreement, the following terms will have the following meanings:

**"Account":**  One or more accounts, as listed in Section 3.1.1, established as necessary by the Plan Administrator and maintained to account for assets held for the benefit of a Participant.

**"Average Contribution Percentage" (ACP):**  The Actual Contribution Percentage will mean, for a specified group of Participants (either Highly Compensated Employees or Non-highly Compensated Employees) for a Plan Year, the average of the Contribution Percentages of the Eligible Participants in the group.

**"ACP Test Safe Harbor Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their share of ACP Test Safe Harbor Contributions.

**"ACP Test Safe Harbor Contributions":**  Matching Contributions described in Section 2.9.4.

**"Act":**  The Employee Retirement Income Security Act of 1974, as amended from time to time.

**"Average Deferral Percentage" (ADP):**  For a specified group of participants (either Highly Compensated Employees or Non-highly Compensated Employees) for a Plan Year, the average of the ratios (calculated separately for each participant in such group) of (1) the amount of Employer Contributions actually paid over to the Trust on behalf of such Participant for the Plan Year to (2) the Participant's Compensation for such Plan Year. Employer Contributions on behalf of any Participant will include: (1) any Elective Deferrals (other than Catch-up Contributions) made pursuant to the Participant's deferral election (including Excess Elective Deferrals of Highly Compensated Employees), but excluding (a) Excess Elective Deferrals of Non-highly Compensated Employees that arise solely from Elective Deferrals made under the Plan or plans of this Employer and (b) Elective Deferrals that are taken into account in the Actual Contribution Percentage test (provided the ADP test is satisfied both with and without exclusion of these Elective Deferrals); and (2) if elected by the Employer in the Adoption Agreement, Qualified Non-Elective Contributions and Qualified Matching Contributions. For purposes of computing Actual Deferral Percentages, an Employee who would be a Participant but for the failure to make Elective Deferrals will be treated as a Participant on whose behalf no Elective Deferrals are made.

**"ADP Test Safe Harbor Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their share of ADP Test Safe Harbor Contributions.

**"ADP Test Safe Harbor Contributions":**  Matching Contributions and Non-Elective Contributions described in Section 2.9.3.

**"Affiliated Employer":**  An employer that is not related to the Employer who is the Plan Sponsor of a Multiple Employer Plan.  The Affiliated Employer may be a single entity or a group of employers treated as a single employer when they are required to be aggregated pursuant to Code sections 414(d), 414(c), 414(m) or 414(o) (a required aggregation group).  The Affiliate Employer, with the consent of the Plan Sponsor may participate in a Multiple Employer Plan by executing a separate Adoption Agreement or the Adoption Addendum to the Plan. In the case of an Affiliated Employer that is a member of a required aggregation group, each member of the group must affirmatively elect to participate in a Multiple Employer Plan.

**"Alternate Payee":**  Any spouse, former spouse, child, or other dependent of a Participant who is recognized by a Qualified Domestic Relations Order as having a right to receive all, or a portion of, the benefits payable under this or any other plan of the Employer with respect to such Participant.

**"Anniversary Date":**  Unless otherwise specified in the Adoption Agreement, the last day of each Plan Year.

**"Annuity Starting Date":**  The first day of the first period for which an amount is paid as an annuity or any other form.

**"Automatic Compensation Reduction" (ACR):**  An arrangement in a cash or deferred plan as defined in Section 2.2.3(a) of this Plan under which an Employee that has not affirmatively elected to defer Compensation into the Plan will have an amount deferred on their behalf by the Plan Administrator.

**"Beneficiary":**  The person or persons entitled hereunder to receive the benefits that may be payable upon or after a Participant's death pursuant to Sections 3.6.1 and 3.6.2.

**"Break in Service":**  The failure of an Employee to complete more than 500 Hours of Service or such lesser number specified in the Adoption Agreement during any 12 consecutive month computation period. The computation periods will be specified by the Employer in the Adoption Agreement. The computation period used for a Year of Service will be used to determine a Break in Service for that purpose, and the same computation period used for a Year of Vesting Service will be used to determine a Break in Service for purposes of vesting service. Under the Elapsed Time Method of service counting, the term "one year Period of Severance" will be substituted for the term "1 year Break in Service." An individual reemployed pursuant to section 414(u) of the Code will be treated with respect to the Plan as not having incurred a Break in Service with the Employer maintaining the Plan by reason of such individual's period of Qualified Military Service.

**"Catch-up Contributions":**  Elective Deferrals made to the Plan that are in excess of an otherwise applicable Plan limit and that are made by Participants who are age 50 or over by the end of the applicable taxable year. See Section 2.2.2(b) for further discussion of Catch-up Contributions.

**"Code":**  The Internal Revenue Code of 1986, as amended from time to time.

**"Compensation":**  The compensation as defined in Section 3.2.5 and as specified in the Adoption Agreement (or Earned Income in the case of a Self-Employed Individual) that is actually paid to the Employee by the Employer during a Compensation Computation Period.

In the case of a Self-Employed Individual, Compensation means Earned Income during such period. Compensation for a Participant's initial year of participation will be Compensation from the Participant's Entry Date or for the Plan Year, as elected in the Adoption Agreement.

For Plan Years beginning on or after January 1, 1994 and before January 1, 2002, the annual Compensation of each Participant taken into account for determining all benefits provided under the Plan for any Plan Year will not $150,000, as adjusted for increases in the cost-of-living in accordance with Code section 401(a)(17)(B).  The cost-of-living adjustment in effect for a calendar year applies to any Compensation Computation Period beginning in such calendar year.

For any Plan Year beginning after December 31, 2001, the annual Compensation of each Participant taken into account in determining allocations will not exceed $200,000, as adjusted for cost-of-living increases in accordance with Code section 401(a)(17)(B). However, solely for purposes of determining a participant's allocations for Plan Years beginning after December 31, 2001, the annual Compensation limit in effect for determination periods beginning before January 1, 2002 is $200,000. Annual Compensation means compensation during a Compensation Computation Period, which is either the Plan Year or such other consecutive 12 month period over which compensation is otherwise determined under the Plan. If Compensation for any prior Compensation Computation Period is taken into account in determining a Participant's allocations for the current Plan Year, the Compensation for such prior Compensation Computation Period is subject to the applicable annual compensation limit in effect under Code section 401(a)(17) for that prior period. The cost-of-living adjustment in effect for a calendar year applies to annual Compensation for the Compensation Computation Period that begins with or within such calendar year.

If a Compensation Computation Period consists of fewer than 12 months, the annual Compensation limit is an amount equal to the otherwise applicable annual Compensation limit multiplied by a fraction, the numerator of which is the number of months in the short Compensation Computation Period, and the denominator of which is 12.

If Compensation for any prior Compensation Computation Period is taken into account in determining a Participant's allocations for the current Plan Year, the Compensation for such prior Compensation Computation Period is subject to the applicable annual compensation limit in effect for that prior period.

For purposes of Code sections 403(b)(3), 415(c)(3), and 457(e)(5), an Employee who is in Qualified Military Service will be treated as receiving Compensation from the Employer during such period of Qualified Military Service equal to: (A) the Compensation the Employee would have received during such period if the Employee were not in Qualified Military Service, determined based on the rate of pay the Employee would have received from the Employer but for absence during the period of Qualified Military Service, or (B) if the Compensation the Employee would have received during such period was not reasonably certain, the Employee's average Compensation from the Employer during the 12-month period immediately preceding the Qualified Military Service (or, if shorter, the period of employment immediately preceding the Qualified Military Service).

Differential Wage Payment For Retirement Plan Purposes. The Employer who elects to make Differential Wage Payments to active duty members in Qualified Military Service will treat the Differential Wage Payments as a payment of wages by the Employer to an Employee.

Treatment of Differential Wage Payments. For the purpose of the Plan:

**(i)** an individual receiving a Differential Wage Payment will be treated as an Employee of the Employer making the payment;

**(ii)** the Differential Wage Payment will be treated as Compensation; and

**(iii)** the Plan will not be treated as failing to meet the requirements of any plan qualification requirements under Code section 401(a) where a contribution or benefit is based on the Differential Wage Payment.

**"Compensation Computation Period":** The period specified as the Compensation Computation Period in the Adoption Agreement.

**"Contribution Percentage":** The ratio (expressed as a percentage) of the participant's Contribution Percentage Amounts to the Participant's Compensation for the Plan Year.

**"Contribution Percentage Amounts":** The sum of the Employee Contributions, Matching Contributions, and Qualified Matching Contributions (to the extent not taken into account for purposes of the ADP test) made under the Plan on behalf of the participant for the Plan Year. Such Contribution Percentage Amounts will not include Matching Contributions that are forfeited either to correct Excess Aggregate Contributions or because the contributions to which they relate are Excess Deferrals, Excess Contributions, or Excess Aggregate Contributions. If so elected in the adoption agreement the Employer may include Qualified Non-Elective Contributions in the Contribution Percentage Amounts. The Employer also may elect to use Elective Deferrals in the Contribution Percentage Amounts so long as the ADP test is met before the Elective Deferrals are used in the ACP test and continues to be met following the exclusion of those Elective Deferrals that are used to meet the ACP test.

**"Controlled Account":** An Account established and maintained for a Participant for accounting purposes over which they are permitted, under the terms of the Plan and the Plan's investment policy, to exercise investment control.

**"Deductible Voluntary Account":** An Account established and maintained for a Participant for accounting purposes with respect to their Voluntary Employee Contributions that were deductible by the Participant at the time they were made.

**"Deemed IRA Account":** (Deemed IRA) An Account established and maintained for a Participant for accounting purposes that meets the applicable requirements for an Individual Retirement Account under Sections 3.12.1 (Deemed Pre-tax IRA), 3.12.2 (Deemed Roth IRA) and Code sections 408(q) and 408A to which they may make Deemed IRA Contributions.

**"Deemed IRA Contribution":**  A Participant contribution designated as an IRA contribution to a Deemed IRA Account. Deemed IRA Contributions include Pre-tax IRA Contributions and Roth IRA Contributions.

**"Deemed Section 125 Compensation":**  An amount not available to a Participant in cash in lieu of group health coverage (a forced reduction in pay) because the Participant is unable to certify that they have other health coverage. Therefore, the Employee is included in the Employer's health plan. The amount withheld will be treated as Deemed Code section 125 Compensation only if the Employer does not request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

**"Designated Beneficiary":**  The individual or trust that is designated as the Beneficiary under the Plan and who is a designated beneficiary under Code section 401(a)(9) and Treasury Regulations section 1.401(a)(9)-4.

**"Differential Wage Payment":**  For purposes of the Plan, the term "Differential Wage Payment" means any payment which: (1) is made by an Employer to an individual with respect to any period during which the individual is performing service in the uniformed services (as defined in chapter 43 of title 38, United States Code) while on active duty for a period of more than 30 days; and (2) represents all or a portion of the wages the individual would have received from the Employer if the individual were performing services for the Employer. The Differential Wage Payment provisions will apply to wages paid after December 31, 2008.

**"Direct Rollover":**  A payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

**"Disability":**  Notwithstanding anything contained in the Plan to the contrary, an Employer may elect in the Adoption Agreement the manner in which a Participant is determined to have a Disability. Such determination required to be made by the Plan Administrator in connection with the permanence and degree of a physical or mental impairment will be made in a uniform and nondiscriminatory manner based on medical evidence.

Generally, a person is Disabled if they suffer from a medically determinable physical or mental impairment that may be expected to result in death or to last for a continuous period of not less than 12 months and that renders them incapable of performing their duties.

**"Disabled":**  An Employee is Disabled if they have a Disability.

**"Distributable Benefit":**  The benefit to which a Participant is entitled following termination of their employment or the date they are determined to be Disabled, if so elected in the Adoption Agreement.

**"Distributee":**  An Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and the Employee's or the former Employee's spouse or former spouse who is an Alternate Payee under a Qualified Domestic Relations Order, are Distributees with regard to the interest of the spouse or former spouse. For distributions after December 31, 2006, a Distributee includes the Employee's or former Employee's non-spouse Designated Beneficiary, in which case, the distribution can only be transferred to a traditional or Roth IRA established on behalf of the non-spouse Designated Beneficiary for the purpose of receiving the distribution.

**"Distribution Determination Date":**  The date as of which the Distributable Benefit of a Participant is determined, as discussed in Section 2.5.1(d).

**"Early Retirement Age":**  The age specified as the Early Retirement Age, if any, in the Adoption Agreement.

**"Early Retirement Date":**  The date specified as the Early Retirement Date, if any, in the Adoption Agreement.

**"Earned Income":**  The net earnings from self-employment in the trade or business with respect to which the Plan is established for which personal services of the Participant are a material income-producing factor. Net earnings will be determined without regard to items not included in gross income and the deductions allocable to such items but with regard to the deduction allowed to the taxpayer by Code section 164(f). Net earnings will be reduced by contributions to a qualified plan to the extent deductible under Code section 404.

**"Elapsed Time Method":**  A method of measuring service for purposes of eligibility to participate, vesting, and

contribution allocations that determines service by reference to the total period of time that elapses while the Employee is employed (i.e., while the employment relationship exists) with the Employer or Employers maintaining this Plan. The Adoption Agreement may specify different methods to determine service for purposes of vesting, participation, and benefit accrual. Treasury Regulation section 1.410(a)-7 provides additional detail about the application of this method.

(a) **General rule.** For purposes of eligibility to participate and vesting, an Employee's service begins on their Employment Commencement Date, and service is counted until their Severance From Service Date, as such terms are defined in Subsection (f) below.

(b) **"Service spanning"** The following rules apply for purposes of eligibility to participate and vesting.

(1) The Period of Severance from the date an Employee severs employment due to a quit, discharge, or retirement to the date the Employee again performs an Hour of Service, within the meaning of Labor Regulations section 2530.200b-2(a)(1), counts as a Period of Service unless such Period of Severance is 12 months or longer.

(2) If an Employee is absent from service for less than 12 months for any other reason (e.g., layoff) and then quits, is discharged, or retires, the period of time during which the Employee may return and receive credit begins on the Severance From Service Date and ends 1 year after the first day of absence (e.g., first day of layoff).

(3) If an Employee returns to service more than 12 months after the date that service first ended, then such date will be a Reemployment Commencement Date and the Plan will resume counting the Employee's service from that date and will not count the intervening Period of Severance.

As a result of the operation of these rules, a severance from service (e.g., a quit), or an absence (e.g., layoff) followed by a severance from service, never results in a period of time of more than 1 year being required to be taken into account after an Employee severs from service or is absent from service.

(c) **Additional Rules regarding Vesting.**

(1) An Employee is credited with a number of Years of Vesting Service equal to the number of whole years of the Employee's Period of Service, whether or not the Employee completed such Periods of Service consecutively.

(2) The whole years of an Employee's Period of Service are determined by aggregating any non-successive Periods of Service and by aggregating any less than whole year Periods of Service (whether or not consecutive) on the basis that 12 Months of Service or 365 days of service equal a whole Year of Vesting Service. Fractional months are aggregated into Months of Service.

(3) After calculating an Employee's Period of Service in the manner prescribed in this Subsection, any remaining service that is less than a whole year, 12-month, or 365-day Period of Service is disregarded for purposes of determining an Employee's nonforfeitable percentage of accrued benefits derived from Employer Contributions.

(d) **Contribution Allocations.** For purposes of contribution allocations, an Employee's service is taken into account from their Participation Commencement Date until their Severance From Service Date. Periods of Severance under any circumstances are not taken into account.

(e) **Break in Service Exception.** If an Employee is absent from work for maternity or paternity reasons, the 12-consecutive month period ending on the first anniversary of the first day of such absence will not constitute a Break in Service. For purposes of this Subsection, an absence of work for maternity or paternity reasons means an absence: (1) due to the Employee's pregnancy, (2) due to the birth of the Employee's child, (3) due to a child's placement with the Employee as part of the Employee's adoption of such child, or (4) to care for a child for a period beginning immediately following such birth or placement.

(f)  **Definitions.**

(1)  **Severance From Service Date:** A "severance from service" occurs on the earlier of:

(i)  The date on which an Employee quits, retires, is discharged, or dies; or

(ii)  The first anniversary of the first date of a period in which an Employee remains absent from service (with or without pay) with the Employer or Employers maintaining the Plan for any reason other than a quit, retirement, discharge or death, such as vacation, holiday, sickness, Disability, leave of absence, or layoff.

(2)  **Reemployment Commencement Date:** The first date, following a Period of Severance from service that is not required to be taken into account under the service spanning rules of Subsection (b), on which the Employee performs an Hour of Service within the meaning of Labor Regulations section 2530.200b-2(a)(1) for the Employer or Employers maintaining this Plan.

(3)  **Participation Commencement Date:** The date a Participant first commences participation under the Plan.

(4)  **Period Of Severance:** The period of time commencing on the Severance From Service Date and ending on the date on which the Employee again performs an Hour of Service within the meaning of Labor Regulations section 2530.200b-2(a)(1) for an Employer or Employers maintaining this Plan.

(5)  **Period of Service:**

(i)  **General Rule:** The period commencing on the Employee's Employment Commencement Date or Reemployment Commencement Date, whichever is applicable, and ending on the Severance from Service Date.

(ii)  **Aggregation Rule:** Periods of Service will be aggregated unless such periods may be disregarded under Code sections 410(a)(5) or 411(a)(4).

(iii)  **Month of Service:** 30 days are deemed to be a Month of Service.

**"Elective Account":** An Account established and maintained for a Participant for accounting purposes with respect to their Elective Deferrals.

**"Elective Deferrals":** Any contribution made by the Employer to the Plan at the election of the Participant or operation of the Plan, in lieu of cash compensation, including a contribution made pursuant to a salary reduction agreement or other deferral mechanism.

With respect to any taxable year, a Participant's Elective Deferrals are the sum of all Employer contributions made on behalf of the Participant pursuant to an election to defer under any qualified CODA as described in Code section 401(k), any simplified employee pension cash or deferred arrangement as described in Code section 408(k)(6), any SIMPLE IRA Plan described in Code section 408(p), any plan as described under Code section 501(c)(18), and any employer contributions made on the behalf of a Participant for the purchase of an annuity contract under Code section 403(b) pursuant to a salary reduction agreement. Elective Deferrals will not include any deferrals properly distributed as Excess Annual Additions.

For years beginning after 2005, the term "Elective Deferrals" includes Pre-tax Elective Deferrals and Roth Deferrals.

**"Eligibility Computation Period":** For purposes of determining Years of Service and Breaks in Service for purposes of eligibility, the initial Eligibility Computation Period is the 12 consecutive month period beginning on the date the Employee first performs an Hour of Service for the Employer (Employment Commencement Date).

If in accordance with the election in the Adoption Agreement, the subsequent periods may be:

**(a)** The succeeding 12-consecutive month periods that commence with the first anniversary of the Employee's Employment Commencement Date, or

**(b)** The first Plan Year that commences prior to the first anniversary of the Employee's Employment Commencement Date. An Employee who is credited with 1,000 Hours of Service in both the initial Eligibility Computation Period and the first Plan Year that commences prior to the first anniversary of the Employee's initial Eligibility Computation Period will be credited with 2 Years of Service for purposes of eligibility to participate.

**"Eligible Automatic Contribution Arrangement" (EACA):** An arrangement in a cash or deferred plan as defined in Section 2.2.3(b) of this Plan under which an Employee that has not affirmatively elected to defer Compensation into the Plan will have an amount deferred on their behalf by the Plan Administrator.

**"Eligible Employee":** An Employee who has met the eligibility requirements of the Plan.

**"Eligible Retirement Plan":** An eligible plan under Code section 457(b) that is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and that agrees to separately account for amounts transferred into such plan from this Plan, an individual retirement account described in Code section 408(a), an individual retirement annuity described in Code section 408(b), an annuity plan described in Code section 403(a), an annuity contract described in Code section 403(b), or a qualified plan described in Code section 401(a), that accepts the Distributee's Eligible Rollover Distribution. The definition of Eligible Retirement Plan will also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is an Alternate Payee under a Qualified Domestic Relation Order. If any portion of an Eligible Rollover Distribution is attributable to payments or distributions from a designated Roth Account, an Eligible Retirement Plan with respect to such portion will include only another designated Roth Account of the individual from whose account the payments or distributions were made, or a Roth IRA of such individual.

**"Eligible Rollover Distribution":** Any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's Designated Beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Code section 401(a)(9); any Hardship distribution; the portion of any other distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and any other distribution that is reasonably expected to total less $200 during a year. For purposes of the $200 rule, a distribution from a designated Roth Account and a distribution from other Accounts under the Plan are treated as made under separate plans.

A portion of a distribution will not fail to be an Eligible Rollover Distribution merely because the portion consists of after-tax Employee contributions that are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code sections 408(a) or (b), or to a qualified defined contribution plan described in Code sections 401(a) or 403(a) that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution that is includible in gross income and the portion of such distribution that is not so includible.

**"Employee":** A person who is currently or hereafter employed by the Employer, or by any other employer aggregated under Code sections 414(b), (c), (m), (n), or (o) and the regulations thereunder, including a Leased Employee subject to Code section 414(n) and a self-employed owner of an unincorporated employer, but, unless otherwise provided in the Adoption Agreement, excluding (a) an Employee who is a nonresident alien (within the meaning of Code section 7701(b)(1)(B) deriving no earned income (within the meaning of Code section 911(d)(2)) from the Employer that constitutes income from sources within the United States (within the meaning of Code section 861(a)(3)); and (b) employees who are included in the unit of Employees covered by a collective bargaining agreement between the Employer and employee representatives, provided benefits were the subject of good faith bargaining and 2% or less of the employees of the Employer who are covered pursuant to that agreement are "professional employees" as defined in Treasury Regulations section 1.410(b)-9. For this purpose, the term "employee representatives" does not include any organization more than half of whose members are Employees who are owners,

officers, or executives of the Employer.

Except as otherwise provided in this paragraph, if the Employer elects in the Adoption Agreement to exclude Employees who became Employees as the result of a "Code section 410(b)(6)(C) transaction," then such Employees will not be "Eligible Employees" prior to the expiration of the transition period beginning on the date of the transaction and ending on the last day of the first Plan Year beginning after the date of the transaction. A "Code section 410(b)(6)(C) transaction" is an asset or stock acquisition, merger, or similar transaction involving a change in the Employer of the Employees of a trade or business. However, if a separate trade or business becomes a Related Employer as the result of a "Code section 410(b)(6)(C) transaction," then Employees of such Related Employer will not be treated as "Eligible Employees" prior to the date the entity adopts the Plan as a participating Employer. For purposes of this Section, "Related Employer" means any trade or business related to the Employer by the application of Code sections 414(b), (c), (m), (n), or (o).

In the case of an individuals who are not contemporaneously classified as Employees of the Employer for purposes of the Employer's payroll system (including, without limitation, individuals employed by temporary help firms, technical help firms, staffing firms, employee leasing firms, professional employer organizations, or other staffing firms whether or not deemed to be "common law" Employees or Leased Employees) are not considered to be Eligible Employees of the Employer and will not be eligible to participate in the Plan. The preceding sentence will not apply in the case of the Employer out-sourcing its human resource functions for Employees that the Employer would otherwise treat as "common law' Employees. In the event any such individuals are reclassified as Employees for any purpose (including without limitation, common law or statutory employees, by any action of any third party, including, without limitation, any government agency, or as a result of any private lawsuit, action, or administrative proceeding) such individuals shall, notwithstanding such reclassification, remain ineligible for participation hereunder.  Notwithstanding foregoing, the exclusive means for individuals who are not contemporaneously classified as an Employee of the Employer on the Employer's payroll system to become eligible to participate in this Plan is through an amendment to this Plan, duly executed by the Employer, that specifically renders such individuals eligible for participation hereunder.

This Plan is to be construed to exclude all individuals who are not considered Employees for purposes of the Employer's payroll system, and the Plan Administrator is authorized to do so, despite the fact that its decision may result in the inadvertent loss of the Plan's tax qualification requiring an amendment of the Plan's eligibility provisions.

**"Employer":**  The Employer maintaining the Plan and those Employers required to be aggregated with the Employer under Code sections 414(b), (c), (m) or (o). An individual who owns the entire interest of an unincorporated trade or business is treated as the Employer. Also, a partnership is treated as the Employer of each partner and each Employee of the partnership as well as any of its affiliates, successors or assigns that adopt the Plan. However, no mere change in the identity, form, or organization of the Employer will affect its status under the Plan in any manner, and, if the name of the Employer is hereafter changed, a corresponding change will be deemed to have been made in the name of the Plan and references herein to the Employer will be deemed to refer to the Employer as it is then known.

**"Employer Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their share of Employer Contributions, Non-Elective Contributions, and Forfeitures.

**"Employer Contribution":**  A contribution by the Employer to a money purchase pension plan, profit sharing plan, or a Non-Elective Contribution to a cash or deferred profit sharing plan.

**"Employment Commencement Date":**  The date on which an Employee first performs an Hour of Service within the meaning of Labor Regulations section 2530.200b-2(a)(1) for the Employer or Employers maintaining this Plan.

**"Entry Date":**  The date or dates specified as the Entry Date in the Adoption Agreement.

**"Excess Aggregate Contributions":**  With respect to any Plan Year, the excess of:

**(a)**  The aggregate contribution percentage amounts taken into account in computing the numerator of the contribution percentage actually made on behalf of Highly Compensated Employees for such Plan Year, over

**(b)**  The maximum contribution percentage amounts permitted by the ACP test (determined by hypothetically

reducing contributions made on behalf of Highly Compensated Employees in order of their contribution percentages beginning with the highest of such percentages). Such determination will be made after first determining Excess Elective Deferrals and then determining Excess Contributions, as required in Part II, Article VII.

**"Excess Annual Addition":**  The portion of the allocation of contributions and Forfeitures that cannot be added to a Participant's Accounts due to the limitations on Annual Additions contained in Part III, Article II.

**"Excess Contributions":**  With respect to any Plan Year, the excess of:

**(a)**  The aggregate amount of Employer contributions actually taken into account in computing the ADP of Highly Compensated Employees for such Plan Year, over

**(b)**  The maximum amount of such contributions permitted by the ADP test (determined hypothetically by reducing contributions made on behalf of Highly Compensated Employees in order of their contribution percentages, beginning with the highest of such percentages).

Excess Contributions will be reduced by Excess Deferrals previously distributed.

**"Excess Elective Deferrals":**  Those Elective Deferrals that are made either:

**(a)**  During the Participant's taxable year and exceed the dollar limitation under such Code section 402(g) (including, if applicable, the dollar limitation on Catch-up Contributions defined in Code section 414(v)) for such year) or a lesser limitation set by the Adoption Agreement; or

**(b)**  During a calendar year and exceed the dollar limitation under Code section 402(g) (including, if applicable, the dollar limitation on Catch-up Contributions defined in Code section 414(v)) for the Participant's taxable year beginning in such calendar year, or a lesser limitation set by the Adoption Agreement, counting only Elective Deferrals made under this Plan and any other plan, contract, or arrangement maintained by the Employer.

Excess Elective Deferrals will be treated as Annual Additions under the Plan, unless such amounts are distributed no later than the first April 15 following the close of the Participant's taxable year.

**"Fiduciary":**  The Plan Administrator, the Trustee, and any other person who has discretionary authority or control in the management of the Plan or the disposition of Trust assets.

**"5-Percent Owner":**  A Participant who satisfies the definition of a 5-percent owner within the meaning of Code section 416(i) at any time during the Plan Year ending with or within the calendar year.

**"Forfeitures":**  The non-vested portion of a Participant's Account balance that is forfeited on or after their termination of employment in accordance with Section 2.4.4 and may be allocated to other Participants, used to defray the administrative expenses of the Plan, or considered as part of the Employer's Contribution if permitted by Part II, Article III.

**"Highly Compensated Employee" (HCE):**  Any Employee of an Employer required to be aggregated under Code sections 414(b), (c), (m) or (o) during a Plan Year who:

**(a)**  Was a 5-Percent Owner of the Employer at any time during the year or the preceding year, or

**(b)**  For the preceding year

    **(1)**  Had "compensation" from the Employer in excess of $80,000 (as adjusted by the Secretary of the Treasury pursuant to Code section 415(d)), and

    **(2)**  If the Employer elects in the Adoption Agreement the application of this clause for such preceding year, was in the top-paid group of Employees for such preceding year.

For this purpose, an Employee is in the top-paid group of Employees for any year if such Employee is in the group consisting of the top 20% of the Employees when ranked on the basis of compensation paid during such year.

For these purposes, the applicable year of the Plan for which a determination is being made is called a "determination year" and the preceding 12-month period is called a "look-back year."

The determination of whether an Employee had compensation in excess of $80,000, as adjusted, will be made based on compensation paid during the preceding Plan Year, unless the Employer has made a calendar year data election in the Adoption Agreement. The effect of the calendar year data election is that the look-back year becomes the calendar year beginning with or within the look-back year.

The top-paid group election and the calendar year data election must apply consistently to the determination years of all plans of the Employer.

Generally, a former Employee will be treated as a Highly Compensated Employee if:

**(1)**   Such Employee was a Highly Compensated Employee when such Employee separated from service or

**(2)**   Such Employee was an active Highly Compensated Employee for any Plan Year that ended on or after the Employee's 55th birthday.

The determination of whether a former Employee is a Highly Compensated Employee will be based on the rules applicable to determining Highly Compensated Employee status as in effect for that determination year, in accordance with temporary Treasury Regulations sections 1.414(q)-1T, A-7 and A-4 and Notice 97-45.

The Plan Administrator will apply rules to determine who is a Highly Compensated Employee as set forth in an administrative policy, so long as such rules are reasonable, nondiscriminatory, and uniformly and consistently applied.

**"Hour of Service":**   An hour for which:

**(a)**   The Employee is paid, or entitled to payment, by the Employer for the performance of duties. These hours will be credited to the Employee for the computation period in which the duties are performed.

**(b)**   The Employee is paid or entitled to payment by the Employer during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including Disability), layoff, jury duty, military duty, or leave of absence. These hours will be credited to the Employee for the computation period during which no duties are performed, beginning with the first Hour of Service to which the payment relates. No more than 501 Hours of Service will be credited under this Subsection for any single continuous period (whether or not such period occurs in a single computation period).

**(c)**   Back pay, irrespective of mitigation of damages, has been either awarded or agreed to by the Employer. These hours will be credited to the Employee for the period to which the award or agreement pertains rather than the period in which the award, agreement, or payment is made.

Hours of Service will not be credited under both (a) and (b), above, as the case may be, and under (c) above. Notwithstanding the preceding, no Hours of Service will be credited to the Employee by reason of a payment made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, or unemployment compensation or disability insurance laws, and no Hours of Service will be credited by reason of a payment that solely reimburses an Employee for medical or medically related expenses incurred by the Employee. The determination of Hours of Service for reasons other than the performance of duties and the crediting of Hours of Service to computation periods will be made in accord with the provisions of Labor Regulations sections 2530.200b-2(b) and (c) that are incorporated herein by reference.

Solely for the purposes of determining whether an Employee has incurred a Break in Service, an Employee will be credited with the number of Hours of Service that would otherwise have been credited to such individual but for the absence, and in any case in which such hours cannot be determined, with 8 Hours of Service for any day that the

-11-

Employee is absent from work by reason of the Employee's pregnancy, the birth of a child of the Employee, the placement of a child with the Employee in connection with the adoption of such child by the Employee or for purposes of caring for such child for a period beginning immediately following such birth or placement. Such Hours of Service will be credited in the computation period in which the absence from work begins if such crediting is necessary to prevent the Employee from incurring a Break in Service in such period, and in any other case, in the immediately following computation period. Notwithstanding the foregoing, no credit will be given for such service unless the Employee furnishes to the Plan Administrator information to establish that the absence from work is for the reasons indicated and the number of days for which there was such an absence.

In the case of a Multiple Employer Plan, an Employee will be credited with Hours of Service with all the adopting Employers of the Multiple Employer Plan.

In the event the Employer does not maintain records of the actual hours for which an Employee is paid or entitled to payment, credit for service will be given in accordance with the method selected in the Adoption Agreement.

Service with another business entity that is, along with the Employer, a member of a controlled group of corporations under Code section 414(b), an affiliated service group under Code section 414(m) or trades or businesses under common control under Code section 414(c), or that is otherwise required to be aggregated with the Employer pursuant to Code section 414(o) and the regulations issued thereunder will be treated as service for the Employer. Hours of Service will be credited for any individual considered an Employee for purposes of this Plan under Code sections 414(n) or 414(o) and the regulations issued thereunder.

If elected in the Adoption Agreement, service for a predecessor to the Employer, whether as an Employee or a Self-Employed Individual, will be treated as service for the Employer. If the Employer maintains the plan of a predecessor employer, service with such predecessor will be treated as service for the Employer.

If elected in the Adoption Agreement, service with a prior employer whether as an Employee or a Self-Employer Individual will be treated as service for the Employer for legitimate business purposes so long as the grant of such service does not discriminate in favor of Highly Compensated Employees. Service with a prior employer will be limited to 5 years.

**"In-Plan Roth Conversion Account":** An Account which maintains pre-tax Elective Deferrals or other Employer Contributions that have been converted to after-tax Roth contributions. If elected in the Adoption Agreement, if the Plan includes a designated Roth Deferral after September 27, 2010, it may permit a Participant to take an Eligible Rollover Distribution pursuant to Section 2.5.12 and transfer such amounts into an In-Plan Roth Conversion Account within the Plan. The Plan will maintain such records as are necessary for the proper reporting of in-plan Roth rollovers.

**"Insurer":** Any insurance company that has issued a Life Insurance Policy.

**"Integration Level":** The Integration Level will be equal to the Taxable Wage Base or such lesser amount specified in the Adoption Agreement. The Integration Level will be deemed to be the full amount specified in the Adoption Agreement, even though a Participant's Compensation may include less than a full year's compensation because either they commenced participation after the first day of the Compensation Computation Period or they terminated service prior to the end of the Compensation Computation Period.

**"Joint and Survivor Annuity":** An annuity for the life of the Participant with a survivor annuity for the life of the spouse (or other Beneficiary) that is not less than 50% and not more than 100% of the amount of the annuity that is payable during the joint lives of the Participant and the spouse or other Beneficiary and that is the amount of benefit that can be purchased with the Participant's vested Account balances. The percentage of the survivor annuity will be 50% unless a different percentage is elected by the Employer in the Adoption Agreement.

**"Key Employee":** For Plan Years beginning after December 31, 2001, an Employee or former Employee (including any deceased Employee) who, at any time during the Plan Year that includes the Determination Date (as defined in Subsection 2.6.2(g)) is either:

**(a)**  An officer of the Employer having an Annual Compensation (as defined in Subsection 2.6.2(b)) greater $130,000 (as adjusted by Code section 416(i) for Plan Years beginning after December 31, 2002);

**(b)**  A 5-Percent Owner; or

**(c)**  Any person who owns directly or indirectly more than 1% of the outstanding stock of the Employer or stock possessing more than 1% of the total combined voting power of all stock of the Employer or, in the case of an unincorporated Employer, the capital or profits interest in the Employer and has Annual Compensation (as defined in Subsection 2.6.2(b)) from the Employer of more than $150,000.

The determination of who is a Key Employee will be made in accordance with Code section 416(i)(1) and the regulations thereunder.

**"Lead Sponsor":**  The Employer or its successor, agent or representative who is designated as the Plan Sponsor of the Multiple Employer Plan.

**"Leased Employee":**  Any person (other than an Employee of the recipient) who, pursuant to an agreement between the recipient and any other person (the "leasing organization"), has performed services for the recipient (or for the recipient and related persons determined in accordance with Code section 414(n)(6)) on a substantially full time basis for a period of at least 1 year and such services are performed under the primary direction or control of the recipient; provided, that any such person will not be taken into account if:

**(a)**  Such person is covered by a money purchase pension plan providing

**(1)**  A nonintegrated Employer Contribution rate of at least 10% of compensation, as defined in Code section 415(c)(3) and Subsection 3.2.5(a)(iii) of the Plan, but including in compensation amounts contributed by the employer pursuant to a salary reduction agreement that are excludable from the person's gross income under Code sections 125, 132(f)(4), 402(e)(3), 402(h), or 403(b);

**(2)**  Immediate participation; and

**(3)**  Full and immediate vesting; and

**(b)**  Leased Employees do not constitute more than 20% of the workforce of the recipient who are not Highly Compensated Employees.

Contributions or benefits provided a Leased Employee by the leasing organization that are attributable to services performed for the recipient employer will be treated as provided by the recipient employer.

**"Life Insurance Policy":**  A life insurance, group or individual annuity, deposit administration, or endowment policy or contract owned by the Trust, including any Life Insurance Policy on the life of a Participant, the life of someone in whom the Participant has an insurable interest, or the joint lives of a Participant and someone in whom the Participant has an insurable interest.

**"Limitation Year":**  Unless otherwise specified in the Adoption Agreement, the Limitation Year will be the Plan Year, provided that all qualified plans maintained by the Employer must use the same Limitation Year. If the Limitation Year is amended to a different 12 consecutive month period, the new Limitation Year must begin on a date within the Limitation Year during which the amendment is made.

**"Mass Submitter":**  DATAIR Employee Benefits Systems, Inc.

**"Matching Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their share of Matching Contributions and Forfeitures.

**"Matching Contribution":**  A contribution to the Plan by the Employer that matches in whole or in part an Elective Deferral on behalf of an electing Employee.

**"Minimum Top-Heavy Allocation":**  The minimum allocation of a Participant for which provision is made in Sections 2.3.4 and 2.6.1.

**"Multiple Employer Plan" (MEP):**  A plan maintained by two or more employer who are not related pursuant to Code sections 414(d), 414(c), 414(m) or 414(o) and that operates as a single plan as described in Code section 413(c).

**"Non-Elective Contribution":**  A contribution to a cash or deferred profit sharing plan by the Employer that is not a Qualified Non-Elective Contribution, Matching Contribution, Elective Deferral, or Qualified Matching Contribution.

**"Non-Highly Compensated Employee" (NHCE):**  Any Employee who does not meet the definition of a Highly Compensated Employee in effect for a particular Plan Year.

**"Non-Key Employee":**  Any Employee who does not meet the definition of a Key Employee in effect for a particular Plan Year.

**"Normal Retirement Age" and "NRA":**  The age specified as the Normal Retirement Age in the Adoption Agreement, but in no event the later of age 65 or the 5th anniversary of the participation in the Plan. For this purpose only, participation is assumed to commence as of the first day of the first Plan Year in which the Employee became a Participant.

In the case of a money purchase pension plan:

**(1)**  the age may not be earlier than the earliest retirement age that is reasonably representative of the typical retirement age for the industry in which the Plan Participants work;

**(2)**  an age of 62 or older automatically meets this requirement;

**(3)**  the age selected must not be earlier than 55.

NRA is the age selected in the Adoption Agreement. If the Employer enforces a mandatory retirement age, the NRA is the lesser of that mandatory age or the age specified in the Adoption Agreement.

**"Normal Retirement Date" and "NRD":**  The date specified in the Adoption Agreement as the Normal Retirement Date but in no event more than 6 months after the Participant attains their Normal Retirement Age.

**"Owner-Employee":**  An individual who is a sole proprietor or a partner owning more than 10% of either the capital or profits interest of the partnership.

**"Participant":**  Any Eligible Employee who enters the Plan after meeting the requirements of Section 2.1.1.

**"Participating Employer":**  A Related Employer or Affiliated Employer, other than the Lead Sponsor, that has adopted the Plan.

**"Plan":**  The defined contribution plan for Employees as set forth in this Agreement, the Trust, and the Adoption Agreement, together with any amendments or supplements thereto.

**"Plan Administrator":**  The person, persons, or entity appointed by the Employer to administer the Plan, or, if the Employer fails to make such appointment, the Employer.

**"Plan Sponsor":**  The Plan Sponsor specified in the Adoption Agreement.  If elected in the Adoption Agreement the Plan Sponsor may serve as the Lead Sponsor for a Multiple Employer Plan.

**"Plan Year" or "Year":**  The 12 consecutive month period designated by the Employer in the Adoption Agreement.

**"Post Severance Compensation":**  Compensation paid a Participant after a severance of employment as defined

in the definition of Compensation in Section 3.2.5 of the Plan.

**"Preretirement Survivor Annuity":**  A survivor annuity for the life of the surviving spouse (or other Beneficiary) of the Participant purchasable with an amount equal to at least 50% of the vested Account balance of the Participant as of the date of the Participant's death, reduced if necessary, to reflect any security interest held by the Plan by reason of a loan outstanding to the Participant for which a valid spousal consent has been obtained.

**"Pre-tax Elective Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their Pre-tax Elective Deferrals.

**"Pre-tax Elective Deferral":**  Any Elective Deferral that is not includible in the Participant's gross income at the time deferred.

**"Pre-tax IRA Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their Pre-tax IRA Deferrals.

**"Pre-tax IRA Contribution":**  Any Deemed IRA Contribution that is not includible in the Participant's gross income at the time it is made.

**"Prevailing Wage Contribution":**  An Employer Contribution made pursuant to the Davis Bacon Act or any other state or federal prevailing wage law.

**"Primary Beneficiary under the Plan":**  An individual named as a Beneficiary under the Plan who has an unconditional right to all or a portion of the Employee's Account balance under the Plan upon the Employee's death.

**"Qualified Automatic Contribution Arrangement" and "QACA":**  An arrangement in a cash or deferred plan as defined in Section 2.2.3(c) of this Plan under which an Employee that has not affirmatively elected to defer Compensation into the Plan will have an amount deferred on their behalf by the Plan Administrator as well as certain other required Employer Contributions.

**"Qualified Domestic Relations Order" and "QDRO":**  A domestic relations order that creates or recognizes the existence of an Alternate Payee's right to receive all, or a portion of, the benefits payable with respect to a Participant under this or any other plan of the Employer and that the Plan Administrator has determined to satisfy the conditions of Code section 414(p).

**"Qualified Joint and Survivor Annuity":**  A Joint and Survivor Annuity that is immediately payable and for which the Beneficiary is the Participant's spouse. The percentage of the survivor annuity will be 50% unless a different percentage is elected by the Employer in the Adoption Agreement.

**"Qualified Matching Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their share of Qualified Matching Contributions.

**"Qualified Matching Contribution":**  A Matching Contribution that is 100% vested and nonforfeitable when made and that is distributable only in accordance with the distribution restrictions applicable to Elective Deferrals under the Plan, except that a Qualified Matching Contribution may not be distributed on account of Hardship prior to the Participant's attainment of age 59 1/2.

**"Qualified Military Service":**  Any service in the uniformed services, whether on a voluntary or involuntary basis, including active duty, active duty for training, initial active duty for training, inactive training, full-time National Guard duty, and the period of time a person is absent to determine their fitness to perform any such duty. Uniformed services refers to the Armed Forces, the Army National Guard, the Air National Guard, the commissioned corps of the Public Health Service, and any other category of persons designated by the President in time of war or national emergency. Notwithstanding any provision of this Plan to the contrary, contributions, benefits, and service credit with respect to Qualified Military Service will be provided in accordance with section 414(u) of the Code and applicable DOL and Treasury rules and regulations.

In addition, the survivors of any Participant who dies on or after January 1, 2007, while performing Qualified Military Service, are entitled to any additional benefits (other than contributions relating to the period of Qualified Military Service, but including vesting service credit for such period and any ancillary life insurance or other survivor benefits) that would have been provided under the Plan had the Participant resumed employment on the day preceding the Participant's death and then terminated employment on account of death.

**"Qualified Non-Elective Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their share of Qualified Non-Elective Contributions.

**"Qualified Non-Elective Contribution":**  An Employer Contribution to a cash or deferred profit sharing plan that is neither a Non-Elective Contribution, Matching Contribution, Qualified Matching Contribution, nor an Elective Deferral, that is 100% vested and nonforfeitable when made, that a Participant may not elect to receive in cash,  and that is distributable only in accordance with the distribution restrictions applicable to Elective Deferrals under the Plan, except that Qualified Non-Elective Contributions may not be distributed on account of Hardship prior to the Participant's attainment of age 59 1/2.

**"Qualified Optional Survivor Annuity":**  An immediate annuity for the life of the Participant with a survivor annuity for the life of the spouse which is equal to the applicable percentage of the amount of the annuity which is payable during the joint lives of the Participant and the spouse and which is the amount of benefit which can be purchased with the Participant's vested Account Balance. If the percentage of the survivor annuity is less than 75%, the applicable percentage is 75%. If the percentage of the survivor annuity is greater than or equal to 75%, the applicable percentage is 50%.

**"Qualified Preretirement Survivor Annuity":**  A Preretirement Survivor Annuity for which the Beneficiary is the Participant's spouse, and the benefit the Participant would have received is a Qualified Joint and Survivor Annuity (or the actuarial equivalent thereof).

**"Qualifying Employer Securities or Real Property":**  Securities or real property of the Employer that the Trustee may acquire and hold pursuant to the applicable provisions of the Code and the Act.

**"Related Employer":**  Any trade or business related to the Employer or affiliated employer by the application of Code sections 414(b), (c), (m), (n), or (o) (a required aggregation group). A Related Employer will not be considered a Participating Employer until they affirmatively elect to adopt the Plan.

**"Rollover Account":**  An Account established and maintained for a Participant for accounting purposes with respect to amounts the Participant has rolled over to this Plan.

**"Roth Deferral" (an after-tax contribution):**  Any contribution made by the Employer to the Plan at the election of the Participant that is: (1) designated irrevocably by the Participant at the time of the cash or deferred election as a Roth Deferral that is being made in lieu of all or a portion of the Pre-tax Elective Deferrals the Participant is otherwise eligible to make under the Plan; (2) treated by the Employer as includible in the Participant's income at the time the Participant would have received the contribution amount in cash if the Participant had not made the deferral election; and (3) maintained by the Plan in a separate account. Roth Deferrals must satisfy all Plan restrictions applicable to Elective Deferrals.

Under the separate accounting requirement, contributions and withdrawals of designated Roth Deferrals must be credited and debited to a designated Roth Deferral Account maintained for the Participant who made the designation, and the Plan must maintain a record of the Participant's investment in the contract (i.e., designated Roth Deferrals that have not been distributed) with respect to the Participant's designated Roth Deferral Account. In addition, gains, losses, and other credits or charges must be separately allocated on a reasonable and consistent basis to the designated Roth Deferral Account and other accounts under the Plan. However, Forfeitures may not be allocated to the designated Roth Deferral Account. The separate accounting requirement applies at the time the designated Roth Deferral is contributed to the Plan and must continue to apply until the designated Roth Deferral Account is completely distributed.

A designated Roth Deferral must satisfy all requirements applicable to Elective Deferrals made under the Plan.

Distributions from Roth Deferral Accounts (other than corrective distributions) are not includible in the Participant's gross income if made after the Participant's death, Disability, or age 59-1/2 provided that such distribution occurs after 5 years from the establishment of the Roth Deferral Account for the Participant. Earnings on corrective distributions of Roth Deferrals are includible in gross income in the same manner as earnings on corrective distributions of Pre-tax Elective Deferrals.

**"Roth Deferral Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their Roth Deferrals.

**"Roth IRA Account" (Roth IRA):**  An Account established and maintained for a Participant for accounting purposes with respect to their Roth IRA Contributions.

**"Roth IRA Contribution" (an after-tax contribution):**  Any Deemed IRA Contribution that is (1) designated irrevocably by the Participant at the time of the cash or deferred election as a Roth IRA Contribution; (2) treated by the Employer as includible in the Participant's income at the time the Participant would have received the contribution amount in cash if the Participant had not made the deferral election; and (3) maintained by the Plan in a separate account.

**"Segregated Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their interest in a Segregated Fund.

**"Segregated Fund":**  Assets held in the name of the Trustee that have been segregated from the other assets of the Trust Fund in accordance with any of the provisions of the Plan.

**"Self-Employed Individual":**  An individual who has Earned Income for the taxable year from the trade or business for which the Plan is established or who would have had Earned Income but for the fact that the trade or business had no net profits for the taxable year.

**"Straight Life Annuity":**  An annuity payable in equal installments over the life of the Participant that terminates upon the Participant's death.

**"Taxable Wage Base":**  The contribution and benefit base in effect under section 230 of the Social Security Act at the beginning of the Plan Year.

**"True-up":**  The process of increasing an annual contribution that has been limited on a Compensation Computation Period basis to the amount and period determined when applying the limits elected in the Adoption Agreement.

**"Trustee":**  The persons, corporations, associations, or combination of them who acts as such from time to time hereunder. The term "Trustee" as used herein will also include a person holding the assets of a custodial account, an annuity contract, or other contract that is treated as a qualified trust pursuant to Code section 401(f), and references to the Trust Fund will be construed to apply to such custodial account, annuity contract, or other contract.

**"Trust Fund":**  All money and property of every kind and character held by the Trustee pursuant to the Plan. Such Trust will be established by a Trust Agreement separate from the Adoption Agreement and Base Plan Document.

**"Valuation Date":**  The date or dates specified as the Valuation Date(s) in the Adoption Agreement and any additional dates the Plan Administrator may deem necessary in their sole discretion.

**"Voluntary Account":**  An Account established and maintained for a Participant for accounting purposes with respect to their Voluntary Employee Contributions that were not deductible by the Participant at the time they were made.

**"Voluntary Employee Contributions":**  Pre-tax contributions made by a Participant at their discretion, prior to Plan Years beginning in 1987, and after-tax contributions made by a Participant at their discretion, but not including Roth Deferrals or Roth IRA Contributions.

**"Year of Credited Service":** A 12 consecutive month period used in determining a Participant's benefit allocation. Unless otherwise specified in the Adoption Agreement, an Employee is granted a Year of Credited Service for each Plan Year in which they earn 1,000 Hours of Service. The Plan's benefit formula may limit or exclude certain Years of Credited Service in the calculation of a Participant's annual benefit allocation.

**"Year of Service":** A Year of Service is completed on the last day of a 12 consecutive month period (computation period) specified in the Adoption Agreement during which an Employee completes at least 1,000 Hours of Service. If elected in the Adoption Agreement, the hours requirement for the completion of a Year of Service for a particular purpose can be less than 1,000 hours and can be satisfied before the end of the Eligibility Computation Period. For purposes of the Elapsed Time Method, a Year of Service means 12 Months of Service, as defined in the definition of Elapsed Time Method in this Article, or such lesser number of months specified in the Adoption Agreement. All Years of Service will be taken into account for purposes of eligibility.

**"Year of Vesting Service":** A Year of Vesting Service is the 12 consecutive month period specified in the Adoption Agreement during which an Employee completes at least 1,000 Hours of Service or such lesser number of hours specified in the Adoption Agreement. For purposes of the Elapsed Time Method, a Year of Vesting Service means either 12 Months of Service, as defined in the definition of Elapsed Time Method in this Article, 365 days of service, or such other period of service specified in the Adoption Agreement. The Plan Administrator will take into account all Years of Vesting Service unless the Employer specifies exclusions in the Adoption Agreement.

# PART II

# ARTICLE I

# <u>PARTICIPATION</u>

**2.1.1 Eligibility Requirements.** Each Eligible Employee will become a participant in this Plan and receive an appropriate allocation of contributions upon reaching an Entry Date while still an Employee following the satisfaction of the eligibility requirements set forth in the Adoption Agreement.

Under a plan with a cash or deferred arrangement ("CODA"), an Employee's eligibility to make Elective Deferrals may not be conditioned upon the completion of more than 1 Year of Service or the attainment of more than age 21.

An Employee that is a member of an employee classification that indirectly imposes an Hours of Service requirement (e.g., part-time, seasonal, or temporary) will be eligible to participate in the Plan in any Eligibility Computation Period in which the Employee attains age 21 and is credited with at least 1,000 Hours of Service, or such lesser age or Hours of Service required by the Plan.

**2.1.2 Commencement of Participation.** An Eligible Employee will become a Participant in the Plan on the applicable Entry Date selected in the Adoption Agreement.

**2.1.3 Participation upon Reemployment.**

**(a) Reemployment after Satisfying Eligibility Requirements**

Unless otherwise specified in the Adoption Agreement, a Participant whose employment terminates and who is subsequently reemployed will re-enter the Plan immediately on the date of their reemployment notwithstanding the fact that they received a distribution of all of their vested Benefit. In the event that an Employee completes the eligibility requirements set forth in the Adoption Agreement terminates their employment prior to the date they would have become a Participant, and they are subsequently reemployed after the date that they would have become a Participant, the Employee will be deemed to have met the eligibility requirements as of the date of their reemployment and will become a Participant on the date of their reemployment. If such Employee is reemployed prior to the date they would have become a Participant, had their employment had not terminated, they will become a Participant as of the date they would have become a Participant if their employment had not terminated.

**(b) Reemployment before Satisfying Eligibility Requirements**

Except as provided in the next paragraph, an Employee who has not met the eligibility requirements and whose employment terminates and who is subsequently reemployed will become a Participant in accordance with the provisions of Sections 2.1.1 and 2.1.2.

If the Plan has an eligibility requirement longer than one year, an Employee who terminates after completing a Year of Service and is subsequently reemployed prior to incurring a Break in Service will receive credit for that Year of Service for purposes of eligibility under Sections 2.1.1 and 2.1.2. However, an Employee who incurs a Break in Service will not receive credit for that Year of Service for the year prior to the break.

**(c)** An individual returning from a period of Qualified Military Service will recommence participation in the Plan immediately upon reemployment.

**2.1.4 Termination of Participation.** An Employee who has become a Participant will remain a Participant until the entire amount of their Distributable Benefit is distributed to them or in the event of their death, to their Beneficiary.

**2.1.5 Plan Administrator's Determination.** In the event any question arises regarding the eligibility of any person to become a Participant or the commencement of participation, the Plan Administrator will determine such

question and the Plan Administrator's decision will be conclusive and binding.

### 2.1.6  One-time Election Not to Participate.

**(a)**  Employees who made an election not to participate in this Plan or any other plan of the Employer pursuant to (b) and (c) below will continue to be excluded from this Plan on and after the date the Plan was restated for post-EGTRRA.

**(b)**  Where an Employer may have elected to permit an Employee to make an election not to participate in the Plan. The election should:

**(1)**  Include plans not yet established;

**(2)**  Be for the duration of the Employee's employment with the Employer;

**(3)**  Be a one-time irrevocable election;

**(4)**  Be made no later than the first date an Employee becomes eligible under the Plan or any plan or arrangement of the Employer that is described in Code section 219(g)(5)(A) (whether or not such other plan or arrangement has terminated).

Such a one-time irrevocable election described in this Section will not be treated as having been made pursuant to a cash or deferred election.

**(c)**  In the case of an irrevocable election made on or before December 23, 1994:

**(1)**  The election does not fail to be treated as a one-time irrevocable election under this Section merely because an Employee was previously eligible under another plan of the Employer (whether or not such other plan has terminated); and

**(2)**  In the case of a plan in which partners may participate, the election does not fail to be treated as a one-time irrevocable election under this Section merely because the election was made after the partner's commencement of employment or after the Employee first became eligible under any plan of the Employer, provided that the election was made before the first day of the first Plan Year beginning after December 31, 1988, or, if later, March 31, 1989.

### 2.1.7  Change in Status.  If any Participant continues to be employed by the Employer or an affiliate for which service is required to be taken into account, but ceases to be a member of an eligible class of Employees for any reason (such as becoming covered by a collective bargaining agreement unless the collective bargaining agreement otherwise provides), the Participant will continue to be a Participant until the entire amount of their benefit is distributed. The individual will not be eligible for any Employer Contribution for purposes of Article III ("Allocations") during the period that the Participant is not an Eligible Employee for such reason. This means while a member of an ineligible class the Employee will not receive an allocation of Employer Contributions. Such Participant will continue to receive credit for Years of Vesting Service completed during the period for purposes of determining their vested and nonforfeitable interest in their Accounts. In the event that the individual subsequently again becomes a member of an eligible class of Employees, the individual will participate immediately upon the date of such change in status.

If a Participant incurs a Break in Service and is subsequently reemployed, eligibility to participate will be determined in accordance with Section 2.1.3. In the event that an individual who is not a member of an eligible class of Employees becomes a member of an eligible class, the individual will participate immediately if such individual has satisfied the eligibility requirements and would have otherwise previously become a Participant and will receive credit for Years of Vesting Service completed while in the ineligible class for purposes of determining their vested and nonforfeitable interest in their Accounts.

Any Participant who ceases to be a member of an eligible class of Employees and would otherwise be entitled to a Top-Heavy Minimum Contribution will have any such contribution based on Compensation while a member of an eligible class of Employees.

**2.1.8  Existing Participants.**  Unless otherwise specified in the Adoption Agreement, if an Employee was a Participant on the Effective Date of this Plan, under the provisions of the Plan as in effect immediately prior to the Effective Date, they will be a Participant on the Effective Date and the provisions of Sections 2.1.1 and 2.1.2, pertaining to participation, will not be applicable unless the Employee is a member of an excluded class, as provided in Section 2.1.7. The rights of a Participant who is a member of an excluded class and whose employment terminated prior to the Effective Date of this Plan will be determined under the provisions of the Plan as in effect at the time of such termination.

**2.1.9  Service Crediting Method.**  All Years of Service with the Employer will be used in to determine eligibility and break in service. The Employer may elect in the Adoption Agreement to use the Hours of Service method, Elapsed Time Method or any of the optional service counting methods permitted within the Plan for eligibility to participate, vesting, and application of the benefit formula. Thus, for example, service for eligibility may be determined by counting actual hours worked, while service for vesting could be determined either by the equivalencies as provided in the Adoption Agreement or by the Elapsed Time Method.

# ARTICLE II

# <u>CONTRIBUTIONS</u>

**2.2.1  Employer Contributions.**

**(a)  Amount of Contribution.**

    **(1)  Money Purchase Pension Plan.**  The Employer will contribute to the Trust Fund each Plan Year such amount, including any Forfeitures to be applied, as set forth in the Adoption Agreement.

    **(2)  Profit Sharing Plan.**  The Employer may contribute to the Trust Fund each Plan Year such amount as elected in the Adoption Agreement.

    **(3)  Cash or Deferred Profit Sharing Plan.**

        **(i)  Amount of Non-Elective Contribution.**  The Employer will contribute to the Trust Fund each Plan Year such amount as a Non-Elective Contribution as the Employer elected in the Adoption Agreement.

        **(ii)  Amount of Matching Contribution.**  Subject to applicable limitations provided by the Plan, the Employer will contribute to the Trust Fund each Plan Year with respect to the amount of Elective Deferrals on behalf of each electing Employee, a Matching Contribution determined in the manner set forth in the Adoption Agreement, to the extent permitted under Code section 401(m).  If elected in the Adoption Agreement, Catch-up Contributions will not be treated as Elective Deferrals in the calculation of Matching Contributions.  If the Participants' Elective Deferral elections are made on an annual basis, but Elective Deferrals are taken from Compensation on some other basis, the Employer must True-Up Matching Contributions at the end of the Plan Year to an annual basis, unless elected otherwise in the Adoption Agreement.

        **(iii)   Amount of Qualified Non-Elective Contribution and Qualified Matching Contribution.**  The Employer may, if elected in the Adoption Agreement, contribute to the Trust Fund each Plan Year such amount as a Qualified Non-Elective Contribution or Qualified Matching Contribution as the Employer may determine.  In addition, if the Employer has elected in the Adoption Agreement to use the Current Year Testing Method, in lieu of distributing Excess Contributions or Excess Aggregate Contributions as provided in Article VII below, and to the extent elected by the Employer in the Adoption Agreement, the Employer may make Qualified Non-Elective Contributions or Qualified Matching Contributions on behalf of Participants who are not Highly Compensated Employees that are sufficient to satisfy either the ADP test or the ACP test, or both, pursuant to regulations under the Code.

    **(4)  Prevailing Wage Contribution.**  Notwithstanding any other provision of this subsection 2.2.1, the Employer may, if elected in the Adoption Agreement, contribute a required prevailing wage contribution. If the Employer elects in the Adoption Agreement such amounts may be used to reduce or offset other Employer Contributions. The Plan Administrator will determine the contribution to be reduced or offset.

    **(5)  In-kind Contributions**  The contribution of property, other than Qualifying Employer Securities, to a profit sharing plan or cash or deferred profit sharing plan, will be permitted, so long as the contribution is discretionary and the property is unencumbered.  The contribution of Qualifying Employer Securities will be permitted to a pension plan subject to the requirements of ERISA section 408(e).

**(b)  Limitation.**  The Employer's Contribution for any Plan Year will not exceed the maximum amount deductible from the Employer's income for such year for federal income tax purposes under the applicable Code sections.

**(c)  Time of Contribution.**  All Employer Contributions will be delivered to the Trustee not later than the date fixed

by law for the filing of the Employer's federal income tax return for the Year for which such contribution is made (including any extensions of time granted by the Internal Revenue Service for filing such return).

**(d)**    **Determination of Amount to be Final.**  The Employer's determination of the amount of its contribution hereunder will be in all respects final, binding, and conclusive on all persons or parties having or claiming any rights under this Agreement or under the Plan and the Trust created hereby.  Under no circumstances and in no event will any Participant, Beneficiary, or other person or party have any right to examine the Employer's books or records. This subparagraph will not operate to limit any right to review granted by ERISA.

**(e)**    **True-Up.**  The Employer may make an additional contribution ("true up") on behalf of each Participant in the amount of the positive difference, if any, between the contributions that would have been allocated to their Account had such contributions been determined on the basis of Compensation for the entire Plan Year and the contributions previously allocated to such Participant's Account.

## 2.2.2  Elective Deferrals Contributed by the Employer on Behalf of Electing Employees.

**(a)**    **Amount of Deferrals.**  If the Plan is designated in the Adoption Agreement as a Cash or Deferred Profit Sharing Plan, each Participant may elect to have the Employer contribute to the Trust on their behalf for any Plan Year during which they are a Participant such amounts expressed either in dollars or percentages of their Compensation as they may elect, that would otherwise be payable by the Employer as Compensation.  If elected in the Adoption Agreement, all or a portion of such Deferral amounts may be designated Roth Deferrals by the Participant. Such amount cannot exceed the dollar limitation on Elective Deferrals provided by Code section $402(g)$ in effect at the beginning of the taxable year (as adjusted for cost-of-living under Code section $402(g)(4)$). In the case of a Participant age 50 or over by the end of the taxable year, Elective Deferrals that do not exceed the dollar limitation described in the preceding sentence may also include any Elective Deferrals that are treated as Catch-up Contributions (described in Subsection (c) below) because of another limitation.

Subsequent to reemployment after a period of Qualified Military Service, a Participant is entitled to make a contribution to make up Elective Deferrals they otherwise could have made if not for the period of Qualified Military Service. No such payment may exceed the amount the Participant would have been permitted or required to contribute had the Participant remained continuously employed by the Employer throughout the period of Qualified Military Service. Any payment to the Plan will be made during the period beginning with the date of reemployment and whose duration is three times the period of the Qualified Military Service, but not greater than five years.

Nevertheless, the Employer may impose reasonable limitations in a uniform, nondiscriminatory manner on the amounts contributed in order to satisfy applicable legal requirements and to ensure the deductibility of amounts contributed by the Employer to the Plan and any other qualified plan of deferred compensation.  The Employer may elect in the Adoption Agreement to limit Elective Deferrals made on behalf of electing Employees to a percentage of Compensation or dollar amount that is less than the amount otherwise allowable by Code section $402(g)$. Where the Plan permits Elective Deferral and Catch-Up Contributions, the limit established by the Plan may not be a percentage that is less than 75 percent.

**(b)**    **Catch-up Contributions.**  If elected in the Adoption Agreement, a Participant may make Catch-up Contributions, which are Elective Deferrals made to the Plan that exceed an otherwise applicable Plan limit and that are made by Participants who are age 50 or over by the end of the applicable taxable year.  An otherwise applicable Plan limit is a limit in the Plan that applies to Elective Deferrals without regard to Catch-up Contributions, such as the limits on Annual Additions (see Section 3.2.1), the dollar limitation on Elective Deferrals under Code section $402(g)$ (not counting Catch-up Contributions), and the limit imposed by the ADP test under Code section $401(k)(3)$ (see Section 2.7.1), or any Employer-provided limit on the amount of Elective Deferrals.  Catch-up Contributions for a Participant for a taxable year may not exceed the lesser of:

**(1)**    The dollar limit on Catch-up Contributions under Code section $414(v)(2)(B)(i)$ for the taxable year (as adjusted for cost-of-living under Code section $414(v)(2)(c)$); or

**(2)**    When added to the Participant's other Elective Deferrals, 100% of the Participant's Compensation for the

taxable year.

All Catch-up eligible Participants will be provided with an effective opportunity to make the same dollar amount of Catch-up Contributions.

Catch-up Contributions are not subject to the limits on Annual Additions; are not counted in the ADP test; are not counted in determining the Minimum Top-Heavy Allocation (see Subsection 2.6.1(a)); and are not subject to any Employer-provided limit on the amount of Elective Deferrals. However, Catch-up Contributions made in prior years are counted in determining whether the Plan is Top-Heavy. (See Sections 2.6.1 and 2.6.2.)

**(c)    Election.** The Plan Administrator will determine the manner in which a Participant may elect to have Elective Deferrals made to the Plan on their behalf. The Plan Administrator will establish reasonable periods during which the election may be made or modified and must allow at least one opportunity per Plan Year for a Participant to make or modify an election. Unless the Plan Administrator establishes another period during which the election may be made or modified, any such election may be made or modified during the 30-day period preceding the first day of the Plan Year. A Participant may not make a retroactive election, and once an election is made, it will remain in effect until modified or terminated. A Participant may revoke an election at any time. Except in the case of an in-plan Roth conversion pursuant to Section 2.5.12(f) (a rollover to a Participant's Roth Elective Deferral account from another Account of the Participant in this Plan), Elective Deferrals contributed to the Plan as one type, either Roth Deferrals or Pre-tax Elective Deferrals, may not later be reclassified as the other type.

**(d)    Payment of Contribution.** Elective Deferrals will be remitted by the Employer to the Trustee or custodian on the earliest date that they can reasonably be segregated from the Employer's assets, but in no event later than the 15th business day of the month following the month in which the Participant contributions are withheld or received by the Employer, unless under the regulations an extension of up to 10 business days is granted by the Secretary of Labor with respect to Elective Deferrals received or withheld in a single month.

In the case of a small plan (less than 100) participants the Department of Labor has provided a safe harbor option for depositing Participant contributions within 7 business days after the money is received or withheld from payroll. This seven day rule was finalized as of January 14, 2010.

**(e)    Deferral Limitation After Hardship Distributions.** For Hardship distributions occurring before January 1, 2002, a Participant may not have Elective Deferrals made on their behalf for the taxable year following the taxable year of a Hardship distribution in excess of the applicable limit under Code section 402(g) for such taxable year less the amount of the Employee's Elective Deferrals for the taxable year of the Hardship distribution.

### 2.2.3  Automatic Compensation Reduction (ACA), Eligible Automatic Contribution Arrangements (EACA) and Qualified Automatic Contribution Arrangements QACA).

**(a)    ACA.** If elected in the Adoption Agreement, an Employee who becomes eligible to participate in the Plan and does not affirmatively elect to receive cash or have a specified amount contributed to the Plan will have their Compensation automatically reduced by the percentage elected in the Adoption Agreement. This percentage will be contributed to the Plan as a Pre-tax Elective Deferral. A Participant can make an affirmative election to make no Pre-Tax Elective Deferrals or to defer a different percentage of Compensation at any time.

The ACA is effective for any period in which an Employee has not made an affirmative election or until superseded by a subsequent election that is made in writing and filed with the Employer. Under the ACA the Employer will automatically reduce the Employee's Compensation within a reasonable time after giving notice of the arrangement and providing the Employee with an effective opportunity to make an affirmative election.

The Employee must receive a notice that explains the ACA and the Employee's right to elect to have no such ACA made or to alter the amount of those reductions, including the procedure for exercising that right and the timing for implementation of any such election. The Employee must be notified annually of their ACA and the Employee's right to change that percentage. Each notice period must provide the Employee with a reasonable

period to exercise their right to make an affirmative election.

If elected in the Adoption Agreement, the Employer may elect to apply the ACA to:

**(i)** a current Participant who has an Elective Deferral election in effect for less than the ACA percentage elected in the Adoption Agreement,

**(ii)** a current Participant who has no Elective Deferral election in effect,

**(iii)** to all Participants hired after a specified date, or

**(iv)** to Participants who do not make an Elective Deferral election within the reasonable period specified in the Plan.,

If that Participant thereafter makes an affirmative election to reduce their compensation by another percentage (or by zero percentage), then that affirmative election will be effective for pay periods beginning in the month following the date the Participant files the election with the Plan Administrator.

A Participant that is subject to an Automatic Compensation Reduction (ACA) will have the amount of the ACA increased by the rate elected in the Adoption Agreement, unless elected otherwise by the Participant, beginning the first day of the calendar year following the calendar year in which an ACA first became effective. The total increase of the ACA will be limited as elected in the Adoption Agreement.

**(b)** **EACA.** If elected in the Adoption Agreement, the Plan may satisfy the requirement for an Eligible Automatic Contribution Arrangement using an Automatic Compensation Reduction (ACA) arrangement under section 1.401(k)-(1(a) (2) and the uniform default percentage under section 1.414(w)-1 of the Treasury Regulations.

If that Participant thereafter makes an affirmative election to reduce their compensation by another percentage (or by zero percentage), then that affirmative election will be effective for pay periods beginning in the month following the date the Participant files the election with the Plan Administrator.

**(1)** **Definition.** For purposes of this Section 2.2.3(b), an "Eligible Automatic Contribution Arrangement" is an ACA arrangement under a cash or deferred profit sharing plan in which:

**(i)** a Covered Employee may elect to have the Employer defer a portion of their Compensation as a Pre-tax Elective Deferral under the Plan or receive such amounts directly in cash;

**(ii)** a Covered Employee who fails to make an affirmative election is treated as having elected to have the Employer make such contributions in an amount equal to a uniform percentage of Compensation;

**(iii)** the Employer has identified the group of Employees who will be covered under the EACA and to whom the default percentage will apply; and

**(iv)** the Employer meets the Annual Notice Requirements of Section 2.2.3(d).

**(2)** **Automatic Default Elective Contribution.** Default elective contributions will automatically be made for a Covered Employee who does not have an affirmative election in effect on or before the date the default election applies. The default election will be effective no earlier than a reasonable period after receipt of the notice described in Section 2.2.3(d).

For the purpose of this Section, a default elective contribution will be a Pre-tax Elective Deferral. The amount of the default elective contribution made for a Covered Employee in each pay period will be based on a uniform default percentage elected in the Adoption Agreement, multiplied by the Covered Employee's Compensation for that pay period.

If elected in the Adoption Agreement, the default percentage applied to a Covered Employee's Compensation will increase by a designated percentage each Plan Year, beginning with the second Plan Year that begins after

the Plan Year in which the initial default percentage first applies to that Covered Employee. Unless otherwise elected in the Adoption Agreement, the increase will be effective on the first day of the Plan Year.

**(3)** **Affirmative Election.** To avoid having default elective contributions deducted from their Compensation, a Covered Employee must make a written affirmative election.  Unless otherwise elected in the Adoption Agreement, each year a Covered Employee will be required to make an affirmative election to have a higher or lower percentage (or zero percentage) applied to their Compensation, otherwise the default election will automatically apply at the default percentage elected in the Adoption Agreement.

**(4)** **Limitations.** To meet the limitations under Code sections 401(a)(17), 402(g) and 415(c) and to satisfy any suspension periods required after a Hardship distribution, the Employer may stop or reduce an Employee's contributions to the Plan.

**(5)** **Covered Employees.** A Covered Employee is an Employee who meets the eligibility requirements of the Plan and who is identified in the Adoption Agreement as a covered under the EACA.

    **(A)** All Employees who are eligible to make Pre-tax Elective Deferrals to the Plan will be covered by the EACA and designated as Covered Employees, unless in the Adoption Agreement, the Employer identifies a specific group of Employees or classification of Employees to whom the default percentage will apply.

    **(B)** A Covered Employee will have a reasonable opportunity after receipt of the notice described in Section 2.2.3(d) of the Plan to make an affirmative election regarding Pre-tax Elective Deferrals (either to have no Pre-tax Elective Deferrals made to the Plan or to have a different amount of Elective Deferrals made on their behalf) before the default percentage in Section 2.2.3(b)(2) above is applied.

**(6)** Unless otherwise elected by the Employer in the Adoption Agreement, when an Employee makes an affirmative election to make Elective Deferrals to the Plan at a percentage that is higher or lower than the default percent, that Employee will cease to be a Covered Employee for the Plan Year and for the purpose of the default percentage in Section 2.2.3(b)(2) and the Annual Notice provisions in Section 2.2.3(d).

**(7)** **Permissible Withdrawal.** The Covered Employee may request a Permissible Withdrawal from the Plan, no later than 90 days after the date on which the default elective contributions were first withheld from their Compensation.  A "Permissible Withdrawal" is a distribution from the Plan of the default elective contribution made under an EACA that:

    **(A)** is made pursuant to a written election by a Covered Employee;

    **(B)** consists of the entire amount of contributions described in Section 2.2.3(b)(2) plus earnings attributable thereto through the date of the distribution; and

    **(C)** is includible in the Covered Employee's gross income for the taxable year in which the distribution is made.

The Plan may charge the Covered Employee a withdrawal fee in an amount and manner similar to the fee charged for processing a cash distribution from their account, according to a written expense policy, adopted by the Plan.

Notwithstanding the distribution provisions described in the Plan, spousal consent is not required for this distribution.

**(8)** **Time for Making a Permissible Withdrawal Election.** The provision of Subsection 2.2.3(b)(7) will not apply to a Covered Employee's withdrawal election, unless the election is made no later than 90 days after the date of their first default elective contribution.  In the Adoption Agreement, the Employer may specify an earlier date for making this election, provided the election period is at least 30 days.

**(9)    Distribution Amount.** The provision of Subsection 2.2.3(b)(7) will not apply to any election by a Covered Employee, unless the amount of the Permissible Withdrawal is limited to the amount of the default elective contributions made through the earlier of the second payroll period to which the default percentage first applied or the first payroll period that occurs 30 days before the effective date of the election.  The amount of the distribution will be adjusted for earnings, investment gain or losses.

**(10)  Special Rules.** The amount distributed as a Permissible Withdrawal will not be counted in the annual limitation on Elective Deferrals under Code section 402(g) for the calendar year in which the automatic contributions were contributed.

**(11)  Special Rules for Timing of Excess Contribution and Excess Aggregate Contribution.** For Plan Years beginning on or after January 1, 2010, where all eligible Non-Highly Compensated Employees and all eligible Highly Compensated Employees are designated as Covered Employees under EACA for the entire Plan Year, the Plan Administrator must distribute Excess Contributions and Excess Aggregate Contributions from the Plan no later than 6 months after the last day of the Plan Year in which the excess amounts were determined.

**(12)  Tax Treatment of Excess Contributions.** For Plan Years beginning after December 31, 2008, a corrective distribution of Excess Contributions (adjusted for any income or losses) will be included in an Employee's gross income in the tax year in which the distribution occurs.

**(13)  Forfeit of Employer Match under an Eligible Automatic Contribution Arrangement.** For Plan Years beginning after January 1, 2010, Employer Matching Contributions that are made on amounts distributed from the Plan as Permissible Withdrawals will not be forfeited unless the matching contribution has been allocated to the Employee's account.

**(c)    QACA** If elected in the Adoption Agreement, the Plan will satisfy the nondiscrimination requirements under Code section 401(k), by including the Safe Harbor contributions provision for a Qualified Automatic Contribution Arrangement and the Automatic Compensation Reduction (ACA) arrangement under sections 1.401(k)-3(j) and 1.401(k)-1(a)(2) of the Treasury Regulations.

**(1)    Definition.** For purposes of this Section, a "Qualified Automatic Contribution Arrangement" is an ACA arrangement under which:

**(i)** an Employee may elect to have the Employer defer a portion of their Compensation as a Pre-tax Elective Deferral under the Plan or to receive such amounts directly in cash;

**(ii)** an Employee who fails to make an affirmative election is treated as having elected to have the Employer make such contributions as Default Elective Contributions based on a predefined percentage of Compensation (default percentage);

**(iii)** the Employer will make either a Safe Harbor Matching Contribution or a Safe Harbor Non-Elective Contribution as described in Section 2.2.3(c)(7); and

**(iv)** the Employer meets the Annual Notice Requirements of Section 2.2.3(d).

**(2)    Default Elective Contribution.** Default Elective Contributions will automatically be made for an Employee who does not have an affirmative election in effect, on or before the date a default election applies.  The default election will be effective no earlier than a reasonable period after receipt of the notice described in Section 2.2.3(d).

For the purpose of this Section 2.2.3, Default Elective Contributions will be Pre-tax Elective Deferrals. The amount of the Default Elective Contribution made for an Eligible Employee, in each pay period, will be based on the Minimum Default Percentage specified in Subsection 2.2.3(c)(6) and elected in the Adoption Agreement, multiplied by the Employee's Compensation for that pay period.

**(3)    Affirmative Election.** To avoid having Default Elective Contributions deducted from their Compensation, an Eligible Employee must make a written affirmative election.  Each year  the Eligible Employee will be required to make an affirmative election to have a higher or lower percentage (or zero percentage) applied to their Compensation otherwise the default election will automatically apply at the default percentage described in Subsection 2.2.3(c)(6) and elected in the Adoption Agreement.

**(4)    Limitations.** To meet the limitations under Code sections 401(a)(17), 402(g) and 415(c) and to satisfy any suspension periods required after a hardship distribution, the Employer may stop or reduce an Employee's contributions to the Plan.

**(5)    Eligible Employee:** All Employees eligible to make Elective Deferrals to the Plan, will be covered by the QACA, unless otherwise specified in the Adoption Agreement.

    **(i)    Permissible Exclusion.** The Employer may elect, in the Adoption Agreement, to exclude current Participants who were eligible immediately before the effective date of these QACA provisions and had an affirmative election on file regarding Elective Deferrals.

    **(ii)    Statutory Exclusion.** The Employer may elect in the Adoption Agreement to exclude Employees who have not met the statutory eligibility requirements, as defined in Code section 410(b).  This election will permit the Plan to exclude employees who have not yet reached age 21 and completed a Year of Service since their original Employment Commencement Date.

**(6)    Provisions for the Default Elective Contribution.** The Employer will specify in the Adoption Agreement how the Default Elective Contribution will be determined for each Eligible Employee based on a minimum default percentage that will automatically increase after the initial period.  Unless otherwise elected in the Adoption Agreement, the default percentage will be uniformly applied to an Employee's Compensation under the ACA arrangement for the entire Plan Year and will automatically increase for Plan Years after the initial period.

    **(i)    Minimum Default Percentage.** The Plan must have a Minimum Default Percentage that is at least 3% of an Employee's Compensation beginning with the initial period.  The Minimum Default Percentage must be applied uniformly to all Eligible Employees, under a default election.

    The Minimum Default Percentage will automatically increase for Plan Years beginning after the initial default election ("initial period").  Under the Automatic Escalator Method, the Minimum Default Percentage will be at least:

    **(A)    3%** during the initial period, which begins on the date the first Default Elective Contributions are made with respect to such Employee;

    **(B)    4%** during the period ending on the last day of the first Plan Year which begins after the date on which the first Default Elective Contribution described in Subparagraph (i) is made with respect to such Employee;

    **(C)    5%** during the second Plan Year following the Plan Year described in Subparagraph (A); and

    **(D)    6%** during any subsequent Plan Year.

    Notwithstanding the preceding, an alternative to the Automatic Escalator Method may be elected in the Adoption Agreement:

    **(E)    the Plan** may elect to impose a higher percentage for the initial period and each Plan Year thereafter; or

    **(F)    the Employer** may elect in the Adoption Agreement to impose a uniform, flat percentage without

annual increases, provided the Minimum Default Percentage is at least 6% or not more than the QACA rate maximum without annual increase.

**(ii)** **Maximum Default Percentage.** The Maximum Default Percentage cannot exceed 10%. If elected in the Adoption Agreement, the Employer may specify a lower maximum for the Plan.

**(iii)** **Initial Period.** For the purpose of applying a Minimum Default Percentage, an initial period begins when the default election for this QACA provision is first applied to an Eligible Employee and ends on the last day of the following Plan Year. The timing for a default election will be determined under the Annual Notice provisions described in Section 2.2.3(d) of the Plan.

If elected in the Adoption Agreement, the Plan may elect to:

**(A)** have a new initial period begin for an Employee who did not have any contributions made to the Plan during the entire Plan Year. and

**(B)** have the default percentage increase after the initial period on a date other than the first day of a Plan Year.

**(7)** **Safe Harbor Contributions.** The Employer is required to make Matching Contributions or Non-Elective Contributions. In the Adoption Agreement, the Employer will select and contribute to the Plan one of the following types of Safe Harbor Contributions for each Plan Year for which the QACA is effective:

**(i)** **Matching Contribution.** A Matching Contribution for each Non-Highly Compensated Employee in an amount equal to the sum of 100% of their Elective Deferrals, to the extent that such Elective Deferrals do not exceed 1% of their Compensation plus an additional Matching Contribution equal to 50% of the Eligible Employee's Elective Deferral that exceed 1% but does not exceed 6% of their Compensation; or

**(ii)** **Non-Elective Contribution.** A Non-Elective Contribution for each Eligible Employee in an amount equal to at least 3% of the Employee's Compensation; regardless as to whether or not the Employee elects to make Elective Deferral or Employee Voluntary Contributions to the Plan.

Notwithstanding the preceding, if elected in the Adoption Agreement, the Employer may elect to contribute a Matching Contribution or Non-Elective Contribution in an amount equal to or greater than the percentage allowed herein, provided it satisfies the requirement of sections 1.401(k)-3(b) or 1.401(k)-3(c) of the Treasury Regulations.

**(iii)** **Special Requirements.** The Safe Harbor Matching Contributions or the Safe Harbor Non-Elective Contributions made under this Section 2.2.3(c) will be subject to the following distribution restrictions and vesting requirements:

**(A)** Safe Harbor Contributions may not be withdrawn from the Plan before age 59-1/2, under the withdrawal restrictions described in section 1.401(k)-1(d) of the Treasury Regulations; and

**(B)** Safe Harbor Contributions must be 100% vested after an Employee has completed 2 Years of Service.

**(d)** **Annual Notice Requirement.** QACA and EACA

**(1)** The Plan Administrator will give each Employee to whom the Qualified Automatic Contribution Arrangement in Section 2.2.3(c) or Eligible Automatic Contribution Arrangement in Section 2.2.3(b) applies, a notice explaining the Employee's rights and obligations under the arrangement. The notice must be provided within a reasonable period before the beginning of each Plan Year and it must be:

**(i)** sufficiently accurate and comprehensive to apprise the Employee of such rights and obligations and

**(ii)** written in a manner easily understood by the average Employee to whom the arrangement applies.

**(iii)** In the case of an EACA, the Employer will also include within the notice the Covered Employee's right to make a Permissible Withdrawal pursuant to Subsection 2.2.3(a)(7) and the administrative procedures for making such an election.

**(2)** **Timing and Form of Notice.** A notice will not be treated as meeting the requirements of this Section with respect to an Eligible Employee unless:

**(i)** the notice includes the level of the Default Elective Contribution that will be made for the affected Employee if they do not make an affirmative election;

**(ii)** the notice includes an explanation of the Employee's right to elect not to have Elective Deferral Contributions made on the Employee's behalf or to elect to have such contributions made at a different percentage;

**(iii)** the notice is given before the beginning of each Plan Year and gives the Employee a reasonable period after receipt of the notice to make an affirmative election.

**(iv)** the notice explains how Elective Deferrals and Safe Harbor or Employer Contributions made under the arrangement will be invested in the absence of any investment election by the Employee or where the Plan provides for two or more investment options.

**(3)** **Reasonable Period.** A notice satisfies the timing requirements of this Section only if it is provided sufficiently early so that the Employee has a reasonable period of time, after receipt of the notice, to make the elections described in Sections 2.2.3(b)(3) and 2.2.3(c)(3). The timing of the notice is considered reasonable if it is provided no later than the first pay date in the second payroll period that begins after the date the notice was provided or the first pay date that occurs at least 30 days after the notice is given to a newly hired employee. Notwithstanding, the Plan cannot make the default election effective any later than the earlier of:

**(i)** the pay date for the second payroll period that begins after the date the notice is provided; and

**(ii)** the first pay date that occurs at least 30 days after the notice is provided.

**(iii)** in the case of an EACA the Plan Administrator will include within the notice the Covered Employee's right to make a Permissible Withdrawal pursuant to Subsections 2.2.3(b)(3) and (7) and the administrative procedures for making such an election.

**(e)** **Expiration of Affirmative Elections**
Under a 401(k) plan, the plan may provide that an affirmative election expires annually. If a Participant fails to complete a new affirmative election subsequent to their prior election expiring, the Participant becomes subject to the default deferral percentage as outlined in the plan pursuant to the automatic contribution provision. Each year, the Participant can always complete a new affirmative election and designate a new deferral percentage.

## 2.2.4 Employee Contributions.

**(a)** **Amount of Contribution.** Subject to the Employer's election in the Adoption Agreement, an Employee may make Voluntary Employee Contributions to the Plan on an after-tax basis. Voluntary Employee Contributions for Plan Years beginning after 1986 must meet the nondiscriminatory test of Code section 401(m). Such contributions will be maintained in a Voluntary Account and will be nonforfeitable at all times. The Voluntary Account will share in the gains and losses of the Trust according to the policy adopted pursuant to Section 3.1.3.

The Plan Administrator will not accept Deductible Voluntary Employee Contributions that are made for a taxable year beginning after December 31, 1986. Deductible Voluntary Employee contributions made prior to

that date will be maintained in a Deductible Voluntary Account that will be nonforfeitable at all times. This Account will share in the gains and losses of the Trust according to the policy adopted pursuant to Section 3.1.3. No part of the Deductible Voluntary Account will be used to purchase life insurance.

**(b)  Withdrawal of Contributions.**  Subject to the requirements of Section 2.5.5 regarding Qualified Joint and Survivor Annuities (if applicable), the Participant may withdraw any part of the Voluntary Account or Deductible Voluntary Account by making a written application to the Plan Administrator. The Plan Administrator may adopt such procedures with respect to such withdrawals as may be necessary or appropriate. At the Plan Administrator's direction, the Trustee will distribute any such withdrawal to the Participant in accordance with those procedures. Except in the case of the Deductible Voluntary Account, such withdrawals will not include any interest or other increment earned on such contributions if the Participant is still an Employee. No Forfeitures will occur as a result of an Employee withdrawing such contributions. Notwithstanding the foregoing, the Employee's spouse must consent in writing to a withdrawal of Voluntary Employee Contributions subject to the spousal consent requirements of Subsection 2.5.5(c).

**2.2.5  Return of Contributions.**  The Trustee will return contributions by the Employer, including Employer, Qualified Non-Elective, Non-Elective, Matching, and Qualified Matching Contributions, to the Employer in the following instances:

**(a)**  If a contribution is made by the Employer because of mistake of fact, then the Trustee will return such contribution within 1 year after its payment upon the Employer's written request.

**(b)**  Each contribution by the Employer is conditioned on initial qualification of the Plan under the applicable sections of the Code.  If the Commissioner of Internal Revenue determines that the Plan does not initially qualify, then any contribution made incident to the initial qualification by the Employer will be returned within 1 year after the date of denial of initial qualification of the Plan, but only if the application for initial qualification is made by the time prescribed by law for filing the Employer's tax return for the taxable year in which the Plan is adopted, or such later date as the Secretary of the Treasury may prescribe.

**(c)**  Each contribution by the Employer is conditioned upon the deductibility of the contribution under the applicable sections of the Code. If the deduction for part or all of a contribution is disallowed, the Trustee will return such contribution, to the extent of the disallowance, within 1 year after such disallowance.

**2.2.6  Required Diversification For Plans That Hold Publicly Traded Securities.**  This Plan will provide Applicable Individuals with the right to divest Employer Securities in their Accounts and reinvest those amounts in certain diversified investments.

**(a)**  In the case of the portion of an Applicable Individual's Account attributable to Voluntary Employee Contributions and Elective Deferrals invested in Employer Securities, the Plan will provide the Applicable Individual the right to direct the Plan to divest any such securities and to reinvest an equivalent amount in other investment options meeting the requirements of Paragraph (c).

    **(1)**  An Applicable Individual with respect to Elective Deferrals and Voluntary Employee Contributions is:

        **(A)**  a Participant in the Plan;

        **(B)**  an Alternate Payee who has an account under the Plan; or

        **(C)**  a Beneficiary of a deceased Participant

**(b)**  In the case of the portion of the Account attributable to Employer Contributions other than Elective Deferrals invested in Employer Securities, an Applicable Individual may elect to direct the plan to divest any such securities and to reinvest an equivalent amount in other investment options meeting the requirements of Paragraph (c).

    **(2)**  An Applicable Individual with respect to the Employer Contributions is:

**(A)** a Participant who has completed at least 3 years of service;

**(B)** an Alternate Payee who has an Account under the Plan with respect to a Participant who has completed at least 3 Years of Service; or

**(C)** a Beneficiary of a deceased Participant

**(c)** **Investment options.**

**(1)** The Plan will offer not less than 3 investment options, other than Employer Securities, to which an Applicable Individual may direct the proceeds from the divestment of Employer Securities. Each investment option must be diversified and have materially different risk and return characteristics.

**(2)** The Plan will permit an election to divest or reinvest at least quarterly.

**(3)** The Plan will not meet the requirements of this Section if the Plan imposes restrictions or conditions with respect to the investment of Employer Securities that are not imposed on the investment of other Plan assets. Notwithstanding, any restrictions or conditions imposed by under applicable securities laws will apply.

**(d)** **Applicable Defined Contribution Plan.** For purposes of this Section, the term "Applicable Defined Contribution Plan" means:

**(1)** any defined contribution plan which holds any Publicly Traded Employer Securities and

**(2)** does not include a one-participant retirement plan.

**(A)** The term "one-participant retirement plan" means a retirement plan that on the first day of the Plan Year:

**(1)** covers only one individual (or the individual and the individual's spouse) and the individual (or the individual and the individual's spouse) owned 100% of the plan sponsor (whether or not incorporated), or

**(2)** covers only one or more partners (or partners and their spouses) in the plan sponsor.

The term "partner" includes a 2% shareholder (as defined in Code section 1372(b)) of an S Corporation.

**(e)** Certain plans treated as holding Publicly Traded Employer Securities.

**(1)** In the case of Employer Securities that are not Publicly Traded Employer Securities, the Plan will be treated as holding Publicly Traded Employer Securities if any Employer corporation, or any member of a Controlled Group of Corporations, which includes such Employer corporation, has issued a class of stock that is a Publicly Traded Employer Security.

**(2)** Exception for certain controlled groups with publicly traded securities, Clause (1) will not apply to the Plan if:

**(A)** no Employer Corporation or Parent Corporation of an Employer Corporation has issued any publicly traded Employer Security, and

**(B)** no Employer Corporation or Parent Corporation of an Employer Corporation has issued any special class of stock that grants particular rights to, or bears particular risks for the holder or issuer with respect to any corporation described in Subparagraph (i) that has issued any Publicly Traded Employer Security.

**(3)  Definitions.** For purposes of this Subparagraph:

    **(A)**  **"Controlled Group of Corporations"** has the meaning given such term by Code section 1563(a) , except that "50 percent" will be substituted for "80 percent" each place it appears;

    **(B)**  **"Employer Corporation"** means a corporation which is an Employer maintaining the Plan; and

    **(C)**  **"Parent Corporation"** has the meaning given such term by Code section 424(e).

**(f)  Other definitions.** For purposes of this Section:

    **(1)**  **"Elective Deferrals"** means an Employer Contribution as described in Code section 402(g)(3)(A).

    **(2)**  **"Employer Security"** has the meaning given by Code section 407(d)(1) of the Employee Retirement Income Security Act of 1974.

    **(3)**  **"Employee Stock Ownership Plan"** has the meaning given by Code section 4975(e)(7).

    **(4)**  **"Publicly Traded Employer Securities"** means Employer Securities that are readily tradable on an established securities market.

    **(5)**  **"Year of Service"** has the meaning given by Code section 411(a)(5).

**(g)  Transition rule for securities attributable to Employer Contributions**

    **(1)**  Rules phased in over 3 years.

        **(A)**  In the case of the portion of an Employer Account other than Elective Deferral Account consisting of Employer Securities acquired in a Plan Year beginning before January 1, 2007, Section (b) will only apply to the Applicable Percentage of such securities. This subparagraph applies separately with respect to each class of securities.

        **(B)**  Exception for certain Participants aged 55 or over. The Transition Rules of Subparagraph (1) will not apply to an Applicable Individual who is a Participant who has attained age 55 and completed at least 3 Years of Service before the first Plan Year beginning after December 31, 2005.

    **(2)**  **Applicable Percentage.** For purposes of Subparagraph (1), the Applicable Percentage will be determined as follows:

| Plan year to which Section (b) applies | The Applicable Percentage is |
|---|---|
| First Year | 33 |
| Second Year | 66 |
| Third and following Years | 100 |

**(h)  Effective Date.** The Diversification requirements of Section 2.2.6 will apply to the Plan and are effective with respect to Plan Years beginning after December 31, 2006, subject to certain special effective date rules, including a special rule with respect to plans maintained pursuant to a collective bargaining agreement.

# ARTICLE III

# ALLOCATIONS

**2.3.1 Basic Allocation.** Unless otherwise elected by the Employer in the Adoption Agreement, as of the last day of the Plan Year, the contribution made by the Employer, including any Forfeitures to be allocated, with respect to the Plan Year will be allocated among the Employer Accounts of Participants during the Plan Year, in the manner set forth in the Adoption Agreement; provided, that the Employer Contribution must satisfy the requirements of Code section 416 regardless of how the Adoption Agreement is completed.

**2.3.2 Profit Sharing, Money Purchase Pension Plans.** Unless otherwise elected by the Employer in the Adoption Agreement, as of the last day of the Plan Year, the Employer Contributions made by the Employer with respect to the Plan Year and Forfeitures will be allocated among the Employer Accounts of Participants during the Plan Year in the manner set forth in the Adoption Agreement. A Participant is treated as benefiting under the Plan for any Plan Year during which the Participant received or is deemed to receive an allocation in accordance with Treasury Regulations section 1.410(b)-3(a). If a Plan is integrated with Social Security, Section 2.3.5 or 2.3.6, as the case may be, will also apply.

**(a)** As elected by the Employer in the Adoption Agreement, the Employer will determine the total amount of contributions for each Plan Year and either (1) allocate such total amount to Participant groups (the "Participant Group Allocation method"), or (2) allocate such total amount using age weighted allocation rates (the "Age Weighted Allocation method"). Employer Contributions will be allocated to each Eligible Employee.

**(1) Participant Group Allocation Method.** The Employer may elect in the Adoption Agreement to use one of two Participant Group Allocation methods for the purpose of allocating the Employer Contribution: (a) the "employee classification," method that permits the Employer to divide the Eligible Employees into groups under pre-defined classifications or (b) the "separate allocation group" method where each Eligible Employee comprises a separate allocation group for the purpose of allocating the Employer Contribution.

The allocation will be made as follows: First, the total amount of contributions is allocated among the deemed aggregated allocation groups in portions determined by the Employer. A deemed aggregated allocation group consists of all of the separate allocation groups that have the same allocation rate. Second, within each deemed aggregated allocation group, the allocated portion is allocated to each Employee in the ratio that such Employee's Compensation, as defined in Part 1 Article II of the Plan, bears to the total Compensation of all Employees in the group. An allocation rate is the amount of contributions allocated to an Employee for a year, expressed as a percentage of compensation or dollar amount, as defined in Part 1 Article II of the Plan. If the Employer has elected in the Adoption Agreement, the "separate allocation groups" method, each Eligible Employee of the Employer will constitute a "separate allocation group" for purposes of allocating contributions. In the event that an Eligible Employee is included in more than one Participant allocation group, the Participant's share of the Employer Contribution allocated to each such group will be based on the Participant's Compensation for the part of the year the Participant was in the group.

The Employer will specify in written instructions to the Plan Administrator or Trustee, by no later than the due date of the Employer's tax return for the year to which the Employer Contribution relates, including extensions, the portion of such contribution to be allocated to each participant allocation group.

**(2) Age Weighted Allocation Method.** If the Age Weighted Allocation method is elected in the Adoption Agreement, the total Employer Contribution will be allocated to each Eligible Employee such that the equivalent benefit accrual rate for each Participant is identical. The equivalent benefit accrual rate is the annual annuity commencing at the Participant's testing age, expressed as a percentage of the Participant's Compensation as defined in Part 1 Article II of the Plan which is provided from the allocation of Employer Contributions and Forfeitures for the Plan Year, using standardized actuarial assumptions that satisfy section 1.401(a)(4)-12 of the Income Tax Regulations. The Employee's testing age is the later of Normal Retirement Age, or the Employee's current age.

**(b)   Cross Testing. The Employer may elect in the Adoption Agreement one of the following methods to meet the requirements of Treasury Regulation section 1.401(a)(4)-8.**

**(1)   Minimum Allocation Gateway Method.** For any Plan Year in which the Employer intends to rely on Treasury Regulation section 1.401(a)(4)-8 (cross testing) in satisfying Code section 401(a)(4), each Non-Highly Compensated Employee entitled to a Non-Elective Contribution under this Section 2.3.1 or under Section 2.9.3 will receive a minimum allocation equal to the lesser of (a) 1/3 of the highest allocation rate (as a percentage of Compensation) of any Highly Compensated Employee applied to their Compensation, as defined in Part I, Article II, or (b) 5% of their compensation as defined in Subsection 3.2.5(a)(iii). Compensation for a Participant's initial year of participation will be measured either over the period starting from their Entry Date or over the 12 month period ending in the initial year of participation, as elected in the Adoption Agreement under the Compensation Computation Period. If a defined benefit plan sponsored by the Employer is aggregated with this Plan for purposes of satisfying Code section 410(b) and the Employer intends to rely on Treasury Regulations section 1.401(a)(4)-9, then each Non-Highly Compensated Employee entitled to an allocation will receive an allocation such that their aggregate normal allocation rate equals the lesser of (a) 1/3 of the highest aggregate normal allocation rate (as a percentage of Compensation) of any Highly Compensated Employee or (b) 5% of their compensation as defined in Subsection 3.2.5(a)(iii); provided, if the highest aggregate normal allocation rate of any Highly Compensated Employee exceeds 25%, each Non-Highly Compensated Employee will receive 6% of their Compensation, if the highest aggregate normal allocation rate of any Highly Compensated Employee exceeds 30%, each Non- Highly Compensated Employee will receive 7% of their Compensation, and if the highest aggregate normal allocation rate exceeds 35%, each Non-Highly Compensated Employee will receive 7.5% of their Compensation. Notwithstanding anything in the Plan to the contrary, on or after June 5, 2009, in the event that the Plan is Top-Heavy for a Plan Year, any Non-Highly Compensated Employee eligible for a Minimum Top-Heavy Allocation in Subsection 2.6.1(a) of the Plan will receive an allocation equal to the greater of the Minimum Top-Heavy Allocation or the amount determined above. Any allocation in excess to the Minimum Top-Heavy Allocation determined without regard to this provision must be made to this Plan and may not be made to another Plan in a Top-Heavy Allocation group.

**(2)   Gradual Age or Service Schedule.** The Plan has a gradual age or service schedule for the Plan Year if the allocation formula for all Employees under the Plan provides for a single schedule of allocation rates under which; (1) The schedule defines a series of bands based solely on age, Years of Service, or the number of points representing the sum of age and Years of Service (age and service points), under which the same allocation rate applies to all Employees whose age, Years of Service, or age and service points are within each band; and (2) The allocation rates under the schedule increase smoothly at regular intervals, within the meaning of this paragraph and the following two paragraphs of this section.

**(3)   Smoothly Increasing Schedule Of Allocation Rates.** A schedule of allocation rates increases smoothly if the allocation rate for each band within the schedule is greater than the allocation rate for the immediately preceding band (i.e., the band with the next lower number of years of age, Years of Service, or age and service points) but by no more than 5 percentage points. However, a schedule of allocation rates will not be treated as increasing smoothly if the ratio of the allocation rate for any band to the rate for the immediately preceding band is more than 2 or if it exceeds the ratio of allocation rates between the two immediately preceding bands.

**(4)   Regular Intervals.** A schedule of allocation rates has regular intervals of age, Years of Service or age and service points, if each band, other than the band associated with the highest age, years of service, or age and service points, is the same length. For this purpose, if the schedule is based on age, the first band is deemed to be of the same length as the other bands if it ends at or before age 25. If the first age band ends after age 25, then, in determining whether the length of the first band is the same as the length of other bands, the starting age for the first age band is permitted to be treated as age 25 or any age earlier than 25. For a schedule of allocation rates based on age and service points, the rules of the preceding two sentences are applied by substituting 25 age and service points for age 25. For a schedule of allocation rates based on service, the starting service for the first service band is permitted to be treated as one year of service or any lesser amount of service.

(5) **Minimum Allocation Rates Permitted.** A schedule of allocation rates under the Plan does not fail to increase smoothly at regular intervals, within the meaning of the preceding paragraphs of this Section, merely because a minimum uniform allocation rate is provided for all Employees or the minimum benefit described in section 416(c)(2) of the Code is provided for all Non-Key Employees (either because the Plan is Top-Heavy or without regard to whether the Plan is Top-Heavy) if the schedule satisfies one of the following conditions; (1) The allocation rates under the Plan that are greater than the minimum allocation rate can be included in a hypothetical schedule of allocation rates that increases smoothly at regular intervals, within the meaning of the preceding paragraphs of this section, where the hypothetical schedule has a lowest allocation rate no lower than 1% of Plan Year Compensation; or (2) For a Plan using a schedule of allocation rates based on age, for each age band in the schedule that provides an allocation rate greater than the minimum allocation rate, there could be an Employee in that age band with an equivalent accrual rate that is less than or equal to the equivalent accrual rate that would apply to an Employee whose age is the highest age for which the allocation rate equals the minimum allocation rate.

### 2.3.3 Cash or Deferred Profit Sharing Plans.

(a) **Matching Contributions.** Unless otherwise specified in the Adoption Agreement, as of the last day of the Plan Year, the Matching Contribution made by the Employer with respect to the Plan Year, and Forfeitures, will be allocated to the Matching Accounts of Participants for whom Elective Deferrals were made in the manner specified in the Adoption Agreement. If elected in the Adoption Agreement, Catch-up Contributions will not be treated as Elective Deferrals in the calculation of Matching Contributions allocated to Participant's Matching Accounts.

If a discretionary Matching Contribution formula applies (i.e., a formula that provides an Employer with discretion regarding how to allocate a Matching Contribution to Participants) and the Employer makes a discretionary Matching Contribution to the Plan, the Employer must provide the Plan Administrator (or Trustee, if applicable), written instructions describing (1) how the discretionary Matching Contribution formula will be allocated to Participants (e.g., a uniform percentage of Elective Deferrals or a flat dollar amount); (2) the computation period(s) to which the discretionary Matching Contribution formula applies; and (3) if applicable, a description of each business location or business classification subject to separate discretionary Matching Contribution allocation formulas. Such instructions must be provided no later than the date on which the discretionary Matching Contribution is made to the Plan. A summary of these instructions must be communicated to Participants who receive discretionary Matching Contributions. The summary must be communicated to Participants no later than 60 days following the date on which the discretionary Matching Contribution is made to the Plan. This written instruction requirement will become applicable the first day of the Plan Year following the Plan Year in which the Plan first executes a Cycle 3 (Post-PPA) pre-approve plan document.

(b) **Pre-Tax Elective Deferrals.** The Pre-Tax Elective Deferrals by the Employer on behalf of an electing Employee will be allocated to the Pre-Tax Elective Account of such electing Employee.

(c) **Roth Deferrals.** The Roth Deferrals contributed by the Employer on behalf of an electing Employee will be allocated to the Roth Deferral Account of such electing Employee.

(d) **Qualified Non-Elective Contributions and Qualified Matching Contributions.** As of the last day of the Plan Year, the Qualified Non-Elective Contributions and Qualified Matching Contributions made by the Employer with respect to the Plan Year will be allocated to the Qualified Non-Elective Account or Qualified Matching Account of Participants during the Plan Year in the manner specified in the Adoption Agreement. Contributions are treated as Qualified Non-Elective or Qualified Matching Contributions only if they meet the requirements of Treasury Regulations sections 1.401(k)-2(a)(6)(iv) or 1.401(m)-2(a)(6)(v), respectively

### 2.3.4 Minimum Top-Heavy Allocation.
In the event the Plan becomes a Top-Heavy Plan during any Plan Year, the provisions of Subsection 2.6.1(a) will apply. The Employer may elect to make an additional allocation to meet the Minimum Top-Heavy requirement or otherwise follow the Plan provisions. The allocation of Employer Contributions must satisfy the requirements of Code section 416 regardless of how the Adoption Agreement is completed. Elective

Deferrals and Matching Contributions allocated to Key Employees, but not Catch-up Contributions, are taken into account for the purpose of determining the minimum contribution under Code section 416. However, Elective Deferrals (and, for Plan Years beginning before 2002, Matching Contributions) made on behalf of Non-Key Employees may not be taken into account for the purpose of satisfying the minimum contribution requirement under Code section 416.

### 2.3.5 Integration with Social Security - Profit Sharing Plans.

**(a)** If the Employer has elected in the Adoption Agreement that the Plan will be integrated with Social Security, then the applicable contributions plus Forfeitures will be allocated to Participants' Accounts as follows (provided that Steps One and Two, below, need only be applied in years in which the Plan is Top-Heavy):

STEP ONE: Contributions and Forfeitures will be allocated to each Participant's Account in the ratio that each Participant's Compensation bears to all Participant's Compensation, but not in excess of 3% of each Participant's Compensation.

STEP TWO: Any contributions and Forfeitures remaining after the allocation in Step One will be allocated to each Participant's Account in the ratio that each Participant's Compensation for the Plan Year in excess of the Integration Level bears to the excess compensation of all Participants, but not in excess of 3%.

STEP THREE: Any contributions and Forfeitures remaining after the allocation in Step Two (or starting with this Step Three if so elected in the Adoption Agreement, all contributions and Forfeitures) will be allocated to each Participant's Account in the ratio that the sum of each Participant's Compensation and Compensation in excess of the Integration Level bears to the sum of all Participants' Compensation and Compensation in excess of the Integration Level, but not in excess of the Maximum Profit Sharing Disparity Rate.

STEP FOUR: Any remaining contributions and Forfeitures will be allocated to each Participant's account in the ratio that each Participant's Compensation for the Plan Year bears to all Participants' Compensation for that year.

The Maximum Profit Sharing Disparity Rate is equal to the lesser of:

**(1)** 5.7% (minus the percentage of Compensation allocated in Step One, if any); or,

**(2)** 5.4% (minus the percentage of Compensation allocated in Step One, if any) if the Integration Level (IL) is more than 80% but less than 100% of the Taxable Wage Base (TWB) under section 230 of the Social Security Act at the beginning of the Plan Year; or

**(3)** 4.3% (minus the percentage of Compensation allocated in Step One, if any) if the IL is greater than 20% of the TWB, but not more than 80% of the TWB, and greater than $10,000.

**(b)** In the event the Plan is Top-Heavy and the Employer elects to use Steps Three and Four of Subsection (a) above, then allocations made due to Compensation greater than the Integration Level will be reduced proportionately to the extent necessary to provide all Employees entitled to a Top-Heavy Minimum Allocation with the required allocation.

### 2.3.6 Integration with Social Security - Money Purchase Plans.

**(a)** **Annual overall permitted disparity limit.** Notwithstanding the formula elected in the Adoption Agreement, for any Plan Year this Plan benefits any Participant who benefits under another qualified plan or simplified employee pension, as defined in Code section 408(k), maintained by the Employer that provides for permitted disparity (or imputes disparity), the Employer will contribute for each eligible Participant an amount equal to the Excess Contribution Percentage multiplied by the Participant's total Compensation. For purposes of this Subsection, the "Excess Contribution Percentage" is the percentage of Compensation at which Employer-derived contributions are made with respect to Compensation at or above the Integration Level in a defined contribution plan.

**(b)** **Cumulative permitted disparity limit.** The cumulative permitted disparity limit for a Participant is 35 total cumulative permitted disparity years. Total cumulative permitted years means the number of years credited to the Participant for allocation or accrual purposes under this Plan or any other qualified plan or simplified employee pension plan (whether or not terminated) ever maintained by the Employer. For purposes of determining the Participant's cumulative permitted disparity limit, all years ending in the same calendar year are treated as the same year. If the Participant has not benefited under a defined benefit or target benefit plan for any year beginning on or after January 1, 1994, the Participant has no cumulative disparity limit.

**(c)** The Maximum Money Purchase Disparity Rate is equal to the lesser of the Base Contribution Percentage or the applicable percentage determined in accordance with the table below.

If the Integration Level:

| **is more than** | **but not more than** | **the applicable percentage is:** |
|---|---|---|
| $0 | X* | 5.7% |
| X* of TWB | 80% of TWB | 4.3% |
| 80% of TWB | Y** | 5.4% |
| If TWB | | 5.7% |

*X = the greater of $10,000 or 20% of the TWB

**Y = any amount more than 80% of the TWB but less than 100% of the TWB.

If the Integration Level is equal to the Taxable Wage Base ("TWB"), the applicable percentage is 5.7%.

For purposes of this Subsection, the "Base Contribution Percentage" will be the percentage of Compensation at which Employer-derived contributions are made with respect to Compensation at or below the Integration Level in a defined contribution plan.

**(d)** **Top-Heavy Years.** In the event the Plan becomes Top-Heavy, the Employer will make an additional contribution to the Plan to provide the Minimum Top-Heavy Allocation pursuant to Section 2.3.4.

**2.3.7 Fail-Safe Allocation.** Unless elected otherwise in the Adoption Agreement, failure of both the coverage tests under section 410(b) of the Code requires correction using the principles set forth in this Section if such use is elected in the Adoption Agreement. Testing is done as of the last day of the Plan Year. Notwithstanding any provision of the Plan or Adoption Agreement to the contrary, if the Plan would otherwise fail to satisfy the requirements of Code section 410(b) and the regulations thereunder because Employer Contributions have not been allocated to a sufficient number or percentage of Participants for the Plan Year, and the right to receive a contribution is conditioned upon participation on the last day of the Plan Year or the completion of more than 500 Hours of Service, or conditioned upon membership in a certain Employee classification, an additional contribution will be made by the Employer and will be allocated to the Employer Accounts of affected Participants, considering all the applicable exclusions of Code sections 410(b)(3) and (4) subject to the following provisions:

**(a)** The NHCE Participants eligible to share in the allocation of the Employer's Contribution will be expanded to include the minimum number of NHCE Participants who are not otherwise eligible to the extent necessary to satisfy the ratio percentage test of Code section 410(b)(1)(B). The specific NHCE Participants who will become eligible are those NHCE Participants who are members of an eligible classification of Employees, who are actively employed on the last day of the Plan Year, but have not met the Plan's Hours of Service requirement.

These Participants will be given an allocation one Participant at a time beginning with the Participant with the

greatest number of Hours of Service and continuing in descending order until the ratio percentage test is passed. If two or more Participants have the same number of Hours of Service then the Participant with the highest Compensation will receive an allocation first. Fail-safe allocations will be given to the smallest number of Participants that allows the Plan to pass the ratio percentage test.

**(b)**   If the ratio percentage test is still not satisfied, the NHCE Participants eligible to share in the allocation will be further expanded to include the minimum number of NHCE Participants who are members of an eligible classification of Employees who are not employed on the last day of the Plan Year as is necessary to satisfy the ratio percentage test. The specific NHCE Participants who will become eligible are those NHCE Participants who have completed the greatest number of Hours of Service (in excess of 500 hours) during the Plan Year.

These Participants will be given an allocation one Participant at a time in descending order until the ratio percentage test is passed. If two or more Participants have been credited with the same number of Hours of Service then the Participant with the highest Compensation will receive an allocation first.

**(c)**   If the ratio percentage test is still not satisfied, the NHCE Participants eligible to share in the allocation of the Employer Contribution will be expanded to include the minimum number of NHCE Participants who are not otherwise eligible to the extent necessary to satisfy the ratio percentage test of Code section 410(b)(1)(B). The specific NHCE Participants who will become eligible are those NHCE Participants who are members of an ineligible classification of Employees, who are actively employed on the last day of the Plan Year, and have met the Plan's Hours of Service requirement.

These Participants will be given an allocation one Participant at a time beginning with the Participant with the greatest number of Hours of Service and continuing in descending order until the ratio percentage test is passed. If two or more Participants have the same number of Hours of Service then the Participant with the highest Compensation will receive an allocation first. Fail-Safe allocations will be given to the smallest number of Participants that allows the Plan to pass the ratio percentage test.

**(d)**   If the ratio percentage test is still not satisfied, the NHCE Participants eligible to share in the allocation will be further expanded to include the minimum number of NHCE Participants who are members of an ineligible classification of NHCE Employees who are employed on the last day of the Plan Year but have not met the hours requirement of the Plan as is necessary to satisfy the ratio percentage test. The specific NHCE Participants who will become eligible are those NHCE Participants who have completed the greatest number of Hours of Service during the Plan Year. These Participants will be given an allocation one Participant at a time in descending order until the ratio percentage test is passed. If two or more Participants have been credited with the same number of Hours of Service then the Participant with the highest Compensation will receive an allocation first.

**(e)**   If the ratio percentage test is still not satisfied, the NHCE Participants eligible to share in the allocation will be further expanded to include the minimum number of NHCE Participants who are members of an ineligible classification of NHCE Employees who are not employed on the last day of the Plan Year as is necessary to satisfy the ratio percentage test. The specific NHCE Participants who will become eligible are those NHCE Participants who have completed the greatest number of Hours of Service (in excess of 500 hours) during the Plan Year. These Participants will be given an allocation one Participant at a time in descending order until the ratio percentage test is passed. If two or more Participants have been credited with the same number of Hours of Service then the Participant with the highest Compensation will receive an allocation first.

**(f)**   The Employer may elect in the Adoption Agreement whether to apply this Section 2.3.7. If the Employer elects to apply this section 2.3.7 then for each Plan Year it is used, a list of each Participant benefiting on account of this Section and the associated percentage or dollar amount of Employer Contribution will be prepared for each Plan Year and provided to the Plan Administrator or Trustee not later than the time prescribed by law for filing the return for such applicable taxable year (including any extensions), and will be maintained as part of the administrative records of the Plan.

**2.3.8  Contributions on Behalf of Disabled Participants.**  If elected in the Adoption Agreement by the Employer, Employer Contributions will be made to the Plan on behalf of each Participant who has a Disability.

**2.3.9 Treatment in the Case of Death or Disability Resulting from Active Military Service.**

**(a)**    In the Adoption Agreement, the Employer may elect for benefit accrual purposes to treat an individual who dies or becomes disabled (as defined under the terms of the Plan) while performing Qualified Military Service, with respect to the Employer maintaining the Plan, as if the individual had resumed employment in accordance with the individual's reemployment rights under Code section 414(u) on the day preceding death or disability (as the case may be) and terminated employment on the actual date of death or disability.  In the case of any such treatment, and subject to subparagraphs (b) and (c) of this Subparagraph, any full or partial compliance by the Plan with respect to the benefit accrual requirements of Code section 414(u)(8) with respect to such individual, will be treated for purposes of Code section 414(u)(1) as if such compliance were required under such section.

**(b)**    **Nondiscrimination Requirements.** The provisions of this Section 2.3.9 will apply only if all individuals performing Qualified Military Service with respect to the Employer maintaining the Plan (as determined under Code sections 401(b), (c), (m), and (o)) who die or became disabled as a result of performing Qualified Military Service prior to reemployment by the Employer are credited with service and benefits on reasonably equivalent terms.

**(c)**    **Determination of Benefits.** The amount of Voluntary Employee Contributions and the amount of Elective Deferrals of an individual treated as reemployed under this Section 2.3.9 for purposes of applying Code section 414(u)(8)(C) will be determined on the basis of the individual's average actual Voluntary Employee Contributions or Elective Deferrals for the lesser of:

**(1)**    the 12-month period of service with the Employer immediately prior to Qualified Military Service; or

**(2)**     the actual length of continuous service with the Employer, if service with the Employer is less than such 12-month period.

# ARTICLE IV

# <u>VESTED BENEFITS</u>

**2.4.1  Vesting.**  A Participant will at all times be 100% vested and have a nonforfeitable interest in their Elective Deferral, Catch-up, Qualified Non-Elective, Qualified Matching, Prevailing Wage, Deductible Voluntary and Voluntary Accounts.  In addition, ADP Test Safe Harbor Contributions made pursuant to Section 2.9.3 of the Plan will be 100% vested at all times. The vested and nonforfeitable interest of the Participant in their Controlled Account will be determined by reference to the Account from which the funds were originally transferred.  The vested and nonforfeitable interest in a Participant's Employer and Matching Accounts will be determined subject to the vesting schedule selected in the Adoption Agreement and will not increase after the date the Participant terminates employment.

If the "6-year tired vesting schedule" is specified in the Adoption Agreement, the vested and nonforfeitable interest in a Participant's Account associated with the source will vest according to the following schedule:

| Years of Vesting Service | Percentage |
|:---:|:---:|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | or more 100% |

For the purpose in determining the vested and nonforfeitable interest of a Participant, all of an Employee's Years of Vesting Service with the Employer or Related Employers maintaining the Plan will be applied to the vesting schedule selected for the Plan, unless otherwise elected in the Adoption Agreement.

Each period of Qualified Military Service served by an individual is, upon reemployment deemed to constitute service with the Employer for the purpose of determining the non-forfeitability of the Participant's Account balances under the Plan.

Changes in Vesting Schedule.  The Employer may elect to amend the vesting schedule in the Adoption Agreement, provided the nonforfeitable interest of the Participant in their Employer and Matching Accounts is not less than the nonforfeitable interest in such Accounts under the Plan prior to the adoption the amendment.

Election of Former Schedule.  Furthermore, each Participant with at least 3 Years of Service with the Employer may elect within a reasonable period after the adoption of an amendment changing the vesting schedule, to have their nonforfeitable percentage computed under the Plan without regard to such amendment.  An election will be permitted by such a Participant, if the Participant has at least one Hour of Service in any Plan Year beginning on or after the effective date of the amendment.  The period during which the election may be made will commence with the date the amendment is adopted or deemed to be made and will end on the latest of: (1) 60 days after the amendment is adopted; (2) 60 days after the amendment becomes effective; or (iii) 60 days after the Participant is issued written notice of the amendment by the Employer. With respect to benefits accrued as of the later of the adoption or effective date of such amendment, the vested percentage of each Participant will be the greater of the vested percentage under the old vesting schedule or the vested percentage under the new vesting schedule.

**(a)  Normal Retirement Age or Postponed Retirement.**  A Participant, on attaining their Normal Retirement Age will be 100% vested and have a nonforfeitable interest in their Employer and Matching Accounts.  If a

Participant continues in active employment following their Normal Retirement Age, they will continue to participate under the Plan.

**(b)    Disability.**  If a Participant terminates employment prior to their Normal Retirement Age due to a Disability, they will be vested and have a nonforfeitable interest in their Employer and Matching Accounts as elected in the Adoption Agreement.

**(c)    Death.**  In the event of the death of a Participant before termination of employment with the Employer and before Normal Retirement Age, the Participant will be vested and have a nonforfeitable interest in their Employer and Matching Accounts as elected in the Adoption Agreement.

**(d)    Termination of Plan.**  In the event of Plan termination (including termination resulting from a complete discontinuance of contributions by the Employer), each Participant employed by the Employer as of the date of such termination will be 100% vested and have a nonforfeitable interest in all of their Accounts.  In the event of a partial Plan termination, each Participant employed by the Employer with respect to whom such partial termination has occurred will be 100% vested and have a nonforfeitable interest in all of their Accounts.

**(e)    Early Retirement, Resignation, or Discharge.**  If the employment of a Participant terminates by reason of early retirement, resignation, or discharge prior to their Normal Retirement Age, they will be vested and have a nonforfeitable interest in a percentage of their Employer and Matching Accounts taking into account all of their Years of Vesting Service as of such termination date in accordance with the schedule set forth in the Adoption Agreement.

**(f)    All Other Times.**  A Participant will be vested and have a nonforfeitable interest in a percentage of their Employer and Matching Accounts determined by taking into account all of their Years of Vesting Service in accordance with the schedule set forth in the Adoption Agreement.

**(g)    Elapsed Time Method.**  A Participant will be vested and have a nonforfeitable interest in a percentage of their Employer and Matching Accounts determined by taking into account all of their Years of Vesting Service in accordance with the schedule set forth in the Adoption Agreement.

**2.4.2  Leave of Absence.**  The Plan Administrator will not treat a temporary cessation from active employment with the Employer pursuant to an authorized leave of absence in accordance with the nondiscriminatory policy of the Employer, whether occasioned by illness, military service, or any other reason, as either a termination of employment or a Break in Service so long as the Employee returns to employment in a manner consistent with the authorized leave of absence policy.

**2.4.3  Reemployment.**  Unless otherwise elected by the Employer in the Adoption Agreement, in the case of a Participant who has 5 or more consecutive Breaks in Service, all Years of Vesting Service after such Breaks in Service will be disregarded for vesting the Employer Account balance that accrued before such breaks, however, both pre-break and post-break service will count for vesting the Employer Account balance that accrues after such breaks.

Account balances that accrued before and after such Break in Service will share in the earnings and losses of the Trust Fund.

If a Participant receives a distribution from their Account when they have less than a 100% vested and nonforfeitable interest in the Account and the Participant resumes employment covered under the Plan, the Plan Administrator will restore the Participant's Employer-derived Account balance to the amount on the date of distribution if the Participant repays to the Plan the full amount of the distribution attributable to Employer Contributions before the earlier of 5 years after the first date on which the Participant is subsequently reemployed by the Employer, or the date the Participant incurs 5 consecutive Breaks in Service following the date of the distribution.  If a Participant is deemed to receive a distribution pursuant to this Section, and the Participant resumes employment covered under the Plan before the date the Participant incurs 5 consecutive Breaks in Service, upon the reemployment of such Participant, the Plan Administrator will restore the Employer Account balance of the Participant to the amount on the date of such deemed distribution as of the date of the reemployment of such Participant.

**2.4.4  Forfeitures.**  Unless otherwise elected in the Adoption Agreement, if a Participant terminates service and elects, in accordance with the provisions of the Plan, to receive the value of the their vested Account balance, the non-vested portion will be treated as a Forfeiture as of the earlier of the last day of the Plan Year in which the Plan Administrator distributes the Participant's entire vested interest, or the last day of the Plan Year of the 5th consecutive Break in Service.  If the Participant elects to receive less than the entire vested portion of the Account balance derived from Employer contributions, the portion forfeited will equal the total non-vested portion of such Account multiplied by a fraction, the numerator of which is the distributed amount attributable to Employer contributions and the denominator of which is the entire vested portion of such Account.

If a Participant terminates service, and the value of the Participant's vested Account balance derived from Employer and Employee contributions is not greater than $5,000 (or a dollar amount that is less, if elected in the Adoption Agreement), and the Participant receives a distribution of the value of the entire vested portion of such Account balance, the Plan Administrator will treat the non-vested portion as a Forfeiture, unless elected otherwise in the Adoption Agreement, as of the earlier of the last day of the Plan Year in which the Plan Administrator distributes the Participant's entire vested interest, or the last day of the Plan Year of the 5th consecutive Break in Service.  If elected in the Adoption Agreement, the portion of the Account balance that is attributable to rollover contributions (and earnings allocable thereto) within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16), will be excluded from the Participant's Account balance for purposes of this Section.  If a Participant would have received a distribution under the preceding but for the fact that the Participant's vested Account balance exceeded $5,000, or such lesser amount as elected above, when the Participant terminated service and if at a later time such Account balance is reduced such that it is not greater than $5,000, or such lesser amount as elected above, the Participant will receive a distribution of such Account balance and the Plan Administrator will treat the non-vested portion as a Forfeiture.  If the value of a Participant's vested Account balance is zero, the Participant will be deemed to have received a distribution of such vested Account balance. A Participant's vested Account balance will not include accumulated deductible Employee contributions within the meaning of Code section 72(o)(5)(B) for Plan Years beginning prior to January 1, 1989.

Unless otherwise elected in the Adoption Agreement, the Plan Administrator will allocate such Forfeiture in the same manner as a contribution by the Employer for the year in which said Forfeiture occurred.  For each Plan Year that Forfeitures are allocated, the Plan Administrator will designate the specific Employer Contribution or Contributions that the Forfeitures reduce or supplement. The Employer may elect in the Adoption Agreement to use Forfeitures to offset administrative expenses of the Plan to the extent the expenses are Plan expenses and not settlor expenses and any remaining Forfeitures will be allocated in the same manner as a contribution by the Employer for the year in which said Forfeiture occurred. Forfeitures that are used to supplement a contribution will increase that contribution that was otherwise specified for the Plan Year. Forfeitures that are used to reduce a fixed required contribution reduce the amount that the Employer would otherwise have to contribute to the Plan for the Plan Year. A Participant's forfeitable amount must remain in the Participant's account until used as a Forfeiture. The forfeitable amount must be exhausted by the end of the next plan year, within the limitations of the Code and Treasury Regulations, but in any event, as soon as administratively feasible.

If a Participant is reemployed following a Break in Service and is entitled to restoration of any amount of their Account that was forfeited because of such Break in Service, the Plan Administrator will restore such amount in the manner specified in the Adoption Agreement.

# ARTICLE V

# <u>DISTRIBUTIONS</u>

**2.5.1  Distributable Benefit.**

**(a)**  When a Participant incurs a severance of employment (for any reason) and they is no longer employed by the Employer or another Related Employer, they or their Beneficiary will be entitled to a benefit equal to the vested and nonforfeitable interest in their Accounts as of the Distribution Determination Date.  This will include a Disability benefit if so elected in the Adoption Agreement. Such Accounts will include the allocable share of contributions and Forfeitures, if any, that may be allocated to said Accounts as of such Distribution Determination Date and will be determined after making the adjustments for which provision is made in the Plan.

**(b)**  If the value of the Participant's vested and nonforfeitable interest in the Plan at the time of their termination of employment is zero, the Participant will be deemed to have received a distribution of such interest as their Distributable Benefit as of the date their employment terminated.

**(c)**  **Minimum Distributable Benefit.** If a Participant terminates service, and the value of the Participant's vested Account balance derived from Employer Contributions is zero, the Employer may elect in the Adoption Agreement to provide such Participant with a minimum Distributable Benefit.

**(d)**  **Distribution Determination Date.** For purposes of determining the amount to be distributed, the Distribution Determination Date will be determined in the manner specified in the Adoption Agreement.

**(e)**  **Distributions following Distribution Determination Date.** Subject to the necessity, if any, of obtaining the consent of a Participant and spouse, distribution of a Participant's Distributable Benefit will commence within a reasonable period after the Distribution Determination Date, unless otherwise elected by the Participant in accordance with the provisions of the Plan or as required by the provisions of the Plan. A distribution will not be made to a Participant if they are reemployed prior to the date their benefit would have been distributed.

**2.5.2  Forms of Distribution.**  Subject to the Employer's elections in the Adoption Agreement distribution will be made by one of the following methods, as determined in accordance with the election of the Participant (or in the case of death, their Beneficiary) with such spousal consents as may be required by law.

Notwithstanding any election in the Adoption Agreement, Beneficiaries may elect to receive Required Minimum Distributions in the form of installment payments.

**(a)**  **Lump Sums.** Payments made in a single taxable year representing the Participant's entire Distributable Benefit.

If the Participant fails to elect a distribution option and the Participant's vested Account balance is at or below the Mandatory Cash-out threshold of $5,000, (or lesser threshold amount, elected in the Adoption Agreement), then in lieu of a lump sum distribution, payment will be made pursuant to Subsection 2.5.3.(c) Mandatory Cash-out. The Employer may set a minimum Account balance to which this will apply. This Mandatory Cash-out provision applies only if the terminating Participant fails to request affirmatively a cash payment, or a Direct Rollover to another qualified plan, (or an IRA designated by the terminating Participant). If the value of a Participant's vested Account balance exceeds the threshold amount, an immediate cash-out will not be made unless the Participant, and if applicable, their spouse, or their Beneficiary consent to such distribution.

**(b)**  **Installments.**

**(1)**  Payments made in substantially equal annual, quarterly, or monthly installments over a period of more than 1 taxable year but not in excess of the period designated in the Adoption Agreement, or if permitted, as selected by the Participant (provided that such period is not greater than the Participant's life expectancy or

-44-

the joint life expectancy of Participant and the Participant's Designated Beneficiaries), plus accrued net income. If distribution is to be made in installments, the Plan Administrator may transfer the undistributed portion of the Distributable Benefit to a Segregated Account, from which installment payments will thereafter be withdrawn from time to time.

    **(2)**   **Partial Nonperiodic Distribution.** If elected in the Adoption Agreement, ad hoc distributions at the times and in the amounts requested by the Participant or Beneficiary may be made subject to the limits, if any, in the Adoption Agreement.

**(c)**   **Annuities.** Payments made by the purchase and delivery of a single premium, nontransferable, fully refundable, annuity contract issued by a legal reserve life insurance company. Payments must provide for equal periodic payments for the life of the Participant, or upon the Participant's death for payments to continue to the Participant's Designated Beneficiary over a specified period as may be designated in the Adoption Agreement and as selected by the Participant. Notwithstanding the Employer may elect a period certain annuity distribution option in the Adoption Agreement, the annuity under this election will be for a fixed duration that is less than the Participant's life expectancy as of the Annuity Starting Date. Such annuity will conform to all provisions set forth herein. Any refund feature under such annuity contract following the death of the Participant will inure to the benefit of the Participant's Beneficiary.

Notwithstanding, If the Distributable Benefit is subject to the funding standards of Code Section 412, the distribution to a married Participant will be made in the form of a Qualified Joint and Survivor Annuity or in the form of a life annuity to an unmarried Participant, subject to the terms and provisions under Subsection 2.5.6.

**(d)**   **Alternative Distribution Methods.** Any alternative distribution method of equivalent value that was contained in the Plan at any time on or after the first day of the first Plan Year beginning after 1988 to which the Participant and spousal consents.

**2.5.3  Methods of Distribution.**  Subject to the provisions of Section 2.5.7 and 2.5.8 below, any security interest in a loan from the Plan for which any necessary spousal consent has been obtained (to the extent such security interest is used as repayment of the loan), distribution will be made by one of the following methods, as determined in accordance with the election of the Participant (or in the case of death, their Beneficiary) with such spousal consents as may be required by law. Notwithstanding any restrictions on optional forms of distribution in the Adoption Agreement, active Participants may elect to receive Required Minimum Distributions in the form of installment payments in the amount of the Required Minimum Distribution.

**(a)**   **Lump Sum Payment to Participant with 60-Day Rollover Option.**  The Plan may pay a Distributable Benefit in a single sum distribution directly to a Participant, subject to the Spousal Consent requirements under Subsection 2.5.5 and the Automatic Rollover requirements under Subsection 2.5.3(d) below.  Upon receipt and within 60 days, a Participant may elect to transfer, rollover, or deposit to an individual retirement account or another qualified plan all or a portion of the Distributable Benefit that is an Eligible Rollover Distribution.

**(b)**   **Direct Rollovers.**  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Participant's election under the Plan, a Participant may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an Eligible Rollover Distribution that is equal to at least $500 paid directly to an Eligible Retirement Plan specified by the Participant in a Direct Rollover. If an Eligible Rollover Distribution is less than $500, a Participant may not make the election described in the preceding sentence to roll over a portion of the Eligible Rollover Distribution.

**(c)**   **Mandatory Cash-out.**  The Employer may elect in the Adoption Agreement to require the mandatory distribution of a Participant's vested Account balance if its value, determined as of a date following the Participant's date of termination of employment with the Employer, is equal to no more than $5,000 (or some lesser threshold amount as elected in the Adoption Agreement). If a distribution is required under this provision, the Participant will receive an immediate cash-out of their vested Account balance and no further benefits will be payable from the Plan. If the value of a Participant's vested Account balance exceeds the threshold amount, an immediate cash-out will not be made unless the Participant, and if applicable, their spouse, or their Beneficiary consent to such distribution.

The Employer may elect in the Adoption Agreement to exclude that portion of a Participant's Account balance that is attributable to Rollover contributions (and earnings allocable thereto) within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16) in the determination of the Participant's nonforfeitable Account balance.

**(d)**  **Automatic Rollovers.**  Effective for distributions on and after March 28, 2005, in the event a Mandatory Cash-out distribution is greater than $1,000, or some lesser amount, in accordance with the provisions of Subsection 2.5.3(c), if the Participant does not elect to have such distribution paid directly to an Eligible Retirement Plan specified by the Participant in a Direct Rollover or to receive the distribution directly in accordance with Subsection 2.5.3(a), then the Plan Administrator will pay the distribution in a Direct Rollover to an individual retirement plan designated by the Plan Administrator. The Plan Administrator will select an IRA trustee, custodian, or issuer (the "trustee") that is unrelated to the Employer, will establish the IRA with that trustee on behalf of the terminating Participant who fails affirmatively to elect a Direct Rollover of a cash distribution, and make the initial investment choices for the account. For purposes of determining whether a mandatory distribution is greater than $1,000, the portion of the Participant's distribution attributable to any rollover contribution is included.

**2.5.4  Commencement of Distributions.**  For purposes of determining when a Distributable Benefit can be distributed under this Article V, unless otherwise elected in the Adoption Agreement, by the Employer:

**(a)**  **Immediate Distribution.**  A distribution to a Participant whose vested Account balance is Immediately Distributable. A Participant's Account Balance is Immediately Distributable if any part of the Account balance could be distributed to the Participant, (or surviving spouse), before the Participant attains, (or would have attained if not deceased), the later of age 62 or their Normal Retirement Age.

    **(1)**  **If the account is distributable,** due to the Participant's death, Disability, or attainment of Early or Normal Retirement Age, the Participant may elect (or their Beneficiary may elect) to begin distribution of their Distributable Benefit within a reasonable period after the Distribution Determination Date. A Participant (or their Beneficiary), when permitted under the terms of the Plan, may elect a deferred Distribution under Subsection (b) below.

    **(2)**  **If the account is immediately distributable,** the Participant will have the distribution of their Distributable Benefit governed by Subsection (b) below.

**(b)**  **Deferred Distribution.**  Except in the case of amounts subject to Subsection 2.5.6(l), or mandatory distributions for which a Participant's consent is not required, a Participant with a Distributable Benefit in excess of $5,000 or the specified Mandatory Cash-out threshold selected by the Employer in the Adoption Agreement, a Participant may elect to delay the commencement of distributions. Upon such an election, the distribution of a Participant's Distributable Benefit will be deferred and must commence no later than the sixtieth (60th) day after the last day of the Plan Year in which the following occurs:

    **(1)**  The Participant attains the earlier of age sixty-five (65) or the Normal Retirement Age;

    **(2)**  The Participant reaches the tenth (10th) anniversary of their participation in the Plan; or

    **(3)**  The Participant terminates their employment with the Employer.

A Participant who terminates employment before satisfying the age requirement for Normal Retirement, or Early Retirement Age, but has satisfied any service requirement will be entitled to a distribution of their Distributable Benefit in accordance with Subsection (a) above upon attaining such age.

The Plan Administrator will notify the Participant and the Participant's spouse of the right to defer any distribution while the Participant's Account balance in the Plan is Immediately Distributable, as defined in Subsection 2.5.7(a). Such notice will be given to the Participant at least 30, but no more than 180 days (90 days for Plan Years beginning before January 1, 2007) before the distribution. A Participant and the Participant's

spouse may elect a distribution commencing less than 30 days after the notice is provided to the Participant, if the notice clearly indicates that the Participant has at least 30 days to decide whether to consent to the distribution. The failure of a Participant or the Participant's spouse to consent to a distribution while a benefit is Immediately Distributable will be deemed to be an election to defer commencement of benefits under this Section. If the Plan meets the requirements of Subsection 2.5.5(c), only the Participant must consent to the distribution of an Account balance that is Immediately Distributable.

Such distribution may commence less than 30 days after the notice required under Treasury Regulations section 1.411(a)-11(c) is given, provided that:

**(1)**    The Plan Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and if applicable, a particular distribution option),

**(2)**    The Participant, after receiving the notice, affirmatively elects a distribution,

**(3)**    The distribution commences more than 7 days after such explanation is provided,

**(4)**    The Participant is permitted to revoke any affirmative distribution election at least until the Annuity Starting Date or, if later, at any time prior to the expiration of the 7 day period that begins the day after the explanation of the Qualified Joint and Survivor Annuity is provided to the Participant, and

**(5)**    The Annuity Starting Date is a date after the date that the written explanation was provided to the Participant.

**(c)**    **Advance Distributions.** If the Employer elects in the Adoption Agreement to permit advance distribution to a Participant or their Beneficiary after their employment has terminated or after they reach Normal Retirement Age but continues their employment, and before they are otherwise entitled to distribution of their Distributable Benefit but in no event earlier than a reasonable period following the Distribution Determination Date, the Trustee upon the request of the Participant or Beneficiary will make advance distributions to them or to their Beneficiary. The aggregate of such advance distributions will not exceed the sum of the vested and nonforfeitable interest in the Participant's Accounts.

If the Employer elects in the Adoption Agreement to forfeit non-vested amounts immediately upon distribution of the Employee's entire vested Account balance on termination of service, an Employee who terminates service and elects to receive the value of the Employee's vested Account balance will forfeit the non-vested portion. If the Employee elects to receive a distribution of less than the entire vested portion of the Account balance derived from Employer Contributions, the part of the non-vested portion that is treated as a Forfeiture is the total non-vested portion multiplied by a fraction, the numerator of which is the amount of the distribution attributable to Employer Contributions and the denominator of which is the total value of the vested Employer derived Account balance.

Except as provided in the preceding paragraph, if a Participant receives a distribution that reduces the balance in their Employer Account when they have less than a 100% vested and nonforfeitable interest in the Account, the amount, if any, of the Participant's vested and nonforfeitable interest in the undistributed balance of said Account at any relevant time will not be less than an amount ("X") determined by the formula: $X = P (AB + (R \times D)) - (R \times D)$. For purposes of applying the formula: P is the vested percentage at the relevant time; AB is the Account balance at the relevant time; D is the amount of the distribution; and R is the ratio of the Account balance at the relevant time to the Account balance after distribution.

**(d)**    **Distribution upon Plan Termination.** In the event of Plan termination (including termination resulting from a complete discontinuance of contributions by the Employer), the Distribution Determination Date will be the date of such termination. In the event of a partial Plan termination, the Distribution Determination Date for each Participant with respect to whom such partial termination has occurred will be the last day of the Plan Year coinciding with or immediately following the date of such partial termination.

**(e)** **Distribution upon Death.**  In the event of the Participant's death, the Distributable Benefits will be paid to the Participant's Designated Beneficiary according to the Required Minimum Distribution provision under Section 2.5.7.  If the Participant dies before the distribution has begun under the Required Beginning Date of Subsection 2.5.7(b), unless the Plan or a Participant's Account is subject to Qualified Joint and Survivor Annuity requirement, then a Qualified Preretirement Survivor Annuity will be payable to the Participant's Spouse, unless the Participant and Spouse elects to waive subject to Subsection 2.5.6(k).

Notwithstanding, the survivors of any Participant who dies on or after January 1, 2007, while performing Qualified Military Service, are entitled to any additional benefits (other than contributions relating to the period of Qualified Military Service, but including vesting service credit for such period and any ancillary life insurance or other survivor benefits) that would have been provided under the Plan had the Participant resumed employment on the day preceding the Participant's death and then terminated employment on account of death.

**(f)** **Distribution upon Disability.**  In the event the Participant is determined to be Disabled, the Participant will be entitled to receive their Distributable Benefit within a reasonable period as elected by the Employer in the Adoption Agreement.

If the Participant becomes Disabled after termination of employment, they will be entitled to commence distribution of their vested Account balance as if they became Disabled prior to termination of employment, however their vested Account balance will not increase if the Participant becomes Disabled after the termination of their employment.

**2.5.5  General Distributions Requirements.**  Where a Plan permits a distribution under the terms of this Article, the Plan Administrator must notify the Participant (or in the event of the Participant's death, the Participant's spouse or survivor) of their right to elect a distribution (or the right to elect an optional forms of payment) under the terms of the Plan.

**(a)** **Notice and Consent.** The Plan Administrator will notify the Participant of their right to a distribution by distributing the 402(f) Safe Harbor Tax Notice provided by the Internal Revenue Service and request an affirmative election to one of the distribution options under the Plan. The consent notice must be provided at least 30 days but in no case more than 180 days (90 days for Plan Years beginning before January 1, 2007) before the distribution commence.

Generally, no payment can be made under the Plan until at least 30 days after the Participant has received the consent notice. The consent notice must clearly inform the Participant that they have:

**(1)** a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and if applicable, a particular distribution option),

**(2)** a right to defer their distribution under Subsection 2.5.4, until they reach the Plan's NRA and/or commencement date as elected by the employer in the Adoption Agreement, and, for Plan Years beginning after December 31, 2006, the consequences of failing to defer any distribution, and

**(3)** a right to elect a Direct Rollover under Subsection 2.5.3.(b).

After receipt of the consent notice, the Participant has the right to waive all or a portion of the unexpired 30-day notice period and affirmative elects a distribution under the terms of the Plan.

Notwithstanding, where the Participant's vested Account balance derived from Employer and Employee Contribution is less than $5,000 or some lesser amount elected by the Employer in the Adoption Agreement, the Participant will not be required to consent to a certain form or method of distribution or the waiver of the 30 day notice period.  Absent an affirmative election the Participant's distribution will be made as an Automatic Rollover under Subsection 2.5.3(d).

**(b)** **Spousal Consent.** If payment in the form of a Qualified Joint and Survivor Annuity is not required with respect to a Participant and the value of a Participant's vested Account balance derived from Employer and Employee contributions exceeds $5,000, and the Account balance is Immediately Distributable, then the Participant and the

Participant's spouse must consent to any distribution of such Account Balance prior to reaching the Normal Retirement Age under the Plan. If payment in the form of a Qualified Joint and Survivor Annuity is required with respect to a Participant and the value of a Participant's vested Account balance derived from Employer and Employee contributions exceeds $5,000, and the Account balance is Immediately Distributable, then the Participant and the Participant's spouse must consent to any distribution of such Account Balance prior to reaching the Normal Retirement Age under the Plan. The notice and consent requirements under Subsection 2.5.5 will apply.

Neither the consent of the Participant nor the Participant's spouse will be required to the extent that a distribution is required to satisfy Code sections 401(a)(9) or 415.

**(c)** **Exception to Spousal Consent Requirements.** If a plan designated as either a Cash or Deferred Arrangement or Profit Sharing Plan, unless otherwise elected by the Employer in the Adoption Agreement, a Participant will not be required to obtain the consent of their spouse for any distribution or Participant loan if the following conditions are satisfied:

**(1)** The Participant does not or cannot elect payments in the form of a life annuity; and

**(2)** On the death of a Participant, the Participant's vested Account balance will be paid to the Participant's surviving spouse. If there is no surviving spouse or if the surviving spouse has consented in a manner conforming to a qualified election, then the Participant's vested Account balance will be paid to the Participant's Designated Beneficiary.

Notwithstanding, if a Participant's vested Account Balance in a plan designated as a Profit Sharing Plan or Cash or Deferred Arrangement contains any assets that were a direct or indirect transferee of a defined benefit plan, money purchase plan or target benefit plan, then spousal consent will be required for that portion of the Plan that is subject to the joint and survivor annuity requirements of Code sections 401(a)(11) and 417.

**2.5.6 Annuity and Consent Requirements.** If the only forms of distribution selected by the Employer in the Adoption Agreement are annuities or if the Plan or Distributable Benefit is subject to the minimum funding requirement of Code section 412, the Participant's distribution will be subject to joint and survivor provisions of Code sections 401(a)(11) and 417.

Notwithstanding the other provisions of this Section, if the Plan is designated in the Adoption Agreement as a Cash or Deferred Profit Sharing Plan or a Profit Sharing Plan and the Participant does not select a life annuity distribution option, the Qualified Joint and Survivor Annuity and Qualified Preretirement Survivor Annuity forms of distribution will not be available, except in the case of transfers under Subsection 3.9.3(b). However, a Participant's surviving spouse will be entitled to elect distribution of the Participant's vested Account balance in the manner provided by Section 3.6.3.

**(a)** **Automatic Qualified Joint and Survivor Annuity.** If benefits in the form of a life annuity become payable to a married Participant who:

**(i)** Begins to receive payments under the Plan on or after Normal Retirement Age; or

**(ii)** Dies on or after Normal Retirement Age while still working for the Employer; or

**(iii)** Begins to receive payments on or after the qualified Early Retirement Age; or

**(iv)** Separates from service on or after attaining Normal Retirement Age (or the qualified Early Retirement Age) and after satisfying the eligibility requirements for the payment of benefits under the Plan and thereafter dies before beginning to receive such benefits;

then such benefits will be received under this Plan in the form of a Qualified Joint and Survivor Annuity, unless the Participant has elected otherwise during the election period. The election period must begin at least 6 months before the Participant attains qualified Early Retirement Age and end not more than 90 days before the commencement of benefits. Any election hereunder will be in writing and may be changed by the Participant at

any time.

**(b)** **Terms of Annuity Contracts.** Any annuity contract distributed from the Plan must be nontransferable. The terms of any annuity contract purchased and distributed by the Plan to a Participant or a Participant's spouse will comply with the requirements of the Plan as elected by the Employer in the Adoption Agreement.

**(c)** **Survivor Annuity.** If elected by the Employer in the Adoption Agreement the Plan will provide an immediate annuity for the life of the Participant and if the Participant is married, a survivor annuity for the life of the spouse which is not less than 50% (or a higher percentage as selected by the employer in the Adoption Agreement).

Unless a survivor annuity form of benefit is waived, pursuant to a qualified election within the applicable election period, a married Participant's vested Account balance will be applied toward the purchase of a Qualified Joint and Survivor Annuity (QJSA) and an unmarried Participant's vested account balance will be applied toward the purchase of a Straight Life Annuity (SLA). The Participant may elect to receive another form of payment or to receive a Qualified Optional Survivor Annuity within the applicable election period and waive the survivor annuity payments under the Plan.

A Qualified Optional Survivor Annuity (QOSA) is an optional form of benefit that provides a survivor annuity based on the survivor annuity provided under the Plan's Qualified Joint and Survivor Annuity as described in Subsection 2.5.6(j).

If the married Participant dies before the annuity start date, then the Participant's vested Account balance will be applied toward the purchase of a Qualified Pre-retirement Survivor Annuity (QPSA). The value of the Qualified Pre-retirement Survivor Annuity will not be less than the amount that would have been payable under the Qualified Joint and Survivor Annuity form of benefit. The surviving spouse may receive a payment under the Qualified Pre-retirement Survivor Annuity not later than the month in which the Participant would have attained the earliest retirement date under the Plan. Notwithstanding, the surviving spouse may elect to have such annuity distributed within a reasonable period after death.

**(d)** **Exception if Participant is not Married for One Year.** If the "One Year Marriage Rule" is elected in the Adoption Agreement, notwithstanding the foregoing, the benefits under the Plan will not be provided in the form of a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity unless the Participant and their spouse have been married throughout the 1 year period ending on the earlier of the Participant's Annuity Starting Date or the date of the Participant's death.

If a Participant marries within 1 year before the Annuity Starting Date and the Participant and their spouse in such marriage have been married for at least a 1 year period ending on or before the date of the Participant's death, the Participant and such spouse will be treated as having been married throughout the required period. A former spouse will be treated as the spouse or surviving spouse and a current spouse will not be treated as the spouse or surviving spouse, to the extent provided under a Qualified Domestic Relations Order as described in Code section 414(p).

**(e)** **Notice and Consent to Distributions.** The Plan Administrator will notify the Participant and the Participant's spouse of the right to elect this form of distribution or the right to elect an optional form under the terms of the Plan. Such notification will include a general description of the material features and an explanation of the relative values of the optional forms of benefit available under the Plan in a manner that would satisfy the notice requirements of Code section 417(a)(3) and within a reasonable time before the Annuity Start Date.

**(f)** **Written Explanations of Qualified Joint and Survivor Annuity.** In general, the Plan Administrator will provide each Participant, with a written explanation of:

**(1)** The terms and conditions of a Qualified Joint and Survivor Annuity and of the Qualified Optional Survivor Annuity;

**(2)** The Participant's right to make and the effect of an election to waive the Qualified Joint and Survivor Annuity form of benefit;

**(3)**    The rights of the Participant's spouse to consent to a Participant's election; and

**(4)**    The right to make and the effect of a revocation of an election.

The written explanation will comply with the requirements of section 1.417(a)(3)-1 of the Income Tax Regulations.

**(g)    Applicable Election Period (QJSA).**  For the purpose of a Qualified Joint and Survivor Annuity the applicable election period will be no less than 30 days and no more than 180 days (90 days for Plan Years beginning before January 1, 2007) before the Annuity Starting Date with a written explanation of the survivor annuity option. During this period the Participant may elect a Qualified Optional Survivor Annuity.

**(h)    Written Explanation of Qualified Preretirement Survivor Annuity.** The Plan Administrator will provide to each Participant within the applicable election period, a written explanation of a Qualified Preretirement Survivor Annuity comparable to that provided with respect to a Qualified Joint and Survivor Annuity percentage elected in the Plan. The written explanation will comply with the requirements of section 1.417(a)(3)-1 of the Income Tax Regulations.

**(i)    Applicable Election Period (QPSA).**  The Applicable election period for a Qualified Preretirement Survivor Annuity means with respect to a Participant, the later of the following periods:

**(1)**    The period beginning with the first day of the Plan Year in which the Participant attains age 32 and ending with the close of the Plan Year preceding the Plan Year in which the Participant attains age 35.

**(2)**    A reasonable period ending after the individual becomes a Participant.

**(3)**    A reasonable period ending after the Plan ceases to fully subsidize costs.

**(4)**    A reasonable period ending after Code section 401(a)(11) first applies to the Participant.

**(5)**    A reasonable period ending after separation from service in case of a Participant who separates before attaining age 35. For purposes of applying the foregoing, a reasonable period ending after the enumerated events described in (2), (3) and (4) is the end of the two-year period beginning 1 year prior to the date the applicable event occurs and ending 1 year after that date. In the case of a Participant who separates from service before the Plan Year in which age 35 is attained, notice will be provided within the two-year period beginning prior to separation and ending 1 year after separation. If such a Participant thereafter returns to employment with the Employer, the Applicable Period for such Participant will be redetermined.

**(j)    Qualified Optional Survivor Annuity.**  Plans to which the Annuity and Consent requirements of Code sections 401(a)(11) and 417 apply must provide a Qualified Optional Survivor Annuity.

For purposes of a Qualified Optional Survivor Annuity, the term "Survivor Annuity Percentage" means the percentage by which the survivor annuity under the plan's Qualified Joint and Survivor Annuity bears to an annuity payable during the joint lives of the Participant and their spouse.  If the Survivor Annuity Percentage:

**(1)**    is less than 75%, then the applicable percentage is 75%; or

**(2)**    is greater than or equal to 75%, then the applicable percentage is 50%.

The Qualified Optional Survivor Annuity provisions will apply to the Plan and are effective for Plan Years beginning after December 31, 2007, subject to certain special effective date rules for collectively bargained plans.

**(k)    Election to Waive Annuity Payment.**  At any time during the applicable election period, a Participant and their spouse may elect to waive the Qualified Joint and Survivor Annuity form of benefit or the Qualified

Preretirement Survivor Annuity form of benefit (or both) and may revoke any such election. There is no limit to the number of times that an election or a revocation may be made by a Participant.

**(l)    Spousal Consent Required.**  An election to waive the Qualified Joint and Survivor Annuity form of benefit or the Qualified Preretirement Survivor Annuity form of benefit (or both) will not take effect unless:

**(1)**    the spouse of the Participant consents in writing to the election, and such election designates a specific Beneficiary, including any class of Beneficiaries or contingent Beneficiaries, or, solely in the case of a waiver of a Qualified Joint and Survivor Annuity, designates an alternative form of benefit, that may not be changed without spousal consent (unless the consent of the spouse expressly permits designations by the Participant without any requirement of further consent by the spouse),

**(2)**    the spouse's consent acknowledges the effect of such election and is witnessed by a Plan representative or a notary public, or

**(3)**    the Participant establishes to the satisfaction of the Plan Administrator that such consent cannot be obtained because there is no spouse, because the spouse cannot be located, or because of other circumstances permitted by applicable regulations.

Any consent by a spouse obtained under this provision (or establishment that the consent of a spouse may not be obtained) will be effective only with respect to such spouse. A consent that permits designations by the Participant without any requirement of further consent by such spouse must acknowledge that the spouse has the right to limit consent to a specific Beneficiary, and a specific form of benefit where applicable, and that the spouse voluntarily elects to relinquish either or both of such rights.

A Participant may revoke a prior waiver without the consent of the spouse at any time before the commencement of benefits. The number of waivers and revocations will not be limited. No consent obtained under this provision will be valid unless the Participant has received notice as provided in Notice and Consent to Distribution provision of this section.

If payment in the form of a Qualified Joint and Survivor Annuity is required with respect to a Participant  and either the value of a Participant's vested Account balance derived from Employer and Employee contributions exceeds $5,000 ( or a lesser  Mandatory Cash-out amount selected in the Adoption Agreement), or there are remaining payments to be made with respect to a particular distribution option that previously commenced, prior to the Participant reaching the earliest retirement age under the Plan, then the Participant and the Participant's spouse must consent to any distribution from the Plan.

If payment in the form of a Qualified Joint and Survivor Annuity is required with respect to a Participant and the value of a Participant's vested Account balance derived from Employer and Employee contributions does not exceeds $5,000( or a lesser Mandatory Cash-out amount selected in the Adoption Agreement), and the Account balance is Immediately Distributable, then the consent requirement will not apply to the distribution from the Plan.

If payment in the form of a Qualified Joint and Survivor Annuity is required with respect to a Participant or the Plan, and the vested Account balance is used as security for a loan from the Plan, the Participant's spouse must consent in writing and acknowledge the effect of using the vested Account balance on survivor benefit due under the Plan during the 180 day period ending on the date the loan is secured.

The consent of a Participant or Participant's spouse must in writing and obtained within the 180-day period (90 days for Plan Years beginning before January 1, 2007) ending on the Annuity Starting Date.

**2.5.7  Required Minimum Distributions.**  All distributions required under this Article V will be determined and made in accordance with Code section 401(a)(9) and the applicable regulations, including the minimum distribution incidental benefit requirements of Code section 401(a)(9)(G). In the event that a provision of this Plan conflicts with such requirements, such requirements will govern.

As of the first Distribution Calendar Year (defined in Subsection 2.5.7(i)(1)), distributions, if not made in a single sum, may only be made over one of the following periods (or a combination thereof): (1) the life of the Participant; (2) the life of the Participant and a Designated Beneficiary; (3) a period certain not extending beyond the Life Expectancy of the Participant; or (4) a period certain not extending beyond the joint and last survivor expectancy of the Participant and a Designated Beneficiary.

The Plan was amended pursuant to section 401(a)(9)(H) of the Code to provide for the waiver of the Required Minimum Distributions for the 2009 Distribution Calendar Year. The Plan suspended all Required Minimum Distributions attributable to the 2009 Distribution Calendar Year. The otherwise Required Minimum Distributions were not required to be distributed from the Plan unless a Participant submitted a written request electing to receive a distribution for 2009. The Required Beginning Date for 2009 for any Participant who attained age 70 1/2 in 2009 was postponed from April 1, 2010 until December 31, 2010. The Plan was not required to make a distribution under this provision until December 31, 2010 unless a Participant submitted a written request electing to receive a distribution for 2009. The Required Minimum Distribution payable during the lifetime of a Participant or after the death of a Participant to their Designated Beneficiary that was attributable to the 2009 Distribution Calendar Year was not distributed unless a Participant or the Designated Beneficiary submitted a written request electing to receive a distribution for 2009. Under this 2009 suspension of the Required Minimum Distribution a Participant or a Designated Beneficiary could have requested that the Plan make a Required Minimum Distribution for the 2009 Distribution Calendar Year by completing an individual election form. When made this distribution would be treated as an Eligible Rollover Distribution from the Plan. Where a Required Minimum Distribution was payable and the five year rule applies with respect to a deceased Participant's account, then the Required Minimum Distribution for the 2009 Distribution Calendar Year will be disregarded in the calculation of the 5 year period; resulting in a one year extension of this rule.

**(a)**  **Required Beginning Date.**  Notwithstanding anything herein to the contrary, unless the Participant has made an appropriate TEFRA 242(b)(2) election, as described in Subsection 2.5.7(j), that has not been revoked or modified, the Participant's entire benefit will be distributed, or begin to be distributed, to the Participant no later than the Required Beginning Date.

**(b)**  **Timing of Distributions if Participant Dies Before Distributions Begin.**

    **(1)**  If the Participant dies before required distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

        **(A)**  If the Participant's surviving spouse is the Participant's sole Designated Beneficiary, then, except as provided in the Adoption Agreement, distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age seventy and one-half (701/2), if later.

        **(B)**  If the Participant's surviving spouse is not the Participant's sole Designated Beneficiary, then, except as provided in the Adoption Agreement, distributions to the Designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

        **(C)**  If there is no Designated Beneficiary as of the date of the Participant's death who remains a Beneficiary as of September 30 of the year immediately following the year the Participant died, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

        **(D)**  If the Participant's surviving spouse is the Participant's sole Designated Beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, this Subsection 2.5.7(b), other than Subsection 2.5.7(b)(1)(A), will apply as if the surviving spouse were the Participant.

    **(2)**  For purposes of this Subsection 2.5.7(b) and Subsections 2.5.7(f) and (g), distributions are considered to begin on the Participant's Required Beginning Date unless Subsection 2.5.7(b)(1)(D) applies.  If Subsection

2.5.7(b)(1)(D) applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under Subsection 2.5.7(b)(1)(A).  If distributions under an annuity contract purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse under Subsection 2.5.7(b)(1)(A)), the date distributions are considered to begin is the date distributions actually commence.

(3)  If the Adoption Agreement permits Participants and Beneficiaries to elect the 5-year rule, the election must be made no later than the earlier of:

(A)  September 30 of the calendar year in which the distribution would be required under Subsections 2.5.7(b)(1)(A) or (B), or

(B)  By September 30 of the calendar year that contains the 5th anniversary of the Participant's (or if applicable, the surviving spouse's) death.

If this election is made, then the Participant's entire interest must be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(c)  **Forms of Distribution.**  Unless the Participant's interest is distributed in the form of an annuity contract purchased from an insurance company or in a single sum on or before the Required Beginning Date, distributions will be made in accordance with Subsections 2.5.7(d) and (f) as of the first Distribution Calendar Year.  If the Participant's interest is distributed in the form of an annuity contract purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code section 401(a)(9) and the applicable regulations.

(d)  **Required Minimum Distributions During Participant's Lifetime.**  During the Participant's lifetime, the minimum amount that will be distributed for each Distribution Calendar Year is the lesser of:

(1)  The quotient obtained by dividing the Participant's Account Balance by the distribution period set forth in the Uniform Lifetime Table found in Treasury Regulations section 1.401(a)(9)-9, Q&A-2, using the Participant's age as of the Participant's birthday in the Distribution Calendar Year; or

(2)  If the Participant's sole Designated Beneficiary for the Distribution Calendar Year is the Participant's spouse, the quotient obtained by dividing the Participant's Account Balance by the number in the Joint and Last Survivor Table set forth in Treasury Regulations section 1.401(a)(9)-9, Q&A-3, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the Distribution Calendar Year.

(e)  Lifetime Required Minimum Distributions Continue Through Year of Participant's Death. Required Minimum Distributions will be determined under Subsection 2.5.7(d) beginning with the first Distribution Calendar Year and continuing up to, and including, the Distribution Calendar Year that includes the Participant's date of death.

(f)  **Required Minimum Distributions On or After Date Required Distributions Begin.**

(1)  **Participant Survived by Designated Beneficiary.** If the Participant dies on or after the date required distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the longer of the remaining Life Expectancy of the Participant or the remaining Life Expectancy of the Participant's Designated Beneficiary, determined as follows:

(A)  The Participant's remaining Life Expectancy is calculated in accordance with the Single Life Table found in Treasury Regulations section 1.401(a)(9)-9, Q&A-1, using the age of the Participant in the year of death, reduced by one for each subsequent year.

(B)  If the Participant's surviving spouse is the Participant's sole Designated Beneficiary, the remaining Life Expectancy of the surviving spouse is calculated using the Single Life Table found in Treasury Regulations section 1.401(a)(9)-9, Q&A-1, for each Distribution Calendar Year after the year of the

-54-

Participant's death using the surviving spouse's age as of the spouse's birthday in that year. For Distribution Calendar Years after the year of the surviving spouse's death, the remaining Life Expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

**(C)** If the Participant's surviving spouse is not the Participant's sole Designated Beneficiary, the Designated Beneficiary's remaining Life Expectancy is calculated under the Single Life Table using the age of the Beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.

**(2) No Designated Beneficiary Survives.** If the Participant dies on or after the date required distributions begin and there is no Designated Beneficiary as of the Participant's date of death who remains a beneficiary as of September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account balance by the Participant's remaining Life Expectancy under the Single Life Table calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

**(g) Distribution Amount If Participant Dies Before Date Required Distributions Begin.**

**(1) Participant Survived by Designated Beneficiary.** If the Participant dies before the date required distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the remaining Life Expectancy of the Participant's Designated Beneficiary, determined as provided in Subsection 2.5.7(f). If permitted in the Adoption Agreement, a Participant or Designated Beneficiary may elect to receive distributions over the 5-year period described in Subsection 2.5.7(b)(3).

**(2) No Designated Beneficiary Survives.** If the Participant dies before the date distributions begin and all Designated Beneficiaries, if any, as of the Participant's date of death are no longer Beneficiaries as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest must be completed by December 31 of the calendar year containing the 5th anniversary of the Participant's death.

**(3) Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin.** If all of the following are true, this Subsection 2.5.7(g) will apply as if the surviving spouse were the Participant:

**(A)** The Participant dies before the date distributions begin,

**(B)** The Participant's surviving spouse is the Participant's sole Designated Beneficiary, and

**(C)** The surviving spouse dies before distributions are required to begin to the surviving spouse under Subsection 2.5.4(b)(1).

**(h) Asset Rollovers and Transfers.**

If a Participant requests a rollover of their benefits to a qualified plan not maintained by the Employer during their first or subsequent Distribution Calendar Year, or a Participant's benefits are transferred to another qualified plan, such rollover or transfer will be reduced by the Required Minimum Distribution for the Distribution Calendar Year under Code section 401(a)(9) and the reduction will be distributed to the Participant by the appropriate date.

If the Plan receives a rollover or transfer with respect to a Participant who has reached their Required Beginning Date, the Plan will distribute the Required Minimum Distribution under Code section 401(a)(9) beginning with the following calendar year. In the event that the beneficiary or method of distribution with respect to transferred

assets differs from the Beneficiary or method of distribution of this Plan, the Plan will segregate the transferred assets and continue to distribute the benefits from the originating plan in accordance with the method of distribution and Life Expectancy of the originating plan.

**(i)    Definitions.**

**(1)    Distribution Calendar Year.**  A calendar year for which a minimum distribution is required.  For distributions beginning before the Participant's death, the first Distribution Calendar Year is the calendar year immediately preceding the calendar year that contains the Participant's Required Beginning Date.  For distributions beginning after the Participant's death, the first Distribution Calendar Year is the calendar year in which distributions are required to begin under Subsection 2.5.7(b)(1).  The Required Minimum Distribution for the Participant's first Distribution Calendar Year will be made on or before the Participant's Required Beginning Date.  The Required Minimum Distribution for other Distribution Calendar Years, including the Required Minimum Distribution for the Distribution Calendar Year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that Distribution Calendar Year.

**(2)    Life Expectancy.**  Life Expectancy as computed by use of one of the following tables, found in Treasury Regulations section 1.401(a)(9)-9, as appropriate:

**(A)**    Single Life Table;

**(B)**    Uniform Life Table; or

**(C)**    Joint and Last Survivor Table

**(3)    Participant's Account Balance.**  (For purposes of Required Minimum Distributions only.)

**(A)**    The calendar year immediately preceding the Distribution Calendar Year is the "valuation calendar year."  The Participant's Account Balance as of the last Valuation Date in the valuation calendar year is increased by the amount of any contributions made and allocated or Forfeitures allocated to the Participant's Account Balance as of dates in the valuation calendar year after the Valuation Date and decreased by distributions made in the valuation calendar year after the Valuation Date.  If an amount is distributed or transferred from another source during the valuation calendar year, that amount is included in the Participant's Account Balance for the valuation calendar year regardless if such amount is transferred or rolled over to the Plan in the valuation calendar year or in the Distribution Calendar Year.

**(B)    Exception for second Distribution Calendar Year.**  For purposes of Subsection (i) above, if any portion of the minimum distribution for the first Distribution Calendar Year is made in the second Distribution Calendar Year on or before the Required Beginning Date, the amount of the minimum distribution made in the second Distribution Calendar Year will be treated as if it had been made in the immediately preceding Distribution Calendar Year.

**(4)    Required Beginning Date.**

**(A)    General rule.**  The Required Beginning Date of a Participant is the first day of April of the calendar year following the calendar year in which the Participant attains age 70 1/2.

**(B)    Non-5-Percent Owner Exception.**  If so elected in the Adoption Agreement, the Required Beginning Date of a Participant who is not a 5-Percent Owner will be the first day of April of the calendar year following the later of the calendar year in which the Participant retires or the calendar year in which the Participant attains age 70 1/2.

**(C)    Transition Rule:**

-56-

**(A)** If previously elected by the Employer, any Participant who is not a 5-Percent Owner and attains age 70 1/2 in years after 1995 may elect by April 1 of the calendar year following the year in which the Participant attained age 70 1/2, (or by December 31, 1997 in the case of a Participant attaining age 70 1/2 in 1996) to defer distributions until the calendar year following the calendar year in which the Participant retires. If no such election is made the Participant who is not a 5-Percent Owner will begin receiving distributions by April 1 of the calendar year following the year in which the Participant attained age 70 1/2 (or by December 31, 1997 in the case of a Participant attaining age 70 1/2 in 1996).

**(B)** If previously elected by the Employer, any Participant who attained age 70 1/2 in years prior to 1997 but not earlier than January 1, 1996, was permitted to elect to stop distributions and recommence by the April 1 of the calendar year following the year in which the Participant retires. An Employer who adopted this option selected either:

**(1)** A new Annuity Starting Date upon recommencement, or

**(2)** No new Annuity Starting Date upon recommencement.

**(C)** If previously elected by the Employer, the requirement that distributions begin no later than age 70 1/2 only eliminated with respect to Employees who reach age 70 1/2 in or after a calendar year that begins after the later of December 31, 1998, or the date that the Employer adopted the GUST Restatement of this Plan.

**(D)** **5-Percent Owner.** A Participant is treated as a 5-Percent Owner for purposes of this Section if such Participant is a 5-Percent Owner as defined in Part I, Article II at any time during the Plan Year ending with or within the calendar year in which such owner attains age 70 1/2. Once distributions have begun to a 5-Percent Owner under this Section, they must continue to be distributed, even if the Participant ceases to be a 5-Percent Owner in a subsequent year.

**(j)** **TEFRA Section 242(b)(2) Election.**

**(1)** Notwithstanding the other requirements of this Article and subject to the requirements of Sections 2.5.4 and 2.5.6, distribution on behalf of any Employee, including a 5-Percent Owner, may be made in accordance with all of the following requirements (regardless of when such distribution commences):

**(A)** The distribution by the Plan is one that would not have disqualified the Plan under Code section 401(a)(9) as in effect prior to amendment by the Deficit Reduction Act of 1984.

**(B)** The distribution is in accordance with a method of distribution designated by the Employee whose interest in the Plan is being distributed or, if the Employee is deceased, by a Beneficiary of such Employee.

**(C)** Such designation was in writing, was signed by the Employee or the Beneficiary, and was made before January 1, 1984.

**(D)** The Employee had an Account balance under the Plan as of December 31, 1983.

**(E)** The method of distribution designated by the Employee or the Beneficiary specifies the time at which distribution will commence, the period over which distributions will be made, and in the case of any distribution upon the Employee's death, the Beneficiaries of the Employee listed in order of priority.

**(2)** A distribution upon death will not be covered by this transitional rule unless the information in the designation contains the required information described above with respect to the distributions to be made upon the death of the Employee.

**(3)** For any distribution that commences before January 1, 1984, but continues after December 31, 1983, the Employee or the Beneficiary to whom such distribution is being made will be presumed to have designated

the method of distribution under which the distribution is being made if the method of distribution was specified in writing and the distribution satisfies the requirements in Subsections 2.5.7(j)(1)(A) and (E).

**(4)**   If a designation is revoked, any subsequent distribution must satisfy the requirements of Code section 401(a)(9) and the applicable regulations.  If a designation is revoked subsequent to the date distributions to a Participant were required to begin, the Plan must distribute, by the end of the calendar year following the calendar year in which the revocation occurs, the total amount not yet distributed that would have been required to have been distributed to the Participant to satisfy Code section 401(a)(9) and the applicable regulations, but for the TEFRA section 242(b)(2) election.  For calendar years beginning after December 31, 1988, such distributions must meet the minimum distribution incidental benefit requirements.  Any changes in the designation will be considered to be a revocation of the designation.  However, the mere substitution or addition of another Beneficiary (one not named in the designation) under the designation will not be considered to be a revocation of the designation, so long as such substitution or addition does not alter the period over which distributions are to be made under the designation, directly or indirectly (for example, by altering the relevant measuring life).

**(5)**   If an amount is transferred or rolled over from one plan to another plan, the rules in Treasury Regulations section 1.401(a)(9)-8, Q&A 14 and Q&A 15 will apply.

### 2.5.8  Nature of Distributions.

**(a)**   **Trust Fund and Segregated Funds.**  Except as provided in Subsection (b) with regard to Life Insurance Policies and the Qualified Joint and Survivor Annuity requirements in Section 2.5.6, distribution of a Participant's Distributable Benefit will consist of cash, property, or an annuity contract, or a combination thereof. If a distribution includes property, the property will be valued at its fair market value as of the date of distribution.

**(b)**   **Insurance Policies.**  In the event that the Trustee has purchased one or more Life Insurance Policies on the life of the Participant, or someone in whom the Participant has an insurable interest, the values and benefits available with respect to each such Policy will be distributed as follows:

**(1)**   If the Participant's employment terminates for any reason other than death, the Trustee, at the election of the Participant, will either (i) surrender the Life Insurance Policy for its available cash value and distribute the proceeds as provided in Subsection (a) above or (ii) distribute the Life Insurance Policy to the Participant, provided the Participant's vested Account balance is at least equal to the policy's cash value.

**(2)**   If the Participant dies, the Participant's Beneficiary will be entitled to the full amount of the policy proceeds.

The Trustee will apply for and be the owner of any policy purchased under the terms of the Plan. The Policy must provide that the proceeds are payable to the Trustee subject to the Trustee's obligation to pay over the proceeds to the Participant's Beneficiary. A Participant's spouse will be the Designated Beneficiary of the proceeds of such Policy unless a qualified election has been made in accordance with Section 2.5.6 of the Plan, if applicable. Under no circumstances will the Trust retain any part of the proceeds. In the event of any conflict between the terms of the Plan and the terms of any policy purchased hereunder, the Plan provisions will control.

**(3)**   In the event the Trustee purchases a Life Insurance Policy on the life of someone other than the Participant pursuant to this Plan, and such other person will die, the Participant may withdraw the life insurance proceeds to the extent they exceed the policy's cash value immediately prior to such death.

### 2.5.9 Qualified Military Service.  Distributions to Individuals Called to Active Duty.  Any individual who receives a Qualified Reservist Distribution may, at any time during the 2 year period beginning on the day after the end of the active duty period, make one or more repayment contributions to an Individual Retirement Plan of such individual in an aggregate amount not to exceed the amount of such distribution. The dollar limitations otherwise applicable to contributions to Individual Retirement Plans will not apply to any contribution made pursuant to the preceding sentence. No deduction will be allowed for any contribution pursuant to this Section. For purposes of this Subparagraph, the term "Qualified Reservist Distribution" means any distribution to an individual if:

**(a)**    such distribution is from an Individual Retirement Plan, or from amounts attributable to elective deferrals under a 401(k) plan, 403(b) annuity contract, or certain similar arrangements;

**(b)**    such individual was (by reason of being a member of a reserve component (as defined in section 101 of title 37, United States Code) was ordered or called to active duty for a period in excess of 179 days or for an indefinite period; and

**(c)**    such distribution is made during the period beginning on the date of such order or call and ending at the close of the active duty period.

**(d)**    This Paragraph 2.5.9 is effective August 17, 2001, and applies to individuals ordered or called to active duty after September 11, 2001, and before December 31, 2007. Effective June 17, 2008, it also applies to individuals ordered or recalled to active duty after December 31, 2007.

**2.5.10  Hardship Distributions of Elective Deferrals.**  If the Plan is designated in the Adoption Agreement as a Cash or Deferred Profit Sharing Plan, the Employer may elect in the Adoption Agreement to permit Hardship Distributions of Elective Deferrals. A Hardship Distribution is a distribution that meets the requirements of a distribution on account of immediate and heavy financial need enumerated in this Section 2.5.10. A Participant may request a distribution from the Plan as a result of immediate and heavy financial needs of the Participant to the extent that the distribution is necessary to satisfy such financial needs. The availability of Hardship Distributions to Participants is limited to Participants who have not terminated employment. Effective August 17, 2006, the Plan may permit a Participant to request a Hardship Distribution where the Hardship or unforeseeable financial emergency occurs to the Participant's spouse, dependents, or Primary Beneficiary.

Hardship distributions are subject to the spousal consent requirements contained in Code sections 401(a)(11) and 417 unless the Plan meets the exception of Subsection 2.5.5(c). The Plan Administrator will determine whether a Participant has an immediate and heavy financial need. A distribution will be deemed to be made on account of an immediate and heavy financial need if the distribution is due to:

**(a)**    Deductible medical expenses described in Code section 213(d) incurred or necessary for medical care of the Participant, their spouse, dependents, or Primary Beneficiary under the Plan;

**(b)**    Purchase (excluding mortgage payments) of a principal residence for the Participant;

**(c)**    Cost of tuition and related educational fees and room and board expenses for the next 12 months of post-secondary education for the Participant, their spouse, children, Primary Beneficiary or dependents; or

**(d)**    The need to prevent the eviction of the Participant from their principal residence or foreclosure on the mortgage of the Participant's principal residence.

**(e)**    Payments for funeral or burial expenses for the Participant's deceased parent, spouse, child, dependent or Primary Beneficiary under the Plan.  (For Plan Years beginning after 2005.)

**(f)**    Expenses to repair damage to the Participant's principal residence that would qualify for a casualty loss deduction under Code section 165 (determined without regard to whether the loss exceeds 10% of adjusted gross income).  (For Plan Years beginning after 2005.)

A distribution will be considered as necessary to satisfy an immediate and heavy financial need of the Participant only if:

**(g)**    The Participant has obtained all distributions, other than Hardship Distributions, and all nontaxable loans under all plans maintained by the Employer;

**(h)**    All plans maintained by the Employer provide that the Participant's Elective Deferrals and Voluntary Employee Contributions will be suspended for 6 months after the receipt of the Hardship Distribution; and

**(i)**    The distribution is not in excess of the amount of an immediate and heavy financial need (including amounts necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the distribution).

**2.5.11  Distributions in the Event of Incapacity.**  In the sole judgment of the Plan Administrator, if any Beneficiary entitled to benefits under the Plan is not capable of managing the benefit about to be distributed, such distribution may be made to legal representative of that Beneficiary, or in the case of a minor Beneficiary the guardian, under a  valid power of attorney, a court appointed guardian or any other person authorized under state law to receive the benefit. The Plan Administrator may require an order of a court of competent jurisdiction before making such distribution.

**2.5.12  In Service Distributions.**

**(a)**    **Cash or Deferred Profit Sharing Plans.**  If the Plan is designated in the Adoption Agreement as a Cash or Deferred Profit Sharing Plan, the Employer may elect to permit distributions of Elective Deferrals, Qualified Non-Elective Contributions, Qualified Matching Contributions, and ADP Test Safe Harbor Contributions to a Participant after attaining age 59 1/2 but only prior to their termination of employment.  A Participant will be entitled to receive a distribution of all or a part of these Accounts upon filing a written request with the Plan Administrator; provided, that no distribution will be made unless the balance in the Account to be distributed has accumulated for at least 2 years or the individual has been a Participant for 5 or more Plan Years or on account of Hardship unless otherwise elected in the Adoption Agreement; and, the distribution of Elective Deferrals, Qualified Non-Elective Contributions, Matching Contributions (to the extent used in the ADP Test), Qualified Matching Contributions and ADP Test Safe Harbor Contributions must satisfy the limitations imposed by Section 2.7.8.  In-service distributions due to Hardship must meet the Hardship requirements of Section 2.5.10.

The Adoption Agreement may provide that In-service Distributions are available before age 59 1/2 for Accounts other than Elective Deferrals, Qualified Non-Elective Contributions, Qualified Matching Contributions, Matching Contributions that are used to pass the ADP test, and ADP Test Safe Harbor Contributions but only prior to a Participant's termination of employment.  In-Service Distributions from the Profit Sharing portion of a Cash or Deferred Profit Sharing Plan will be governed by Subsection (b) below.

**(b)**    **Profit Sharing Plans.**  If the Plan is designated in the Adoption Agreement as a Profit Sharing Plan, (including the Profit Sharing portion of a Cash or Deferred Profit Sharing Plan), the Employer may elect in the Adoption Agreement to permit distributions to a Participant prior to their termination of employment.  A Participant will be entitled to receive a distribution of all or part of their interest in the Plan upon filing a written request with the Plan Administrator; provided, that no distribution will be made unless the amount to be distributed to the Participant is fully vested and nonforfeitable (unless otherwise elected in the Adoption Agreement) and has accumulated for at least 2 years or the individual has been a Participant for 5 or more Plan Years, or on account of Hardship; provided, further that In-service distributions on account of Hardship will be subject to the restrictions of Section 2.5.10.  In-service Distributions are subject to the spousal consent requirements contained in Code sections 401(a)(11) and 417 unless the Plan meets the exception of Section 2.5.5(c).

**(c)**    **Money Purchase Plans.**  The Employer may elect in the Adoption Agreement to permit In-service distributions upon a Participant reaching their Normal Retirement Age or an age that may not be earlier than age 62.

**(d)**    **All Plans.**  The Employer may elect in the Adoption Agreement to permit In-service Distributions at the election of the Participant for amounts held in a Rollover Account, in a Deductible Voluntary Account, or in a Voluntary Account regardless of age or periods of participation.

**(e)**    **Spousal Consent.**  In-service distributions are subject to the spousal consent requirements contained in Code sections 401(a)(11) and 417 unless the Plan meets the exception of Subsection 2.5.5(c).

**(f)**    If the Plan is a Cash or Deferred Profit Sharing Plan permitting a Participant to contribute all or a portion of their Elective Deferrals to the Trust as designated Roth Deferrals (an after-tax deferral); and also contains distribution options that permit a Participant (active or former Participants with an Account Balance in the Plan) to request an

-60-

Eligible Rollover Distribution from the Plan, the Employer may elect in the Adoption Agreement to include in the Plan an in-plan Roth conversion feature.

Notwithstanding, the Employer will not amend the Plan to restrict or eliminate any distribution rights that a Participant is entitled to under the Plan (such as a right to an Immediate Distribution of the amount rolled over or right to an In-service Distribution existing under the terms of the Plan).

**(1)    Conversion.** The in-plan Roth conversion will be made through a Direct Rollover election. Under the in-plan Roth conversion feature, all or a portion of an Eligible Rollover Distribution from a non-designated Roth Account in this Plan is directly rolled into an In-plan Roth Rollover Conversion Account.  An In-Plan Roth Conversion Account may be established for Eligible Rollover Distributions made on or after September 27, 2010.

Unless otherwise elected in the Adoption Agreement, any Eligible Rollover Distribution made under the Plan's In-service Distribution options that is otherwise eligible for a Direct Rollover election may be converted under the in-plan Roth conversion feature.

**(2)    Applicable Definitions.**

    **(i)**    In-plan Roth conversion means the Direct Rollover of amounts from a non-designated Roth Account without removing the funds from the Plan into an In-plan Roth Conversion Account.

    **(ii)**    In-plan Roth Conversion Account means a separate Participant subaccount within the Plan that is treated as a designated Roth account under section 402A of the Code.

    **(iii)**    Non-designated Roth Account means any subaccount within the Plan that contains pre-tax contributions or earnings.

# ARTICLE VI

# <u>CONTINGENT TOP HEAVY PROVISIONS</u>

**2.6.1  Top-Heavy Requirements.**  If the Plan becomes a Top-Heavy Plan during any Plan Year, the following provisions will supersede any conflicting provisions in the Plan or Adoption Agreement and apply for such Plan Year:

**(a)**  Except as otherwise provided below, the Employer Contributions and Forfeitures allocated on behalf of any Participant who is not a Key Employee will not be less than the lesser of 3% of such Participant's Compensation, as defined in Section 2.6.2(b), or in the case where the Employer has no defined benefit plan that designates this Plan to satisfy Code section 401, the largest percentage of Employer Contributions and Forfeitures (not including Catch-up Contributions), as a percentage of the Key Employee's Compensation as defined in Section 2.6.2(b), and limited by Code section 401(a)(17), allocated on behalf of any Key Employee for that year.  The Minimum Top-Heavy Allocation is determined without regard to any Social Security contribution.  This Minimum Top-Heavy Allocation will be made even though, under other Plan provisions, the Participant would not otherwise be entitled to receive an allocation, or would have received a lesser allocation for the year because of (i) the Participant's failure to complete 1,000 Hours of Service (or any equivalent provided in the Plan), or (ii) the Participant's failure to make mandatory Employee contributions to the Plan, or (iii) compensation less than a stated amount.  The Employer may elect in the Adoption Agreement to have this provision provide Key Employees with the Top-Heavy minimum benefit.

Elective Deferrals (and, for Plan Years beginning before 2002, Matching Contributions) may not be used to satisfy the Minimum Top-Heavy Allocation.

For purposes of computing the Minimum Top-Heavy Allocation, Compensation will mean a Participant's Compensation as defined in the Adoption Agreement.

The Minimum Top-Heavy Allocation provided above will not apply to any Participant who was not employed by the Employer on the last day of the Plan Year.

If so elected in the Adoption Agreement, the Minimum Top-Heavy Allocation provided above will not apply to any Participant who is in a unit of Employees covered by a collective bargaining agreement between the Employer and Employee representatives, provided benefits were the subject of good faith bargaining and 2% or less of the Employees of the Employer who are covered pursuant to that agreement are professionals as defined in Treasury Regulations section 1.410(b)-9(g).

The Minimum Top-Heavy Allocation provided above will not apply to any Participant to the extent the Participant is covered under any other plan or plans of the Employer and the Employer has provided in the Adoption Agreement that the Minimum Top-Heavy Allocation or benefit requirement applicable to Top-Heavy plans will be met in the other plan or plans and the Participant receives the minimum allocation or benefit under such plan or plans.

Effective for Plan Years beginning after December 31, 2007 if contributions consist solely of an "Automatic Contribution Arrangement" or section 401(k)(12) of the Code plan with matching contributions complying with section 401(m)(11) of the Code the Plan will not be considered Top-Heavy.

**(b)**  The vested and nonforfeitable interest of each Participant will be equal to the percentage determined under the vesting schedule specified in the Adoption Agreement if the Plan becomes a Top-Heavy Plan, or if no vesting schedule is specified, the percentage determined under the following schedule:

| Years of Vesting Service | Percentage |
|---|---|
| Less than 2 | 0% |
| 2 | 20% |
| 3 | 40% |
| 4 | 60% |
| 5 | 80% |
| 6 | or more 100% |

The Top-Heavy minimum vesting schedule applies to all benefits within the meaning of Code section 411(a)(7), except those attributable to Employee Contributions, including benefits accrued before the effective date of Code section 416 and benefits accrued before the Plan becomes Top-Heavy.

No decrease in a Participant's nonforfeitable percentage may occur in the event the Plan's status as Top-Heavy changes for any Plan Year. Any Minimum Top-Heavy Allocation required (to the extent required to be nonforfeitable under Code section 416(b)) may not be forfeited under Code sections 411(a)(3)(B) or (D).

**2.6.2  Top-Heavy Definitions.**  The following terms, as used in this Plan, will have the following meaning:

**(a)**   **"Aggregation Group":**  Each qualified retirement plan of the Employer in which a Key Employee is a participant and each other qualified retirement plan of the Employer that enables any plan in which a Key Employee is a participant to meet the requirements of Code sections 401(a)(4) or 410.

**(b)**   **"Annual Compensation":**  One of the following 3 definitions of Compensation as elected in the Adoption Agreement:

**(1)**   **W-2 Wages.** Information required to be reported under Code sections 6041, 6051, and 6052 (wages, tips and other compensation as reported on Form W-2). Compensation is defined as wages within the meaning of Code section 3401(a) and all other payments of compensation to an Employee by the Employer (in the course of the Employer's trade or business) for which the employer is required to furnish the Employee a written statement under Code sections 6041(d), 6051(a)(3), and 6052. Compensation must be determined without regard to any rules under section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code section 3401(a)(2)).

**(2)**   **Section 3401(a) wages.** Compensation is defined as wages within the meaning of Code section 3401(a) for the purposes of income tax withholding at the source but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in section Code 3401(a)(2)).

**(3)**   **415 Simplified Compensation.** Compensation is defined as wages, salaries, and fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer maintaining the Plan to the extent that the amounts are includable in gross income (including, but not limited to, commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements or other expense allowances under a non-accountable plan (as described in Treasury Regulation 1.62-2(c)), and excluding the following:

**(A)**   Employer contributions to a plan of deferred compensation which are not includible in the Employee's gross income for the taxable year in which contributed, or Employer contributions under a simplified employee pension plan, or any distributions from a plan of deferred compensation;

**(B)**   Amounts realized from the exercise of a nonqualified stock option, or when restricted stock (or property) held by the employee either becomes freely transferable or is no longer subject to a

-63-

substantial risk of forfeiture;

**(C)**   Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

**(D)**   Other amounts which received special tax benefits, or contributions made by the Employer (whether or not under a salary reduction agreement) towards the purchase of an annuity contract described in Code section 403(b) (whether or not the contributions are actually excludable from the gross income of the Employee).

For any Self-Employed Individual, Compensation will mean Earned Income.

For purposes of applying the limitations of this Article, Compensation paid or made available during such limitation year will include any Elective Deferral (as defined in Code section 402(e)(3)), and any amount which is contributed or deferred by the Employer at the election of the Employee and which is not includible in the gross income of the Employee by reason of Code sections 125, 132(f)(4), 402(k), 402(h)(1)(B) or 457.

If elected by the Employer in the Adoption Agreement, amounts under Code section 125 include any amounts not available to a Participant in cash in lieu of group health coverage because the Participant is unable to certify that they have other health coverage (deemed Code section 125 Compensation). An amount will be treated as an amount under Code section 125 only if the Employer does not request or collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

**(c)**   **"Top-Heavy Plan":**   For any Plan Year beginning after December 31, 1983, the Plan is Top-Heavy if any of the following conditions exists:

**(1)**   If the Top-Heavy Ratio for the Plan exceeds 60% and the Plan is not part of any Required Aggregation Group or Permissive Aggregation Group of plans.

**(2)**   If the Plan is a part of a Required Aggregation Group of plans but not part of a Permissive Aggregation Group and the Top-Heavy Ratio for the group of plans exceeds 60%.

**(3)**   If the Plan is a part of a Required Aggregation Group and part of a Permissive Aggregation Group of plans and the Top-Heavy Ratio for the Permissive Aggregation Group exceeds 60%.

SIMPLE 401(k) plans and certain Safe Harbor CODA plans and Qualified Automatic Contribution Arrangements are not subject to the Top-heavy requirements of this Article VI.

**(d)**   **"Top-Heavy Ratio":**

**(1)**   If the Employer maintains one or more defined contribution plans (including any simplified Employee pension plan) and the Employer has not maintained any defined benefit plan that during the 1 year period ending on the Determination Date(s) has or has had accrued benefits, the Top-Heavy Ratio for this Plan alone or for the Required or Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the Account balances of all Key Employees as of the Determination Date(s) (including any part of any Account balance distributed in the 1 year period ending on the Determination Date(s) (five (5) year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death, or Disability)), and the denominator of which is the sum of all Account balances (including any part of any Account balance distributed in the 1 year period ending on the Determination Date(s) (five (5) year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death, or Disability)), both computed in accordance with Code section 416 and the regulations thereunder.

Both the numerator and denominator of the Top-Heavy Ratio are increased to reflect any contribution not actually made as of the Determination Date, but that is required to be taken into account on that date under Code section 416 and the regulations thereunder.

**(2)** If the Employer maintains one or more defined contribution plans (including any simplified Employee pension plan) and the Employer maintains or has maintained one or more defined benefit plans that during the 1 year period ending on the Determination Date(s) has or has had any accrued benefits, the Top-Heavy Ratio for any Required or Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of Account balances under the aggregated defined contribution plan or plans for all Key Employees, determined in accordance with (i) above, and the present value of accrued benefits under the aggregated defined benefit plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the Account balances under the aggregated defined contribution plan or plans for all Participants, determined in accordance with (i) above, and the present value of accrued benefits under the defined benefit plan or plans for all Participants as of the Determination Date(s), all determined in accordance with Code section 416 and the regulations thereunder. The accrued benefits under a defined benefit plan in both the numerator and denominator of the Top-Heavy Ratio are increased for any distribution of an accrued benefit made in the 1 year period ending on the Determination Date (five (5) year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death or Disability beginning before January 1, 2002.)

**(3)** For purposes of (1) and (2) above, the value of Account balances and the present value of accrued benefits will be determined as of the most recent that falls within or ends with the 12 month period ending on the Determination Date, except as provided in Code section 416 and the regulations thereunder for the first and second Plan Years of a defined benefit plan. The Account balances and accrued benefits of a Participant: (1) who is not a Key Employee but was a Key Employee in a prior year, or (2) who has not been credited with at least 1 Hour of Service with any Employer maintaining the Plan at any time during the 1 year period ending on the Determination Date will be disregarded. The calculation of the Top-Heavy Ratio and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Code section 416 and the regulations thereunder. Deductible Employee contributions will not be taken into account for purposes of computing the Top-Heavy Ratio, however, Catch-up Contributions will be taken into account. When aggregating plans, the value of Account balances and accrued benefits will be calculated with reference to the Determination Dates that fall within the same calendar year.

The accrued benefit of a Participant other than a Key Employee will be determined under: (a) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the Employer, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Code section 411(b)(1)(C).

**(e)** **"Permissive Aggregation Group":** The Required Aggregation Group of plans plus any other plan or plans of the Employer that, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Code sections 401(a)(4) and 410.

**(f)** **"Required Aggregation Group":**

**(1)** Each qualified plan of the Employer in which at least one Key Employee participates or participated at any time during the Plan Year containing the Determination Date (regardless of whether the plan has terminated).

**(2)** Any other qualified plan of the Employer that enables a plan described in (i) to meet the requirements of Code sections 401(a)(4) or 410.

**(g)** **"Determination Date":** For any Plan Year subsequent to the first Plan Year, the last day of the preceding Plan Year. For the first Plan Year of the Plan, the last day of that year.

**(h)** **"Valuation Date":** The date elected by the Employer in the Adoption Agreement as of which account balances or accrued benefits are valued for purposes of calculating the Top-Heavy Ratio.

**(i)** **"Present Value":** Present value will be based only on the interest and mortality rates specified in the Adoption Agreement.

# ARTICLE VII

## SPECIAL CODA LIMITATIONS

### 2.7.1  Limitation on Deferral Percentage for Highly Compensated Employees.

**(a)  Prior Year Testing.**  The Employer may elect in the Adoption Agreement to use the current year ADP for all eligible Highly Compensated Employees must not exceed the greater of the prior year's ADP for all Participants who were Non-Highly Compensated Employees in such year multiplied by:

    **(1)**  1.25; or

    **(2)**   2, but provided the sum is not more than 2 percentage points greater than the prior Plan Year ADP of such Non-Highly Compensated Employees.

The Employer may switch from Prior Year Testing to Current Year testing for any Plan Year.

For the first Plan Year that the Plan permits any Participant to make Elective Deferrals and this is not a successor plan, the ADP of Non-Highly Compensated Employees for the prior Plan Year will be deemed to be 3% or, at the Employer's election, the test will use actual data for the first Plan Year to determine the ADP of eligible Non-Highly Compensated Employees.

**(b)  Current Year Testing.**  The Employer may elect in the Adoption Agreement to use the current Plan Year ADP for all eligible Non-Highly Compensated Employees rather than the ADP for the prior Plan Year.  Once the Employer has made this election, it may change to Prior Year Testing only if the Plan meets the requirements of Treasury Regulations section 1.401(k)-2(c)(1)(ii), including that:

    **(1)**  The Plan has used Current Year Testing for each of the preceding 5 Plan Years or, if lesser, the number of Plan Years that the Plan has been in existence; or

    **(2)**  As a result of a merger or acquisition described in Code section 410(b)(6)(C)(i), the Employer maintains both a plan using Prior Year Testing and a plan using Current Year Testing, and the change is made within the transition period described in Code section 410(b)(6)(C)(ii).

**(c)  Other Rules.**  An Employee who would be a Participant but for the failure to have Elective Deferrals made on their behalf will be treated as a Participant on whose behalf no Elective Deferrals are made.  For purposes of the ADP test compensation may be compensation for the entire Plan Year whether or not the Participant was a Participant for the entire Plan Year or compensation from a Participant's Plan Entry Date determined each year by the Plan Administrator and applied to all eligible Participants in a uniform and non-discriminatory manner.

For purposes of determining the ADP test, Elective Deferrals (other than Catch-up Contributions), Qualified Non-Elective Contributions, and Qualified Matching Contributions must be made before the last day of the 12 month period immediately following the Plan Year to which the contributions relate.  For any Plan Year in which Qualified Non-Elective Contributions, and Qualified Matching Contributions are made the Plan must use the Current Year testing method.

Pursuant to Code section 410(b)(4)(B), the Employer may elect to treat that portion of the Plan that benefits only Participants who satisfy age and service conditions under the Plan that are lower than the greatest minimum age and service conditions permitted under Code section 410(a) ("Otherwise Excludable Employees") and that portion of the Plan that benefits Participants that meet the greatest minimum age and service conditions permitted under Code section 410(a) ("Not Otherwise Excludable Employees") as 2 separate plans for purposes of Code section 401(k), and the ADP test need not be satisfied with respect to both plans in order for one of the plans to pass the ADP test. An Employee's membership in the class of Otherwise Excludable Employees will be determined using either the Plan's Entry Date provision or the earlier of the first day of the next Plan Year of 6

months after completing the greatest minimum age and service conditions of Code section 410(a) as determined each year by the Plan Administrator.

Elective Deferrals that are made as Catch-up Contributions after a period of Qualified Military Service pursuant to Section 2.2.2(a) will not be used to determine a Participant's deferral percentage when the ADP of Participants is calculated for a particular Plan Year.

The determination and treatment of the ADP amounts of any Participant will satisfy such other requirements as may be prescribed by the Secretary of the Treasury.

Use of Qualified Non-Elective Contributions in the ADP or ACP test requires compliance with Reg. 1.401(k)-2(a)(6)(iv) or Reg. 1.401(m)-2(a)(6)(v), respectively, that require the Qualified Non-Elective Contribution be no greater than 5% of a Participant's compensation or no more than twice a "representative contribution rate" determined by analyzing the Qualified Non-Elective Contributions provided to all Non-Highly Compensated Employees.

### 2.7.2  Limitation on Matching Contributions.

**(a)**  **Prior Year Testing.**  The Employer may elect in the Adoption Agreement to use the current year ACP for eligible Highly Compensated Employees which must not exceed the greater of the prior year's ACP for all Participants who were Non-Highly Compensated Employees in such year multiplied by:

**(1)**  1.25; or

**(2)**  2, provided the sum is not more than 2 percentage points greater than the prior Plan Year ACP of such Non-Highly Compensated Employees.

The Employer may switch from Prior Year Testing to Current Year Testing for any Plan Year.

For the first Plan Year that the Plan permits any Participant to make Elective Deferrals and this is not a successor plan, the ACP of Non-Highly Compensated Employees for the prior Plan Year will be deemed to be 3% or, at the Employer's election, the test will use actual data of the first Plan Year to determine the ACP for eligible Non-Highly Compensated Employees.

**(b)**  **Current Year Testing.**  The Employer may elect in the Adoption Agreement to use the current Plan Year ACP for all eligible Non-Highly Compensated Employees rather than the ADP of the prior Plan Year.  Once the Employer has made this election, it may change to Prior Year Testing only if the Plan meets the requirements of Treasury Regulations sections 1.401(m)-2(c)(1) and 1.401(k)-2(c)(1)(ii), including that:

**(1)**  The Plan has used Current Year Testing for each of the preceding 5 Plan Years or, if lesser, the number of Plan Years that the Plan has been in existence; or

**(2)**  As a result of a merger or acquisition described in Code section 410(b)(6)(C)(i), the Employer maintains both a plan using Prior Year Testing and a plan using Current Year Testing, and the change is made within the transition period described in Code section 410(b)(6)(C)(ii).

**(c)**  **Other Rules.**  If so elected in the Adoption Agreement, the Employer may include Qualified Non-Elective Contributions in the contribution percentage amounts.  In order to be taken into account in the calculation of the ACP for a year under Current Year Testing, a Qualified Non-Elective Contribution or Qualified Matching Contribution must be allocated as of a date within the year using current data and must actually be paid to the Trust no later than the end of the 12-month period following the end of the Plan Year to which the contribution relates.  The Employer may also elect to use Elective Deferrals in the contribution percentage amounts so long as the ADP test is met before the Elective Deferrals are used in the ACP test and continues to be met following the exclusion of those Elective Deferrals that are used to meet the ACP test.  An ACP will be rounded to the nearest hundredth of a percentage point.  If an Elective Deferral or other contribution by an Employee is required as a condition of participation in the Plan, any Employee who would be a Participant if such Employee made such a contribution will be treated as an eligible Participant on behalf of whom no such contributions are made.  For

purposes of the ACP test compensation may be compensation for the entire Plan Year whether or not the Participant was a Participant for the entire Plan Year or compensation from a Participant's Plan Entry Date determined each year by the Plan Administrator and applied to all eligible Participants in a uniform and non-discriminatory manner.

The amount of Excess Aggregate Contributions for a Plan Year will be determined only after first determining the Excess Contributions that are treated as Voluntary Employee Contributions due to re-characterization.

Pursuant to section 410(b)(4)(B), the Employer may elect to treat that portion of the Plan that benefits only Participants who satisfy age and service conditions under the Plan that are lower than the greatest minimum age and service conditions permitted under Code section 410(a) ("Otherwise Excludable Employees") and that portion of the Plan that benefits Participants that meet the greatest minimum age and service conditions permitted under Code section 410(a) ("Not Otherwise Excludable Employees") as 2 separate plans for purposes of Code section 401(m), and the ACP test need not be satisfied with respect to both plans in order for one of the plans to pass the ACP test. An Employee's membership in the class of Otherwise Excludible Employees will be determined using either the Plan's Entry Date provision or the earlier of the first day of the next Plan Year of 6 months after completing the greatest minimum age and service conditions of Code section 410(a) as determined each year by the Plan Administrator.

Employee contributions are considered to have been made in the Plan Year in which contributed to the Trust. Matching Contributions, Voluntary Employee Contributions, Qualified Non-Elective Contributions, and Qualified Matching Contributions will be considered made for a Plan Year if made no later than the end of the twelve-month period beginning on the day after the close of the Plan Year.

Matching Contributions made on account of Elective Deferrals that are made as Catch-up Contributions after a period of Qualified Military Service pursuant to Section 2.2.2(a) will not be used to determine a Participant's contribution percentage when the ACP of Participants is calculated for a particular Plan Year.

The Employer will maintain records sufficient to demonstrate satisfaction of the ACP test and the amount of Qualified Non-Elective Contributions and Qualified Matching Contributions used in such test.

The determination and treatment of the contribution percentage of any Participant will satisfy such other requirements as may be prescribed by the Secretary of the Treasury.

Qualified Matching Contributions and Qualified Non-Elective Contributions may be used with Current Year testing method only if the contribution is made within the 12-month period following the last day of the Prior Year. Use of Qualified Matching Contributions in the ADP or ACP test requires compliance with Reg. 1.401(k)-2(a)(6)(iv) or Reg. 1.401(m)-2(a)(6)(v), respectively, that require the Qualified Matching Contribution be no greater than 5% of a Participant's compensation or no more than twice a "representative contribution rate" determined by analyzing the Qualified Matching Contributions provided to all Non-Highly Compensated Employees.

### 2.7.3  Multiple Plan Limitations For ADP and ACP Testing.

**(a)**   No Participant will be permitted to have Elective Deferrals made under this Plan, or any other qualified plan maintained by the Employer, during any taxable year, in excess of the dollar limitation contained in Code section 402(g)(1) in effect at the beginning of such taxable year.

**(b)**   The ADP for any Participant who is a Highly Compensated Employee for the Plan Year and who is eligible to have Elective Deferrals (and Qualified Matching Contributions, and Qualified Non-Elective Contributions if treated as Elective Deferrals for purposes of the ADP test) allocated to their Accounts under two or more arrangements described in Code section 401(k) that are maintained by the Employer, will be determined as if such Elective Deferrals and, if applicable, such Qualified Matching Contributions and Qualified Non-Elective Contributions) were made under a single arrangement.  If a Highly Compensated Employee participates in two or more cash or deferred arrangements of the Employer that have different plan years, all Elective Deferrals made during the Plan Year under all such arrangements will be aggregated.  Notwithstanding the foregoing, certain plans will be treated as separate if mandatorily disaggregated under regulations under Code section 401(k).

**(c)**    In the event that this Plan satisfies the requirements of Code sections 401(k), 401(a)(4), or 410(b) only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section will be applied by determining the ADP of Employees as if all such plans were a single plan.  If more than 10% of the Employer's Non-Highly Compensated Employees are involved in a plan coverage change as defined in Treasury Regulations section 1.401(k)-2(c)(4), then any adjustments to the Non-Highly Compensated Employee ADP for the prior year will be made in accordance with such Regulations, unless the Employer has elected in the Adoption Agreement to use the Current Year Testing method.  Plans may be aggregated in order to satisfy Code section 401(k) only if they have the same Plan Year and use the same ADP testing method.

**(d)**    The ACP for any Participant who is a Highly Compensated Employee and who is eligible to have contribution percentage amounts allocated to their  Accounts under two or more plans described in Code section 401(a), or arrangements described in Code section 401(k), that are maintained by the Employer, will be determined as if the total of such contribution percentage amounts was made under each plan.  If a Highly Compensated Employee participates in two or more cash or deferred arrangements that have different plan years, all types of contributions includible in the ACP test from all such arrangements that were made during the Plan Year will be aggregated.  Notwithstanding the foregoing, certain plans will be treated as separate if mandatorily disaggregated under regulations under Code section 401(m).

**(e)**    In the event that this Plan satisfies the requirements of Code sections 401(m), 401(a)(4), or 410(b) only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such Code sections only if aggregated with this Plan, then Section 2.7.2 will be applied by determining the ACP of Employees as if all such plans were a single plan.  If more than 10% of the Employer's Non-Highly Compensated Employees are involved in a plan coverage change as defined in Treasury Regulations section 1.401(m)-2(c)(4), then any adjustments to the Non-Highly Compensated Employee ACP for the prior year will be made in accordance with such regulations, unless the Employer has elected in the Adoption Agreement to use the Current Year Testing method.  Plans may be aggregated in order to satisfy Code section 401(m) only if they have the same Plan Year and use the same ACP testing method.

**2.7.4  Different Testing Methods for Elective Deferrals and Matching Contributions.**  The Plan must use the same testing method for the ADP test under Section 2.7.1 and the ACP test under Section 2.7.2 unless the Employer prohibits the use of Elective Deferrals in the ACP test and Recharacterization of Excess Contributions and the use of Qualified Matching Contributions in the ADP test.

**2.7.5  Distribution of Excess Elective Deferrals.**  A Participant may assign to the Plan any Excess Elective Deferrals made during a taxable year of the Participant by notifying the Plan Administrator on or before March 15th of each calendar year of the amount of the Excess Elective Deferrals to be assigned to the Plan.  A Participant is deemed to notify the Plan Administrator of any Excess Elective Deferrals that arise by taking into account only those Elective Deferrals made to this Plan and any other plans of the Employer.

Notwithstanding any other provision of the Plan, Excess Elective Deferrals, plus any income and minus any loss allocable thereto, will be distributed no later than April 15th to any Participant to whose Account Excess Elective Deferrals were assigned for the preceding year and who claims Excess Elective Deferrals for such taxable year.  For years beginning after 2005, distribution of Excess Elective Deferrals for a year will be made first from the Participant's Pre-tax Elective Account to the extent Pre-tax Elective Deferrals were made for the year, unless the Participant specifies otherwise. For taxable years beginning before January 1, 2006, income or loss allocable to the period between the end of the taxable year and the date of distribution (the "gap-period") could be disregarded in determining income or loss on Excess Elective Deferrals for such years. Gap-period income loss must be included in any distribution of Excess Elective Deferrals occurring in taxable years beginning in 2007, but must be excluded from any distribution of Excess Elective Deferrals occurring in taxable years beginning after 2007.

Excess Elective Deferrals distributed under this Section will be adjusted for any income or loss based on a reasonable method of computing the allocable income or loss. The method selected must be applied consistently to all Participants and used for all corrective distributions under the Plan for the Plan Year, and must be the same method that is used by the Plan for allocating income or loss to Participants' Accounts.  The income allocable to Excess Deferrals is equal to the allocable gain or loss through the end of the Plan Year for which the Deferrals were made.

One reasonable method treats the income and loss allocable to Excess Elective Deferrals as the sum of:

**(a)** Income or loss allocable to the Participant's Elective Account for the taxable year, multiplied by a fraction, the numerator of which is such Participant's Excess Elective Deferrals for the year and the denominator is the Participant's Account balance attributable to Elective Deferrals without regard to any income or loss occurring during such taxable year; and

**(b)** 10% of the amount determined under (a) multiplied by the number of whole calendar months between the end of the Participant's taxable year and the date of the distribution, counting the month of distribution if distribution occurs after the 15th of such month. The Gap-period calculation is not applicable after the end of the 2007 Plan Year.

**2.7.6  Distribution of Excess Contributions.**  If elected by the Employer in the Adoption Agreement, if the Plan permits all Participants to make Voluntary Employee Contributions, Elective Deferrals allocated to a Highly Compensated Employee as Excess Contributions will be re-characterized as Voluntary Employee Contributions (after-tax).  A Participant must or may, as elected by the Employer in the Adoption Agreement, treat Excess Contributions allocated to them as an amount distributed to the Participant and then contributed by the Participant to the Plan.  Re-characterized amounts will remain nonforfeitable.  A Highly Compensated Employee may not recharacterize an amount to the extent that such amount in combination with other Voluntary Employee Contributions made by that Employee would exceed any stated limit under the Plan on Voluntary Employee Contributions. Recharacterized Excess Contributions will be reduced by Excess Deferrals previously distributed.

Re-characterization must occur no later than 2 1/2 months after the last day of the Plan Year in which such Excess Contributions arose and is deemed to occur no earlier than the date the last Highly Compensated Employee is informed in writing of the amount re-characterized and the consequences thereof.

If elected in the Adoption Agreement, Excess Contributions that are not recharacterized, plus any income and minus any loss allocable thereto, will be distributed no later than 12 months after the last day of each Plan Year to Highly Compensated Employees to whose Accounts such Excess Contributions were allocated for such Plan Year, except to the extent such Excess Contributions are classified as Catch-up Contributions. For years beginning after 2005, distribution of Excess Contributions for a year will be made first from the Participant's Pre-tax Elective Account to the extent Pre-tax Elective Deferrals were made for the year, unless the Participant specifies otherwise. For Plan years beginning before 2006, income or loss allocable to the period between the end of the Plan Year and the date of distribution (the "gap-period") could be disregarded in determining income or loss on Excess Aggregate Contributions for such years. Gap-period income or loss must be included in any distribution of Excess Aggregate Contributions occurring in Plan Years beginning in 2006 and 2007, but must be excluded from any distribution of Excess Aggregate Contributions occurring in Plan Years beginning after 2007.

The amount of Excess Contributions (and allocable income) to be distributed under this Section of the Plan or the amount of Excess Contributions recharacterized under this Section of the Plan with respect to a Participant for a Plan Year, is reduced by any amounts previously distributed to the Participant from the Plan to correct Excess Deferrals for the Participant's taxable year ending with or within the Plan Year in accordance with Code section 402(g)(2).

The amount required to be distributed to correct an Excess Deferral to an Employee for a taxable year is reduced by any Excess Contributions (and allocable income) previously distributed or excess contributions recharacterized with respect to the Participant for the Plan Year beginning with or within the taxable year. The amount of Excess Contributions includible in the gross income of the Employee, and the amount of Excess Contributions reported by the payer or Plan Administrator as includible in the gross income of the Participant, does not include the amount of an reduction under section 1.402(g)-1(e)(6) of the Treasury regulations.

Excess Contributions are applied to Highly Compensated Employees with the largest amounts of Elective Deferrals taken into account when calculating the ADP test for the Plan Year in which the excess arose, beginning with the Highly Compensated Employee with the largest contribution and continuing in descending order until all the Excess Contributions have been allocated.  To the extent that a Highly Compensated Employee has not reached their Catch-up Contribution limit under the Plan, Excess Contributions allocated to such Highly Compensated Employee are Catch-up Contributions and will not be treated as Excess Contributions.  If such excess amounts (other than Catch-up

Contributions) are distributed more than 2 1/2 months after the last day of the Plan Year in which such excess amounts arose, a 10% excise tax will be imposed on the Employer maintaining the Plan with respect to such amounts.

Excess Contributions will be treated as Annual Additions under Part III, Article II even if distributed to the Participant.

Excess Contributions distributed under this Section will be adjusted for any income or loss based on a reasonable method of computing the allocable income or loss. The method selected must be applied consistently to all Participants and used for all corrective distributions under the Plan for the Plan Year, and must be the same method that is used by the Plan for allocating income or loss to Participants' Accounts.  For Plan Years beginning after 2005, income or loss allocable to the period between the end of the Plan Year and the date of distribution may not be disregarded in determining income or loss.

One reasonable method treats the income and loss allocable to Excess Contributions as the sum of:

**(a)** Income or loss allocable to the Participant's Elective Account (and, if applicable, the Qualified Non-Elective Account or the Qualified Matching Account, or both) for the Plan Year, multiplied by a fraction, the numerator of which is such Participant's Excess Contributions for the year and the denominator is the Participant's Account balance attributable to Elective Deferrals (and Qualified Non-Elective Contributions or Qualified Matching Contributions, or both, if any such contributions are included in the ADP test) without regard to any income or loss occurring during such Plan Year; and

**(b)** 10% of the amount determined under (a) multiplied by the number of whole calendar months between the end of the Plan Year and the date of the distribution, counting the month of distribution if distribution occurs after the 15th of such month.

Matching Contributions attributable to Excess Contributions that have been returned will be forfeited according to the requirements of Section 2.7.9.

Excess Contributions applied to a Participant will be distributed from the Participant's Elective Account and Qualified Matching Account (if applicable) in proportion to the Participant's Elective Deferrals and Qualified Matching Contributions (to the extent used in the ADP test) for the Plan Year.  Excess Contributions will be distributed from the Participant's Qualified Non-Elective Account only to the extent that such Excess Contributions exceed the amount of Excess Contributions in the Participant's Elective Account and Qualified Matching Account.

**2.7.7  Distribution of Excess Aggregate Contributions.**  Notwithstanding any other provision of this Plan, Excess Aggregate Contributions, plus any income and minus any loss allocable thereto, will be forfeited, if forfeitable, or if not forfeitable, distributed no later than 12 months after a Plan Year to Participants to whose accounts such Excess Aggregate Contributions were allocated for such Plan Year. For Plan Years beginning after December 31, 2008, a corrective distribution of Excess Aggregate Contributions (adjusted for any income or loss) will be included in an Employee's gross income in the tax year in which the distribution occurs.

Excess Aggregate Contributions are determined only after first determining the amount of Excess Contributions treated as Employee Contributions due to recharacterization under a CODA in this or any other plan of the Employer.

Excess Aggregate Contributions are applied to Highly Compensated Employees with the largest contribution percentage amounts taken into account in calculating the ACP test for the year in which the excess arose, beginning with the Highly Compensated Employee with the largest contribution percentage amount and continuing in descending order until all the Excess Aggregate Contributions have been allocated.  If such Excess Aggregate Contributions are distributed more than 2 1/2 months after the last day of the Plan Year in which such excess amounts arose, a 10% excise tax will be imposed on the Employer maintaining the Plan with respect to those amounts. However, for Plan Years beginning on or after January 1, 2010 where all eligible Non-Highly Compensated Employees and all eligible Highly Compensated Employees are Covered Employees under the Eligible Automatic Contribution Arrangement for the entire Plan Year, the Plan Administrator must distribute Excess Aggregate Contributions from the Plan no later than 6 months after the last day of the Plan Year in which the excess amounts were determined.

Excess Aggregate Contributions distributed under this Section will be adjusted for any income or loss based on a reasonable method of computing the allocable income or loss. The method selected must be applied consistently to all Participants and used for all corrective distributions under the Plan for the Plan Year, and must be the same method that is used by the Plan for allocating income or loss to Participants' Accounts.  For Plan Years beginning after 2005, income or loss allocable to the period between the end of the Plan Year and the date of distribution may not be disregarded in determining income or loss. For Plan Years beginning on or after January 1, 2008, the income allocable to Excess Aggregate Contributions is equal to the allocable gain or loss through the end of the Plan Year for which the ACP Test is being corrected.

One reasonable method treats the income and loss allocable to the Participant's Excess Aggregate Contributions as the sum of:

**(a)**  Income or loss allocable to the Participant's Voluntary Account, Matching Account, Qualified Matching Account, (if any, and if all amounts therein are not used in the ADP test) and, if applicable, Qualified Non-Elective Contribution and Elective Deferral Accounts for the Plan Year, multiplied by a fraction, the numerator of which is such Participant's Excess Aggregate Contributions for the year and the denominator is the balance(s) of the Participant's Account previously described, if any such contributions are included in the ACP test without regard to any income or loss occurring during such Plan Year; and

**(b)**  10% of the amount determined under (a) multiplied by the number of whole calendar months between the end of the Plan Year and the date of the distribution, counting the month of distribution if distribution occurs after the 15th of such month.

Forfeitures of Excess Aggregate Contributions may either be reallocated to the accounts of Participants who are not Highly Compensated Employees or applied to reduce Employer Contributions, as elected by the Employer in the Adoption Agreement.

Excess Aggregate Contributions allocated to a Participant will be forfeited, if forfeitable, or distributed on a pro-rata basis from the Participant's Voluntary, Matching, and Qualified Matching Accounts (and, if applicable, the Participant's Qualified Non-Elective Account or Elective Account, or both).

**2.7.8  Limitation on Distributions.**  Except as otherwise provided in this Article, Elective Deferrals, Qualified Non-Elective Contributions, Qualified Matching Contributions, and income allocable thereto are not distributable to a Participant or their Beneficiary in accordance with such Participant's or Beneficiary's election prior to severance from employment, death, or Disability.  Such amounts may, however, be distributed upon:

**(a)**  Termination of the Plan without the establishment of another defined contribution plan, other than an employee stock ownership plan (as defined in Code sections 4975(e)(7) or 409(a)) or a simplified employee pension plan as defined in Code section 408(k), a SIMPLE IRA plan as defined in Code section 408(p), a plan or contract described in Code section 403(b) or a plan described in Code section 457(b) or (f)) at any time during the period beginning on the date of plan termination and ending 12 months after all assets have been distributed from the Plan.  Such a distribution must be made in a lump sum.

**(b)**  The attainment of age 59 1/2.

**(c)**  The Hardship of a Participant in accordance with Section 2.5.10.

**(d)**  The Participant's call to active duty after September 11, 2001, (because of the Participant's status as a member of a reserve component) for a period of at least 180 days (90 days for Plan Years beginning before January 1, 2007) or for an indefinite period. (A "qualified reservist distribution.")

**(e)**  The Participant's service in the uniformed services while on active duty for a period of at least 30 days. If a Participant receives a distribution under this provision, the Participant's Elective Deferrals (and Employee Contributions) will be suspended for 6 months after receipt of the distribution.

**(f)**    A federally declared disaster, where resulting legislation authorizes such a distribution.

All such distributions are subject to the spousal and Participant consent requirements, if applicable, contained in Code sections 401(a)(11) and 417 unless the Plan meets the exception of Subsection 2.5.5(c).  In addition, distributions that are triggered by any of the first three events enumerated above must be made in a lump sum.

**2.7.9  Forfeiture of Matching Contributions.** Matching Contributions will be forfeited when:

**(a)**    The Elective Deferral to which the Matching Contribution or Qualified Matching Contribution relates is returned because it was determined to be Excess Deferrals (unless the Excess Deferrals are for Non-Highly Compensated Employees), Excess Contributions, or Excess Annual Additions; or

**(b)**    The Employee contribution to which the Matching Contribution relates is returned because it was determined to be either Excess Aggregate Contributions or Excess Annual Additions.

The requirements of this Section will be met in whole or in part if the Matching Contribution in question is returned to the Participant as an Excess Aggregate Contribution.

Following the forfeiture of Matching Contributions pursuant to this Section, the highest rate of Matching Contribution allocated to any Highly Compensated Employee may not exceed the lowest rate of Matching Contribution allocated to any Non-Highly Compensated Employee eligible to receive an allocation of Matching Contributions under this Plan or under all plans in a mandatory or permissive aggregation group.  This provision will not apply in the case of a Non-Highly Compensated Employee whose allocation of Matching Contributions is limited by the application of Code section 415.  Allocation of Forfeitures under this Section will be governed by elections regarding the allocation of the forfeiture of Matching Contributions in the Adoption Agreement.

# ARTICLE VIII

## SIMPLE 401(k) LIMITATIONS

Notwithstanding any provision in the Plan or Adoption Agreement to the contrary, during any year for which the Employer has elected to treat this Plan as a SIMPLE 401(k) plan under Code sections 401(k)(11) and 401(m)(10), this Article VIII and the attendant election of the Adoption Agreement or any amendment thereof will prevail.

**2.8.1  Establishing a SIMPLE 401(k) Plan.**  If the Employer has elected in the Adoption Agreement to have the 401(k) SIMPLE Provisions apply, then the provisions of this Article will apply for a Year only if (a) the Employer is an Eligible Employer and (b) no contributions are made, or benefits accrued for services during the Year, on behalf of any Eligible Employee under any other plan, contract, pension, or trust described in Code section 219(g)(5)(A) or (B) maintained by the Employer.  To the extent that any other provision of the Plan is inconsistent with the provisions of this Article, the provisions of this Article govern.

**2.8.2  Definitions.**

**(a)**    **"Compensation"** means, for purposes of Sections 2.8.2(b), 2.8.3, and 2.8.4 of this Article, the sum of the wages, tips, and other compensation from the Employer subject to federal income tax withholding (as described in Code section 6051(a)(3)) and the Employee's salary reduction contributions made under this or any other section 401(k) plan, and, if applicable, Elective Deferrals under a section 408(p) SIMPLE IRA Plan, a SARSEP, or a section 403(b) annuity contract and compensation deferred under a section 457 plan, required to be reported by the Employer on Form W-2 (as described in Code section 6051(a)(8)).  For Self-Employed Individuals, Compensation means net earnings from self-employment determined under Code section 1402(a) prior to subtracting any contributions made under this Plan on behalf of the individual.  The provisions of the Plan implementing the limit on compensation under Code section 401(a)(17) apply to the Compensation under Sections 2.8.3 and 2.8.4 of this Article.

**(b)**    **"Eligible Employer"** means, with respect to any Year (as defined in Subsection 2.8.2(d) below), an employer that had no more than 100 employees who received at least $5,000 of Compensation from the Employer for the preceding Year.  In applying the preceding sentence, all employees of controlled groups of corporations under Code section 414(b), all employees of trades or businesses (whether incorporated or not) under common control under Code section 414(c), all employees of affiliated service groups under Code section 414(m), and leased employees required to be treated as the Employer's employees under Code section 414(n), are taken into account.

An Eligible Employer that elects to have the 401(k) SIMPLE Provisions apply to the Plan and that fails to be an Eligible Employer for any subsequent Year is treated as an Eligible Employer for the 2 Years following the last Year the Employer was an Eligible Employer.  If the failure is due to any acquisition, disposition, or similar transaction involving an Eligible Employer, the preceding sentence applies only if the provisions of Code section 410(b)(6)(C)(i) are satisfied.

**(c)**    **"Eligible Employee"** means, for purposes of the 401(k) SIMPLE Provisions, any Employee who is entitled to make Elective Deferrals under the terms of the Plan.

**(d)**    **"Year"** means the calendar year.

**2.8.3  Salary Reduction Contributions.**

**(a)**    Each Eligible Employee may make a salary reduction election to have their Compensation reduced for the Year in any amount selected by the Employee subject to the limitation in Subsection 2.8.3(b).  The Employer will make a salary reduction contribution to the Plan, as an Elective Deferral, in the amount by which the Employee's Compensation has been reduced.

**(b)**    The total salary reduction contribution for the Year cannot exceed $10,000 for any Employee.  To the extent permitted by law, this amount will be adjusted to reflect any annual cost-of-living increases announced by the IRS.  After 2005, the $10,000 limit will be adjusted by the Secretary of the Treasury for cost-of-living increases under Code section 408(p)(2)(E).  Any such adjustments will be in multiples of $500.

**(c)**    The amount of a Participant's salary reduction contributions permitted for a Year is increased for Participants aged 50 or over by the amount of allowable Catch-up Contributions.  Allowable Catch-up Contributions are $2,500 for 2006.  After 2006, the $2,500 limit will be adjusted by the Secretary of the Treasury for cost-of-living increases under Code section 414(v)(2)(C).  Any such adjustments will be in multiples of $500.  Catch-up Contributions are otherwise treated the same as other salary reduction contributions.

### 2.8.4  Other Contributions.

**(a)**    **Matching Contributions.**  Each Year, the Employer will contribute a Matching Contribution to the Plan on behalf of each Employee who makes a salary reduction election under Section 2.8.3.  The amount of the Matching Contribution will be equal to the Employee's salary reduction contribution up to a limit of 3% of the Employee's Compensation for the full Year.

**(b)**    **Non-Elective Contribution.**  For any Year, instead of a Matching Contribution, the Employer may elect to contribute a Non-Elective Contribution of 2% of Compensation for the full Year for each Eligible Employee who received at least $5,000 of Compensation (or such lesser amount as elected by the Employer in the Adoption Agreement) for the Year.

**2.8.5  Limitation on Other Contributions.**  No Employer or Employee contributions may be made to this Plan for the Year other than a salary reduction contributions described in Section 2.8.3, Matching or Non-Elective Contributions described in Section 2.8.4, and rollover contributions described in Treasury Regulations section 1.402(c)-2, Q&A-1(a).

**2.8.6  Section 415 Limitations.**  The provisions of the Plan implementing the limitations of Code section 415 apply to contributions made pursuant to Sections 2.8.3 (other than Catch-up Contributions) and 2.8.4.

### 2.8.7  Election and Notice Requirements.

**(a)    Election Period**

**(1)**    In addition to any other election periods provided under the Plan, each Eligible Employee may make or modify a salary reduction election during the 60-day period immediately preceding each January 1.

**(2)**    For the Year an Employee becomes eligible to make salary reduction contributions under the 401(k) SIMPLE Provisions, the 60-day election period requirement of Subsection 2.8.7(a)(1) is deemed satisfied if the Employee may make or modify a salary reduction election during a 60-day period that includes either the date the Employee becomes eligible or the day before.

**(3)**    Each Employee may terminate a salary reduction election at any time during the Year.

**(b)    Notice Requirements**

**(1)**    The Employer will notify each Eligible Employee prior to the 60-day election period described in Subsection 2.8.7(a) that they can make a salary reduction election or modify a prior election during that period.

**(2)**    The notification described in Subsection 2.8.7(b)(1) will indicate whether the Employer will provide a 3% Matching Contribution described in Subsection 2.8.4(a) or a 2% Non-Elective Contribution described in Subsection 2.8.4(b).

**2.8.8  Vesting Requirements.**  All benefits attributable to contributions described in Sections 2.8.3 and 2.8.4 are

nonforfeitable at all times, and all previous contributions made under the Plan are nonforfeitable as of the beginning of the Year the 401(k) SIMPLE Provisions apply.

**2.8.9  Top-Heavy Rules.**  The Plan is not treated as a Top-Heavy plan under Code section 416 for any Year for which this Article applies.

**2.8.10  Nondiscrimination Tests.**  The ADP and ACP tests described in Sections 2.7.1 and 2.7.2 of the Plan are treated as satisfied for any Year for which this Article applies.

**2.8.11  Revocation.**  An amendment to have the 401(k) SIMPLE Provisions no longer apply is effective the next January 1 following the adoption of the amendment.

# ARTICLE IX

# SAFE HARBOR CODA PROVISIONS

### 2.9.1  Safe Harbor CODA Rules.

**(a)**  If the Employer has elected in the Adoption Agreement to make a Safe Harbor CODA contribution pursuant to Code section 401(k)(12) or 401(k)(13) , this Article will apply for the Plan Year and any provisions relating to the ADP test described in Code section 401(k)(3) or the ACP test described in Code section 401(m)(2) will not apply. In accordance with Treasury Regulations 1.401(k)-1(e)(7) and 1.401(m)-1(c)(2), it is impermissible for the Plan to use ADP and ACP testing for a Plan Year in which it is intended for the Plan to be a safe harbor plan pursuant to sections 401(k) and 401(m) of the Code and the Plan fails to satisfy the requirements of such safe harbors for the Plan Year.

If the Employer has not elected a Safe Harbor CODA contribution option, the Employer may amend the Plan not later than 30 days before the last day of the Plan Year to specify that the Safe Harbor Non-Elective Contribution method will be used for the Plan Year, provided the Notice Requirement of Subsection 2.9.1(c) below, is met.

**(b)**  If the Employer has not elected a Safe Harbor contribution option, the Plan must satisfy the ADP (and, if applicable, ACP) test for the Plan Year.

**(c)**  **Notice Requirement.**  For the purpose of a Safe Harbor contribution pursuant to Code section 401(k)(12), at least 30 days, or any other reasonable period but not more than 90 days, before the beginning of the Plan Year, the Employer must provide each Eligible Employee with a comprehensive notice of the Employee's rights and obligations under the Plan, written in a manner calculated to be understood by the average Eligible Employee, as described in Code section 401(k)(12)(D) and the applicable regulations.  If an Employee becomes eligible after the Employer distributes the notice for a particular Plan Year, the Employer must provide the notice no more than 90 days before such Employee becomes eligible but not later than the date the Employee becomes eligible.

For the purpose of a Safe Harbor contribution pursuant to Code section 401(k)13), the Employer will give each Employee to whom the Qualified Automatic Contribution Arrangement in Section 2.2.3(c) applies, a notice that meets the requirements of Section 2.2.3(d).

The Employer reserves the right to amend the Plan to make a Safe Harbor Non-Elective Contribution under Subsection 2.9.1(b) above.  If the Employer wishes to exercise that right, the notice given to Eligible Employees before the beginning of the Plan Year must provide that: (1) the Plan may be amended during the Plan Year to provide that the Employer will make a Safe Harbor Non-Elective Contribution of at least 3% to the Plan for the Plan Year, and (2) if the Plan is so amended, the Employer will give a supplemental notice to Eligible Employees 30 days prior to the last day of the Plan Year informing them of such an amendment.

**(d)**  **Election Periods.**  In addition to any other election periods provided under the Plan, each Eligible Employee may make or modify a deferral election during the 30-day period immediately following receipt of the notice described in Subsection 2.9.1(c) above.

**(e)**  **Timing of Matching Contributions.** The Employer may also elect in the Adoption Agreement to meet the matching contribution requirements of this Article IX either (1) with respect to the Plan Year as a whole, or (2) separately with respect to each payroll period (or with respect to all payroll periods ending with or within each month or plan-year quarter) taken into account under the Plan for the Plan Year (the "payroll period method"). The payroll period method applies only for purposes of satisfying the ADP Safe Harbor Matching Contribution requirements of Section 2.9.3 of the Plan and the ACP Safe Harbor Matching Contribution requirements of Section 2.9.4 of the Plan, if applicable.

**(f)**  **Interaction With Other Plan Provisions.**  For any Plan Year in which the Plan relies on this Article instead of Subsection 2.7.2 to satisfy Code section 401(k)(3), the Plan is treated as having used Current Year Testing for

purposes of Sections 2.7.1 and 2.7.2. The Plan cannot switch to Prior Year Testing under those Sections unless the Plan meets the requirements of Treasury Regulations section 1.401(k)-2(c)(1)(ii).

**(g)  Suspension, Reduction, or Discontinuance of a Safe Harbor Matching Contribution option.**

**(1)**  Pursuant to the Treasury Regulations sections 1.401(k)-3(g) and 1.401(m)-3(h) the Employer may elect to suspend, reduce or discontinue the Safe Harbor Matching Contributions on Elective Deferrals provided:

**(A)**  all Eligible Employees are provided a notice of the suspension;

**(B)**  all Eligible Employees are given a reasonable opportunity (including a reasonable period after receipt of the notice), prior to the discontinuance of the Safe Harbor Matching Contributions, to change their cash or deferred elections and, if applicable, their Employee Contribution elections;

**(C)**  The Plan satisfies the Safe Harbor Matching Contribution requirement with respect to Safe Harbor Compensation paid through the effective date of the Amendment;

**(D)**  The ADP and/or the ACP test will be satisfied for the entire Plan Year in which the Safe Harbor Matching Contribution was reduced or suspended; using the current year testing method described in Treasury Regulations 1.401(k)-2(a)(2)(ii) and 1.401(m)-2(a)(1)(ii); and

**(E)**  The Plan must continue to provide Safe Harbor Matching Contributions on Elective Deferrals (or if applicable Voluntary Employee Contributions) until the effective date of the Amendment.

**(2)**  The Plan is no longer a safe harbor plan described in Code sections 401(k)(12), 401(k)(13), 401(m)(11), or 401(m)(12) for the entire Plan Year. Accordingly, the Plan is not described in section 416(g)(4)(H) of the Code and, thus, will be subject to the Top-Heavy rules under section 416.

**(h)  Suspension, Reduction or Discontinuance of a Safe Harbor Non-Elective Contribution option.** The Employer may elect to suspend, reduce, or discontinue the Safe Harbor Non-Elective Contribution option provided the Employer has incurred a substantial business hardship (comparable to a substantial business hardship described in Code section 412(c)).

**(1)**  For purposes of this subsection the factors taken into account in determining a substantial business hardship will include (but will not be limited to) whether or not:

**(A)**

the Employer is operating at an economic loss,

**(B)**  there is substantial unemployment or underemployment in the trade or business and in the industry concerned,

**(C)**  the sales and profits of the industry concerned are depressed or declining, and

**(D)**  it is reasonable to expect that the Plan will be continued only if the Safe Harbor Non-Elective Contributions are suspended.

**(2)**  The Employer may elect to suspend, reduce, or discontinue the Safe Harbor Non-Elective Contribution with an effective date on the later of the date that is 30 days after:

**(A)**  all Eligible Employees are provided a notice of the suspension;

**(B)**  Eligible Employees are given a reasonable opportunity (including a reasonable period after receipt of this notice) prior to the reduction or suspension of the Safe Harbor Non-Elective Contributions to change their cash or deferred elections and, if applicable, their Voluntary Employee Contribution elections;

**(C)** The Employer makes the Safe Harbor Non-Elective Contribution with respect to Safe Harbor Compensation paid through the effective date of the amendment. The Plan must pro-rate the otherwise applicable compensation limit under section 401(a)(17) of the Code in accordance with the requirements of section 1.401(a)(17)-1(b)(3)(iii)(A) of the Treasury Regulations.

**(D)** The ADP and/or the ACP test will be satisfied for the entire Plan Year in which the Safe Harbor Non-Elective Contribution was reduced or suspended; using the current year testing method described in Treasury Regulations 1.401(k)-2(a)(2)(ii) and 1.401(m)-2(a)(1)(ii).

**(3)** The Plan is no longer a safe harbor plan described in section 401(k)(12), 401(k)(13), 401(m)(11), or 401(m)(12) of the Code for the entire Plan Year. Accordingly, the Plan is not described in section 416(g)(4)(H) of the Code and, thus, will be subject to the top-heavy rules under section 416.

Safe Harbor Matching Contributions and Safe Harbor Non-Elective Contributions are immediately nonforfeitable regardless of the age and service of the Participant, or whether the Participant is employed on a specific date.

**(i)    Interaction with the Top-Heavy Rules.**

**(1)** If the Plan is Top-Heavy, within the meaning of Subsection 2.6.2(c), an ADP Test Safe Harbor Non-Elective Contribution provided pursuant to Subsection 2.9.3(a) can be counted toward the Plan's Top-Heavy Minimum Contribution requirement.  To the extent that the ADP Test Safe Harbor Non-Elective Contribution and other eligible Employer Contributions are less than the Plan's Top-Heavy Minimum Contribution requirement for a particular Participant, then that Participant must receive the an additional contribution sufficient to satisfy the applicable Top-Heavy Minimum Contribution requirement.  Although for purposes of the ADP Test Safe Harbor Non-Elective Contribution, the Plan can limit a Participant's compensation to a portion of the Plan Year, the Plan must calculate the Top-Heavy Minimum Contribution using the Participant's compensation for the entire Plan Year.

**(2)** Effective for Plan Years beginning after December 31, 2001, an ADP Test Safe Harbor Matching Contribution provided pursuant to Subsection 2.9.3(a) can be counted toward the Plan's Top-Heavy Minimum Contribution requirement.  To the extent that the ADP Test Safe Harbor Matching Contribution and other eligible Employer Contributions are less than the Plan's Top-Heavy Minimum Contribution requirement for a particular Participant, then that Participant must receive an additional contribution sufficient to satisfy the applicable Top-Heavy Minimum Contribution requirement.

**(3)** If the Plan receives only Elective Deferrals (including Catch-up Contributions) and contributions pursuant to this Article in a Plan Year, Code section 416(g)(4)(H) provides that the Plan will be deemed not to be Top-Heavy even if it would otherwise be considered a Top-Heavy Plan pursuant to Subsection 2.6.2(c). This rule is effective for Plan Years beginning after December 31, 2001.  To meet this requirement for a particular Plan Year, no other Employer Contributions may be allocated to Participants for that Plan Year, including the allocation of any Forfeitures.  In addition, all matching contributions must satisfy the requirements of Code section 401(m)(11).

**(j)    This Article Governs.**  To the extent that any other provision of the Plan is inconsistent with the provisions of this Article, the provisions of this Article will govern.

## 2.9.2  Definitions.

**(a)    "Compensation"** is defined in Part I, Article II, except, for purposes of this Article, no dollar limit, other than the limit imposed by Code section 401(a)(17), applies to the Compensation of a Non-Highly Compensated Employee.  However, solely for purposes of determining the Compensation subject to a Participant's deferral election, the Employer may use an alternative definition to the one described in the preceding sentence, provided such alternative definition is a reasonable definition within the meaning of Treasury Regulations section 1.414(s)-1(d)(2) and permits each Participant to elect sufficient Elective Deferrals to receive the maximum amount of matching contributions (determined using the definition of Compensation described in the preceding sentence) available to the Participant under the Plan.

(b) **"Eligible Employee"** means an Employee eligible to make Elective Deferrals under the Plan for any part of the Plan Year or who would be eligible to make Elective Deferrals but for a suspension due to a Hardship distribution described in Section 2.5.10 or to statutory limitations, such as Code sections 402(g) and 415. The Employer may elect in the Adoption Agreement to exclude Participants from the ADP Safe Harbor or ACP Safe Harbor portion of the Plan who have not completed a Year of Service since their original Employment Commencement Date, or have not yet reached age 21, and are not employed on the earlier of the first day of the next Plan Year after meeting the preceding requirements or 6 months after meeting the preceding requirements.

### 2.9.3  ADP Test Safe Harbor Contributions.

(a) **ADP Test Safe Harbor Contributions Options.** The Employer may elect in the Adoption Agreement to make a Qualified Automatic Contribution Arrangement, Basic or Enhanced Safe Harbor Matching Contributions, or Safe Harbor Non-Elective Contributions, for the Plan Year to this Plan in lieu of satisfying the ADP testing requirements under Sections 2.7.1 et Seq.

   (1) In the case where the Employer elects to make ADP Test Safe Harbor Contributions for the Plan Year, unless the Employer elects in the Adoption Agreement to make Enhanced Matching Contributions or Safe Harbor Non-Elective Contributions, the Employer will contribute for the Plan Year a Safe Harbor Matching Contribution to the Plan on behalf of each Eligible Employee equal to (i) 100% of the amount of the Employee's Elective Deferrals that do not exceed 3% of the Employee's Compensation for the Plan Year, plus (ii) 50% of the amount of the Employee's Elective Deferrals that exceed 3% of the Employee's Compensation but that do not exceed 5% of the Employee's Compensation ("Basic Matching Contributions").

   (2) Notwithstanding the requirement in (a) above that the Employer make ADP Test Safe Harbor Contributions to this Plan, a plan may provide in the Adoption Agreement that ADP Test Safe Harbor Contributions will be made to the defined contribution plan indicated in the Adoption Agreement. However, such contributions will be made to this Plan unless (i) each Employee eligible under this Plan is also eligible under the other plan and (ii) the other plan has the same plan year as this Plan.

   (3) The Participant's Account balance derived from ADP Test Safe Harbor Contributions is nonforfeitable and may not be distributed earlier than severance from employment, death, Disability, an event described in Code section 401(k)(10), or, in the case of a profit sharing plan, the attainment of age 59 1/2. No distributions on account of Hardship are permitted. In addition, such contributions must satisfy the ADP Test Safe Harbor without regard to permitted disparity under Code section 401(l).

(b) **Suspension of ADP Safe Harbor Contributions.** If the Plan is making Matching Contributions under Subsection (a), the Plan may be amended to reduce or eliminate such Contributions by complying with the requirements of Section 2.9.1.

### 2.9.4  ACP Test Safe Harbor Matching Contribution Options.

(a) In addition to the ADP Test Safe Harbor Contribution Options described in Subsection 2.9.3(a) of this Article, the Employer will make the ACP Test Safe Harbor Matching Contributions, if any, indicated in the Adoption Agreement for the Plan Year.

(b) ACP Test Safe Harbor Matching Contributions will be vested as indicated in the Adoption Agreement, but, in any event, such contributions will be fully vested at Normal Retirement Age, upon the complete or partial termination of the Plan, or upon the complete discontinuance of Employer Contributions. Forfeitures of non-vested ACP Test Safe Harbor Matching Contributions will be used to reduce the Employer's Contribution.

# ARTICLE X

# PARTICIPATING EMPLOYERS

If elected by the Employer in the Adoption Agreement Related Employers and Affiliated Employers may adopt the Plan. If the Plan is adopted by one or more Affiliated Employers the Plan will be a Multiple Employer Plan (MEP) established and maintained pursuant to Code section 413(c) as a tax qualified defined contribution plan under Code sections 401 and 501. The Plan will be operated for the exclusive benefit of the Eligible Employees of the Participating Employers.

**2.10.1  Adoption.** If permitted by the Lead Sponsor, Related Employers and Affiliated Employers may adopt the plan by signing the same Adoption Agreement as the Lead Sponsor, executing a Participating Employer Addendum, or executing an Adoption Agreement that specifies the Employer is a Participating Employer in the Plan. No employer will become a Participating Employer of the Plan without the written consent of the Lead Sponsor.

The Participating Employer will be bound by the terms of the Plan, including all amendments, as adopted by the Lead Sponsor. If permitted by the Lead Sponsor, the Participating Employer may elect separate provisions to apply to only the Employees employed by the Participating Employer. These elections can be made using either a Participating Employer Addendum or a separate Adoption Agreement. The Lead Sponsor may limit the options available to Participating Employers if a Participating Employer Addendum or a separate Adoption Agreement is used. A Participating Employer Addendum or separate Adoption Agreement will not be considered valid unless it is executed by the Lead Sponsor.

**2.10.2  Plan Maintenance.**  The Lead Sponsor may at any time or times amend the Plan, in whole or in part, without the consent of the Participating Employer(s). A Participating Employer may not modify the Plan, in whole or in part, without the consent of the Lead Sponsor. Any changes made by a Participating Employer without the consent of the Lead Sponsor will cause such Participating Employer to cease being a Participating Employer in the Plan.

In the event the Lead Sponsor terminates their participation in the Plan, at the discretion of the Lead Sponsor any Participating Employer may become the Lead Sponsor by execution of a new Adoption Agreement.

**2.10.3  Operational Rules.**  The rules contained in this Plan Section govern the application of certain operational provisions and qualification requirements contained in the Plan with respect to the Lead Sponsor and each Participating Employer.  With respect to the Lead Sponsor and each Participating Employer, the following rules apply the operation of the Plan.

**(a)**  **Service.**  An Employee's service, Hours of Service, Years of Service (or any fractional period thereof) and periods of employment will be determined by treating the Lead Sponsor, all Participating Employers, and Related Employers of either the Lead Sponsor or a Participating Employer as a single Employer.

An Employee's employment status will be determined by treating the Lead Sponsor, all Participating Employers, and Related Employers of either the Lead Sponsor or a Participating Employer as a single Employer. An Employee who terminates employment from the Lead Sponsor or a Participating Employer but starts or continues employment with the Lead Sponsor or a Participating Employer will not have a severance of employment.

**(b)**  **Testing.**

Participating Employers will be treated as a single Employers for the purposes of meeting the requirements under:
(1) Code section 415,
(2) Code section 401(a)(2) relating to the "exclusive benefit rule",
(3) Code section 402(g), and

(4) Code section 414(v).

Except as required under Code section 414(b), (c), (m), or (o), the requirements of the following Code sections will be applied separately to the Lead Sponsor and each Participating Employers:
(1) Code section 410(b),
(2) Code section 401(a)(4),
(3) Code section 401(k),
(4) Code section 401(m),
(5) Code section 414(q), and
(6) Code section 416.

**2.10.4  Duties.**  The Lead Sponsor and Participating Employer(s) agree to provide to the Plan Administrator, in a timely fashion, all information the Plan Administrator, it its sole discretion, deems necessary for the operation of the Plan and to keep the Plan in compliance with all Code and regulatory requirements. The Lead Sponsor and Participating Employer(s) agree to provide all required contributions related to Employees that they employee in compliance with the provisions of the Plan and all Code and regulatory requirements. The Lead Sponsor and each Participating Employer(s) will be jointly and severally liable for all Plan expenses.

The Lead Sponsor and each Participating Employer will indemnify and hold harmless the Plan Administrator (and their delegates), any other Participating Employer, and any person serving as the Trustee from all claims, liabilities, losses, damages and expenses, including reasonable attorneys' fees and expenses for its failure to operate in accordance with the Plan or any intentional or negligent act or omission with respect to the Plan including but not limited to failure of oversight and or appointment.

The Plan Administrator may, in its sole discretion, utilize any IRS or DOL correction program to correct any Plan failures. Any fees or costs associated with such program will be the responsibility of the Lead Sponsor or Participating Employer(s) whose actions lead to the Plan failures.

**2.10.5  Withdrawal of an Employer.**  The Lead Sponsor or any Participating Employer may elect to discontinue or revoke their participation in the Plan by providing written notice to the Plan Administrator within a reasonable time prior to the effective date of such discontinuance.  Such discontinuance means there are no further benefits accruing after the effective date of such discontinuance. The Lead Sponsor may discontinue the participation in the Plan of any Participating Employer by providing written notice to the Participating Employer within a reasonable time prior to the effective date of such discontinuance. At the time of discontinuance the Plan Administrator has the right, but not the duty, to take any of the following actions:

**(a)**   **Spin-Off.** The Lead Sponsor or the former Participating Employer can set up a successor plan. This successor plan will receive the assets of the Plan related to the former Participating Employer thru a non-elective transfer of assets. The Lead Sponsor may name either itself or the former Participating Employer as the Plan Administrator and/or adopting Employer.

**(b)**   **Existing Plan.** If the former Participating Employer sponsors or participates in an existing qualified defined contribution plan, the Lead Sponsor may direct that the assets of the Plan related to the former Participating Employer be transferred to such plan thru a non-elective transfer of assets.

**(c)**   **Retain Assets.** The Lead Sponsor may chose to retain the assets related to the former Participating Employer in the Plan.

At the time of such discontinuance the former Participating Employer much promptly contribute amounts necessary to cover all accrued benefits related to its Participants under the Plan that are not covered by contributions already made. The discontinuance of participation in the Plan by the Lead Sponsor or any Participating Employer does not, in and of itself, result in a termination from employment for the Participants of the former Participating Employer.

# PART III

# ARTICLE I

# <u>ACCOUNTING</u>

**3.1.1  Accounts.**  All income, profits, recoveries, contributions, and any and all moneys, securities, and properties of any kind at any time received or held by the Trustee will be held as a commingled Trust Fund, except to the extent such assets are transferred to a Segregated Fund or Controlled Account.  For accounting purposes, the Plan Administrator shall, as necessary, establish and maintain the following Accounts for each Participant:

**(a)**   Employer Account

**(b)**   Controlled Account

**(c)**   Elective Account

**(d)**   Matching Account

**(e)**   Qualified Matching Account

**(f)**   Qualified Non-Elective Account

**(g)**   Voluntary Account

**(h)**   Deductible Voluntary Account

**(i)**   Pre-tax Elective Account

**(j)**   Roth Deferral Account

**(k)**   Deemed IRA Account

**(l)**   Pre-tax IRA Account

**(m)**   Roth IRA Account

**(n)**   Rollover Account

**(o)**   ADP Test Safe Harbor Account

**(p)**   ACP Test Safe Harbor Account

**(q)**   Segregated Account

**(r)**   In-Plan Roth Conversion Account

**(s)**   Paid Time-Off Contribution Account

If, to fulfill any purposes of the Plan, assets are either deposited initially or transferred to a Segregated Fund for the benefit of a Participant, the Plan Administrator will establish and maintain a Segregated Account for the Participant.  If a Participant elects to exercise investment control over all or a portion of their Accounts, the Plan Administrator will establish and maintain a Controlled Account for the Participant.

### 3.1.2  Valuation Adjustments.

**(a)**   As of each Valuation Date, the following adjustments will be made to each Participant's Accounts in a manner consistent with the Plan's recordkeeping system:

**(1)**   **Distributions.**  Any distribution made to or on behalf of a Participant since the last preceding Valuation Date will be deducted from the Participant's Account from which the distribution was made.

**(2)**   **Expenses.**  Expenses earmarked for an individual Participant, if any, will reduce their Account balance.

**(3)**   **Contributions.**  Each Participant's Account will be increased by their portion of any Employer Contributions, Non-Elective Contributions, other contributions to the Plan by the Employer, Elective Deferrals, any allocated Forfeitures, and any other contributions made on behalf of the Participant.

**(4)**   **Forfeitures.**  If a Participant terminates service with the Employer, is less than 100% vested, and forfeits the non-vested portion of their Account, then their Account and the amount available for distribution will be reduced by the amount of such Forfeiture.  To the extent that the Plan provides additional allocations from Forfeitures, the Accounts of those eligible for such an allocation will increase.

**(5)**   **Adjustment to Fair Market Value.**  The Trustee will appraise all moneys, securities, and other property in the Trust Fund, including Segregated Funds and Controlled Accounts but excluding Life Insurance Policies, at the then fair market value for each asset.  In determining such value, all income and contributions, if any, received by the Trustee from the Employer or Participants will be included and all expenses will be deducted, such amounts being determined under the accounting method of the Trust.  If the total net value so determined by the Trustee exceeds (or is less than) the total amount in the respective Accounts of all Participants, the excess (or deficiency) will be added to (or deducted from) the respective Accounts of all Participants in the ratio that each such Participant's Account bears to the total amount in all such Accounts.

**(6)**   **Insurance.**  If this Plan is funded by individual contracts that provide a Participant's benefit under the Plan, such individual contracts will constitute the Participant's Account balance.  If this Plan is funded by group annuity contracts or group insurance contracts, premiums or other consideration received by the insurance company must be allocated to Participants' Accounts under the Plan.  Payments made since the last preceding Valuation Date for Life Insurance Policies on the life of a Participant or someone in whom the Participant has an insurable interest (including without limitation payments of premiums and interest on policy loans) will be deducted from the Account of the Participant from which the payment was made.  Dividends or credits received since the last preceding Valuation Date on any Life Insurance Policy will be added to the Account of the Participant from which the premiums for such Life Insurance Policy have been paid.

**(7)**   **Loans.**  The issuance of a loan to a Participant reduces the Account from which it is issued and increases the Participant's outstanding loan obligation.  Loan repayments, including principal and interest, will increase the Account to which the repayment is made and decrease the outstanding loan obligation.

**(8)**   **Transfers To or From Segregated Funds.**  To the extent that funds are transferred to a Segregated Fund from the general assets of the Trust or from a Segregated Fund to the general assets of the Trust pursuant to any of the provisions of the Plan, the Account from which the funds were transferred will be decreased and the Account to which the funds were transferred will be increased for each affected Participant.

**(b)**   Every adjustment made pursuant to this Section will be considered as having been made no later than the applicable Valuation Date pursuant to policies established by the Trustee in a nondiscriminatory manner.  The Trustee's determination regarding the valuation of assets and charges or credits to the individual Accounts of the respective Participants will be conclusive and binding on all persons.  If funds are transferred from the Trust Fund to a Segregated Fund as of any date other than a Valuation Date pursuant to the terms of the Plan, the adjustment made pursuant to this Section will be made as of the date such transfer was made, as if such date is a

Valuation Date.  If any Participant receives a distribution pursuant to the terms of the Plan as of any date other than a Valuation Date, then the adjustments made pursuant to this Section will be made in the manner specified in the Adoption Agreement.

**3.1.3  Allocation of Earnings, Gains, and Losses.**  As of each Valuation Date, the net income of the Trust Fund recognized since the prior Valuation Date will be allocated among Participant Accounts in a nondiscriminatory manner according to policies established by the Trustee.  Net income is the interest, dividends, net gains or losses from the sale of investments, and unrealized appreciation (depreciation) in Trust Fund assets, less investment expenses of the Trust Fund.  The portion of a Participant's Account held in a Controlled Account will not participate in the allocation of earnings of this Section, but instead will be credited with the actual earnings of such Controlled Account. In the event that the Participant's Accounts (or portion thereof) are invested in assets that are valued on a daily basis, their Account will reflect the daily activity of such assets and the method of allocating earnings described above will not apply.

**3.1.4  Interim Valuations.**  It is contemplated that the Trust Fund will be valued by the Trustee and allocations made only on a Valuation Date.  At any time that the Plan's valuations are not performed on a daily basis, should it be necessary to make distributions under the provisions hereof and the Plan Administrator in good faith determines that, because of (a) an extraordinary change in general economic conditions, (b) the occurrence of some casualty materially affecting the value of the Trust Fund or a substantial part thereof, or (c) a significant fluctuation in the value of the Trust Fund has occurred since the immediately preceding Valuation Date, the Plan Administrator may, in their sole discretion, prevent the payee from receiving a substantially greater or lesser amount than what they would be entitled to, based on current values, and cause a re-valuation of the Trust Fund to be made and a reallocation of the interests therein as of the date the payee's right of distribution becomes fixed.  The Plan Administrator's determination to make such special valuation and the valuation of the Trust Fund as determined by the Trustee will be conclusive and binding on all persons ever interested hereunder. Such interim valuation will not discriminate in favor of Highly Compensated Employees.

**3.1.5  Earnings on Forfeitures.**  In the event that a Participant forfeits part of their Account balance, such Forfeiture will not be credited with earnings after the date the Forfeiture is recognized pursuant to Section 2.4.4.

**3.1.6  Plan Expenses.**  Reasonable expenses for administration, investments, and processing will be charged against the Trust Fund earnings, paid by the Employer, or allocated among terminated and active Participants according to an expense policy adopted by the Employer and applied in a uniform manner consistent with DOL and Treasury regulations.

# ARTICLE II

# <u>LIMITATIONS</u>

**3.2.1  Limitations on Annual Additions.**  The Annual Additions contributed or allocated to a Participant's Account for a Limitation Year will not exceed the Maximum Permissible Amount, as determined in Section 3.2.2.  If the total amounts contributed or allocated would otherwise produce Annual Additions in excess of the Maximum Permissible Amount, the allocations or contributions will be reduced pursuant to Section 3.2.3 so that the Annual Additions for the Limitation Year equal the Maximum Permissible Amount.

If a Participant participates in, or has ever participated in, any of the following types of plans or funds maintained by the Employer, then the Annual Additions derived from the allocations of all such plans and this Plan credited to a Participant will not exceed the lesser of the Maximum Permissible Amount for the Limitation Year or any other limitation contained in the Plan:

**(a)**  Another qualified defined contribution plan;

**(b)**  A welfare benefit fund, as defined in Code section 419(e), under which amounts attributable to post-retirement medical benefits are held in separate accounts for Key Employees;

**(c)**  An individual medical account, as defined in Code section 415(l)(2); or

**(d)**  A simplified employee pension, as defined in Code section 408(k),

If such Annual Additions exceed the Maximum Permissible Amount for the Limitation Year, the amounts contributed or allocated will be reduced in accordance with Section 3.2.4 so that the Annual Additions under all such plans and funds for the Limitation Year will equal the Maximum Permissible Amount.

**3.2.2  Determination of Annual Additions and Maximum Permissible Amount.**

**(a)**  **Annual Additions.**  The term "Annual Additions" will mean the sum of the following amounts credited to a Participant's Accounts for the Limitation Year:

**(1)**  Employer Contributions;

**(2)**  Employee contributions;

**(3)**  Forfeitures;

**(4)**  Excess Elective Deferrals, Excess Contributions and Excess Aggregate Contributions;

**(5)**  Amounts allocated after March 31, 1984, to an individual medical account, as defined in Code section 415(l)(2), that is part of a pension or annuity plan maintained by the Employer;

**(6)**  Amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, that are attributable to post-retirement medical benefits held in separate accounts for Key Employees under a welfare benefit fund as defined in Code section 419(e), maintained by the Employer; and

**(7)**  Allocations under a simplified employee pension as defined in Code section 408(k).

For this purpose, Excess Elective Deferrals are disregarded to the extent distributed to the Participant.  Excess Contributions and Excess Aggregate Contributions are included even if distributed to the Participant.  Any other amounts are disregarded if they are held in a suspense account or reallocated to other Participants in accordance with

Section 3.2.3. Any excess amounts applied under Section 3.2.3 to reduce Employer Contributions in a Limitation Year are considered Annual Additions for such Limitation Year.

Exception for Restorative Payments. Restorative payments allocated to a Participant's Account, which include payments made to restore losses to the Plan resulting from actions (or a failure to act) by a Fiduciary for which there is a reasonable risk of liability under Title I of ERISA or under other applicable federal or state law, where similarly situated Participants are similarly treated, do not give rise to an Annual Addition for any Limitation Year.

If, in a particular Limitation Year, the Employer contributes an amount to an Employee's account with respect to a prior Limitation Year and such contribution is required by reason of a Period of Qualified Military Service, then such contribution is not considered an Annual Addition with respect to the Employee for that particular Limitation Year in which the contribution is made, but, in accordance with section 414(u)(1)(B) of the Code, is considered an Annual Addition for the Limitation Year to which the contribution relates.

(b) **Maximum Permissible Amount.** Except for Catch-up Contributions, the term "Maximum Permissible Amount" will mean, for any Limitation Year beginning on or after January 1, 2002, the lesser of:

(1) $40,000, as adjusted for increases in the cost-of-living under Code section 415(d), or

(2) 100% of a Participant's compensation, as defined in Subsection 3.2.5(a), for the Limitation Year.

The compensation limit referred to in (2) above will not apply to any contribution for medical benefits after separation from service (within the meaning of Code sections 401(h) or 419A(f)(2)) that is otherwise treated as an Annual Addition.

Prior to determining a Participant's actual Compensation for a Limitation Year, the Employer may determine the Maximum Permissible Amount for the Participant based on a reasonable estimate of the Participant's Compensation for the Limitation Year, uniformly determined for all Participants similarly situated. As soon as is administratively feasible after the end of the Limitation Year, the Employer will determine the Maximum Permissible Amount for the Limitation Year based on the Participant's actual Compensation for the Limitation Year.

(c) **Short Limitation Year.** If a short Limitation Year is created because of an amendment changing the Limitation Year to a different 12 consecutive month period, the limitation determined in subsection (b)(1) above will be multiplied by a fraction, the numerator of which is the number of months in the short Limitation Year and the denominator of which is 12. Any new Limitation Year must begin within the Limitation Year in which the amendment is made.

**3.2.3 Excess Annual Additions.** If, due to the allocation of Forfeitures, a reasonable estimation of a Participant's Compensation that exceeds their actual Compensation, or a miscalculation in a Participant's Elective Deferrals, a Participant's Annual Additions exceed their Maximum Permissible Amount for the Limitation Year, the Employer may correct such amount using the methods permitted in the Employer Compliance Resolution System defined in Revenue Procedure 2008-50 as amended from time to time.

**3.2.4 Participation in Certain Other Plans.** If the Annual Additions with respect to the Participant under such other plans and funds maintained by the Employer are less than the Maximum Permissible Amount and the Employer Contribution that would otherwise be contributed or allocated to the Participant's Account under this Plan would cause the Annual Additions for the Limitation Year to exceed this limitation, the amount contributed or allocated will be reduced so that the Annual Additions under all such plans and funds for the Limitation Year will equal the Maximum Permissible Amount. If the Annual Additions with respect to the Participant under such other plans and funds in the aggregate are equal to or greater than the Maximum Permissible Amount, no amount will be contributed or allocated to the Participant's Account under this Plan for the Limitation Year.

If a Participant's Annual Additions under this Plan and such other plans and funds maintained by the Employer would result in an excess amount for a Limitation Year, such excess will be distributed or reallocated according to the provisions of Section 3.2.3, and the excess amount will be deemed to consist of the Annual Additions last allocated.

In addition, allocations to qualified defined contribution plans will be adjusted first, followed by adjustments to allocations to a simplified employee pension, followed by adjustments to allocations to an individual medical account, followed by adjustments to allocations to a welfare benefit fund, as those terms are referenced in Section 3.2.1.

If the excess amount was allocated to a Participant on an allocation date of this Plan that coincides with an allocation date of another plan, the excess amount attributed to this Plan will be the product of:

**(i)**    The total excess amount allocated as of such date, times

**(ii)**    The ratio of (I) the Annual Additions allocated to the Participant for the Limitation Year as of such date under this Plan to (II) the total Annual Additions allocated to the Participant for the Limitation Year as of such date under this and all the other qualified defined contribution plans of the Employer.  Any excess amount attributed to this Plan will be disposed in the manner described in Section 3.2.3.

If the Participant is covered under another qualified defined contribution plan maintained by the Employer that is not a pre-approved plan, Annual Additions that may be credited to the Participant's Account under this Plan for any Limitation Year will be limited as provided above, unless the Employer specifies other limitations in the Adoption Agreement.

For purposes hereof, the excess amount is the excess of the Participant's Annual Additions for the Limitation Year over the Maximum Permissible Amount.

**3.2.5  Definitions.**  For purposes of this Article, the terms below have the following meanings:

**(a)**    **Compensation.**  As elected by the Employer in the Adoption Agreement, Compensation will mean all of a Participant's:

**(i)**    **Wages, Tips, and Other Compensation Box on Form W-2.**  Compensation includes Information required to be reported under sections 6041, 6051, and 6052 of the Code. Compensation is defined as wages, within the meaning of section 3401(a) of the Code, and all other payments of compensation to an Employee by the Employer (in the course of the Employer's trade or business) for which the Employer is required to furnish the Employee written statement under sections 6041(d), 6051(a)(3), and 6052 of the Code. Compensation will be determined without regard to any rules under section 3401(a) of the Code that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in section 3401(a)(2) of the Code).

**(ii)**    **Section 3401(a) Wages.**  Wages as defined in Code section 3401(a) for the purposes of income tax withholding at the source but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in section 3401(a)(2) of the Code).

**(iii)**    **Section 415 Simplified Compensation.**  Wages, salaries, differential wage payments under section 3401(h) of the Code and fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment for the Employer maintaining the Plan to the extent that the amounts are includible in gross income (including but not limited to commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements or other expense allowances under a non-accountable plan (as described in Treasury Regulations section 1.62-2(c) of the Code), but excluding items described in Section 3.2.5(a)(iv)(II)(A) through (E):

**(iv)**    **Section 415 Compensation.**  Except as otherwise provided in this Subparagraph (iv) Section 415 Compensation will mean, compensation from the Employer within the meaning of section 415(c)(3) of the Code, which is used for purposes of section 415 and regulations promulgated under section 415, and includes all items of remuneration described in Subparagraph (iv)(I) of this section, but excludes the items of remuneration described in Subparagraph (iv)(II) of this section. Paragraphs (i) (ii) and (iii) of this section

provides safe harbor definitions of Compensation that are permitted to be provided in the Plan in lieu of the generally applicable definition of compensation contained in this Paragraph (iv).

**(I)  Items Includible As Compensation.**  For purposes of applying the limitations of section 415, except as otherwise provided in this section, the term compensation means remuneration for services of the following types:

**(A)**  The Employee's wages, salaries, fees for professional services, and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer maintaining the Plan, to the extent that the amounts are includible in gross income (or to the extent amounts would have been received and includible in gross income but for an election under sections 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k), or 457(b) of the Code). These amounts include, but are not limited to, commissions paid to salespersons, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements or other expense allowances under a non-accountable plan as described in Section 1.62-2(c) of the Code.

**(B)**  In the case of an Employee who is an Employee within the meaning of section 401(c)(1) of the Code and regulations promulgated thereunder, the Employee's Earned Income (as described in section 401(c)(2) of the Code and regulations promulgated thereunder), plus amounts deferred at the election of the Employee that would be includible in gross income but for the rules of sections 402(e)(3), 402(h)(1)(B), 402(k), or 457(b) of the Code.

**(C)**  Amounts described in sections 104(a)(3), 105(a), or 105(h) of the Code, but only to the extent that these amounts are includible in the gross income of the Employee.

**(D)**  Amounts paid or reimbursed by the Employer for moving expenses incurred by an Employee, but only to the extent that at the time of the payment it is reasonable to believe that these amounts are not deductible by the Employee under section 217 of the Code.

**(E)**  The value of a nonstatutory option (which is an option other than a statutory option as defined in section 1.421-1(b) of the Treasury Regulations) granted to an Employee by the Employer, but only to the extent that the value of the option is includible in the gross income of the Employee for the taxable year in which granted.

**(F)**  The amount includible in the gross income of an Employee upon making the election described in section 83(b) of the Code.

**(G)**  Amounts that are includible in the gross income of an Employee under the rules of section 409A or section 457(f)(1)(A) of the Code or because the amounts are constructively received by the Employee.

**(II)  Items Not Includible As Compensation.**

**(A)**  Contributions (other than elective contributions described in sections 402(e)(3), 408(k)(6), 408(p)(2)(A)(i), or 457(b) of the Code) made by the Employer to a plan of deferred compensation (including a simplified employee pension described in section 408(k) of the Code or a simple retirement account described in section 408(p) of the Code, and whether or not qualified) to the extent that the contributions are not includible in the gross income of the Employee for the taxable year in which contributed. In addition, any distributions from a plan of deferred compensation (whether or not qualified) are not considered as compensation for section 415 purposes, regardless of whether such amounts are includible in the gross income of the Employee when distributed. However, if the Plan so provides, any amounts received by an Employee pursuant to a nonqualified unfunded deferred compensation plan are permitted to be considered as compensation for section 415 purposes in the year the amounts are actually received, but only to the extent such amounts are includible in the Employee's gross income.

    **(B)**  Amounts realized from the exercise of a non-statutory option (which is an option other than a statutory option as defined in section 1.421-1(b) of the Treasury Regulations), or when restricted stock or other property held by an Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture (see section 83 of the Code and regulations promulgated thereunder).

    **(C)**  Amounts realized from the sale, exchange, or other disposition of stock acquired under a statutory stock option (as defined in section 1.421-1(b) of the Code).

    **(D)**  Other amounts that receive special tax benefits, such as premiums for group-term life insurance (but only to the extent that the premiums are not includible in the gross income of the Employee and are not salary reduction amounts that are described in section 125 of the Code).

    **(E)**  Other items of remuneration that are similar to any of the items listed in Subparagraphs (I)(A) through (I)(E) of this section.

Notwithstanding the preceding sentence, if elected in the Adoption Agreement, Compensation for a Participant who is permanently and totally disabled (as defined in Code section 22(e)(3)) is the Compensation such Participant would have received for the Limitation Year if the Participant had been paid at the rate of Compensation paid immediately before becoming permanently and totally disabled.

**(b)**  For Limitation Years beginning on or after July 1, 2007, or such earlier date as specified in the Adoption Agreement, Compensation for a Limitation Year will also include Compensation paid by the later of 2-1/2 months after an Employee's severance from employment with the Employer or the end of the Limitation Year that includes the date of the Employee's severance from employment with the Employer, if:

    **(i)**  the payment is regular Compensation for services during the Employee's regular working hours, or Compensation for services outside the Employee's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments, and, absent a severance from employment, the payments would have been paid to the Employee while the Employee continued in employment with the Employer; or, if the Employer so elects in the Adoption Agreement;

Or, if the Employer so elects in the Adoption Agreement,

    **(ii)**  the payment is for unused accrued bona fide sick, vacation or other leave that the Employee would have been able to use if employment had continued; or

    **(iii)**  the payment is received by the Employee pursuant to a nonqualified unfunded deferred compensation plan and would have been paid at the same time if employment had continued, but only to the extent includible in gross income.

Any payments not described above will not be considered Compensation if paid after severance from employment, even if they are paid by the later of 2-1/2 months after the date of severance from employment or the end of the Limitation Year that includes the date of severance from employment, except, if elected by the Employer in the Adoption Agreement, Compensation paid to a Participant who is permanently and totally disabled, as defined in section 22(e)(3) of the Code, provided, as elected by the Employer in the Adoption Agreement, salary continuation applies to all Participants who are permanently and totally disabled for a fixed or determinable period, or the Participant was not a Highly Compensated Employee, as defined in Part 1 Article 2 of the Plan immediately before becoming disabled.

Back pay, within the meaning of section 1.415(c)-2(g)(8) of the Treasury Regulations, will be treated as Compensation for the Limitation Year to which the back pay relates to the extent the back pay represents wages and Compensation that would otherwise be included under this definition.

Compensation paid or made available during a Limitation Year will include amounts that would otherwise be included in Compensation but for an election under sections 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k),

or 457(b) of the Code.

Unless the Employer elects otherwise in the Adoption Agreement, Compensation will not include Deemed 125 Compensation. Deemed section 125 Compensation is an amount that is excludable under section 106 of the Code that is not available to Participant in cash in lieu of group health coverage under a section 125 arrangement solely because the Participant is unable to certify that they or she has other health coverage. Amounts are Deemed section 125 Compensation only if the Employer does not request or otherwise collect information regarding the Participant's other health coverage as part of the enrollment process for the health plan.

If elected by the Employer in the Adoption Agreement, Compensation will not include amounts paid as Compensation to a nonresident alien, as defined in section 7701(b)(1)(B) of the Code, who is not a Participant in the Plan to the extent the Compensation is excludable from gross income and is not effectively connected with the conduct of a trade or business within the United States.

(c)    **Certain de minimis timing differences.**  Notwithstanding the provisions of this Section 3.2.5, the Employer may elect in the Adoption Agreement whether to include in Compensation for the Limitation Year amounts earned during the Limitation Year but not paid during the Limitation Year solely because of the timing of pay periods and pay dates if:

   (i)    These amounts are paid during the first few weeks of the next Limitation Year;

   (ii)    The amounts are included on a uniform and consistent basis with respect to all similarly situated Employees; and

   (iii)    No Compensation is included in more than one Limitation Year.

(d)    **Employer.**  Employer will mean the employer that adopts this Plan and all members of a group of employers that constitutes a controlled group of corporations or trades or businesses under common control (as defined in Code sections 414(b) and (c), as modified by Code section 415(h)), or an affiliated service group (as defined in Code section 414(m)) of which the adopting employer is part and any other entity required to be aggregated with the Employer under Code section 414(o) and the regulations issued thereunder. In addition, if the Plan is a Multiple Employer Plan, then the Employer will include any Participating Employer, along with their Related Employer who adopts this Plan.

**3.2.6  Controlled Businesses.**  If this Plan provides contributions or benefits for one or more Owner-Employees who control both the business for which this Plan is established and one or more other trades or businesses, this Plan must, when looked at as a single plan, satisfy Code section 401(a), and contributions on behalf of any Owner-Employee may be made only with respect to the Earned Income of such Owner-Employee that is derived from the trade or business with respect to which this Plan is established.

# ARTICLE III

# FIDUCIARIES

**3.3.1  Standard of Conduct.**  The duties and responsibilities of the Plan Administrator with respect to the Plan will be carried out (a) in a nondiscriminatory manner; (b) for the exclusive benefit of Participants and their Beneficiaries; (c) by defraying the reasonable expenses of administering the Plan; (d) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (e) by diversifying the investments of the Plan to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (f) in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of the Act.

**3.3.2  Individual Fiduciaries.**  At any time that a group of individuals is acting in the same Fiduciary capacity, the Employer will determine the number of such persons who will act in such capacity from time to time.  Such persons will be appointed by the Employer and may or may not be Participants or Employees of the Employer.  Unless otherwise provided for by agreement or by direction of the Employer, any action taken by a group of individuals acting as Plan Administrator will be taken at the direction of a majority of such persons, or, if the number of such persons is 2, by unanimous consent.

**3.3.3  Disqualification from Service.**  No person will be permitted to serve as a Fiduciary, custodian, counsel, agent, or employee of the Plan or as a consultant to the Plan who has been convicted of any of the criminal offenses specified in the Act.

**3.3.4  Bonding.**  Except as otherwise permitted by law, every Fiduciary or other person who handles funds or other property or assets of the Plan will be bonded in accordance with the requirements of the Act.

**3.3.5  Prior Acts.**  No Fiduciary will be liable for any acts occurring prior to the period of time during which the Fiduciary was actually serving in such capacity with respect to the Plan.

**3.3.6  Insurance and Indemnity.**  The Employer may purchase or cause the Trustee to purchase and keep current as an authorized expense liability insurance for the Plan, its Fiduciaries, and any other person to whom any financial or other administrative responsibility with respect to the Plan and the Trust is allocated or delegated, from and against any and all liabilities, costs, and expenses incurred by such persons as a result of any act or omission to act in connection with the performance of the duties, responsibilities, and obligations under the Plan and under the Act; provided that any such insurance policy purchased with Plan assets permits subrogation by the insurer against the Fiduciary in the case of breach by such Fiduciary.

Unless otherwise determined and communicated to affected parties by the Employer, the Employer will indemnify and hold harmless each such person, other than a corporate trustee, for and from any such liabilities, costs, and expenses that are not covered by any such insurance, except to the extent that any such liabilities, costs, or expenses are judicially determined to be due to the gross negligence or willful misconduct of such person.  No Plan assets may be used for any such indemnification.

**3.3.7  Expenses.**  Expenses incurred by the Plan Administrator or the Trustee in the administration of the Plan and the Trust, including appropriate fees for legal services regarding the Plan, such compensation to the Trustee as may be agreed upon in writing from time to time between the Employer and the Trustee, and all other proper charges and expenses of the Plan Administrator or the Trustee and of their agents and counsel will be paid by the Employer, or at its election at any time or from time to time, may be charged against the assets of the Trust, but until so paid will constitute a charge upon the assets of the Trust.

The Trustee will have the authority to charge the Trust Fund for its compensation and reasonable expenses unless paid or contested by written notice by the Employer within 60 days after mailing of the written billing by the Trustee.  All

taxes of any and all kinds whatsoever that may be levied or assessed under existing or future laws upon the assets of the Trust or the income thereof will be paid from such assets. Notwithstanding the foregoing, no compensation will be paid to any Employee for services rendered under the Plan and the Trust as a Trustee.

**3.3.8 Agents, Accountants, and Legal Counsel.** The Plan Administrator will have authority to employ suitable agents, custodians, investment counsel, accountants and legal counsel who may, but need not be, legal counsel for the Employer. The Plan Administrator and the Trustee will be fully protected in acting upon the advice of such persons. The Trustee will at no time be obliged to institute any legal action or to become a party to any legal action unless the Trustee has been indemnified to the Trustee's satisfaction for any fees, costs, and expenses to be incurred in connection therewith.

**3.3.9 Investment Manager.** The Employer may employ as an investment manager or managers to manage all or any part of the Trust Fund any (a) investment advisor registered under the Investment Advisors Act of 1940; (b) bank as defined in said Investment Advisors Act; or (c) insurance company qualified to perform investment management services in more than one state. Any investment manager will have all powers of the Trustee in the management of such part of the Trust Fund, including the power to acquire or dispose of assets.

In the event an investment manager is so appointed, the Trustee will not be liable for the acts or omissions of such investment manager or be under any obligation to invest or otherwise manage that part of the Trust Fund that is subject to the management of the investment manager. The Employer will notify the Trustee in writing of any appointment of an investment manager, and will provide the Trustee with the investment manager's written acknowledgment that it is a Fiduciary with respect to the Plan.

**3.3.10 Finality of Decisions or Acts.** Except for the right of a Participant or Beneficiary to appeal the denial of a claim, any decision or action of the Plan Administrator or the Trustee made or done in good faith upon any matter within the scope of authority and discretion of the Plan Administrator or the Trustee will be final and binding upon all persons. In the event of judicial review of actions taken by any Fiduciary within the scope of their duties in accordance with the terms of the Plan and the Trust, such actions will be upheld unless determined to have been arbitrary and capricious.

**3.3.11 404(c) Election.** The Employer may designate in the Adoption Agreement that this Plan is intended to be administered pursuant to Labor Regulations section 2550.404c-1 as an ERISA section 404(c) Plan.

# ARTICLE IV

# PLAN ADMINISTRATOR

**3.4.1  Administration of Plan.**  The Employer will designate the Plan Administrator from time to time.  The primary responsibility of the Plan Administrator is to administer the Plan for the exclusive benefit of the Participants and their Beneficiaries, subject to the specific terms of the Plan.  The Plan Administrator will administer the Plan and will construe and determine all questions of interpretation or policy in their sole discretion.  The Plan Administrator may correct any defect, supply any omission, or reconcile any inconsistency in such manner and to such extent as they will deem necessary or advisable to carry out the purpose of the Plan; provided, however, that any interpretation or construction will be done in a nondiscriminatory manner and will be consistent with the intent that the Plan will continue to be a qualified Plan pursuant to the Code, and will comply with the terms of the Act.  The Plan Administrator will have all powers necessary or appropriate to accomplish their duties under the Plan.

**(a)**   The Plan Administrator will be responsible for the general administration of the Plan, including but not limited to the following duties:

**(1)**   To determine all questions relating to the eligibility of an Employee to participate in the Plan or to remain a Participant in the Plan.

**(2)**   To compute, certify, and direct the Trustee with respect to the amount and kind of benefits to which any Participant is entitled.

**(3)**   To collect all contributions or other payments, as applicable, and transfer them to the Trustee.

**(4)**   To authorize and direct the Trustee with respect to all disbursements from the Trust Fund.

**(5)**   To maintain all the necessary records for the administration of the Plan.

**(6)**   To interpret the provisions of the Plan and to make and publish rules and regulations for the Plan as the Plan Administrator may deem reasonably necessary for the proper and efficient administration of the Plan and consistent with its terms.

**(7)**   To select the Insurer to provide any Life Insurance Policy to be purchased for any eligible Participant.

**(8)**   To advise the Fiduciary responsible for Plan investments regarding the short and long-term liquidity needs of the Plan in order that the Fiduciary might direct its investment accordingly.

**(9)**   To advise, counsel, and assist any Participant regarding any rights, benefits, or elections available under the Plan.

**(10)**   To instruct the Trustee regarding the management, investment, and reinvestment of the Trust Fund unless the investment authority has been delegated to the Trustee or an investment manager.

**(b)**   The Plan Administrator will also be responsible for preparing and filing such annual disclosure reports and tax forms as may be required from time to time by the Secretary of Labor, the Secretary of the Treasury, or other governmental authorities.

**(c)**   Whenever the Plan Administrator determines it is in the best interest of the Plan and its Participants or Beneficiaries, the Plan Administrator may request such variances, deferrals, extensions, or exemptions or make such elections for the Plan as may be available under the law.

**(d)**    The Plan Administrator will procure bonding for all persons dealing with the Plan or its assets as may be required by law.

**3.4.2  Disclosure Requirements.**  Every Participant covered under the Plan and every Beneficiary receiving benefits under the Plan will receive from the Plan Administrator a summary plan description and such other information as may be required by law or by the terms of the Plan.

**3.4.3  Information Generally Available.**  The Plan Administrator will make copies of this Plan and the Trust, the Adoption Agreement, the summary plan description, latest annual report, Life Insurance Policies, or other instruments under which the Plan was established or is operated available for examination by any Participant or Beneficiary in the principal office of the Plan Administrator and such other locations as may be necessary to make such information reasonably accessible to all interested parties.  Subject to a reasonable charge to defray the cost of furnishing such copies, the Plan Administrator shall, upon written request of any Participant or Beneficiary, furnish a copy of any of the above documents to the respective party.

**3.4.4  Statement of Account.**  Upon written request to the Plan Administrator once during any 12 month period, a Participant or Beneficiary will be furnished with a written statement, based on the latest available information, of their then vested Account balance and the earliest date upon which the same will become fully vested and nonforfeitable. The statement will also include a notice to the Participant of any benefits that are forfeitable if the Participant dies before a certain date.

**3.4.5  Explanation of Rollover Treatment.**  The Plan Administrator shall, when making a distribution eligible for rollover treatment, provide a written explanation to the recipient of the provisions under which such distribution will not be subject to tax if transferred to an Eligible Retirement Plan within 60 days after the date on which the recipient received the distribution and, if applicable, the provisions of law pertaining to the tax treatment of lump sum distributions.

**3.4.6  Electromechanical Communications.**  Electromechanical communications are permitted, but not required, among all parties to a communication regarding the Plan, including the Employer, Trustee, Plan Administrator, and Participant.  Each Plan Fiduciary may adopt policies to govern its use of electromechanical communications, including policies developed by third parties working with the Fiduciary on Plan matters.

The Trustee (or other agent appointed for this purpose) may, but is not required to, act upon receipt of directions (including, without limitation, directions pursuant to voice response systems, facsimile, or other electromechanical means) with regard to all Plan transactions.  The Trustee may comply with such direction and will incur no liability for doing so.  If the Trustee permits the use of electromechanical directions, the giving of such directions will have the same meaning as if the directions were in writing and delivered as a document.

In the sole judgment of the Plan Administrator, if any Participant or Beneficiary entitled to benefits is not capable of managing their benefits under the Plan, any election that may be made by a Participant or Beneficiary may be made by the legal representative of such individual.

If the Plan Administrator, in their sole discretion is not satisfied with the power of a legal representative to act on behalf of a Participant or Beneficiary, the Plan Administrator may require an order of a court of competent jurisdiction.

**3.4.7 Elections on Behalf of an Incapacitated Person.**  In the sole judgment of the Plan Administrator, if any person entitled to benefits under the Plan is incapacitated, any election that such person is permitted to make under the Plan may be made by the legal representative of such person.

If the Plan Administrator, in its sole discretion, is not satisfied with the power of a legal representative to act on behalf of a person, the Plan Administrator may require an order from a court of competent jurisdiction.

**3.4.8  Operational Rules for Related Employer Groups.**  If the Plan Sponsor and/or a Participating Employer has one or more Related Employers, that Employer and such Related Employer(s) constitute a Related Employer group in such case, the following rules apply to the operation of the Plan:

**(a)**   If the term "Employer" is used in the context of administrative functions necessary in the operation, maintenance,

or termination of the Plan, only the Employer executing the Signature Page of this Plan is treated as the Employer.

**(b)**  Hours of Service are determined by treating all members of the Related Employer group as the Employer.

**(c)**  The term Excluded Employee is determined by treating all members of the Related Employer group as the Employer, except as specifically provided in the Plan.

**(d)**  Compensation is determined by treating all members of the Related Employer group as the Employer, except as specifically provided in the Plan.

**(e)**  An Employee is not treated as separated from service or terminated from employment if the Employee is employed by any member of the Related Employer group.

**(f)**  The Annual Additions Limitation described in Part 3 Article 2 and the Top-Heavy Plan rules described in Part 2, Article 6 are applied by treating all members of the Related Employer group as the Employer.

In all other contexts, the term "Employer" generally means a reference to all members of the Related Employer group, unless the context requires otherwise.  If the terms of the Plan are ambiguous with respect to the treatment of the Related Employer group as the Employer, the Plan Administrator has the authority to make a final determination or the proper interpretation of the Plan.

**3.4.9  Use of Electronic Medium.**  The use of an electronic medium to provide applicable notices and to make Participant elections must comply with Treasury Regulation 1.401(a)-21 that reflects the requirements for electronic signatures contained in the Electronic Signatures in Global and National Commerce Act, Public Law 106-229 (114 Stat. 464 (2000) (ESIGN).

# ARTICLE V

# PARTICIPANT LOANS

**3.5.1 Authorization.** If the Employer elects in the Adoption Agreement to permit loans to Participants or Beneficiaries, the Plan Administrator will establish a Participant loan program in compliance with Treasury Regulations and Labor Regulations section 2550.408b. The terms of such Participant loan program will be in writing and will constitute part of the Plan. Such terms will include:

**(a)** The identity of the person or positions authorized to administer the Participant loan program;

**(b)** A procedure for applying for loans;

**(c)** The basis on which loans will be approved or denied;

**(d)** Limitations (if any) on the loan amount available, the number of loans, and the permitted purposes for a loan;

**(e)** The procedure under the program for determining a reasonable rate of interest;

**(f)** The types of collateral that may secure a Participant loan; and

**(g)** The events constituting default and the steps that will be taken to preserve Plan assets in the event of default.

**3.5.2 Spousal Consent.** Subject to Subsection 2.5.5(c), a Participant must obtain the written consent of their spouse, if any, to the use of the Participant's interest in the Plan as security for a Participant loan within 90 days before the date on which the loan is to be so secured, unless the Participant establishes the consent of the spouse cannot be obtained or the total value of the Participant's Accounts is less than $5,000. A new consent must be obtained whenever the amount of the loan is increased or if the loan is renegotiated, extended, renewed, or otherwise revised. The consent must acknowledge the effect of such consent and be witnessed by a Plan representative or a notary public. Such consent will thereafter be binding with respect to the consenting spouse or any subsequent spouse with respect to that loan.

If a valid spousal consent has been obtained, then notwithstanding any other provision of the Plan, the portion of the Participant's vested Account balance used as a security interest held by the Plan by reason of a loan outstanding to the Participant will be taken into account for purposes of determining the amount of the Account balance payable at the time of death or distribution, but only if the reduction is used as repayment of the loan. If less than the entire amount of the Participant's vested Account balance (determined without regard to the preceding sentence) is payable to the surviving spouse, the Account balance will first be reduced  by the amount of the security used as repayment of the loan before determining the benefit payable to each Beneficiary, including the surviving spouse.

**3.5.3 Limitations.** Except as provided in the Participant loan program, in no event will the amount loaned to any Participant or Beneficiary, when added to the outstanding balance of all other loans to the Participant or Beneficiary, exceed the lesser of (a) $50,000.00 (reduced by the excess, if any, of the highest outstanding balance of loans from the Plan during the one-year period ending on the day before the date on which the loan was made over the outstanding balance of loans from the Plan on the date on which such loan was made) or (b) one-half of the vested and nonforfeitable interest in their Accounts, determined as of the Valuation Date coinciding with or immediately preceding such loan or $10,000, if greater.

For purposes hereof, all loans from all plans of the Employer and other members of a group of employers described in Code sections 414(b), (c), (m), and (o) will be aggregated. All loans must be adequately secured and bear a reasonable interest rate. No Participant loan will exceed the present value of the Participant's vested Account balance. In the event of a default, foreclosure on the note evidencing the loan and attachment of the security will not occur until a distributable event occurs.

**3.5.4  Availability.**  If loans are authorized in the Adoption Agreement, they must be available to all Participants and Beneficiaries on a reasonably equivalent basis without regard to any individual's race, color, religion, sex, age, or national origin. Loans will not be made available to Highly Compensated Employees in an amount greater than the amount made available to other Employees.

**3.5.5  Default.**  In the event of default, foreclosure on the note and attachment of security will not occur until a distributable event occurs for the Participant.

**3.5.6  Qualified Military Service.**  If elected in the Participant loan program, the obligation to repay any loan made to a Participant who is performing service in the uniformed services will be suspended, as permitted under Code section 414(u)(4). Such a suspension of loan repayments will not trigger a distribution under Code section 72(p) or constitute a loan default.

# ARTICLE VI

# <u>BENEFICIARIES</u>

**3.6.1  Designation of Beneficiaries.**  Subject to the provisions of Sections 2.5.5 and 2.5.6, each Participant will have the right to designate a Beneficiary or Beneficiaries and contingent or successive Beneficiaries to receive any benefits provided by this Plan that become payable upon the Participant's death.  The Participant may change the Beneficiaries at any time or times by the filing of a new designation with the Plan Administrator, and the most recent designation will govern.

In the absence of a designation, the Designated Beneficiary will be the surviving spouse of the Participant, unless such surviving spouse consents in writing to an alternate designation and the terms of such consent acknowledge the effect of such alternate designation and the consent is witnessed by a representative of the Plan or by a notary public.  The designation of a Beneficiary other than the spouse of the Participant or the designation of an optional form of benefit with the consent of such spouse may not be changed without the consent of such spouse, and any consent must acknowledge the specific nonspouse Beneficiary, including any class of Beneficiaries or any contingent Beneficiaries, unless the spouse expressly permits designations by the Participant without any further spousal consent.

Regardless of any prior designation, a Participant, at any time, may designate their spouse as Beneficiary, and with respect to Accounts providing annuities, may also designate the form of benefit as a Qualified Joint and Survivor Annuity.

In the event the Participant is divorced, the ex-spouse will be treated as having predeceased the Participant and benefits will go to the secondary Designated Beneficiaries or if none survive the Participant, to their surviving children, equally, or if none, such other heirs, or the executor or administrator of their estate, as the Plan Administrator will select. In the event the Participant intends that their ex-spouse remain their Beneficiary, a post-divorce Beneficiary designation must be completed naming the ex-spouse as a Designated Beneficiary.

Any consent by a spouse obtained under this provision (or establishment that the consent of a spouse may not be obtained) will be effective only with respect to such spouse.  A consent that permits designations by the Participant without any requirement of further consent by such spouse must acknowledge that the spouse has the right to limit consent to a specific Beneficiary, and a specific form of benefit where applicable, and that the spouse voluntarily elects to relinquish either or both of such rights.  A Participant may revoke a prior waiver without the consent of the spouse at any time prior to the commencement of benefits.  The number of revocations will not be limited.  No consent obtained under this provision will be valid unless the Participant has received notice as provided in Sections 2.5.5 and 2.5.6.

**3.6.2  Absence or Death of Beneficiaries.**  Except with respect to the process of any life insurance payable upon the death of the Participant, if a Participant dies without having a Beneficiary designation then in force, or if all of the Participant's Designated Beneficiaries predecease them, their Beneficiary will be their surviving spouse, or if none, their surviving children, equally, or if none, such other heirs, or the executor or administrator of their estate, as the Plan Administrator will select.

Unless otherwise designated by the Participant, if a Participant dies and is survived by some, but not all, of their Designated Beneficiaries, such surviving Beneficiaries will be deemed their sole Beneficiaries.  In the event that a surviving Beneficiary dies before the complete distribution of the deceased Participant's interest, the estate of such Beneficiary will be deemed to be the Beneficiary of the undistributed portion of such interest.

**3.6.3  Surviving Spouse Election.**  If the Plan is designated in the Adoption Agreement as a Cash or Deferred Profit Sharing Plan or a Profit Sharing Plan and the Employer does not elect a life annuity form of distribution in the Adoption Agreement, a surviving spouse, who has not consented to an alternate designation under Section 3.6.1, above, may elect to have distribution of the Participant's vested Account balance commence within the 90-day period following the date of the Participant's death.  The Account balance will be adjusted for gains or losses occurring after the Participant's death in accordance with the provisions of the Plan governing the adjustment of Account balances for

other types of distributions, as well as for the outstanding balance of any Plan loan to the Participant.

**3.6.4  Right to Direct on Behalf of a Participant or Beneficiary.**  In the sole judgment of the Plan Administrator, if any Participant or Beneficiary entitled to benefits is not capable of managing their benefits under the Plan, any election that may be made by a Participant or Beneficiary may be made by the legal representative of such individual, or in the case of a minor Beneficiary, the guardian, under valid power of attorney, a court appointed guardian or any other person authorized under state law to receive the benefit.

If the Plan Administrator, in their sole discretion is not satisfied with the power of a legal representative to act on behalf of a Participant or Beneficiary the Plan Administrator may require an order of a court of competent jurisdiction.

# ARTICLE VII

## CLAIMS

**3.7.1 Claim Procedure (Non-Disability).** Any Participant or Beneficiary who is entitled to a payment of a benefit for which provision is made in this Plan will file a written claim with the Plan Administrator on such forms as furnished by the Plan Administrator and will furnish such evidence of entitlement to benefits as the Plan Administrator may require. The Plan Administrator will notify the Participant or Beneficiary in writing of the amount of benefit to which they is entitled, the duration of such benefit, the time the benefit is to commence, and other pertinent information concerning their benefit.

If the Plan Administrator denies a claim for benefits, in whole or in part, the Plan Administrator will provide adequate notice in writing to the Participant or Beneficiary whose claim for benefits has been denied within 90 days after receipt of the claim unless special circumstances require an extension of time for processing the claim. If such an extension of time for processing is required, the Plan Administrator will furnish written notice to the Participant or Beneficiary indicating the special circumstances and the date by which a final decision is expected to be rendered. In no event will the period of extension exceed 180 days after receipt of the claim. The notice of denial of the claim will include (a) the specific reason or reasons for the denial; (b) specific reference to pertinent Plan provisions on which the denial is based; (c) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (d) a statement that any appeal of the denial must be made by giving to the Plan Administrator, within 60 days after receipt of the notice of the denial, written notice of such appeal, such notice to include a full description of the pertinent issues and basis of the claim. The Participant or Beneficiary (or their duly authorized representative) may review pertinent documents and submit issues and comments in writing to the Plan Administrator. If the Participant or Beneficiary fails to appeal such action to the Plan Administrator in writing within the prescribed period of time, the Plan Administrator's adverse determination will be final, binding, and conclusive. Benefits under this Plan will be paid only if the Plan Administrator decides in their discretion that the applicant is entitled to them.

**3.7.2 Appeal (Non-Disability).** If the Plan Administrator receives from a Participant or a Beneficiary, within the prescribed period of time, a notice of an appeal of the denial of a claim for benefit, such notice and all relevant materials will immediately be submitted to the Employer. The Employer may hold a hearing or otherwise ascertain such facts as it deems necessary and will render a decision that will be binding upon both parties.

The Employer's decision will be made within 60 days after the Plan Administrator receives the notice of appeal, unless special circumstances require an extension of time for processing, in which case the Employer will render a decision as soon as possible but not later than 120 days after receipt of the request for review. If such an extension of time is required, written notice of the extension will be furnished to the claimant prior to the commencement of the extension. The Employer's decision will be in writing, will include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent Plan provisions on which the decision is based, and will be promptly furnished to the claimant. Benefits under this Plan granted pursuant to such an appeal will be paid only if the Employer decides in its discretion that the applicant is entitled to them.

**3.7.3 Claims Involving Disability.** If the Plan Administrator receives a Disability claim from a Participant or a Beneficiary, and the final determination of Disability is being made by the Plan Administrator, the claim will be reviewed in accordance with this subsection. If a claim for a Disability benefit is denied by the Plan Administrator, in whole or in part, the Plan Administrator will provide adequate notice, in writing, to the Participant or Beneficiary whose claim for benefit has been denied. The notice must be provided within 45 days after receipt of the claim that has been filed in accordance with the reasonable procedures of the Plan unless the Plan Administrator determines that an extension of time of up to 30 days is required due to matters beyond control of the Plan. If such an extension is required, the Plan Administrator will furnish written notice of the extension prior to the end of the initial 45 day period. The notice of extension must include information to indicate the special circumstances that required the extension and the date by which the Plan Administrator will issue their determination (no later than 30 days beyond the end of the first deadline). If prior to the end of the first extension period the Plan Administrator determines that another extension is required due to matters beyond the control of the Plan, the deadline can be extended for a further

30 days. If such further extension is required, the Plan Administrator will furnish written notice of the extension prior to the end of the above notice period. The notice of extension must include information to indicate the special circumstances giving rise to the extension and the date by which the Plan Administrator will issue their determination. In no event will the determination extend more than 30 days beyond the end of the first deadline. Both notices of extension must contain (1) the standards on which the determination is being made, (2) the unresolved issues that prevent the Plan Administrator from making the decision, and (3) the additional information that would be needed to allow the Plan Administer to make the decision. After receipt of an extension notice the Participant or Beneficiary will have no less than 45 days to provide the information specific as need for the decision.

Following receipt of notice of the Plan Administrator decision the Participant or Beneficiary will have 180 days to appeal such denial. Upon receipt of such appeal, the Plan Administrator must act within 45 days.

In addition, with respect to a claim for Disability benefits as described above, the Participant or Beneficiary must be provided, free of charge, any new or additional evidence or rationale obtained by the Plan during pendency of appeal. The Participant or Beneficiary will have the right to review and respond to the additional information. This information must include any new or additional evidence considered, relied upon, or generated by the Plan, insurer, or other person making the benefit determination in connection with the claim. This information must be provided as soon as possible and sufficiently in advance of the Plan's decision on appeal to give the Participant or Beneficiary a reasonable opportunity to respond.

All claims subject to this Section 3.7.3 must be adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision. Therefore, decisions regarding hiring, compensation, termination, promotion, or similar matters with respect to any individual must not be made based upon the likelihood that the individual will support the denial of the Disability claim. In addition, with respect to a Disability claim, both the initial denial letter and any appeal denial letter must be provided in a culturally and linguistically appropriate manner and must specifically set forth the following:

1. The specific basis for disagreeing with any determination by the Social Security Administration or other third party disability payer, or any views of health care professionals or vocational professionals treating a claimant, regardless of whether the information was relied upon.
2. If the adverse determination is based on a medical necessity, experimental treatment, or similar exclusion or limit, either (1) an explanation of the scientific or clinical judgment for the determination, or (2) the denial letter must make a statement that such an explanation will be made available upon request at no charge.
3. All internal rules, guidelines, protocols, standards or other similar criteria that were relied upon in denying the claim or a statement that such criteria do not exist.
4. A statement that the Participant or Beneficiary is entitled to receive, upon request and free of charge, relevant documents.
5. In the case of an appeal denial letter, the letter must describe any contractual limitation period for a lawsuit and the expiration date for that limitation period along with a statement that the limitation period may not expire before the conclusion of the Plan's internal appeals process.
6. If a claimant's address is in a county where at least 10% of the individuals in that population are literate only in the same non-English language (as determined by the United States Census Bureau), the notices must include a statement in the non-English language about the availability of language services. In addition, the Plan must provide a customer assistance process (such as a telephone hotline) with oral language services in the non-English language and provide written notices in that language upon request.

Failure to adhere to the special requirements applicable to benefit determinations pursuant to this Section 3.7.3 will result in the Participant or Beneficiary being deemed to have exhausted the Plan's administrative remedies, thus giving such Participant or Beneficiary the right to pursue court action, unless the violation was de minimis; non-prejudicial; attributable to good cause or matters beyond the Plan's control; in the context of on-going good-faith exchange of information; and not reflective of a pattern or practice of non-compliance.

The administrative remedies available under the Plan with respect to claims for disability benefits will not be deemed exhausted based on de minimis violations that do not cause, and are not likely to cause, prejudice or harm to the claimant so long as the Plan demonstrates that the violation was for good cause or due to matters beyond the control of the Plan and that the violation occurred in the context of an ongoing, good faith exchange of information between the Plan and the claimant. This exception is not available if the violation is part of a pattern or practice of violations by the

Plan. The claimant may request a written explanation of the violation from the Plan, and the Plan must provide such explanation within 10 days, including a specific description of its basis, if any, for asserting that the violation should not cause the administrative remedies available under the Plan to be deemed exhausted. If a court rejects the claimant's request for immediate review under on the basis that the Plan met the standards that the violation was de minimis; non-prejudicial; attributable to good cause or matters beyond the Plan's control, the claim will be considered as re-filed on appeal upon the Plan's receipt of the decision of the court. Within a reasonable time after the receipt of the decision, the Plan will provide the claimant with notice of the resubmission.

**3.7.4  Claims Appeal Involving Disability.**  If the Plan Administrator receives a notice of an appeal of the denial of a claim for benefit from a Participant or a Beneficiary, within the prescribed period of time, such notice and all relevant materials will immediately be submitted to the Employer. The Employer may hold a hearing or otherwise ascertain such facts as it deems necessary and will render a decision, which will be binding upon both parties.

The decision of the Employer will be made within 60 days (45 days for Disability claims) after the receipt by the Plan Administrator of the notice of appeal, unless special circumstances require an extension of time for processing, in which case a decision of the Employer will be rendered as soon as possible but not later than 120 days after receipt of the request for review.  If such an extension of time is required, written notice of the extension will be furnished to the claimant prior to the commencement of the extension. The decision of the Employer will be in writing, will include specific reasons for the decision, written in a manner calculated to be understood by the claimant, as well as specific references to the pertinent Plan provisions on which the decision is based and will be promptly furnished to the claimant.  Benefits under this Plan granted pursuant to such an appeal will be paid only if the Employer decides in their discretion that the applicant is entitled to them.

# ARTICLE VIII

# AMENDMENT AND TERMINATION

### 3.8.1 Right to Amend.

**(a)**  The Employer may at any time or times amend the Plan, Trust, and the provisions of the Adoption Agreement, in whole or in part. The Employer specifically reserves the right to amend the Plan retroactively.  Subject to Subsection (b), an Employer that amends the Plan will no longer participate in this Plan and will be considered to have an individually designed plan.

**(b)**  The Employer may change the choice of options in the Adoption Agreement, add overriding language in the Adoption Agreement when such language is necessary to satisfy Code sections 415 or 416 because of the required aggregation of multiple plans, and add certain sample or model amendments published by the Internal Revenue Service or other required good faith amendments that specifically provide that their adoption will not cause the Plan to be treated as individually designed.  An Employer that amends the Plan for any other reason, including a waiver of the minimum funding requirements under Code section 412(d), will no longer have reliance on the Sponsor's advisory letter.

An Employer that has adopted the Plan may amend the Trust or custodial account document provided such amendment merely involves the specifications of the names of the Plan, Employer, Trustee or custodian, Plan Administrator or other Fiduciaries, the Trust Year, or the name of any pooled trust in which the Plan's Trust will participate.

An Employer that has adopted the Plan will not be considered to have an individually designed plan merely because the Employer amends administrative provisions of the Trust or custodial account document (such as provisions relating to investments and duties of Trustees) so long as the amended provisions are not in conflict with any other provision of the Plan and do not cause the Plan to fail to qualify under Code section 401(a).

An Employer may also add or change provisions permitted under the Plan and/or specify or change the effective date of a provision as permitted under the Plan and correct obvious and unambiguous typographical errors and/or cross-references that merely correct a reference but that do not in any way change the original intended meaning of the provisions.

### 3.8.2 Manner of Amending.  The Employer will make each Plan amendment by delivery to the Plan Administrator of a copy of the Employer resolution that adopts and sets forth such amendment.

### 3.8.3 Limitations On Amendments.

**(a)**  No Plan amendment shall:

    **(1)**  Directly or indirectly operate to give the Employer any interest whatsoever in the assets of the Trust or custodial account or to deprive any Participant or Beneficiary of their vested and nonforfeitable interest in the assets of the Trust as then constituted, or cause any part of the income or corpus of the Trust to be used for, or diverted to, purposes other than the exclusive benefit of Employees or their Beneficiaries;

    **(2)**  Increase the duties or liabilities of the Trustee without the Trustee's prior written consent;

    **(3)**  Change the vesting schedule under the Plan if the nonforfeitable percentage of the Account balance derived from Employer Contributions (determined as of the later of the date such amendment is adopted or the date such amendment becomes effective) of any Participant is less than such nonforfeitable percentage computed without regard to such amendment; or

**(4)** Reduce or eliminate the accrued benefit of a Participant within the meaning of Code section 411(d)(6), or otherwise places greater restrictions or conditions on a participant's rights, except to the extent permitted under Code section 412(d)(2) or to the extent permitted under sections 1.411(d)-3 and 1.411(d)-4 of the regulations. An amendment that has the effect of decreasing a Participant's Account balance with respect to benefits attributable to service before the amendment will be treated as reducing an accrued benefit.

**(b)** If a Plan amendment changes the vesting schedule or the Plan is amended in any way that directly or indirectly affects the computation of the Participant's nonforfeitable percentage or if the Plan is deemed amended by an automatic change to or from a Top-Heavy vesting schedule, each Participant who has completed 3 Years of Service (or in the case of Participants who do not have at least 1 Hour of Service in any Plan Year beginning after 1988, 5 or more Years of Service) may elect within a reasonable period after the adoption of such amendment to have their nonforfeitable percentage computed without regard to such amendment or change. The period during which such Participant may make the election will commence with the date the amendment is adopted or deemed to be made and will end on the latest of 60 days after the latest of the date:

**(1)** The amendment is adopted;

**(2)** The amendment becomes effective; or

**(3)** The Employer or Plan Administrator issues the Participant written notice of the amendment.

**(c)** No Plan amendment will eliminate or restrict an optional form of benefit. The preceding sentence will not apply to a Plan amendment that eliminates or restricts the ability of a Participant to receive payment of their Account balance under a particular optional form of benefit if the amendment provides a single-sum distribution form that is otherwise identical to the optional form of benefit eliminated or restricted. For purposes of this condition, a single-sum distribution form is otherwise identical only if it is identical in all respects to the eliminated or restricted optional form of benefit (or would be identical except that it provided greater rights to the Participant) except with respect to the timing of payments after commencement.

**3.8.4 Plan Termination.** The Employer may elect to terminate the Plan or termination may occur based on certain business transactions. Upon termination, the Plan must provide for the immediate 100% vesting of the nonforfeitable interest in all of an affected Participant's account balance. Notwithstanding the effective date of the termination, the Trust will continue until the entire Distributable Benefit of each Participant has been distributed.

**(a) Voluntary Termination.** The Employer may terminate the Plan at any time by delivering to the Trustee an instrument in writing that designates such termination. Following termination of the Plan, the Trust will continue until the entire Distributable Benefit of each Participant has been distributed.

**(b) Involuntary Termination.** The Plan will terminate if: (a) the Employer is dissolved or adjudicated bankrupt or insolvent in appropriate proceedings, or if a general assignment is made by the Employer for the benefit of creditors, or (b) the Employer loses its identity by consolidation or merger into one or more corporations or organizations, unless within 90 days after such consolidation or merger, such corporations or organizations elect to continue the Plan.

**(c) Partial Termination.** The Plan will be subject to the rules under section 411(d)(3) of the Code, where it has been determined that a partial termination has occurred by reason of: (1) a plan amendment that adversely affect the rights of the Employees, or (2) by the Employer's severance of a group of Employees who were previously covered under the Plan. Such determination will depend on the facts and circumstances. Notwithstanding, if the Employer's turnover rate is at least 20% due to severance of employment, there is a presumption that a partial termination of the Plan has occurred. If a partial termination occurs, all Participants who had a severance from employment on account of the Partial Termination during the period will become immediately 100% vested in their account.

**(d) Liquidation of all Unallocated Accounts.** Following the termination of the Plan, the Employer will allocate any unallocated amounts due to excess annual additions or forfeitures that are held in a suspension account subject to limitation in section 415(c) of the Code. Notwithstanding any unallocated amounts remaining that

exceed the limitations imposed under section 415(c) of the Code to the extent set forth in rules prescribed by the Commissioner will revert to the Employer.

**(e)    Limitation on Establishing a Successor Plan in the Case of a Cash or Deferred Arrangement.**  The Employer who elects to terminate a Plan that is designated in the Adoption Agreement as a Cash or Deferred Profit Sharing Plan and thereafter liquidates the Trust may not establish a new plan any time during the period beginning on the effective date of the Plan's termination and ending 12 months after all assets have been distributed from the Plan, and further, a distribution may not be made under Article V if the Employer establishes or maintains an alternative defined contribution plan. For purposes of the preceding sentence, the term "Employer" is applied as of the date of plan termination, and a plan is an alternative defined contribution plan only if it is a defined contribution plan that exists at any time during the period beginning on the date of plan termination and ending 12 months after distribution of all assets from the terminated plan. However, if at all times during the 24-month period beginning 12 months before the date of plan termination, fewer than 2% of the employees who were eligible under the defined contribution plan that includes the cash or deferred arrangement as of the date of plan termination are eligible under the other defined contribution plan, the other plan is not an alternative defined contribution plan. In addition, a defined contribution plan is not treated as an alternative defined contribution plan if it is an employee stock ownership plan as defined in Code sections 4975(e)(7) or 409(a), a simplified employee pension as defined in Code section 408(k), a SIMPLE IRA plan as defined in section 408(p), a plan or contract that satisfies the requirements of Code section 403(b), or a plan that is described in Code sections 457(b) or (f).

**3.8.5  Withdrawal By Employer.**  The Employer may withdraw from participation under the Plan without terminating the Trust upon making a transfer of the Trust assets to another Plan, which will be deemed to constitute an amendment in its entirety of the Trust.

**3.8.6  Powers Pending Final Distribution.**  Until final distribution of the assets of the Trust, the Plan Administrator and Trustee will continue to have all the powers provided under this Plan as are necessary for the orderly administration, liquidation, and distribution of the assets of the Trust.

**3.8.7  Delegation to Sponsor.**  The Employer expressly delegates authority to the Document Sponsor the right to amend any part of the Plan on its behalf to the extent necessary to preserve the qualified status of the Plan.  For purposes of amendments by the Document Sponsor, the Mass Submitter will be recognized as the agent of the Document Sponsor.  If the Document Sponsor does not adopt the amendments made by the Mass Submitter, the Plan will no longer be identical to or a minor modifier of the Mass Submitter plan.  The Document Sponsor will submit a copy of the amendment to each Employer who has adopted the Plan after first having received a ruling or favorable determination from the Internal Revenue Service that the Plan as amended satisfies the applicable requirements of the Code.  The Employer may revoke the authority of the Document Sponsor to amend the Plan on its behalf by written notice to the Document Sponsor of such revocation.

However, for purposes of reliance on an advisory or determination letter, the Document Sponsor will no longer have the authority to amend the Plan on behalf of the Employer as of the date (1) the Employer amends the plan to incorporate a type of plan described in section 6.03 of Rev. Proc. 2017-41 that is not permitted under the M&P program, or (2) the Internal Revenue Service notifies the Employer, in accordance with section 24.03 of Rev. Proc. 2017-41, that the Plan is an individually designed plan due to the nature and extent of Employer amendments to the Plan.

# ARTICLE IX

# <u>PORTABILITY</u>

**3.9.1  Continuance by Successor.**  In the event of the dissolution, consolidation, or merger of the Employer, or the sale by the Employer of its assets, the resulting successor person or persons, firm, or corporations may continue this Plan by (a) adopting the Plan by appropriate resolution; (b) appointing a new Trustee as though the Trustee (including all members of a group of individuals acting as Trustee) had resigned; and (c) executing a proper agreement with the new Trustee.  In such event, each Participant in this Plan will have an interest in the Plan after the dissolution, consolidation, merger, or sale of assets at least equal to the interest that they had in the Plan immediately before the dissolution, consolidation, merger, or sale of assets.  Any Participants who do not accept a position with such successor within a reasonable time will be deemed to be terminated.  If, within 90 days from the effective date of such dissolution, consolidation, merger, or sale of assets, such successor does not adopt this Plan, as provided herein, the Plan will automatically be terminated and deemed an involuntary termination.

**3.9.2  Merger With Other Plan.**  In the event of the merger or consolidation with, or transfer of assets or liabilities to, any other deferred compensation plan and trust, each Participant will have an interest in such other plan that is equal to or greater than the interest that they had in this Plan immediately before such merger, consolidation, or transfer, and if such other plan thereafter terminates, each Participant will be entitled to a Distributable Benefit that is equal to or greater than the Distributable Benefit to which they would have been entitled immediately before such merger, consolidation, or transfer if this Plan had then been terminated, as adjusted for any investment gains or losses since such merger, consolidation, or transfer.

**3.9.3  Transfers and Rollovers From Other Plans.**

**(a)**  The Employer may cause all or any of the assets held in connection with any other plan or trust that is maintained by the Employer for the benefit of its Employees and satisfies the applicable requirements of the Code relating to qualified plans and trusts to be transferred to the Trustee, whether such transfer is made pursuant to a merger or consolidation of this Plan with such other plan or trust within the meaning of Code section 414(l) or for any other allowable purpose.  Any such assets so transferred to the Trustee will be accompanied by written instructions from the Employer, or the trustee, custodian, or individual holding such assets, setting forth the name of each Employee for whose benefit such assets have been transferred and showing separately the respective contributions by the Employer and by the Employee and the current value of the assets attributable thereto.

Upon receipt by the Trustee of such assets, the Trustee will place such assets in appropriate Accounts for each Employee.  If the transferor plan maintained a vesting schedule that differs from the schedule maintained under this Plan, the vesting schedule of this Plan will apply, but eligible Participants will have the option to apply the vesting schedule of the transferor plan to the transferred assets in a manner consistent with the provisions of Section 3.8.3(b).

**(b)**  If assets are transferred to the Plan from a defined benefit pension plan, money purchase pension plan, target benefit pension plan, stock bonus or profit sharing plan that are subject to the survivor annuity requirements of Code sections 401(a)(11) and 417, such transferred assets will remain subject to such requirements, and this Plan will provide life annuity distribution options as provided under the transferor plan.  Unless this Plan is also subject to such survivor annuity requirements, the annuity distribution option will only apply to those assets that were transferred and any earnings thereon.

Any such transferred assets and associated earnings will be distributed to the Participant only if:  (1) they terminates employment with the Employer, attains Normal Retirement Age, becomes Disabled, or dies, (2) the Plan should subsequently terminate, or (3) the Employer spins off the business unit to which the Participant is a member.  To implement the restrictions on distributions this Subsection imposes, the Plan must maintain separate accounting between the benefits attributable to the transferred account balances and all other Account balances of each Participant who has Account balances attributable to such transfers.

**(c)**  At the direction of the sponsoring Employer, the Trustee will accept the transfer of account balances from another plan of Employees that have become Employees of the sponsoring Employer due to the spin-off of the business unit to which they belong.

**(d)**  If elected in the Adoption Agreement, the Plan will accept rollovers of Eligible Rollover Distributions made after December 31, 2001, from the types of plans specified in the Adoption Agreement, beginning on the effective date specified in the Adoption Agreement.  Such rollover amounts will be placed in a Rollover Account for the benefit of the Employee in question.

Unless otherwise provided by the Employer in the Adoption Agreement, the Plan will accept a rollover contribution to a Roth Elective Deferral Account only if it is a Direct Rollover from another Roth elective deferral account under an applicable retirement plan described in Code section 402A(e)(1) and only to the extent the rollover is permitted under the rules of Code section 402(c).

The Plan will not provide for a Direct Rollover (including an automatic rollover) for distributions from a Participant's Roth Elective Deferral Account if the amount of the distributions that are Eligible Rollover Distributions are reasonably expected to total less than $200 during a year.  In addition, any distribution from a Participant's Roth Elective Deferral Account is not taken into account in determining whether distributions from a Participant's other accounts are reasonably expected to total less than $200 during a year.  However, Eligible Rollover Distributions from a participant's Roth Elective Deferral Account are taken into account in determining whether the total amount of the Participant's Account balances under the plan exceeds $1,000 for purposes of mandatory distributions from the Plan.

The provisions of the Plan that allow a Participant to elect a Direct Rollover of only a portion of an Eligible Rollover Distribution but only if the amount rolled over is at least $500 is applied by treating any amount distributed from the Participant's Roth Elective Deferral Account as a separate distribution from any amount distributed from the Participant's other accounts in the Plan, even if the amounts are distributed at the same time.

### 3.9.4  Transfer to Other Plans.

**(a)**  The Trustee, upon written direction by the Employer, will transfer some or all of the assets held under the Trust to another plan or trust of the Employer or any other employer meeting the requirements of the Code relating to qualified plans and trusts, whether such transfer is made pursuant to a merger or consolidation of this Plan with such other plan or trust or for any other allowable purpose.

At the direction of the Employer, the Trustee will spin-off a portion of the Plan assets to a plan of the buyer of a portion of the assets of the Employer.  The amount of the spin-off will be the portion of the assets representing the Account balances of Participants who are terminated due to the sale.  In order to be a part of the spin-off, a Participant must become employed by the buyer within one year of the date of sale.

In addition, upon the termination of employment of any Participant and receipt by the Plan Administrator of a request in writing, the Participant may request that any distribution from the Trust to which they are entitled will be transferred to an individual retirement account, an individual retirement annuity, or any other plan or trust that is maintained by some other employer for the benefit of its employees and satisfies the applicable Code requirements relating to qualified plans and trusts.  Upon receipt of any such written request, the Plan Administrator will cause the Trustee to transfer the assets so directed and, as appropriate, will direct the Insurer to transfer to the new trustee any applicable insurance policies issued for the benefit of the Participant.

**(b)**  **Transfer to Nonqualified Foreign Trust.**  If the interest of a Participant or Beneficiary under the Plan is transferred into a nonqualified foreign trust or the assets and liabilities are transferred into a plan described in Section 1165 of the Puerto Rico Code will be a taxable distribution. For this purpose a "Nonqualified Foreign Trust" is a trust: (i) created or organized outside of the United States or (ii) attached to a plan created or organized outside of the United States and is not subject to the Internal Revenue Code.

**(c)**  Exception with respect to Paragraph (b) above.

**(1)**    The Plan Administrator of a pension, profit sharing or stock bonus plan and trust created or organized in Puerto Rico may elect under Section 1022(i)(2)(A) of the Employee Retirement Income Security Act of 1974 (ERISA), to be treated as a qualified trust under Code section 501(a). For purposes of ERISA 1022(i): (i) the plan must cover participants who are all "bona fide" residents of Puerto Rico; or (ii) the plan must covers participants who perform labor or services primarily within Puerto Rico, regardless of their place of residence; and (iii) the plan is exempt from income tax under the laws of Puerto Rico.

**(2)**    Upon such an election, the plan will be treated as a qualified trust under Code section 401(a).

# ARTICLE X

# <u>INSURANCE</u>

**3.10.1  Participants Insurable at Standard Rates.**  The Trustee, when directed by the Plan Administrator, and in accordance with the provisions specified in the Adoption Agreement, will provide incidental insurance benefits by purchasing for each Participant insurable at standard rates, either term insurance, universal life insurance, or ordinary life insurance policies. The manner in which insurance benefits are provided under this Part III Article X must not discriminate in favor of Highly Compensated Employees.

Said Life Insurance Policies will provide a 3.10.6, prior to the Normal Retirement Date, equal to the proceeds of such policies, subject to the following provisions:

**(a)**  The Trustee may invest any portion or all of the assets of the Trust Fund that are attributable to a Participant in the purchase of group or individual Life Insurance Policies issued on the life of the Participant or in the case of a profit sharing plan (including a 401(k) plan), someone in whom the Participant has an insurable interest and for the benefit of the Participant with the consent of the Participant, subject to the following conditions, as they are represented by the Plan Administrator:

　　**(1)**  If "Ordinary Life Insurance Policies" are purchased, the aggregate life insurance premiums must be less than 1/2 of the aggregate Employer contributions and Forfeitures allocated to the Participant's Account at any particular time, without regard to Trust earnings, capital gains, or losses.  For purposes of this Plan, the term "Ordinary Life Insurance Policies" will mean policies with both nondecreasing death benefits and nonincreasing premiums.

　　**(2)**  The aggregate Premiums paid for Life Insurance Policies that are either term, universal or any other policies that are not ordinary whole life Policies will not at any time exceed 25% of the aggregate amount of Employer Contributions and Forfeitures that have been allocated to the Accounts of such Participant.

　　**(3)**  The sum of 1/2 of the aggregate premiums for Ordinary Life Insurance Policies and all premiums for other Life Insurance Policies will not at any time exceed 25% of the aggregate amount of Employer Contributions and Forfeitures that have been allocated to the Accounts of such Participant.

　　**(4)**  For purposes of this Section, a Participant's Elective Deferrals are considered Employer Contributions.

　　**(5)**  The Employer may elect in the Plan's policy on insurance to set minimum amounts for the initial amount of insurance purchased as well as for the purchase of additional amounts.  The minimum amount will be expressed in terms of the face amount of the insurance and may not be greater than $1,000.  The Plan's policy on insurance may require that insurance must be purchased in multiples not to exceed $1,000.

**(b)**  If the case of a profit sharing plan (including a 401(k) plan) that permits In-service distributions to a Participant prior to their Normal Retirement Date in accordance with Subsection 2.5.12(a) or (b), the amount that may be distributed to the Participant may be used to purchase Life Insurance Policies without limitation unless otherwise specified in the Plan's policy on insurance.  Voluntary Employee Contributions and rollovers from other plans may also be used to purchase Life Insurance Policies without limitation.

**3.10.2  Uninsurable Participants.**  For each Participant found by an Insurer to be uninsurable, the Trustee, when requested by the Plan Administrator, will purchase a retirement annuity contract on the life of such Participant with a death benefit before Normal Retirement Date in an amount equal to the cash surrender value of such contract.  The Participant must consent to the purchase of such a retirement annuity contract.

**3.10.3  Participants Insurable at Above Standard Rates.**  If an Insurer finds a Participant to be uninsurable, except at above standard rates, the Trustee, when requested by the Plan Administrator, will pay premiums that do not exceed the percentage of standard rates specified in the Plan's policy on insurance.  The face value of any insurance

-110-

policy will be limited by the percentage of the aggregate Employer Contributions and Forfeitures allocated to the Participant's Account that the Employer dedicated to purchase insurance. The Participant must consent to the purchase of any insurance policy above standard rates.

**3.10.4  Purchase of Policies.**  No Life Insurance Policy will be purchased under the Plan unless at the time of purchase it benefits an active Participant and such policy or separate definite written agreement between the Employer and the Insurer provides that no value or credits determined by the Insurer (on account of dividends, earnings, or other experience rating credits, or surrender or cancellation credits) with respect to such policy may be paid or returned to the Employer or diverted to or used for other than the exclusive benefit of the Participants or their Beneficiaries. Any Life Insurance Policy must provide that any proceeds are payable to the Trustee, subject to the Trustee's obligation to transfer such proceeds to the Beneficiary. Under no circumstances will the Trust retain any part of the proceeds.

If, at any time, a policy described herein will not be available from or will be determined to be invalid or unenforceable by an Insurer, the Trustee, when directed by the Plan Administrator, will purchase a policy or make such other alternative arrangements that, in the opinion of the Plan Administrator, conform most closely to the descriptions herein. In the event of a conflict between the terms of the Plan and the terms of any Life Insurance Policy, the Plan provisions will control.

**3.10.5  Applications for Policies.**  The Trustee will be the applicant, owner, and beneficiary for all Life Insurance Policies required under the terms of the Plan. Any Life Insurance Policy distributed from the Plan must be nontransferable. The terms of any Life Insurance Policy purchased and distributed by the Plan to a Participant or spouse will comply with the requirements of the Plan. The Trustee will not be responsible for the validity or execution of any Life Insurance Policy, failure of an Insurer to pay proceeds when due, or failure of any policy to meet requirements or conform to the provisions of the Plan.

**3.10.6  Incidents of Ownership.**  The Trustee will have the right to receive all sums payable under the terms of all Life Insurance Policies issued hereunder. The Trustee will be the complete and absolute owner of the Life Insurance Policies held in the Trust and of each and every incident of ownership therein and will have the power to exercise the rights, options, and privileges of an absolute owner with respect to the Life Insurance Policies, subject to the provisions of the Plan. The Plan Administrator will have the power to deal with and settle all claims.

**3.10.7  Payment of Premiums.**  In a Plan Year in which the Employer Contributions are less than the amount required to sustain insurance premiums, the Plan Administrator will direct the Trustee to take one of the following steps with respect to payment of insurance premiums on Life Insurance Policies:

**(a)**  Pay premiums due on policies from the Participant's Account, within the limits of 3.10.1 and 3.10.3 above,

**(b)**  Pay premiums due on policies from the Participant's Account using the balance described in 3.10.1(b) above,

**(c)**  Surrender any policies for their cash surrender values and add such amount to the Participant's Account,

**(d)**  Convert the cash surrender value of any policies to paid up insurance for which there will be no further premiums, or

**(e)**  Offer to sell any policies to the Participant for their cash surrender value for transfers or distributions made on or before February 13, 2004. Distributions or transfers of policies after February 13, 2004 sale be valued at Fair Market Value.

**3.10.8  Discontinuance of Policies.**  The Trustee or other Fiduciary responsible for making investment decisions may discontinue the investment in Life Insurance Policies at any time. If the Plan provides for Participant-directed investments, life insurance, as an investment option, may be eliminated at any time by the Plan Administrator. If life insurance investment options are discontinued, the Plan Administrator, in its sole discretion, may offer to sell the policies to the Participant, or to another person, provided the prohibited transaction exemption requirements of the Department of Labor are satisfied.

**3.10.9  Protection of the Insurer.**  An Insurer will not be responsible for the validity of the Plan or the Trust and

will have no responsibility for action taken or not taken by the Trustee, for determining the propriety of accepting premium payments or other contributions, for making payments in accordance with the direction of the Trustee, or for the application of such payments.  The Insurer will be fully protected in dealing with any representative of the Employer or any one of a group of individuals acting as Trustee.  Until an Insurer receives written notice of a change of Trustee at its home office, the Insurer will be fully protected in dealing with any party acting as Trustee according to the latest information received by the Insurer at its home office.

**3.10.10  No Responsibility for Act of Insurer.**  Neither the Employer, the Plan Administrator, nor the Trustee will be responsible for any of the following, nor will they be liable for instituting action in connection with:

**(a)**   The validity of Life Insurance Policies or policy provisions;

**(b)**   Failure or refusal by the Insurer to provide benefits under a policy;

**(c)**   An act by a person that may render a policy invalid or unenforceable; or

**(d)**   Inability to perform or delay in performing an act, which inability or delay is occasioned by a provision of a policy or a restriction imposed by the Insurer.

# ARTICLE XI

# <u>MISCELLANEOUS</u>

**3.11.1  No Reversion to Employer.**

**(a)**  Except as specifically provided in the Plan, no part of the corpus or income of the Trust will revert to the Employer or be used for, or diverted to, purposes other than for the exclusive benefit of Participants and their Beneficiaries.

**(b)  Reversion Upon Termination.**  Notwithstanding Paragraph (a), any other Plan provision or section 1.401(a)-2 of the Treasury Regulations, upon termination of the Plan, amounts contributed to the Plan that exceed the limitations imposed under section 415(c) of the Code, to the extent set forth in rules prescribed by the Commissioner will revert to the Employer.

**3.11.2  Employer Actions.**  Any action by the Employer pursuant to the provisions of the Plan will be evidenced by appropriate resolution or by written instrument executed by any person authorized by the Employer to take such action.

**3.11.3  Execution of Receipts and Releases.**  Any payment to any person eligible to receive benefits under this Plan, in accordance with the provision of the Plan or the Trust, shall, to the extent thereof, be in full satisfaction of all claims hereunder.  The Plan Administrator may require such person, as a condition precedent to such payment, to execute a receipt and release therefore in such form as it will determine.

**3.11.4  Rights of Participants Limited.**  Neither the creation of this Plan and the Trust nor anything contained in this Plan or the Adoption Agreement will be construed as giving any Participant, Beneficiary, or Employee any equity or other interest in the assets, business, or affairs of the Employer, or the right to complain about any action taken by or about any policy adopted or pursued by the Employer, or as giving any Employee the right to be retained in the service of the Employer; and all Employees will remain subject to discharge to the same extent as if the Plan had never been executed.  Prior to the time that distributions are made in conformity with the provisions of the Plan, neither the Participants nor their spouses, Beneficiaries, heirs-at-law, or legal representatives will receive or be entitled to receive cash or any other thing of current exchangeable value from either the Employer or the Trustee as a result of the Plan or the Trust.

**3.11.5  Inalienability.**  The right of any Participant or their Beneficiary in any distribution hereunder or to any Account will not be subject to alienation, assignment, or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein.  No Participant will assign, transfer, or dispose of such right, nor will any such right be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process.  The preceding will also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a Qualified Domestic Relations Order or any domestic relations order entered before January 1, 1985.

The preceding provisions will not apply to judgments, orders, and decrees issued, and settlement agreements entered into, on or after August 5, 1997, that offset a Participant's benefits provided under this Plan if:

**(a)**  The order or requirement to pay arises:

    **(1)**  Under a judgment of conviction for a crime involving this Plan,

    **(2)**  Under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation) of Part 4 of Subtitle B of Title I of the Act, or

    **(3)**  Pursuant to a settlement agreement between the Secretary of Labor and the Participant, or a settlement

-113-

agreement between the Pension Benefit Guaranty Corporation and the Participant, in connection with a violation (or alleged violation) of Part 4 of such subtitle by a Fiduciary or any other person,

**(b)** The judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the Plan against the Participant's benefits provided under the Plan, and

**(c)** In a case in which the survivor annuity requirements of Code section 401(a)(11) apply with respect to distributions from the Plan to the Participant, if the Participant has a spouse at the time at which the offset is to be made:

  **(1)** Either such spouse has consented in writing to such offset and such consent is witnessed by a notary public or representative of the Plan (or it is established to the satisfaction of a Plan representative that such consent may not be obtained by reason of circumstances described in Code section 417(a)(2)(B)), or an election to waive the right of the spouse to either a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity is in effect in accordance with the requirements of Code section 417(a),

  **(2)** Such spouse is ordered or required in such judgment, order, decree, or settlement to pay an amount to the Plan in connection with a violation of Part 4 of such subtitle, or

  **(3)** In such judgment, order, decree, or settlement, such spouse retains the right to receive the survivor annuity under a Qualified Joint and Survivor Annuity  or under a Qualified Preretirement Survivor Annuity, ) where such survivor annuity equals the survivor annuity determined under the Plan assuming that:

    **(i)** The Participant terminated employment on the date of the offset,

    **(ii)** There was no offset,

    **(iii)** Benefits commence at the Participant's Normal Retirement Date (or current age if later),

    **(iv)** The Qualified Joint and Survivor Annuity survivor percentage is 50% (even if another percentage is selected in the definition of Qualified Joint and Survivor Annuity), and

    **(v)** The Qualified Preretirement Survivor Annuity is 50% of such Qualified Joint and Survivor Annuity.

In the event a Participant's benefits are attached by order of any court, the Plan Administrator may bring an action for a declaratory judgment in a court of competent jurisdiction to determine the proper recipient of the benefits to be paid by the Plan.  During the pendency of the action, the Plan Administrator will cause any benefits payable to be paid to the court for distribution by the court as it considers appropriate.

**3.11.6  Qualified Domestic Relations Orders.**  The Plan Administrator will adhere to the terms of any judgment, decree, or order (including approval of a property settlement agreement) that relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a Participant and is made pursuant to a state domestic relations law (including a community property law) and that creates or recognizes the existence of an Alternate Payee's right to, or assigns to an Alternate Payee the right to, receive all or a portion of the benefits payable with respect to a Participant.

Any such domestic relations order must clearly specify the name and last known mailing address of the Participant and the name and mailing address of each Alternate Payee covered by the order, the amount or percentage of the Participant's benefit to be paid by the Plan to each such Alternate Payee, or the manner in which such amount or percentage is to be determined, the number of payments or period to which such order applies, and each plan to which such order applies.

Any such domestic relations order will not require the Plan to provide any type or form of benefit or any option not otherwise provided under the Plan, to provide increased benefits, or the payment of benefits to an Alternate Payee that are required to be paid to another Alternate Payee under another order previously determined to be a Qualified Domestic Relations Order.  Notwithstanding the foregoing sentence, the Employer may elect to permit distributions to an Alternate Payee before the Participant has separated from service, on or after the date on which the Participant

attains or would have attained the earliest retirement age under the Plan, as if the Participant had retired on the date on which such payment is to begin under such order.  For this purpose, the "earliest retirement age" under the Plan means the earlier of: (a) the date on which the Participant is entitled to a distribution under the Plan, or (b) the later of the date the Participant attains age 50, or the earliest date on which the Participant could begin receiving benefits under the Plan if the Participant separated from service.

The payment of benefits to an Alternate Payee before the Participant has severed from employment will be determined as if the Participant had retired, or otherwise terminated employment, on the date on which such payment is to begin under the Qualified Domestic Relations Order, (but taking into account only the benefits actually accrued), and may be paid in any form in which such benefits may be paid under the Plan to the Participant (other than the form of a Joint and Survivor Annuity with respect to the Alternate Payee and their subsequent spouse).

If the Employer so elects in the Adoption Agreement, distributions to an Alternate Payee are permitted while the Participant continues to be employed on or after the date a Domestic Relations Order is determined to be a Qualified Domestic Relations Order by the Plan Administrator.

To the extent provided in the Qualified Domestic Relations Order, the former spouse of a Participant will be treated as a surviving spouse of such Participant for purposes of Code sections 401(a)(11) and 417 (and any spouse of the Participant will not be treated as a spouse of the Participant for such purposes) and if married for at least 1 year to the Participant, the surviving former spouse will be treated as meeting the requirements of Code section 417(d).

The Plan Administrator will promptly notify the Participant and each Alternate Payee of the receipt of a domestic relations order by the Plan and the Plan's procedures for determining the qualified status of domestic relations orders. Within a reasonable period after receipt of a domestic relations order, the Plan Administrator will determine whether such order is a Qualified Domestic Relations Order and will notify the Participant and each Alternate Payee of such determination.  If the Participant or any affected Alternate Payee disagrees with the determinations of the Plan Administrator, the Plan Administrator will treat the disagreeing party as a claimant and follow the claims procedure of the Plan.  The Plan Administrator may bring an action for a declaratory judgment in a court of competent jurisdiction to determine the proper recipient of the benefits to be paid by the Plan.

During any period in which the issue of whether a domestic relations order is a Qualified Domestic Relations Order is being determined (by the Plan Administrator, by a court of competent jurisdiction or otherwise), the Plan Administrator will separately account for the amounts that would have been payable to the Alternate Payee during such period if the order had been determined to be a Qualified Domestic Relations Order.  If, within the 18 month period beginning on the date on which the first payment would be required to be made under the domestic relations order, the order (or modification thereof) is determined to be a Qualified Domestic Relations Order, the Plan Administrator will pay the segregated amounts, including any interest thereon, to the person or persons entitled thereto.  If within such 18 month period it is determined that the order is not a Qualified Domestic Relations Order or the issue whether such order is a Qualified Domestic Relations Order is not resolved, then the Plan Administrator will pay the segregated amounts, including any interest thereon, to the person or persons who would have been entitled to such amounts if there had been no order.  Any determination that an order is a Qualified Domestic Relations Order that is made after the close of the 18-month period will be applied prospectively only.

**3.11.7  Missing Persons.**  If the Trustee mails by registered or certified mail, postage prepaid, to the last known address of a Participant or Beneficiary, a notification that the Participant or Beneficiary is entitled to a distribution and if (a) the notification is returned by the post office because the addressee cannot be located at such address and if neither the Employer, the Plan Administrator nor the Trustee will have any knowledge of the whereabouts of such Participant or Beneficiary within a reasonable timeframe from the date such notification was mailed, or (b) within a reasonable timeframe after such notification was mailed to such Participant or Beneficiary, they does not respond thereto by informing the Trustee of their whereabouts, the ultimate disposition of the then undistributed vested Account balance of such Participant or Beneficiary will be determined in accordance with the then applicable Federal laws, rules, and regulations.

**3.11.8  Notices.**  Any notice or direction to be given in accordance with the Plan will be deemed to have been effectively given if hand delivered to the recipient or sent by certified mail, return receipt requested, to the recipient at the recipient's last known address.  At any time that a group of individuals is acting in a Fiduciary capacity, notice to such Fiduciary may be given by giving notice to any one or more of such individuals.

**3.11.9  Governing Law.**  The provisions of this Plan will be construed, administered, and enforced in accordance with the provisions of the Act and, to the extent applicable, the laws of the state specified in the Adoption Agreement. All contributions to the Trust will be deemed to take place in such state.

**3.11.10  Severability of Provisions.**  In the event that any provision of this Plan will be held to be illegal, invalid, or unenforceable for any reason, said illegality, invalidity, or unenforceability will not affect the remaining provisions, but will be fully severable, and the Plan will be construed and enforced as if said illegal, invalid, or unenforceable provisions had never been inserted herein.

**3.11.11  Gender and Number.**  Whenever appropriate, words used in the singular will include the plural, and the masculine gender will include the feminine gender and vice versa.

**3.11.12  Binding Effect.**  The Plan and Adoption Agreement, and all actions and decisions hereunder, will be binding upon the heirs, executors, administrators, successors, and assigns of any and all parties hereto and Participants, present and future, and their Beneficiaries.

# ARTICLE XII

# Deemed IRA

**3.12.1 Deemed Pre-tax IRA.**  This Section will apply after December 31, 2005, if the Employer elects to permit Participants to make Pre-tax IRA contributions to the Plan.

**(a)**    The Pre-tax IRA Account will be established for the exclusive benefit of the Participant or their Beneficiaries.

**(b)**    The maximum permissible annual contribution will be:

   **(1)**    Except in the case of a rollover contribution (as permitted by Code sections 402(c), 402(e)(6), 403(a)(4), 403(b)(8), 403(b)(10), 408(d)(3), and 457(e)(16)), no contributions will be accepted unless they are in cash, and the total of such contributions will not exceed:

   $3,000 for any taxable year beginning in 2002 through 2004;
   $4,000 for any taxable year beginning in 2005 through 2007; and
   $5,000 for any taxable year beginning in 2008 and years thereafter.

   After 2008, the limit will be adjusted by the Secretary of the Treasury for cost-of-living increases under Code section 219(b)(5)(C).  Such adjustments will be in multiples of $500.

   **(2)**    In the case of a Participant who is 50 or older, the annual cash contribution limit is increased by:

   $500 for any taxable year beginning in 2002 through 2005; and
   $1,000 for any taxable year beginning in 2006 and years thereafter.

   **(3)**    No contributions will be accepted under a SIMPLE IRA plan established by any employer pursuant to Code section 408(p).  Also, no transfer or rollover of funds attributable to contributions made by a particular employer under its SIMPLE IRA plan will be accepted from a SIMPLE IRA, that is, an IRA used in conjunction with a SIMPLE IRA plan, prior to the expiration of the 2 year period beginning on the date the Participant first participated in that employer's SIMPLE IRA plan.

**(c)**    If the Trust acquires collectibles within the meaning of Code Section 408(m) after December 31, 1981, for the benefit of any Pre-tax IRA Account, those Trust assets will be treated as a distribution in an amount equal to the cost of such collectibles.

**(d)**    No part of the Trust funds attributable to a Pre-tax IRA Contribution will be invested in life insurance contracts.

**(e)**    Distributions before death must commence no later than when the Participant attains age 70 1/2.

   **(1)**    Notwithstanding any provision of this Section to the contrary, the distribution of the Participant's interest in the Pre-tax IRA Account will be made in accordance with the requirements of Code section 408(a)(6) and the regulations thereunder, the provisions of which are herein incorporated by reference.  If distributions are made from an annuity contract purchased from an insurance company, distributions thereunder must satisfy the requirements of Q&A-4 of Treasury Regulations section 1.401(a)(9)-6, rather than Subsections (2), (3), and (4) below and Subsection (f).  The Required Minimum Distributions calculated for an IRA created under this Section may be withdrawn from another IRA of the Participant in accordance with Q&A-9 of Treasury Regulations section 1.408-8.

   **(2)**    The entire value of the Account of the Participant for whose benefit the Account is maintained will commence to be distributed no later than the first day of April following the calendar year in which such Participant attains age 70 1/2 (the "required beginning date") over the life of such Participant or the lives of such Participant and their Designated Beneficiary.

-117-

**(3)** The amount to be distributed each year, beginning with the calendar year in which the Participant attains age 70 1/2 and continuing through the year of death, will not be less than the quotient obtained by dividing the value of the IRA created under this Section (as determined under Subsection (h)) as of the end of the preceding year by the distribution period in the Uniform Lifetime Table in Q&A-2 of Treasury Regulations section 1.401(a)(9)-9, using the Participant's age as of their birthday in the year. However, if the Participant's sole Designated Beneficiary is their surviving spouse and such spouse is more than ten (10) years younger than the Participant, then the distribution period is determined under the Joint and Last Survivor Table in Q&A-3 of Treasury Regulations section 1.401(a)(9)-9, using the ages as of the Participant's and spouse's birthdays in the year.

**(4)** The Required Minimum Distribution for the year the Participant attains age 70 1/2 can be made as late as April 1 of the following year. The Required Minimum Distribution for any other year must be made by the end of such year.

**(f)** **Death On or After Required Beginning Date.** If the Participant dies on or after the required beginning date, the remaining portion of their interest will be distributed at least as rapidly as follows:

**(1)** If the Designated Beneficiary is someone other than the Participant's surviving spouse, the remaining interest will be distributed over the remaining life expectancy of the Designated Beneficiary, with such life expectancy determined using the Beneficiary's age as of their birthday in the year following the year of the Participant's death, or over the period described in Subsection (3) below if longer.

**(2)** If the Participant's sole Designated Beneficiary is the Participant's surviving spouse, the remaining interest will be distributed over such spouse's life or over the period described in Subsection (3) below if longer. Any interest remaining after such spouse's death will be distributed over such spouse's remaining life expectancy determined using the spouse's age as of their birthday in the year of the spouse's death, or, if the distributions are being made over the period described in Subsection (3) below, over such period.

**(3)** If there is no Designated Beneficiary, or if applicable by operation of Subsections (f)(1) or (f)(2) above, the remaining interest will be distributed over the individual's remaining life expectancy determined in the year of the individual's death.

**(4)** The amount to be distributed each year under Subsections (1), (2), or (3), beginning with the calendar year following the calendar year of the Participant's death, is the quotient obtained by dividing the value of the IRA created under this Section as of the end of the preceding year by the remaining life expectancy specified in such Subsection. Life expectancy is determined using the Single Life Table in Q&A-1 of Treasury Regulations section 1.401(a)(9)-9. If distributions are being made to a surviving spouse as the sole Designated Beneficiary, such spouse's remaining life expectancy for a year is the number in the Single Life Table corresponding to such spouse's age in the year. In all other cases, remaining life expectancy for a year is the number in the Single Life Table corresponding to the Beneficiary's or Participant's age in the year specified in Subsections (1), (2), or (3) and reduced by 1 for each subsequent year.

**(g)** **Death Before Required Beginning Date.** If the Participant dies before the required beginning date, their entire interest will be distributed at least as rapidly as follows:

**(1)** If the Designated Beneficiary is someone other than the Participant's surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of the Participant's death, over the remaining life expectancy of the Designated Beneficiary, with such life expectancy determined using the age of the Beneficiary as of their birthday in the year following the year of the Participant's death, or, if elected, in accordance with Subsection (3) below.

**(2)** If the Participant's sole Designated Beneficiary is the Participant's surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of the Participant's death (or by the end of the calendar year in which the Participant would have attained age 70 1/2, if later), over such spouse's life, or, if elected, in accordance with Subsection (3) below. If the surviving spouse dies before distributions are required to begin, the remaining interest will be distributed, starting by the end of

the calendar year following the calendar year of the spouse's death, over the spouse's Designated Beneficiary's remaining life expectancy determined using such Beneficiary's age as of their birthday in the year following the death of the spouse, or, if elected, will be distributed in accordance with Subsection (3) below.  If the surviving spouse dies after distributions are required to begin, any remaining interest will be distributed over the spouse's remaining life expectancy determined using the spouse's age as of their birthday in the year of the spouse's death.

(3)    If there is no Designated Beneficiary, or if applicable by operation of Subsections (1) or (2) above, the entire interest will be distributed by the end of the calendar year containing the fifth anniversary of the Participant's death (or of the spouse's death in the case of the surviving spouse's death before distributions are required to begin under Subsection (2) above).

(4)    The amount to be distributed each year under Subsections (1) or (2) is the quotient obtained by dividing the value of the IRA created under this Section as of the end of the preceding year by the remaining life expectancy specified in such Subsection.  Life expectancy is determined using the Single Life Table in Q&A-1 of Treasury Regulations section 1.401(a)(9)-9.  If distributions are being made to a surviving spouse as the sole Designated Beneficiary, such spouse's remaining life expectancy for a year is the number in the Single Life Table corresponding to such spouse's age in the year.  In all other cases, remaining life expectancy for a year is the number in the Single Life Table corresponding to the Beneficiary's age in the year specified in Subsections (1) or (2) and reduced by 1 for each subsequent year.

(h)    The "value" of the IRA created under this Section includes the amount of any outstanding rollover, transfer, and recharacterization under Q&As-7 and -8 of Treasury Regulations section 1.408-8.

(i)    If the sole Designated Beneficiary is the Participant's surviving spouse, the spouse may elect to treat the IRA created under this Section as their own IRA.  This election will be deemed to have been made if such surviving spouse makes a contribution to the IRA or fails to take required distributions as a Beneficiary.

(j)    The interest of a Participant in the balance in their Account is nonforfeitable at all times.

(k)    **Trust Provisions.**

(1)    The trustee of a Deemed IRA Account must be a bank, as required by Code section 408(a)(2) , or if the trustee is not a bank as defined in Code section 408(n), the Trustee must have received approval from the Commissioner of the Internal Revenue Service to serve as a nonbank trustee or nonbank custodian pursuant to Treasury Regulations section 1.408-2(e).

(2)    The requirements of Code section 408(a)(5) regarding commingling of assets do not apply to Deemed IRAs.  Accordingly, the assets of a Deemed IRA may be commingled for investment purposes with those of the Plan.  However, the restrictions on the commingling of Plan and IRA assets with other assets apply to the assets of the Plan and Deemed IRA Accounts established under this Plan.

(l)    Separate records will be maintained for the interest of each Participant.

(m)    The trustee of the Deemed IRA Accounts will furnish annual calendar-year reports concerning the status of the Deemed IRA Accounts and such information concerning Required Minimum Distributions as is prescribed by the Commissioner of Internal Revenue Service.

(n)    The nonbank trustee or custodian will substitute another trustee or custodian if the nonbank trustee or custodian receives notice from the Commissioner of Internal Revenue Service that such substitution is required because it has failed to comply with the requirements of Treasury Regulations section 1.408-2(e).

(o)    For purposes of this Section, "compensation" means wages, salaries, professional fees, or other amounts derived from or received for personal services actually rendered (including, but not limited to commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, and bonuses) and includes Earned Income, as defined in Code section 401(c)(2) (reduced by the deduction the Self-Employed Individual takes for contributions made to a self-employed retirement plan). For purposes of

this definition, Code section 401(c)(2) will be applied as if the term trade or business for purposes of Code section 1402 included service described in Subsection (c)(6). Compensation does not include amounts derived from or received as earnings or profits from property (including but not limited to interest and dividends) or amounts not includible in gross income determined without regard to section 112 of the Code. Compensation also does not include any amount received as a pension or annuity or as deferred compensation. The term "compensation" will include any amount includible in the Participant's gross income under Code section 71 with respect to a divorce or separation instrument described in Code section 71(b)(2)(A) and Differential Wage Payments as defined in section 3401(h)(2) of the Code.

**3.12.2  Deemed Roth IRA.**  This Section will apply after December 31, 2005, if the Employer elects to permit Participants to make Roth IRA contributions to this Plan.

**(a)**  A Roth IRA Account will be established for the exclusive benefit of the Participant or their Beneficiaries.

**(b)**  The maximum permissible annual contribution will be:

**(1)**  Except in the case of a qualified rollover contribution or a recharacterization (as defined in Subsection (6) below), no contribution will be accepted unless it is in cash and the total of such contributions to all the Participant's Roth IRAs for a taxable year does not exceed the applicable amount (as defined in Subsection (2) below), or the Participant's compensation (as defined in Subsection (8) below), if less, for that taxable year. The contribution described in the previous sentence that may not exceed the lesser of the applicable amount or the Participant's compensation is referred to as a "regular contribution." A "qualified rollover contribution" is a rollover contribution that meets the requirements of Code section 408(d)(3), except the one-rollover-per-year rule of Code section 408(d)(3)(B) does not apply if the rollover contribution is from an IRA other than a Roth IRA (a "non-Roth IRA"). Contributions may be limited under Subsections (3) through (5) below. The applicable amount is will not exceed:

$3,000 for any taxable year beginning in 2002 through 2004;
$4,000 for any taxable year beginning in 2005 through 2007; and
$5,000 for any taxable year beginning in 2008 and years thereafter.

After 2008, the limit will be adjusted by the Secretary of the Treasury for cost-of-living increases under Code section 219(b)(5)(C). Such adjustments will be in multiples of $500.

**(2)**  In the case of a Participant who is 50 or older, the annual cash contribution limit is increased by: PI=6,6

$500 for any taxable year beginning in 2002 through 2005; and
$1,000 for any taxable year beginning in 2006 and years thereafter.

**(3)**  **Regular Contribution Limit.** If Subsections (i) and/or (ii) below apply, the maximum regular contribution that can be made to all the Participant's Roth IRAs for a taxable year is the smaller amount determined under Subsections (i) or (ii).

**(i)**  The maximum regular contribution is phased out ratably between certain levels of modified adjusted gross income ("modified AGI," defined in Subsection (7) below) in accordance with the following table:

| Filing Status | Full Contribution | Phase-out Range Modified AGI | No Contribution |
|---|---|---|---|
| Single or Head of Household | $95,000 or less | Between $95,000 and $110,000 | $110,000 or more |
| Joint Return or Qualifying Widow(er) | $150,000 or less | Between $150,000 and $160,000 | $160,000 or more |
| Married Separate Return | $0 | Between $0 and $10,000 | $10,000 or more |

If the Participant's modified AGI for a taxable year is in the phase-out range, the maximum regular contribution determined under this table for that taxable year is rounded up to the next multiple of $10 and is not reduced below $200 and after 2006, the dollar amount above will be adjusted by the Secretary of the Treasury for cost of living increases under section 408A(c)(3) of the Code. Such adjustments are in multiples of one $1,000.

    **(ii)**   If the Participant makes regular contributions to both Roth and non-Roth IRAs for a taxable year, the maximum regular contribution that can be made to all the individual's Roth IRAs for that taxable year is reduced by the regular contributions made to the Participant's non-Roth IRAs for the taxable year.

**(4)**   **Qualified Rollover Contribution Limit.**  A rollover from a non-Roth IRA cannot be made to this IRA if, for the year the amount is distributed from the non-Roth IRA, (i) the Participant is married and files a separate return, (ii) the Participant is not married and has modified AGI in excess of $100,000, or (iii) the Participant is married and together the Participant and the Participant's spouse have modified AGI in excess of $100,000.  For purposes of the preceding sentence, a husband and wife are not treated as married for a taxable year if they have lived apart at all times during that taxable year and file separate returns for the taxable year.

**(5)**   **SIMPLE IRA Limits.**  No contributions will be accepted under a SIMPLE IRA plan established by any employer pursuant to Code section 408(p).  Also, no transfer or rollover of funds attributable to contributions made by a particular employer under its SIMPLE IRA plan will be accepted from a SIMPLE IRA, that is, an IRA used in conjunction with a SIMPLE IRA plan, prior to the expiration of the 2 year period beginning on the date the individual first participated in that employer's SIMPLE IRA plan.

**(6)**   **Recharacterization.**  A regular contribution to a non-Roth IRA may be recharacterized pursuant to the rules in Treasury Regulations section 1.408A-5 as a regular contribution to this IRA, subject to the limits in Subsection (3) above.

**(7)**   **Modified AGI.**  For purposes of (3) and (4) above, a Participant's modified AGI for a taxable year is defined in Code section 408A(c)(3)(C)(i) and does not include any amount included in adjusted gross income as a result of a rollover from a non-Roth IRA (a "conversion").

**(8)**   **Compensation.**  For purposes of Subsection (b) above, compensation is defined as wages, salaries, professional fees, or other amounts derived from or received for personal services actually rendered (including, but not limited to commissions paid salesmen, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, and bonuses) and includes Earned Income, as defined in Code section 401(c)(2) (reduced by the deduction the Self-Employed Individual takes for contributions made to a self-employed retirement plan). For purposes of this definition, Code section 401(c)(2) will be applied as if the term trade or business for purposes of Code section 1402 included service described in Subsection (c)(6).  Compensation does not include amounts derived from or received as earnings or profits from property (including but not limited to interest and dividends) or amounts not includible in gross income.  Compensation also does not include any amount received as a pension or annuity or as deferred compensation.  The term "compensation" will include any amount includible in the individual's gross income under Code section 71 with respect to a divorce or separation instrument described in Code section 71(b)(2)(A).  In the case of a married Participant filing a joint return, the greater compensation of their spouse is treated as their own compensation, but only to the extent that such spouse's compensation is not being used for purposes of the spouse making a contribution to a Roth IRA or a deductible contribution to a non-Roth IRA. Compensation does not include amounts derived from or received as earnings or profits from property (including but not limited to interest and dividends) or amounts not includible in gross income determined without regard to section 112 of the Code. The term "compensation" will include any amount includible in the Participant's gross income under Code section 71 with respect to a divorce or separation instrument described in Code section 71(b)(2)(A) and Differential Wage Payments as defined in section 3401(h)(2) of the Code.

**(c)**   If the trust acquires collectibles within the meaning of Code section 408(m) after December 31, 1981, for the benefit of any Roth IRA Account, those trust assets will be treated as a distribution in an amount equal to the

cost of such collectibles.

**(d)** No part of the Trust funds attributable to a Roth IRA Contribution will be invested in life insurance contracts.

**(e)** No amount is required to be distributed prior to the death of the Participant for whose benefit the account was originally established.

**(f) Distribution upon Death.**

**(1)** Notwithstanding any provision of this Section to the contrary, the distribution of the Participant's interest in the Roth IRA Account will be made in accordance with the requirements of Code section 408(a)(6), as modified by Code section 408A(c)(5), and the regulations thereunder, the provisions of which are herein incorporated by reference. If distributions are made from an annuity contract purchased from an insurance company, distributions thereunder must satisfy the requirements of Temporary Treasury Regulations section 1.401(a)(9)-6T (taking into account Code section 408A(c)(5)), rather than the distribution rules in Subsections (2), (3), and (4) below.

**(2)** Upon the death of the Participant, their entire interest will be distributed at least as rapidly as follows:

**(A)** If the Designated Beneficiary is someone other than the Participant's surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of the Participant's death, over the remaining life expectancy of the Designated Beneficiary, with such life expectancy determined using the age of the Beneficiary as of their birthday in the year following the year of the Participant's death, or, if elected, in accordance with Subsection (C) below.

**(B)** If the Participant's sole Designated Beneficiary is the Participant's surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of the Participant's death (or by the end of the calendar year in which the Participant would have attained age 70 1/2, if later), over such spouse's life expectancy, or, if elected, in accordance with Subsection (C) below. If the surviving spouse dies before distributions are required to begin, the remaining interest will be distributed, starting by the end of the calendar year following the calendar year of the spouse's death, over the spouse's Designated Beneficiary's remaining life expectancy determined using such Beneficiary's age as of their birthday in the year following the death of the spouse, or, if elected, will be distributed in accordance with Subsection (C) below. If the surviving spouse dies after distributions are required to begin, any remaining interest will be distributed over the spouse's remaining life expectancy determined using the spouse's age as of their birthday in the year of the spouse's death.

**(C)** If the Participant's sole Designated Beneficiary is the Participant's surviving spouse, the entire interest will be distributed, starting by the end of the calendar year following the calendar year of the Participant's death (or by the end of the calendar year in which the Participant would have attained age 70 1/2, if later), over such spouse's life expectancy, or, if elected, in accordance with Subsection (C) below. If the surviving spouse dies before distributions are required to begin, the remaining interest will be distributed, starting by the end of the calendar year following the calendar year of the spouse's death, over the spouse's Designated Beneficiary's remaining life expectancy determined using such Beneficiary's age as of their birthday in the year following the death of the spouse, or, if elected, will be distributed in accordance with Subsection (C) below. If the surviving spouse dies after distributions are required to begin, any remaining interest will be distributed over the spouse's remaining life expectancy determined using the spouse's age as of their birthday in the year of the spouse's death.

**(D)** The amount to be distributed each year under Subsection (A) or (B) is the quotient obtained by dividing the value of the IRA created under this Section as of the end of the preceding year by the remaining life expectancy specified in such Subsection. Life expectancy is determined using the Single Life Table in Q&A-1 of Treasury Regulations section 1.401(a)(9)-9. If distributions are being made to a surviving spouse as the sole Designated Beneficiary, such spouse's remaining life expectancy for a year is the number in the Single Life Table corresponding to such spouse's age in the

year.  In all other cases, remaining life expectancy for a year is the number in the Single Life Table corresponding to the Beneficiary's age in the year specified in Subsections (A) or (B) and reduced by 1 for each subsequent year.

**(3)**  The "value" of the IRA created under this Section includes the amount of any outstanding rollover, transfer and recharacterization under Q&As-7 and -8 of Treasury Regulations section 1.408-8.

**(4)**  If the sole Designated Beneficiary is the Participant's surviving spouse, the spouse may elect to treat the IRA created under this Section as their own IRA.  This election will be deemed to have been made if such surviving spouse makes a contribution to the IRA or fails to take required distributions as a Beneficiary.

**(g)**  The interest of a Participant in the balance in their Account is nonforfeitable at all times.

**(h)**  **Trust Provisions.**

**(1)**  The trustee of a Deemed IRA Account must be a bank, as required by Code section 408(a)(2), or if the trustee is not a bank as defined in Code section 408(n), the trustee must have received approval from the Commissioner of the Internal Revenue Service to serve as a nonbank trustee or nonbank custodian pursuant to Treasury Regulations section 1.408-2(e).

**(2)**  The requirements of Code section 408(a)(5) regarding commingling of assets do not apply to Deemed IRA Accounts.  Accordingly, the assets of a Deemed IRA Account may be commingled for investment purposes with those of the Plan.  However, the restrictions on the commingling of Plan and IRA assets with other assets apply to the assets of the Plan and the Deemed IRA Accounts established under this Plan.

**(i)**  Separate records will be maintained for the interest of each Participant.

**(j)**  The trustee of the Deemed IRA Accounts will furnish annual calendar-year reports concerning the status of the Deemed IRA Accounts and such information concerning Required Minimum Distributions as is prescribed by the Commissioner of Internal Revenue.

**(k)**  The nonbank trustee or custodian will substitute another trustee or custodian if the nonbank trustee or custodian receives notice from the Commissioner of Internal Revenue that such substitution is required because it has failed to comply with the requirements of Treasury Regulations section 1.408-2(e).

## Appendix A
### Age-Weighted Tables
#### Table I

| NRA | UP84 - male/female 7.50% | 8.00% | 8.50% | G71 - male 7.50% | 8.00% | 8.50% |
|---|---|---|---|---|---|---|
| 50 | 133.39558 | 127.81104 | 122.64462 | 133.87491 | 128.27223 | 123.08767 |
| 51 | 131.68326 | 126.25593 | 121.22873 | 132.15556 | 126.71284 | 121.66974 |
| 52 | 129.91096 | 124.64274 | 119.75675 | 130.37691 | 125.09602 | 120.19650 |
| 53 | 128.08231 | 122.97462 | 118.23141 | 128.53619 | 123.41915 | 118.66534 |
| 54 | 126.19427 | 121.24857 | 116.65005 | 126.63053 | 121.67908 | 117.07298 |
| 55 | 124.24537 | 119.46290 | 115.01035 | 124.65642 | 119.87202 | 115.41560 |
| 56 | 122.23012 | 117.61205 | 113.30687 | 122.60942 | 117.99381 | 113.68869 |
| 57 | 120.15072 | 115.69789 | 111.54129 | 120.48454 | 116.03902 | 111.88699 |
| 58 | 118.01011 | 113.72295 | 109.71577 | 118.27602 | 114.00182 | 110.00446 |
| 59 | 115.81245 | 111.69104 | 107.83357 | 115.98196 | 111.88010 | 108.03873 |
| 60 | 113.55288 | 109.59709 | 105.88958 | 113.61351 | 109.68388 | 105.99902 |
| 61 | 111.23508 | 107.44439 | 103.88693 | 111.17770 | 107.42004 | 103.89146 |
| 62 | 108.86392 | 105.23735 | 101.82937 | 108.67722 | 105.09058 | 101.71801 |
| 63 | 106.44537 | 102.98163 | 99.72218 | 106.11093 | 102.69407 | 99.47675 |
| 64 | 103.98697 | 100.68415 | 97.57192 | 103.47950 | 100.23073 | 97.16756 |
| 65 | 101.49368 | 98.34959 | 95.38290 | 100.79213 | 97.70930 | 94.79850 |
| 66 | 98.97540 | 95.98734 | 93.16400 | 98.06584 | 95.14576 | 92.38490 |
| 67 | 96.44411 | 93.60886 | 90.92637 | 95.31689 | 92.55574 | 89.94173 |
| 68 | 93.89662 | 91.21125 | 88.66695 | 92.55865 | 89.95208 | 87.48110 |
| 69 | 91.32062 | 88.78211 | 86.37369 | 89.79449 | 87.33800 | 85.00626 |
| 70 | 88.70352 | 86.30928 | 84.03460 | 87.04327 | 84.73176 | 82.53467 |
| 71 | 86.04948 | 83.79645 | 81.65305 | 84.32727 | 82.15516 | 80.08784 |
| 72 | 83.36293 | 81.24763 | 79.23264 | 81.65112 | 79.61276 | 77.67027 |
| 73 | 80.64861 | 78.66750 | 76.77767 | 78.99038 | 77.08109 | 75.25922 |
| 74 | 77.92240 | 76.07114 | 74.30287 | 76.31234 | 74.52798 | 72.82319 |
| 75 | 75.19300 | 73.46702 | 71.81622 | 73.59988 | 71.93665 | 70.34555 |
| 76 | 72.47065 | 70.86510 | 69.32745 | 70.85419 | 69.30790 | 67.82691 |
| 77 | 69.76697 | 68.27672 | 66.84769 | 68.10189 | 66.66751 | 65.29201 |
| 78 | 67.09586 | 65.71559 | 64.39026 | 65.39577 | 64.06704 | 62.79139 |
| 79 | 64.44038 | 63.16517 | 61.93914 | 62.76892 | 61.53910 | 60.35702 |
| 80 | 61.81054 | 60.63528 | 59.50387 | 60.22700 | 59.08950 | 57.99492 |

| | G71 - female | | | G83 - male | | |
| NRA | 7.50% | 8.00% | 8.50% | 7.50% | 8.00% | 8.50% |
|---|---|---|---|---|---|---|
| 50 | 144.90527 | 138.26324 | 132.16028 | 138.63492 | 132.59926 | 127.03027 |
| 51 | 143.60635 | 137.11101 | 131.13533 | 137.10255 | 131.22171 | 125.78854 |
| 52 | 142.23274 | 135.88840 | 130.04425 | 135.50742 | 129.78433 | 124.49022 |
| 53 | 140.78142 | 134.59258 | 128.88425 | 133.84552 | 128.28325 | 123.13102 |
| 54 | 139.24881 | 133.21983 | 127.65148 | 132.11209 | 126.71333 | 121.70618 |
| | | | | | | |
| 55 | 137.63167 | 131.76671 | 126.34254 | 130.30165 | 125.06941 | 120.21023 |
| 56 | 135.92700 | 130.22987 | 124.95377 | 128.40761 | 123.34502 | 118.63663 |
| 57 | 134.13313 | 128.60760 | 123.48346 | 126.42384 | 121.53326 | 116.97877 |
| 58 | 132.24942 | 126.89888 | 121.93011 | 124.34516 | 119.62924 | 115.23140 |
| 59 | 130.27652 | 125.10399 | 120.29366 | 122.16888 | 117.63004 | 113.39128 |
| | | | | | | |
| 60 | 128.21500 | 123.22312 | 118.57417 | 119.89545 | 115.53522 | 111.45762 |
| 61 | 126.06589 | 121.25681 | 116.77169 | 117.52676 | 113.34643 | 109.43158 |
| 62 | 123.82951 | 119.20499 | 114.88587 | 115.06712 | 111.06731 | 107.31606 |
| 63 | 121.50521 | 117.06681 | 112.91550 | 112.52366 | 108.70404 | 105.11699 |
| 64 | 119.09157 | 114.84023 | 110.85811 | 109.90545 | 106.26530 | 102.84183 |
| | | | | | | |
| 65 | 116.58681 | 112.52340 | 108.71172 | 107.22400 | 103.76178 | 100.50089 |
| 66 | 113.98596 | 110.11094 | 106.47042 | 104.49343 | 101.20648 | 98.10645 |
| 67 | 111.28113 | 107.59468 | 104.12611 | 101.72785 | 98.61320 | 95.67153 |
| 68 | 108.46410 | 104.96593 | 101.66982 | 98.93819 | 95.99223 | 93.20585 |
| 69 | 105.54134 | 102.23046 | 99.10625 | 96.13028 | 93.34889 | 90.71464 |
| | | | | | | |
| 70 | 102.53171 | 99.40595 | 96.45211 | 93.30456 | 90.68378 | 88.19812 |
| 71 | 99.46349 | 96.51942 | 93.73310 | 90.45657 | 87.99231 | 85.65193 |
| 72 | 96.37133 | 93.60395 | 90.98105 | 87.57864 | 85.26683 | 83.06821 |
| 73 | 93.27601 | 90.67967 | 88.21532 | 84.66842 | 82.50491 | 80.44450 |
| 74 | 90.18710 | 87.75586 | 85.44496 | 81.73067 | 79.71081 | 77.78463 |
| | | | | | | |
| 75 | 87.11538 | 84.84304 | 82.68002 | 78.77675 | 76.89552 | 75.09910 |
| 76 | 84.06201 | 81.94230 | 79.92174 | 75.82433 | 74.07600 | 72.40433 |
| 77 | 81.02953 | 79.05620 | 77.17252 | 72.89544 | 71.27376 | 69.72120 |
| 78 | 78.02448 | 76.19112 | 74.43866 | 70.00987 | 68.50821 | 67.06872 |
| 79 | 75.05164 | 73.35197 | 71.72505 | 67.18340 | 65.79488 | 64.46223 |
| | | | | | | |
| 80 | 72.12192 | 70.54948 | 69.04218 | 64.42863 | 63.14638 | 61.91418 |

| | G83 - female | | | I71 - male | | |
|---|---|---|---|---|---|---|
| NRA | 7.50% | 8.00% | 8.50% | 7.50% | 8.00% | 8.50% |
| 50 | 147.91302 | 140.92288 | 134.51962 | 136.59149 | 130.66277 | 125.19499 |
| 51 | 146.76982 | 139.91631 | 133.63052 | 135.09132 | 129.30840 | 123.96842 |
| 52 | 145.56105 | 138.84839 | 132.68423 | 133.55057 | 127.91486 | 122.70451 |
| 53 | 144.28224 | 137.71524 | 131.67719 | 131.96756 | 126.48077 | 121.40180 |
| 54 | 142.93045 | 136.51337 | 130.60559 | 130.34036 | 125.00422 | 120.05840 |
| 55 | 141.50316 | 135.24040 | 129.46710 | 128.66701 | 123.48285 | 118.67197 |
| 56 | 139.99799 | 133.89372 | 128.25923 | 126.94415 | 121.91390 | 117.23962 |
| 57 | 138.41386 | 132.47191 | 126.98009 | 125.16914 | 120.29424 | 115.75829 |
| 58 | 136.74878 | 130.97319 | 125.62766 | 123.33832 | 118.62031 | 114.22449 |
| 59 | 135.00087 | 129.39540 | 124.20000 | 121.44854 | 116.88880 | 112.63481 |
| 60 | 133.16838 | 127.73611 | 122.69443 | 119.49602 | 115.09599 | 110.98557 |
| 61 | 131.24841 | 125.99266 | 121.10789 | 117.47707 | 113.23811 | 109.27267 |
| 62 | 129.23820 | 124.16174 | 119.43694 | 115.38790 | 111.31123 | 107.49220 |
| 63 | 127.13458 | 122.24028 | 117.67835 | 113.22541 | 109.31195 | 105.64069 |
| 64 | 124.93456 | 120.22482 | 115.82841 | 110.98680 | 107.23723 | 103.71486 |
| 65 | 122.63529 | 118.11200 | 113.88367 | 108.67109 | 105.08606 | 101.71346 |
| 66 | 120.23364 | 115.89850 | 111.84019 | 106.27953 | 102.85897 | 99.63642 |
| 67 | 117.72697 | 113.58125 | 109.69447 | 103.81445 | 100.55810 | 97.48575 |
| 68 | 115.11600 | 111.16051 | 107.44659 | 101.27956 | 98.18649 | 95.26405 |
| 69 | 112.40616 | 108.64074 | 105.10009 | 98.67918 | 95.74812 | 92.97465 |
| 70 | 109.60621 | 106.03004 | 102.66224 | 96.01785 | 93.24705 | 90.62141 |
| 71 | 106.72905 | 103.34048 | 100.14451 | 93.30055 | 90.68764 | 88.20808 |
| 72 | 103.79031 | 100.58642 | 97.56031 | 90.53223 | 88.07468 | 85.73910 |
| 73 | 100.80493 | 97.78230 | 94.92322 | 87.71814 | 85.41285 | 83.21877 |
| 74 | 97.78660 | 94.94115 | 92.24557 | 84.86385 | 82.70737 | 80.65186 |
| 75 | 94.74739 | 92.07442 | 89.53842 | 81.97568 | 79.96405 | 78.04391 |
| 76 | 91.69794 | 89.19222 | 86.81143 | 79.06057 | 77.18962 | 75.40114 |
| 77 | 88.64714 | 86.30317 | 84.07282 | 76.12621 | 74.39142 | 72.73066 |
| 78 | 85.60244 | 83.41460 | 81.32977 | 73.18116 | 71.57761 | 70.04018 |
| 79 | 82.56990 | 80.53235 | 78.58787 | 70.23399 | 68.75650 | 67.33794 |
| 80 | 79.55392 | 77.66068 | 75.85136 | 67.29335 | 65.93657 | 64.63201 |

| | I71 - female | | | I83 - male | | |
| NRA | 7.50% | 8.00% | 8.50% | 7.50% | 8.00% | 8.50% |
|---|---|---|---|---|---|---|
| 50 | 145.27345 | 138.55022 | 132.37967 | 140.91751 | 134.59421 | 128.77736 |
| 51 | 144.00299 | 137.42172 | 131.37393 | 139.58740 | 133.40520 | 127.71147 |
| 52 | 142.66699 | 136.23143 | 130.31013 | 138.20573 | 132.16762 | 126.59975 |
| 53 | 141.26707 | 134.98100 | 129.18979 | 136.76822 | 130.87721 | 125.43825 |
| 54 | 139.80559 | 133.67233 | 128.01442 | 135.27022 | 129.52931 | 124.22237 |
| 55 | 138.28543 | 132.30786 | 126.78642 | 133.70628 | 128.11873 | 122.94695 |
| 56 | 136.70839 | 130.88954 | 125.50736 | 132.07126 | 126.64031 | 121.60671 |
| 57 | 135.07635 | 129.41867 | 124.17855 | 130.35991 | 125.08850 | 120.19650 |
| 58 | 133.38971 | 127.89588 | 122.80050 | 128.56627 | 123.45756 | 118.71015 |
| 59 | 131.64841 | 126.32069 | 121.37219 | 126.68475 | 121.74173 | 117.14211 |
| 60 | 129.84888 | 124.68968 | 119.89085 | 124.71191 | 119.93716 | 115.48811 |
| 61 | 127.98476 | 122.99654 | 118.34991 | 122.64626 | 118.04228 | 113.74637 |
| 62 | 126.04571 | 121.23108 | 116.73965 | 120.48904 | 116.05761 | 111.91704 |
| 63 | 124.01839 | 119.38033 | 115.04700 | 118.24356 | 113.98596 | 110.00253 |
| 64 | 121.88731 | 117.42877 | 113.25709 | 115.91489 | 111.83218 | 108.00687 |
| 65 | 119.63954 | 115.36368 | 111.35684 | 113.50918 | 109.60117 | 105.93467 |
| 66 | 117.26546 | 113.17531 | 109.33646 | 111.03240 | 107.29890 | 103.79118 |
| 67 | 114.76195 | 110.85983 | 107.19194 | 108.49094 | 104.93080 | 101.58132 |
| 68 | 112.13113 | 108.41859 | 104.92365 | 105.89092 | 102.50282 | 99.31059 |
| 69 | 109.37867 | 105.85674 | 102.53592 | 103.23881 | 100.02051 | 96.98409 |
| 70 | 106.51318 | 103.18160 | 100.03551 | 100.54041 | 97.48946 | 94.60693 |
| 71 | 103.54390 | 100.40190 | 97.42999 | 97.80114 | 94.91457 | 92.18357 |
| 72 | 100.48090 | 97.52644 | 94.72774 | 95.02578 | 92.30039 | 89.71836 |
| 73 | 97.33402 | 94.56453 | 91.93686 | 92.21877 | 89.65089 | 87.21460 |
| 74 | 94.11313 | 91.52514 | 89.06599 | 89.38364 | 86.96923 | 84.67558 |
| 75 | 90.82800 | 88.41741 | 86.12322 | 86.52577 | 84.26062 | 82.10585 |
| 76 | 87.48845 | 85.25047 | 83.11730 | 83.65211 | 81.53162 | 79.51167 |
| 77 | 84.10457 | 82.03371 | 80.05694 | 80.77127 | 78.79035 | 76.90089 |
| 78 | 80.68719 | 78.77757 | 76.95184 | 77.89309 | 76.04643 | 74.28268 |
| 79 | 77.24883 | 75.49375 | 73.81338 | 75.02843 | 73.31034 | 71.66727 |
| 80 | 73.80450 | 72.19685 | 70.65545 | 72.18888 | 70.59340 | 69.06559 |

| | I83 - female | | | G83 - 50/50 blend | | |
|---|---|---|---|---|---|---|
| NRA | 7.50% | 8.00% | 8.50% | 7.50% | 8.00% | 8.50% |
| 50 | 148.15100 | 141.09944 | 134.64568 | 142.96988 | 136.50050 | 130.55119 |
| 51 | 147.05406 | 140.13394 | 133.79305 | 141.61377 | 135.29164 | 129.47044 |
| 52 | 145.90085 | 139.11630 | 132.89178 | 140.19287 | 134.02167 | 128.33231 |
| 53 | 144.68849 | 138.04356 | 131.93953 | 138.70319 | 132.68671 | 127.13249 |
| 54 | 143.41400 | 136.91241 | 130.93291 | 137.14035 | 131.28218 | 125.86707 |
| 55 | 142.07372 | 135.24040 | 135.71965 | 135.50061 | 129.80421 | 124.53176 |
| 56 | 140.66418 | 133.89372 | 134.46191 | 133.77962 | 128.24854 | 123.12223 |
| 57 | 139.18233 | 132.47191 | 133.13576 | 131.97313 | 126.61064 | 121.63393 |
| 58 | 137.62485 | 130.97319 | 131.73755 | 130.07793 | 124.88714 | 120.06329 |
| 59 | 135.98819 | 129.39540 | 130.26413 | 128.09181 | 123.07571 | 118.40765 |
| 60 | 134.27019 | 128.71306 | 123.56113 | 126.01379 | 121.17482 | 116.66528 |
| 61 | 132.46928 | 127.08224 | 122.08134 | 123.84377 | 119.18411 | 114.83548 |
| 62 | 130.58479 | 125.37126 | 120.52419 | 121.58291 | 117.10397 | 112.9183 |
| 63 | 128.61720 | 123.57960 | 118.88966 | 119.23342 | 114.93645 | 110.91517 |
| 64 | 126.56706 | 121.70795 | 117.17753 | 116.79882 | 112.68443 | 108.82849 |
| 65 | 124.43398 | 119.75546 | 115.38697 | 114.28428 | 110.35238 | 106.66235 |
| 66 | 122.21593 | 117.71976 | 113.51550 | 111.69566 | 107.94578 | 104.42131 |
| 67 | 119.90926 | 115.59705 | 111.55884 | 109.03972 | 105.47054 | 102.11105 |
| 68 | 117.50813 | 113.38139 | 109.51103 | 106.32292 | 102.93255 | 99.73679 |
| 69 | 115.00637 | 111.06619 | 107.36526 | 103.55064 | 100.33683 | 97.30324 |
| 70 | 112.40035 | 108.64758 | 105.11721 | 100.72765 | 97.68764 | 94.81405 |
| 71 | 109.69025 | 106.12501 | 102.76605 | 97.85741 | 94.98814 | 92.27195 |
| 72 | 106.87985 | 103.50166 | 100.31418 | 94.94323 | 92.24105 | 89.6795 |
| 73 | 103.97594 | 100.78369 | 97.76710 | 91.99074 | 89.45176 | 87.04153 |
| 74 | 100.98827 | 97.98005 | 95.13290 | 89.00923 | 86.62891 | 84.36604 |
| 75 | 97.92718 | 95.10007 | 92.42042 | 86.01041 | 83.78374 | 81.66405 |
| 76 | 94.80299 | 92.15358 | 89.63850 | 83.00905 | 80.93050 | 78.94916 |
| 77 | 91.62602 | 89.15000 | 86.79614 | 80.02145 | 78.08511 | 76.23672 |
| 78 | 88.40592 | 86.09861 | 83.90184 | 77.06220 | 75.26165 | 73.54055 |
| 79 | 85.15211 | 83.00822 | 80.96399 | 74.14289 | 72.47154 | 70.87187 |
| 80 | 81.87574 | 79.88931 | 77.99260 | 71.27254 | 69.72387 | 68.23969 |

| NRA | GAR 7.50% | 8.00% | 8.50% |
|---|---|---|---|
| 50 | 144.66357 | 138.03784 | 131.95119 |
| 51 | 143.30405 | 136.82698 | 130.86949 |
| 52 | 141.86853 | 135.54434 | 129.72020 |
| 53 | 140.35698 | 134.18947 | 128.50233 |
| 54 | 138.76709 | 132.76016 | 127.21368 |
| 55 | 137.09410 | 131.25116 | 125.84917 |
| 56 | 135.33905 | 129.66351 | 124.40922 |
| 57 | 133.50423 | 127.99902 | 122.89558 |
| 58 | 131.59505 | 126.26231 | 121.31211 |
| 59 | 129.61377 | 124.45566 | 119.66088 |
| 60 | 127.55850 | 122.57665 | 117.93940 |
| 61 | 125.43149 | 120.62740 | 116.14915 |
| 62 | 123.24136 | 118.61538 | 114.29734 |
| 63 | 120.98935 | 116.54224 | 112.38506 |
| 64 | 118.68845 | 114.41988 | 110.42379 |
| 65 | 116.33940 | 112.24870 | 108.41366 |
| 66 | 113.94389 | 110.03037 | 106.35605 |
| 67 | 111.50807 | 107.77058 | 104.25637 |
| 68 | 109.02035 | 105.45798 | 102.10343 |
| 69 | 106.45750 | 103.06983 | 99.87505 |
| 70 | 103.81262 | 100.59907 | 97.56403 |
| 71 | 101.07156 | 98.03152 | 95.15617 |
| 72 | 98.24187 | 95.37407 | 92.65754 |
| 73 | 95.34370 | 92.64577 | 90.08628 |
| 74 | 92.37423 | 89.84346 | 87.43903 |
| 75 | 89.33565 | 86.96893 | 84.71690 |
| 76 | 86.23708 | 84.03058 | 81.92786 |
| 77 | 83.08691 | 81.03609 | 79.07889 |
| 78 | 79.93101 | 78.03008 | 76.21336 |
| 79 | 76.78197 | 75.02472 | 73.34282 |
| 80 | 73.65159 | 72.03147 | 70.47867 |

## Age-Weighted
### TABLE II

| years to NRA | discount factor | | |
|---|---|---|---|
| | 7.50% | 8.00% | 8.50% |
| at or over NRA | 1.00000 | 1.00000 | 1.00000 |
| 1 | 0.93023 | 0.92593 | 0.92166 |
| 2 | 0.86533 | 0.85734 | 0.84946 |
| 3 | 0.80496 | 0.79383 | 0.78291 |
| 4 | 0.74880 | 0.73503 | 0.72157 |
| 5 | 0.69656 | 0.68058 | 0.66505 |
| 6 | 0.64796 | 0.63017 | 0.61295 |
| 7 | 0.60275 | 0.58349 | 0.56493 |
| 8 | 0.56070 | 0.54027 | 0.52067 |
| 9 | 0.52158 | 0.50025 | 0.47988 |
| 10 | 0.48519 | 0.46319 | 0.44229 |
| 11 | 0.45134 | 0.42888 | 0.40764 |
| 12 | 0.41985 | 0.39711 | 0.37570 |
| 13 | 0.39056 | 0.36770 | 0.34627 |
| 14 | 0.36331 | 0.34046 | 0.31914 |
| 15 | 0.33797 | 0.31524 | 0.29414 |
| 16 | 0.31439 | 0.29189 | 0.27110 |
| 17 | 0.29245 | 0.27027 | 0.24986 |
| 18 | 0.27205 | 0.25025 | 0.23028 |
| 19 | 0.25307 | 0.23171 | 0.21224 |
| 20 | 0.23541 | 0.21455 | 0.19562 |
| 21 | 0.21899 | 0.19866 | 0.18029 |
| 22 | 0.20371 | 0.18394 | 0.16617 |
| 23 | 0.18950 | 0.17032 | 0.15315 |
| 24 | 0.17628 | 0.15770 | 0.14115 |
| 25 | 0.16398 | 0.14602 | 0.13009 |
| 26 | 0.15254 | 0.13520 | 0.11990 |
| 27 | 0.14190 | 0.12519 | 0.11051 |
| 28 | 0.13200 | 0.11591 | 0.10185 |
| 29 | 0.12279 | 0.10733 | 0.09387 |
| 30 | 0.11422 | 0.09938 | 0.08652 |
| 31 | 0.10625 | 0.09202 | 0.07974 |
| 32 | 0.09884 | 0.08520 | 0.07349 |
| 33 | 0.09194 | 0.07889 | 0.06774 |
| 34 | 0.08553 | 0.07305 | 0.06243 |
| 35 | 0.07956 | 0.06763 | 0.05754 |
| 36 | 0.07401 | 0.06262 | 0.05303 |
| 37 | 0.06885 | 0.05799 | 0.04888 |
| 38 | 0.06404 | 0.05369 | 0.04505 |
| 39 | 0.05958 | 0.04971 | 0.04152 |

| | | | |
|---|---|---|---|
| 40 | 0.05542 | 0.04603 | 0.03827 |
| 41 | 0.05155 | 0.04262 | 0.03527 |
| 42 | 0.04796 | 0.03946 | 0.03251 |
| 43 | 0.04461 | 0.03654 | 0.02996 |
| 44 | 0.04150 | 0.03383 | 0.02761 |
| 45 | 0.03860 | 0.03133 | 0.02545 |
| 46 | 0.03591 | 0.02901 | 0.02345 |
| 47 | 0.03340 | 0.02686 | 0.02162 |
| 48 | 0.03107 | 0.02487 | 0.01992 |
| 49 | 0.02891 | 0.02303 | 0.01836 |
| 50 | 0.02689 | 0.02132 | 0.01692 |

# Appendix B
# INSURANCE ADDENDUM

Notwithstanding anything in the Plan to the contrary, if the Employer elects in the Adoption Agreement to fund the Plan exclusively with Insurance Contracts, the Plan will be deemed a "NonTrusteed Plan". As such, the following provisions will apply, and all references to the Trustee and the Trust Fund will be construed to apply to the annuity contracts as described in this Addendum. Any duties of the Trustees, including but not limited to the establishment of a Participant loan program, that do not expressly apply to the annuity contracts will apply to the Plan Administrator.

**1. Purchase of Contracts.** The benefits provided under this Plan will be funded exclusively through the purchase of annuity Contracts issued by an Insurance Company. The provisions of this Addendum will apply to any such Contracts which, as determined by the Employer, will not be held by the Trustee. The Employer will pay within a reasonable period of time all contributions that are made to this Plan to the Insurer for the purchase of such Contracts.

**2. Employer Designated as Owner.** Each Contract will designate the Employer as sole owner, with rights reserved to said Employer to exercise those rights or options contained therein that apply to the owner of the Contract. All such Contracts will be held by the Employer who will have the power and right to take such actions with respect to such Contracts as will be in accordance with this Plan for the exclusive purpose of providing benefits to Participants. The Employer will be treated as Trustee to the extent that the Contracts are treated as trusts pursuant to Code Section 401(f).

**3. Type of Contracts(s).** The Employer will have the right to determine whether to have fixed of a combination of fixed and variable Contracts and whether to have group or individual Contracts. The Employer will base its decision on which Contract(s) would be more beneficial for the Participants and on the administrative tasks imposed by each Contract. Such decision will be in the sole discretion of the Employer.

**4. Voting Rights.** The Employer will solicit and act in accordance with the instructions of the Participant in regard to any voting rights that pertain to a Contract for a variable accumulation of benefits. During the accumulation period, Participants will have the right to instruct the Employer with respect to the votes attributable to any Vested interest they have in the Contract. All other votes entitled to be cast during the accumulation period may be cast by the Employer in its sole discretion. During the annuity period, every Participant will have the right to instruct the Employer with respect to all votes attributable to the amount of assts established in the appropriate separate account to meet the annuity obligations related to such Participant. The Insurer will provide all notices and proxy materials to the Employer for distribution to the Participants. The Employer may cast all votes for which instruction were not received in accordance with the Employer's sole discretion.

**5. Certificate of Participant.** The Insurer will issue a certificate of participant and/or a Contract, as applicable, to each Participant. Each such certificate of participation will set forth in substance the benefits or other rights to which such Participant is entitled under the Contract.

**6. Insurer Indemnification.** The Employer agrees to indemnify and hold harmless the Insurer against any and all claims, losses, damages, expenses and liabilities the Insurer may incur in the exercise and performance of the Insurer's duties hereunder, unless the same are determined to be due to gross negligence or willful misconduct on the part of the Insurer.

**Appendix C**
## EXPANDED HARDSHIP DISTRIBUTIONS AND REQUIRED MINIMUM DISTRIBUTION ADDENDUM

## Section 1. General

**1.1  Purpose and Adoption.** The following amendment will amend the Plan in accordance with the Bipartisan Budget Act of 2018, the SECURE Act, and any subsequent guidance promulgated by the Internal Revenue Service.

**1.2  Precedence.** The requirements of this Amendment will take precedence over any inconsistent provisions of the Plan, including any previous amendments adopted by the Employer. Where appropriate, the term "Plan" shall mean the Plan and Trust.

**1.3  Requirements of Treasury Regulations Incorporated.** This Amendment is intended to update the Plan for changes made to the Code and Treasury Regulations by the Bipartisan Budget Act of 2018 and the SECURE Act. All matters addressed under this Amendment will be determined and made in accordance with both existing and future guidance related to the provisions contained in this Amendment.

**1.4  Effective Date.** This Amendment amends the Plan effective January 1, 2020, unless an earlier date is elected in an associated Adoption Agreement Amendment.

## Section 2. Base Plan Document Provisions Related to Bipartisan Budget Act of 2018.

**2.1  Qualified Matching Contribution.** The definition of "Qualified Matching Contribution" is replaced in its entirety with the following:

**"Qualified Matching Contribution" and "QMAC":** A Matching Contribution that is one hundred percent (100%) vested and nonforfeitable when allocated to Participants' accounts and that is distributable only in accordance with the distribution restrictions applicable to Elective Deferrals under the Plan.

**2.2  Qualified Non-Elective Contribution.** The definition of "Qualified Non-Elective Contribution" is replaced in its entirety with the following:

**"Qualified Non-Elective Contribution" and "QNEC":** An Employer Contribution to a cash or deferred profit sharing plan that is neither a Non-Elective Contribution, Matching Contribution, Qualified Matching Contribution, nor an Elective Deferral, that is one hundred percent (100%) vested and nonforfeitable when allocated to Participants' accounts, that a Participant may not elect to receive in cash, and that is distributable only in accordance with the distribution restrictions applicable to Elective Deferrals under the Plan.

**2.3  EACA Limitations.** Section 2.2.3(b)(4) of the Base Plan Document is replaced in its entirety with the following:

**(4)  Limitations.** To meet the limitations under Code sections 401(a)(17), 402(g), 414(u)(12)(B)(ii), and 415(c) , the Employer may stop or reduce an Employee's contributions to the Plan.

**2.4  QACA Limitations.** Section 2.2.3(c)(4) of the Base Plan Document is replaced in its entirety with the following:

**(4)  Limitations.** To meet the limitations under Code sections 401(a)(17), 402(g), 414(u)(12)(B)(ii), and 415(c) , the Employer may stop or reduce an Employee's contributions to the Plan.

**2.5**   **Hardship Distributions of Elective Deferrals.** Section 2.5.10 of the Base Plan Document is replaced in its entirety with the following:

**2.5.10 Hardship Distributions of Elective Deferrals, ADP Test Safe Harbor Contribution Accounts, QACA ADP Safe Harbor Contribution Accounts, QNEC Accounts, and QMAC Accounts.** The Employer may elect in the Adoption Agreement or an Adoption Agreement Amendment to permit Hardship Distributions of Elective Deferrals (including attributed earnings if elected in the Adoption Agreement or Adoption Agreement Amendment), ADP Test Safe Harbor Contribution Accounts, QACA ADP Safe Harbor Contribution Accounts, QNEC Accounts, and QMAC Accounts. A Hardship Distribution is a distribution that meets the requirements of a distribution on account of immediate and heavy financial need enumerated in this Section 2.5.10. A Participant may request a distribution from the Plan as a result of immediate and heavy financial needs of the Participant to the extent that the distribution is necessary to satisfy such financial needs. The availability of Hardship Distributions to Participants is limited to Participants who have not terminated employment. Effective August 17, 2006, the Plan may permit a Participant to request a Hardship Distribution where the Hardship or unforeseeable financial emergency occurs to the Participant's spouse, dependents, or Primary Beneficiary.

Hardship distributions are subject to the spousal consent requirements contained in Code sections 401(a)(11) and 417 unless the Plan meets the exception of Subsection 2.5.5(c). The Plan Administrator shall determine whether a Participant has an immediate and heavy financial need. A distribution shall be deemed to be made on account of an immediate and heavy financial need if the distribution is due to:

**(a)**   Deductible medical expenses described in Code section 213(d) incurred or necessary for medical care of the Participant, his spouse, dependents, or Primary Beneficiary under the Plan;

**(b)**   Purchase (excluding mortgage payments) of a principal residence for the Participant;

**(c)**   Cost of tuition and related educational fees and room and board expenses for the next twelve (12) months of post-secondary education for the Participant, his spouse, children, Primary Beneficiary or dependents;

**(d)**   The need to prevent the eviction of the Participant from his principal residence or foreclosure on the mortgage of the Participant's principal residence;

**(e)**   Payments for funeral or burial expenses for the Participant's deceased parent, spouse, child, dependent or Primary Beneficiary under the Plan (for Plan Years beginning after 2005.);

**(f)**   Expenses to repair damage to the Participant's principal residence that would qualify for a casualty loss deduction under Code section 165 (determined without regard to Code section 165(h)(5) or whether the loss exceeds ten percent (10%) of adjusted gross income) (for Plan Years beginning after 2005.); or

**(g)**   Expenses and losses (including loss of income) incurred by the Participant on account of a disaster declared by the Federal Emergency Management Agency (FEMA) under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, provided that Participant's principal residence or principal place of employment at the time of the disaster was located in an area designated by FEMA for individual assistance with respect to the disaster.

A distribution shall be considered as necessary to satisfy an immediate and heavy financial need of the Participant only if:

**(a)**   The Participant has obtained all distributions, other than Hardship Distributions, under all plans maintained by the Employer;

**(b)**   The distribution is not in excess of the amount of an immediate and heavy financial need (including amounts necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the distribution); and

-134-

**(f)**  For hardship distributions made on or after January 1, 2020, the Participant must represent, in writing, that they have insufficient cash or other liquid assets to satisfy the need. The Plan Administrator may rely on the Participant's representation unless the Plan Administrator has actual knowledge to the contrary.

**2.6  Definitions.** Section 2.9.2(b) of the Base Plan Document is replaced in its entirety with the following:

**(b)**  "Eligible Employee" means an Employee eligible to make Elective Deferrals under the Plan for any part of the Plan Year or who would be eligible to make Elective Deferrals but for statutory limitations, such as Code sections 402(g) and 415. The Employer may elect in the Adoption Agreement to exclude Participants from the ADP Safe Harbor or ACP Safe Harbor portion of the Plan who have not completed a Year of Service since their original Employment Commencement Date, or have not yet reached age 21, and are not employed on the earlier of the first day of the next Plan Year after meeting the preceding requirements or 6 months after meeting the preceding requirements.

**2.7  ADP Test Safe Harbor Contributions.** Section 2.9.3(a)(3) of the Base Plan Document is replaced in its entirety with the following:

**(3)**  The Participant's Account balance derived from ADP Test Safe Harbor Contributions is nonforfeitable and may not be distributed earlier than severance from employment, death, Disability, an event described in Code section 401(k)(10), or, in the case of a profit sharing plan, the attainment of age fifty-nine and one-half (59-1/2). Unless otherwise elected in an Adoption Agreement amendment, no distributions on account of Hardship are permitted. In addition, such contributions must satisfy the ADP Test Safe Harbor without regard to permitted disparity under Code section 401(l).

## Section 3. Base Plan Document Provisions Related to Bipartisan Budget Act of 2018.

**3.1  Timing of Distributions if Participant Dies Before Distributions Begin.** Section 2.5.7(b) of the Base Plan Document is replaced in its entirety with the following:

**(b)  Timing of Distributions if Participant Dies Prior to January 1, 2020 and Before Distributions Begin.**

**(1)**  If the Participant dies prior to January 1, 2020 and before required distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

**(i)**  If the Participant's surviving spouse is the Participant's sole Designated Beneficiary, then, except as provided in the Adoption Agreement, distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age seventy and one-half (70 1/2), if later.

**(ii)**  If the Participant's surviving spouse is not the Participant's sole Designated Beneficiary, then, except as provided in the Adoption Agreement, distributions to the Designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

**(iii)**  If there is no Designated Beneficiary as of the date of the Participant's death who remains a Beneficiary as of September 30 of the year immediately following the year the Participant died, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

**(iv)**  If the Participant's surviving spouse is the Participant's sole Designated Beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, this Subsection 2.5.7(b), other than Subsection 2.5.7(b)(1)(i), will apply as if the surviving spouse were the Participant.

-135-

**(2)**   For purposes of this Subsection 2.5.7(b) and Subsections 2.5.7(f) and (g), distributions are considered to begin on the Participant's Required Beginning Date unless Subsection 2.5.7(b)(1)(iv) applies. If Subsection 2.5.7(b)(1)(iv) applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under Subsection 2.5.7(b)(1)(i). If distributions under an annuity contract purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse under Subsection 2.5.7(b)(1)(i)), the date distributions are considered to begin is the date distributions actually commence.

**(3)**   If the Adoption Agreement permits Participants and Beneficiaries to elect the 5-year rule, the election must be made no later than the earlier of:

**(i)**   September 30 of the calendar year in which the distribution would be required under Subsections 2.5.7(b)(1)(i) or (ii), or

**(ii)**   By September 30 of the calendar year that contains the fifth (5th) anniversary of the Participant's (or if applicable, the surviving spouse's) death.

If this election is made, then the Participant's entire interest must be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

**3.2**   **Required Minimum Distributions On or After Date Required Distributions Begin.** Section 2.5.7(f) of the Base Plan Document is replaced in its entirety with the following:

**(f)**   Required Minimum Distributions On or After Date Required Distributions Begin When Participant has Died Prior to January 1, 2020.

**(1)**   **Participant Survived by Designated Beneficiary.** If the Participant died prior to January 1, 2020 and on or after the date required distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the longer of the remaining Life Expectancy of the Participant or the remaining Life Expectancy of the Participant's Designated Beneficiary, determined as follows:

**(i)**   The Participant's remaining Life Expectancy is calculated in accordance with the Single Life Table found in Treasury Regulations section 1.401(a)(9)-9, Q&A-1, using the age of the Participant in the year of death, reduced by one for each subsequent year.

**(ii)**   If the Participant's surviving spouse is the Participant's sole Designated Beneficiary, the remaining Life Expectancy of the surviving spouse is calculated using the Single Life Table found in Treasury Regulations section 1.401(a)(9)-9, Q&A-1, for each Distribution Calendar Year after the year of the Participant's death using the surviving spouse's age as of the spouse's birthday in that year. For Distribution Calendar Years after the year of the surviving spouse's death, the remaining Life Expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

**(iii)**   If the Participant's surviving spouse is not the Participant's sole Designated Beneficiary, the Designated Beneficiary's remaining Life Expectancy is calculated under the Single Life Table using the age of the Beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.

**(2)**   **No Designated Beneficiary Survives.** If the Participant died prior to January 1, 2020 and on or after the date required distributions begin and there is no Designated Beneficiary as of the Participant's date of death who remains a beneficiary as of September 30 of the year after the year of

the Participant's death, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account balance by the Participant's remaining Life Expectancy under the Single Life Table calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

**3.3  Distribution Amount If Participant Dies Before Date Required Distributions Begin.** Section 2.5.7(g) of the Base Plan Document is replaced in its entirety with the following:

**(g)  Distribution Amount If Participant Dies Before Date Required Distributions Begin When Participant Died Prior to January 1, 2020.**

**(1)  Participant Survived by Designated Beneficiary.** If the Participant died prior to January 1, 2020 and before the date required distributions begin and there is a Designated Beneficiary, the minimum amount that will be distributed for each Distribution Calendar Year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the remaining Life Expectancy of the Participant's Designated Beneficiary, determined as provided in Subsection 2.5.7(f). If permitted in the Adoption Agreement, a Participant or Designated Beneficiary may elect to receive distributions over the five (5) year period described in Subsection 2.5.7(b)(3).

**(2)  No Designated Beneficiary Survives.** If the Participant died prior to January 1, 2020 and before the date distributions begin and all Designated Beneficiaries, if any, as of the Participant's date of death are no longer Beneficiaries as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest must be completed by December 31 of the calendar year containing the fifth (5th) anniversary of the Participant's death.

**(3)  Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin.** If all of the following are true, this Subsection 2.5.7(g) will apply as if the surviving spouse were the Participant:

**(i)**  The Participant dies before the date distributions begin,

**(ii)**  The Participant's surviving spouse is the Participant's sole Designated Beneficiary, and

**(iii)**  The surviving spouse dies before distributions are required to begin to the surviving spouse under Subsection 2.5.4(b)(1).

**3.4  Required Beginning Date.** Section 2.5.7(i)(4)(i) and 2.5.7(i)(4)(ii) of the Base Plan Document are replaced in their entirety with the following:

**(4)  Required Beginning Date.**

**(i)**  **General rule.** For Participants born prior to July 1, 1949 the Required Beginning Date of a Participant is the first day of April of the calendar year following the calendar year in which the Participant attains age seventy and one-half (70-1/2). For Participants born after June 30, 1949 the Required Beginning Date of a Participant is the first day of April of the calendar year following the calendar year in which the Participant attains age seventy-two (72).

**(ii)**  **Non-5-Percent Owner Exception.** If so elected in the Adoption Agreement, the Required Beginning Date of a Participant born prior to July 1, 1949 who is not a 5-Percent Owner shall be the first day of April of the calendar year following the later of the calendar year in which the Participant retires or the calendar year in which the Participant attains age seventy and one-half (70-1/2). If the Adoption Agreement shows that the Required Beginning Date of a Participant is not a 5-Percent Owner is the first day of April of the calendar year following the later of the calendar year in which the Participant retires or the calendar year in which the Participant attains age seventy and one-half (70-1/2) then for a Participant born after June 30, 1940 who is not a 5-Percent Owner the Required

Beginning Date shall be the first day of April of the calendar year following the later of the calendar year in which the Participant retires or the calendar year in which the Participant attains age seventy-two (72)

**3.5  Eligible Designated Beneficiaries.** Section 2.5.7(i)(5) is added to the Base Plan Document as follows:

**(5)  Eligible Designated Beneficiary.** This Plan section 2.5.7(i)(5) will be interpreted in accordance with Code section 401(a)(9)(E), as amended by the SECURE Act of 2019, and all applicable regulations and guidance issued related to such Act. In the event that a provision of this Plan conflicts with such requirements, such requirements will govern.

An Eligible Designated Beneficiary is a Beneficiary who, as of the date of the Participant's death is:

**(i)**  the surviving spouse of the Participant;

**(ii)**  a child of the Participant who has not reached majority;

**(iii)**  disabled as defined in Code section 72(m)(7);

**(iv)**  a chronically ill individual as defined in Code section 401(a)(9)(E)(IV); or

**(v)**  not more than ten (10) years younger than the Participant and not otherwise an Eligible Designated Beneficiary.

**3.6  Death of Participant On or After January 1, 2020.** Section 2.5.7(k) is added to the Base Plan Document as follows:

**(k)  Death of Participant On or After January 1, 2020.** This Plan section 2.5.7(k) will be interpreted in accordance with Code section 401(a)(9)(E), as amended by the SECURE Act of 2019, and all applicable regulations and guidance issued related to such Act. In the event that a provision of this Plan conflicts with such requirements, such requirements will govern.

**(1)  Participant Survived by Designated Beneficiary who is not an Eligible Designated Beneficiary.** If the Designated Beneficiary is not also an Eligible Designated Beneficiary, the Participant's entire interest in the Plan will be distributed by December 31 of the calendar year containing the tenth (10th) anniversary of the Participant's death.

**(2)  Participant Survived by Designated Beneficiary who is also an Eligible Designated Beneficiary.** If the Designated Beneficiary is also an Eligible Designated Beneficiary. If permitted in the Adoption Agreement, a Participant or Designated Beneficiary may elect to receive distributions over the five (5) year period described in Subsection 2.5.7(b)(3).

**(3)  No Designated Beneficiary Survives.** If all Designated Beneficiaries, if any, as of the Participant's date of death are no longer Beneficiaries as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest must be completed by December 31 of the calendar year containing the fifth (5th) anniversary of the Participant's death.

**(4)  Non-Person Designated Beneficiary.** If the Designated Beneficiary is not also an Eligible Designated Beneficiary, the Participant's entire interest in the Plan will be distributed by December 31 of the calendar year containing the tenth (10th) anniversary of the Participant's death.

**(5)  Multi-Beneficiary Trust.** If under its terms a Multi-Beneficiary Trust (1) is to be divided immediately upon the death of the Participant into separate trusts for each beneficiary of such trust or (2) no individual other than Disabled or Chronically Ill Eligible Designated Beneficiary has a right to the Participant's interest in the Plan until after the death of all such Disabled or Chronically Ill Eligible Designated Beneficiary, the requirements under Section 2.5.7(k) will be applied to each Designated

-138-

Beneficiary separately.

**(i)** A "Disabled or Chronically Ill Eligible Designated Beneficiary" is a Designated Beneficiary that is either (1) disabled as defined in Code section 72(m)(7) or (2) a chronically ill individual as defined in Code section 401(a)(9)(E)(IV).

**(ii)** A "Multi-Beneficiary Trust" is a trust which (1) has more than one beneficiary, (2) all of the beneficiaries of which are treated as Designated Beneficiaries for purposes of determining the distribution period pursuant to this paragraph, and (3) at least one of the beneficiaries is a Disabled or Chronically Ill Eligible Designated Beneficiary.

**(6) Death of Eligible Designated Beneficiary.** If the Eligible Designated Beneficiary dies prior to the full distribution of the Participant's interest in the Plan, the remainder of the interest must be distributed to the beneficiary of the Eligible Designated Beneficiary no later than December 31 of the calendar year containing the tenth (10th) anniversary of the Eligible Designated Beneficiary's death.

**(7) Attainment of Majority of an Eligible Designated Beneficiary.** A Designed Beneficiary who is Eligible Designated Beneficiary due to their being a child of the Participant who has not reached majority will cease to be an Eligible Designated Beneficiary upon reaching majority. Upon ceasing to be an Eligible Designated Beneficiary, the Designated Beneficiary's entire interest in the Plan will be distributed within ten (10) years of the date they ceased to be an Eligible Designated Beneficiary.