| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------X<br>AUTOEXPO ENT INC., PEACE PROPERTIES LLC,<br>NETWORK REINSURANCE COMPANY INC., AUTO<br>EXCHANGE CENTER, LLC, and CHROME<br>INSURANCE AGENCY LLC, | HON. ORELIA E. MERCHANT<br>M. J. STEVEN L. TISCIONE<br><br><br>Case No.: 2:23 cv 9249 |

                                      *Plaintiffs*

      against

OMID ELYAHOU, SIMPSOCIAL LLC, UNITED
CITIZENS WARRANTY LLC, FIFTY SEVEN
CONSULTING CORP. d/b/a CERTIFIED AUTO
GROUP a/k/a CERTIFIED PERFORMANCE
MOTORS AVI EITAN, and FAZEEDA KASSIM,

                                      *Defendants.*
------------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW OF DEFENDANTS
## OMID ELYAHOU, SIMPSOCIAL LLC AND UNITED CITIZENS WARRANTY LLC
### IN SUPPORT OF THEIR MOTION TO DISMISS
### THE FIRST AMENDED COMPLAINT

MATIN EMOUNA, ESQ.
EMOUNA & MIKHAIL, PC
*Attorneys for Omid Elyahou, and Simpsocial*
100 Garden City Plaza, Suite 520
Garden City, New York 11501
Tel (516) 877-9111
memouna@emiklaw.com

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ........................................................................................1

**POINT I** ............................................................................................................................2

    **OMID ELYAHOU QUALIFIES FOR A HARDSHIP DISTRIBUTION**……………………………………………………………..2

    **IRS DEFINITION OF HARDSHIP FOR A 401(K) PLAN** …………………..4

**POINT II**............................................................................................................................5

    **PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES**……………………………………………..5

**CONCLUSION** ..................................................................................................7

i

## PRELIMINARY STATEMENT

Defendants Omid Elyahou, Simpsocial LLC, and United Citizens Warranty LLC, respectfully submit this reply memorandum of law in support of the instant motion to dismiss the First Amended Complaint, (hereinafter "FAC"), that has been filed by Plaintiffs Autoexpo Ent. Inc., Peace Properties LLC, Network Reinsurance Company Inc., Auto Exchange Center, LLC, and Chrome Insurance Agency LLC (collectively, "Plaintiffs") pursuant to pursuant to the Federal Rules of Civil Procedure ("FRCP") 8(a), 12(b)(1) and 12(b)(6). [1]

In opposition to Defendants' Motion Plaintiffs submits a memorandum of law replete which conjecture, and conclusory statements masquerading as factual and legal argument. What is noticeably missing is anything — either specific facts or relevant legal argument — to rebut respective Defendants' detailed Memorandum of Law. The Plaintiffs have once again recast the format of the Complaint into a memorandum of law. Plaintiffs' opposition reveals their pleading strategy to create just enough confusion to avoid dismissal. However, exposing Plaintiffs copied Defend Trade Secrets Act of 2016 ("DTSA")[2] allegations from another litigation, the intentional

---

[1] On February 5, 2025, co-defendants, Avi Eitan, Fifty Seven Consulting Corp. d/b/a Certified Auto Group a/k/a Certified Performance Motors and Fazeeda Kassim (collectively, the "Certified Defendants") submitted a Reply Memorandum of Law In Further Support Of Defendants Avi Eitan, Fifty Seven Consulting Corp. D/B/A Certified Auto Group A/K/A Certified Performance Motors And Fazeeda Kassim's Motion To Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) plaintiffs' Autoexpo Ent. Inc., Peace Properties LLC, Network Reinsurance Company Inc., Auto Exchange Center, LLC, and Chrome Insurance Agency LLC (collectively, "Plaintiffs") First, Second, Third, Fourth, Sixth, Thirteenth, Seventeenth and Eighteenth, Twentieth and Twenty First Causes of Action of the Amended Complaint, and, thereby, in the absence of a viable Federal claim, the Complaint in its entirety as against the Certified Defendants. In the interest of brevity, the contents of co-defendants' Reply Memorandum of Law are not repeated herein, the contents of same therefore respectfully incorporated herein and made a part hereof.

[2] In the interest of brevity, the legal arguments as to Omid Elyahou, Simpsocial LLC of (Dkt. No. 39) are not repeated herein, and the contents of same as it relates to United Citizens Warranty LLC's Violation of DTSA are therefore respectfully incorporated herein and made a part hereof.

grouping of both Plaintiffs and Defendants, and the misleading labeling and conflation of separate transactions, it becomes clear that Plaintiffs have no valid basis for their claims.

