UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
AUTOEXPO ENT. INC., PEACE
PROPERTIES LLC, NETWORK
REINSURANCE COMPANY INC.,
AUTOEXCHANGE CENTER LLC,
CHROME INSURANCE AGENCY LLC,

              Plaintiffs,

       -against-

OMID ELYAHOU, SIMPSOCIAL LLC,
FIFTY SEVEN CONSULTING CORP d/b/a
CERTIFIED AUTO GROUP a/k/a
CERTIFIED PERFORMANCE MOTORS,
AVI EITAN, FAZEEDA KASSIM, UNITED
CITIZENS WARRANTY LLC,

            Defendants.
--------------------------------------------------------x

**MEMORANDUM and ORDER**
23-cv-09249 (OEM) (ST)

ORELIA E. MERCHANT, United States District Judge:

On December 18, 2023, plaintiffs AutoExpo Ent. Inc. ("AutoExpo"), Peace Properties LLC, Network Reinsurance Company Inc., AutoExchange Center LLC, and Chrome Insurance Agency LLC, ("Plaintiffs") commenced this action against defendants Omid Elyahou ("Elyahou"), SimpSocial LLC ("SimpSocial"), Fifty Seven Consulting Corp d/b/a Certified Auto Group a/k/a Certified Performance Motors ("Certified Performance"), Avi Eitan ("Eitan"), Fazeeda Kassim ("Kassim"), and United Citizens Warranty LLC ("United Citizens"). Plaintiffs allege twenty-one causes of action, including violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as well as various common law claims. *See* Am. Compl., ECF 48. Before the Court are motions to dismiss the Amended Complaint filed by defendants Kassim, Certified Performance,

and Eitan ("Kassim Defendants"), and defendants Elyahou, SimpSocial LLC, and United Citizens Warranty LLC ("Elyahou Defendants").

For the following reasons, Defendants' motions to dismiss are granted in part and denied in part.

## BACKGROUND[1]

### A.  The Parties

AutoExpo is an automobile dealership operating in Great Neck, New York, and is majority owned by Michael Shahkoohi ("Shahkoohi"), who is not a party to this case.  Am. Compl. ¶¶ 16-19, 22, 25.  The relationship and relevance to this action of plaintiffs Peace Properties LLC, Network Reinsurance Company Inc., AutoExchange Center LLC, and Chrome Insurance Agency LLC are not specified in the Amended Complaint.

Defendant Elyahou began working for Shahkoohi in 1999 when AutoExpo was formed.  *Id* ¶¶ 50-53.  He went on to become an operating partner of AutoExpo, obtaining a 20% stake in the business.  *Id.* ¶¶ 57-58, 61.  In 2008, Elyahou took on a new role at AutoExpo in which he would take "charge of new ideas [and] investments."  *Id.* ¶¶ 62-64.  When the company established this role, Elyahou signed an agreement that he would not "enter into any other partnership or any other business (directly or indirectly) other than AutoExpo [and] its subsidiaries."  *Id.* ¶ 64.  Elyahou "agreed to relinquish management of AutoExpo" in 2023.  *Id.* ¶ 10.

Eitan began working at AutoExpo in 2000 and later became a manager at the dealership until he resigned in March of 2020.  *Id.* ¶¶ 91, 100.  Kassim began working for AutoExpo as its Controller in approximately 2007 or 2008 until she resigned in 2023.  *Id.* ¶ 81, 172.

---

[1] The following facts are taken from Plaintiffs' Amended Complaint and are accepted as true for the purposes of Defendants' motions to dismiss.  The Court recites only those facts relevant to resolving the pending motions to dismiss.

SimpSocial is a marketing company owned by Elyahou, which was formed as early as 2019. *Id.* ¶ 103, 105. Certified Performance Motors is a "direct competitor" of AutoExpo, was formed by Eitan after resigning from AutoExpo, and is allegedly owned by Eitan and Elyahou. *Id.* ¶¶ 139, 141; *see id.* ¶¶ 151-155. Upon information and belief, United Citizens is a company formed by Elyahou in 2017. *Id.* ¶ 130.

## B. Defend Trade Secret Act Allegations

Elyahou "engaged in a scheme to divert customers from AutoExpo's customer relationship management and leads generation system ('CRM Suite') and its proprietary inventory system ('AutoExpo Inventory System') to Certified Performance[.]" *Id.* ¶ 139; *see id.* ¶ 163-64. Plaintiffs allege that Elyahou "sought to misappropriate" certain information learned during his employment at AutoExpo—specifically management of the dealership "such as processes to streamline dealership operations, inventory management, cash flow management, and reporting features"— which Plaintiffs allege are "unique, confidential, and proprietary." *Id.* ¶¶ 178-184. Elyahou took this information to set up his own dealerships. *Id.* ¶¶ 185-86. Kassim, Eitan, and Certified Performance each intentionally participated in Elyahou's "scheme to divert trade secrets and business from AutoExpo to Certified Peformance." *Id.* ¶¶ 274, 295-308, 322. Certified Performance frustrated AutoExpo's business operations by exclusively bid against the company on cars that Shahkoohi disclosed to Elyahou. *Id.* ¶¶ 141-47.

Plaintiffs allege that AutoExpo "took many reasonable measures to keep its confidential information secret, including restricting access to this information only to employees who have a fiduciary duty to AutoExpo, all of whom are required to maintain it in a secured computer system protected by firewalls and other appropriate safeguards, such as usernames and passwords." *Id.* ¶¶ 319, 356. Plaintiffs assert that Elyahou, Certified Performance and Eitan obtained AutoExpo's

3

trade secrets due to Elyahou's fiduciary relationship with the company and that Defendants have therefore exploited "this information through improper means." *Id.* ¶¶ 314-15, 325, 329-330.

Plaintiffs allege that Defendants are benefitting from AutoExpo's "confidential and proprietary" information, including AutoExpo's "customer lists, employees, processes, and unique inventory system," which AutoExpo "took great costs and efforts to create." *Id.* ¶¶ 309-12, 318. Specifically, Plaintiffs allege that the inventory system is "unique because it was custom designed for AutoExpo and cost over $170,000 to set up." *Id.* ¶ 180. Plaintiffs generally allege that the "confidential information derives independent economic value from not being generally known to and not being readily ascertainable through proper means from others who could otherwise obtain economic value from the disclosure or use of the information." *Id.* ¶ 320.

