

**Matin Emouna**
*Admitted in NY, NJ & CT*
memouna@emiklaw.com

November 18, 2025

Honorable Orelia E. Merchant
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 6C South
Brooklyn, New York 11201

Re: *AutoExpo Ent. Inc., et al. v. Elyahou, et al.,*
Case No.: 23-cv-9249

Dear Judge Merchant:

I represent Defendants/Counterclaim-Plaintiffs ("Counterclaim-Plaintiffs") and submit this letter in opposition to Plaintiffs' November 14, 2025 pre-motion letter (ECF 81) seeking leave to file a Rule 12(b)(6) and 12(f) motion directed at the Counterclaims and Third-Party Complaint (ECF 76). Plaintiffs' proposed motion is largely meritless, rests on a curable technicality, misstates the allegations, and seeks to strike material facts that are central to the claims.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir. 2009). The plaintiff, however, must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citation omitted); *see also Rothstein v. UBS AG,* 708 F.3d 82, 94 (2d Cir. 2013). In addressing the sufficiency of a complaint, courts are required to accept the well-pleaded factual allegations contained within the complaint as true, *see Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012).

### I. Rule 23.1 Verification Is a Curable Technical Defect

Counterclaim-Plaintiffs acknowledge that the derivative components of the pleading were served without a Rule 23.1 verification. This was inadvertent and causes no prejudice. The pleading expressly asserts derivative claims on behalf of AutoExpo, Peace Properties, Network Reinsurance, Auto Exchange Center, Chrome Insurance, and Prime Auto Capital (see ¶¶ 1–4, 22, 65–71, 92–111). Courts routinely permit amendment to add a verification; dismissal is neither required nor appropriate. Counterclaim-Plaintiffs will promptly file a compliant verification. Please see attached **Exhibit A**.

### II. Standing Is Adequately Pled Through Detailed, Concrete Injuries

Plaintiffs incorrectly assert that some Counterclaim-Plaintiffs lack injury-in-fact. The pleading alleges enormous personal, corporate, financial, and reputational harms. Among many examples:

• diversion of AutoExpo, Network Reinsurance, and Peace Properties assets (¶¶ 23–29, 41–54, 55–61);
• financial exclusion and freeze-out after the 2022 restructuring (¶¶ 23–27, 52, 64);
• elimination of distributions for years (¶¶ 28–29, 54–61);
• exposure to civil/criminal liability due to misuse of PPP, ERC, and DOWC funds (¶¶ 41–45, 53–54,

62–64, 71, 80);
• reputational and business damage (¶¶ 10–14, 29, 41–47, 53–54, 62–64, 70–71, 80).

These are specific, concrete harms fairly traceable to Defendants Shahkoohi and Baratian and sufficient at the pleading stage. Plaintiffs' Complaint likewise places injury and control directly at issue (see Compl. ¶¶ 256–271). Their standing arguments fail.

### III. Fraudulent Transfers and Constructive Trust Are Sufficiently Pled

Plaintiffs argue the Sixth Cause of Action is conclusory. To the contrary, the pleading identifies:
• the time period (beginning in 2022 after the ownership transfer, ¶¶ 10, 12, 22, 26, 76);
• the funds diverted (PPP, ERC, DOWC, securities, reserves; ¶¶ 41–45, 50–53, 55–59, 62–64, 72–74, 93–96);
• the perpetrators (Shahkoohi and Baratian); and
• their purpose (concealing misappropriation and stripping corporate value).

Rule 9(b) permits facts "on information and belief" where details lie in the defendants' exclusive control. Any transfer-specific detail will be developed in discovery. Dismissal is unwarranted.

