UNITED STATES DISTRICT COURT         HON. ORELIA E. MERCHANT
EASTERN DISTRICT OF NEW YORK       M. J. STEVEN L. TISCIONE

-------------------------------------------------------------------------X

AUTOEXPO ENT INC., PEACE PROPERTIES LLC,
RAMIN BARATIN, MICHAEL SHAHKOOHI, ARMIN
BARATIAN, KAVIAN SHAHKOOHI, NETWORK
REINSURANCE COMPANY INC., AUTO          Case No.: 2:23 cv 9249
EXCHANGE CENTER, LLC, and CHROME
INSURANCE AGENCY LLC,

              *Plaintiffs/Counterclaim Defendants*

      *against*

OMID ELYAHOU, SIMPSOCIAL LLC, UNITED
CITIZENS WARRANTY LLC, FIFTY SEVEN
CONSULTING CORP. d/b/a CERTIFIED AUTO
GROUP a/k/a CERTIFIED PERFORMANCE
MOTORS AVI EITAN, and FAZEEDA KASSIM,

            *Defendants/Counterclaim Plaintiffs*

-------------------------------------------------------------------------X

OMID ELYAHOU, individually and derivatively on behalf of
AUTOEXPO ENT. INC., PEACE PROPERTIES LLC,
NETWORK REINSURANCE COMPANY INC.,
AUTO EXCHANGE CENTER, LLC, CHROME
INSURANCE AGENCY LLC, and PRIME AUTO CAPITAL LLC,

            *Third-Party Plaintiff,*

      *-against-*

MICHAEL SHAHKOOHI, aka KAMRAN SHAHKOOHI
and RAMIN BARATIAN, aka ROBERT BARATIAN,

            *Third-Party Defendants*,

AUTOEXPO ENT. INC., PEACE PROPERTIES LLC,
NETWORK REINSURANCE COMPANY INC.,
AUTO EXCHANGE CENTER, LLC, CHROME
INSURANCE AGENCY LLC, and PRIME AUTO CAPITAL LLC,

            *As Nominal Third-Party  Defendants,*

-------------------------------------------------------------------------X

**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES,
COUNTERCLAIMS TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

OMID ELYAHOU, SIMPSOCIAL LLC, UNITED CITIZENS WARRANTY LLC, FIFTY-SEVEN CONSULTING CORP. d/b/a CERTIFIED AUTO GROUP a/k/a CERTIFIED PERFORMANCE MOTORS AVI EITAN, and FAZEEDA KASSIM, (collectively, hereinafter "Defendants") by their attorneys, EMOUNA & MIKHAIL, PC, as and for an Answer to the Complaint of the Plaintiffs herein, respectfully alleges as follows:

## NATURE OF THE CASE

1.      Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "1" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

2.      Defendants deny the allegations contained in paragraph numbered "2" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

3.      Defendants deny the allegations contained in paragraph numbered "3" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

4.      Defendants deny the allegations contained in paragraph numbered "4" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

5.      Defendants deny the allegations contained in paragraph numbered "5" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

6.      Defendants deny the allegations contained in paragraph numbered "6" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

7.    Defendants deny the allegations contained in paragraph numbered "7" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

8.    Defendants deny the allegations contained in paragraph numbered "8" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

9.    Defendants deny the allegations contained in paragraph numbered "9" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

10.    Defendants deny the allegations contained in paragraph numbered "10" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

11.    Defendants deny the allegations contained in paragraph numbered "11" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

12.    Defendants deny the allegations contained in paragraph numbered "12" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

13.    Defendants deny the allegations contained in paragraph numbered "13" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

14. Defendants deny the allegations contained in paragraph numbered "14" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

15. Defendants deny the allegations contained in paragraph numbered "15" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

**PARTIES**

16. Defendants admit the allegations contained in paragraph numbered "16" of Plaintiffs' Complaint.

17. Defendants deny the allegations contained in paragraph numbered "17" of Plaintiffs' Complaint and state that, as of the third quarter of 2022, Michael Shahkoohi became a shareholder of AutoExpo for the first time and, at that same time, became its majority shareholder. Prior to that date, he was not an owner or shareholder of AutoExpo. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

18. Defendants in part admit the allegations contained in paragraph numbered "18" of Plaintiffs' Complaint except deny that Plaintiff Peace Properties LLC's principal place of business is 46 Northern Boulevard, Great Neck, New York 11021. Defendants state that Peace Properties LLC's principal place of business is located elsewhere. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

19. Defendants admit the allegations contained in paragraph numbered "19" of Plaintiffs' Complaint.

20. Defendants deny the allegations contained in paragraph numbered "20" of Plaintiffs' Complaint and state that Peace Properties LLC is a real estate holding entity that owns the property

located at 1800 Jericho Turnpike, New Hyde Park, New York, and leases that location to AutoExpo for its service department operations. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

21.    Defendants deny the allegations contained in paragraph numbered "21" of Plaintiffs' Second Amended Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier fact.

22.    Defendants admit the allegations contained in paragraph numbered "22" of Plaintiffs' Complaint.

23.    Defendants admit the allegations contained in paragraph numbered "23" of Plaintiffs' Complaint.

24.    Defendants admit the allegations contained in paragraph numbered "24" of Plaintiffs' Complaint.

25.    Defendants admit the allegations contained in paragraph numbered "25" of Plaintiffs' Complaint.

26.    Defendants admit the allegations contained in paragraph numbered "26" of Plaintiffs' Complaint.

27.    Defendants admit the allegations contained in paragraph numbered "27" of Plaintiffs' Complaint.

28.    Defendants admit the allegations contained in paragraph numbered "28" of Plaintiffs' Complaint.

29.    Defendants admit the allegations contained in paragraph numbered "29" of Plaintiffs' Complaint.

30.     Defendants admit the allegations contained in paragraph numbered "30" of Plaintiffs' Complaint.

31.     Defendants deny the allegations contained in paragraph numbered "31" of Plaintiffs' Complaint and state that SimpSocial LLC has multiple members, and Defendant Omid Elyahou is not and has never been the sole member. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

32.     Defendants deny the allegations contained in paragraph numbered "32" of Plaintiffs' Complaint and state that at  all times relevant, United Citizens Warranty LLC ("United Citizens") was and is a limited liability company duly organized under the laws of the State of New York. United Citizens has never maintained a physical office or place of business in any capacity. Its mailing address is and has always been the personal residence of Defendant Omid Elyahou, who serves as its managing member. All business operations of United Citizens have been conducted remotely or through affiliated entities, and the company has never operated out of any commercial office space located in New York County or elsewhere.

33.     Defendants admit the allegations contained in paragraph numbered "33" of Plaintiffs' Complaint.

34.     Defendants admit the allegations contained in paragraph numbered "34" of Plaintiffs' Complaint.

35.     Defendants admit in part the allegations contained in paragraph numbered "35" of Plaintiffs' Complaint in that Certified Performance maintains its principal place of business in Nassau County, New York, but deny that Certified Performance is or was a limited liability company. Defendants state that Certified Performance is a New York corporation that has elected

S-corporation status for tax purposes. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

36.    Defendants deny the allegations contained in paragraph numbered "36" of Plaintiffs' Complaint and state that Certified Performance is a New York corporation (taxed as an S-corporation), not a limited liability company, and therefore has shareholders, not "members." To the extent paragraph 35 alleges that Eitan is the "sole member," that allegation is false and is denied. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

37.    Defendants deny the allegations contained in paragraph numbered "37" of Plaintiffs' Complaint Fazeeda Kassim ("Kassim") is an individual who resides in the State of New York, County of Queens.

## JURISDICTION AND VENUE

38.    Defendants deny the allegations contained in paragraph numbered "38" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

39.    Defendants deny the allegations contained in paragraph numbered "39" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

40.    Defendants deny the allegations contained in paragraph numbered "40" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## FACTS

41.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "41" of Plaintiffs' Complaint, including the specific duration of time alleged, and therefore deny the same. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

42.    Defendants deny the allegations contained in paragraph numbered "42" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

43.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "43" of Plaintiffs' Complaint and therefore deny the same. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

44.    Defendants deny the allegations contained in paragraph numbered "44" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

45.    Defendants deny the allegations contained in paragraph numbered "45" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

46.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "46" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that in the late 1990s, when Omid Elyahou was a teenager, Michael Shahkoohi offered him the opportunity to work part-time at *his dealership* is categorically false.  Upon information and belief,

Shahkoohi did not own, operate, or have any ownership interest in any dealership during that period, nor did he employ or otherwise engage Elyahou in any capacity at that time. Any such assertion is a complete fabrication and appears designed solely to create a false historical narrative of mentorship or business association that did not exist.

47.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "47" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

48.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "48" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou earned approximately $24,000 per year as a salesperson is entirely inaccurate and appears to be speculative and agenda-driven. At no point has Elyahou's compensation or employment history reflected such a figure, and the statement has no basis in any business record, tax return, or payroll documentation. This assertion exemplifies the Plaintiffs' pattern of fabricating personal details to discredit Elyahou and distort the factual background of the parties' relationship.

49.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "49" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

50.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "50" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.The allegation that from the late 1990s until January 12, 2023, Michael Shahkoohi "provided" Omid Elyahou with

increasing responsibilities and compensation is entirely false, misleading, and intended to waste the Court's time with fabricated narratives that have no evidentiary support. Elyahou was never employed by, nor subordinate to, Shahkoohi during the late 1990s or at any time thereafter. To the contrary, Elyahou independently founded and owned Auto Expo Ent., Inc., operating it as a successful, standalone business long before Shahkoohi acquired any ownership interest in 2022. The inclusion of this baseless statement serves no legitimate purpose other than to confuse the record and advance a personal agenda unrelated to the facts of this case.

51.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "51" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

52.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "52" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that in mid-to-late 1999, as a result of "business expansion," Michael Shahkoohi offered Omid Elyahou, then 18 years old, a manager position at a new location at 46 Northern Boulevard, Great Neck, New York—where Auto Expo now operates—is wholly false, misleading, and deliberately manufactured to distort the historical record. At that time, Shahkoohi did not own or operate any dealership, nor did he have any authority to "offer" Elyahou any position whatsoever. In fact, Elyahou independently established Auto Expo Ent., Inc., developed its business model, and later acquired and operated the Northern Boulevard location as its sole shareholder and officer. This claim is a transparent attempt to rewrite history, mislead the Court, and inject irrelevant personal narratives that serve only to waste judicial time and resources.

53.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "53" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou "accepted" an offer of employment or managerial position from Michael Shahkoohi is categorically false and entirely without evidentiary basis. No such offer was ever made, discussed, or accepted, and no employment or subordinate relationship ever existed between the parties. In reality, the first and only formal business relationship between Elyahou and Shahkoohi occurred in the third quarter of 2022, when Shahkoohi and his partner, Ramin a/k/a Robert Baratian, were offered and acquired an eighty percent (80%) ownership interest in Auto Expo Ent., Inc., and Elyahou concurrently received a twenty percent (20%) membership interest in Peace Properties LLC, a real estate holding company. Any suggestion that Elyahou was previously employed by or subordinate to Shahkoohi is a fabricated narrative intended to distort the record, mislead the Court, and waste judicial time with falsehoods designed to support an agenda-driven version of events.

54.     Defendants admit the allegations contained in paragraph numbered "54" of Plaintiffs' Complaint.

55.     Defendants admit the allegations contained in paragraph numbered "55" of Plaintiffs' Complaint.

56.     Defendants deny the allegations contained in paragraph numbered "56" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou, at the age of 19, was "without any financial resources" is false, speculative, and intentionally misleading. Plaintiffs have no factual basis, financial documentation, or access to personal tax or banking records that would allow them to make such an assertion. This statement is a clear attempt to disparage Elyahou personally and

construct a false narrative of dependence intended to bolster Plaintiffs' fabricated claims of control or mentorship. In truth, Elyahou came from a financially stable family, was independently engaged in business activity from a young age, and later built Auto Expo Ent., Inc. entirely on his own resources, credit, and reputation. This baseless statement reflects a pattern of reckless, agenda-driven allegations designed to mislead the Court, waste judicial time, and improperly attack the character and independence of the Defendant.

57.     Defendants deny the allegations contained in paragraph numbered "57" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

58.     Defendants deny the allegations contained in paragraph numbered "58" of Plaintiffs' Complaint, including the assertions that in 2006 Mr. Elyahou was granted a twenty percent (20%) equity interest in AutoExpo and became its "Operating Partner." Defendants state that those assertions are incorrect and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact..

59.     Defendants deny the allegations contained in paragraph numbered "59" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

60.     Defendants deny the allegations contained in paragraph numbered "60" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

61.     Defendants deny the allegations contained in paragraph numbered "61" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

62.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "62" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

63.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "63" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou executed a two-page "2008 Agreement" that established any formal ownership or partnership arrangement between the parties is false and misleading. While there may have been informal conversations or discussions regarding a potential business partnership around that time, no valid binding agreement was ever executed. The company's federal and state tax returns, shareholder records, and all corporate filings from 2000 through 2021 consistently reflect Elyahou as the sole shareholder and owner of Auto Expo Ent., Inc., with no other individual listed in any capacity. Furthermore, in 2016, during divorce proceedings involving Elyahou, a court-appointed, independent forensic accounting firm was engaged to evaluate and determine the ownership and valuation of Auto Expo Ent., Inc. That impartial forensic report conclusively confirmed Elyahou as the 100% owner of Auto Expo Ent., Inc. at that time. This allegation is yet another example of Plaintiffs attempting to rewrite history and inject emotional and personal animus into a commercial dispute, stemming from Michael Shahkoohi's longstanding hostility toward Elyahou's family following his contentious divorce from Elyahou's sister. Such personal grievances have no bearing on the facts of corporate ownership and are being used solely to harass, discredit, and financially harm the Defendant.

64.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "64" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

65.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "65" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

66.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "66" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

67.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "67" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

68.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "68" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for

itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

69.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "69" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact. The allegation that, pursuant to any so-called "2008 Agreement," Shahkoohi and his purported "long-time business partner and cousin" Baratian, served as *Senior Advisors* to Auto Expo Ent., Inc., and that all company decisions required their approval, is entirely false, misleading, and contradicted by sworn testimony and documentary evidence. To begin with, Shahkoohi and Baratian are not cousins, and any representation to the Court that they are biologically related is false and intentionally deceptive. The term *cousin* implies a familial relationship by blood or marriage, one that does not exist between these two individuals. In reality, Shahkoohi and Baratian are long-time business associates who share joint financial interests, have co-owned and operated multiple dealerships together, and were co-defendants in an unrelated criminal bid-rigging matter. Shahkoohi and Baratian's relationship is purely commercial and self-interested, not familial. Furthermore, during Elyahou's divorce proceedings in the Supreme Court of Nassau County in 2016, where a court-appointed independent forensic accounting firm was engaged to determine the ownership and valuation of Auto Expo Ent., Inc., both Shahkoohi and Baratian provided sworn testimony about their roles with the company.  Under oath, Baratian testified that he acted as a *marketing vendor* who provided outside marketing services to Auto Expo Ent., Inc. for compensation; and Under Oath, Shahkoohi testified that he served as an *independent vehicle buyer/vendor*, purchasing inventory for the dealership and being paid per transaction. Neither

individual testified to having any ownership interest, managerial authority, or advisory role within Auto Expo Ent., Inc.  Shahkoohi and Baratian's current statements directly contradict their own prior sworn testimony and the findings of the independent forensic accounting firm. These false assertions appear to be fabricated to mislead the Court, distort the historical record, and falsely create the impression of managerial or advisory control over a company they neither owned nor directed.

70.    Defendants deny the allegations contained in paragraph numbered "70" of Plaintiffs' Second Amended Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier fact.

71.    Defendants deny the allegations contained in paragraph numbered "71" of Plaintiffs' Second Amended Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier fact.

72.    Defendants deny the allegations contained in paragraph numbered "72" of Plaintiffs' Second Amended Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier fact.

73.    Defendants deny the allegations contained in paragraph numbered "73" of Plaintiffs' Second Amended Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier fact.

74.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "74" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

75.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "75" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

76.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "76" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

77.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "77" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

78.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "78" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou merely "had responsibility" over Auto Expo Ent., Inc.'s banking relationship with Rockland Trust Bank ("Rockland") is false and deliberately misleading. In truth, the floor-plan line of credit with Rockland Trust Bank was applied for, approved, and maintained solely by Omid Elyahou in his capacity as the company's sole owner and authorized signatory. At no time did Michael Shahkoohi, Ramin Baratian, or Armin Baratian have any authority, approval rights, or ownership status that entitled them to participate in that banking

relationship. In early 2023, after Rockland Trust Bank learned that the ownership of Auto Expo Ent., Inc. had changed, the bank issued a notice of termination and cancellation of the floor-plan facility, citing that the original applicant, Elyahou, had not authorized or disclosed the transfer of ownership interests. The bank's representatives confirmed that they had been misled by Michael Shahkoohi, who failed to disclose the ownership change and continued representing himself as having authority. Only after multiple meetings in which Shahkoohi, Ramin Baratian, and Armin Baratian personally appealed to Rockland Trust Bank—relying on their unrelated business accounts and dealings—did the bank agree to temporarily refrain from cancellation. This sequence of events demonstrates that the Rockland Trust relationship originated entirely through Elyahou's credit, ownership, and reputation, and that any ongoing access after 2022 was achieved only through misrepresentation and concealment by Shahkoohi and the Baratians.

79.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "79" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

80.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "80" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

81.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "81" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

82.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "82" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that

Michael Shahkoohi "would attend the live simulcast of Mercedes-Benz On Demand ('MB On Demand') auctions at 1:00 P.M. every day, Monday through Friday," is entirely speculative, unverifiable, and irrelevant to any factual issue in this case. Omid Elyahou had no business, supervisory, or professional relationship with Shahkoohi during that time, and therefore has no knowledge of Shahkoohi's personal schedule, work habits, or participation in any auction platform. This allegation is presented as if it were an established fact, when in reality it is nothing more than conjecture offered without any supporting documentation or admissible evidence. It serves no legitimate purpose other than to create a false appearance of operational involvement and to waste judicial resources with immaterial details about what Shahkoohi may or may not have been doing on any given day.

83.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "83" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

84.    Defendants deny the allegations contained in paragraph numbered "84" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

85.    Defendants deny the allegations contained in paragraph numbered "85" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

86.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph numbered "86" of Plaintiffs' Complaint, including the exact date of Ms. Kassim's hiring, and therefore deny the same. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

87.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "87" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

88.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "88" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

89.     Defendants admit the allegations contained in paragraph numbered "89" of Plaintiffs' Complaint.  The allegation that Omid Elyahou had a divorce proceeding initiated against him in 2012 is irrelevant, prejudicial, and included solely to inflame the record and disparage the Defendant and his family. This personal matter has no connection whatsoever to the subject of this litigation, the ownership of Auto Expo Ent., Inc., or any of the corporate or financial issues at issue in this case. The divorce proceedings concluded years prior to Michael Shahkoohi and Ramin Baratian's acquisition of an ownership interest in Auto Expo Ent., Inc. in 2022, and have no bearing on the parties' current business relationship or disputes. The only conceivable purpose for inserting this reference is to inject personal animus into a commercial dispute, rooted in Michael Shahkoohi's longstanding hostility toward Elyahou's family following his own acrimonious divorce from Elyahou's sister.

90.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "90" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

91.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "91" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

92.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "92" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou's divorce action was "finally resolved" in 2017 is factually incorrect. The matter was concluded in March 2016, as reflected in the official records of the Supreme Court of Nassau County, New York. Furthermore, the proceedings had no bearing on the ownership, operations, or management of Auto Expo Ent., Inc., other than serving as the occasion for the appointment of an independent, court-approved forensic accounting firm, which confirmed that Elyahou was the sole 100% owner of Auto Expo Ent., Inc. at that time. Any attempt to misstate this timeline or tie those personal proceedings to the present dispute is misleading, irrelevant, and intended solely to distract the Court from the factual and financial issues properly before it.

93.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "93" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

94.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "94" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

95.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "95" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

96.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "96" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

97.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "97" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

98.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "98" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

99.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "99" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

100.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "100" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

101.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "101" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

102.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "102" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

103.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "103" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

104.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "104" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

105.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "105" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

106.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "106" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

107.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "107" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

108.    Defendants deny the allegations contained in paragraph numbered "108" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

109.    Defendants deny the allegations contained in paragraph numbered "109" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou represented to Michael Shahkoohi and/or Ramin ("Robert") Baratian that SimpSocial LLC was "marketing in the non-automotive market" and "in no way affected Auto Expo Ent., Inc." is entirely false and demonstrably disproven by publicly available information. At no time did Elyahou make such a statement, and SimpSocial's business model, website, and marketing materials have always clearly identified the company as an automotive-focused CRM, marketing, and communications platform. This is a matter of public

record and can be verified directly through SimpSocial's website, industry listings, and public-facing documentation. Auto Expo Ent., Inc. is a used car dealership, and SimpSocial's operations as a technology and marketing platform are entirely separate, transparent, and lawful. Plaintiffs' claim is a deliberate misrepresentation made in bad faith to mislead the Court and create a false narrative of concealment, when in reality the companies operate in distinct and non-competing capacities. This allegation is yet another example of Plaintiffs inserting knowingly false statements into the record for the sole purpose of discrediting Elyahou and wasting judicial resources.

110.    Defendants deny the allegations contained in paragraph numbered "110" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that, "*unbeknownst to Shahkoohi and Robert*," Omid Elyahou caused Auto Expo Ent., Inc. to switch its social-media marketing platform from Tecobi to SimpSocial "sometime in 2019 or 2020" is false, misstated, and irrelevant. First, Shahkoohi and Ramin ("Robert") Baratian were not owners, officers, or managers of Auto Expo at any time in 2019 or 2020; they did not acquire any ownership interest until the third quarter of 2022. Accordingly, they had no right to notice or approval of routine vendor decisions during that earlier period, and the premise that any change occurred "unbeknownst" to them is meaningless and misleading. Second, the dates asserted are inaccurate. To the extent any transition between Tecobi and SimpSocial occurred, it was undertaken openly and in the ordinary course by Elyahou as the sole owner, and is fully reflected in Auto Expo's accounts-payable records, invoices, banking entries, and tax documentation. There was no concealment, and SimpSocial's automotive marketing/CRM services were transparent, documented, and commercially reasonable. The claim is a manufactured narrative intended to imply secrecy where none existed and to retroactively insert Plaintiffs into company operations years before they had any ownership or authority.

111.    Defendants deny the allegations contained in paragraph numbered "111" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

112.    Defendants deny the allegations contained in paragraph numbered "112" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

113.    Defendants deny the allegations contained in paragraph numbered "113" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou "used Auto Expo's experience, resources, and staff to copy Tecobi's system," allegedly "using improper means," and that after establishing SimpSocial he "started charging Auto Expo to perform marketing tasks that Michael Shahkoohi personally taught him," is categorically false, speculative, and technologically implausible. First, Michael Shahkoohi possesses no technical expertise in marketing automation, CRM systems, or digital platform development; indeed, he has publicly demonstrated limited familiarity with even basic digital tools such as email or online administrative platforms. The notion that Shahkoohi "taught" Elyahou complex CRM or software architecture principles is absurd on its face and unsupported by any document, witness, or evidence. Second, SimpSocial LLC was independently formed and developed by experienced software professionals and operates as a legitimate, stand-alone marketing and CRM technology company. Its design, source code, and business processes are original works, not derived from Tecobi or any Auto Expo asset. All of SimpSocial's development was conducted lawfully and at arm's length, with its own contractors, engineers, and intellectual-property protections. Finally, the entire allegation is irrelevant to the issues before the Court: Auto Expo Ent., Inc. is a used-car dealership, not a technology company, and had no

proprietary platform or digital intellectual property capable of being "copied." The statement serves only to mislead, waste judicial time, and inject personal hostility into the pleadings rather than address any factual or legal claim grounded in evidence.

