

**Matin Emouna**
*Admitted in NY, NJ & CT*
*memouna@emiklaw.com*

June 5, 2026

Honorable Orelia E. Merchant
Honorable Steven L. Tiscione
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 6C South
Brooklyn, New York 11201

Re: *AutoExpo Ent. Inc., et al. v. Elyahou, et al.,*
*Case No.: 23-cv-9249* (OEM) (ST)

Dear Judge Merchant and Judge Tiscione:

Defendants/Counterclaim Plaintiffs respectfully submit this emergency pre-motion letter seeking leave to move by Order to Show Cause for narrowly tailored injunctive relief necessary to preserve the status quo and prevent the further transfer, diversion, depletion, restructuring, or dissipation of assets pending adjudication of the claims and counterclaims in this action. Given the newly discovered evidence discussed below, Defendants/Counterclaim Plaintiffs respectfully request expedited consideration.

## I. THIS APPLICATION BUILDS UPON CONCERNS PREVIOUSLY PRESENTED TO THE COURT

This application does not arise in a vacuum. On May 27, 2026, Defendants/Counterclaim Plaintiffs submitted a detailed letter to the Court (ECF No. 103) expressing concern regarding ongoing operational restructuring, rebranding activity, affiliated-entity transactions, denial of access to books and records, and the need for preservation safeguards sufficient to maintain the status quo during the pendency of this litigation.

Specifically, Defendants/Counterclaim Plaintiffs advised the Court that publicly available records and photographic evidence appeared to show that the Auto Expo dealership location at 60 Northern Boulevard was being rebranded under the "Import Masters" dealership identity and that New York State DMV records reflected Import Masters operating from the same location. Defendants further expressed concern regarding ongoing operational migration, restructuring, and potential affiliated-entity activity occurring while Defendants/Counterclaim Plaintiffs remained excluded from corporate books and records, accounting systems, lender communications, financial information, and dealership operations. At that time, Defendants/Counterclaim Plaintiffs expressly requested judicial oversight, preservation safeguards, and measures necessary to preserve the status quo pending discovery and factual development.

Unfortunately, newly discovered evidence now demonstrates that the concerns previously raised before the Court may be materially more serious than originally understood.

## II. NEWLY DISCOVERED VIN-SPECIFIC EVIDENCE OF APPARENT INVENTORY TRANSFERS

Defendants/Counterclaim Plaintiffs have now identified vehicle-level evidence indicating what appears to be the transfer of inventory historically purchased, paid for, held and advertised by Auto Expo into Import Masters. This includes at least 75 vehicles equating to millions of dollars.

Most significantly, Defendants/Counterclaim Plaintiffs recently identified a vehicle bearing VIN WBX73EF0XP5X17015, a 2023 BMW X1 xDrive28i, that was publicly advertised by Auto Expo during May 2026 under stock number AX56934A and subsequently advertised by Import Masters during June 2026 under stock number 56934W. While the stock designation changed, the VIN remained identical. The VIN cannot be altered.

Defendants/Counterclaim Plaintiffs have identified additional examples reflecting the same pattern and are prepared to submit supporting exhibits demonstrating what appears to be repeated movement of inventory between Auto Expo and Import Masters or affiliated entities.

Defendants/Counterclaim Plaintiffs do not presently possess the underlying transactional records because Plaintiffs continue to maintain exclusive control over the dealerships' books and records, accounting systems, banking information, lender communications, inventory systems, DMS records, CRM records, and related operational materials.

Accordingly, Defendants/Counterclaim Plaintiffs presently cannot determine whether the apparent inventory transfers were conducted for fair value, properly documented, appropriately recorded, approved by authorized stakeholders, or otherwise accounted for in accordance with ordinary business practices.

