UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AUTOEXPO ENT. INC., *et al.*,

        Plaintiffs,

        v.

OMID ELYAHOU, *et al.*,

        Defendants.
------------------------------------------------------------------X
OMID ELYAHOU, *et al.*,

        Counterclaim Plaintiffs and
        Third-Party Plaintiffs,

        v.

AUTOEXPO ENT. INC., *et al.*,

        Counterclaim-Defendants,

and

MICHAEL SHAHKOOHI, *et al.*,

        Third-Party Defendants.
------------------------------------------------------------------X

**Case No.: 2:23-cv-09249 (OEM) (ST)**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS/COUNTERCLAIM-DEFENDANTS' AND THIRD-PARTY DEFENDANTS' MOTION TO DISMISS AND STRIKE COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

---

**MILMAN LABUDA LAW GROUP, PLLC**

3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
*Counsel for Plaintiffs/Counterclaim Defendants/Third-Party Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT …………………………………………………………1

FACTUAL BACKGROUND…………………………………………………………4

LEGAL STANDARD....…………………………………………………………............5

ARGUMENT………………………………………………………………………7

   **I.  ANY INDIVIDUAL CLAIM SEEKING RECOVERY FOR ENTITY INJURIES SHOULD BE DISMISSED, AND THE DERIVATIVE CLAIMS FAIL RULE 23.1………………………………………………………………………7**

      **A.  Derivative Claims Cannot Be Asserted as Individual Claims…………………...7**

      **B.  The Derivative Claims Fail Rule 23.1……………………………………..8**

         1.  *The Pleading and Verification Do Not Plead Demand Futility With Entity-Specific and Transaction-Specific Particularity……………………………..8*

         2.  *Any Rule 23.1 Finding Should Be on an Entity-by-Entity Basis……………..10*

      **C.  Several Derivative Counts Are Duplicative, Remedial, or Inadequately Pleaded………………………………………………………………………...10**

   **II.  THE FRAUD CLAIMS FAIL RULE 9(b)……………………………………………12**

   **III. THE DEFAMATION AND BUSINESS TORT CLAIMS SHOULD BE DISMISSED……………………………………………………………………15**

      **A.  Defendants Fail to Plead Viable Defamation or Business-Disparagement Claims……………………………………………………………………15**

      **B.  The Tortious-Interference Claims Identify No Specific Contract, Counterparty, Breach, or Lost Opportunity……………………………………17**

      **C.  The Abuse-of-Process Claim Challenges the Lawsuit Itself, Not Misuse of Process………………………………………………………………..18**

   **IV.  THE ADVANCEMENT/INDEMNIFICATION, CIVIL CONSPIRACY, AND DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED…………...18**

      **A.  No Viable Claim for Present Advancement or Indemnification Is Stated……..18**

      **B.  The Civil-Conspiracy Claim Is Not Independently Actionable and Adds No Viable Claim……………………………………………………………..21**

      **C.  The Declaratory-Judgment Claims Are Duplicative……………………………22**

**V.  IMMATERIAL AND PREJUDICIAL ALLEGATIONS SHOULD BE STRICKEN**………………………………………………………………23

**CONCLUSION**…………………………………………………………………………..24

ii

## TABLE OF AUTHORITIES

<u>Cases</u>

*245 E. 19 Realty LLC v. 245 E. 19th St. Parking LLC*,
223 A.D.3d 604 (1st Dep't 2024) ........................................................................................ 22, 23

*Abrams v. Donati*,
66 N.Y.2d 951 (1985) ................................................................................................................ 5, 7

*Alexander & Alexander of N.Y., Inc. v. Fritzen*,
68 N.Y.2d 968 (1986) .................................................................................................................. 21

*Anwar v. Fairfield Greenwich Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) ...................................................................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................... 5

*Bansbach v. Zinn*,
1 N.Y.3d 1 (2003) .................................................................................................................. 6, 8, 9

*Barons Media, LLC v. Shapiro Legal Group, PLLC*,
2024 N.Y. Misc. LEXIS 1057 (Sup. Ct. N.Y. Cnty. Mar. 6, 2024) ...................................... 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................................... 5

*Bingham v. Zolt*,
66 F.3d 553 (2d Cir. 1995) .......................................................................................................... 5

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .......................................................................................................... 5

*Cascardo v. Stacchini*,
100 A.D.3d 675 (2d Dep't 2012) ............................................................................................... 14

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir. 2012) ...................................................................................................... 22

*Chkechkov v. FCI Lender Servs., Inc.*,
2019 U.S. Dist. LEXIS 49533 (E.D.N.Y. Mar. 25, 2019) ...................................................... 14

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
123 F. Supp. 2d 133 (S.D.N.Y. 2000) ...................................................................................... 12

*Cohen v. Cohen*,
2010 N.Y. Misc. LEXIS 5223 (Sup. Ct. Suffolk Cnty. Oct. 14, 2010) ................................ 20

*Conte v. Newsday, Inc.*,
703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...................................................................................... 16

*Continuum Grp. LLC v. 666 Performance, LLC*,
2025 U.S. Dist. LEXIS 98931 (S.D.N.Y. May 23, 2025) ................................................... 22, 23

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) .................................................................................................................. 11

*Curiano v. Suozzi*,
63 N.Y.2d 113 (1984) .................................................................................................................. 18

*Doukas v. Ballard*,
135 A.D.3d 896 (2d Dep't 2016) ............................................................................................... 12

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003) ................................................................................................. 22, 23

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002) .......................................................................................................... 16

iii

*Faulkner v. City of Yonkers,*
   105 A.D.3d 899 (2d Dep't 2013)......................................................................................21

*H. Roske & Assocs. LLP v. Burghart,*
   2022 N.Y. Misc. LEXIS 89961 (Sup. Ct. N.Y. Cnty. Apr. 6, 2022)...................................12

*Jiminian v. Seabrook,*
   760 F. App'x 38 (2d Cir. 2019).....................................................................................8, 9

*Kamen v. Kemper Fin. Servs., Inc.,*
   500 U.S. 90 (1991) ..........................................................................................................6

*Kirch v. Liberty Media Corp.,*
   449 F.3d 388 (2d Cir. 2006) .....................................................................................17, 21

*Lama Holding Co. v. Smith Barney Inc.,*
   88 N.Y.2d 413 (1996) ..................................................................................................6, 14

*Lipsky v. Commonwealth United Corp.,*
   551 F.2d 887 (2d Cir. 1976) ......................................................................................6, 23

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
   13 F.4th 247 (2d Cir. 2021).................................................................................6, 13, 15

*Martirano v. Frost,*
   25 N.Y.2d 505 (1969) ...................................................................................................15

*Marx v. Akers,*
   88 N.Y.2d 189 (1996) ..................................................................................................6, 8

*McSpedon v. Levine,*
   158 A.D.3d 618 (2d Dep't 2018)...................................................................................21