Plaintiffs recognize that, to survive a motion to dismiss, their complaint "must contain *sufficient factual matter*, accepted as true, to state a claim to relief that is plausible on its face," based on *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (emphasis added). Plaintiffs further recognize that their claim only has facial plausibility if they plead "factual content" that allows the court to draw the reasonable inference that Defendants are liable for the misconduct alleged. *Id.* Thus, as Plaintiffs concede, the question before the Court is whether the ERISA Counts are *plausible* in view of the *facts* alleged. Plaintiffs cite no *facts* to support this bare conclusory allegation of an improper "scheme."

The lack of such facts is telling. Plaintiffs plead no basis for disbelieving that the arrangement here is perfectly "compliant" with all required laws – *i.e.*, IRC Section 401(k)[3]. Under these rules, a distribution is made on account of an employee's hardship only if the distribution both is made on account of an immediate and heavy financial need of the employee and is necessary to satisfy the financial need.

## POINT I
## OMID ELYAHOU QUALIFIES FOR A HARDSHIP DISTRIBUTION

By way of background, Omid Elyahou and his wife currently reside in Great Neck, New York, with their two special needs children ages 16 and 19, whom both suffer emotional and physical disability due to Muscular Dystrophy and Autism. Their two children are completely immobile and are wheelchair bound. Due to their condition, they have many appointments for therapist and medical doctors, much of which is not even covered by medical insurance.

---

[3]   https://www.irs.gov/retirement-plans/retirement-plans-faqs-regarding-hardship-distributions; *see also* www.irs.gov/pub/foia/ig/spder/tege-04-0217-0008.pdf

In its opposition, Plaintiffs' attach *Exhibit 1*-DEFINED CONTRIBUTION PRE-APPROVED ADOPTION AGREEMENT NON-STANDARDIZED ALTERNATIVE ONE: CASH OR DEFERRED PROFITSHARING PLAN. Page 42 of this Exhibit is labeled, **Auto Expo 401(k) Plan, Expanded Hardship Distribution Addendum.** Turning to this page, it becomes evident that according to AutoExpo's Plan, there are no limitations on Hardship Distributions, as set forth:

**EH1. Hardship Distributions**
Hardship Distributions will be permitted from the following Accounts *(select one)*:

|  | Safe Harbor Hardship Definition | Non-Safe Harbor Hardship Definition |
|---|---|---|
| a. ☐ None |  |  |
| b. X All Permitted Accounts | ☐ | ☐ |
| c. ☐ The following Accounts *(select all that apply)*: | ☐ | ☐ |
| 1. ☐ Pre-Tax Elective Deferrals | ☐ | ☐ |
| 2. ☐ Roth Elective Deferrals | ☐ | ☐ |
| 3. ☐ ADP Safe Harbor Contributions | ☐ | ☐ |
| 4. ☐ QNECs | ☐ | ☐ |
| 5. ☐ QMACs | ☐ | ☐ |

   *Note: If option a is selected, skip questions EH2 – EH3.*

**EH4. Limitations on Hardship Distributions**
   Hardship Distributions will be limited by the following *(select one)*:
   a. X no limitations.
   b. ☐ the following limitations *(select all that apply)*:
   1. ☐ a Participant can receive no more than ___ Hardship Distributions in each Plan Year.
   2. ☐ each Hardship Distribution must be at least $_____ or 100% of the Participant's Account
   Balance available for Hardship Distributions, if less.
   3. ☐ other *(e.g., must take any available loan from the Plan)*:
   _____.

### IRS DEFINITION OF HARDSHIP FOR A 401(K) PLAN

A 401(k) plan may permit the distribution of certain contributions (and attributable earnings) on account of an employee's hardship, but only if made in accordance with rules contained in the regulations under IRC Section 401(k). Under these rules, a distribution is made on account of an employee's hardship only if the distribution both is made on account of an immediate and heavy financial need of the employee and is necessary to satisfy the financial need.

The determination of the existence of an immediate and heavy financial need and of the amount necessary to meet the need must be made in accordance with nondiscriminatory and objective standards set forth in the plan. See Reg. Section 1.401(k)-1(d)(3).

For a distribution from a 401(k) plan to be on account of hardship, it must be made on account of an immediate and heavy financial need of the employee and the amount must be necessary to satisfy the financial need. The need of the employee includes the need of the employee's spouse or dependent. (Reg. Section 1.401(k)-1(d)(3)(ii)(B)).

Whether a need is immediate and heavy depends on the facts and circumstances. Certain expenses are deemed to be immediate and heavy, including: (1) **certain medical expenses**; (2) **costs relating to the purchase of a principal residence**; (3) tuition and related educational fees and expenses; (4) payments necessary to prevent eviction from, or foreclosure on, a principal residence; (5) burial or funeral expenses; (6) certain expenses for the repair of damage to the employee's principal residence that would qualify for the casualty deduction under IRC Section 165 (but without regard to the new limitations for casualty losses added by Section 165(h)(5)); and (7) expenses and losses (including loss of income) incurred by an employee on account of a Federal disaster declaration provided that the employee's principal residence or principal place of employment was located in the disaster zone and designated for individual assistance.