## C. ERISA Allegations

AutoExpo established a Defined Contribution Plan (the "Plan") to provide retirement benefits to eligible participants and beneficiaries. *Id.* ¶ 228. Elyahou was "[a]t various times through the beginning of 2024 . . . identified as sole 'Trustee' or 'Plan Administrator' of the new Plan" and Kassim was "at various times through 2022 . . . identified as 'Plan Administrator' or 'Trustee/Authorized Signer' of the original Plan." *Id.* ¶¶ 229-30.

Plaintiffs allege that Elyahou, "with the substantial assistance of Kassim, who was an improper 'Plan Trustee,' among other roles," made unauthorized amendments to the Plan and "t[ook] steps for his own conflicted, self interest, rather than for the interest of AutoExpo, the Plan and its participants." *Id.* ¶¶ 224-25, *see id.* ¶¶ 261-66. Elyahou and Kassim then "orchestrated a scheme to establish a new Plan making Elyahou the sole Trustee, giving Elyahou complete control over the plan without obtaining consent from AutoExpo." *Id.* ¶ 226. Plaintiffs allege that to do so, Elyahou executed a "bogus" and "utter sham" amendment to the Plan in July 2021. *Id.* ¶¶ 233-

4

36.  Those amendments "purport[ed] to allow 'hardship distributions' with 'no limitations.'"  *Id.* ¶ 239.  Plaintiffs allege that Elyahou then "devised a tax evasion scheme whereby he would use the Plan's Funds, improperly and in violation of ERISA, to purchase a new home, exposing AutoExpo to potential liability and, in any event, requiring AutoExpo to take corrective action." *Id.* ¶ 241.  "As part of his scheme, on or about April 1, 2022, Elyahou withdrew 100% of his funds contained in the Plan's John Hancock account," *id.* ¶ 242, and "obtain[ed] a Cashier's Check from JP Morgan Chase . . . in the amount of $521,000.00, utilizing funds" from the Plan to purchase a home, *id.* ¶¶ 247-48.

## PROCEDURAL HISTORY

On December 18, 2023, Plaintiffs commenced this action by filing a complaint, Compl., ECF 1, and in lieu of filing a responsive pleading, Defendants requested a Pre-Motion Conference in anticipation of motions to dismiss.  *See* ECF 15, 20.  Following an April 12, 2024 Pre-Motion Conference on the anticipated motions, the Court set a briefing schedule for Defendants' motions to dismiss the original complaint, and Defendants' fully briefed motions were filed on July 1, 2024.[2]

On September 25, 2024, Plaintiffs moved to amend the complaint to add an additional defendant and assert new causes of action, ECF 42, and on October 29, 2024, Magistrate Judge Tiscione granted said motion.  Minute Entry dated 10/29/2024, ECF 47.  Defendants' motions to dismiss the original complaint, ECF 30, 38, 39, were denied as moot, and Magistrate Judge Tiscione ordered that if Defendants intended to move to dismiss the amended complaint on the

---

[2] Kassim Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint ("Kassim Defs.' Mem."), ECF 38-1; Elyahou Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint ("Elyahou Defs.' Mem."), ECF 39-1; Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss Complaint ("Pls.' Opp."), ECFs 38-5, 39-4; Kassim Defendants' Reply in Support of First Motion to Dismiss Complaint ("Kassim Defs.' Reply"), ECF 38-7; Elyahou Defendants' Reply in Support of First Motion to Dismiss Complaint ("Elyahou Defs.' Reply"), ECF 39-5.

same grounds as the original complaint, they may reference previously filed motion papers and file supplemental papers as needed. Minute Entry dated 10/29/2024. A briefing schedule was set on Defendants' motions to dismiss the Amended Complaint, and discovery remained stayed pending disposition of the supplemental motions.

On October 31, 2024, Plaintiffs filed the Amended Complaint, ECF 48, and on February 6, 2025 and February 18, 2025, Defendants filed their fully briefed motions to dismiss the Amended Complaint.[3]

On February 21, 2025, the Court granted Plaintiffs leave to file a sur-reply, which was filed on February 28, 2025. Plaintiffs' Sur-Reply to Elyahou Defendants' Motion to Dismiss Amended Complaint ("Pl.'s Sur-Reply"), ECF 60.

## LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In evaluating a Rule 12(b)(1) motion to dismiss, a district judge must "accept[ ] all material factual allegations in the complaint as true," but should "refrain from drawing inferences in favor of the party asserting subject matter jurisdiction."

---

[3] Kassim Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint ("Kassim Supp. Mem."), ECF 56-2; Plaintiffs' Memorandum of Law in Opposition to Kassim Defendants' Motion to Dismiss Amended Complaint ("Pls.' Kassim Supp. Opp."), ECF 56-5; Kassim Defendants' Reply ("Kassim Supp. Reply"), ECF 56-10; Elyahou Defendants' Memorandum of Law in Support of Motion to Dismiss the Amended Complaint ("Elyahou Supp. Mem."), ECF 58-1; Plaintiffs' Memorandum of Law in Opposition to Elyahou Defendants' Motion to Dismiss Amended Complaint ("Pls.' Elyahou Supp. Opp."), ECF 58-3; Elyahou Defendants' Reply ("Elyahou Supp. Reply"), ECF 58-8.

*Gonzalez v. Inn on the Hudson LLC*, 20-CV-9196 (ER), 2022 WL 974384, at * 2 (S.D.N.Y. Mar. 30, 2022) (citation omitted).

## B.  Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted."  To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing FED. R. CIV. P. 8).  In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true.  *Id.*  But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements."  *Id.*

## DISCUSSION

## A.  ERISA Claims

Plaintiffs plead two causes of action seeking injunctive relief under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3) ("Section 502(a)(3)").  Am. Compl. ¶¶ 502, 512.  Section 502(a)(3) provides that "a participant, beneficiary, or fiduciary" may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  This allows a party to bring suit for "equitable" remedies – suits for money damages are not permitted.  *Coan v. Kaufman*, 457 F.3d 250, 262 (2d Cir. 2006).

AutoExpo invokes ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ("§ 502(a)(2)") as its basis for standing on both its ERISA claims. *See* Am. Compl. ¶ 490 ("Plaintiff AutoExpo, as the Employer who established the Plan and regularly exercises discretionary authority over the Plan and Fund management, has standing to bring this claim pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)."). Section 502(a)(2) provides "in relevant part, that civil actions may be brought 'by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.' 29 U.S.C. § 1132(a)(2). Section 409 of ERISA (29 U.S.C. § 1109), in turn, provides, *inter alia,* that a plan fiduciary 'who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach.' ERISA § 409(a), 29 U.S.C. § 1109(a).'" *Coan*, 457 F.3d at 256-57. In other words, unlike § 502(a)(3), § 502(a)(2) authorizes suits only brought in a representative capacity on behalf of the plan; such claims may not be made for individual relief. *Id.*; *see Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 (1985) (holding that actions may be brought against a fiduciary where recovery for a violation inures to the benefit of the plan as a whole).