### IV. Civil Conspiracy / Aiding and Abetting Is Properly Used as a Theory of Liability

The Fifth Cause of Action (¶¶ 86–91) is not pled as a standalone tort, it attaches liability for underlying torts (breach of fiduciary duty, conversion, fraud). The pleading identifies co-conspirators, shared methods (commingled bank accounts, falsified entries, overlapping accountants), and substantial assistance among actors (¶¶ 41–47, 48–49, 53, 86–90). New York does not recognize civil conspiracy to commit a tort as an independent cause of action (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969 [1986]; *Brackett v Griswold*, 112 NY 454, 466-467 [1889]; *Blanco v Polanco*, 116 AD3d 892, 895-896 [2014]; *Dickinson v Igoni*, 76 AD3d 943, 945 [2010]). However, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d at 969; *Blanco v Polano*, 116 AD3d at 896). Under New York law, "[i]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement" (*Perez v Lopez*, 97 AD3d 558, 560 [2012]; *see 1766-68 Assoc., LP v City of New York*, 91 AD3d 519, 520 [2012]; *Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472, 474 [2010]). Here, since the underlying tort of fraud was properly dismissed, the cause of action alleging civil conspiracy to commit fraud was also properly dismissed, since it stands or falls with the underlying tort (*see Lee Dodge, Inc. v Sovereign Bank, N.A.*, 148 AD3d 1007, 1009 [2017]; *Romano v Romano*, 2 AD3d 430, 432 [2003]; *Sokol v Addison*, 293 AD2d 600, 601 [2002]).

### V. Direct vs. Derivative Issues Do Not Support Dismissal

Counterclaim-Plaintiffs allege both derivative and direct, personal harms, including:

• being cut off from management and banking access (¶¶ 23–24, 26, 52, 64, 98–101, 104–111);
• reputational injury and personal liability exposure (¶¶ 41–47, 53–54, 62–64, 71, 80);
• retaliation motivated by personal animus (¶¶ 2, 10, 16–18, 24, 29, 54, 70).

If Plaintiffs believe certain aspects are derivative, the remedy is re-characterization, not dismissal.

## VI. The Declaratory and Injunctive Relief Count Is Adequately Supported

The Eighth Cause of Action (¶¶ 103–111) relies on extensive factual allegations showing:

- an active ownership/control dispute (¶¶ 4–7, 10, 22, 26, 60–61, 103–105);
- ongoing exclusion from corporate records (¶¶ 23–24, 26, 52, 64, 98–101, 104–111);
- imminent dissipation and concealment of assets (¶¶ 41–45, 48–53, 55–59, 62–64, 93–96).

Such allegations justify declaratory and injunctive relief, including account freezes, turnover of records, and potential appointment of a neutral forensic auditor. Even viewed as "remedies," these paragraphs should not be stricken.

## VII. Plaintiffs' Rule 12(f) Arguments Are Meritless—The Challenged Allegations Are Material

"Motions to strike allegations in pleadings are generally disfavored . . . ." *M'Baye v. World Boxing Ass'n,* 2007 WL 844552, at *4 (S.D.N.Y. Mar. 21, 2007). Indeed, the Second Circuit has cautioned that "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976). Thus, to prevail on a Rule 12(f) motion to strike, "a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *HSN Nordbank AG v. RBS Holdings USA Inc.,* 2015 WL 1307189, at *3 (S.D.N.Y. Mar. 23, 2015) (citation and internal quotation marks omitted).

Plaintiffs seek to strike references to prior bid-rigging convictions and personal animus. But these allegations go to:

- motive and intent (¶¶ 16–18, 24, 29, 46–48, 54, 70);
- similarity between past bid-rigging and the Mercedes-Benz auction manipulation alleged here (¶¶ 46–48, 49);
- the context of exclusion, misrepresentation, and retaliatory conduct (¶¶ 1–3, 10, 20, 24, 29, 54, 70).

These allegations are directly relevant and cannot be excluded simply because Plaintiffs find them unfavorable. Plaintiffs' own Complaint contains similarly charged allegations (Compl. ¶¶ 256–271, 498–499).

## VIII. Plaintiffs' Proposed Motion Is Overbroad and Will Not Narrow the Issues

The Counterclaims are detailed, organized, and supported by extensive factual allegations spanning ¶¶ 1–112. Plaintiffs' proposed motion seeks to litigate factual disputes under the guise of pleading issues. If the Court permits motion practice at all, it should be limited to the technical Rule 23.1 verification issue, which will be fully cured with a forthcoming verification filing, not a sweeping challenge that will delay discovery.

## CONCLUSION

For the reasons above, the Court should deny Plaintiffs' request to file the proposed Rule 12(b)(6)/12(f) motion or, alternatively, limit it solely to the curable verification issue, as attached **Exhibit A**. Counterclaim-Plaintiffs will promptly file a Rule 23.1 verification. We thank the Court for its consideration of this request.

Respectfully submitted

/s/ *Matin Emouna*

Matin Emouna