114.    Defendants deny the allegations contained in paragraph numbered "114" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

115.    Defendants deny the allegations contained in paragraph numbered "115" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

116.    Defendants deny the allegations contained in paragraph numbered "116" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

117.    Defendants deny the allegations contained in paragraph numbered "117" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

118.    Defendants deny the allegations contained in paragraph numbered "118" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

119.    Defendants deny the allegations contained in paragraph numbered "119" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

120.    Defendants deny the allegations contained in paragraph numbered "120" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

121.    Defendants deny the allegations contained in paragraph numbered "121" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Auto Expo Ent., Inc. "was charged every month but had no proof that advertisements were actually being run" is false, misleading, and unsupported by fact or documentation. First, for the time periods prior to the third quarter of 2022, Michael Shahkoohi and Ramin Baratian were not owners, officers, or authorized representatives of Auto Expo and therefore have no standing or right to demand records or question expenditures made during those years. Second, for the brief period in which they later held ownership interests, full proof of advertising activity was provided, including Facebook Ad receipts, digital invoices, and campaign summaries from SimpSocial LLC. The Plaintiffs' inability—or unwillingness—to interpret standard digital advertising records does not convert legitimate marketing expenses into misconduct. Finally, SimpSocial LLC immediately terminated all business relations with Auto Expo Ent., Inc. after ownership changed hands, communicating this decision directly by text message to Leor Baratian, the son of Ramin Baratian, who—despite being only twenty-one years old and lacking dealership experience—was installed as the dealership's general manager following the ownership transition. The termination was professional and final; SimpSocial has had no further dealings with Auto Expo Ent., Inc., and there is no ongoing dispute or ill will.

122.    Defendants deny the allegations contained in paragraph numbered "122" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

123.    Defendants deny the allegations contained in paragraph numbered "123" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that an individual named Namigohar "confirmed" that he had collected approximately $515,000 in cash from repossession companies since 2014 is false, misleading, and originates from an individual whose credibility is demonstrably compromised. In fact, Mr. Namigohar directly contacted Defendant Omid Elyahou, both by text message and in a recorded conversation, during which he stated that Michael Shahkoohi had dispatched private investigators to his home and pressured him to make false statements against Elyahou. This same individual had previously executed a written statement, through counsel, expressly confirming that he would not make any allegations against Auto Expo Ent., Inc. or its representatives. Subsequently, Mr. Namigohar attempted to extort Auto Expo and its owners by demanding payment of approximately $194,000, threatening that if payment was not made, he would report Michael Shahkoohi and Ramin ("Robert") Baratian to the Internal Revenue Service for alleged tax fraud. These communications are preserved and can be substantiated through text messages, recorded calls, and contemporaneous correspondence. Accordingly, any reliance by Plaintiffs on statements attributed to this individual is in bad faith, lacks probative value, and constitutes an intentional attempt to mislead the Court through the use of a compromised and self-interested witness.

124.    Defendants deny the allegations contained in paragraph numbered "124" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

125.    Defendants deny the allegations contained in paragraph numbered "125" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the

trier of fact. The allegation that Michael Shahkoohi "confronted" Omid Elyahou regarding cash received from repossession companies, and that Elyahou admitted receiving such funds, is false, unsupported, and intentionally misleading. The individual at the center of this claim, Mr. Namigohar, had been terminated from Auto Expo Ent., Inc. years before Michael Shahkoohi acquired any ownership interest in the company, due to documented misconduct and violations of company policy. Therefore, any statements or allegations arising from or relating to Mr. Namigohar's tenure are irrelevant to the time period at issue in this litigation and cannot reasonably be attributed to Elyahou's conduct as an owner or officer during Shahkoohi's involvement. Furthermore, the claim that Fazeeda Kassim "deleted bills" or "denied having records" is also false. All records for vendor transactions, repossession payments, and cash activity were properly documented in Auto Expo's accounting system and reviewed regularly by both internal and external accountants. These fabricated statements appear to have been sourced from a disgruntled former employee (Namigohar) with a known history of misconduct and ulterior motives, and are presented without a single piece of verifiable evidence. Accordingly, this paragraph reflects another baseless and malicious attempt to invent wrongdoing where none occurred, relying on discredited testimony from an individual with no continuing connection to the company.

126.    Defendants deny the allegations contained in paragraph numbered "126" of Plaintiffs' Complaint. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.  Defendants further state that, as of September 27, 2023, Defendants Omid Elyahou and Fazeeda Kassim was no longer in charge of AutoExpo's books, records, finances, or any accounting functions, and therefore could not have received or directed any such funds as alleged.  The allegation that on September 27, 2023, Mr. Namigohar called Ms. Fazeeda Kassim, who allegedly "confirmed" that she received monies collected by him from repossession

companies on behalf of Auto Expo Ent., Inc., and that she "handed it to Omid Elyahou," is entirely false, fabricated, and impossible on its face. Both Mr. Namigohar and Ms. Kassim were no longer employed by Auto Expo Ent., Inc. as of that date, and therefore had no authority, access, or capacity to conduct or comment on any financial transactions of the company. Indeed, Mr. Namigohar's employment was terminated years before Michael Shahkoohi became an owner, following multiple instances of misconduct, and Ms. Kassim had voluntarily resigned from Auto Expo in February 2023, well before the alleged September 2023 conversation. Moreover, no credible evidence exists—whether in the form of transaction records, receipts, or communications—showing that any funds were ever "handed" to Omid Elyahou. This claim relies solely on hearsay from an individual (Namigohar) who has already been shown to have engaged in extortionate behavior and coercive communications under the influence and direction of Michael Shahkoohi. Accordingly, the entirety of this paragraph should be disregarded as a knowingly false statement, contradicted by employment records and unsupported by any admissible or contemporaneous evidence.

127.    Defendants deny the allegations contained in paragraph numbered "127" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

128.    Defendants deny the allegations contained in paragraph numbered "128" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

129.    Defendants deny the allegations contained in paragraph numbered "129" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

130.    Defendants deny the allegations contained in paragraph numbered "130" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

131.    Defendants deny the allegations contained in paragraph numbered "131" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

132.    Defendants deny the allegations contained in paragraph numbered "132" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

133.    Defendants deny the allegations contained in paragraph numbered "133" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

134.    Defendants deny the allegations contained in paragraph numbered "134" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

135.    Defendants deny the allegations contained in paragraph numbered "135" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

136.    Defendants deny the allegations contained in paragraph numbered "136" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that United Citizens Warranty LLC ("United Citizens") was "primarily in the business of selling warranty products" is factually incorrect and entirely unsupported. The company's name alone does not establish its line of business or operational history.

While the entity was originally formed by Omid Elyahou in 2017–2018 with the initial intention of exploring opportunities to broker and sell extended warranties to other automobile dealerships, that business plan never became active or operational. Since its inception, United Citizens Warranty LLC has not engaged in any ongoing commercial activity, has generated no sales revenue, and has not distributed or marketed any warranty products whatsoever. The Plaintiffs' assumption, based solely on the company's name—is misleading and careless, reflecting a lack of due diligence and an attempt to mischaracterize a dormant entity as a functioning enterprise. This is yet another example of the Plaintiffs inserting false and irrelevant statements into the record to create the illusion of impropriety where none exists.

137.    Defendants deny the allegations contained in paragraph numbered "137" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

138.    Defendants deny the allegations contained in paragraph numbered "138" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that United Citizens Warranty LLC ("United Citizens") entered into an agreement with MUSA Auto Finance LLC (now DRIVRZ Financial) in or about September 2018 is false and misleading. While Omid Elyahou, as founder of United Citizens, explored potential business opportunities with MUSA Auto Finance LLC and engaged in preliminary discussions, no formal agreement or transaction was ever executed, and no business relationship was ever consummated. United Citizens never received or provided any funds, services, or products to or from MUSA or DRIVRZ Financial. Furthermore, this alleged interaction occurring in 2018, nearly four years before Michael Shahkoohi or Ramin ("Robert") Baratian became shareholders or partners in Auto Expo Ent., Inc. or Peace Properties LLC, has no bearing whatsoever on the parties

or claims in this litigation. It represents yet another irrelevant and emotionally charged allegation inserted by Shahkoohi in an attempt to portray himself as having authority or insight into matters predating his involvement by years. This claim is factually baseless, legally immaterial, and intended solely to harass and waste judicial resources. It has no connection to Auto Expo Ent., Inc., its operations, or any of the issues properly before this Court.

139.    Defendants deny the allegations contained in paragraph numbered "139" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

140.    Defendants deny the allegations contained in paragraph numbered "140" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

141.    Defendants deny the allegations contained in paragraph numbered "141" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

142.    Defendants deny the allegations contained in paragraph numbered "142" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

143.    Defendants deny the allegations contained in paragraph numbered "143" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

144.    Defendants deny the allegations contained in paragraph numbered "144" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

145.    Defendants deny the allegations contained in paragraph numbered "145" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

146.    Defendants deny the allegations contained in paragraph numbered "146" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

147.    Defendants deny the allegations contained in paragraph numbered "147" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

148.    Defendants deny the allegations contained in paragraph numbered "148" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

149.    Defendants deny the allegations contained in paragraph numbered "149" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

150.    Defendants deny the allegations contained in paragraph numbered "150" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

151.    Defendants deny the allegations contained in paragraph numbered "151" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

152.    Defendants deny the allegations contained in paragraph numbered "152" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

153.    Defendants deny the allegations contained in paragraph numbered "153" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

154.    Defendants deny the allegations contained in paragraph numbered "154" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

155.    Defendants deny the allegations contained in paragraph numbered "150" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

156.    Defendants deny the allegations contained in paragraph numbered "155" of Plaintiffs' Complaint, except admit that following the third quarter of 2022, after Michael Shahkoohi became a shareholder and majority owner of AutoExpo, Defendant Omid Elyahou held a minority partnership interest in Certified Performance. Defendants specifically deny that any such partnership or ownership existed prior to that time and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

157.    Defendants deny the allegations contained in paragraph numbered "157" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

158.    Defendants deny the allegations contained in paragraph numbered "158" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

159.    Defendants deny the allegations contained in paragraph numbered "159" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The statement that "Shahkoohi discovered that Elyahou's protestations were all lies" is not a statement of fact but an emotional, conclusory assertion entirely unsupported by evidence or record. It contains no specific allegation, document, or testimony establishing any falsehood by Omid Elyahou. Rather, it reflects Michael Shahkoohi's pattern of inserting personal hostility and subjective character attacks into these pleadings in place of factual or admissible material. Such inflammatory language has no probative value, and serves only to prejudice and distract the Court from the substantive issues.

160.    Defendants deny the allegations contained in paragraph numbered "160" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

161.    Defendants deny the allegations contained in paragraph numbered "161" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

162.    Defendants deny the allegations contained in paragraph numbered "162" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

163.    Defendants deny the allegations contained in paragraph numbered "163" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

164.    Defendants deny the allegations contained in paragraph numbered "164" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

165.    Defendants deny the allegations contained in paragraph numbered "165" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Certified Performance Motors, while operating with similar inventory and fewer vehicles, was "nonetheless considerably outselling Auto Expo Ent., Inc. every month," as allegedly "learned" by Michael Shahkoohi from unnamed former employees, is entirely speculative, hearsay, and devoid of any factual or documentary foundation. This assertion is a subjective, emotionally charged statement. Moreover, comparing the sales performance of Certified Performance Motors, an independent dealership with its own structure, location, and customer base, to that of Auto Expo Ent., Inc. has no legal relevance to the issues before the Court. The statement serves only to inject opinion, conjecture, and personal animus into the pleadings rather than address any legitimate dispute grounded in fact or law.

166.    Defendants deny the allegations contained in paragraph numbered "166" of Plaintiffs' Complaint, including the asserted January 2023 sales figures and any comparison or ratio (e.g., "33" versus "122" and "four times"), which are inaccurate and unsupported. To the extent the paragraph purports to summarize business records or third-party website data, such documents speak for themselves. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

167.    Defendants deny the allegations contained in paragraph numbered "167" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

168.    Defendants deny the allegations contained in paragraph numbered "168" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

169.    Defendants deny the allegations contained in paragraph numbered "169" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Omid Elyahou "continued to have employees at Auto Expo Ent., Inc. who acted as 'spies' to report to him what was going on" is entirely false, inflammatory, and unsupported by credible evidence. This statement is pure conjecture, phrased in emotional and accusatory language that has no place in a formal legal pleading. This type of vague, unsubstantiated allegation reflects personal hostility and paranoia rather than factual reality and is irrelevant to the issues properly before the Court. Such rhetoric is intended only to sensationalize the record and damage Elyahou's reputation, rather than address any material dispute of fact. Accordingly, this paragraph should be disregarded as an emotional, baseless, and inadmissible statement lacking any evidentiary foundation.

170.    Defendants deny the allegations contained in paragraph numbered "170" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

171.    Defendants deny the allegations contained in paragraph numbered "171" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

172.    Defendants deny the allegations contained in paragraph numbered "172" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

173.    Defendants deny the allegations contained in paragraph numbered "173" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

174.    Defendants deny the allegations contained in paragraph numbered "174" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

175.    Defendants deny the allegations contained in paragraph numbered "175" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

176.    Defendants deny the allegations contained in paragraph numbered "176" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

177.    Defendants deny the allegations contained in paragraph numbered "177" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

178.    Defendants deny the allegations contained in paragraph numbered "178" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact The allegation that a few days later, Ms. Nektalov sent a letter stating that "she can't accept working for the new management" and that she "was loyal to [Elyahou]" is mischaracterized and taken out of context. The letter in question referred not to "new management"

but to the new ownership group, which had created a hostile and abusive work environment that destabilized operations and financially damaged the business. Following the change in ownership, multiple employees expressed discomfort and dissatisfaction with the conduct and management style of Michael Shahkoohi and Ramin ("Robert") Baratian, citing unprofessional treatment and erratic decision-making. Accordingly, Ms. Nektalov's statement was an expression of employee frustration over the toxic workplace conditions introduced by the new owners, not an act of "loyalty" or coordination with Elyahou.

179.    Defendants deny the allegations contained in paragraph numbered "179" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

180.    Defendants deny the allegations contained in paragraph numbered "180" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

181.    Defendants deny the allegations contained in paragraph numbered "181" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

182.    Defendants deny the allegations contained in paragraph numbered "182" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

183.    Defendants deny the allegations contained in paragraph numbered "183" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

184.    Defendants deny the allegations contained in paragraph numbered "184" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

185.    Defendants deny the allegations contained in paragraph numbered "185" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that Michael Shahkoohi "implemented a unique, custom-designed inventory system" for Auto Expo Ent., Inc., allegedly costing over $170,000.00 to set up, is categorically denied. This statement is internally inconsistent, contradicted by prior representations made by the same party, and lacks any supporting documentation such as invoices, contracts, or payment records. In multiple filings and prior communications, Shahkoohi has claimed varying amounts and differing descriptions of the same alleged system, at times referring to it as "custom-built," at other times as "licensed," and in yet others as "internally developed," thereby undermining his own credibility. The absence of a consistent narrative or corroborating evidence strongly suggests that this allegation is invented or exaggerated after the fact, and not grounded in the company's actual financial or operational records. Moreover, any purported system changes would have been implemented under Shahkoohi's own control after the disputed transfer of ownership interests in 2022; therefore, he cannot attribute the costs or decisions to Elyahou. This paragraph exemplifies Shahkoohi's erratic and contradictory pattern of statements emotional in tone, inconsistent in substance, and devoid of factual foundation.

186.    Defendants deny the allegations contained in paragraph numbered "186" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

187.    Defendants deny the allegations contained in paragraph numbered "187" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

188.    Defendants deny the allegations contained in paragraph numbered "188" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

189.    Defendants deny the allegations contained in paragraph numbered "189" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

190.    Defendants deny the allegations contained in paragraph numbered "190" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

191.    Defendants deny the allegations contained in paragraph numbered "191" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

192.    Defendants deny the allegations contained in paragraph numbered "192" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

193.    Defendants deny the allegations contained in paragraph numbered "193" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

194.    Defendants deny the allegations contained in paragraph numbered "194" of Plaintiffs' Complaint. Defendants further state that any purported "reluctance" by Ms. Kassim to provide

access to AutoExpo's records could be because, at the time, Michael Shahkoohi was not a shareholder, officer, or authorized representative of the company, and therefore lacked authority to demand or access such records. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

195.    Defendants deny the allegations contained in paragraph numbered "195" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

196.    Defendants deny the allegations contained in paragraph numbered "196" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

197.    Defendants deny the allegations contained in paragraph numbered "197" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

198.    Defendants deny the allegations contained in paragraph numbered "198" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

199.    Defendants deny the allegations contained in paragraph numbered "199" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

200.    Defendants deny the allegations contained in paragraph numbered "200" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

201.    Defendants deny the allegations contained in paragraph numbered "201" of Plaintiffs' Complaint. Defendants further state that, until the third quarter of 2022, Michael Shahkoohi was not a shareholder, officer, or authorized representative of AutoExpo, and therefore was not entitled to management information or internal company details during the period referenced. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

202.    Defendants deny the allegations contained in paragraph numbered "202" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

203.    Defendants deny the allegations contained in paragraph numbered "203" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

204.    Defendants deny the allegations contained in paragraph numbered "204" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

205.    Defendants deny the allegations contained in paragraph numbered "205" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

206.    Defendants deny the allegations contained in paragraph numbered "206" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

207.    Defendants deny the allegations contained in paragraph numbered "207" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

208.    Defendants deny the allegations contained in paragraph numbered "208" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

209.    Defendants deny the allegations contained in paragraph numbered "209" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

210.    Defendants deny the allegations contained in paragraph numbered "210" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

211.    Defendants deny the allegations contained in paragraph numbered "211" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

212.    Defendants deny the allegations contained in paragraph numbered "212" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

213.    Defendants deny the allegations contained in paragraph numbered "213" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

214.    Defendants deny the allegations contained in paragraph numbered "214" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

215.    Defendants deny the allegations contained in paragraph numbered "215" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

216.    Defendants deny the allegations contained in paragraph numbered "216" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. The allegation that during 2021, Omid Elyahou was going to Auto Expo Ent., Inc. approximately twice a week is false, speculative.  At that time, Elyahou was the sole shareholder and officer of Auto Expo Ent., Inc., and his presence at the dealership was determined solely by business need and executive discretion. There is no documentation, timekeeping, or contemporaneous record to substantiate the alleged frequency of his visits, nor is such a detail material to the ownership, financial, or contractual questions at issue in this litigation.

Further, Michael Shahkoohi held no ownership interest, management authority, or internal access to the company in 2021, and therefore lacks personal knowledge or standing to make this assertion. This statement serves no legal purpose and constitutes another emotional, immaterial allegation meant only to disparage rather than clarify any fact in dispute.

217.    Defendants deny the allegations contained in paragraph numbered "217" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

218.    Defendants deny the allegations contained in paragraph numbered "218" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

219.    Defendants deny the allegations contained in paragraph numbered "219" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

220.    Defendants deny the allegations contained in paragraph numbered "220" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

221.    Defendants deny the allegations contained in paragraph numbered "221" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

222.    Defendants deny the allegations contained in paragraph numbered "222" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

223.    Defendants deny the allegations contained in paragraph numbered "223" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

224.    Defendants deny the allegations contained in paragraph numbered "224" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

225.    Defendants deny the allegations contained in paragraph numbered "225" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

226.    Defendants deny the allegations contained in paragraph numbered "226" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

227.    Defendants deny the allegations contained in paragraph numbered "227" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

228.    Defendants deny the allegations contained in paragraph numbered "228" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

229.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "229" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

230.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "230" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

231.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "231" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

232.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "232" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

233.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "233" of Plaintiffs' Complaint and object to

Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

234.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "234" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

235.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "235" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

236.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "236" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

237.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "237" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

238.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "238" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

239.    Defendants deny the allegations contained in paragraph numbered "239" of Plaintiffs' Complaint. Defendants further state that any actions referenced therein—including the alleged July 6, 2021 "Resolution of the Board of Directors of AutoExpo Ent. Inc."—occurred well before the third quarter of 2022, when Michael Shahkoohi first became a shareholder and majority owner of AutoExpo. Accordingly, at the time of the alleged events, Mr. Shahkoohi had no ownership interest, officer role, or authority within AutoExpo and therefore lacked capacity to make or assert such allegations. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

240.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "240" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

241.    Defendants deny the allegations contained in paragraph numbered "241" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

242.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "242" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

243.    Defendants deny the allegations contained in paragraph numbered "243" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

244.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "244" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

245.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "245" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

246.    Defendants deny the allegations contained in paragraph numbered "246" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

247.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "247" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

248.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "248" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

249.    Defendants deny the allegations contained in paragraph numbered "249" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

250.    Defendants deny the allegations contained in paragraph numbered "250" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

251.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "251" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

252.    Defendants admit the allegations contained in paragraph numbered "252" of Plaintiffs' Complaint.

253.    Defendants deny the allegations contained in paragraph numbered "253" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact. Notwithstanding, Omid Elyahou admits that June Mehrberg Rothstein LLC was the seller of the premises.

254.    Defendants deny the allegations contained in paragraph numbered "254" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

255.    Defendants deny the allegations contained in paragraph numbered "255" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

256.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "256" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

257.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "257" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

258.    Defendants deny the allegations contained in paragraph numbered "258" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

259.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "259" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

260.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "260" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

261.    Defendants deny the allegations contained in paragraph numbered "261" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

262.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "262" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

263.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "263" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

264.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "264" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

265.    Defendants deny the allegations contained in paragraph numbered "25" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

266.    Defendants deny the allegations contained in paragraph numbered "266" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

267.    Defendants deny the allegations contained in paragraph numbered "267" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

268.    Defendants deny the allegations contained in paragraph numbered "268" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

269.    Defendants deny the allegations contained in paragraph numbered "269" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

270.    Defendants deny the allegations contained in paragraph numbered "270" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

271.    Defendants deny the allegations contained in paragraph numbered "271" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

272.    Defendants deny the allegations contained in paragraph numbered "272" of Plaintiffs' Complaint. Defendants further state that the request made in or about March 2023 for Defendant Elyahou to sign new bylaws and agree to management changes was represented by Ramin Baratian as being for purposes of facilitating a mortgage refinance of AutoExpo's property. Defendants were also advised by counsel that, as of the third quarter of 2022, Michael Shahkoohi had become the majority shareholder and was informed by his counsel that he could act unilaterally as he wished. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

273.    Defendants admit the allegations contained in paragraph numbered "273" of Plaintiffs' Complaint.

274.    Defendants deny the allegations contained in paragraph numbered "274" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

275.    Defendants deny the allegations contained in paragraph numbered "275" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

276.    Defendants deny the allegations contained in paragraph numbered "276" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

277.    Defendants deny the allegations contained in paragraph numbered "277" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

278.    Defendants deny the allegations contained in paragraph numbered "278" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

279.    Defendants deny the allegations contained in paragraph numbered "279" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

280.    Defendants deny the allegations contained in paragraph numbered "280" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

281.    Defendants deny the allegations contained in paragraph numbered "281" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

282.    Defendants deny the allegations contained in paragraph numbered "282" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

283.    Defendants deny the allegations contained in paragraph numbered "283" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

284.    Defendants deny the allegations contained in paragraph numbered "284" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

285.    Defendants deny the allegations contained in paragraph numbered "285" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

286.    Defendants deny the allegations contained in paragraph numbered "286" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

287.    Defendants deny the allegations contained in paragraph numbered "287" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

288.    Defendants deny the allegations contained in paragraph numbered "288" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

289.    Defendants deny the allegations contained in paragraph numbered "289" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

290.    Defendants deny the allegations contained in paragraph numbered "290" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

291.    Defendants deny the allegations contained in paragraph numbered "291" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

292.    Defendants deny the allegations contained in paragraph numbered "292" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

293.    Defendants deny the allegations contained in paragraph numbered "293" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

294.    Defendants deny the allegations contained in paragraph numbered "294" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

295.    Defendants deny the allegations contained in paragraph numbered "295" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

296.    Defendants deny the allegations contained in paragraph numbered "296" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

297.    Defendants deny the allegations contained in paragraph numbered "297" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

298.    Defendants deny the allegations contained in paragraph numbered "298" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

299.    Defendants deny the allegations contained in paragraph numbered "299" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

300.    Defendants deny the allegations contained in paragraph numbered "300" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

301.    Defendants deny the allegations contained in paragraph numbered "301" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

302.    Defendants deny the allegations contained in paragraph numbered "302" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

303.    Defendants deny the allegations contained in paragraph numbered "303" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

304.    Defendants deny the allegations contained in paragraph numbered "304" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

305.    Defendants deny the allegations contained in paragraph numbered "305" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

306.    Defendants deny the allegations contained in paragraph numbered "306" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

307.    Defendants deny the allegations contained in paragraph numbered "307" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

308.    Defendants deny the allegations contained in paragraph numbered "308" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

309.     Defendants deny the allegations contained in paragraph numbered "309" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

310.     Defendants deny the allegations contained in paragraph numbered "310" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

311.     Defendants deny the allegations contained in paragraph numbered "311" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

312.     Defendants deny the allegations contained in paragraph numbered "312" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

313.     Defendants deny the allegations contained in paragraph numbered "313" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

314.     Defendants deny the allegations contained in paragraph numbered "314" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

315.     Defendants deny the allegations contained in paragraph numbered "315" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

316.    Defendants deny the allegations contained in paragraph numbered "316" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

317.    Defendants deny the allegations contained in paragraph numbered "317" of Plaintiffs' Complaint. Defendants further state that, contrary to Plaintiffs' characterization, Michael Shahkoohi has continuously maintained undisclosed ownership interests in multiple other dealerships, creating a clear conflict of interest that he never disclosed to AutoExpo or its stakeholders. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

318.    Defendants deny the allegations contained in paragraph numbered "318" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

319.    Defendants deny the allegations contained in paragraph numbered "319" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

320.    Defendants deny the allegations contained in paragraph numbered "320" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

321.    Defendants deny the allegations contained in paragraph numbered "321" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

322. Defendants deny the allegations contained in paragraph numbered "322" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

323. Defendants deny the allegations contained in paragraph numbered "323" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

324. Defendants deny the allegations contained in paragraph numbered "324" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

325. Defendants deny the allegations contained in paragraph numbered "325" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

326. Defendants deny the allegations contained in paragraph numbered "326" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

327. Defendants deny the allegations contained in paragraph numbered "327" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

328. Defendants deny the allegations contained in paragraph numbered "328" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

329.    Defendants deny the allegations contained in paragraph numbered "329" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

330.    Defendants deny the allegations contained in paragraph numbered "330" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

331.    Defendants deny the allegations contained in paragraph numbered "331" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

332.    Defendants deny the allegations contained in paragraph numbered "332" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

333.    Defendants deny the allegations contained in paragraph numbered "333" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

334.    Defendants deny the allegations contained in paragraph numbered "334" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

335.    Defendants deny the allegations contained in paragraph numbered "335" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

336.    Defendants deny the allegations contained in paragraph numbered "336" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

337.    Defendants deny the allegations contained in paragraph numbered "337" of Plaintiffs' Complaint. Defendants further state that the allegations are factually inaccurate and misleading, as Michael Shahkoohi was not a shareholder, officer, or owner of AutoExpo until the third quarter of 2022. Accordingly, any claim that Mr. Shahkoohi "spent decades building" AutoExpo is false and without basis. Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

338.    Defendants deny the allegations contained in paragraph numbered "338" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

339.    Defendants deny the allegations contained in paragraph numbered "339" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

340.    Defendants deny the allegations contained in paragraph numbered "340" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE FIRST CAUSE OF ACTION

341.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein.