## III. THE NEW EVIDENCE CONFIRMS A BROADER PATTERN OF ONGOING CORPORATE MIGRATION

The newly discovered VIN evidence must be viewed against the broader operational developments already brought to the Court's attention. As of June 2026:

• Auto Expo's publicly advertised inventory appears to have declined dramatically from historical inventory levels of approximately 120–130 vehicles to approximately 36 vehicles;

• Import Masters' publicly advertised inventory appears to have increased substantially to approximately 194 vehicles;

• Import Masters signage has been installed at the dealership location historically associated with Auto Expo;

• Import Masters has reportedly obtained dealership licensing associated with that location;

• Auto Expo's longstanding branding, goodwill, and business identity appear to be undergoing replacement or migration;

• Defendants/Counterclaim Plaintiffs continue to be denied meaningful access to books and records, inventory records, accounting systems, lender communications, financial information, and operational data.

Taken together, these developments raise serious concerns that inventory, goodwill, customer relationships, business opportunities, lender relationships, and other valuable corporate assets may be migrating from Auto Expo to affiliated entities while this litigation remains pending and while Defendants/Counterclaim Plaintiffs remain unable to evaluate the underlying transactions.

## IV. IMMEDIATE INTERVENTION IS NECESSARY TO PRESERVE THE COURT'S ABILITY TO PROVIDE MEANINGFUL RELIEF

The purpose of preliminary injunctive relief is to preserve the status quo and prevent conduct that threatens to render final relief ineffectual. T*om Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37–38 (2d Cir. 1995); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907–08 (2d Cir. 1990).

Federal courts possess broad equitable authority to preserve the integrity of pending proceedings and prevent conduct that threatens the Court's ability to fashion meaningful relief following adjudication. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). Likewise, courts within this Circuit routinely recognize that preservation measures are appropriate where there are credible concerns regarding movement of assets, restructuring of business operations, alteration of records, or affiliated-entity transactions occurring during litigation. *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 372 (S.D.N.Y. 2006); *Capak v. Alliance Capital Mgmt. L.P.*, 2000 WL 1336487, at *13 (S.D.N.Y. Sept. 15, 2000).

Defendants/Counterclaim Plaintiffs respectfully submit that the newly discovered VIN-specific evidence materially changes the landscape before the Court. What previously appeared to be concerning rebranding activity and operational migration now appears to be accompanied by identifiable inventory movements involving specific vehicles and identical VIN numbers. Absent immediate intervention, there exists a substantial risk that additional inventory, goodwill, customer relationships, operational assets, records, and business opportunities may continue to be transferred, depleted, restructured, or otherwise placed beyond the reach of the Court before the parties' rights can be adjudicated.

## V. REQUESTED RELIEF

Accordingly, Defendants/Counterclaim Plaintiffs respectfully request leave to move by Order to Show Cause seeking narrowly tailored interim relief, including:

1. An order preserving the status quo pending further order of the Court;
2. An order prohibiting the transfer, diversion, encumbrance, restructuring, or disposition of dealership inventory and material corporate assets outside the ordinary course of business;
3. An order requiring preservation of all books, records, electronically stored information, accounting records, inventory records, title records, DMS records, CRM records, lender communications, banking records, and related business materials;
4. An order prohibiting destruction, alteration, deletion, modification, or concealment of records relating to vehicle inventory, inventory transfers, affiliated-entity transactions, dealership operations, financing arrangements, lender relationships, and accounting activity;
5. Expedited discovery concerning inventory transfers, affiliated-entity transactions, operational restructuring, and preservation issues; and
6. Such other and further relief as the Court deems just and proper.

## VI. CONCLUSION

Defendants/Counterclaim Plaintiffs do not seek through this application to interfere with legitimate business operations. Rather, they seek only to preserve the status quo and ensure that the assets, records, inventory, goodwill, and business opportunities at issue remain available while the parties' respective rights are adjudicated. The concerns raised in Defendants/Counterclaim Plaintiffs' May 27, 2026 submission have now been reinforced by concrete VIN-specific evidence suggesting that dealership inventory may be moving between the very entities whose restructuring and operational migration were previously brought to the Court's attention. Under these circumstances, Defendants/Counterclaim Plaintiffs respectfully request permission to proceed by Order to Show Cause on an expedited basis and such other relief as the Court deems appropriate to preserve the integrity of these proceedings.

Respectfully submitted,

/s/ *Matin Emouna*

Matin Emouna

T: 516-877-9111 - F: 516-877-9112 - 100 Garden City Plaza, Suite 520, Garden City, NY 11530