*Mfrs. Hanover Tr. Co. v. Chem. Bank,*
   160 A.D.2d 113 (1st Dep't 1990) ..................................................................................12

*Morse v. Weingarten,*
   777 F. Supp. 312 (S.D.N.Y. 1991) .................................................................................23

*Nerom Constr. & Dev. Corp. v. Right Angle Design & Bldg.. Inc.,*
   2023 N.Y. Misc. LEXIS 79210 (Sup. Ct. Kings Cnty. Nov. 30, 2023)...............................12

*Nuveen Servs., LLC v. Fuller,*
   2024 U.S. Dist. LEXIS 159972 (S.D.N.Y. Sept. 5, 2024) .........................................19, 20

*Pasternack v. Lab. Corp. of Am. Holdings,*
   59 N.E.3d 485 (N.Y. 2016) ...........................................................................................15

*Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli,*
   215 A.D.3d 699 (2d Dep't 2023)..............................................................................11, 21

*Reiter's Beer Distribs., Inc. v. Christian Schmidt Brewing Co.,*
   657 F. Supp. 136 (E.D.N.Y. 1987)...............................................................................6, 23

*Schlossberg v. Schwartz,*
   43 Misc. 3d 1224(A) (Sup. Ct. Nassau Cnty. 2014) ......................................................19

*Soley v. Wasserman,*
   639 F. App'x. 670 (2d Cir. 2016)..................................................................................11

*United States ex rel. Chorches v. Am. Med. Response, Inc.,*
   865 F.3d 71 (2d Cir. 2017) ........................................................................................6, 15

*United States v. Brown,*
   606 F. Supp. 2d 306 (E.D.N.Y. 2009) ...........................................................................24

*Weitz v. Wagner,*
   2008 U.S. Dist. LEXIS 61112 (E.D.N.Y. July 24, 2008)............................................15, 16

*Yudell v. Gilbert,*
   99 A.D.3d 108 (1st Dep't 2012).......................................................................................7

iv

*Zinman v. Black & Decker (U.S.), Inc.,*
   983 F.2d 431 (2d Cir. 1993) ..................................................................................................................24

v

## PRELIMINARY STATEMENT

Plaintiffs/Counterclaim Defendants AutoExpo Ent. Inc. ("AutoExpo"), Peace Properties LLC ("Peace Properties"), Network Reinsurance Company Inc. ("Network Reinsurance"), Auto Exchange Center, LLC ("Auto Exchange"), Chrome Insurance Agency LLC ("Chrome Insurance"), Kavian Shahkoohi, and Armin Baratian, together with Plaintiffs/Counterclaim Defendants/Third-Party Defendants Ramin Baratian and Michael Shahkoohi (collectively, the "Moving Parties"), respectfully submit this memorandum of law in support of their motion to dismiss and strike discrete portions of Defendants' Amended Counterclaims and Third-Party Complaint (the "Pleading," ECF No. 99). More particularly, Moving Parties seek dismissal of Derivative Causes of Action I–VIII; Direct Counterclaims II–X; and any portion of Direct Counterclaim I seeking recovery for injuries to an entity, as opposed to distinct individual injuries.

This case, at its core, concerns Defendants' wrongful taking of funds, assets, and information from the Moving Parties to enrich themselves. Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs Omid Elyahou ("Elyahou"), SimpSocial LLC ("SimpSocial"), United Citizens Warranty LLC ("UCW"), Fifty Seven Consulting Corp. d/b/a Certified Auto Group a/k/a Certified Performance Motors ("Certified"), Avi Eitan ("Eitan"), and Fazeeda Kassim ("Kassim") (collectively, "Defendants") attempt to deflect from that misconduct by asserting sprawling counterclaims and third-party claims that are legally deficient on their face and should be dismissed or narrowed as a matter of law.

The challenged claims suffer from at least four threshold defects: (1) they rest on derivative corporate injuries, but are pleaded improperly as individual claims, without claim-by-claim standing or Rule 23.1 particularity; (2) the fraud theories are pleaded without Rule 9(b) specificity; (3) the publication-based torts, including defamation and business disparagement, are based on privileged

litigation statements and unidentified third-party communications; and (4) remedial or duplicative theories are pleaded as standalone causes of action.

Derivative Causes of Action I–VIII fail for numerous reasons. Elyahou purports to sue derivatively on behalf of six separate entities: AutoExpo, Peace Properties, Network Reinsurance, Auto Exchange, Chrome Insurance, and Prime Auto Capital LLC ("Prime Auto") (collectively, the "Nominal Entities"). Although Elyahou submitted a Rule 23.1 verification asserting demand futility, neither the Pleading nor the verification pleads demand futility with particularity as to each Nominal Entity, each governing decisionmaker, and each challenged transaction. Instead, Elyahou relies on generalized assertions that Michael Shahkoohi and Ramin Baratian "controlled" the Nominal Entities and allegedly participated in the challenged conduct, and therefore could not consider a demand. Rule 23.1 requires more.

The fraud theories, asserted in Derivative Cause of Action IV and Direct Counterclaim II, fare no better. Elyahou and the Nominal Entities suggest that litigation positions, disputes concerning corporate ownership under the parties' 2008 Agreement and 2020 restructuring, and disagreements over the legal effect of corporate documents amount to fraud. That theory fails as a matter of law. The Pleading does not identify any actionable misrepresentation made by any particular Moving Party to any particular claimant at any particular time. In addition, the reliance allegations are conclusory and fail to plead reliance on any specific misrepresentation. Finally, the Pleading does not identify non-duplicative damages caused by the alleged fraud. Accordingly, the fraud claims fail.

The direct business-tort claims are, likewise, deficient. The defamation and business-disparagement claim, Direct Counterclaim VI, rests principally on pleadings and litigation-related statements, which are privileged. Any supposed extra-judicial publication is based on conjecture and

2

pleaded only "upon information and belief." Critically, the Pleading fails to identify the speaker, recipient, date, precise statement, or resulting damages. Nor does it plead a plausible basis for the asserted information and belief. The tortious-interference claims, Direct Counterclaims III and VII, fail because they identify only broad categories of relationships, not a specific contract, counterparty, breach, lost transaction, or concrete economic injury. The abuse-of-process claim, Direct Counterclaim VIII, fails because it challenges the commencement and prosecution of this lawsuit, rather than any misuse of issued process after issuance.

The advancement and indemnification claim, Direct Counterclaim V, also fails. Elyahou invokes New York Business Corporation Law §§ 721–724 and unspecified governing documents, but he does not identify any entity-specific bylaw or instrument creating a present advancement right. Nor does he plead the statutory predicates for immediate advancement with respect to each entity from which advancement is sought. At minimum, any request for immediate indemnification or advancement should be denied without prejudice or deferred because Elyahou's good faith, loyalty, and alleged personal benefit are squarely at issue.

In addition, several counts allege remedies rather than independent causes of action, including constructive trust, Derivative Cause of Action III, and declaratory relief, Direct Counterclaims IV and X. Those counts should be dismissed to the extent they duplicate issues already embedded in the parties' substantive claims and defenses.