A distribution is deemed necessary to satisfy an immediate and heavy financial need of an employee if the employee has obtained all other currently available distributions the plan and all other plans maintained by the employer. Under the final regulations, a plan administrator has the option of including or excluding the requirement that the employee first obtain a plan loan prior to requesting a hardship distribution, beginning with the 2019 plan year. (Reg. Section 1.401(k)-1(d)(3)(iii)(B))

A hardship distribution may not exceed the amount of the employee's need. However, the amount required to satisfy the financial need may include amounts necessary to pay any taxes or penalties that may result from the distribution. (Reg. Section 1.401(k)-1(d)(3)(iii)(A)).

If 401(k) plan provides for hardship distributions, the plan will specify what information must be provided to the employer to demonstrate a hardship. Most 401(k) plans as the case in hand use the "deemed necessary" rules described above, so that inquiry into the employee's financial status is not required. In other cases, an employer may generally rely on the employee's representation that he or she is experiencing an immediate and heavy financial need that cannot be relieved from other resources. However, an employer cannot rely on an employee's representation if the employer has actual knowledge that the employee's need can be relieved: (1) through reimbursement or compensation by insurance; (2) by liquidation of the employee's assets; (3) by stopping elective contributions or employee contributions under the plan; (4) by other currently available distributions (such as plan loans) under plans maintained by the employer or by any other employer; or (5) by borrowing from commercial sources. (Reg. Section 1.401(k)-1(d)(3)(iii)(B)).

Accordingly, Omid Elyahou has fully established a hardship based the needs of his two children, in addition to costs relating to the purchase of a principal residence for his family.

## POINT II
## PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants respectfully request the Court to dismiss the ERISA claims because these requires Plaintiffs to exhaust his administrative remedies under the Plan before seeking redress in federal court.

Under ERISA, following "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied," all covered benefit plans must provide

"a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

The Second Circuit has consistently "recognized 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Constr.,* 788 F.2d 76, 79 (2d Cir.), cert. denied, 479 U.S. 915 (1986)). Most challenges to a denial of benefits are thus made in accordance with a plan's administrative review procedures, and a failure to exhaust those remedies is an affirmative defense in a federal action, see *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006), "provid[ing] grounds for dismissal or summary judgment in favor of the opposing party." *Zarringhalam v. United Food & Commercial Workers Int'l Union Local 1500 Welfare Fund*, 906 F. Supp. 2d 140, 152 (E.D.N.Y. 2012) (citing *Quigley v. Citigroup Supp. Plan for Shearson Transfers*, No. 09-CV-8944 (PGG), 2011 WL 1213218, at *7 (S.D.N.Y. Mar. 29, 2011)). Requiring exhaustion serves "the primary purposes" of

> (1) uphold[ing] Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provid[ing] a sufficiently clear record of administrative action if litigation should ensue; and (3) assur[ing] that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo. *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005) (quoting *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 132–34 (2d Cir. 2001)).

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005) (quoting *Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 132–34 (2d Cir. 2001)).

Consonant with these principles, "[c]ourts uniformly require exhaustion for claims based on violations of contractual rights protected by ERISA, such as [a] denial of benefits." *Shamoun v. Bd. of Trustees*, 357 F. Supp. 2d 598, 603 n.3 (E.D.N.Y. 2005).

**CONCLUSION**

Plaintiffs cite a line of cases in relation to stating a cause of action for breach of fiduciary duty. Those cases are patently distinguishable, Plaintiffs strain mightily to mimic the facts in *Katzenberg v. Lazzari*, No. 1-04-cv-5100, 2010 U.S. Dist. LEXIS 23806 (E.D.N.Y. Feb. 24, 2010), *Flanigan v. General Elec. Co.*, 242 F.3d 78, 86 (2nd Cir. 2001)

For the foregoing reasons, Omid Elyahou, Simpsocial LLC, and United Citizens Warranty LLC respectfully request that the Complaint be dismissed as against them pursuant to Federal Rule of Civil Procedure 8(a), 12(b)(1) and 12(b)(6). Since there is no viable federal claim, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims and dismiss the Complaint in its entirety as against the Omid Elyahou, Simpsocial LLC, and United Citizens Warranty LLC.

Dated: February 17, 2025
      Garden City, New York

Respectfully Submitted,
EMOUNA & MIKHAIL, PC

*Matin Emouna*

MATIN EMOUNA, ESQ.
100 Garden City Plaza, Suite 520
Garden City, New York 11501
Tel (516) 877-9111
memouna@emiklaw.com

*Attorneys for Omid Elyahou, Simpsocial LLC, and United Citizens Warranty LLC,*