### 1. Standing

The Elyahou Defendants argue for dismissal of Plaintiffs' ERISA claims under Rule 12(b)(1) for failure to allege a constitutionally cognizable injury-in-fact. Elyahou Supp. Mem. at 10-11. The Elyahou Defendants briefly argue (1) that an ERISA violation in and of itself is not a cognizable injury, (2) an injury to the Plan or other participants is insufficient to confer standing in this case, and (3) Plaintiffs have not alleged direct loss caused by the alleged ERISA violations. *Id.* Plaintiffs oppose arguing that they have alleged a cognizable injury-in-fact to sue both under § 502(a)(3) and 502(a)(2). Pls.' Elyahou Supp. Opp. at 11-19. Defendants do not address these

arguments in reply.[4]  *See generally* Elyahou Defs.' Supp. Reply.  Despite the limited briefing, "'the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.'"  *Antonyuk v. James*, 120 F.4th 941, 1039–40 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900, 221 L. Ed. 2d 646 (2025) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009)).  Because Defendants do not move to dismiss for lack of statutory standing, and because statutory or prudential standing is not jurisdictional, the court need not address it.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014).

The Constitution empowers federal courts to adjudicate "cases" and "controversies."  U.S. CONST. ART. III, § 2.  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[T]he 'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (citations omitted). Standing may not be dispensed in gross, *Lewis v. Casey*, 518 U.S. 343, 358 n. 6 (1996), rather, a plaintiff must demonstrate standing for each individual claim pursued, *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

A "constitutionally sufficient injury-in-fact . . . must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical," so as to "ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003); *accord Spokeo*, 578 U.S. at 340 ("An injury

---

[4] Instead, the Elyahou Defendants raise a new set of arguments in reply, which the Court declines to address.  *See, e.g.*, *Kominis v. Starbucks Corp.*, 692 F. Supp. 3d 236, 252 (S.D.N.Y. 2023) ("the Court need not address arguments made for the first time on reply.").

in fact must be concrete," in that it is "real, and not abstract."). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (holding that violation of a federal statute, without an associated concrete injury is merely "an injury in law" and "not an injury in fact"). At the pleading stage, "standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Baur,* 352 F.3d at 431. A complaint merely "must allege facts that affirmatively and plausibly suggest that [plaintiff] has standing to sue." *Amidax Trading Grp.*, 671 F.3d at 145.

A party bringing suit under ERISA "must establish both statutory standing and constitutional standing, meaning the plan participant must identify a statutory endorsement of the action and assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009) *abrogated on other grounds by Collins v. Ne. Grocery, Inc.* 2025 WL 2382948 (2d Cri. 2025). In other words, "Statutes do not abdicate the standing requirements of the Constitution." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 200 (2d Cir. 2005).

### a.  ERISA § 502(a)(3) Claim

### 1)  AutoExpo in its Individual Capacity

First, Plaintiffs argue that AutoExpo has standing to sue under ERISA § 502(a)(3) and has suffered an injury sufficient to confer Article III standing because they have a "concrete and particularized interest in assuring that the Plan only makes valid hardship distributions of Plan Assets to ensure that the interests of the Plan and its participants are protected." Pls.' Elyahou

Supp. Opp. at 11; *see id.* at 12, 13, 15.  While that may be so, Plaintiffs must plead *both* a concrete and particularized interest *and* an injury that is actual or imminent.  *See Baur*, 352 F.3d at 632.

"There is no doubt that ERISA imposes on plan fiduciaries a duty to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA."  *Kendall*, 561 F.3d at 120 (citing 29 U.S.C. § 1104(a)(1)(D)).  But, although the statute imposes a general fiduciary duty to comply with ERISA, it does not confer a right to every participant, beneficiary, or fiduciary to bring suit without alleging some injury – either to an individual or to the Plan, if the suit is brought in a representative capacity. *Cf. id.*; *see TransUnion*, 594 U.S. at 426; *see also Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015).[5]  Plaintiffs' complaints of "gross violations of ERISA," Am. Comp. ¶ 225, "cannot . . . in and of themselves constitute[] an injury-in-fact sufficient for constitutional standing."  *Kendall*, 561 F.3d at 121.

Further, Plaintiffs allege that Elyahou's and Kassim's "improper actions . . . in breach of [their] fiduciary duty expose AutoExpo and its shareholders to significant tax liability as well as unforeseeable repercussions as a result of ERISA violations."  Am. Compl. ¶ 260.  However, allegations of "possible future injury" or even an "objectively reasonable likelihood" of future injury are insufficient to confer standing.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2014).  Plaintiffs' conclusory allegations of possible exposure to future tax liabilities bear the same fatal flaw.  *Holcombe v. Ingredients Sols., Inc.*, 797 F. App'x 630, 633 (2d Cir. 2020) (plaintiff's "conclusory allegations that [defendant's] sourcing misconduct might expose her to future civil

---

[5] Plaintiffs argue that *Kendall*, 561 F.3d at 120, is inapplicable because the plaintiff in that case was a plan participant, whereas AutoExpo brings suit as a fiduciary.  Pls.' Elyahou Supp. Opp at 13 n. 8.  While it may be so that, to the extent AutoExpo has brought suit on behalf of the Plan, it need not allege an *individualized* injury, it still must allege some injury beyond a mere statutory violation.  *See TransUnion*, 594 U.S. at 426.  Importantly this distinction is not, as Plaintiffs argue, because Plaintiffs bring suit in their role as fiduciaries rather than plan participants.  Rather, dispensing of the individualized injury requirement would be due to a plaintiff's posture as a representative on behalf of the Plan. The Court addresses injury to the Plan *infra*.

and criminal liability are insufficient to establish an injury that is actual or imminent, not conjectural or hypothetical." (citations omitted)).

Next, Plaintiffs argue that they meet the actual injury requirement because "AutoExpo has had to expend significant resources to undo and rectify Elyahou's improper, self-dealing transactions related to the Plan Assets, and AutoExpo will need to continue to expend time and resources to address those improper transfers."  Pls.' Elyahou Supp. Opp. at 15 (citing *Connecticut Gen. Life Ins. Co. v. True View Surgery Ctr. One, LP,* 128 F. Supp. 3d 501, 509 (D. Conn. 2015) (holding that a health insurance claims administrator alleged injury in fact to sue out-of-network surgical centers that allegedly engaged in fraudulent billing practices in violation of ERISA and state laws, where defendant's actions "personally affected" the plaintiff because it "expended its own time and resources in investigating the surgical centers' billing practices.")). Such pre-litigation investigation costs are a cognizable injury for Article III purposes.  *See id.*; *accord Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107-08 (1998), *abrogated on other grounds by Riley v. Bondi*, 145 S. Ct. 2190 (2025).