342.    Defendants deny the allegations contained in paragraph numbered "342" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

343.    Defendants deny the allegations contained in paragraph numbered "343" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

344.    Defendants deny the allegations contained in paragraph numbered "344" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

345.    Defendants deny the allegations contained in paragraph numbered "345" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

346.    Defendants deny the allegations contained in paragraph numbered "361" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

347.    Defendants deny the allegations contained in paragraph numbered "347" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

348.    Defendants deny the allegations contained in paragraph numbered "348" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

349.    Defendants deny the allegations contained in paragraph numbered "349" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

350.    Defendants deny the allegations contained in paragraph numbered "350" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

351.    Defendants deny the allegations contained in paragraph numbered "351" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

352.    Defendants deny the allegations contained in paragraph numbered "352" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

353.    Defendants deny the allegations contained in paragraph numbered "353" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

354.    Defendants deny the allegations contained in paragraph numbered "354" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

**AS FOR AN ANSWER TO THE SECOND CAUSE OF ACTION**

355.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein.

356.    Defendants deny the allegations contained in paragraph numbered "356" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

357.    Defendants deny the allegations contained in paragraph numbered "357" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

358.    Defendants deny the allegations contained in paragraph numbered "358" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

359.    Defendants deny the allegations contained in paragraph numbered "359" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

360.    Defendants deny the allegations contained in paragraph numbered "360" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

361.    Defendants deny the allegations contained in paragraph numbered "361" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

362.    Defendants deny the allegations contained in paragraph numbered "362" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

363.    Defendants deny the allegations contained in paragraph numbered "363" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

364.    Defendants deny the allegations contained in paragraph numbered "364" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

365.    Defendants deny the allegations contained in paragraph numbered "365" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

366.    Defendants deny the allegations contained in paragraph numbered "366" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

367.    Defendants deny the allegations contained in paragraph numbered "367" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

368.    Defendants deny the allegations contained in paragraph numbered "368" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

369.    Defendants deny the allegations contained in paragraph numbered "369" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

370.    Defendants deny the allegations contained in paragraph numbered "370" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

371.    Defendants deny the allegations contained in paragraph numbered "371" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

372.    Defendants deny the allegations contained in paragraph numbered "372" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

### AS FOR AN ANSWER TO THE THIRD CAUSE OF ACTION

373.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein.

374.    Defendants deny the allegations contained in paragraph numbered "374" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

375.    Defendants deny the allegations contained in paragraph numbered "375" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

376.    Defendants deny the allegations contained in paragraph numbered "376" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

377.    Defendants deny the allegations contained in paragraph numbered "377" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

378.    Defendants deny the allegations contained in paragraph numbered "378" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

379.    Defendants deny the allegations contained in paragraph numbered "379" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

380.    Defendants deny the allegations contained in paragraph numbered "380" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

### AS FOR AN ANSWER TO THE FOURTH CAUSE OF ACTION

381.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

382.    Defendants deny the allegations contained in paragraph numbered "382" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

383.    Defendants deny the allegations contained in paragraph numbered "383" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

### AS FOR AN ANSWER TO THE FIFTH CAUSE OF ACTION

384.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

385.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "385" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

386.    Defendants deny the allegations contained in paragraph numbered "386" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

387.    Defendants deny the allegations contained in paragraph numbered "387" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

388.    Defendants deny the allegations contained in paragraph numbered "388" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

389.    Defendants deny the allegations contained in paragraph numbered "389" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

390.    Defendants deny the allegations contained in paragraph numbered "390" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

391.    Defendants deny the allegations contained in paragraph numbered "391" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

### AS FOR AN ANSWER TO THE SIXTH CAUSE OF ACTION

392.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

393.    Defendants deny the allegations contained in paragraph numbered "393" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

394.    Defendants deny the allegations contained in paragraph numbered "394" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

395.    Defendants deny the allegations contained in paragraph numbered "395" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

396.    Defendants deny the allegations contained in paragraph numbered "396" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

397.    Defendants deny the allegations contained in paragraph numbered "397" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

398.    Defendants deny the allegations contained in paragraph numbered "398" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE SIXTH CAUSE OF ACTION

399.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

400.    Defendants deny the allegations contained in paragraph numbered "400" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

401.    Defendants deny the allegations contained in paragraph numbered "401" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

402.    Defendants deny the allegations contained in paragraph numbered "402" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

403. Defendants deny the allegations contained in paragraph numbered "403" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

404. Defendants deny the allegations contained in paragraph numbered "404" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

405. Defendants deny the allegations contained in paragraph numbered "405" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

406. Defendants deny the allegations contained in paragraph numbered "406" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE SEVENTH CAUSE OF ACTION

407. Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

408. Defendants admit the allegations contained in paragraph numbered "408" of Plaintiffs' Complaint.

409. Defendants deny the allegations contained in paragraph numbered "409" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

410. Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "410" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

411.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "406" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

412.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "407" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

413.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "408" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE NINTH CAUSE OF ACTION

414.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

415.    Defendants deny the allegations contained in paragraph numbered "410" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

416.    Defendants deny the allegations contained in paragraph numbered "416" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

417.    Defendants deny the allegations contained in paragraph numbered "417" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

418.    Defendants deny the allegations contained in paragraph numbered "418" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

419.    Defendants deny the allegations contained in paragraph numbered "419" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

420.    Defendants deny the allegations contained in paragraph numbered "420" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE TENTH CAUSE OF ACTION

421.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

422.    Defendants deny the allegations contained in paragraph numbered "422" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

423.    Defendants deny the allegations contained in paragraph numbered "423" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

424.    Defendants deny the allegations contained in paragraph numbered "424" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE ELEVENTH CAUSE OF ACTION

425.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

426.    Defendants deny the allegations contained in paragraph numbered "426" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

427.     Defendants deny the allegations contained in paragraph numbered "427" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

428.     Defendants deny the allegations contained in paragraph numbered "428" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE TWELFTH CAUSE OF ACTION

429.     Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

430.     Defendants deny the allegations contained in paragraph numbered "430" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

431.     Defendants deny the allegations contained in paragraph numbered "431" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

432.     Defendants deny the allegations contained in paragraph numbered "432" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE THIRTEENTH CAUSE OF ACTION

433.     Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

434.     Defendants deny the allegations contained in paragraph numbered "434" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

435.     Defendants deny the allegations contained in paragraph numbered "435" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

436.     Defendants deny the allegations contained in paragraph numbered "436" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

437.     Defendants deny the allegations contained in paragraph numbered "437" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

438.     Defendants deny the allegations contained in paragraph numbered "438" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

**AS FOR AN ANSWER TO THE FOURTEENTH CAUSE OF ACTION**

439.     Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

440.     Defendants deny the allegations contained in paragraph numbered "440" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

441.     Defendants deny the allegations contained in paragraph numbered "441" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

442.     Defendants deny the allegations contained in paragraph numbered "442" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

443.    Defendants deny the allegations contained in paragraph numbered "4443" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

444.    Defendants deny the allegations contained in paragraph numbered "444" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

445.    Defendants deny the allegations contained in paragraph numbered "445" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

446.    Defendants deny the allegations contained in paragraph numbered "446" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE FIFTEENTH CAUSE OF ACTION

447.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

448.    Defendants deny the allegations contained in paragraph numbered "448" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

449.    Defendants deny the allegations contained in paragraph numbered "449" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

450.    Defendants deny the allegations contained in paragraph numbered "450" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

451.    Defendants deny the allegations contained in paragraph numbered "451" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

452.    Defendants deny the allegations contained in paragraph numbered "452" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

453.    Defendants deny the allegations contained in paragraph numbered "453" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE SIXTEENTH CAUSE OF ACTION

454.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

455.    Defendants deny the allegations contained in paragraph numbered "455" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

456.    Defendants deny the allegations contained in paragraph numbered "456" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

457.    Defendants deny the allegations contained in paragraph numbered "457" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

458.    Defendants deny the allegations contained in paragraph numbered "458" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

### AS FOR AN ANSWER TO THE SEVENTEENTH CAUSE OF ACTION

459.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

460.    Defendants deny each and every allegation contained in paragraph numbered "460" of Plaintiffs' Complaint, including sub-paragraphs (a) through (j), and state as follows:

(a) Defendants deny that Elyahou or Kassim lied about AutoExpo's financial condition. The company's financial reporting was accurate to the best of Defendants' knowledge, and Michael Shahkoohi had no ownership or managerial capacity prior to the third quarter of 2022, and thus was not in a position to make or rely upon such claims.

(b) Defendants deny that Elyahou fraudulently stole any trade secrets or confidential or proprietary information of AutoExpo. No such theft occurred, and any information used was independently developed. At the time of the alleged conduct, Michael Shahkoohi was not an owner or manager of AutoExpo.

(c) Defendants deny that Elyahou made any material misrepresentation regarding SimpSocial's market activities. SimpSocial engaged in legitimate business operations, and Shahkoohi had no ownership or oversight role before Q3 2022.

(d) Defendants deny that Elyahou made any fraudulent omission regarding ownership in SimpSocial. The existence and structure of SimpSocial were known within the business community, and Shahkoohi's lack of any ownership or managerial status before Q3 2022 renders his assertions unfounded.

(e) Defendants deny that Elyahou fraudulently stole AutoExpo's cash or used its credit fraudulently. All transactions were business-related and properly recorded. Shahkoohi had no ownership or managerial capacity at that time.

(f) Defendants deny that Elyahou or Kassim made fraudulent omissions regarding any cash collected from repossession companies. Any such matters occurred before Michael Shahkoohi became an owner or officer in Q3 2022.

(g) Defendants deny that Elyahou utilized AutoExpo's bid information or supplied it to Certified Performance. No such conduct occurred, and at the times alleged, Shahkoohi was not an owner or manager of AutoExpo.

(h) Defendants deny that Elyahou made any material misrepresentation about his interests in Certified Performance. The structure and ownership of that company were properly disclosed to the appropriate parties. Shahkoohi was not yet an owner of AutoExpo.

(i) Defendants deny that Elyahou or Kassim made any material misrepresentation regarding their roles in connection with the AutoExpo 401(k) Plan. All plan administration was handled through the payroll processor in accordance with the plan's design. Shahkoohi had no ownership, fiduciary, or managerial authority prior to Q3 2022.

(j) Defendants deny that Elyahou falsified resolutions or increased compensation through unauthorized 401(k) plan amendments. All plan actions were conducted properly through the payroll processor, and Shahkoohi was not a shareholder, officer, or manager before the third quarter of 2022.

Defendants respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

461.     Defendants deny the allegations contained in paragraph numbered "461" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

462.     Defendants deny the allegations contained in paragraph numbered "462" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

463.     Defendants deny the allegations contained in paragraph numbered "463" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

464.     Defendants deny the allegations contained in paragraph numbered "464" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

465.     Defendants deny the allegations contained in paragraph numbered "465" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE EIGHTEENTH CAUSE OF ACTION

466.     Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

467.     Defendants deny the allegations contained in paragraph numbered "467" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

468.     Defendants deny each and every allegation contained in paragraph numbered "468" of Plaintiffs' Complaint, including sub-paragraphs (a) through (i), and state as follows:

(a) Defendants deny that SimpSocial, United Citizens, Certified Performance, Eitan, or Kassim "permitted" any false representations about AutoExpo's financial condition. No such conduct occurred, and Michael Shahkoohi was not an owner, shareholder, or manager of AutoExpo prior to the third quarter of 2022.

(b) Defendants deny that any Defendant permitted or participated in the theft of trade secrets, confidential information, or proprietary data from AutoExpo. No such information was misappropriated. At the times alleged, Shahkoohi had no ownership or managerial capacity.

(c) Defendants deny that they permitted or participated in any material misrepresentation regarding SimpSocial's business activities. SimpSocial was a lawful marketing entity with operations outside AutoExpo. Shahkoohi was not an owner or officer before Q3 2022.

(d) Defendants deny that they permitted any theft of AutoExpo's cash or fraudulent use of credit. All transactions were legitimate and properly documented. Shahkoohi had no ownership interest or authority at the time.

(e) Defendants deny that any Defendant permitted fraudulent omissions concerning cash collected from repossession companies. Any such issues occurred before Michael Shahkoohi became a shareholder in Q3 2022.

(f) Defendants deny that any Defendant permitted or participated in the misuse of AutoExpo's bid information or that such information was supplied to Certified Performance. Shahkoohi was not an owner or manager during the period in question.

(g) Defendants deny that any Defendant permitted Elyahou to make false representations about his interests in Certified Performance. All ownership interests were disclosed appropriately. Shahkoohi was not an owner of AutoExpo prior to Q3 2022.

(h) Defendants deny that any Defendant permitted Elyahou or Kassim to make false statements about their roles in connection with the 401(k) Plan. All plan administration was

handled through the payroll processor consistent with the plan terms. Shahkoohi had no fiduciary or managerial authority before Q3 2022.

(i) Defendants deny that any Defendant permitted Elyahou to falsify resolutions or amend the 401(k) Plan without authorization. All such actions were properly administered through the payroll system. Shahkoohi was not a shareholder, officer, or manager before the third quarter of 2022 and thus lacked any basis to assert these claims.

469. Defendants deny the allegations contained in paragraph numbered "469" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

470. Defendants deny the allegations contained in paragraph numbered "470" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

471. Defendants deny the allegations contained in paragraph numbered "471" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

472. Defendants deny the allegations contained in paragraph numbered "472" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

473. Defendants deny the allegations contained in paragraph numbered "473" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

474.    Defendants deny the allegations contained in paragraph numbered "474" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

475.    Defendants deny the allegations contained in paragraph numbered "475" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

476.    Defendants deny the allegations contained in paragraph numbered "476" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

477.    Defendants deny the allegations contained in paragraph numbered "477" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

**AS FOR AN ANSWER TO THE NINETEENTH CAUSE OF ACTION**

478.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

479.    Defendants deny the allegations contained in paragraph numbered "479" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

480.    Defendants deny the allegations contained in paragraph numbered "480" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

481.    Defendants deny the allegations contained in paragraph numbered "481" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

482.    Defendants deny the allegations contained in paragraph numbered "482" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

483.    Defendants deny the allegations contained in paragraph numbered "483" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

484.    Defendants deny the allegations contained in paragraph numbered "484" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

485.    Defendants deny the allegations contained in paragraph numbered "485" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

486.    Defendants deny the allegations contained in paragraph numbered "486" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE TWENTIETH CAUSE OF ACTION

487.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

488.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "488" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

489.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "489" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

490.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "490" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

491.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "491" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

492.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "492" of Plaintiffs' Complaint and object to Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

493.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "493" of Plaintiffs' Complaint and object to

Plaintiffs' attempts to selectively edit and interpret the text of the referenced document, which speaks for itself, and respectfully defers all questions of law to the Court and all questions of fact to the trier of fact.

494.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "494" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

495.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "495" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

496.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "496" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

497.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "497" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

498.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "498" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

499.     Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "499" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

500.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "500" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

501.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "401" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

502.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "502" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

503.    Defendants deny the allegations contained in paragraph numbered "503" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

504.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "504" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

505.    Defendants deny the allegations contained in paragraph numbered "505" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

506.    Defendants deny the allegations contained in paragraph numbered "506" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

507.    Defendants deny the allegations contained in paragraph numbered "507" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

## AS FOR AN ANSWER TO THE TWENTY-FIRST CAUSE OF ACTION

508.    Defendants repeat, reiterate and reallege each and every denial hereinabove set forth with the same force and effect as though more fully set forth at length herein

509.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "509" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

510.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "510" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

511.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "511" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

512.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "512" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

513.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "513" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

514.    Defendants deny knowledge and/or information sufficient to form a belief as to the allegations contained in paragraph numbered "514" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

515.    Defendants deny the allegations contained in paragraph numbered "515" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

516.    Defendants deny the allegations contained in paragraph numbered "516" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

517.    Defendants deny the allegations contained in paragraph numbered "517" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

518.    Defendants deny the allegations contained in paragraph numbered "518" of Plaintiffs' Complaint and respectfully defer all questions of law to the Court and all questions of fact to the trier of fact.

**PRAYER FOR RELIEF**

Defendants respectfully deny that Plaintiffs are entitled to any relief in connection with the allegations set forth in its Complaint, including, but not limited to, the allegations set forth in Plaintiffs' Prayer for Relief.

**AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

The Complaint, and each claim purported to be alleged therein, fails to allege facts sufficient to state a claim upon which relief can be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred by the applicable statute of limitations under the applicable federal and state laws.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred in whole or in part by the doctrine of waiver and by the applicable statute of limitations.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred in whole or in part by judicial, equitable, and/or collateral estoppel.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred in whole or in part by Plaintiffs unclean hands.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred in whole or in part by the doctrine of laches.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs lack standing to prosecute the claims purported to be alleged in the complaint.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred to the extent the court lacks subject matter jurisdiction over the stated claims.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

Defendants have at all times acted in good faith and had reasonable grounds for believing that Plaintiffs have been paid all monies owed. Defendants have met and satisfied any and all obligations to the Plaintiffs that arouse out of and during their employment and therefore, this action is barred, in whole or in part by the doctrine of accord and satisfaction.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred in whole or in part as Plaintiff consented to or authorized the challenged conduct.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

The Complaint, and each claim purported to be alleged therein, is barred in whole or in part as Plaintiff ratified the conduct of the defendants.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

Defendants are entitled to offset sums owed by plaintiff

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

Defendants acted in good faith and without wrongful intent.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

The Complaint, and the damages or injury was not caused by defendant's actions.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

The Complaint does not set forth sufficient facts to allow the answering Defendants to determine all potential affirmative defenses. Accordingly, the answering Defendants reserve their right to assert additional affirmative defenses and/or withdraw or modify the defenses stated herein if and when such information is ascertained through discovery.

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Pursuant to Federal Rule of Civil Procedure 13, Defendants and Counterclaim Plaintiffs OMID ELYAHOU, SIMPSOCIAL LLC, UNITED CITIZENS WARRANTY LLC, FIFTY SEVEN CONSULTING CORP. d/b/a CERTIFIED AUTO GROUP a/k/a CERTIFIED PERFORMANCE MOTORS, AVI EITAN, and FAZEEDA KASSIM (collectively, the "Counterclaim Plaintiffs"), by and through their undersigned counsel, assert the following Counterclaims against Plaintiffs and Counterclaim Defendants AUTOEXPO ENT. INC., PEACE PROPERTIES LLC, NETWORK REINSURANCE COMPANY INC., AUTO EXCHANGE CENTER, LLC, CHROME INSURANCE AGENCY LLC, and any additional Plaintiff entities named in the operative Complaint (collectively, the "Counterclaim Defendants").

Additionally, pursuant to Federal Rule of Civil Procedure 14 and 20, Counterclaim Plaintiffs assert Third-Party Claims against MICHAEL SHAHKOOHI, also known as KAMRAN SHAHKOOHI, and RAMIN BARATIAN, also known as ROBERT BARATIAN (collectively, the "Third-Party Defendants").

To the extent certain claims are asserted derivatively, OMID ELYAHOU brings such derivative claims on behalf of AUTOEXPO ENT. INC., PEACE PROPERTIES LLC, NETWORK REINSURANCE COMPANY INC., AUTO EXCHANGE CENTER, LLC, CHROME INSURANCE AGENCY LLC, and PRIME AUTO CAPITAL LLC (collectively, the "Nominal Entities"), and alleges as follows:

### PRELIMINARY STATEMENT

1.      This case does not arise from a longstanding partnership dispute, as Plaintiffs now attempt to portray. It arises from a carefully staged consolidation of control followed by the systematic exclusion of a minority shareholder and the diversion of corporate assets, coupled with a

retroactive effort to rewrite corporate history through the late production of a previously undisclosed "2008 Agreement."

2.      For more than a decade, AutoExpo Ent. Inc. ("AutoExpo") operated as a business wholly owned by Omid Elyahou. During that time, neither Michael Shahkoohi nor Ramin Baratian claimed ownership, reported ownership for tax purposes, received K-1 distributions, exercised shareholder rights, or asserted equity interests in any judicial proceeding. To the contrary, in sworn testimony during Nassau County Supreme Court divorce proceedings involving Elyahou, proceedings in which a forensic accountant conducted a full financial examination of AutoExpo, neither Shahkoohi nor Baratian claimed any ownership interest in AutoExpo. The Court's written decision reflects only that Shahkoohi "*does business with*" AutoExpo and that Baratian's company provided services and invoiced AutoExpo. It does not state, suggest, or imply that either individual owned AutoExpo,

3.      From the date of its inception in or about February 2000 through on or about September 2020—a period spanning more than twenty (20) consecutive years—AutoExpo Ent. Inc. ("AutoExpo") was owned exclusively and entirely by Omid Elyahou. During that entire period: Mr. Elyahou was the sole shareholder reflected on all federal and state corporate tax returns; He was the only individual issued Schedule K-1s; He was the only person listed as shareholder in corporate records; He was the sole signatory on corporate bank accounts; He was the sole applicant and signatory on floor plan agreements, lines of credit, and dealer lending agreements; He executed all corporate resolutions and filings; He was the only individual identified as owner in submissions to lenders and financial institutions; and He was treated as 100% owner in sworn financial disclosures, including in Nassau County Supreme Court matrimonial proceedings involving a full forensic accounting examination of the company.

4.      At no point during those two decades did Michael Shahkoohi or Ramin Baratian report ownership for tax purposes, receive K-1 distributions, execute shareholder documentation, assert voting rights, claim equity in any legal proceeding, or otherwise hold themselves out as owners of AutoExpo.

5.      The uninterrupted documentary record—from corporate tax filings to bank signature cards to judicial findings—confirms that from inception through September 2020, Mr. Elyahou was the sole and exclusive owner of AutoExpo.

6.      The forensic accounting analysis presented in that proceeding concluded that AutoExpo was owned 100% by Elyahou.

7.      There were no K-1s issued to Shahkoohi or Baratian between 2008 and 2020. No corporate tax return identified them as shareholders. No stock ledger reflected equity issuance. No shareholder agreement was implemented. No dividends were issued consistent with shared ownership. For more than twelve years, Plaintiffs conducted themselves as non-equity service providers and business counterparties , not as owners.

8.      In or about September 2020, however, a written restructuring was prepared by counsel, pursuant to which 160 of 200 outstanding shares of AutoExpo were issued to Shahkoohi and 40 shares were retained by Elyahou.

9.      Contemporaneously, Elyahou received a 20% ownership interest in Peace Properties LLC. The September 2020 restructuring did not reference any 2008 agreement. It did not purport to ratify prior equity. It represented the first formal issuance of shares to Shahkoohi.