Finally, limited Rule 12(f) relief is warranted to strike immaterial and prejudicial allegations concerning decades-old criminal proceedings, alleged propensity, personal vendetta themes, and other inflammatory material that has no proper bearing on any claim element.

3

## FACTUAL BACKGROUND

For purposes of this motion only, the relevant well-pleaded factual allegations are taken from the Pleading.

The Pleading alleges that Elyahou owned and operated AutoExpo as sole owner from its formation through approximately September 2020, and that Michael Shahkoohi and Ramin Baratian did not assert ownership during that period. Pleading ¶¶ 1–14, 22–32. It further alleges that a September 2020 restructuring shifted majority control of AutoExpo to Michael Shahkoohi, with Elyahou retaining a 20% interest. *Id.* ¶¶ 33–70. The Pleading challenges Moving Parties' reliance on the 2008 Agreement, alleging that the document was not invoked by Elyahou in his matrimonial proceedings, was not reflected in corporate tax records or K-1s, was not referenced in the 2020 restructuring, and was produced in this litigation only in January 2026. *Id.* ¶¶ 2–14, 365–369, 492–527, 591–637.[1]

The Pleading then alleges a series of post-2020 acts: purported auction and inventory diversion through MB On Demand; liquidation of an AutoExpo TD Ameritrade reserve account; withdrawal or diversion of ERC proceeds; depletion of Network Reinsurance reserves; affiliated-entity transfers; denial of access to books and records; and commingling across entities allegedly controlled by Michael Shahkoohi and Ramin Baratian. *Id.* ¶¶ 71–259.

Based on those allegations, Elyahou asserts eight derivative causes of action on behalf of the Nominal Entities: breach of fiduciary duty (Derivative Cause of Action I); corporate waste (Derivative Cause of Action II); constructive trust (Derivative Cause of Action III); fraud and intentional misrepresentation (Derivative Cause of Action IV); aiding and abetting breach of fiduciary duty (Derivative Cause of Action V); unjust enrichment (Derivative Cause of Action VI);

---

[1] Notably, Elyahou does not deny that his signature is on the 2008 Agreement and does not deny that he agreed to its contents.

4

a claim captioned as breach of fiduciary duty, self-dealing, and misappropriation (Derivative Cause of Action VII), but substantively seeking an accounting; and derivative conversion (Derivative Cause of Action VIII). *Id.* ¶¶ 260–455. The Pleading also asserts ten direct counterclaims: Elyahou's direct claims for breach of fiduciary duty/minority shareholder oppression (Direct Counterclaim I), fraud (Direct Counterclaim II), tortious interference (Direct Counterclaim III), declaratory judgment (Direct Counterclaim IV), and advancement/indemnification (Direct Counterclaim V); claims by Eitan, Kassim, SimpSocial, and Certified for defamation/business disparagement (Direct Counterclaim VI), tortious interference (Direct Counterclaim VII), abuse of process (Direct Counterclaim VIII), and civil conspiracy (Direct Counterclaim IX); and a claim on behalf of all Counterclaim Plaintiffs for declaratory relief (Direct Counterclaim X). *Id.* ¶¶ 456–721.

## LEGAL STANDARD

Rule 12(b)(1) permits dismissal where the Court lacks subject-matter jurisdiction, including where a claimant lacks Article III standing. The party invoking federal jurisdiction bears the burden of establishing standing for each claim and each form of relief sought, and at the pleading stage must allege facts that affirmatively and plausibly suggest standing. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55–57 (2d Cir. 2016).

Separately, where the alleged injury belongs to a corporation or other entity, an owner generally may not recover individually for that entity-level injury. *See Bingham v. Zolt*, 66 F.3d 553, 561–62 (2d Cir. 1995); *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985).

Rule 12(b)(6) permits dismissal for failure to state a claim. To survive dismissal, a pleading must allege sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Labels, conclusions, and formulaic recitations do not suffice. *Iqbal*, 556 U.S. at 678.

5

Fraud-based claims must satisfy Rule 9(b). The pleader must specify the alleged fraudulent statement or omission, identify the speaker, state when and where the statement was made, and explain why it was fraudulent. *See United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017). Under New York law, fraud also requires a material misrepresentation or omission, knowledge of falsity, intent to defraud, reasonable reliance, and resulting damages. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996).

Derivative claims must satisfy Rule 23.1. A derivative plaintiff must plead with particularity any effort to obtain the desired action from the directors or comparable authority, and the reasons for not obtaining that action or not making the effort. Fed. R. Civ. P. 23.1(b)(3). Rule 23.1 creates a federal pleading standard for particularity, while state law supplies the substantive demand-futility standard. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95–97 (1991). Under New York law, demand is excused only where particularized facts show that: (1) a majority of directors or comparable decisionmakers were interested in the challenged transaction; (2) they failed to inform themselves to a degree reasonably necessary about the transaction; or (3) they failed to exercise business judgment in approving the transaction. *Marx v. Akers*, 88 N.Y.2d 189, 198–200 (1996); *Bansbach v. Zinn*, 1 N.Y.3d 1, 9–11 (2003).

Rule 12(f) permits a court to strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Although motions to strike are narrowly granted, relief is appropriate where allegations have no proper bearing on the issues and would unfairly prejudice the moving party or unnecessarily complicate discovery and trial. See *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *Reiter's Beer Distribs., Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 144 (E.D.N.Y. 1987).

6

**ARGUMENT**

**I.    ANY INDIVIDUAL CLAIM SEEKING RECOVERY FOR ENTITY INJURIES SHOULD BE DISMISSED, AND THE DERIVATIVE CLAIMS FAIL RULE 23.1**

The Pleading repeatedly seeks individual recovery for injuries allegedly suffered by the Nominal Entities. Those claims should be dismissed to the extent asserted directly. The derivative claims should also be dismissed or substantially narrowed because Defendants fail to satisfy Rule 23.1.

**A.    Derivative Claims Cannot Be Asserted as Individual Claims**

Under New York law, an owner may not recover individually for injury to the entity. *Abrams*, 66 N.Y.2d at 953. Allegations of diminished entity value, depleted corporate accounts, diverted entity opportunities, lost entity profits, and misappropriated company funds belong to the entity. An owner's proportionate economic injury resulting from harm to the entity is derivative, even where the owner experiences downstream financial consequences. *See Abrams*, 66 N.Y.2d at 953; *Yudell v. Gilbert*, 99 A.D.3d 108, 113–15 (1st Dep't 2012).

*Yudell* provides the governing framework: courts look to "who suffered the alleged harm" and "who would receive the benefit of any recovery or other remedy." 99 A.D.3d at 114. Where the alleged pecuniary loss flows from injury to the business entity, and any recovery would first inure to the entity, the claim is derivative. *Id.* at 114–15.