However, even assuming *arguendo* that such costs are fairly traceable to the allegations of that Elyahou and Kassim breached fiduciary duties and improperly withdrew funds from the Plan, *see* Am. Compl. ¶¶ 11, 241, 260, the alleged injury of investigation costs is not redressable under ERISA § 502(a)(3).  In the Amended Complaint, Plaintiffs request as relief a surcharge of the allegedly misappropriated funds, the costs associated therewith, and any profits resulting therefrom.  Am. Compl. ¶¶ 502, 512.  In *Cigna Corp. v. Amara*, the Supreme Court recognized that a "monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment," closely resemble the equitable remedy of surcharge and therefore may be recoverable under § 502(a)(3).  563 U.S. 421, 441-42 (2011).  The equitable relief available

under § 502(a)(3) is limited to those "categories of relief . . . that were typically available in equity." *Id.* However, "the source of monetary losses alleged in the pleading must be the breach of a fiduciary duty, as opposed to mere monetary compensation that would not redress that breach." *Est. of Raymond Thomas v. Cigna Grp. Ins.*, 09-CV-5029 (SLT) (RLM), 2016 WL 7235718, at *7-8 (E.D.N.Y. Dec. 13, 2016) (citing *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134–35 (2d Cir. 2015)). Put differently, in order for the Court to fairly construe the claim as one for equitable relief, the harm must flow from an alleged fiduciary breach, meaning that the monetary relief sought must be the "particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *accord Amara*, 563 U.S. at 439. Here, AutoExpo alleges an individualized monetary harm in the form of investigation costs it undertook after the alleged breach of fiduciary duty occurred— which are plainly not "funds or property in the defendant's possession." Nor are investigation costs a loss that would either "redress a loss flowing from [an alleged] breach of fiduciary duty nor prevent [ ] unjust enrichment." *New York State Psychiatric Ass'n*, 798 F.3d at 135.

For example, in *Trustees of New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, the Second Circuit held that management fees that were obtained by defendants as part of its compensation to manage the ERISA plan, closely resembled equitable relief where they would be disgorged to the plan because the "monetary compensation sought by [plaintiffs] stems from [defendant's] breach of that ERISA fiduciary duty." 102 F.4th 572, 604-05 (2d Cir. 2024). Similarly, in *Amara*, the Supreme Court held that payment of money owed to beneficiaries under the terms of a new ERISA plan, which was reformed to remedy false or misleading information provided by the defendant, constituted equitable relief. 563 U.S. at 441-42. Unlike *White Oak* and *Amara*, where the funds sought to be paid as part of the equitable relief

alluded the plaintiff as a direct result of the alleged fiduciary breach, AutoExpo's investigation costs closely resemble compensatory damages. Although AutoExpo styles the relief sought as a "surcharge," itself a recognized form of equitable relief under ERISA § 502(a)(3), the crux of this injury is one that could easily be remedied by monetary compensation. *See Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003) ("In determining the propriety of a remedy, we must look to the real nature of the relief sought, not its label."). As such, the Court declines to view the relief as equitable. *See Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 103-04 (2d Cir. 2005) (affirming dismissal of § 502(a)(3) claims because it was clear that "any harm to [plaintiff could] be compensated by money damages" entirely and she "[could not] satisfy the conditions required for injunctive relief."). Accordingly, to the extent AutoExpo seeks relief under ERISA § 502(a)(3) in its individual capacity, Plaintiffs lack Article III standing to sue.

### 2) AutoExpo on Behalf of the Plan

In its Amended Complaint, AutoExpo does not expressly state that it brings suit on behalf of the Plan. The Amended Complaint does, however, state that Plaintiffs' ERISA "cause of action is brought by AutoExpo," Am. Compl. ¶ 483, "AutoExpo is entitled to rescission," *id.* ¶ 500, "Elyahou and Kassim are liable to AutoExpo," *id.* ¶ 501, and "AutoExpo is entitled to a surcharge," *id.* ¶¶ 502, 512—all which would suggest AutoExpo brings suit in its individual capacity. At the same time, it hints that AutoExpo may be acting in a representative capacity on behalf of the Plan. The Amended Complaint states that Elyahou is liable to "restore any Plan profits," *id.* ¶ 499, and that AutoExpo seeks an "order requiring Elyahou to restore [withdrawn funds] to the Plan," *id.* ¶ 500. Not until the last line of its Memorandum of Law with respect to its § 502(a)(3) claim does AutoExpo plainly state that "AutoExpo [is] a fiduciary seeking injunctive and other appropriate equitable relief on behalf of the Plan." Pls.' Elyahou Supp. Opp., at 17. Drawing all reasonable

14

inferences in favor of Plaintiffs, AutoExpo has brought suit in its representative capacity on behalf of the Plan.

The Amended Complaint alleges that Elyahou, with the help of Kassim, improperly withdrew funds from his 401(k) Plan account. *See* Am. Compl. ¶¶ 242-43, 258, 263. The Second Circuit has recognized that the funds in an individual's 401(k) account, both those contributed to an ERISA plan by the employee and the employer, are considered "assets" of the plan. *Finkel v. Romanowicz*, 577 F.3d 79, 86 n. 8 (2d Cir. 2009) (citing 29 C.F.R. § 2510.3–102 ("the assets of [an ERISA] plan include amounts . . . that a participant has withheld from his wages by an employer[ ] for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.") and *In re Halpin,* 566 F.3d 286 (2d Cir. 2009) (holding that an employer's contributions become Plan assets after they are paid to the plan)). As such, Plaintiffs have alleged that Elyahou's and Kassim's fiduciary breach had an adverse impact on the value of the Plan, which constitutes a constitutionally cognizable injury fairly traceable to the challenged conduct. *See L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, 710 F.3d 57, 67 n.5 (2d Cir. 2013) ("As discussed, [the named plaintiffs] and the Class have asserted their claims in a derivative capacity, to recover for injuries to the Plan caused by the Administrators' breach of their fiduciary duties. This is injury-in-fact sufficient for constitutional standing.").

A depletion of Plan Assets is an injury fairly traceable to a fiduciary's unauthorized withdrawal of plan funds. Such an injury may be redressable by a surcharge payable to the plan. Thus, Plaintiffs have adequately alleged Article III standing. *See Cigna*, 563 U.S. at 444 (an ERISA fiduciary can be surcharged or ordered to pay money damages pursuant to Section

502(a)(3) as "other appropriate equitable relief"). Accordingly, the Elyahou Defendants' motion to dismiss Plaintiffs' ERISA § 502(a)(3) claim for lack of subject matter jurisdiction is denied.