10.     Thereafter, in January 2022, Elyahou was effectively forced out of operational control. His banking authority was revoked. His access to company books, accounting management software

and financial systems was terminated. Corporate passwords were changed. He was denied access to corporate books and records.

11.     Following the consolidation of control, corporate reserve accounts were liquidated. Investment accounts were closed. Reinsurance funds were withdrawn. Upon information and belief, substantial funds were transferred to affiliated entities controlled by Shahkoohi and Baratian, including East Coast Leasing and Wisdom-related entities. These transfers were undertaken without unanimous shareholder approval.

12.     Only in January 2026, after this litigation was underway and at the amendment stage, did Plaintiffs first produce and rely upon a purported "2008 Agreement" as the foundation for expanded ownership claims. That document had never been disclosed in prior litigation, never invoked in sworn testimony, never reflected in tax filings, and never referenced in the September 2020 restructuring.

13.     This action therefore presents three core issues: First, whether Plaintiffs may retroactively invoke a dormant and undisclosed agreement to rewrite fourteen years of corporate reality. Second, whether majority control obtained in 2020 was subsequently used to divert corporate assets and exclude a minority shareholder in breach of fiduciary duty. And third, whether derivative relief is warranted where the Sole Director and 80% shareholder faces a substantial likelihood of liability and therefore cannot impartially consider a demand to sue himself.

14.     This pleading sets forth detailed facts demonstrating waiver and supersession of the alleged 2008 Agreement, breach of fiduciary duty following the 2020 restructuring, diversion of corporate assets through affiliated entities, and demand futility under Rule 23.1.

15.     Third-Party Defendants breached their fiduciary duties, duties of loyalty, and obligations of good faith and fair dealing, and wrongfully converted company assets and funds for their

personal benefit. Their conduct constitutes violations of federal and state law, and numerous state common law causes of action.

## PARTIES, JURISDICTION, AND VENUE

16.     Elyahou is an individual residing in this District and a 20 % minority shareholder of Auto Expo Ent., Inc. ("Auto Expo"), 20 % minority owner of Peace Properties LLC ("Peace Properties"), 20% minority shareholder of Network Reinsurance Company ("Network Reinsurance"), 20 % minority owner of Auto Exchange Center LLC, 20 % minority owner of Chrome Insurance Agency LLC, and 33.33 % minority owner of Prime Auto Capital LLC.

17.     Michael Shahkoohi an individual residing in this District owning 80 % of Auto Expo, 40% of Peace Properties, 40% shareholder of Network Reinsurance Company ("Network Reinsurance"), 80 % majority owner of Auto Exchange Center LLC ("Auto Exchange"), 80 % majority owner of Chrome Insurance Agency LLC ("Chrome Insurance"), and 33.33 % minority owner of Prime Auto Capital LLC ("Prime Auto") and exercising control over their operations.

18.     Ramin Baratian is an individual residing in this District, owning 40% of Peace Properties, LLC and 40% owner of Network Reinsurance exercising control over their operations.

19.     This Court has subject matter jurisdiction over these counterclaims and claims under 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000. This Court also has subject matter jurisdiction under the doctrine of supplemental jurisdiction and rules of joinder.

20.     This court has personal jurisdiction over counterclaim -defendant and third-party defendant third-party defendants at least because they are residents of this state and this dispute concerns business transacted within New York.

21.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

### I. The Business Structure and Operational Control of Auto Expo

22.    This action is a business divorce arising from the breakdown of a closely held corporate relationship and the misuse of majority control to exclude the minority owner, divert corporate value, and recast corporate history through selective document production and litigation tactics.

23.    Defendant and Counterclaim Plaintiff Omid Elyahou founded Auto Expo Ent., Inc. and incorporated Auto Expo on or about February 2000, and from inception through on or about September 2020, Elyahou operated Auto Expo as its sole owner, officer, and day to day operator.

24.    From 2000 through on or about September 2020, Elyahou was the only individual who held equity ownership in Auto Expo, the only person identified as owner in corporate and financial records, and the only person who received ownership related tax reporting from Auto Expo.

25.    During that period, and consistent with sole ownership, Elyahou was the only individual ever to receive an ownership related Schedule K 1 from Auto Expo, the only authorized signatory on Auto Expo business bank accounts, and the only individual listed as owner or principal on financing documents, floor plan agreements, dealership licensing documentation, and the material contracts and applications made in the ordinary course of Auto Expo's business.

26.    During that same period, Shahkoohi and Baratian had business interactions with Auto Expo, including service and vendor relationships, but they did not hold, assert, or exercise ownership rights in Auto Expo, and they did not receive K 1s, dividends, distributions, or other indicia of equity ownership.

27.    On or about 2008, the parties discussed the concept of a potential partnership arrangement. Those discussions did not result in an operative equity transfer, and no stock transfer, assignment, issuance, or shareholder implementation occurred in or about 2008.

28.     In particular, between 2008 and September 2020, there were no K 1s issued to Shahkoohi or Baratian from Auto Expo, no consistent tax treatment reflecting them as equity holders, no ongoing governance rights exercised by them as shareholders, and no corporate practice reflecting that either held equity interests during that period.

29.     In the context of Elyahou's contested matrimonial proceeding in Nassau County Supreme Court, a neutral forensic accounting firm was appointed to examine assets and business interests, including ownership and valuation of Auto Expo, and to assess the economic interests that would affect equitable distribution.

30.     During that proceeding, Shahkoohi and Baratian testified under oath, and despite the direct financial incentives and the forensic scrutiny present in that litigation, neither claimed that he owned Auto Expo, held equity in Auto Expo, or possessed ownership rights in Auto Expo. Neither asserted ownership of Auto Expo. The court decision references business dealings and service relationships, not equity ownership.

31.     The Nassau County Supreme Court decision that resulted from those proceedings reflects only a business relationship between Shahkoohi and Auto Expo and describes Baratian's relationship to Auto Expo as a service provider relationship. It does not state, find, or conclude that Shahkoohi or Baratian owned Auto Expo, held equity in Auto Expo, or possessed any ownership rights in Auto Expo.

32.     The forensic accounting analysis in the matrimonial proceeding concluded that Auto Expo was owned one hundred percent by Elyahou through the date of that analysis, and that conclusion was consistent with the absence of any ownership claim by Shahkoohi or Baratian during that time period and consistent with corporate and tax indicia reflecting sole ownership.

**II. The 2020 Restructuring and Change in Control**

33.    In or about the third quarter of 2020, after years of operating Auto Expo as sole owner, Elyahou entered into discussions with Shahkoohi concerning a restructuring of ownership and business interests.

34.    Those discussions occurred against the backdrop of Auto Expo's established operations, existing lender relationships, ongoing inventory acquisition practices, and a fully functioning dealership structure built and managed by Elyahou over two decades.

35.    The restructuring was not a confirmation of historic ownership. It was the first documented and implemented change in equity ownership of Auto Expo since its formation.

36.    The restructuring was reduced to writing through documentation prepared by counsel, including corporate instruments reflecting the issuance and allocation of shares.

37.    Pursuant to that restructuring, Shahkoohi acquired eighty percent of the outstanding shares of Auto Expo.

38.    Elyahou retained twenty percent of the outstanding shares.

39.    This was not a retroactive recognition of an ownership interest dating back to 2008. It was a contemporaneous transfer of equity effectuated in 2020.

40.    The restructuring documents did not reference, incorporate, ratify, or rely upon any alleged 2008 agreement as their legal basis.

41.    If an operative 2008 ownership agreement had governed the relationship between the parties, there would have been no need to issue new shares or formalize ownership percentages in 2020.

42.    The 2020 restructuring stands as the first formalized equity allocation in favor of Shahkoohi.

43.     As consideration within the broader restructuring framework, Elyahou acquired a twenty percent ownership interest in Peace Properties LLC, a real estate holding company associated with Shahkoohi and Baratian.

44.     The restructuring therefore involved reciprocal transfers of equity interests between the parties and was structured as a forward-looking business arrangement.

45.     Prior to the execution of the restructuring, Elyahou maintained full operational control over Auto Expo, including control over banking, lender relationships, vendor negotiations, auction participation, employee management, and regulatory compliance.

46.     After execution of the restructuring, majority voting control shifted to Shahkoohi by virtue of his eighty percent ownership position.

47.     Majority ownership conferred upon Shahkoohi the ability to control corporate governance decisions, appoint directors, determine officer positions, and approve corporate actions without minority consent unless otherwise restricted by governing documents.

48.     With majority ownership came fiduciary duties. As majority shareholder and controlling director, Shahkoohi owed duties of loyalty, care, and good faith to Auto Expo and to its minority shareholder.

49.     The restructuring altered the balance of power within the corporation but did not eliminate Elyahou's ownership rights. As a twenty percent shareholder, Elyahou retained the right to receive distributions, inspect books and records, and expect that corporate opportunities would not be diverted to affiliated entities.

50.     The restructuring did not authorize the majority shareholder to appropriate corporate assets, divert inventory opportunities, liquidate reserves without minority disclosure, or exclude the minority shareholder from corporate information.

51.    The restructuring documents did not eliminate fiduciary obligations. To the contrary, the shift from sole ownership to majority minority ownership heightened the need for fiduciary compliance because the minority shareholder became dependent upon the majority for transparency and fairness.

52.    After the restructuring was implemented, operational authority began to shift gradually.

53.    Banking signatory structures were altered.

54.    Access permissions to dealership management systems were revised.

55.    Communications with lenders and vendors increasingly flowed through the majority owner.

56.    Decisions concerning vehicle acquisition, auction participation, and inventory allocation became centralized under Shahkoohi's direction.

57.    By virtue of his ownership interests in other dealerships, Shahkoohi was simultaneously positioned on both sides of potential inter dealership transactions.

58.    This created inherent conflicts of interest that required strict adherence to fiduciary principles, full disclosure, and fairness in related party dealings.

59.    Instead of implementing safeguards to protect minority interests, control mechanisms were tightened.

60.    By January 2022, the shift in control culminated in the effective exclusion of Elyahou from meaningful participation in Auto Expo's management.

61.    His access to corporate banking platforms was revoked.

62.    His administrative permissions to Dealertrack and related operational systems were removed.

63.    His ability to independently monitor MB On Demand bidding activity was restricted.

64.    The restructuring that had been presented as a business partnership evolved into a governance structure in which the majority exercised exclusive authority while limiting minority visibility.

65.    The 2020 restructuring therefore marks the dividing line between sole founder control and majority-controlled governance, and it is the starting point for evaluating whether fiduciary duties were honored or breached.

66.    The events that followed the restructuring, including reserve liquidation, auction manipulation, intercompany transfers, and restriction of access, occurred only after majority control was secured.

67.    The timing is not coincidental. The ability to effectuate those actions depended upon the consolidation of majority ownership.

68.    The restructuring was intended to create a business partnership. Instead, it became the mechanism through which the majority obtained leverage to marginalize the minority and extract value.

69.    The purported reliance on a 2008 agreement first asserted in January 2026 does not alter the operative fact that the first formalized equity transfer occurred in 2020.

70.    The legal and fiduciary consequences of that 2020 transfer frame the entirety of the present dispute.

## III. AUCTION MANIPULATION AND CORPORATE OPPORTUNITY DIVERSION

### A.  Control Over Mercedes Benz On Demand Auction Access

71.    Auto Expo's profitability depends heavily on vehicle acquisition through dealer auction platforms, including Mercedes Benz On Demand, also referred to as MB On Demand.

72.    The MB On Demand platform conducts daily auction simulcasts during which dealers bid on off lease and repossessed vehicles. Margins depend on acquiring high quality vehicles at competitive prices.

73.    Plaintiff's own pleading acknowledges that Shahkoohi attended the live MB On Demand simulcast at 1:00 p.m. Monday through Friday and selected vehicles for Auto Expo prior to bidding.

74.    Control over which vehicles are selected for bidding, the maximum bid authorized, and which entity ultimately purchases the vehicle determines gross margin, resale potential, rebate eligibility, and downstream financing opportunities.

75.    After consolidating majority control, Shahkoohi maintained exclusive access to MB On Demand bidding sessions while simultaneously holding ownership or financial interests in multiple other dealerships.

76.    During the period following the consolidation of control, high demand, lower mileage, high margin vehicles available through MB On Demand were routinely allocated to dealerships in which Shahkoohi had ownership interests, including but not limited to Pristine Mitsubishi, Masterz Automotive Intl, Auto Gallery Imports, and Global Motor Cars.

77.    At the same time, Auto Expo received vehicles with lower margin potential, higher reconditioning costs, or reduced resale desirability.

78.    Elyahou was restricted from independently participating in MB On Demand bidding sessions and was not provided full bidding logs, timestamped bid history, or post auction allocation documentation.

79.    In multiple instances, vehicles initially discussed as intended for Auto Expo were ultimately purchased through affiliated entities and later resold at a premium, depriving Auto Expo of the original profit opportunity.

80.     This conduct constitutes diversion of corporate opportunity. As majority shareholder and controlling director, Shahkoohi owed a duty to present vehicle acquisition opportunities fairly to Auto Expo and not to appropriate those opportunities for affiliated entities.

81.     The diversion of auction inventory was not isolated. It was systemic. It relied on centralized control over bidding access, centralized selection authority, and the ability to shift inventory among affiliated dealerships without minority oversight.

## B. Bid Suppression and Auction Steering

82.     During MB On Demand sessions, Shahkoohi instructed that certain vehicles not be bid upon by Auto Expo while simultaneously acquiring those same vehicles through affiliated dealerships.

83.     In instances where Auto Expo personnel expressed interest in bidding on certain vehicles, they were directed not to participate.

84.     By suppressing competitive bidding from Auto Expo while bidding through affiliated entities, market prices were artificially influenced and the competitive integrity of the auction process was compromised.

85.     Such conduct is particularly troubling given Shahkoohi's prior federal conviction involving bid rigging in auction settings. That conviction is a matter of public record.

86.     The similarity between prior auction misconduct and present auction allocation practices is directly relevant to intent, scienter, and credibility in this matter.

## C. Inter Dealership Transfers and Rebate Manipulation

87.     Vehicles purchased through one entity were transferred to another affiliated dealership to capture manufacturer incentives, lease end rebates, or pricing arbitrage.

88.     These transfers were structured in a manner that allowed affiliated dealerships to capture rebate eligibility while Auto Expo absorbed costs or lost margin opportunities.

89.     Accounting entries associated with these transfers were recorded as routine inventory movements rather than related party opportunity diversion.

90.     As a result, Auto Expo's profitability was suppressed while affiliated dealerships reflected enhanced performance.

## IV. Liquidation of Corporate Reserves and Misappropriation of Corporate Funds

### A.  The TD Ameritrade Reserve Account

91.     For more than six years, Auto Expo maintained a TD Ameritrade investment account that functioned as a corporate reserve and stability fund. The account was funded through retained earnings generated during years of profitable operation under Elyahou's management.

92.     The purpose of this reserve account was not speculative trading or short-term liquidity manipulation. It was established as a long-term capital preservation mechanism designed to provide financial stability in the event of market downturns, lender tightening, floor plan compression, or operational disruptions.

93.     The funds in that account represented accumulated corporate capital. They were not personal funds of any shareholder. They were not earmarked for distribution. They were not designated for affiliate transfers.

94.     Shortly after Elyahou was excluded from operational access in or about January 2022, the TD Ameritrade account was liquidated in rapid succession. Securities that had been held long term were sold within an extremely compressed timeframe.

95.     The liquidation exceeded three hundred thousand dollars in value.

96.     No notice of liquidation was provided to Elyahou in advance.

97.     No shareholder vote was conducted.

98.     No written corporate resolution authorizing liquidation of the reserve account was circulated to the minority shareholder.

99.     The liquidation was not accompanied by documentation reflecting urgent business necessity, lender mandate, or capital emergency.

100.    Immediately following the liquidation, the proceeds were transferred out of the investment structure and into accounts controlled by Shahkoohi and those aligned with him.

101.    The rapid sale of long term positions eliminated appreciation potential and destroyed the reserve structure that had been built over years.

102.    The liquidation was not an act of prudent business judgment. It was an act of control exercised unilaterally by the majority for purposes not disclosed to the minority shareholder.

103.    As a direct result of this conduct, Auto Expo was stripped of a significant corporate asset and deprived of financial stability capital that had been accumulated over years of disciplined management.

**B. Removal of Banking Authority and Consolidation of Exclusive Cash Control**

104.    After consolidating operational authority, Shahkoohi caused Elyahou's banking access to be revoked at JPMorgan Chase Bank, N.A., which maintained Auto Expo's primary operating accounts.

105.    Elyahou's online access credentials were removed.

106.    His authority to initiate or monitor wires, ACH transfers, deposits, and withdrawals was eliminated.

107.    This removal occurred without unanimous shareholder approval and without a corporate vote authorizing such action.

108.    As a result, the majority owner gained exclusive control over all incoming and outgoing

corporate cash flows.

109.    From that point forward, every transfer, withdrawal, wire, and payment from Auto Expo's

operating accounts was executed without minority oversight.

110.    The removal of banking authority was not merely a governance change. It was a structural

step that enabled concealment of subsequent transfers and restricted the minority shareholder's

ability to protect corporate assets.

111.    Elyahou never withdrew funds improperly from Auto Expo's accounts. By contrast, after

exclusive control was obtained, substantial transfers were made out of Auto Expo's accounts for

purposes that have not been fully disclosed.

### C. Employee Retention Credit and Federal Relief Proceeds

112.    On or about December 2019, a novel coronavirus caused outbreaks of the coronavirus

disease COVID-19 that spread globally. On or about January 31,2020, the Secretary of the United

States Department of Health and Human Services declared a national public health emergency

under Title 42, United States Code, Section 247d as a result of the spread of COVID- I 9 to and

within the United States. On or about March 13, 2020, the President of the United States issued

Proclamation 9994 declaring a national emergency beginning on or about March 1,2020, as a result

of the rapid spread of COVID-I9.

113.    The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on

March 27 ,2020, provided for an employee retention credit ("ERC"), a refundable tax credit, which

was designed to encourage businesses to keep employees on their payroll during the COVID-I9

pandemic. The Taxpayer Certainty and Disaster Tax Relief Act of 2020 and the American Rescue

Plan Act ("ARPA") modified and extended the ERC. For calendar year 2020, eligible employers

were authorized to claim an ERC offsetting certain employment taxes that could not exceed 50 percent of up to $ 10,000 of qualified wages paid to each employee from March 13,2020, through December 31,2020. The maximum ERC for 2020 was $5,000 per employee per quarter. For calendar year 2021, eligible employers were authorized to claim an ERC offsetting certain employment taxes that could not exceed 70 percent of up to $10,000 of qualified wages paid to each employee during each quarter. The maximum ERC for 2021was $7,000 per employee per quarter.

114.    Generally, businesses and tax-exempt organizations that qualified for the ERC were those that: (a) were shut down during 2020 or the first three calendar quarters of 2021 by government order due to the COVID-19 pandemic; (b) experienced a specified decline in gross receipts during the eligibility periods during 2020 or the first three calendar quarters of 2021; or (c) qualified as a recovery startup business for the third or fourth quarters of 2021.

115.    A recovery startup business was defined in Title 26,United States Code, Section 313a(c)(5) as an employer (i) that began carrying on any trade or business after February 75,2020, (ii) for which the average annual gross receipts of the employer for the three-taxable year period ending with the taxable year that precedes the calendar quarter for which the credit is determined does not exceed $1,000,000, and (iii) that is not otherwise an eligible employer due to a full or partial suspension of operations or a decline in gross receipts.

116.    The CARES Act also authorized up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through a program referred to as the Paycheck Protection Program ("PPP"). [n or around April2020, Congress authorized over $300 billion in additional PPP funding.

117.    To obtain a PPP loan, a qualifying business was required to submit a "PPP Loan Application," which included an SBA Form 2483 - Borrower Application Form – and supporting documentation. On the PPP Loan Application, an authorized representative of the applying business was required to acknowledge the program rules and make certain affirmative certifications to establish eligibility for the PPP loan. For example, on SBA Form 2483, the recipient business, through an authorized representative, was required to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP.

118.    The required supporting documentation for the SBA Form 2483 in the PPP Loan Application frequently included, when the applicant was a sole proprietorship, the most recent Schedule C, Profit or Loss from Business, filed by the owner of the business attached to their Individual Income Tax Return.

119.    The representative of the business who submitted the PPP Loan Application was required to certify, on SBA Form 2483, that they understood that, should the PPP funds be knowingly used for unauthorized purposes, the United States could pursue legal remedies against the authorized representative, including charges of fraud.

120.    Recipient businesses were required to use PPP loan proceeds for certain permissible expenses, including, but not limited to, payroll costs, interest on mortgages, rent, and utilities. The PPP provided that the principal and interest on a PPP loan would be entirely forgiven if the recipient business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain percentage for payroll costs.

121.    The SBA administered PPP loans. Individual PPP loans, however, were issued and approved by private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

122.    Against the explicit written advice of Sion Goltche, CPA, the Third-Party Defendants, Shahkoohi and Baratian, knowingly and intentionally pursued and obtained Employee Retention Credit ("ERC") funds on behalf of Auto Expo, despite being cautioned in writing that the Company did not qualify and that such an application could expose the business to regulatory and financial risk. Following receipt of the ERC funds, Shahkoohi and Baratian immediately withdrew the proceeds from Auto Expo's corporate accounts and transferred them into personal or affiliated business accounts under their direct control. These funds were not reinvested in Auto Expo or used for any legitimate business purpose, but were instead diverted for their personal gain, in clear violation of federal loan-use restrictions and fiduciary duties owed to both the Company and Elyahou, its minority shareholder.

123.    This deliberate misuse of federal relief funds, undertaken in defiance of professional accounting advice and without corporate authorization, constitutes financial misconduct, misappropriation of assets, and potential tax fraud, and further underscores the reckless and self-serving pattern of conduct by Shahkoohi and Baratian following their assumption of control in 2022.

124.    These funds were obtained under false pretenses, including false certifications of business need and misrepresentations regarding eligible use of proceeds.

125.    Shahkoohi and Baratian pressured others to create and record false and unsupported journal entries for the purpose of artificially inflating the company's financial statements and misleading lenders, regulators, and potential investors as to the true financial

condition of Auto Expo Ent., Inc. and related entities. These fabricated entries were made without legitimate business justification or documentation, constituting deliberate manipulation of corporate records ("cooking the books") designed to obtain financing and personal gain at the expense of the company and its minority shareholder.

126.    After receipt of ERC proceeds, the funds were not preserved within segregated corporate accounts for payroll stabilization or qualifying expenses.

127.    Instead, the proceeds were withdrawn from Auto Expo's accounts and transferred.

128.    No minority shareholder approval was obtained prior to pursuing the credit.

129.    No minority shareholder approval was obtained prior to transferring the proceeds.

130.    The redirection of federal relief funds created regulatory exposure for Auto Expo and potential civil liability for improper certification or use.

131.    The minority shareholder had no participation in the application process, certification process, or disbursement of funds.

132.    The use of corporate accounts to receive relief funds and the subsequent transfer of those funds without full transparency constitute a breach of fiduciary duty and expose the corporation to risk for the personal benefit of those exercising control.

**V. Network Reinsurance Diversion and Depletion of Warranty Reserves**

133.    Network Reinsurance Company Inc. maintained reserve funds associated with warranty and reinsurance programs connected to dealership operations.

134.    These funds were corporate assets, not personal funds of any individual.

135.    After majority control was consolidated, substantial funds were removed from Network Reinsurance accounts.

136.    Approximately one point five million dollars in reserves were depleted.

137.    No minority shareholder vote was conducted authorizing the removal of those funds.

138.    No detailed accounting was provided explaining the purpose, timing, and destination of the transfers.

139.    In addition, Network Reinsurance had invested approximately nine hundred ninety seven thousand dollars into Wisdom Credit Corp., structured as a ten percent loan investment.

140.    That investment was liquidated.

141.    The proceeds were redirected to accounts under the control of Shahkoohi and affiliated entities.

142.    The liquidation deprived Network Reinsurance of anticipated interest income and impaired its capital position.

143.    The removal of warranty reserves and liquidation of structured investments constituted a direct appropriation of corporate assets.

144.    The diversion of those funds benefitted entities controlled by the same individuals who authorized the transfers.

145.    Such conduct constitutes conversion, corporate waste, and breach of fiduciary duty.

**VI. Affiliated Entity Siphoning Structure, Commingling, and Diversion of Corporate Funds**

146.    After consolidating majority control over Auto Expo and related entities, Shahkoohi and Baratian exercised authority not only over the dealership itself but over a broad network of corporate entities under their direct or indirect ownership and control.