Here, the alleged injuries underlying many direct and derivative theories are entity injuries: alleged liquidation of AutoExpo reserve assets, alleged withdrawal or diversion of ERC proceeds, alleged depletion of Network Reinsurance reserves, alleged MB On Demand inventory diversion, alleged affiliated-entity transfers, and alleged denial of access to entity books and records. Pleading ¶¶ 71–455. To the extent Defendants seek individual damages for those injuries, the claims are barred by the entity-injury rule. *See Abrams*, 66 N.Y.2d at 953; *Yudell*, 99 A.D.3d at 113–15.

7

Defendants should not be permitted to use direct counterclaims to recover for alleged injury to the Nominal Entities. Any claim for recovery of entity property, lost entity profits, diminished entity value, or diverted entity opportunities must proceed, if at all, derivatively and in compliance with Rule 23.1.

**B.      The Derivative Claims Fail Rule 23.1**

Derivative Causes of Action I–VIII should be dismissed because Elyahou has not pleaded demand or demand futility with the particularity Rule 23.1 requires.

1.      *The Pleading and Verification Do Not Plead Demand Futility With Entity-Specific and Transaction-Specific Particularity*

Rule 23.1 requires particularized allegations showing either a demand on the relevant governing authority or the reasons demand was excused. Fed. R. Civ. P. 23.1(b)(3). That requirement is especially important where, as here, the derivative plaintiff purports to sue on behalf of multiple entities with different forms, ownership structures, governing documents, and potentially different decisionmakers. A derivative plaintiff cannot aggregate several nominal entities and several categories of transactions, then excuse demand through a generalized allegation that the same individuals controlled everything. *See Marx,* 88 N.Y.2d at 198–200*; Bansbach,* 1 N.Y.3d at 9–11.

The Second Circuit's summary order in *Jiminian v. Seabrook*, 760 F. App'x 38 (2d Cir. 2019) (summary order), is instructive. Applying New York law, the Second Circuit affirmed dismissal under Rule 23.1, even in a case involving serious allegations of misconduct and losses to organizational funds. The court emphasized that Rule 23.1 imposes a pleading standard higher than ordinary Rule 12(b)(6), that demand is the rule and futility the exception, and that demand futility must be pleaded with particularity. *Id.* at 41–42. The court rejected bare assertions that decisionmakers were interested merely because they faced a "substantial likelihood of liability," and

8

held that allegations of domination or control must plead how the allegedly interested person dominated each relevant decisionmaker. *Id*. at 42–43.

The Pleading and verification fall short under that standard. Elyahou purports to sue derivatively on behalf of AutoExpo, Peace Properties, Network Reinsurance, Auto Exchange, Chrome Insurance, and Prime Auto. Pleading ¶¶ 16–18, 260–455. The verification similarly groups the Nominal Entities together. Verification ¶¶ 1–18. Neither document pleads, entity by entity: (1) the governing structure of each Nominal Entity; (2) the board, managers, members, directors, or comparable authority empowered to consider a demand; (3) the composition of that governing body when demand would have been made; (4) which decisionmakers were interested or lacked independence; (5) which challenged transaction each decisionmaker approved, directed, or personally benefited from; or (6) why demand would have been futile for that entity and that transaction.

The verification does not cure that defect. It states, in general terms, that the governing authority of the Nominal Entities was "dominated and controlled" by Michael Shahkoohi and Ramin Baratian, that the derivative claims arise from actions taken or benefited from by them, and that they face a substantial likelihood of liability. Verification ¶¶ 16–34.

Those assertions are materially similar to the allegations rejected in *Jiminian*. A bare assertion that alleged wrongdoers face liability does not establish interest under New York law. *Jiminian*, 760 F. App'x at 42–43. Nor does a conclusory allegation of control establish demand futility unless the pleading alleges with particularity how the relevant decisionmakers were dominated or disabled. *Id.*; *Bansbach*, 1 N.Y.3d at 11.

The problem is magnified here because Elyahou asserts derivative claims for six Nominal Entities and several categories of alleged transactions. A single global futility narrative cannot

9

substitute for particularized allegations concerning AutoExpo, Peace Properties, Network Reinsurance, Auto Exchange, Chrome Insurance, and Prime Auto. Rule 23.1 requires a particularized showing tied to the entity whose claim is being asserted and the transaction being challenged.

2.    *Any Rule 23.1 Finding Should Be on an Entity-by-Entity Basis*

If the Court were to conclude that Elyahou has adequately pleaded demand futility as to any specific entity or transaction, the ruling should be limited to that particular entity and transaction. Defendants should not be permitted to bootstrap allegations concerning AutoExpo into derivative standing to sue on behalf of Peace Properties, Network Reinsurance, Auto Exchange, Chrome Insurance, or Prime Auto.

Accordingly, the derivative claims should be dismissed for failure to comply with Rule 23.1, or narrowed to any properly pleaded entity-specific, transaction-specific theory that satisfies Rule 23.1.

**C.    Several Derivative Counts Are Duplicative, Remedial, or Inadequately Pleaded**

Even apart from Rule 23.1, Derivative Causes of Action III (Constructive Trust), VI (Unjust Enrichment), VII (Breach of Fiduciary Duty, Self-Dealing and Misappropriation of Corporate Assets), and VIII (Derivative Conversion – Corporate Funds and Affiliated Entity Diversion) should be dismissed or narrowed because they are duplicative or because they seek remedies rather than independent causes of action.

Derivative Cause of Action III seeks a constructive trust over funds and assets allegedly traceable to diverted corporate monies. Pleading ¶¶ 347–361. A constructive trust is an equitable remedy imposed, where appropriate, after proof of a substantive wrong. It does not supply a standalone claim independent of the underlying fiduciary-duty, conversion, or unjust-enrichment

10

theories. *See Anwar v. Fairfield Greenwich Ltd.,* 728 F. Supp. 2d 372, 419–20 (S.D.N.Y. 2010). Because the constructive-trust count merely requests an equitable remedy for the same alleged diversion of funds, it should be dismissed as an independent cause of action. At minimum, constructive trust should be treated only as a potential remedy tied to any surviving substantive claim. *See id.*

Derivative Cause of Action VI alleges that Michael Shahkoohi, Ramin Baratian, and affiliated entities were unjustly enriched by diverted funds, inventory opportunities, reserve liquidations, reinsurance withdrawals, and related payments. Pleading ¶¶ 399–408.

That claim is duplicative of the fiduciary-duty, waste, and conversion claims because it arises from the same alleged benefits and the same alleged wrongs. Where an unjust enrichment claim merely repackages the same alleged misconduct and seeks the same recovery, it should be dismissed as duplicative. *See Corsello v. Verizon N.Y., Inc.,* 18 N.Y.3d 777, 790–91 (2012); *Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 215 A.D.3d 699, 702 (2d Dep't 2023).