Because Defendants do not argue for dismissal on the ground of statutory standing, the Court does not reach the question of whether Plaintiff's claim is authorized by the particular statutory provision: ERISA § 502(a)(3).

### b.  ERISA § 502(a)(2) Claim

Next, Plaintiffs assert in their opposition to the Elyahou Defendants' motion to dismiss that they have standing to sue under § 502(a)(2) of ERISA to seek damages on behalf of the Plan. A § 502(a)(2) action may only be brought in a representative capacity on behalf of the plan and cannot be made for individual relief.

As discussed above, the Amended Complaint lacks clarity as to what claims Plaintiffs bring, and on whose behalf. Nevertheless, Plaintiff does, in its 65-page pleading, allude to a claim under ERISA § 502(a)(2) on behalf of the Plan: "Plaintiff AutoExpo, as the Employer who established the Plan and regularly exercises discretionary authority over the Plan and Fund management, has standing to bring this claim pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)." Am. Compl. ¶ 409. As above, drawing all reasonable inferences in Plaintiff's favor, it has plausibly alleged that the Plan has suffered an injury-in-fact by way of an unauthorized withdrawal of funds from the plan. *See supra* at section A(i)(a)(2). That injury is both fairly traceable to the breach of fiduciary duty and redressable by damages paid to the Plan. *See* 29 U.S.C. § 1109(a) (a plan fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach."); *see also L.I. Head Start*, 710 F.3d at 66 (finding fiduciary to ERISA plan had standing to sue on behalf of the Plan for recoupment of losses to the Plan under § 502(a)(2)).

Accordingly, Plaintiffs have adequately plead standing as to AutoExpo's role as a representative bringing suit on behalf of the Plan.

### 2. Failure to State a Claim

#### a. Against Elyahou

The Elyahou Defendants argue that Plaintiffs' twentieth cause of action for "Breach of Obligations under ERISA" against Elyahou and Kassim, Am. Compl. ¶¶ 482-502, fails to state a claim because it "contains only conclusory allegations." Elyahou Defs.' Supp. Mem. at 12. The Elyahou Defendants appear to mistake Plaintiffs' claims for fiduciary breach as relating to some failure to make prudent investments on behalf of the plan, arguing that poor investment performance is insufficient to state a claim. *See id.* at 11-12 (citing *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013)). Next, the Elyahou Defendants suggest that the acts alleged to violate the statute "are common and permissible." *Id.* at 13.

To state a claim for breach of fiduciary duty under ERISA, "a plaintiff must allege that (1) the defendant was acting as a fiduciary of the plan, (2) the defendant breached that duty, and (3) the breach caused harm to the plaintiff." *Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 79 (2d Cir. 2013). Section 502(a)(2) provides that a participant or beneficiary can bring a civil action for a breach of fiduciary duty under § 409, 29 U.S.C. § 1109. 29 U.S.C. § 1132(a)(2). Section 409(a) provides that an individual who breaches a fiduciary duty "shall be personally liable to make good to [the] plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a).

First, Plaintiffs allege that Elyahou, in his role as trustee and plan administrator through 2024, was responsible for "selecting and overseeing third party administrators of the Plan's

account; controlling the release and disposition of the Plan's funds;' and managing the Plan's performance." Am. Compl. ¶¶ 229, 491.  Under ERISA,

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  Based on these allegations, the Court finds that Plaintiffs have plausibly alleged that Elyahou was a fiduciary of the Plan within the meaning of ERISA.

Second, Plaintiffs allege *inter alia* that Elyahou made amendments to the Plan, including implementing a company match, changing hardship withdrawal rules, and failing to follow proper procedures "for his own conflicted, self-interest, rather than for the interest of AutoExpo, the Plan, and its participants." Am. Compl. ¶¶ 225, 494.  Plaintiffs also allege that, under the amended rules, Elyahou improperly withdrew $521,000.00 of his funds from the Plan.  *Id.* ¶¶ 242, 247, 249, 251, 494.  ERISA § 404(a)(1) provides that

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."

29 U.S.C. §§ 1104(a)(1)(A)(i), 1104(a)(1)(B).  A plan fiduciary must also discharge duties "in accordance with the documents and instruments governing the plan," provided that the duties are consistent with ERISA.  *Id.* § 1104(a)(1)(D).  "'A fiduciary must discharge his duties 'solely in the interests of the participants and beneficiaries.'  He must do this 'for the exclusive purpose' of providing benefits to them.  And he must comply 'with the care, skill, prudence, and diligence under the circumstances then prevailing' of the traditional 'prudent man.'"  *Abbruscato v. Empire*

*Blue Cross & Blue Shield*, 274 F.3d 90, 102 (2d Cir. 2001) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982)). "Because the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)).

The Court finds that the actions described above plausibly allege Elyahou breached his fiduciary duty to the Plan. *See, e.g., Katzenberg v. Lazzari*, 04-CV-5100 (CRW), 2010 WL 680985, at *5-6 (E.D.N.Y. Feb. 24, 2010), *aff'd*, 406 F. App'x 559 (2d Cir. 2011) (finding that defendant's transfer of Plan assets to his personal account without proper authority violated his fiduciary duty and subject him to liability); *Solis v. Weiss*, 12-CV-0218 (DRH) (AKT), 2013 U.S. Dist. LEXIS 128396, at *15-18 (E.D.N.Y. Aug. 19, 2013) (holding that defendant "clearly violated his fiduciary duties with respect to the Plan" by "unlawfully transferr[ing] a total of $747,000 of Plan assets from the Plan to himself"). Finally, for the reasons discussed above, *supra* section A(i)(a)(2), Plaintiffs have plausibly alleged that Elyahou's alleged breach of fiduciary duties resulted in harm to the plan.

Accordingly, the Elyahou Defendants' motion to dismiss Plaintiffs' twentieth cause of action against Elyahou is denied.