147.    That network included automobile dealerships, real estate holding companies, property management entities, lending vehicles, and investment entities that operated across overlapping financial accounts and shared management structures.

148.    Upon information and belief, after Elyahou was excluded from operational access and banking authority, corporate funds began to flow from Auto Expo and related entities into accounts maintained by entities within this affiliated network.

149.    These transfers were not the product of arm's length negotiations. They were authorized by the same individuals who controlled both the transferor and the transferee.

150.    The transfers were frequently characterized as management fees, consulting payments, loan repayments, inventory adjustments, intercompany reimbursements, real estate expenses, capital contributions, or investment allocations.

151.    However, the documentation supporting these transfers was incomplete, inconsistent, or not disclosed to the minority shareholder.

152.    The absence of independent approval, independent review, or minority consent rendered these transactions inherently conflicted.

153.    Upon information and belief, Shahkoohi and Baratian used a network of "Affiliated Entities" they controlled to receive diverted corporate funds, to commingle those funds, and to obscure the path of transfers.

154.    For purposes of this pleading, the "Affiliated Entities" include but are not limited to the following:

> Pristine Automotive Group LLC
> Pristine Properties LLC
> East Coast Leasing LTD
> East Coast Properties LLC
> New York Paradise Inc
> BKNY USA LLC
> Wisdom Equities LLC
> 130 Avenue F LLC
> Unique Realty
> B&B Management Group
> 68 Jay Street Suite 420 LLC

Avenue F Bayonne LLC
Green Street Property LLC
243 4th Avenue LLC
832 Monroe Street Condominium
Bayonne Luxury Estates LLC
730-740 Bergen Ave LLC
580 Carroll Street LLC
Wisdom Portfolio
Akar Capital Management, Inc
Wisdom Financial
Venture Automotive Group
Distinction Properties USA LLC
Capital Development USA LLC
Oxy Management LLC
Regal Properties USA LLC
Oxy Ventures LLC
Wisdom Capital USA
Wisdom Finance LLC
Golden Properties USA LLC
MASTERZ AUTOMOTIVE INTL INC.
MASTERZ AUTOMOTIVE INTL II INC.
WISDOM VENTURES LLC

155.    These Affiliated Entities were under common ownership, common control, or common managerial direction by Shahkoohi and Baratian.

156.    Many of these entities shared overlapping officers, overlapping mailing addresses, overlapping banking institutions, overlapping accountants, and overlapping management personnel.

157.    The Affiliated Entities were allegedly used as repositories and conduits for diverted monies that had no legitimate business relationship to Auto Expo or the other Nominal Entities.

158.    Upon information and belief, funds originating from Auto Expo operating accounts, reserve accounts, Network Reinsurance accounts, and other corporate accounts were transferred into one or more of the Affiliated Entities.

159.    Once transferred, the funds were commingled with revenues from other operations, real estate transactions, lending activities, or dealership operations.

160.    The commingling of funds rendered tracing more difficult and diluted the identifiable origin of the corporate assets.

161.    In numerous instances, the transfers lacked corresponding written contracts executed at the time of the transaction.

162.    In other instances, invoices were generated after the fact to create a paper trail for transfers that had already occurred.

163.    Payments were made to entities that had no documented service agreement with Auto Expo.

164.    Payments were made to entities whose stated business purpose bore no reasonable nexus to the operations of an automobile dealership.

165.    Real estate holding entities with no operational relationship to Auto Expo received funds from dealership accounts.

166.    Investment vehicles operating under the "Wisdom" name received funds without contemporaneous board approval or minority shareholder consent.

167.    Dealership affiliated entities such as MASTERZ AUTOMOTIVE INTL INC. and MASTERZ AUTOMOTIVE INTL II INC. received intercompany transfers under circumstances where vehicle allocations and rebate structures overlapped.

168.    These intercompany flows were not structured as transparent joint ventures. They were structured as unilateral transfers executed by the controlling shareholders.

169.    Upon information and belief, the layering of transfers through multiple Affiliated Entities was designed to create transactional opacity.

170.    Funds were transferred from Auto Expo to one affiliated entity, then moved again to a second entity, and sometimes redirected to real estate holding companies or private lending vehicles.

171.    Each layer of transfer added complexity and reduced immediate traceability.

172.    The practical effect of this structure was to frustrate detection, tracing, and recovery of diverted corporate assets.

173.    The Affiliated Entities did not provide fair value in exchange for many of the transfers.

174.    In numerous instances, no tangible service, inventory, or asset was provided in exchange for the funds moved.

175.    The transfers therefore operated as disguised distributions or extraction of corporate capital for the benefit of the controlling individuals.

176.    The corporate books and general ledgers were structured in a manner that aggregated categories of payments rather than itemizing related party transfers in a transparent fashion.

177.    Access to detailed bank statements, wire confirmations, and internal accounting workpapers was denied to the minority shareholder.

178.    Without full production of those materials, the precise quantum of diverted funds cannot yet be calculated.

179.    However, the pattern of transfers, the structure of affiliated entities, and the timing of transactions following consolidation of control establish a systematic mechanism for siphoning corporate funds.

180.    The Affiliated Entities served no legitimate corporate governance purpose for Auto Expo. They were not passive investment vehicles receiving documented capital contributions approved by shareholders.

181.    Instead, they functioned as extensions of the controlling individuals' personal and commercial empire.

182.    The use of this network of entities allowed corporate funds to be extracted from Auto Expo while avoiding direct distribution characterization.

183.    By diverting funds into real estate entities, lending vehicles, and separate dealerships, the controlling individuals were able to build parallel asset bases funded, in whole or in part, by Auto Expo's earnings and reserves.

184.    The minority shareholder received no proportionate benefit from these transfers.

185.    The minority shareholder was denied visibility into the accounts of the Affiliated Entities.

186.    The minority shareholder was denied access to intercompany agreements, loan documents, or capitalization records reflecting the basis for transfers.

187.    The diversion and commingling of funds across this network constitutes breach of fiduciary duty, corporate waste, unjust enrichment, and grounds for the imposition of a constructive trust.

188.    The transfers were designed not merely to enrich the controlling individuals, but to embed the funds within layers of affiliated entities in order to frustrate detection, tracing, and recovery.

189.    The pattern of conduct reflects deliberate structuring rather than inadvertent bookkeeping.

190.    The absence of transparency, the refusal to provide full records, and the complexity of the affiliated entity web further demonstrate that an equitable accounting is necessary.

191.    Without judicial intervention, the minority shareholder has no practical means to reconstruct the flow of funds across the affiliated network.

192.    The equitable powers of the Court are therefore required to compel disclosure, unwind improper transfers, and impose appropriate remedies including surcharge, constructive trust, disgorgement, and accounting.

## VII. Systematic Concealment of Books and Records and Denial of Shareholder Transparency

193. After consolidating majority control and removing Elyahou from operational authority, Shahkoohi and Baratian implemented a systematic restriction of access to Auto Expo's financial, operational, and transactional records.

194. Auto Expo's dealership operations are managed through integrated digital platforms, including Dealertrack dealership management systems, auction participation platforms including Mercedes Benz On Demand, online banking portals, accounting software, and floor plan lender interfaces.

195. These systems contain the complete transactional history of vehicle acquisitions, vehicle dispositions, wholesale transfers, intercompany transfers, customer financing records, floor plan drawdowns, payoff histories, rebates, chargebacks, commissions, vendor payments, and internal accounting entries.

196. Control over these systems is equivalent to control over the financial memory of the dealership.

197. Following the shift in control, Elyahou's administrative credentials to Dealertrack and associated dealership management systems were revoked.

198. His login credentials were disabled.

199. His authority to generate transaction reports, review deal jackets, examine inventory aging, review auction participation history, or analyze intercompany transfers was eliminated.

200. Simultaneously, Elyahou's access to Auto Expo's online banking platforms was revoked, including access to JPMorgan Chase accounts and any related treasury management portals.

201. The revocation of access was not accompanied by a shareholder vote or written explanation grounded in corporate governance documents.

202.    Instead, access was removed unilaterally by the majority.

203.    Without access to banking platforms, Elyahou could no longer monitor daily inflows and outflows of corporate funds.

204.    Without access to Dealertrack and accounting systems, he could no longer verify vehicle acquisition costs, wholesale transfers, rebates, internal adjustments, or journal entries.

205.    Requests for copies of financial statements, general ledgers, bank reconciliations, reserve account statements, and affiliated entity transfer documentation were made.

206.    Those requests were denied, delayed, or met with incomplete disclosures.

207.    Complete monthly financial statements were not provided.

208.    Detailed bank statements reflecting wire recipients, memo descriptions, and counterparty information were not produced.

209.    Intercompany loan agreements and management fee agreements were not provided in full.

210.    MB On Demand bidding logs reflecting timestamped bids, bidder identification, vehicle VINs, and final allocation were not produced.

211.    The denial of access was not administrative oversight. It was deliberate.

212.    The individuals exercising exclusive control over the books simultaneously accused Elyahou of financial misconduct, yet refused to produce the underlying transactional data that would permit verification.

213.    This asymmetry is significant. The party controlling the records accuses the minority shareholder of wrongdoing while withholding the documents necessary to evaluate those accusations.

214.    The pattern of conduct demonstrates not only exclusion, but concealment.

215.    Corporate governance in closely held entities requires heightened transparency when majority and minority interests diverge.

216.    Once Elyahou became a minority shareholder dependent upon the majority for access to information, the majority assumed an enhanced duty of disclosure and candor.

217.    Instead of honoring that duty, access was curtailed.

218.    Financial information that had historically been accessible to Elyahou during his tenure as operator was reclassified as restricted.

219.    Access to real time financial dashboards was removed.

220.    Access to deal level data was eliminated.

221.    Access to reserve account performance was revoked.

222.    Access to related entity transfer documentation was blocked.

223.    This concealment coincided with the liquidation of reserve accounts, the redirection of reinsurance funds, and the flow of money into affiliated entities.

224.    The timing of the access restriction is not incidental.

225.    Restricting access prior to or contemporaneously with large transfers reduces the likelihood of immediate detection.

226.    Concealment of books and records is itself evidence of consciousness of wrongdoing.

227.    If the transfers and related party transactions were legitimate, transparent, and authorized, full disclosure would not threaten the controlling individuals. Instead, disclosure was resisted.

228.    The minority shareholder has no independent mechanism to reconstruct the full path of funds without compelled production.

229.    The affiliated entity network described in Section VI compounds the concealment problem, because funds that leave Auto Expo accounts are then moved through multiple entities beyond the minority shareholder's visibility.

230.    The refusal to provide complete financial documentation prevents reconciliation of Auto Expo's general ledger with actual bank activity.

231.    It prevents reconciliation of intercompany receivables and payables.

232.    It prevents identification of whether purported management fees correspond to documented services.

233.    It prevents verification of whether vehicle transfers were priced at fair market value.

234.    It prevents verification of whether rebate programs were properly allocated.

235.    It prevents verification of whether federal relief funds were segregated and properly used.

236.    It prevents verification of whether reserve liquidations were approved and properly accounted for.

237.    The cumulative effect is to deprive the minority shareholder of the ability to protect his equity interest.

238.    The concealment has also impaired the ability to quantify damages precisely without discovery.

239.    The controlling individuals are uniquely positioned to produce full accounting records.

240.    Their refusal to do so necessitates equitable relief.

241.    An accounting is required because the transactions at issue are complex, interrelated, and involve multiple affiliated entities under common control.

242.    The diversion of funds through layered affiliated entities makes ordinary damages calculations inadequate without forensic reconstruction.

243.    A constructive trust is warranted because identifiable funds originating from Auto Expo and related entities were transferred into affiliated entities under the control of the same individuals who authorized the transfers.

244.    The pattern of concealment supports an inference that the transfers were not undertaken in good faith.

245.    The restriction of access further supports demand futility under Rule 23.1 because the board and controlling shareholder, who are alleged to have engaged in the misconduct, cannot impartially evaluate a demand to investigate themselves.

246.    The denial of books and records is ongoing.

247.    Until full disclosure is compelled, the minority shareholder remains deprived of transparency concerning his twenty percent ownership interest.

248.    The concealment of financial records, layered affiliated entity transfers, and exclusive control over banking platforms together form a unified scheme of exclusion and extraction.

249.    Judicial intervention is necessary to restore transparency, unwind improper transfers, and protect the integrity of the corporate structure.

**B. Network Reinsurance Co., Inc.**

250.    Shahkoohi and Baratian diverted approximately $1.5 million from Network Reinsurance accounts to personal use.

251.    Shahkoohi and Baratian emptied warranty reinsurance funds managed by DOWC against management advice.

252.    As of December 31, 2021, Network Reinsurance had invested $997,000 into Wisdom Credit Corp., owned by Shahkoohi, structured as a 10 % loan.

253.    Shahkoohi liquidated those securities in a "fire sale" and diverted proceeds into his own or affiliated accounts.

254.    This deprived Network Reinsurance and Elyahou of principal and interest, constituting conversion, breach of fiduciary duty, and unjust enrichment.

## C. Peace Properties LLC

255.    Elyahou holds a 20 % ownership interest in Peace Properties.

256.    Shahkoohi diverted Peace Properties' funds and commingled assets, depriving Elyahou of fair distributions.

## D. Other Misconduct

257.    Upon information and belief Shahkoohi and Baratian withdrew large sums of cash internationally, including trips to Israel, creating exposure to tax-evasion liability.

258.    Upon information and belief, Shahkoohi and Baratian have used a network of affiliated entities operating under the "Wisdom" name—including Wisdom Financial Corp. and similarly titled affiliates—to funnel, disguise, and re-deploy corporate and federally derived funds for the purpose of misleading financial institutions and obtaining additional credit lines and capital infusions. Based on statements made by Shahkoohi and Baratian and corroborating information from former employees and industry contacts, "Wisdom" functions as a high-interest private-lending vehicle, marketing itself as a "business-to-business" or "under-served consumer" lender so as to avoid mortgage-lender licensing and disclosure requirements. Loans are routinely extended to under-privileged or minority borrowers at interest rates between twelve and eighteen percent (12–18%), plus origination fees or "points" of four to six percent (4–6%), effectively constituting predatory or "shark"-style lending practices. These funds are believed to have originated, in substantial part, from federal relief proceeds (PPP, ERC, EIDL) and from Auto Expo Ent., Inc. ("Auto Expo") operating accounts—money that should have remained within legitimate business operations. By diverting and commingling those funds into the Wisdom network and then representing the proceeds as independent loan revenue, Shahkoohi and Baratian created the false appearance of profitability and asset strength to financial institutions and

regulators. This conduct not only constitutes fraudulent misrepresentation and potential violations of federal lending and consumer-protection laws, but also exposes Auto Expo and minority shareholder Omid Elyahou ("Elyahou") to collateral liability. Because Shahkoohi and Baratian control overlapping entities and routinely use Auto Expo resources to facilitate or guarantee Wisdom-related transactions, Elyahou and Auto Expo risk being drawn into investigations or proceedings for activities in which they played no role. The misuse of Auto Expo's name, credit, and financial accounts as part of this lending-and-laundering scheme has caused irreparable reputational damage and potential criminal exposure to Elyahou, despite his lack of participation, control, or benefit.

259.    Shahkoohi and Baratian concealed books, denied access to records, and falsely claimed sole ownership to freeze Elyahou out.

## COUNTERCLAIM CAUSES OF ACTION

## AS AND FOR FIRST DERIVATIVE CAUSE OF ACTION

### (Breach of Fiduciary Duty Against Shahkoohi and Baratian)
### (On Behalf of Auto Expo Ent., Inc. and Related Nominal Entities)

260.    Defendants and Counter-Plaintiffs repeat and re-allege each and every allegation set forth above as if set forth herein at length.

261.    This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. ("Auto Expo") and, where applicable, related nominal entities whose assets were diverted or depleted as described above.

262.    At all relevant times, Counterclaim Plaintiff Omid Elyahou was a shareholder or member of the Nominal Entity on whose behalf this claim is asserted, including at the time of the transactions complained of and continuously thereafter.

263.    At all relevant times following the 2020 restructuring, Michael Shahkoohi was the majority shareholder of Auto Expo, holding approximately eighty percent of its outstanding shares.

264.    By virtue of that ownership position, and by virtue of his assumption of operational authority and control over corporate banking, accounting systems, auction access, and intercompany transactions, Shahkoohi functioned as the controlling shareholder and de facto managing director of Auto Expo.

265.    As controlling shareholder and managing fiduciary, Shahkoohi owed fiduciary duties of loyalty, care, candor, and good faith to Auto Expo and to its minority shareholder.

266.    Ramin Baratian, through his operational involvement, control over affiliated entities, participation in intercompany transfers, and access to corporate financial infrastructure, knowingly participated in and substantially assisted the fiduciary breaches described herein.

267.    Baratian acted in concert with Shahkoohi, benefitted from the diversion of corporate assets, and exercised influence over transactions affecting Auto Expo and related entities.

268.    The fiduciary duty of loyalty requires that a controlling shareholder refrain from self-dealing, refrain from appropriating corporate opportunities, refrain from diverting corporate assets for personal benefit, and refrain from placing personal interests above those of the corporation.

269.    The challenged transactions were not protected exercises of business judgment. Shahkoohi and Baratian stood on both sides of the transactions, exercised exclusive control over both the transferring and receiving entities, and failed to obtain approval from disinterested directors or members. Accordingly, the business judgment rule does not apply, and the burden rests on the fiduciaries to demonstrate the entire fairness of the transactions.

270.    The fiduciary duty of care requires that a controlling fiduciary act with diligence, prudence, and informed judgment in managing corporate assets.

271.    The duty of candor requires full and fair disclosure to minority shareholders in connection with conflicted transactions and material corporate decisions.

272.    Following the 2020 restructuring, Shahkoohi was vested with majority control. With that control came the obligation to exercise corporate authority in the best interests of Auto Expo, not in the interests of his separate dealership network or affiliated real estate and financial entities.

273.    Instead of honoring those duties, Shahkoohi used majority control to implement a pattern of self-dealing, asset diversion, and concealment.

274.    Because the fiduciaries stood on both sides of the challenged transactions and derived personal benefit, the applicable standard is entire fairness, including fair dealing and fair price.

**A. Diversion of Corporate Opportunities Through Auction Manipulation**

275.    Control over MB On Demand bidding access and vehicle selection constituted control over one of Auto Expo's primary profit centers.

276.    As alleged above, Shahkoohi maintained exclusive authority over participation in MB On Demand auctions while simultaneously holding ownership interests in competing dealerships.

277.    The fiduciary duty of loyalty required that vehicle acquisition opportunities be presented to Auto Expo fairly and without favoritism toward affiliated dealerships.

278.    Instead, higher margin vehicles were allocated to affiliated dealerships, while lower margin vehicles were allocated to Auto Expo.

279.    In multiple instances, vehicles discussed for acquisition by Auto Expo were acquired through affiliated entities and later resold at a profit.

280.    The redirection of inventory opportunities deprived Auto Expo of revenue, gross margin, and goodwill.

281.    This conduct constitutes classic corporate opportunity diversion.

282.    The diversion was not accidental. It required conscious selection of which entity would bid, which entity would acquire, and which entity would benefit.

283.    Such conduct demonstrates knowing and intentional misuse of corporate position for personal gain.

## B. Liquidation of Corporate Reserves for Non-Corporate Benefit

284.    The TD Ameritrade reserve account was a corporate asset accumulated over years of operation.

285.    The rapid liquidation of long-term securities without minority approval and without documented corporate necessity constituted waste of corporate assets.

286.    The proceeds were transferred into accounts controlled by Shahkoohi and affiliated entities.

287.    The liquidation was executed after Elyahou's access had been revoked, preventing contemporaneous objection.

288.    The timing evidences intent to act without scrutiny.

289.    The removal of reserve capital impaired Auto Expo's financial stability and reduced its net worth.

290.    The liquidation was undertaken in bad faith and in breach of the duty of loyalty.

## C. Diversion and Depletion of Network Reinsurance Funds

291.    Network Reinsurance maintained reserve and warranty funds that were corporate assets.

292.    Approximately one million five hundred thousand and 00/100 dollars ($1,500,000.00) in funds were removed following consolidation of control.

293.    An investment structured as a loan to Wisdom Credit Corp. was liquidated and proceeds redirected.

294.    These transfers benefitted entities under the control of the same individuals authorizing the transfers.

295.    The depletion of reinsurance reserves impaired the financial integrity of the entity.

296.    These actions constitute conversion of corporate assets and breach of fiduciary duty.

## D. Affiliated Entity Siphoning and Commingling

297.    The network of Affiliated Entities described above functioned as conduits for diverted funds.

298.    Funds originating from Auto Expo and related entities were transferred into entities under common control.

299.    These transfers were not negotiated at arm's length.

300.    No independent director approved the transactions.

301.    No minority shareholder approval was sought.

302.    The same individuals controlled both the transferor and the transferee.

303.    The layering of transfers through multiple entities evidences intent to obscure the path of funds.

304.    The commingling of diverted funds with unrelated business revenues further evidences bad faith.

305.    Such conduct violates the duty of loyalty and constitutes self-dealing.

## E. Concealment and Scienter

306.    The revocation of access to banking and accounting systems occurred contemporaneously with the initiation of reserve liquidations and affiliated transfers.

307.    Restricting access prior to executing large transfers evidences consciousness of wrongdoing.

308.    Repeated refusal to provide complete books and records further evidences intentional concealment.

309.    The concealment was not passive. It was active. Login credentials were revoked. Requests were denied. Financial documentation was withheld.

310.    Accusations were made against the minority shareholder while the controlling fiduciaries withheld transactional data.

311.    Such conduct demonstrates scienter and bad faith.

312.    The totality of the conduct, auction diversion, reserve liquidation, reinsurance depletion, affiliated entity transfers, and concealment, reflects a unified scheme of extraction rather than isolated business judgment errors.

## F. Substantial Likelihood of Liability

313.    Because Shahkoohi authorized and personally benefitted from the challenged transactions, he faces a substantial likelihood of personal liability for breach of fiduciary duty.

314.    Because Baratian knowingly participated in and benefitted from the diversion and affiliated transfers, he likewise faces substantial likelihood of liability.

315.    The transactions were self-dealing in nature and therefore subject to strict scrutiny rather than business judgment deference.

316.    No independent committee approved the transactions.

317.    No fully informed minority consent was obtained.

318.    The defendants cannot demonstrate entire fairness where they controlled both sides of the transactions and withheld full disclosure.

319.    Accordingly, they face substantial likelihood of liability for damages, disgorgement, surcharge, and equitable relief.

## G. Damages to Auto Expo and Nominal Entities

320.    As a direct and proximate result of the fiduciary breaches described herein, Auto Expo has suffered significant damages.

321.    These damages include but are not limited to lost profits from diverted vehicle opportunities, diminished gross margin from inventory allocation manipulation, loss of capital reserves from liquidation of investment accounts, depletion of reinsurance funds, improper management fees and affiliated transfers, and loss of enterprise value.

322.    The precise amount of damages will be established through forensic accounting and expert testimony.

323.    In addition to compensatory damages, equitable relief is warranted, including constructive trust over diverted funds, disgorgement of improperly obtained profits, surcharge against the controlling fiduciaries, and an order compelling a full accounting.

324.    The damages described herein include direct depletion of corporate assets, lost appreciation on liquidated reserve investments, lost enterprise value resulting from diversion of profitable inventory and rebate opportunities, increased borrowing costs, litigation expenses incurred to correct governance misrepresentations, and disgorgement of profits realized by affiliated entities. These damages are quantifiable through forensic reconstruction and are not speculative.

325.    WHEREFORE, on the First Derivative Cause of Action for Breach of Fiduciary Duty, Defendants and Counter-Plaintiffs, derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities, respectfully demand judgment against Michael Shahkoohi and Ramin Baratian as follows:

    (a) Awarding compensatory damages in an amount to be determined at trial, but believed to exceed the jurisdictional limits of this Court, representing all losses sustained by Auto Expo and the Nominal Entities as a direct and proximate result of the breaches of fiduciary duty

described herein, including but not limited to diverted corporate opportunities, lost profits, diminished enterprise value, depletion of reserve accounts, improper intercompany transfers, and misappropriated reinsurance funds;

(b) Awarding disgorgement of all profits, benefits, compensation, distributions, management fees, rebates, loan repayments, interest, appreciation, and other financial gains received directly or indirectly by Shahkoohi, Baratian, or any Affiliated Entity as a result of the fiduciary breaches alleged herein;

(c) Imposing a constructive trust over all identifiable funds, assets, securities, real property interests, investment accounts, and other property traceable to diverted corporate funds, including but not limited to assets transferred through the Affiliated Entities described in this pleading;

(d) Ordering a full, complete, and forensic accounting of all transactions between Auto Expo, the Nominal Entities, and the Affiliated Entities from the date of the 2020 restructuring to the present, including all bank accounts, investment accounts, loan agreements, intercompany transfers, auction transactions, reserve liquidations, and related party payments;

(e) Surcharging Shahkoohi and Baratian personally for all losses, depletion of corporate capital, and diminution of value caused by their breaches of fiduciary duty;

(f) Awarding restitution to Auto Expo and the Nominal Entities of all corporate funds improperly transferred, commingled, or converted;

(g) Declaring that the challenged transactions were self-dealing and not protected by the business judgment rule;

(h) Awarding pre-judgment and post-judgment interest at the maximum rate permitted by law;

(i) Awarding reasonable attorneys' fees, forensic accounting fees, expert fees, and costs of suit pursuant to the common fund doctrine, substantial benefit doctrine, and applicable statutory and equitable principles;

(j) Granting such other and further legal, equitable, or injunctive relief as the Court deems just and proper to restore corporate assets, unwind improper transactions, and protect the integrity of Auto Expo and the Nominal Entities.