Derivative Cause of Action VII is captioned as "Breach of Fiduciary Duty, Self-Dealing and Misappropriation of Corporate Assets," but its substance seeks equitable accounting and forensic reconstruction. Pleading ¶¶ 409–438. To the extent this claim seeks ordinary financial records relevant to alleged transfers, those issues can be addressed through discovery and do not support a separate accounting claim absent the required equitable showing. To obtain an equitable accounting under New York law, a claimant must establish, among other things, the absence of an adequate remedy at law. *See Soley v. Wasserman*, 639 F. App'x. 670, 674–75 (2d Cir. 2016) (summary order). The count should therefore be dismissed as duplicative or, at minimum, narrowed so that it does not expand discovery beyond the transactions and entities that survive Rule 23.1 and Rule 12 review.

> **Commented [MM1]:** Any parentheticals? Are these cases where accounting claims were dismissed as duplicative?

11

Derivative Cause of Action VIII attempts to plead conversion of corporate funds, including investment-account proceeds, ERC proceeds, reinsurance reserves, and affiliated-entity transfers. Pleading ¶¶ 439–455.

Conversion of money under New York law requires the identification of a specific fund and an immediate superior right to possession. A generalized claim that money moved through corporate accounts, intercompany transfers, or affiliated entities is insufficient. *See Citadel Mgmt., Inc. v. Telesis Tr., Inc.,* 123 F. Supp. 2d 133, 147–48 (S.D.N.Y. 2000); *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 124–25 (1st Dep't 1990). To the extent the conversion count merely restates alleged mismanagement, self-dealing, or misuse of entity funds, it duplicates the fiduciary-duty theory. *See Doukas v. Ballard*, 135 A.D.3d 896, 897 (2d Dep't 2016) (claims arising from the same circumstances, based on the same allegations, and seeking similar or identical damages are duplicative); *Nerom Constr. & Dev. Corp. v. Right Angle Design & Bldg.. Inc.*, 2023 N.Y. Misc. LEXIS 79210, at *11 (Sup. Ct. Kings Cnty. Nov. 30, 2023) (dismissing conversion/mismanagement/waste claim as duplicative of fiduciary-duty and contract claims); *H. Roske & Assocs. LLP v. Burghart*, 2022 N.Y. Misc. LEXIS 89961, at *3 (Sup. Ct. N.Y. Cnty. Apr. 6, 2022) (dismissing conversion claim as duplicative of fiduciary-duty claim and because the money was part of a general fund). If any conversion theory survives, it should be limited to specifically identified segregated property over which the relevant Nominal Entity had an immediate possessory right.

## II.    THE FRAUD CLAIMS FAIL RULE 9(b)

The fraud claims, Derivative Cause of Action IV and Direct Counterclaim II, should be dismissed because they do not plead fraud with the particularity Rule 9(b) requires, do not allege

12

damages caused by reasonable reliance on any identified misrepresentation, and otherwise repackage non-fraud theories.

The fraud claims attempt to frame the dispute over the 2008 Agreement and the 2020 restructuring as fraud. Pleading ¶¶ 362–386, 490–544. Defendants allege that the 2008 Agreement was not reflected in tax filings, K-1s, or the 2020 restructuring documents; that Michael Shahkoohi and Ramin Baratian did not assert ownership during Elyahou's matrimonial proceeding; and that Moving Parties later invoked the 2008 Agreement in this litigation. *Id.* Those allegations describe a dispute over ownership history and the legal effect of corporate documents. They do not plead fraud.

Under Rule 9(b), a party pleading fraud must identify the specific misrepresentation or omission, the speaker, where and when the statement was made, and why the statement was fraudulent. *See Loreley*, 13 F.4th at 259. Defendants' fraud claims fail to meet those basic requirements.

The Pleading does not identify any specific false statement made by any specific Moving Party to Elyahou or to any Nominal Entity before the 2020 restructuring. It does not allege that any Moving Party had a duty to volunteer a different legal interpretation of the 2008 Agreement. Nor does it plead facts showing that Elyahou or any Nominal Entity reasonably relied on any particular false statement, as opposed to entering a restructuring reflected in written documents whose legal effect the parties now dispute.

Defendants also allege that Moving Parties falsely asserted in this litigation that the 2008 Agreement conferred ownership rights. Pleading ¶¶ 365–369, 521–527. To the extent Defendants' fraud theory rests on statements made in this litigation by Moving Parties or their counsel, the claim fails because a litigation adversary cannot plausibly plead reasonable reliance on the opposing side's allegations, legal theories, or counsel's representations. *See Chkechkov v. FCI Lender Servs., Inc.,*

13

2019 U.S. Dist. LEXIS 49533, at *4 (E.D.N.Y. Mar. 25, 2019); *Cascardo v. Stacchini*, 100 A.D.3d 675, 676–77 (2d Dep't 2012). Parties routinely dispute the meaning and effect of documents in pleadings. That disagreement is resolved through the merits. It does not convert one side's litigation position into fraud. Such a theory would convert every contested pleading allegation into an independent fraud claim.

Nor do the fraud claims allege reliance by any Nominal Entity on a litigation filing. By the time the alleged litigation statements were made, the dispute had already crystallized. And because the alleged litigation statements were not made to induce transactional reliance by any Nominal Entity, they cannot support a fraud claim.

The derivative fraud count also alleges that, after the 2020 restructuring, Michael Shahkoohi and Ramin Baratian "represented" that corporate funds were being used for legitimate business purposes, while allegedly liquidating reserves, withdrawing ERC proceeds, depleting reinsurance funds, and transferring monies to affiliated entities. Pleading ¶¶ 370–386.

Those allegations do not satisfy Rule 9(b). They do not identify the statement, speaker, recipient, date, medium, or content of any alleged representation. They do not identify which Nominal Entity heard and relied on which representation. They do not plead how reliance caused the alleged corporate losses. Rather, these allegations merely repackage a fiduciary-duty theory.

The direct fraud claim alleges damages including litigation expenses, diminished bargaining position, reputational harm, increased financial exposure in this action, and forensic reconstruction costs. Pleading ¶¶ 541–544. The Pleading, however, fails to allege how these purported losses were caused by any specific fraudulent statement on which Defendants reasonably relied. *See Lama Holding*, 88 N.Y.2d at 421–23. These alleged harms are consequences of the parties' ownership dispute and this litigation, not fraud damages caused by reliance on an identified misrepresentation.

14

This Court's prior order underscores this point. In dismissing Plaintiffs' prior fraud claims, the Court noted that the elements of a viable fraud claim include a material misrepresentation or omission, knowledge, intent, reasonable reliance, and resulting damages, and that Rule 9(b) requires the circumstances of fraud to be pleaded with particularity. *See* ECF No. 66 at 29 (*citing Loreley Fin.*, 13 F.4th at 259; *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016); *Chorches*, 865 F.3d at 81). Here, the Pleading fails to meet the same standard.

Accordingly, Defendants' derivative fraud claim, Derivative Cause of Action IV, and direct fraud claim, Direct Counterclaim II, should be dismissed.