### b.  Against Kassim

The Kassim Defendants separately argue that Plaintiffs' Amended Complaint fails to state an ERISA claim against Kassim because it is an "improper group pleading" that fails to distinguish between Kassim's and Elyahou's alleged conduct, allegations which Kassim claims she was not involved in. Kassim Supp. Mem. at 9-11. Specifically, the Kassim Defendants argue that Plaintiffs' ERISA allegations conflate two separate transactions and defendants in an attempt to

state a claim against Kassim. *Id.* at 6. Plaintiffs respond that the allegations in the Amended Complaint "clearly distinguish[]" between the two individual Defendants' conduct—and that where it states "and/or" Kassim or Elyahou, Plaintiffs so allege because they "are unable to determine" without discovery who committed the act. Pls.' Kassim Supp. Opp. at 7-8. On Reply, the Kassim Defendants argue that Plaintiffs' allegations are "misleading" in that they conflate Kassim's role as Plan Administrator, as related to the "internal transfer" of funds from the "original Plan" to the "new Plan," Kassim Supp. Reply at 3; *see* Am. Compl. ¶ 225, 262, but that such allegations are unrelated to a second allegedly unlawful transaction which was effectuated by Elyahou alone, *see* Am. Compl. ¶ 249.

Rule 8 of the Federal Rules of Civil Procedure "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)). A complaint fails to give fair notice when it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Id.* Such a deficient pleading is called improper "group pleading.'" *Plusgrade L.P. v. Endava Inc.*, 21-CV-1530 (MKV), 2023 WL 2402879, at *3 (S.D.N.Y. Mar. 8, 2023).

Here, the Amended Complaint alleges that Kassim, in her role as "'Plan Administrator' or 'Trustee/Authorized Signer' of the original Plan," Am. Compl. ¶ 230, and as a fiduciary, *id.* ¶ 487, authorized a transfer of funds from the Plan "into a new Plan," *id.* ¶¶ 262-63. Plaintiffs allege that she did so "knowingly and willingly . . . in direct violation of the Plan's Agreement with the specific intent to allow Elyahou to engage in prohibited transactions and misconduct." *Id.* ¶ 264.

"Elyahou and/or Kassim violated their fiduciary and other obligations under ERISA," *id.* ¶ 494, and "[a]s a direct result of Kassim's actions and her substantial assistance, Elyahou was able to violate his fiduciary obligations to AutoExpo and the Plan," *id.* ¶ 510.  Plaintiffs' allegations do not, as the Kassim Defendants argue, fail to adequately distinguish between defendants such that Kassim has not been given fair notice of the allegations against her.  Whether the evidence will substantiate the allegations cannot be decided at the motion to dismiss stage.  Plaintiffs have plausibly alleged that Kassim, in her role as fiduciary of the Plan, discharged her duties to the Plan in an interest adverse to the Plan, its participants, and beneficiaries, or in violation of the terms of the Plan, resulting in harm to the Plan.

Accordingly, Kassim Defendants' motion to dismiss Plaintiffs' twentieth and twenty first causes of action against Kassim is denied.

**B.  Defend Trade Secret Act Claims**

The Elyahou Defendants and Kassim Defendants both seek dismissal of Plaintiffs' DTSA trade secrets claims under Rule 12(b)(6).  Kassim Defs.' Mem. at 7-13; Elyahou Defs.' Mem. at 6-13.  Specifically, Defendants challenge Plaintiffs' DTSA claims on the grounds that Plaintiff has (1) failed to adequately identify the alleged trade secrets, Kassim Defs.' Mem. at 11, Elyahou Defs.' Mem. at 7, (2) failed to allege that they undertook reasonable secrecy measures, Kassim Defs.' Mem at 7, Elyahou Defs.' Mem. at 9, (3) voluntarily disclosed the alleged trade secrets, Kassim Defs.' Mem at 9, Elyahou Defs.' Mem. at 9, and (4) failed to plead that the alleged trade secrets derive independent economic value, Elyahou Defs.' Mem. at 11.

The Defend Trade Secrets Act "provides a federal cause of action for trade-secret misappropriation involving a nexus to interstate commerce."  *Negative, Inc. v. McNamara*, 770 F.Supp.3d 472, 479 (E.D.N.Y. Mar. 13, 2025) (quoting *Turret Labs USA, Inc. v. CargoSprint,*

*LLC*, 19-CV-6793 (EK), 2021 WL 535217, at *4 (E.D.N.Y. Feb. 12, 2021)).  The DTSA defines a "trade secret" as "all forms of and types of financial, business, scientific, technical, economic, or engineering information," if two criteria are met: (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information."  *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (quoting 18 U.S.C. § 1839(3)).  To state a DTSA claim, a plaintiff is required to show (1) the existence of a trade secret, (2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce," and (3) misappropriation of the trade secret.  *Core SWX, LLC v. Vitec Group US Holdings, Inc.*, 21-CV-1692 (JMA) (JMW), 2022 WL 3588081, at *4 (E.D.N.Y. July 14, 2022) (quoting 18 U.S.C. § 1836(b)(1)).

Here, Plaintiffs allege that the purportedly misappropriated trade secrets include "customer lists, including its leads and AutoExpo's customized inventory system, as well as other proprietary information." Am. Compl. ¶ 310.  Defendants argue that these allegations lack any particulars that would allow Defendants to discern exactly what information Plaintiffs allege was misappropriated, but instead merely state categories of information too general to plausibly allege a DTSA claim. Elyahou Defs.' Mem. at 10-11.

Actions brought under the DTSA do not have "heightened pleading requirements," however, courts in the Second Circuit regularly require "that plaintiffs plead their trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Iacovacci*, 437 F. Supp. 3d at 380 (citations omitted).  Courts in this Circuit have held that "Alleging general categories of information and data as trade secrets is not enough

to put a defendant on notice of the contours of the misappropriation claims." *Core SWX*, 2022 WL 3588081, at \*15 (citing *TRB Acquisitions LLC v. Yedid*, 20-CV-0552 (JMF), 2021 WL 293122, at \*2 (S.D.N.Y. Jan. 21, 2021)).  A party need not reveal its trade secrets in its complaint, but it must do more than provide "nebulous descriptions at the highest level of generality." *TRB Acquisitions*, 2021 WL 293122, at \*2.

Applying this standard, the Court concludes that Plaintiffs fail to plausibly support the existence of a trade secret.  Despite its lengthy allegations about Defendants' conduct, the Amended Complaint provides little more than one sentence specifying exactly what it claims to be trade secrets.  It is true that "[a] customer contact list that require[s] substantial time, effort and money to compile may be deemed a trade secret where it contains information that is not readily available, for example where such a list contains individual customer preferences, reflects a specialized knowledge of the customer's operations and needs, or contains information 'which could only be achieved through personal solicitation.'" *Intrepid Fin. Partners, LLC v. Fernandez*, 20-CV-9779 (LTS), 2020 WL 7774478, at \*3 (S.D.N.Y. Dec. 30, 2020) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 46 (2d Cir. 1999)).  However, such information is generally deemed to be a compilation of otherwise publicly available information and, therefore, a plaintiff seeking trade secret protection for this information "must demonstrate a 'unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.'"  *Id.* (quoting *Integrated Cash Mgmt. Servs., Inc. v. Digital Transaction, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990)).