### AS AND FOR THE SECOND DERIVATIVE CAUSE OF ACTION
#### (Corporate Waste)
#### (On Behalf of Auto Expo Ent., Inc. and Related Nominal Entities)

326.    Defendants and Counter-Plaintiffs repeat and re-alleges each and every allegation set forth in above paragraph as if set forth herein at length.

327.    This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities.

328.    At all relevant times, Counterclaim Plaintiff Omid Elyahou was a shareholder or member of the Nominal Entity on whose behalf this claim is asserted, including at the time of the transactions complained of and continuously thereafter.

329.    Corporate waste occurs when those in control of a corporation authorize transactions so one-sided, irrational, or devoid of legitimate corporate purpose that no person of ordinary, sound business judgment could conclude that the corporation received adequate consideration.

330.    Following the 2020 restructuring and consolidation of majority control, Shahkoohi exercised unilateral authority over corporate reserves, intercompany transfers, auction allocations, and affiliated entity transactions.

331.    After removing Elyahou's access to banking and accounting systems, Shahkoohi authorized the liquidation of Auto Expo's long-term TD Ameritrade reserve account in excess of

three hundred thousand dollars without minority approval and without documented corporate necessity.

332.    The transactions described herein were not exercises of business judgment, even if mistaken. They involved the transfer and depletion of corporate reserve assets, long-term investment accounts, and reinsurance funds to entities under common control without documented corporate necessity, without fair market valuation, without independent director approval, and without minority shareholder consent. No rational business person acting in good faith could conclude that Auto Expo or the related Nominal Entities received reasonably equivalent value in exchange for the liquidation of long-term reserves and the redirection of corporate capital into affiliated real estate ventures, lending vehicles, and parallel enterprises controlled by the same fiduciaries. The absence of fair consideration, combined with the self-interested nature of the transactions, renders them so one-sided that they constitute corporate waste under governing law.

333.    The reserve account had been funded through retained earnings and was designed to provide long-term financial stability. Its rapid liquidation eliminated appreciation potential and stripped the Company of capital without any demonstrable benefit to Auto Expo.

334.    The proceeds of that liquidation were transferred out of the reserve structure and into accounts controlled by Shahkoohi and affiliated entities.

335.    No corporate resolution reflecting minority consent or independent review was adopted prior to the liquidation.

336.    Similarly, approximately one point five million dollars was removed from Network Reinsurance reserves following consolidation of control.

337.    Warranty and reinsurance funds that were intended to remain segregated for contractual and risk-management purposes were depleted and redirected.

338.    An investment of approximately nine hundred ninety seven thousand dollars structured as a loan to Wisdom Credit Corp. was liquidated and redirected to entities under common control.

339.    These transactions were not negotiated at arm's length and were not supported by fair market consideration flowing back to Auto Expo or the Nominal Entities.

340.    Payments to Affiliated Entities were characterized as management fees, consulting fees, intercompany adjustments, or reimbursements, yet no independent director reviewed or approved those payments.

341.    The same individuals who authorized the payments controlled the recipient entities.

342.    No reasonable corporate decision maker acting in good faith would liquidate long-term reserves, deplete reinsurance funds, divert inventory opportunities, and transfer capital to affiliated entities without full transparency and fair consideration.

343.    The diversion of high-margin vehicles through MB On Demand allocation practices further suppressed Auto Expo's profitability while enhancing the profitability of affiliated dealerships.

344.    The aggregate effect of these transactions was to diminish Auto Expo's net worth, reduce its capital base, impair its competitive position, and transfer value to affiliated entities controlled by Shahkoohi and Baratian.

345.    These transactions were so one-sided and so devoid of legitimate corporate benefit that they constitute corporate waste.

346.    As a direct result of this waste, Auto Expo and the Nominal Entities have suffered substantial financial harm, including depletion of assets, lost profits, diminished enterprise value, and increased exposure to lender and regulatory risk.

**AS AND FOR THE THIRD DERIVATIVE CAUSE OF ACTION**
**(Constructive Trust)**
**(On Behalf of Auto Expo Ent., Inc. and Related Nominal Entities)**

347.   Defendants and Counter-Plaintiffs repeat and re-alleges each and every allegation set forth in above paragraph as if set forth herein at length.

348.   This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities.

349.   At all relevant times, Counterclaim Plaintiff Omid Elyahou was a shareholder or member of the Nominal Entity on whose behalf this claim is asserted, including at the time of the transactions complained of and continuously thereafter.

350.   The constructive trust relief sought herein is based upon the existence of a fiduciary relationship, wrongful diversion of identifiable corporate funds, unjust enrichment, and the traceability of those funds into substitute property held by affiliated entities.

351.   A constructive trust is warranted where property has been acquired or retained under circumstances in which equity and good conscience require that the holder of legal title not be permitted to retain the beneficial interest.

352.   Following consolidation of majority control, corporate funds belonging to Auto Expo and the Nominal Entities were transferred into accounts controlled by Shahkoohi, Baratian, and the Affiliated Entities.

353.   Those funds included proceeds from the liquidation of the TD Ameritrade reserve account, withdrawals from Network Reinsurance reserves, redirected warranty funds, and payments characterized as intercompany transfers.

354.   The Affiliated Entities functioned as repositories and conduits for diverted monies.

355.   Funds were commingled with revenues from other operations, layered through multiple entities, and embedded into real estate holdings, lending vehicles, and dealership operations.

356.   The diverted funds are traceable through identifiable originating accounts, including the TD Ameritrade reserve account, Network Reinsurance accounts, and designated operating

accounts receiving ERC proceeds, and were transferred into affiliated entities under common control within a discrete time period following consolidation of authority.

357.    The transfers were authorized by individuals who owed fiduciary duties to Auto Expo and who controlled both sides of the transactions.

358.    Equity does not permit a fiduciary to retain profits or assets obtained through breach of duty.

359.    The diverted funds are traceable through banking records, intercompany ledgers, and transaction histories that are presently within the exclusive control of Shahkoohi, Baratian, and the Affiliated Entities.

360.    The retention of those funds by the Affiliated Entities would constitute unjust enrichment and reward disloyal conduct.

361.    Accordingly, a constructive trust should be imposed over all identifiable funds and assets traceable to diverted corporate monies, including but not limited to real property interests, investment accounts, dealership inventory acquired through diverted funds, and any appreciation thereon.

### AS AND FOR THE FOURTH DERIVATIVE CAUSE OF ACTION
### (Fraud and Intentional Misrepresentation)
### (On Behalf of Auto Expo Ent., Inc. and Related Nominal Entities)

362.    Defendants and Counter-Plaintiffs, derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities, repeat and re-allege each and every allegation set forth above as if fully set forth herein.

363.    This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities whose corporate governance, ownership structure, and financial assets were directly affected by the fraudulent conduct described herein.

364.    At all relevant times, Counterclaim Plaintiff Omid Elyahou was a shareholder and member of the Nominal Entities, including at the time of the misrepresentations alleged below and continuously thereafter.

**A. Fraudulent Misrepresentations Concerning the Alleged 2008 Agreement**

365.    On or about January 2026, in connection with the filing of the Second Amended Complaint in this action, Michael Shahkoohi and Ramin Baratian, acting individually and through counsel at their direction, represented in a judicial pleading that a purported 2008 Agreement conferred operative equity ownership rights in Auto Expo and related entities upon them dating back to 2008. That representation was false when made.

366.    The alleged 2008 Agreement was never filed with the Secretary of State, was not reflected in any corporate minutes, was not reflected in shareholder ledgers, and was not reflected in any K-1 tax forms issued between 2008 and September 2020. During that twelve-year period, no K-1 forms were issued to Shahkoohi or Baratian reflecting equity ownership in Auto Expo. No shareholder distributions were made to them as equity holders. No amended operating agreement reflecting shared ownership was executed or recorded. No corporate governance documents identified them as equity members.

367.    In divorce litigation involving Elyahou, both Shahkoohi and Baratian testified under oath without asserting ownership of Auto Expo. The Nassau Supreme Court decision arising from that proceeding described Shahkoohi only as someone who "does business with" Auto Expo and described Baratian as a service provider whose company billed Auto Expo approximately thirty thousand to forty thousand dollars per month. The decision did not state, find, or conclude that either individual owned any equity interest in Auto Expo. In addition, the forensic accounting

report prepared in connection with that divorce proceeding concluded that Auto Expo was one hundred percent owned by Omid Elyahou.

368.    The September 2020 restructuring document, which granted Shahkoohi approximately eighty percent ownership and provided Elyahou with a twenty percent interest in Peace Properties, did not reference the alleged 2008 Agreement as its legal basis. If equity ownership had existed since 2008, no such restructuring would have been necessary to confer majority control in 2020.

369.    Accordingly, when Plaintiffs represented in January 2026 that ownership rights existed since 2008 pursuant to the purported agreement, that representation was knowingly false or made with reckless disregard for the truth. The timing of the invocation of the alleged 2008 Agreement, which was not produced or relied upon during earlier phases of litigation and was first asserted as a basis for expanded ownership claims in connection with the Second Amended Complaint, further evidences fraudulent intent.

**B. Fraudulent Concealment and Misrepresentations Concerning Corporate Funds**

370.    Following the September 2020 consolidation of majority control, Shahkoohi and Baratian obtained exclusive signatory authority and administrative control over corporate banking, accounting, and investment systems. Thereafter, they represented to Elyahou that corporate funds were being utilized for legitimate business purposes consistent with the interests of Auto Expo and the related Nominal Entities.

371.    Those representations were materially false. Shortly after consolidation of control, the TD Ameritrade investment account containing in excess of three hundred thousand dollars in retained earnings was liquidated in rapid succession. Approximately one point five million dollars was removed from Network Reinsurance reserve accounts. Employee Retention Credit proceeds were deposited into identifiable corporate accounts following federal filings and were subsequently

withdrawn. An investment structured as a loan to Wisdom Credit Corp. in the approximate amount of nine hundred ninety-seven thousand dollars was liquidated and redirected.

372.     These transactions were not supported by arm's length agreements approved by independent governance, were not accompanied by documented corporate necessity, and did not result in reasonably equivalent value flowing back to Auto Expo. Instead, funds were transferred to entities owned or controlled directly or indirectly by Shahkoohi and Baratian.

373.     The falsity of the representations concerning legitimate corporate use of funds is demonstrated by the absence of fair consideration to the corporation, the absence of minority approval, the absence of independent director review, and the layering and commingling of funds through affiliated entities under common control.

## C. Scienter and Intent

374.     The fraudulent intent of Shahkoohi and Baratian is not speculative. It is supported by specific, concrete facts that give rise to a strong inference of conscious misbehavior and intentional deception that is at least as compelling as any competing innocent explanation.

375.     First, both individuals possessed actual knowledge of facts directly contradicting the representations concerning ownership under the alleged 2008 Agreement. For more than a decade following 2008, no K-1 tax forms were issued to them reflecting equity ownership. No shareholder distributions were made to them as equity holders. No corporate minutes, governance records, or filings identified them as members or shareholders. They were personally aware of these omissions because they participated in the financial and operational aspects of the business during that period.

Their knowledge of the absence of ownership documentation renders any later representation of continuous equity ownership knowingly false.

376.    Second, both individuals testified under oath in separate judicial proceedings during Elyahou's divorce litigation. At no time during that testimony did either assert ownership of Auto Expo. The Nassau Supreme Court decision memorialized their roles as business participants and service providers, not equity holders. The forensic accounting report prepared in that proceeding concluded that Auto Expo was one hundred percent owned by Elyahou. Shahkoohi and Baratian were aware of that conclusion and did not challenge it. Their later assertion of retroactive ownership rights is irreconcilable with their prior sworn silence and gives rise to a compelling inference of intentional misrepresentation.

377.    Third, the September 2020 restructuring itself contradicts the claim of preexisting ownership. If majority ownership had existed since 2008, there would have been no need to execute a formal restructuring granting Shahkoohi approximately eighty percent ownership at that time. The absence of any reference to the alleged 2008 Agreement in the 2020 restructuring document demonstrates that the restructuring was the operative transfer of control. The later attempt to recast the 2008 document as the true source of ownership is inconsistent with contemporaneous documentation and supports an inference of post hoc fabrication or strategic mischaracterization.

378.    Fourth, the timing of the invocation of the alleged 2008 Agreement is highly probative of intent. The document was not produced during earlier phases of litigation and was not relied upon in prior disputes or proceedings. It was first invoked as a basis for expanded ownership claims in connection with the filing of the Second Amended Complaint in January 2026, after litigation escalated and amendment deadlines approached. The strategic timing supports an inference that

the document was deployed to gain litigation leverage rather than to reflect longstanding ownership reality.

379.    Fifth, with respect to the financial misrepresentations and concealment, scienter is further supported by the rapid sequence of events following consolidation of majority control. Shortly after obtaining exclusive control over corporate accounts, Shahkoohi authorized liquidation of the TD Ameritrade reserve account, depletion of reinsurance reserves, withdrawal of Employee Retention Credit proceeds, and redirection of a substantial loan investment. These actions occurred within a compressed timeframe after Elyahou was removed from banking access and oversight. The proximity between consolidation of control and liquidation of long-term reserve assets supports an inference of deliberate asset repositioning rather than ordinary business management.

380.    Sixth, both individuals controlled both sides of the challenged transactions. They exercised signatory authority over the transferring entities and simultaneously controlled the recipient Affiliated Entities. That dual control structure eliminated independent review and created an environment in which misrepresentations could be made without detection. The existence of self-dealing transactions, combined with concealment of records and denial of access, reinforces the inference that the misrepresentations were intentional.

381.    Seventh, the concealment of books and records and the restriction of minority access to financial systems following the restructuring further support scienter. When fiduciaries restrict access to contemporaneous records while engaging in related-party transfers, courts routinely recognize such conduct as circumstantial evidence of consciousness of wrongdoing.

382.    When viewed collectively, these facts establish a strong inference of fraudulent intent that is cogent and compelling. The competing innocent explanation—that Shahkoohi and Baratian mistakenly believed they possessed continuous ownership rights dating back to 2008 despite the

absence of tax filings, governance documents, sworn testimony, or restructuring references reflecting such ownership—is far less plausible than the inference of intentional misrepresentation and strategic concealment.

383. Accordingly, the allegations set forth herein satisfy the heightened pleading standard of Rule 9(b) and the strong inference requirement articulated by the Second Circuit.

**D. Reliance and Damages**

384. Auto Expo and the related Nominal Entities relied upon the integrity of their fiduciaries' representations in permitting continued control over financial systems and governance.

385. As a direct and proximate result of the fraudulent misrepresentations and concealment described herein, corporate assets were depleted, reserve funds were liquidated, reinsurance protections were compromised, corporate governance rights were distorted, and the enterprise value of Auto Expo was diminished.

386. The precise damages exceed several million dollars and will be established at trial through forensic reconstruction of diverted assets, lost appreciation, and diminished corporate value.

### AS AND FOR THE FIFTH  DERIVATIVE CAUSE OF ACTION
### (Aiding and Abetting Breach of Fiduciary Duty)
### (On Behalf of Auto Expo Ent., Inc. and Related Nominal Entities)

387. Defendants and Counter-Plaintiffs repeat and re-alleges each and every allegation set forth in above paragraph as if set forth herein at length.

388. This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities.

389. At all relevant times, Counterclaim Plaintiff Omid Elyahou was a shareholder or member of the Nominal Entity on whose behalf this claim is asserted, including at the time of the transactions complained of and continuously thereafter.

390.    As alleged above, Shahkoohi owed fiduciary duties of loyalty, care, and good faith to Auto Expo and its minority shareholder.

391.    Those fiduciary duties were breached through diversion of corporate opportunities, liquidation of reserves, depletion of reinsurance funds, related party transfers, and concealment of books and records.

392.    Baratian had actual knowledge of the fiduciary duties owed by Shahkoohi and of the transactions described herein.

393.    Baratian participated directly in the execution of intercompany transfers and in the operation of Affiliated Entities that received diverted funds.

394.    Baratian knowingly provided substantial assistance in effectuating the transfers, commingling funds, structuring layered transactions, and restricting access to corporate records.

395.    The Affiliated Entities likewise knowingly received diverted funds and participated in the layering and commingling of those funds.

396.    The assistance provided was not incidental. It was essential to the completion and concealment of the breaches.

397.    Without the participation of Baratian and the Affiliated Entities, the diversion and concealment of corporate assets could not have been accomplished.

398.    As a result of such aiding and abetting, Auto Expo and the Nominal Entities suffered the damages described herein.

## SIXTH DERIVATIVE CAUSE OF ACTION
### (Unjust Enrichment)
### (On Behalf of Auto Expo Ent., Inc. and Related Nominal Entities)

399.    Defendants and Counter-Plaintiffs repeat and re-alleges each and every allegation set forth in above paragraph as if set forth herein at length.

400.    This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities.

401.    At all relevant times, Counterclaim Plaintiff Omid Elyahou was a shareholder or member of the Nominal Entity on whose behalf this claim is asserted, including at the time of the transactions complained of and continuously thereafter.

402.    Shahkoohi, Baratian, and the Affiliated Entities received benefits in the form of diverted corporate funds, enhanced profitability through redirected inventory, liquidation proceeds from reserve accounts, reinsurance withdrawals, and management and intercompany payments.

403.    Those benefits were obtained at the direct expense of Auto Expo and the Nominal Entities.

404.    The benefits were not conferred pursuant to arm's length agreements approved by independent governance.

405.    The benefits were obtained through the exercise of majority control and the exclusion of the minority shareholder.

406.    The retention of such benefits without restitution would be inequitable.

407.    Equity and good conscience require disgorgement of all improperly obtained profits and restoration of diverted corporate funds.

408.    As a direct and proximate result of the unjust enrichment of Shahkoohi, Baratian, and the Affiliated Entities, Auto Expo and the Nominal Entities have suffered substantial financial harm.

**SEVENTH  DERIVATIVE CAUSE OF ACTION**
**(Breach of Fiduciary Duty, Self-Dealing and Misappropriation of Corporate Assets)**
**(On Behalf of Auto Expo Ent., Inc. and Related Nominal Entities)**

409.    Defendants and Counter-Plaintiffs repeat and re-alleges each and every allegation set forth in above paragraph as if set forth herein at length.

410.    This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities whose books, records, and financial accounts are presently under the exclusive possession and control of the fiduciaries accused of misconduct.

411.    At all relevant times, Counterclaim Plaintiff Omid Elyahou was a shareholder or member of the Nominal Entity on whose behalf this claim is asserted, including at the time of the transactions complained of and continuously thereafter.

412.    At all relevant times following the 2020 restructuring and transfer of majority ownership, Michael Shahkoohi owed fiduciary duties of loyalty, care, candor, and good faith to Auto Expo and its minority shareholder.

413.    By virtue of his eighty percent ownership interest and assumption of operational authority, Shahkoohi exercised complete dominion and control over Auto Expo's financial infrastructure, including but not limited to operating bank accounts, reserve accounts, brokerage accounts, dealership management systems, auction access platforms, and accounting software.

414.    Ramin Baratian knowingly participated in and benefitted from the transactions described herein and exercised influence and control over affiliated entities that received corporate funds.

415.    The fiduciary relationship between the controlling individuals and the corporation creates a heightened obligation of transparency and full disclosure.

416.    Following the removal of Elyahou from operational authority in or about January 2022, Shahkoohi caused Elyahou's banking credentials to be revoked and his access to Auto Expo's online banking systems to be terminated.

417.    Elyahou's administrative access to Dealertrack and related dealership management systems was disabled.

418.    Access to MB On Demand bidding logs, auction participation records, and vehicle allocation histories was restricted.

419.    Access to general ledgers, company accounting software, entries, journal entries, and bank reconciliation reports was denied.

420.    The removal of access occurred contemporaneously with the liquidation of the TD Ameritrade reserve account, the withdrawal of Network Reinsurance funds, and the transfer of monies to Affiliated Entities.

421.    The transactions at issue are numerous, interrelated, and complex.

422.    They involve multiple entities under common ownership, including Auto Expo, Network Reinsurance Company Inc., Peace Properties LLC, and the extensive network of Affiliated Entities described above.

423.    The financial movements include reserve liquidations exceeding three hundred thousand dollars, reinsurance withdrawals approximating one point five million dollars, liquidation of an investment structured as a loan of approximately nine hundred ninety-seven thousand dollars, and numerous intercompany transfers and management fee payments.

424.    Funds transferred from Auto Expo were layered through affiliated entities, commingled with unrelated revenues, and embedded into real estate holdings, dealership inventory, lending vehicles, and investment structures.

425.    The layered nature of these transfers makes it impossible to determine the precise scope of diversion without a comprehensive forensic reconstruction.

426.    The controlling individuals possess exclusive access to the banking records, brokerage statements, wire confirmations, internal accounting workpapers, and affiliated entity financial statements necessary to reconstruct the flow of funds.

427.    The minority shareholder has no independent means to obtain these materials absent judicial intervention. The refusal to provide complete financial documentation prevents determination of:

(a) The total amount of corporate funds diverted;
(b) The destination and current location of transferred funds;
(c) The profits realized from diverted MB On Demand vehicle opportunities;
(d) The consideration, if any, provided in exchange for affiliated entity transfers;
(e) The extent of commingling across affiliated accounts;
(f) The diminution in enterprise value caused by depletion of reserves and redirection of inventory.

428.    The existence of a fiduciary relationship, combined with exclusive control over the books and records by the alleged wrongdoers, gives rise to a right to an equitable accounting.

429.    This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities. The relief sought is entity-level relief designed to restore corporate assets and determine the financial consequences of fiduciary misconduct.

430.    An equitable accounting is warranted where a fiduciary exercises exclusive control over corporate books and records and where the transactions at issue involve self-dealing, related-party transfers, and layered intercompany movements of funds.

431.    Following the September 2020 restructuring and the January 2022 removal of minority access, Shahkoohi obtained exclusive dominion over Auto Expo's banking platforms, brokerage accounts, auction systems including MB On Demand, Dealertrack dealership management software, general ledgers, and affiliated entity financial records.

432.    The challenged transactions include, but are not limited to:

(a) Liquidation of the TD Ameritrade reserve account;
(b) Withdrawal and redirection of Network Reinsurance reserve funds;
(c) Liquidation of the investment structured as a loan;
(d) Transfers from Auto Expo operating accounts to Affiliated Entities;
(e) Auction allocation and inventory transfers through MB On Demand and related platforms.

433.    The precise amount of corporate funds diverted, commingled, or redirected cannot be determined without examination of records within the exclusive possession of the fiduciaries accused of misconduct.

434.    The accounting sought is limited to transactions between Auto Expo (and the related Nominal Entities) and any entity controlled by Shahkoohi or Baratian from September 1, 2020 through the present.

435.    The accounting is further limited to identifying:

   (a) The amount of funds transferred;
   (b) The consideration, if any, received by the corporation;
   (c) The current location of transferred funds;
   (d) The profits or appreciation realized from diverted corporate property.

436.    Because the fiduciaries controlled both sides of the challenged transactions and denied minority access to the relevant financial systems, legal damages cannot be fully calculated absent judicial supervision.

437.    The equitable accounting sought is not a generalized audit of unrelated entities, but a focused reconstruction of specific self-interested transactions alleged herein.

438.    By reason of the foregoing, Auto Expo and the related Nominal Entities are entitled to an equitable accounting limited to the self-dealing and affiliated-entity transactions described above.

### EIGHTH DERIVATIVE CAUSE OF ACTION
**(Derivative Conversion – Corporate Funds and Affiliated Entity Diversion)**
**(On Behalf of Auto Expo Ent., Inc. and Related Nominal Entities)**

439.    Defendants and Counter-Plaintiffs, derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities, repeat and re-allege each and every allegation set forth above as if set forth herein at length.