## III.    THE DEFAMATION AND BUSINESS TORT CLAIMS SHOULD BE DISMISSED

Direct Counterclaims III, VI, VII, and VIII fail for independent pleading defects and should be dismissed.

### A.    Defendants Fail to Plead Viable Defamation or Business-Disparagement Claims

In Direct Counterclaim VI, the Pleading alleges that Moving Parties publicly alleged, in filings in this action and in communications connected to this dispute, that Eitan, Kassim, SimpSocial, and Certified engaged in fraud, financial misconduct, misappropriation, and absconding with books and records. Pleading ¶¶ 675–689. The claim fails.

To the extent Direct Counterclaim VI rests on statements in pleadings, motion papers, court filings, or other communications made in the course of this judicial proceeding, those statements are absolutely privileged. Under New York law, statements made in a judicial proceeding are absolutely privileged if, by any view, they may be considered pertinent to the litigation. *See Martirano v. Frost*, 25 N.Y.2d 505, 507 (1969); *Weitz v. Wagner,* 2008 U.S. Dist. LEXIS 61112, at *24 (E.D.N.Y. July 24, 2008), report and recommendation adopted, 2008 U.S. Dist. LEXIS 62729 (E.D.N.Y. Aug. 8, 2008). The privilege applies even where a statement is alleged to be false or malicious, so long as

it is pertinent to the litigation. *See Martirano*, 25 N.Y.2d at 507. The alleged statements here concern the very claims in this case and therefore cannot support a defamation or business-disparagement theory.

Defendants attempt to avoid these privileges by alleging, "upon information and belief," that the allegations forming the basis of Moving Parties' claims were communicated to lenders, vendors, and industry participants. Pleading ¶ 686. That allegation fails. A defamation pleading must identify the challenged statements with enough specificity to permit a response, including who made the statement, what was said, when it was said, and to whom it was published. *See Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146–47 (E.D.N.Y. 2010).

The Pleading identifies none of that. It does not identify the speaker, recipient, date, medium, exact words, or context of any alleged non-privileged publication. It does not allege how any statement concerned Eitan, Kassim, SimpSocial, or Certified separately. Group allegations that "Defendants" were defamed by unspecified accusations to unidentified industry participants do not satisfy Rule 8 and fail to state a defamation claim. *See Weitz,* 2008 U.S. Dist. LEXIS 61112, at *22–24; *Conte,* 703 F. Supp. 2d at 146–47.

The business-disparagement theory fails for the same reason and for the additional reason that Defendants do not plead special damages. A business-disparagement or trade-libel claim requires specific pecuniary loss. Generalized allegations of reputational injury, lost goodwill, disruption of commercial relationships, and economic harm are insufficient. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59–60 (2d Cir. 2002). Here, the Pleading does not identify a lost customer, lost contract, lost financing relationship, lost transaction, or specific pecuniary loss caused by a specific non-privileged statement. The business-disparagement theory, therefore, also fails.

16

Accordingly, Direct Counterclaim VI should be dismissed.

**B.    The Tortious-Interference Claims Identify No Specific Contract, Counterparty, Breach, or Lost Opportunity**

The tortious-interference claims, Direct Counterclaims III and VII, should be dismissed. In Direct Counterclaim III, Elyahou alleges interference with broad categories of relationships, including lenders, auction platforms, vendors, insurance and warranty providers, employees, and industry contacts. Pleading ¶¶ 545–590. In Direct Counterclaim VII, Eitan, Kassim, SimpSocial, and Certified similarly allege interference with relationships involving vendors, marketing partners, lenders, advertising platforms, and commercial clients. *Id.* ¶¶ 690–699.

Those allegations do not state a claim. Tortious interference with contract requires a valid contract, the defendant's knowledge of that contract, intentional procurement of the third party's breach without justification, actual breach, and resulting damages. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006). Tortious interference with prospective business relations requires a business relationship with a third party, the defendant's knowledge of and intentional interference with that relationship, wrongful means or conduct undertaken solely out of malice, and injury to the relationship. *Id.* at 400.

The Pleading identifies no specific contract, counterparty, breached term, induced breach, lost transaction, or non-speculative economic loss. It does not identify which Counterclaim Plaintiff was harmed, by whom, and how. Instead, it relies on broad categories of industry relationships and reputational effects. That is insufficient. *See id.* at 401–02 (allegation that a third party "walked away" from a project did not plead actual breach of contract); *id.* at 400 (prospective-interference claim requires injury to a business relationship with a third party).

Accordingly, Direct Counterclaims III and VII should be dismissed.

17

**C.      The Abuse-of-Process Claim Challenges the Lawsuit Itself, Not Misuse of Process**

The abuse-of-process claim asserted by Eitan, Kassim, SimpSocial, and Certified, Direct Counterclaim VIII, should be dismissed. The Pleading alleges that Moving Parties initiated and expanded this litigation, invoked the 2008 Agreement after the litigation escalated, added parties, and used the litigation process to inflict financial and reputational pressure. Pleading ¶¶ 700–707.

Those allegations do not state an abuse of process claim. Under New York law, abuse of process requires: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116–17 (1984). The process must involve an unlawful interference with person or property, and the institution of a civil action by summons and complaint is not legally considered process capable of being abused. *Id.* at 117. Nor does malicious motive in bringing a lawsuit give rise to an abuse-of-process claim. *Id.*

Here, Direct Counterclaim VIII challenges the filing, amendment, and prosecution of this action. It does not identify any subpoena, attachment, restraining order, warrant, or other issued process that Moving Parties misused to accomplish a collateral objective. At most, it alleges that this litigation was pursued for strategic pressure. Under *Curiano*, that is not abuse of process.

Accordingly, Direct Counterclaim VIII should be dismissed.

**IV.      THE ADVANCEMENT/INDEMNIFICATION, CIVIL CONSPIRACY, AND DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED**

**A.      No Viable Claim for Present Advancement or Indemnification Is Stated**

Direct Counterclaim V seeks advancement and indemnification for Elyahou. Pleading ¶¶ 638–674. That claim should be dismissed to the extent it seeks a present entitlement to advancement or indemnification. At minimum, any request for immediate relief should be denied without prejudice or deferred.

18

First, Elyahou does not identify any operative source of a contractual or entity-specific advancement right. He cites generally to BCL §§ 721–724 and alleges "upon information and belief" that AutoExpo's governing documents provide indemnification. *Id.* ¶¶ 645–649. But he does not identify any bylaw, indemnification agreement, shareholder agreement, operating agreement, resolution, undertaking, or other instrument conferring a present right to advancement. To the extent he relies on governing documents rather than a statutory application, the claim is inadequately pleaded.

Second, the claim improperly groups several entities together while relying on the Business Corporation Law. BCL Article 7 concerns corporate directors and officers. Several Nominal Entities are alleged to be LLCs or non-New York/non-corporate entities. The Pleading does not identify any operating agreement, bylaw, or entity-specific governing document conferring advancement or indemnification rights as to those entities.