Here, Plaintiffs do "not plead any specific facts demonstrating that [they have] such unique customer preference information or ha[ve] specialized knowledge of customers' operations or needs that is organized or used in a way that is unique to" Plaintiffs.  *Id.* at \*13.  Further, with

23

respect to the inventory system, Plaintiffs conclusorily allege that the system was "unique because it was custom designed for AutoExpo," *see* Am. Compl. ¶ 180, without providing any specific context indicating why this system might qualify as a trade secret. Generally referencing a system or program does not plausibly support the existence of a trade secret without more supportive facts to define the trade secret at issue. *Elsevier, Inc. v. Dr. Evidence, LLC*, 17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018). Nor does simply claiming that the alleged trade secrets are confidential—as Plaintiff alleges a total of 51 times—because "trade secrets are a subset of confidential information" which require pleading a great deal of specificity. *Intrepid*, 2020 WL 7774478, at *4 (quoting *Elsevier, Inc.*, 2018 WL 557906, at *6). Accordingly, Plaintiffs' Amended Complaint lacks sufficient factual information to plausibly plead the existence of trade secrets protected by the DTSA.[6]

Moreover, as Defendants argue, Elyahou Defs.' Mem. at 9, Kassim Defs.' Mem. at 7-9, even if Plaintiffs had made specific allegations of trade secrets, the Amended Complaint does not adequately plead that Plaintiffs took reasonable steps to protect the alleged trade secrets. Reasonable measures include "confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the

---

[6] *Compare Aira Jewels, LLC v. Mondrian Collection, LLC*, 23-CV-04510 (JLR), 2024 WL 1255798, at *4-6 (S.D.N.Y. Mar. 25, 2024) (holding that alleged trade secrets described as "customer lists, client contacts, supplier contacts, sales, marketing and business strategies" was "too general to state a DTSA claim"); and *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 95, 98 (allegations of "trade secrets, including information about running a business, advertising and promotional strategies, a customer and supplier list, and pricing information that [the former employer] had acquired through great expense and labor" were insufficient to allege existence of a trade secret); and *TRB Acquisitions*, 2021 WL 293122, at *2 (description of "core brand and marketing plan strategy" was "far too general to state a DTSA claim"); *with Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966 (JSR), 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017) ("Tesla's complaint is highly specific regarding defendants' course of conduct [and] pleads numerous specific categories of information, such as 'technical data, internal pricing information, work product, research, engineering designs,' etc. . . . ."); and *ExpertConnect, LLC v. Fowler*, 2019 WL 3004161, at *4-5 (S.D.N.Y. July 10, 2019) (complaint detailed specific categories of information including client lists and preferences, contract details, expert lists and performance criteria, as well as specific documents).

information confidential . . . and frequently reminding employees of the need to maintain confidentiality." *Core SWX*, 2022 WL 3588081, at *7.

Courts in this Circuit look to whether confidentiality or nondisclosure agreements exist and whether a claimant has taken reasonable measures to safeguard the alleged trade secret information. *Id.* (quoting *Turret Labs*, 2021 WL 535217, at *4). A party alleging trade secret misappropriation "must show only sufficient secrecy, not absolute secrecy, meaning that except by use of improper means, there would be difficulty in acquiring the information." *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 427 (S.D.N.Y 2021) (finding that where numerous other individuals had access to the purported trade secret and that the plaintiff licensed the information to defendant without confidentiality agreements, instructions to keep the information secret, or other protective security measures, the threshold for sufficient secrecy was not met). "Generally, Courts have found that parties meet this standard by alleging that they took measures to keep the information confidential through confidentiality or nondisclosure agreements and protected actual access to the information." *Core SWX, LLC*, 2022 WL 3588081, at *7.

Here, Plaintiffs allege that AutoExpo restricted the alleged trade secrets to employees owing a fiduciary duty to AutoExpo, and that it required these employees to maintain the confidentiality of this information in a computer system protected by firewalls, usernames, and passwords. Am. Compl. ¶ 319. In opposition, Plaintiffs closely analogize this case to *Superb Motors Inc. v. Deo*, which, as the Defendants correctly note, *see* Kassim Reply at 1-3, Elyahou Supp. Reply at 1, contains near identical allegations. In that case, this Court granted the plaintiff a preliminary injunction to maintain the status quo, finding that plaintiff had demonstrated "at least substantial questions" going to the merits of its DTSA claim. 23-cv-6188 (OEM) (JMW), 2023 WL 7181675, at *14 (E.D.N.Y. Sep. 29, 2023). However, "[a] decision on a preliminary injunction

is, in effect, only a prediction about the merits of the case," and is therefore not considered binding. *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 107 (2d Cir. 2012) (citations omitted); *accord Gonzalez v. Town of Stratford*, 830 F. Supp. 111, 113 (D. Conn. 1992) (a preliminary injunction is not considered a decision on the merits unless it "represents an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo"). Indeed, the *Superb Motors* plaintiff's DTSA claims were ultimately dismissed upon defendant's 12(b)(6) motion. Magistrate Judge Wicks held that Plaintiffs "far fall short in alleging the existence of a trade secret in that the complaint is devoid of any information that they took reasonable measures to guard such information a secret." *Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 78 (E.D.N.Y. 2025). As in that case, Plaintiffs' allegation that it restricted the alleged trade secrets only to employees owing a fiduciary duty and required them "to maintain its confidentiality in a computer system secured with firewalls, usernames, and passwords" is not sufficient to meet the DTSA pleading requirements for reasonable secrecy measures. *See id.* at *57. Plaintiffs have not identified any specific non-disclosure agreements or contractual obligations binding employees to *secrecy* or non-disclosure, rather than non-competition, nor have they asserted that the information was restricted to need-to-know employees. *See id.; compare Core SWX*, 2022 WL 3588081 at *8-9 (despite assertion that employees "understood" confidential nature of information, plaintiffs failed to adequately allege secrecy measure where complaint lacked any specificity as to why—such as contractual agreement, employee handbook, or frequent reminders); *with Trahan v. Lazar*, 457 F. Supp. 3d 323, 343 (S.D.N.Y. 2020) (finding that restrictive covenants in employment contracts, establishing restriction of unauthorized use, tracking improper re-distribution, and implementing a strictly enforced policy not to disclose, and other measures constituted reasonable measures to keep information secret).

For these reasons, Plaintiffs' first and second causes of action are dismissed for failure to state a claim.