440.    This cause of action is asserted derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities whose books, records, and financial accounts are presently under the exclusive possession and control of the fiduciaries accused of misconduct.

441.    At all relevant times, Counterclaim Plaintiff Omid Elyahou was a shareholder or member of the Nominal Entity on whose behalf this claim is asserted, including at the time of the transactions complained of and continuously thereafter.

442.    At all relevant times, Auto Expo and the related Nominal Entities maintained discrete, identifiable financial assets, including but not limited to a TD Ameritrade investment account containing long-term securities and retained earnings in excess of three hundred thousand dollars, corporate operating accounts maintained at JPMorgan Chase and other banking institutions, Employee Retention Credit proceeds deposited into identifiable corporate accounts following federal filings, reinsurance and warranty reserve funds maintained through Network Reinsurance and associated administrators, and auction rebate proceeds and dealer reserve accounts derived from vehicle acquisition activity including transactions conducted through MB OnDemand and related platforms.

443.    These assets were existing, segregated corporate property. The TD Ameritrade account consisted of accumulated retained earnings held for long-term stability and reserve protection. The ERC proceeds were traceable deposits tied to specific IRS remittances and corporate filings. The reinsurance reserves were separately accounted for and designated for warranty-related obligations and financial protection.

444.    Following the consolidation of majority control, Shahkoohi and Baratian obtained exclusive signatory authority and administrative control over all corporate accounts. Elyahou was removed from banking access and oversight.

445.    Within a short period thereafter, the TD Ameritrade investment account was liquidated in rapid succession. The liquidation occurred without independent board approval free of interested control, without minority consent, and without legitimate corporate necessity. The forced sale of long-term securities constituted an intentional exercise of dominion over specifically identifiable corporate property.

446.    Following liquidation, the proceeds were transferred out of the investment account. ERC proceeds were similarly withdrawn from corporate operating accounts shortly after deposit. Reinsurance reserve funds were depleted and redirected. These withdrawals were not ordinary course operating expenses supported by contemporaneous documentation reflecting fair consideration.

447.    Upon information and belief, substantial portions of the liquidated and withdrawn funds were transferred to entities owned or controlled directly or indirectly by Shahkoohi and Baratian, including but not limited to:

Pristine Automotive Group LLC
Pristine Properties LLC
East Coast Leasing LTD
East Coast Properties LLC
New York Paradise Inc
BKNY USA LLC
Wisdom Equities LLC
130 Avenue F LLC
Unique Realty
B&B Management Group
68 Jay Street Suite 420 LLC
Avenue F Bayonne LLC
Green Street Property LLC
243 4th Avenue LLC
832 Monroe Street Condominium
Bayonne Luxury Estates LLC
730-740 Bergen Ave LLC
580 Carroll Street LLC
Wisdom Portfolio
Akar Capital Management, Inc

Wisdom Financial
Venture Automotive Group
Distinction Properties USA LLC
Capital Development USA LLC
Oxy Management LLC
Regal Properties USA LLC
Oxy Ventures LLC
Wisdom Capital USA
Wisdom Finance LLC
Golden Properties USA LLC
MASTERZ AUTOMOTIVE INTL INC.
MASTERZ AUTOMOTIVE INTL II INC.
WISDOM VENTURES LLC

448.    These affiliated entities do not maintain legitimate operational relationships requiring transfer of Auto Expo's long-term investment reserves, federal relief proceeds, or reinsurance funds. The transfers were not arm's-length transactions supported by written agreements or fair market consideration. Instead, the affiliated entities functioned as repositories and conduits through which corporate funds were commingled and redistributed.

449.    Upon information and belief, funds were layered among commonly controlled entities in a manner designed to obscure tracing and frustrate recovery. The use of affiliated entities to receive and redistribute corporate funds does not alter the character of those funds as property of Auto Expo.

450.    The liquidation of the TD Ameritrade account generated specific wire or ACH transfers identifiable by transaction records. ERC deposits are traceable by IRS remittance records and corresponding bank entries. Reinsurance withdrawals are traceable through reserve account statements and administrative reports. Banking records will demonstrate the path of transfers from corporate accounts into affiliated entities.

451.    Even if commingled, equity permits tracing of converted funds into substitute assets acquired with those funds. To the extent diverted funds were used to acquire real property,

securities, business interests, or loan portfolios within affiliated entities, such assets remain impressed with the character of misappropriated corporate property.

452.    Conversion occurs when a party intentionally exercises dominion or control over property belonging to another without authorization. The deliberate liquidation of long-term corporate investments and transfer of proceeds to affiliated entities constituted intentional dominion over corporate property. The withdrawal and diversion of ERC proceeds constituted intentional dominion over corporate property. The depletion and redirection of reinsurance reserves constituted intentional dominion over corporate property.

453.    These actions were not inadvertent accounting errors. They were deliberate acts undertaken while excluding the minority shareholder from oversight and control. The conduct was inconsistent with the corporation's ownership rights and fiduciary obligations.

454.    As a direct and proximate result of this conversion, Auto Expo has been deprived of accumulated capital reserves built over years of operation. The forced liquidation eliminated potential appreciation and income from long-term investments. The depletion of reserves impaired corporate liquidity and financial stability. The diversion of federally derived funds exposed the corporation to potential regulatory scrutiny. The redirection of corporate assets into affiliated entities diminished enterprise value.

455.    By reason of the foregoing, Auto Expo and the related Nominal Entities are entitled to recover the full amount of all converted funds, together with pre-judgment interest, post-judgment interest, disgorgement of all profits earned on converted funds, equitable tracing into substitute assets, and imposition of a constructive trust over all property acquired with converted funds.

**FIRST DIRECT COUNTERCLAIM**
**(Breach of Fiduciary Duty, Minority Shareholder Oppression, and Freeze-Out)**
**(On Behalf of Omid Elyahou Individually)**

456.    Counterclaim Plaintiff Omid Elyahou repeats and re-alleges each and every allegation set forth above as if set forth herein at length.

457.    This cause of action is brought directly and individually by Omid Elyahou and is not derivative in nature.

458.    Auto Expo is a closely held corporation.

459.    Following the September 2020 restructuring, Elyahou retained a twenty percent ownership interest in Auto Expo.

460.    As a minority shareholder in a closely held corporation, Elyahou was entitled to fair treatment, good faith, proportional participation in corporate benefits, access to financial information, and protection from majority abuse.

461.    Under well-established corporate law governing closely held corporations, majority shareholders owe minority shareholders fiduciary duties analogous to those owed among partners in a partnership.

462.    These duties include the obligation not to use control to appropriate corporate assets, not to exclude minority shareholders from management for self-serving purposes, and not to frustrate the minority shareholder's reasonable expectations.

463.    Elyahou's reasonable expectations upon entering the 2020 restructuring included:

(a) Continued participation in the business he founded;
(b) Access to corporate books and records;
(c) Receipt of distributions proportionate to his ownership;
(d) Fair allocation of corporate opportunities;
(e) Protection of enterprise value;
(f) Honest and transparent governance.

464.    Those expectations were reasonable given that Elyahou had operated Auto Expo as sole owner from 2000 through 2020.

465.    Shortly after majority control was consolidated, Shahkoohi began systematically excluding Elyahou from meaningful participation.

466.    Elyahou's online banking authority at JPMorgan Chase was revoked.

467.    His access to Dealertrack and dealership management systems was disabled.

468.    His access to MB On Demand bidding logs and vehicle allocation records was restricted.

469.    He was excluded from lender communications and vendor negotiations.

470.    He was denied complete financial statements.

471.    He was denied access to reserve account information.

472.    He was denied access to intercompany transfer documentation.

473.    These actions were not administrative adjustments. They were deliberate acts designed to consolidate control and eliminate minority oversight.

474.    After removing Elyahou's access, majority control was used to liquidate corporate reserves, redirect inventory opportunities, and transfer funds to affiliated entities.

475.    Elyahou received no distributions during periods in which funds were being redirected to affiliated entities.

476.    The freeze-out deprived Elyahou of both economic benefits and governance rights.

477.    In closely held corporations, freezing out a minority shareholder while extracting corporate value constitutes minority oppression.

478.    Majority shareholders may not deprive minority shareholders of participation while using corporate control to benefit themselves.

479.    The exclusion was accompanied by accusations that Elyahou had absconded with corporate records and caused financial harm.

480.    Those accusations were made while he was simultaneously denied access to the corporate records necessary to rebut them.

481.    The timing of the exclusion and the liquidation of assets demonstrates bad faith.

482.    The freeze-out impaired Elyahou's ability to protect his equity interest.

483.    The freeze-out impaired his ability to monitor corporate governance.

484.    The freeze-out impaired his ability to defend his professional reputation.

485.    The conduct was oppressive, unfair, and in violation of fiduciary obligations owed directly to him.

486.    As a direct result of this conduct, Elyahou has suffered:

    (a) Loss of distributions;
    (b) Diminution in value of his twenty percent ownership interest;
    (c) Loss of access to corporate information;
    (d) Reputational harm within the industry;
    (e) Litigation expenses;
    (f) Emotional and financial distress associated with exclusion from the company he built.

487.    The oppression is ongoing.

488.    Absent judicial intervention, the majority will continue to exercise exclusive control while depriving the minority of participation and transparency.

489.    Elyahou is entitled to direct relief including damages, equitable relief, restoration of rights, and such other remedies as the Court deems appropriate to remedy minority oppression.

### SECOND DIRECT COUNTERCLAIM
**(Fraudulent Misrepresentation and Fraudulent Concealment)**
**(On Behalf of Omid Elyahou Individually)**

490.    Counterclaim Plaintiff Omid Elyahou repeats and re-alleges each and every allegation set forth above as if set forth herein at length.

491.    This cause of action is brought directly and individually by Omid Elyahou and is not derivative in nature.

492.    To the extent Plaintiffs now assert that they possessed equity ownership in Auto Expo prior to September 2020 pursuant to a purported 2008 Agreement, such assertion contradicts their prior conduct, testimony, and representations.

## A. Material Misrepresentations and Omissions

493.    In or about 2008, discussions occurred between Elyahou and Shahkoohi regarding the possibility of entering into a formal partnership arrangement.

494.    No shares were issued in 2008.

495.    No amended corporate filings were submitted in 2008 reflecting any change in ownership.

496.    No Schedule K-1 was ever issued to Shahkoohi or Baratian for any tax year between 2000 and 2019.

497.    No tax return filed by Auto Expo between 2000 and 2019 identified Shahkoohi or Baratian as shareholders.

498.    During Elyahou's matrimonial proceeding, Shilian v. Elyahou, which commenced on or about April 12, 2012 and concluded March 30, 2016, the ownership of Auto Expo was directly examined.

499.    A court-appointed neutral forensic accounting firm, Klein Liebman & Gresen, LLC, conducted a comprehensive review of corporate records, financial statements, tax returns, and banking documentation.

500.    In its final report dated January 5, 2016, the forensic accountant concluded that Auto Expo was one hundred percent owned by Elyahou.

501.    That conclusion was based on documentary evidence and financial records.

502.    During that divorce proceeding, Shahkoohi testified.

503.    At no time during that proceeding did Shahkoohi assert that he held equity ownership in Auto Expo.

504.    At no time did Baratian assert equity ownership in Auto Expo.

505.    The Nassau Supreme Court decision arising from that proceeding described Shahkoohi as someone who "does business with" Auto Expo.

506.    The decision did not find that any of the Shahkoohi plaintiffs owned Auto Expo.

507.    The decision did not conclude that any of the Baratian plaintiffs owned Auto Expo.

508.    The decision did not attribute any equity interest in Auto Expo to Shahkoohi or Baratian.

509.    These facts were known to Shahkoohi at the time.

510.    Despite this record, Plaintiffs now assert that a 2008 Agreement conferred ownership rights prior to 2020.

**B. The 2020 Restructuring and Omission of Alleged Prior Ownership**

511.    In or about September 2020, a formal written restructuring was executed.

512.    That restructuring resulted in Shahkoohi acquiring eighty percent ownership of Auto Expo.

513.    The restructuring documents did not state that Shahkoohi already held an equity interest.

514.    The restructuring documents did not incorporate or ratify any alleged 2008 ownership agreement.

515.    The restructuring documents did not characterize the transaction as a clarification of prior ownership.

516.    Instead, the transaction was structured as a contemporaneous transfer of equity.

517.    If Shahkoohi believed he had owned equity since 2008, there would have been no need for an issuance or transfer in 2020.

518.    The omission of any reference to preexisting ownership in the 2020 restructuring documents was material.

519.    At the time of the 2020 restructuring, Plaintiffs did not assert that Elyahou was merely formalizing a preexisting ownership interest.

520.    Elyahou relied on the restructuring documents as written.

## C. Late Invocation of the 2008 Agreement

521.    The purported 2008 Agreement was not filed publicly.

522.    It was not produced during earlier phases of this litigation.

523.    It was not relied upon during the divorce proceeding.

524.    It was not referenced as the legal basis for the 2020 restructuring.

525.    It was not produced to Defendants until on or about January 2026 in connection with the Second Amended Complaint.

526.    Plaintiffs selectively invoked the alleged 2008 Agreement only after litigation escalated and after filing deadlines approached.

527.    The timing of the invocation was strategic.The late assertion of historic ownership materially alters the legal posture of the case.

## D. Scienter

528.    At the time of the divorce proceeding, Shahkoohi knew that the court-appointed forensic report identified Elyahou as one hundred percent owner.

529.    At the time of his testimony, Shahkoohi did not assert ownership.

530.    At the time of the 2020 restructuring, Shahkoohi did not assert that he had owned equity since 2008.

531.    The failure to assert prior ownership in those contexts was intentional.

532.    The selective invocation of the alleged 2008 Agreement only after disputes arose evidences knowledge of its strategic value rather than its operative effect.

533.    Plaintiffs knew that the restructuring documents did not incorporate the alleged 2008 ownership.

534.    Plaintiffs knew that tax filings and K-1s did not reflect pre-2020 ownership.

535.    Plaintiffs knew that corporate filings did not reflect pre-2020 ownership.

536.    Plaintiffs nevertheless now assert historic ownership to gain litigation leverage and to expand their claims.

**E. Reliance**

537.    Elyahou entered into the September 2020 restructuring in reliance on the ownership structure reflected in the executed documents.

538.    He did not enter into that restructuring believing that he was formalizing an already diluted ownership interest dating back to 2008.

539.    Had Plaintiffs asserted that they already owned eighty percent prior to 2020, Elyahou would not have entered into the restructuring on the same terms.

540.    The absence of any contemporaneous assertion of prior ownership was material to Elyahou's understanding of the transaction.

**F. Damages**

541.    As a direct result of the misrepresentations and concealment described herein, Elyahou has suffered damages.

542.    Those damages include, but are not limited to:

(a) Litigation expenses incurred to defend against expanded ownership claims;
(b) Diminution in bargaining position;
(c) Reputational harm arising from allegations of concealment;
(d) Increased financial exposure in this action;

(e) Costs associated with forensic reconstruction of ownership history.

543. The damages are ongoing.

544. Plaintiffs' fraudulent conduct has forced Elyahou to expend substantial resources to defend his ownership position.

### THIRD DIRECT COUNTERCLAIM
**(Tortious Interference with Business Relations and Prospective Economic Advantage)**
**(On Behalf of Omid Elyahou Individually)**

545. Counterclaim Plaintiff Omid Elyahou repeats and re-alleges each and every allegation set forth above as if set forth herein at length.

546. This cause of action is brought directly and individually by Omid Elyahou and is not derivative in nature.

**A.    Existing and Prospective Business Relationships**

547. For more than twenty years, Elyahou cultivated and maintained substantial business relationships in the automotive dealership industry.

548. Those relationships included long-standing relationships with:

(a) Floor plan lenders and financial institutions;
(b) Vehicle auction platforms, including MB On Demand;
(c) Mercedes-Benz Financial and affiliated finance arms;
(d) Wholesale inventory suppliers;
(e)  Insurance and warranty providers;
(f) Accountants and compliance professionals;
(g) Employees and management personnel within Auto Expo;
(h) Industry vendors and service providers.

549. These relationships were developed through Elyahou's personal efforts, reputation, and decades of consistent performance as sole owner and operator of Auto Expo.

550. The goodwill associated with those relationships constituted a valuable business asset belonging personally to Elyahou in addition to the corporation.

551.    Elyahou had a reasonable expectation of continuing those relationships absent wrongful interference.

## B. Knowledge of the Relationships

552.    Shahkoohi was fully aware of Elyahou's longstanding industry relationships.

553.    Shahkoohi's involvement with Auto Expo arose in part because of the established infrastructure, lender relationships, and auction access cultivated by Elyahou.

554.    Baratian was likewise aware of Elyahou's role as founder and industry contact.

555.    The controlling individuals knew that Elyahou's reputation and credibility were essential to maintaining favorable relationships with lenders, auction platforms, and vendors.

## C. Intentional and Improper Interference

556.    After consolidating majority control and removing Elyahou's access to corporate systems, Shahkoohi began communicating to third parties that Elyahou had engaged in financial misconduct.

557.    Plaintiffs have alleged that Elyahou absconded with books and records.

558.    Plaintiffs have alleged that Elyahou defrauded them of approximately ten million dollars.

559.    Those allegations were made while Elyahou was simultaneously denied access to the corporate records necessary to refute them.

560.    Upon information and belief, statements concerning alleged financial impropriety were communicated to lenders and industry participants.

561.    Upon information and belief, communications were made to auction platforms and vendors suggesting misconduct by Elyahou.

562.    These communications occurred in the context of an ongoing ownership dispute.

563.    The accusations were not supported by forensic findings, audited reports, or judicial determinations.

564.    The accusations were made during a period in which Shahkoohi and Baratian controlled the corporate accounts and records.

565.    Accusing a founder of a twenty-year-old dealership of defrauding the company while withholding the books constitutes improper means.

566.    Additionally, Elyahou's removal from MB On Demand bidding access interfered with his ability to independently participate in vehicle acquisition activities.

567.    Restricting access to auction platforms while simultaneously accusing him of wrongdoing impaired his standing in the industry.

568.    The freeze-out prevented Elyahou from maintaining relationships with floor plan lenders and financial institutions.

569.    Excluding Elyahou from communications with lenders created the appearance that he was no longer trusted or authorized.

570.    The interference was intentional.

571.    The interference was undertaken with knowledge that it would damage Elyahou's professional standing.

572.    The interference was motivated, at least in part, by personal animosity arising from the prior family relationship and subsequent divorce between Shahkoohi and Elyahou's sister.

573.    The interference was also motivated by a desire to consolidate exclusive control and eliminate Elyahou as a competing presence in the industry.

**D. Improper Means and Malice**

574.    Tortious interference may be established where the defendant employs wrongful means, including defamation, misrepresentation, economic pressure, or abuse of authority.

575.    Here, the controlling individuals employed improper means by:

(a) Making accusations of large-scale fraud without producing supporting evidence;
(b) Restricting access to corporate records while making those accusations;
(c) Leveraging control over corporate communications to shape industry perceptions;
(d) Using majority control to isolate and marginalize Elyahou;
(e)  Redirecting business opportunities while portraying Elyahou as responsible for corporate instability.

576.    The accusations of a ten million dollar fraud are extreme in magnitude and inherently damaging to a dealer principal's reputation.

577.    In the automotive dealership industry, credibility with lenders and auction platforms is essential.

578.    Allegations of financial fraud can lead to tightened credit, increased scrutiny, or termination of business relationships.

579.    By making such accusations without providing access to underlying records, the controlling individuals acted with reckless disregard for the truth.

580.    The interference was not privileged because it was undertaken in bad faith and for personal advantage rather than legitimate corporate protection.

**E. Causation**

581.    As a direct result of the communications and exclusionary conduct described herein, Elyahou's standing in the industry has been impaired.

582.    Lenders and business partners have been exposed to allegations questioning his integrity.

583.    Elyahou's ability to independently participate in industry transactions has been curtailed.

584.    The freeze-out and associated accusations created uncertainty regarding his credibility and authority.

585.    The interference has damaged existing business relationships and impaired prospective opportunities.

**F. Damages**

166

586.    As a direct and proximate result of Defendants' tortious interference, Elyahou has suffered

damages, including but not limited to:

(a) Loss of existing business relationships;
(b) Impairment of prospective business opportunities;
(c) Reputational harm in the dealership and lending community;
(d) Loss of professional standing;
(e) Economic losses associated with diminished opportunities;
(f) Increased scrutiny and reputational burden within the industry.

587.    The damages are ongoing.

588.    The interference was intentional and malicious.

589.    Elyahou is entitled to compensatory damages in an amount to be determined at trial.

590.    Because the interference was undertaken with malice and reckless disregard for truth,

punitive damages are warranted to deter similar conduct.

## FOURTH DIRECT COUNTERCLAIM
### (Declaratory Judgment)
### (On Behalf of Omid Elyahou Individually)

591.    Counterclaim Plaintiff Omid Elyahou repeats and re-alleges each and every allegation set forth above as if set forth herein at length.

592.    This cause of action is brought directly and individually by Omid Elyahou and is not derivative in nature.

### A. Existence of an Actual Controversy

593.    An actual, ripe, and justiciable controversy exists between the parties concerning the ownership structure of Auto Expo prior to September 2020.

594.    Plaintiffs now contend that a purported 2008 Agreement conferred equity ownership rights in Auto Expo prior to the formal September 2020 restructuring.

595.    Elyahou disputes that contention. The dispute is not hypothetical. It directly affects the legal rights, liabilities, and claims asserted in this action.

596.    Plaintiffs' assertion of pre-2020 ownership alters the characterization of corporate governance, fiduciary duties, and alleged misconduct.

597.    The controversy also affects potential damages calculations, corporate control analysis, and the validity of derivative claims.

### B. Divorce Proceeding and Forensic Findings

598.    During Elyahou's matrimonial proceeding, *Shilian v. Elyahou,* which commenced on or about April 12, 2012 and concluded March 30, 2016, the ownership of Auto Expo was squarely at issue.

599.    The Nassau County Supreme Court appointed Klein Liebman & Gresen, LLC as neutral forensic accountants. The forensic firm was tasked with examining ownership, valuation, and

business interests held by Elyahou. In its final report dated January 5, 2016, the forensic accountants concluded that Auto Expo was one hundred percent owned by Elyahou.

600.    That conclusion was based on examination of corporate filings, tax returns, banking records, and financial documentation.

601.    Had any ownership interest existed in favor of Shahkoohi or Baratian at that time, it would have been identified in the forensic review.

602.    No such ownership was identified.

603.    During the divorce proceeding, Shahkoohi testified.

604.    At no time during that proceeding did Shahkoohi assert that he owned equity in Auto Expo.

605.    The Nassau Supreme Court decision referenced that Shahkoohi "does business with" Auto Expo.

606.    The decision did not state that Shahkoohi owned Auto Expo.

607.    The decision did not conclude that Baratian owned Auto Expo.

608.    The judicial record from that proceeding contradicts Plaintiffs' current claim of pre-2020 ownership.

**C. Absence of Corporate and Tax Documentation**

609.    Between 2000 and 2019, Auto Expo issued Schedule K-1 tax forms only to Elyahou.

610.    No Schedule K-1 was issued to Shahkoohi.

611.    No Schedule K-1 was issued to Baratian.

612.    No corporate tax return identified Shahkoohi or Baratian as shareholders prior to 2020.

613.    No amended corporate filings were submitted to reflect any change in ownership prior to September 2020.

614.    No stock certificates were issued to Shahkoohi prior to September 2020.

615.     No shareholder ledger reflected ownership by Shahkoohi prior to that date.

616.     These documentary omissions are material to the ownership determination.

**D. The September 2020 Restructuring**

617.     In or about September 2020, a written restructuring was executed.

618.     Pursuant to that restructuring, Shahkoohi acquired eighty percent of the outstanding shares of Auto Expo.

619.     Elyahou retained twenty percent ownership.

620.     The restructuring documents did not state that Shahkoohi already owned equity.

621.     The restructuring documents did not incorporate the alleged 2008 Agreement as their legal basis.

622.     The restructuring was structured as a contemporaneous transfer of equity.

623.     If Shahkoohi already owned eighty percent, no such transfer would have been necessary.

624.     The absence of any ratification language concerning prior ownership confirms that the restructuring was the first formal allocation of equity.

**E. Late Production of the Alleged 2008 Agreement**

625.     The alleged 2008 Agreement was not filed publicly.

626.     It was not referenced in the divorce proceeding.

627.     It was not produced during earlier stages of this litigation.

628.     It was not relied upon as the legal basis for the September 2020 restructuring.

629.     It was first produced to Defendants on or about January 2026 in connection with the Second Amended Complaint.

630.     Plaintiffs' late reliance on the alleged 2008 Agreement creates uncertainty regarding the operative ownership timeline.