Third, advancement and indemnification are distinct rights. Indemnification concerns ultimate entitlement after resolution of the underlying claims or satisfaction of statutory predicates. Advancement concerns interim payment of defense expenses before final adjudication and may be subject to repayment. *See Nuveen Servs., LLC v. Fuller,* 2024 U.S. Dist. LEXIS 159972, at *10 (S.D.N.Y. Sept. 5, 2024), adopted, 2024 U.S. Dist. LEXIS 170528 (S.D.N.Y. Sept. 19, 2024); *Schlossberg v. Schwartz*, 43 Misc. 3d 1224(A), at *5 (Sup. Ct. Nassau Cnty. 2014). A generalized allegation that indemnification may ultimately be available does not plead a present contractual right to advancement.

Fourth, to the extent Elyahou seeks statutory advancement under BCL § 724(c), he must make an entity-specific statutory showing. Section 724(c) permits a court to allow reasonable defense expenses during the pendency of litigation only where the claimant may ultimately be

entitled to indemnification and has raised genuine issues of fact or law. *See* N.Y. Bus. Corp. Law §§ 722–724; *Nuveen,* 2024 U.S. Dist, LEXIS at *13–15; *Schlossberg*, 43 Misc. 3d 1224(A), at *3–4. Any court-ordered allowance of expenses remains subject to repayment if he is ultimately found not entitled to indemnification. *See* N.Y. Bus. Corp. Law § 725(a). And to the extent Elyahou invokes corporation-paid advancement under BCL § 723(c), he must plead the required undertaking to repay. *See* N.Y. Bus. Corp. Law § 723(c).

Finally, any ruling on ultimate indemnification should be deferred because Plaintiffs' claims place Elyahou's good faith, loyalty, and alleged personal benefit squarely at issue. BCL indemnification depends on whether the officer or director acted in good faith and for a purpose he reasonably believed to be in, or not opposed to, the corporation's best interests. *See* N.Y. Bus. Corp. Law § 722. Courts have denied or deferred indemnification where the underlying claims turn on whether the claimant acted in bad faith, disloyally, or for personal benefit. *See Cohen v. Cohen*, 2010 N.Y. Misc. LEXIS 5223, at *10–12 (Sup. Ct. Suffolk Cnty. Oct. 14, 2010). Here, Elyahou stands accused of looting corporate funds, misusing corporate assets, diverting business opportunities, operating competing ventures, and acting for personal benefit. Those allegations preclude any present determination that he is entitled to indemnification and, at minimum, require deferral unless and until he makes a proper statutory showing for interim advancement.

Direct Counterclaim V should therefore be dismissed to the extent it seeks a present entitlement to advancement or indemnification. At minimum, any request for immediate advancement or indemnification should be denied without prejudice to a proper, entity-specific application identifying the source of the alleged right, the covered claims, the required undertaking or repayment protection, and a basis for allocation between covered and uncovered defense expenses.

20

**B.    The Civil-Conspiracy Claim Is Not Independently Actionable and Adds No Viable Claim**

The civil-conspiracy claim asserted by Eitan, Kassim, SimpSocial, and Certified, Direct Counterclaim IX, should be dismissed. New York does not recognize civil conspiracy as an independent tort. A conspiracy theory may be used only to connect defendants to an otherwise viable underlying tort. *See Kirch*, 449 F.3d at 401; *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986). To plead civil conspiracy, a party must allege a cognizable underlying tort, an agreement among the alleged conspirators concerning that tort, and an overt act in furtherance of the agreement. *See Faulkner v. City of Yonkers,* 105 A.D.3d 899, 900–01 (2d Dep't 2013); *McSpedon v. Levine*, 158 A.D.3d 618, 621 (2d Dep't 2018).

The Pleading acknowledges that the conspiracy count is pleaded as a theory of joint and several liability, rather than as an independent tort. Pleading ¶ 709. It then alleges a "common understanding and agreement" among Moving Parties and affiliated entities. *Id.* ¶¶ 710–714. But it does not plead when any agreement was made, who entered it, the terms of the alleged agreement, which entity acted through which person, or what overt act was undertaken pursuant to a separate conspiratorial agreement. *See Philip S. Schwartzman, Inc. v. Pliskin, Rubano, Baum & Vitulli*, 215 A.D.3d 699, 703–04 (2d Dep't 2023); *Faulkner*, 105 A.D.3d at 900–01.

Instead, the count recycles the same ownership dispute, litigation expansion theory, third-party communications, and corporate-control allegations underlying the other defective claims. Conclusory allegations of agreement do not state a conspiracy theory. *See Faulkner,* 105 A.D.3d at 900–01; *Schwartzman*, 215 A.D.3d at 703–04; *McSpedon*, 158 A.D.3d at 621.

Direct Counterclaim IX should be dismissed.

21

**C.    The Declaratory-Judgment Claims Are Duplicative**

Direct Counterclaims IV and X seek declaratory relief concerning the 2008 Agreement, ownership percentages, the September 2020 restructuring, governance authority, the truth or falsity of Moving Parties' allegations, alleged freeze-out conduct, and corporate rights. Pleading ¶¶ 591–637, 715–721.

The Declaratory Judgment Act is procedural; it does not create an independent cause of action or substantive rights. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012). Whether to entertain declaratory relief is discretionary, and courts consider, among other things, whether the requested declaration would serve a useful purpose in clarifying the legal issues and whether it would finalize the controversy. *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003).

Declaratory relief is not warranted where the requested declaration merely duplicates issues already presented by the parties' substantive claims, defenses, or affirmative defenses. *See Continuum Grp. LLC v. 666 Performance, LLC*, 2025 U.S. Dist. LEXIS 98931, at *5 (S.D.N.Y. May 23, 2025) (dismissing declaratory counterclaim that duplicated affirmative defense and plaintiff's primary claim); *245 E. 19 Realty LLC v. 245 E. 19th St. Parking LLC*, 223 A.D.3d 604, 607 (1st Dep't 2024) (holding that declaratory judgment claim should have been dismissed where full and adequate relief could be provided by the parties' substantive claims); *Barons Media, LLC v. Shapiro Legal Group, PLLC*, 2024 N.Y. Misc. LEXIS 1057, at *5–6 (Sup. Ct. N.Y. Cnty. Mar. 6, 2024) (dismissing declaratory judgment claim as duplicative of breach-of-fiduciary duty and discovery issues).

The requested declarations duplicate the parties' existing disputes. The legal effect of the 2008 Agreement, the ownership structure of AutoExpo, the validity and effect of the September 2020 restructuring, and the truth or falsity of the parties' allegations will necessarily be addressed

22

through the substantive claims, counterclaims, and defenses. A separate declaratory count adds nothing and risks advisory or piecemeal rulings on disputed historical facts. *See Dow Jones*, 346 F.3d at 359–60; *Continuum*, 2025 U.S. Dist. LEXIS 98931, at \*5; *245 E. 19 Realty*, 223 A.D.3d at 607.