## C.  Aiding and Abetting Breach of Fiduciary Duty

The Kassim Defendants argue that Plaintiffs have failed to state causes of action for Aiding and Abetting Breach of Fiduciary Duty because the allegations in the Amended Complaint are conclusory.  Kassim Supp. Mem. at 12; *see* Am. Compl. ¶¶ 428-433.

"To state a claim for aiding and abetting a breach of fiduciary duty, the plaintiff must show: (1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach."  *AT&T Corp. v. Atos IT Sols. & Servs., Inc.,* 714 F. Supp. 3d 310, 335 (S.D.N.Y. Feb. 1, 2024) (citations omitted).  "New York courts have explained that the participation element of an aiding and abetting claim requires that 'the alleged aider and abettor rendered substantial assistance to the fiduciary in the course of effecting the alleged breach of duty.'"  *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 306 (S.D.N.Y. Mar. 28, 2019) (quoting *Sanford/Kissena Owners Corp. v. Daral Props., LLC*, 84 A.D.3d 1210 (2d Dep't 2011)).  Substantial assistance "'occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'"  *Id.*

Here, Plaintiffs allege that through lying, stealing, and poaching, Elyahou, *inter alia*, breached a duty of loyalty owed to AutoExpo.  Am. Compl. ¶¶ 128, 155, 175, 184, 186.  Plaintiffs also make numerous factual allegations that AutoExpo suffered actual damages as a result of that breach – including loss of business funds, confidential business information, employees, and more. *See id.*  Therefore, Plaintiffs have made plausible allegations sufficient to satisfy the first and third elements of its claim.

The remaining question is whether Plaintiffs have alleged that each Defendant substantially assisted in Elayhou's breach.  With respect to Kassim, Plaintiffs make numerous and specific factual allegations that Kassim assisted Elyahou in stealing from AutoExpo by preventing disclosure of Elyahou's theft from the company.  *Id.* ¶¶ 119-129; 194-197, 292-96.  These allegations are sufficient to raise a plausible inference that Kassim provided substantial assistance to Elyahou's alleged breach of fiduciary duty.

However, Plaintiffs have failed to allege that the remaining defendants knowingly induced or participated in the breach.  Plaintiffs make no more than a conclusory statement that SimpSocial, United Citizens, Certified Performance, and Eitan substantially assisted in the alleged breach.  *Id.* ¶¶ 429, 298.  Plaintiffs state that each "clearly participated" and "joined in Elyahou's scheme" but state no facts in support of those allegations.  *Id.* ¶ 298.  Although, as Plaintiffs argue in their opposition, Pls.' Kassim Supp. Opp. at 9, the Amended Complaint alleges that Certified Performance *benefitted* from the alleged breaches of duty, such allegations do not state a claim for *aiding and abetting* fiduciary breach.  Am. Compl. ¶¶ 317, 332, 429.

Accordingly, Plaintiffs' thirteenth cause of action is dismissed as to Defendants SimpSocial, United Citizens, Certified Performance, and Eitan.

## D.  Fraud and Aiding and Abetting Fraud Claims

Kassim Defendants argue that Plaintiffs' fraud and aiding and abetting fraud claims must fail because Plaintiffs have failed to meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b).  Kassim Supp. Mem. at 12-13; *see* Am. Compl. ¶¶ 454-460; 461-472.

To plead fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact (2) made by a defendant with knowledge of its falsity (3)

and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (brackets and citation omitted); *see Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016). Additionally, Rule 9(b) imposes the added requirement that the complaint "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Under this standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (citations omitted).

On the first element of their fraud claim against Kassim, Plaintiffs argue in opposition to Kassim Defendants' motion that the Amended Complaint details numerous fraudulent statements made by Kassim. Pls.' Kassim Supp. Opp. at 12-13. Specifically, Plaintiffs cite paragraphs in the Amended Complaint that allege that Kassim, as Controller for AutoExpo, had a duty to advise AutoExpo and its owners about the financial condition of the company but that "Kassim did nothing to advise Shahkoohi, Robert, or anyone at AutoExpo of Elyahou's wrongdoing." Am. Compl. ¶¶ 282, 287. Even if Kassim's alleged failure to act constitutes a fraudulent omission of fact, Plaintiffs set out no facts suggesting that they justifiably relied upon Kassim's alleged "misrepresentations," nor that Kassim's actions, as opposed to Elyahou's, caused them damages. Accordingly, Plaintiffs seventeenth cause of action is dismissed as to Defendant Kassim.

To state a claim for aiding and abetting fraud under New York law "a plaintiff must allege (1) the existence of a fraud; (2) the defendant's actual knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 230 (S.D.N.Y. 2013) (citing *Lerner v. Fleet Bank, N.A.,*

459 F.3d 273, 292 (2d Cir. 2006)).  As with their claim for fraud, Plaintiffs' aiding and abetting fraud claim is subject to the heightened pleading standard under Rule 9(b).  *See Morrow v. Black*, 742 F. Supp. 1199, 1204 (E.D.N.Y. 1990).  Plaintiffs that Kassim and Certified Performance assisted Elyahou's underlying fraud – specifically Elyahou's "false representations regarding AutoExpo's financial conditions," theft of confidential business information, and unauthorized charges made to the company.  Pls.' Kassim Supp. Opp. at 13-14 (citing Am. Compl. ¶¶ 98-99, 102-223, 455).  However, Plaintiffs have not alleged any facts to suggest that the damages sought in this action resulted from Elyahou's statements or omissions of fact, rather than the acts of stealing funds and information itself.  Because the alleged misrepresentations or omissions were not the proximate cause of Plaintiffs' asserted damages, there is no underlying fraud.

Accordingly, Plaintiffs' eighteenth cause of action for aiding and abetting fraud is dismissed.  For these same reasons, Plaintiffs' seventeenth cause of action for fraud is also dismissed in its entirety.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied

in part.  Specifically, Defendants' motions to dismiss are granted with respect to:

1) Plaintiffs' first, second, seventeenth and eighteenth causes of action against all Defendants;
2) Plaintiffs' thirteenth cause of action against Defendants SimpSocial, United Citizens, Certified Performance, and Eitan; and
3) Plaintiffs' twentieth and twenty first causes of action insofar as Plaintiffs bring suit in any individual capacity.

Accordingly, such claims are dismissed.  Plaintiffs' twentieth and twenty first causes of action

may proceed insofar as Plaintiffs bring suit on behalf of the Plan.

Defendants' motions are denied with respect to all other claims.


SO ORDERED.

_____/s/_____
ORELIA E. MERCHANT
United States District Judge


September 12, 2025
Brooklyn, New York

31