**F. Need for Judicial Declaration**

631.    The parties have adverse legal interests concerning:

(a) Whether Shahkoohi or Baratian possessed any equity ownership in Auto Expo prior to September 2020;
(b) Whether the alleged 2008 Agreement conferred ownership rights;
(c) Whether the September 2020 restructuring constituted the first formal transfer of equity;
(d) The scope of fiduciary duties owed between the parties prior to and after September 2020;
(e) The legal characterization of governance authority between 2008 and 2020.

632.    Resolution of these issues will materially affect the adjudication of the parties' claims and defenses.

633.    A judicial declaration will clarify ownership rights and eliminate uncertainty regarding the historical equity structure of Auto Expo.

634.    Such clarification is necessary to determine:

(a) The validity of derivative claims;
(b) The scope of fiduciary duties;
(c) The appropriate damages framework;
(d) The legitimacy of Plaintiffs' ownership-based allegations.

635.    Without declaratory relief, the ownership dispute will continue to cloud the litigation and business interests of the parties.

**G. Relief Requested**

636.    Elyahou seeks a declaration that:

(a) Prior to September 2020, Auto Expo was one hundred percent owned by Omid Elyahou;
(b) The alleged 2008 Agreement did not confer operative equity ownership upon Shahkoohi or Baratian;
(c) The September 2020 restructuring constituted the first formal transfer of equity ownership to Shahkoohi;
(d) Shahkoohi became an eighty percent owner in or about September 2020;
(e) Elyahou retained a twenty percent ownership interest thereafter;
(f) Any claims premised on pre-2020 ownership are unsupported by corporate, tax, and judicial records.

637.    Such declaration will serve the practical purpose of resolving the core ownership dispute at the heart of this litigation.

### FIFTH DIRECT COUNTERCLAIM
#### (Indemnification and Advancement)
#### (On Behalf of Omid Elyahou Individually)

638.    Counterclaim Plaintiff Omid Elyahou repeats and re-alleges each and every allegation set forth above as if set forth herein at length.

639.    This cause of action is brought directly and individually by Omid Elyahou and is not derivative in nature.

## A. Corporate Status and Capacity

640.    From the inception of Auto Expo in or about February 2000 through the September 2020 restructuring, Elyahou served as sole shareholder, officer, and director of the corporation.

641.    Following the September 2020 restructuring, Elyahou remained a twenty percent shareholder and continued to serve in a managerial and operational capacity.

642.    The claims asserted by Plaintiffs in this action arise from actions allegedly taken by Elyahou in his capacity as an officer, director, or shareholder of Auto Expo.

643.    The allegations concern corporate governance, corporate finances, books and records, and business operations.

644.    None of the claims against Elyahou arise from purely personal conduct unrelated to corporate affairs.

## B. Statutory and Contractual Basis for Indemnification

645.    Under applicable corporate law, including but not limited to the New York Business Corporation Law §§ 721–724, a corporation may indemnify and in certain circumstances must

indemnify its directors and officers for expenses and liabilities incurred in connection with actions arising from their corporate service.

646.    Corporate indemnification provisions are designed to protect individuals who act in good faith in service of the corporation.

647.    Upon information and belief, Auto Expo's governing documents provide for indemnification of officers and directors to the fullest extent permitted by law.

648.    Even in the absence of explicit bylaw language, statutory indemnification applies.

649.    Indemnification includes reasonable attorneys' fees, litigation expenses, expert costs, and other defense-related expenditures.

650.    Advancement of expenses pending final disposition is permitted where the individual undertakes to repay such amounts if it is ultimately determined that indemnification is not warranted.

**C. Good Faith Conduct**

651.    At all times relevant to Plaintiffs' allegations, Elyahou acted in good faith and in what he reasonably believed to be the best interests of Auto Expo.

652.    During his tenure as sole owner and operator from 2000 through 2020, Auto Expo experienced sustained growth and profitability.

653.    No allegation has been adjudicated against Elyahou establishing bad faith, fraud, or intentional misconduct.

654.    Plaintiffs' accusations of ten million dollars in fraud are unproven and disputed.

655.    The claims asserted against Elyahou arise from his corporate role and decision-making authority.

656.    Even assuming arguendo that corporate decisions are challenged, such decisions fall within the scope of corporate service.

**D. Entitlement to Advancement**

657.    Plaintiffs have initiated litigation seeking substantial damages against Elyahou in connection with his service as a corporate officer and shareholder.

658.    Elyahou has been compelled to retain counsel and incur substantial legal fees.

659.    The litigation is ongoing and defense costs continue to accrue.

660.    Advancement of legal expenses is necessary to ensure that corporate fiduciaries are not financially crippled while defending actions arising from corporate service.

661.    Advancement is particularly appropriate where the controlling shareholders have used corporate resources to prosecute claims while denying corporate resources to defend them.

662.    Upon information and belief, no corporate resolution has been adopted denying indemnification or advancement on proper legal grounds.

663.    To the extent advancement has been denied, such denial was made by interested parties who face substantial likelihood of liability in the derivative claims.

664.    A fiduciary who faces personal exposure for breach of duty may not fairly evaluate an indemnification request from the minority shareholder he has accused.

**E. Ripeness and Refusal**

665.    Elyahou has incurred substantial attorneys' fees and litigation costs in defending against Plaintiffs' claims.

666.    Plaintiffs' claims seek personal liability against Elyahou.

667.    The controversy concerning indemnification and advancement is therefore ripe and immediate.

668.    Upon information and belief, Auto Expo has not advanced legal expenses to Elyahou.

669.    To the extent advancement has been denied, such denial constitutes a breach of statutory and contractual obligations.

**F. Damages and Relief**

670.    As a direct result of the failure to provide advancement and indemnification, Elyahou has been required to expend personal funds to defend this action.

671.    The amounts incurred are substantial and continue to accrue.

672.    Elyahou is entitled to:

(a) Advancement of all reasonable attorneys' fees and litigation expenses incurred to date;
(b) Ongoing advancement during the pendency of this action;
(c) Indemnification for any judgment or settlement arising from actions taken in good faith in his corporate capacity;
(d) Reimbursement of all costs associated with enforcing his indemnification rights.

673.    Because Plaintiffs' claims arise from conduct undertaken in Elyahou's corporate capacity, indemnification and advancement are appropriate to the fullest extent permitted by law.

674.    Absent judicial intervention, Elyahou will continue to incur substantial unreimbursed expenses while Plaintiffs utilize corporate and affiliated resources to prosecute their claims.

### SIXTH DIRECT COUNTERCLAIM
#### (Defamation and Business Disparagement)
#### (On Behalf of Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors)

675.    Counterclaim Plaintiffs Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors repeat and re-allege each and every allegation set forth above as if set forth herein at length.

676.    Plaintiffs have publicly alleged, in pleadings filed with this Court and in communications made in connection with this dispute, that Defendants collectively engaged in approximately ten million dollars of fraud and financial misconduct.

677.    Plaintiffs have further alleged that Defendants absconded with corporate books and records and engaged in systemic misappropriation of assets.

678.    These allegations were not confined to Omid Elyahou individually but were directed broadly at the Defendant group, including Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors.

679.    The accusations assert criminal or quasi-criminal conduct, including fraud, misappropriation, dishonesty, and intentional wrongdoing.

680.    Statements accusing a person or business of financial fraud, theft, or dishonest business practices constitute defamation per se because they impute serious criminal conduct and injure a person in his trade, profession, or business.

681.    SimpSocial and Certified Performance Motors are business entities whose value depends upon credibility, vendor confidence, advertising partnerships, financing arrangements, and commercial trust.

682.     Avi Eitan and Kassim likewise maintain professional reputations within their respective industries, and accusations of fraud directly undermine their standing and economic opportunities.

683.    Plaintiffs made the accusations without producing forensic proof, audited findings, or judicial determinations substantiating the alleged ten million dollar fraud.

684.    Plaintiffs made the accusations while simultaneously maintaining exclusive control over corporate books and records and denying Counterclaim Plaintiffs access to those records.

685.    Plaintiffs either knew the accusations were false or acted with reckless disregard for their truth or falsity.

686.    Upon information and belief, the accusations were communicated beyond the four corners of the pleadings to third parties, including lenders, vendors, and industry participants, in

circumstances where Plaintiffs knew such communications would impair Defendants' professional standing.

687. The purpose and effect of the accusations were to exert reputational and economic pressure, to gain leverage in the dispute, and to discredit Defendants within the industry.

688. As a direct and proximate result of these defamatory statements, Counterclaim Plaintiffs have suffered reputational injury, loss of goodwill, disruption of commercial relationships, and economic harm.

689. Because the statements constitute defamation per se, damages are presumed as a matter of law, and Counterclaim Plaintiffs are additionally entitled to recover actual and consequential damages proven at trial.

## SEVENTH DIRECT COUNTERCLAIM
### (Tortious Interference with Contract and Business Relations)
### (On Behalf of Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors)

690. Counterclaim Plaintiffs Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors repeat and re-allege each and every allegation set forth above as if set forth herein at length.

691. SimpSocial and Certified Performance Motors maintain ongoing contractual relationships and prospective business relationships with vendors, marketing partners, lenders, advertising platforms, and commercial clients.

692. Avi Eitan and Kassim likewise maintain business relationships and economic expectancies dependent upon professional reputation and industry credibility.

693. Plaintiffs were aware of these relationships and knew that allegations of financial fraud and misconduct would foreseeably impair them.

694.    Upon information and belief, Plaintiffs communicated allegations of fraud and misappropriation to third parties with knowledge that such communications would disrupt Defendants' contractual and prospective relationships.

695.    The communications were not made for legitimate competitive or corporate purposes but were made maliciously and for the purpose of exerting economic pressure and damaging reputations.

696.    The interference was accomplished through the use of defamatory accusations, litigation filings, and communications suggesting criminal-scale financial misconduct.

697.    The accusations were made without substantiated forensic findings and while Plaintiffs controlled the relevant financial records.

698.    As a direct result of Plaintiffs' intentional interference, Counterclaim Plaintiffs have suffered disruption of business relationships, increased scrutiny from counterparties, reputational damage, and economic losses.

699.    Plaintiffs' conduct was intentional, unjustified, and undertaken with knowledge of the harm it would cause.

### EIGHTH DIRECT COUNTERCLAIM
### (Abuse of Process)
### (On Behalf of Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors)

700.    Counterclaim Plaintiffs Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors repeat and re-allege each and every allegation set forth above as if set forth herein at length.

701.    Plaintiffs initiated and expanded this litigation under the guise of resolving corporate disputes but used the judicial process for collateral purposes unrelated to legitimate adjudication.

702.    Plaintiffs selectively invoked a purported 2008 Agreement only after litigation escalated and procedural deadlines approached, thereby attempting to reshape the narrative midstream.

703.    Plaintiffs added additional parties to the action, broadening the scope of allegations to increase financial pressure and reputational exposure.

704.    Plaintiffs made sweeping accusations of criminal-scale fraud without producing substantiated documentary evidence at the time such accusations were made.

705.    The litigation process was used as a tool to apply financial strain, damage reputations, consolidate leverage, and deter competitive activity.

706.    The use of judicial process to accomplish objectives unrelated to its proper purpose constitutes abuse of process.

707.    As a direct result of Plaintiffs' improper use of litigation mechanisms, Counterclaim Plaintiffs have incurred substantial legal fees, reputational injury, and economic harm.

### NINTH DIRECT COUNTERCLAIM
(Civil Conspiracy)
(On Behalf of Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors)

708.    Counterclaim Plaintiffs Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors repeat and re-allege each and every allegation set forth above as if set forth herein at length.

709.    This civil conspiracy claim is not asserted as an independent tort. Rather, it is pleaded as a theory of joint and several liability for the underlying breaches of fiduciary duty, conversion, fraud, corporate waste, and related misconduct alleged herein. The conspiratorial agreement and coordinated conduct among Shahkoohi, Baratian, and the affiliated Plaintiff entities establish knowing participation in and facilitation of the underlying wrongful acts, thereby rendering each participant liable for the full extent of damages caused by the scheme.

710.    Shahkoohi and Baratian acted in concert with the various Plaintiff entities under their control.

711.    The coordinated nature of the allegations, the timing of the invocation of the alleged 2008 Agreement, the expansion of litigation scope, and the communications to third parties demonstrate a concerted plan.

712.    The plan included consolidation of control, exclusion of Defendants from participation, diversion of corporate assets, public allegations of fraud, and expansion of litigation pressure.

713.    The concerted actions were undertaken pursuant to a common understanding and agreement among the controlling individuals and entities.

714.    As a direct result of this coordinated conduct, Counterclaim Plaintiffs have suffered damages as described herein.

**TENTH DIRECT COUNTERCLAIM**
(Declaratory Relief on Behalf of All Counterclaim Plaintiffs)

715.    Counterclaim Plaintiffs repeat and re-allege each and every allegation set forth above as if set forth herein at length.

716.    An actual, present, and justiciable controversy exists between the parties concerning the validity and legal effect of the alleged 2008 Agreement.

717.    This cause of action is brought pursuant to 28 U.S.C. § 2201. An actual, immediate, and justiciable controversy exists regarding the validity, enforceability, and legal effect of the purported 2008 Agreement; the ownership percentages of Auto Expo and the related Nominal Entities; the legitimacy of the September 2020 restructuring as the first operative transfer of equity; and the scope of governance and managerial authority exercised thereafter. Plaintiffs have affirmatively invoked the alleged 2008 Agreement to expand ownership claims and to justify control, thereby creating present and concrete uncertainty affecting corporate governance, voting rights, fiduciary obligations, and distribution entitlements. Absent declaratory relief, that

uncertainty will continue to impair corporate operations and expose the Nominal Entities to further instability and harm.

718.    A further controversy exists concerning the truth or falsity of Plaintiffs' allegations of ten million dollars in fraud.

719.    Additional disputes exist regarding the legitimacy of the freeze-out conduct and the scope of Defendants' rights within the corporate structure.

720.    Judicial clarification of these issues will materially affect the rights and obligations of the parties and will serve to resolve uncertainty affecting business relationships and reputational standing.

721.    Counterclaim Plaintiffs seek a declaration clarifying their rights, rejecting unsupported allegations of fraud, and defining the operative ownership and governance structure.

**WHEREFORE**, Defendants and Counter-Plaintiffs, individually and derivatively on behalf of Auto Expo Ent., Inc. and the related Nominal Entities, respectfully demand judgment as follows:

**A. On the Derivative Causes of Action:**

1.  Awarding Auto Expo Ent., Inc. and the related Nominal Entities compensatory damages in an amount to be determined at trial, but believed to exceed several million dollars, representing all losses sustained as a direct and proximate result of the breaches of fiduciary duty, corporate waste, conversion, diversion of assets, self-dealing, aiding and abetting, and unjust enrichment described herein;

2.  Awarding disgorgement of all compensation, profits, distributions, rebates, loan repayments, interest income, appreciation, and other financial benefits received directly or indirectly by Michael Shahkoohi, Ramin Baratian, and any Affiliated Entity as a result of the misconduct alleged;

3. Imposing a constructive trust over all identifiable funds, accounts, real property, securities, loan portfolios, business interests, and other assets traceable to diverted or converted corporate funds, including assets held by any Affiliated Entity;

4. Ordering a full forensic accounting of all corporate transactions, intercompany transfers, affiliated-entity transfers, reserve liquidations, auction transactions, ERC proceeds, reinsurance reserves, and related financial activity from January 1, 2020 to the present;

5. Ordering equitable tracing of converted funds into substitute assets and requiring restitution of all traced property to Auto Expo and the related Nominal Entities;

6. Surcharging Shahkoohi and Baratian personally for all losses caused by their misconduct, including diminution in enterprise value, lost appreciation, depletion of reserves, and regulatory exposure;

7. Declaring that the challenged transactions constitute self-dealing and are not protected by the business judgment rule;

8. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by law;

9. Awarding attorneys' fees, forensic accounting fees, expert fees, and costs of suit under the common fund doctrine, substantial benefit doctrine, and applicable equitable principles.

## B. On the Direct Counterclaims of Omid Elyahou:

10. Awarding compensatory damages for minority shareholder oppression, direct breach of fiduciary duty, fraud, tortious interference, and related misconduct;

11. Declaring that prior to September 2020, Auto Expo was one hundred percent owned by Omid Elyahou and that the alleged 2008 Agreement did not confer operative equity ownership rights upon Plaintiffs;

12. Declaring that the September 2020 restructuring constituted the first formal transfer of equity ownership;

13. Awarding damages arising from fraudulent misrepresentation and concealment concerning ownership claims;

14. Awarding damages for reputational injury, interference with business relationships, and impairment of professional standing;

15. Ordering advancement of attorneys' fees and litigation expenses incurred by Elyahou in defending claims arising from his corporate service;

16. Ordering indemnification to the fullest extent permitted by law for any liability incurred in connection with acts taken in good faith in his corporate capacity.

## C. On the Direct Counterclaims of Avi Eitan, Kassim, SimpSocial, and Certified Performance Motors:

17. Awarding compensatory damages for defamation per se and business disparagement;

18. Awarding damages for tortious interference with contractual and prospective business relationships;

19. Awarding damages for abuse of process and civil conspiracy where proven;

20. Awarding damages for reputational harm, loss of goodwill, and economic injury;

21. Awarding punitive damages where permitted by law for conduct undertaken with malice, reckless disregard, or intentional misconduct.

## D. General and Equitable Relief:

22. Granting such further declaratory relief as may be necessary to define the parties' ownership rights, governance rights, and fiduciary obligations;

23. Enjoining further diversion, dissipation, or transfer of corporate assets pending final judgment;

24. Awarding costs and disbursements of this action;

25. Awarding such other and further legal, equitable, and injunctive relief as the Court deems just and proper in order to restore corporate assets, protect shareholder rights, and remedy the misconduct alleged.

Dated: March 2, 2026
      Garden City, New York

Respectfully Submitted,
EMOUNA & MIKHAIL, PC

*Matin Emouna*

MATIN EMOUNA, ESQ.
*Attorneys for Defendants and Counterclaim Plaintiffs*
100 Garden City Plaza, Suite 520
Garden City, New York 11501
Tel (516) 877-9111
memouna@emiklaw.com

# VERIFICATION
## (Pursuant to Federal Rule of Civil Procedure 23.1)

I, **OMID ELYAHOU**, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Defendant and Counterclaim Plaintiff in the above-captioned action and the individual asserting certain claims derivatively on behalf of the following New York entities (collectively, the "Nominal Entities"):

   AutoExpo Ent. Inc.
   Peace Properties LLC
   Network Reinsurance Company Inc.
   Auto Exchange Center, LLC
   Chrome Insurance Agency LLC
   Prime Auto Capital LLC

2. I submit this Verification in support of the derivative causes of action set forth in the Counterclaims pursuant to Federal Rule of Civil Procedure 23.1.

3. This Verification applies to each derivative cause of action asserted in the Counterclaims on behalf of the Nominal Entities and is intended to satisfy the requirements of Federal Rule of Civil Procedure 23.1 with respect to each such claim.

4. I have personal knowledge of the facts set forth herein except as to matters stated upon information and belief, and as to those matters I believe them to be true based upon corporate records, banking records, tax filings, investment account statements, reserve documentation, and communications obtained during my ownership and management of the Nominal Entities.

### I. Continuous Ownership

4. I founded AutoExpo Ent. Inc. in or about February 2000.

5. From inception through September 2020, I was the sole shareholder of AutoExpo Ent. Inc.

6. Since September 2020, I have continuously held a twenty percent (20%) ownership interest in AutoExpo Ent. Inc.

7. I held an ownership interest in AutoExpo Ent. Inc. at the time of each of the transactions challenged in the derivative causes of action and have continuously held that interest through the present.

8. I hold a twenty percent (20%) ownership interest in Peace Properties LLC and have continuously held such interest during all relevant periods referenced in the derivative claims.

9. I hold an ownership interest in Network Reinsurance Company Inc. and have continuously held such interest during the periods in which the alleged reserve depletion and fund diversions occurred.

10. I hold an ownership interest in Auto Exchange Center, LLC and have continuously held such interest during the periods referenced in the derivative claims.

11. I hold an ownership interest in Chrome Insurance Agency LLC and have continuously held such interest during the periods referenced in the derivative claims.

12. I hold an ownership interest in Prime Auto Capital LLC and have continuously held such interest during the periods referenced in the derivative claims.

13. I was an owner or member of each Nominal Entity at the time of the conduct complained of, at the time this action was commenced, and remain an owner or member to this date.

## II. Non-Collusive Nature of the Derivative Claims

14. The derivative claims asserted in this action are not brought collusively to confer jurisdiction upon this Court.

15. The derivative claims are brought in good faith for the purpose of protecting corporate assets, restoring misappropriated funds, remedying breaches of fiduciary duty, and preventing further harm to the Nominal Entities.

### III. Demand and Demand Futility Under New York Law

16. I considered whether to make a formal pre-suit demand upon the governing bodies of the Nominal Entities prior to asserting the derivative claims.

17. At all relevant times, the governing authority and decision-making control of the Nominal Entities were dominated and controlled by Michael Shahkoohi and Ramin Baratian.

18. No formal pre-suit demand was made upon the governing bodies of the Nominal Entities because such demand would have been futile for the reasons set forth herein.

19. The derivative claims arise directly from actions taken, authorized, directed, ratified, or personally benefitted from by Shahkoohi and Baratian.

20. Those actions include, but are not limited to:

a.  The rapid liquidation of the TD Ameritrade investment account containing long-term corporate reserves exceeding approximately three hundred thousand dollars;

b.  The withdrawal and diversion of Employee Retention Credit ("ERC") proceeds following federal remittance.

c.  The depletion and redirection of reinsurance reserve funds;

d.  The transfer of corporate funds into affiliated entities owned or controlled by Shahkoohi and Baratian;

e.  The commingling and layering of corporate funds through affiliated entities in a manner designed to obscure tracing.

20. Following consolidation of control, Shahkoohi and Baratian removed me from banking access and administrative oversight.

21. The TD Ameritrade account was liquidated shortly thereafter without independent board approval free from interested control and without minority consent.

22. The proceeds of that liquidation were transferred out of the corporate investment account.

23. ERC proceeds deposited into corporate accounts were similarly withdrawn and redirected.

24. Reinsurance reserve funds were depleted and transferred.

25. These transactions directly benefited entities owned or controlled by Shahkoohi and Baratian.

26. The individuals who would be required to evaluate a demand are the same individuals alleged to have authorized and benefitted from the challenged transactions.

27. Under New York law, including *Marx v. Akers*, 88 N.Y.2d 189, 198 (1996) and its progeny, demand is excused where a majority of the directors or controlling members are interested in the challenged transactions or face a substantial likelihood of liability.

28. Shahkoohi and Baratian face a substantial likelihood of personal liability for breach of fiduciary duty, conversion, corporate waste, unjust enrichment, and related misconduct arising from the transactions described in the derivative causes of action.

29. Their personal financial exposure creates a disabling conflict of interest.

30. Because they are alleged wrongdoers who personally benefitted from the challenged conduct, they cannot impartially evaluate a demand seeking to hold them liable.

31. The challenged transactions were not the product of independent, disinterested decision-making.

32. The liquidation of long-term investment reserves and transfer of proceeds to affiliated entities constituted self-interested conduct.

33. The diversion of ERC funds and reinsurance reserves likewise constituted self-interested conduct.

34. Under these circumstances, a pre-suit demand would have been futile and is therefore excused under Federal Rule of Civil Procedure 23.1 and applicable New York law.

**IV. Satisfaction of Alternative Demand-Futility Standards**

35. Although the Nominal Entities are New York entities, the derivative allegations also satisfy the substantive principles articulated in *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), and *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993).

36. The foregoing facts are specific to the challenged transactions and the individuals who authorized and benefitted from them, and are not based on generalized allegations of corporate disagreement.

37. There exists reasonable doubt that the controlling decision-makers were disinterested or independent with respect to the challenged transactions.

38. There exists reasonable doubt that the challenged transactions were the product of valid business judgment.

39. The controlling individuals face a substantial likelihood of liability arising from the challenged transactions.

40. Accordingly, even under alternative demand-futility standards, demand would be excused.

**V. Good Faith Basis**

40. The derivative allegations are based upon my personal involvement in corporate operations prior to exclusion, my review of corporate financial records, banking statements, investment account statements, IRS filings relating to ERC funds, reserve documentation, and communications with financial institutions and accountants.

41. The allegations are made in good faith and with a reasonable belief that they are well grounded in fact.

42. I understand that this Verification is made under penalty of perjury.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of March 2026.



OMID ELYAHOU