Accordingly, Direct Counterclaims IV and X should be dismissed or narrowed to any genuinely prospective controversy that is not already subsumed within the merits.

## V.    IMMATERIAL AND PREJUDICIAL ALLEGATIONS SHOULD BE STRICKEN

The Court should strike limited immaterial and prejudicial matter under Rule 12(f). Rule 12(f) permits the Court to strike matter that is immaterial, impertinent, or scandalous. Although such relief is granted sparingly, it is appropriate where the challenged allegations have no bearing on the controversy and would prejudice the moving party, confuse the issues, or needlessly complicate discovery and trial. *See* Fed. R. Civ. P. 12(f); *Reiter's Beer Distribs, Inc.*, 657 F. Supp. at 144; *Lipsky*, 551 F.2d at 893.

Here, the Pleading includes allegations concerning a nearly thirty-year-old criminal conviction. *See* Pleading ¶¶ 85–86. Those allegations should be stricken. In *Morse v. Weingarten*, the Southern District granted a Rule 12(f) motion striking references to a defendant's criminal conviction where the conviction did not bear on the merits and served no purpose except to inflame the reader. *Morse v. Weingarten,* 777 F. Supp. 312, 319 (S.D.N.Y. 1991). The same is true here. Defendants do not plead the decades-old conviction as an element of any claim. Instead, they invoke it in conclusory fashion to suggest propensity, bad character, intent, scienter, and credibility. That is precisely the type of inflammatory character pleading Rule 12(f) permits courts to remove.

The remoteness of the conviction reinforces the point. Federal courts admit convictions more than ten years old only rarely and in exceptional circumstances when offered for impeachment, and

23

only after a specific finding that probative value substantially outweighs prejudice. *See* Fed. R. Evid. 609(b); *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434–35 (2d Cir. 1993); *United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009). Defendants should not be permitted to accomplish through inflammatory pleading what would face serious admissibility obstacles at trial.

The same is true of the Pleading's allegations concerning supposed international cash withdrawals, "vendetta" themes, predatory-lending rhetoric, and related accusations of regulatory or criminal exposure. *See* Pleading ¶¶ 257–258, 572. These allegations are not necessary to plead any challenged counterclaim or third-party claim. They cast Moving Parties in a prejudicial light, expand the perceived scope of the case, and invite discovery into collateral issues that have no proper bearing on the elements of the claims.

Moving Parties seek narrow relief. They ask only that the Court remove immaterial rhetoric and prejudicial character allegations that would needlessly expand discovery, confuse the issues, and create unfair prejudice.

Accordingly, the Court should strike the immaterial and prejudicial allegations set forth in Exhibit A.

## CONCLUSION

For the foregoing reasons, Moving Parties respectfully request that the Court dismiss the challenged counterclaims and third-party claims to the extent set forth herein, including derivative claims that fail Rule 23.1, fraud claims that fail Rule 9(b), direct claims seeking recovery for entity injuries, publication-based tort claims resting on privileged or unidentified statements, tortious-interference claims lacking specific contracts or business relationships, the abuse-of-process claim, the advancement/indemnification claim, the civil-conspiracy claim, and duplicative declaratory claims.

24

Moving Parties further respectfully request that the Court narrow any surviving claims to the specific claimants, entities, transactions, and theories supported by well-pleaded allegations, strike the immaterial and prejudicial allegations identified in Exhibit A under Rule 12(f), and grant such other and further relief as the Court deems just and proper.

Dated: June 29, 2026
      Lake Success, New York

                Respectfully submitted,

                **MILMAN LABUDA LAW GROUP, PLLC**

                *Colleen O'Neil*
                Colleen O'Neil, Esq.
                Michael Mulè, Esq.
                Hope DeVito, Esq.
                3000 Marcus Avenue
                Suite 3W8
                Lake Success, New York 11042
                colleen@mllaborlaw.com

25

26

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum complies with Local Civil Rule 7.1(c) and Judge Merchant's Individual Practice Rules. According to the word-count function of Microsoft Word, this memorandum contains, 6,982 words, excluding the caption, table of contents, table of authorities, signature block, this certificate, and Exhibit A.


*Colleen O'Neil*
Colleen O'Neil

27

# EXHIBIT A

28

**Allegations Moving Parties Seek to Strike**

- **Counterclaim ¶ 85**: Such conduct is particularly troubling given Shahkoohi's prior federal conviction involving bid rigging in auction settings. That conviction is a matter of public record.

- **Counterclaim ¶ 86**: The similarity between prior auction misconduct and present auction allocation practices is directly relevant to intent, scienter, and credibility in this matter.

- **Counterclaim ¶ 257**: Upon information and belief Shahkoohi and Baratian withdrew large sums of cash internationally, including trips to Israel, creating exposure to tax-evasion liability.

- **Counterclaim ¶ 258**: Upon information and belief, Shahkoohi and Baratian have used a network of affiliated entities operating under the "Wisdom" name—including Wisdom Financial Corp. and similarly titled affiliates—to funnel, disguise, and re-deploy corporate and federally derived funds for the purpose of misleading financial institutions and obtaining additional credit lines and capital infusions. Based on statements made by Shahkoohi and Baratian and corroborating information from former employees and industry contacts, "Wisdom" functions as a high-interest private-lending vehicle, marketing itself as a "business-to-business" or "under-served consumer" lender so as to avoid mortgage-lender licensing and disclosure requirements. Loans are routinely extended to under-privileged or minority borrowers at interest rates between twelve and eighteen percent (12–18%), plus origination fees or "points" of four to six percent (4–6%), effectively constituting predatory or "shark"-style lending practices. These funds are believed to have originated, in substantial part, from federal relief proceeds (PPP, ERC, EIDL) and from Auto Expo Ent., Inc. ("Auto Expo") operating accounts—money that should have remained within legitimate business operations. By diverting and commingling those funds into the Wisdom network and then representing the proceeds as independent loan revenue, Shahkoohi and Baratian created the false appearance of profitability and asset strength to financial institutions and regulators. This conduct not only constitutes fraudulent misrepresentation and potential violations of federal lending and consumer-protection laws, but also exposes Auto Expo and minority shareholder Omid Elyahou ("Elyahou") to collateral liability. Because Shahkoohi and Baratian control overlapping entities and routinely use Auto Expo resources to facilitate or guarantee Wisdom-related transactions, Elyahou and Auto Expo risk being drawn into investigations or proceedings for activities in which they played no role. The misuse of Auto Expo's name, credit, and financial accounts as part of this lending-and-laundering scheme has caused irreparable reputational damage and potential criminal exposure to Elyahou, despite his lack of participation, control, or benefit.

29

- **Counterclaim ¶ 572**: The interference was motivated, at least in part, by personal animosity arising from the prior family relationship and subsequent divorce between Shahkoohi and Elyahou's sister.

30